Jonathan D. Miller (Bar No. 220848)
jonathan@nshmlaw.com
Alison M. Bernal (Bar No. 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE & MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590

*Additional Counsel Listed on Signature Page*

Attorneys for Plaintiffs, Julian Vargas, Anne West, and the Proposed Class

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN VARGAS and ANNE WEST, individually on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.: 2:19-cv-8108<br><br>**CLASS ACTION COMPLAINT**<br><br>1.  Violation of Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 *et seq.*)<br><br>2.  Violation of California's Unruh Civil Rights Act (Cal. Civil Code § 51 *et seq.*)<br><br>3.  Violation of California Disabled Persons Act (Cal. Civil Code § 54-54.3)<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Julian Vargas and Anne West (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, assert the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on their personal knowledge:

## NATURE OF THE ACTION

1.    Plaintiffs Julian Vargas and Anne West are visually impaired individuals who rely upon auxiliary aids and services such as screen reading software, accessible electronic and information technologies, and other effective

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

methods of making visually delivered materials available to persons who are blind or have low vision.

2.    Defendants Quest Diagnostics Clinical Laboratories, Inc., Quest Diagnostics Holdings, Inc., Quest Diagnostics Incorporated, and Does 1 through 10 (collectively "Defendants" and/or "Quest Diagnostics") discriminated against Plaintiffs by refusing and failing to provide auxiliary aids and services to Plaintiffs, and by requiring Plaintiffs to rely upon other means of communication that are inadequate to provide equal opportunity to participate in and benefit from Defendants' health care services free from discrimination. Specifically, all Quest Diagnostics patient service centers make use of an exclusively visual, touch-screen interface that is inaccessible to the blind.

3.    Plaintiffs bring this action individually and on behalf of all others similarly situated to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure Plaintiffs effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendants' services. Plaintiffs seek declaratory, injunctive, and equitable relief and attorneys' fees and costs to redress Defendants' unlawful discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations. Additionally, Plaintiff Vargas bring this action individually and on behalf of all other similarly situated California residents and seeks declaratory, injunctive, and equitable relief and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of California's Unruh Civil Rights Act, California Civil Code § 51 *et seq.* ("Unruh Act") and California's Disabled Persons Act, California Civil Code § 54, *et seq.* ("Disabled Persons Act"), and for statutory damages in accordance with California Civil Code §§ 52(a) and 54.3.

4.    Plaintiffs have visited Defendants' facilities in California and in

2

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Connecticut, and were denied full and equal access as a result of Defendants' inaccessible e-Check-in touchscreen kiosks for self-service check-in. Defendants require all patients use the inaccessible e-Check-in touchscreen kiosks to sign in and/or register for their appointments.

5. Defendants' e-Check-in touchscreen kiosks for self-service check-in do not contain the necessary technology that would enable a person with a visual impairment to a) enter any personal information necessary to process a transaction in a manner that ensures the same degree of personal privacy afforded to those without visual impairments; or b) use the device independently and without the assistance of others in the same manner afforded to those without visual impairments. As a result, Plaintiffs and all other visually impaired individuals are forced to seek the assistance of a sighted person, and thereafter divulge their personal medical information to that sighted person in a nonconfidential setting in order to register.

6. By failing to make their e-Check-in touchscreen kiosks accessible to visually impaired persons, Defendants, public accommodations subject to Title III of the ADA, the Disabled Persons Act, and the Unruh Act, deprive blind and visually-impaired individuals the full benefits of Defendants' health care services—all benefits they afford nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III of the ADA, the Disabled Persons Act, and the Unruh Act were meant to redress.

7. Defendants have demonstrated through their interactions with Plaintiffs that they have adopted a policy and/or pattern and practice of refusing to provide accessible e-Check-in touchscreen kiosks for their visually impaired patients, and that this decision, on information and belief, is based purely on financial considerations, that resulted in the violation of Plaintiffs' civil rights, in order for Defendants to realize a three per cent (3%) quarterly cost savings through its "Invigorate" program while reporting $236,000,000 of net income in the quarter

3

ending June 30, 2019.

8.    Defendants have further demonstrated through their interactions with Plaintiffs that Defendants' employees are not properly trained regarding the civil rights, communication needs, privacy considerations, or how to interact with visually impaired individuals.

9.    Defendants' discrimination sends a message that it is acceptable for medical providers to adopt policies, procedures and practices that deprive blind and visually impaired individuals of the opportunity to be full partners in their receipt of health care services in order for a 3% cost savings.

10.   The ADA and the Unruh Act expressly contemplate injunctive relief aimed at modification of a policy or practice that Plaintiffs seek in this action. In relevant part, the ADA states:

> Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods…

42 U.S.C. § 12188(a)(2); Cal. Civ. Code, § 52(c)(1).

11.   Consistent with 42 U.S.C. § 12188(a)(2) and the Unruh Act, Plaintiffs seek a permanent injunction requiring that:

a.    Defendants take all steps necessary to bring their e-Check-in touchscreen kiosks into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that their e-Check-in touchscreen kiosks are fully accessible to, and independently usable by individuals with visual disabilities, through the implementation of necessary technology that would enable persons with a visual impairment to enter any personal information necessary to process a transaction in a manner that ensures the same degree of personal privacy afforded to those without visual impairments and use the device independently and without the assistance of others in the same manner afforded to those without visual impairments;

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

4

b.  Defendants change their policies and practices so that the touchscreen kiosk accessibility barriers at Defendants' facilities do not reoccur; and

c.  Plaintiffs' representatives monitor Defendants' facilities to ensure the injunctive relief ordered pursuant to Paragraph 11.a. and 11.b. has been implemented and will remain in place.

12.  Plaintiffs' claims for permanent injunctive relief are asserted as a nationwide class claim pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiffs seek injunctive relief for their own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . .. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

13.  In addition, Plaintiff Vargas' claims for statutory damages pursuant to California Civil Code §§ 52(a) and 54.3 are asserted as a California statewide class claim pursuant to Fed. R. Civ. P. 23(b)(3).

## PARTIES

14.  Plaintiff Julian Vargas is, and at all times relevant hereto was, a resident of Los Angeles, California. Plaintiff was born with a genetic eye disorder called Leber congenital amaurosis ("LCA"), and as a result is legally blind. Plaintiff is independent, and owns a business teaching individuals with disabilities how to use mobile assistive technology.

15.  Plaintiff Anne West has at all material times to this Complaint resided in Hartford County, Connecticut. Plaintiff West is legally blind. Plaintiff West's mother had rubella during pregnancy, and as a result Plaintiff West was born totally blind. She has been a business owner for several years and every day relies upon

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

5

1  auxiliary aids and services such as screen reading software, accessible electronic and

2  information technologies, and other methods of making visually delivered materials

3  available to persons who are blind or have low vision in her personal and

4  professional life.

5      16.    Plaintiffs are therefore members of a protected class under the ADA,

6  42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28

7  C.F.R. §§ 36.101 *et seq*., the Unruh Act, Cal. Civ. Code, § 51 *et seq.,* and the

8  Disabled Persons Act, Cal. Civ. Code § 54, *et seq.*

9      17.    Quest Diagnostics Clinical Laboratories, Inc., is a Delaware

10  corporation, doing business in California since 1976. Quest Diagnostics Clinical

11  Laboratories, Inc., is a wholly owned (100%) subsidiary of Quest Diagnostics

12  Holdings Incorporated.

13      18.    Quest Diagnostics Holdings Incorporated is a Delaware corporation

14  and is a wholly owned (100%) subsidiary of Quest Diagnostics Incorporated.

15      19.    Quest Diagnostics Incorporated is and at all times relevant hereto was,

16  a Delaware Corporation, and has been doing business in California since 2004. Each

17  of the Quest Defendants has its principal place of business in Secaucus, New Jersey.

18      20.    Defendants own and operate laboratories, patient service centers,

19  offices, and other facilities throughout the United States. Defendants are "the

20  world's leading provider of diagnostic testing, information and services that patients

21  and doctors need to make better healthcare decisions. [Its] services range from

22  routine blood tests – such as total cholesterol, Pap testing and white blood cell count

23  – to complex, gene-based and molecular testing." See, "Our Products & Services,"

24  at https://www.questdiagnostics.com/home/about/products-services.html (last

25  accessed July 26, 2019). Defendant Quest Diagnostic Incorporated "annually serves

26  one in three adult Americans and half the physicians and hospitals in the United

27  States..." See, "Fact Sheet," at http://newsroom.questdiagnostics.com/

28  index.php?s=30664 (last accessed July 26, 2019).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

21.     The Quest Diagnostics location which Plaintiff Vargas encountered was at 4849 Van Nuys Boulevard, Sherman Oaks, California. The Quest Diagnostics locations which Plaintiff West encountered were 365 Queen Street, Unit C, Southington, Connecticut, and 183 North Mountain Road, New Britain, Connecticut.

22.     Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7)(G) and Defendants are subject to the requirements of the ADA, the Unruh Act, and the Disabled Persons Act.

23.     The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as Does 1 through 10, are unknown to Plaintiffs at this time. Plaintiffs will amend this Complaint to allege their true names and capacities when known. Plaintiffs are informed and believe and thereon allege that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged in this Complaint.

24.     Plaintiffs allege that Defendants, including Doe Defendants, and each of them at all times mentioned in this Complaint were the alter egos, agents and/or employees and/or employers of their Co-Defendants and in doing the things alleged in this Complaint were acting within the course of such agency and/or employment and with the permission and consent of their Co-Defendants.

## FACTUAL BACKGROUND

**Plaintiffs Have Been Denied Full and Equal Access to Defendants' Facilities**

25.     Plaintiff Vargas visited Defendant's patient service center located at 4849 Van Nuys Boulevard, Sherman Oaks, California, on June 25, 2019. In order to sign in at the Quest location, Plaintiff Vargas was required to use an inaccessible touchscreen kiosk, such that Plaintiff Vargas was denied the benefits of Defendants' health care services, facilities, privileges, and advantages, and was segregated and otherwise treated differently than sighted individuals. Defendants maintain e-Check-in touchscreen kiosks for patients to sign in and register, but for visually impaired

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

7

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

persons there is no way to navigate the system and indicate to Defendants' staff that they are there for an appointment. It was by chance that an employee appeared to call another patient back that Plaintiff Vargas was able to ask that person for help, informing the employee he was there for routine bloodwork. Plaintiff Vargas had to provide this private information in a nonconfidential setting, causing him significant distress and embarrassment.

26.     Plaintiff West visited Defendants' patient service centers located at 365 Queen Street, Unit C, Southington, Connecticut, and 183 North Mountain Road, New Britain, Connecticut. Like Plaintiff Vargas, in order to sign in, Plaintiff West was required to use an inaccessible touchscreen kiosk, such that Plaintiff West was denied the benefits of Defendants' health care services, facilities, privileges, and advantages, and was segregated and otherwise treated differently than sighted individuals. Defendants maintain e-Check-in touchscreen kiosks for patients to sign in and register, but for visually impaired persons there is no way to navigate the system and indicate to Defendants' staff that they are there for an appointment.

27.     As a result of Defendants' failure to ensure effective communications with Plaintiffs, and denial of auxiliary aid and services, Plaintiffs received services that were objectively substandard, inaccessible, and inferior to those provided to sighted patients, and were subjected to discriminatory treatment because of their disability.

28.     Despite this difficulty, frustration, and unequal treatment, Plaintiffs will seek Defendants' health care services in the future, as Defendants partner with nearly every major medical institution for lab work,[1] and further, because of the proximity of Defendant's facilities to their homes and their insurance coverage. Specifically, both named Plaintiffs will have to return to Defendants' facilities and

---

[1] *See,* http://newsroom.questdiagnostics.com/index.php?s=30664 (last accessed Sept. 15, 2019) (Quest "[s]erves about half of the physicians and hospitals in the U.S.")

anticipate being required to do so in order to have additional testing completed, but are deterred from doing so due to the discrimination they have faced and expect to face in the future. Furthermore, Plaintiffs intend to return to Defendants' facilities to ascertain whether those facilities remain in violation of accessibility standards.

**Defendants Repeatedly Deny Individuals With Disabilities Full and Equal Access to Defendants' Facilities.**

29.     As the owner and manager of their properties, Defendants employ centralized policies, practices, and procedures with regard to its company-wide policy of electronic check-in at its patient service centers. Defendants' SEC filings indicate they rolled out the e-check-in touchscreen kiosks in 60% of their locations by 2017, and by the first quarter of 2018, the touchscreen kiosks were in every location.

30.     Though Defendants may have centralized policies regarding the roll-out of company-wide e-Check-in touchscreen kiosks, and the maintenance and operation of its e-Check-in touchscreen kiosks, Defendants have never had a plan or policy that is reasonably calculated to make their e-Check-in touchscreen kiosks fully accessible to, and independently usable by, individuals with vision related disabilities.

31.     As a result of Defendants' non-compliance with the ADA, Disabled Persons Act, and Unruh Act, Plaintiffs have been denied the benefit of full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages, or accommodations, have been denied participation in and have been treated unequally by Defendants, and Defendants have failed to provide effective and accessible auxiliary aids or services that protect Plaintiffs' privacy and independence.

32.     If Defendants' e-Check-in touchscreen kiosks were accessible, i.e. if Defendants removed and remediated the access barriers described above, Plaintiffs could independently and privately utilize Defendants' products and services.

CLASS ACTION COMPLAINT

33.     Unfortunately, Defendants deny approximately 8.1 million[2] Americans who have difficulty seeing access to their goods, products, and services because the e-Check-in touchscreen kiosks are not readily accessible and usable by persons with visual impairments.

## JURISDICTION AND VENUE

34.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.§ 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

35.     This Court has personal jurisdiction over Defendants because Defendants maintains their headquarters in California, have sufficient minimum contacts with California, or have otherwise purposely availed themselves of the markets in California through the promotion, marketing, and sale of their products and services in California to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Specifically, Defendants are registered to do business in California and have been doing business in California, including the Central District of California. Quest has 6,600 patient access points, and 2,250 of Quest's own patient service centers.[3]

---

[2]     Press Release, United States Census Bureau, Nearly 1 in 5 People Have a Disability in the U.S., Census Bureau Reports *Report Released to Coincide with 22nd Anniversary of the ADA* (Jul. 25, 2012), *available at* https://www.census.gov/newsroom/releases/archives/miscellaneous/cb12-134.html (last accessed April 25, 2019) ("About 8.1 million people had difficulty seeing, including 2.0 million who were blind or unable to see.").

[3] See, http://newsroom.questdiagnostics.com/index.php?s=30664 (last accessed Sept. 15, 2019).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

10

Defendants do substantial business in this judicial district, operating a Quest Diagnostics Nichols Institute in San Juan Capistrano, clinical trial laboratories in San Juan Capistrano and Northridge, and major laboratory facilities in West Hills,[4] in addition to over 120 Quest Diagnostics patient service centers in the District.[5]

36.     Venue is proper under 28 U.S.C. § 1391(a) and (b)(2) because Defendants are subject to personal jurisdiction in this District because Defendants do substantial business in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District. Defendant engaged in the extensive promotion, marketing, distribution, and sales of the servcies at issue in this District.

## CLASS ALLEGATIONS

37.     Plaintiffs bring this matter on behalf of themselves and those similarly situated.

38.     Plaintiffs seek certification of the following Nationwide Class: "all legally blind individuals who visited a Quest Diagnostics patient service center in the United States and were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to Quest Diagnostic's failure to comply with the ADA's auxiliary aids and services requirements during the Class Period." (the "Nationwide Injunctive Class"). Plaintiffs reserve the right to amend or modify the Class definition in connection with a motion for Class certification and/or the result of discovery.

39.     Plaintiff Vargas also seeks certification of the following California sub-class: "all legally blind individuals who visited a Quest Diagnostics patient service center in California and were denied full and equal enjoyment of the goods,

---

[4] See, https://www.questdiagnostics.com/home/about/locations/regional-contact.html (last accessed September 15, 2019).

[5] See, https://appointment.questdiagnostics.com/patient/findlocation (last accessed September 15, 2019).

11

services, facilities, privileges, advantages, or accommodations due to Quest's use of touchscreen check-in kiosks." Plaintiff Vargas reserves the right to amend or modify the sub-Class definition in connection with a motion for Class certification and/or the result of discovery.

40.     The California sub-class seeks classwide damages pursuant to California Civil Code § 52(a) in the amount of $4,000 per violation and, pursuant to California Civil Code § 54.3 in the amount of $1,000 per violation, based on Defendants' wrongful policy and practice of failing to provide full and equal access to visually impaired Californians as alleged herein. This action does not seek class recovery for actual damages, personal injuries or emotional distress that may have been caused by Defendants' conduct alleged herein.

41.     This action should be certified as a class action under Federal Rule of Civil Procedure 23(a) and (b)(2) for the Nationwide Injunctive Class. It satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

A.     Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs anticipate there are tens of thousands of legally blind individuals who are Class Members who have been harmed and suffered discrimination due to Defendants' failure to comply with the ADA's auxiliary aids and services requirements.

B.     Commonality: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are denied their civil rights to full and equal access to, and use and enjoyment of Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as described above.

C.     Typicality: Plaintiffs' claims are typical of the claims of the members

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

of the proposed Nationwide Injunctive Class. The claims of Plaintiffs and members of the class are based on the same legal theories and arise from the same unlawful conduct.

D.   <u>Adequacy</u>: The Plaintiffs are all adequate Class representatives. None of their interests conflict with the interests of the Class Members they seek to represent; Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the class, all of whom are similarly situated individuals with visual impairments, and they have a strong interest in vindicating their own and others civil rights; and, they have retained counsel competent and experienced in complex class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA and Unruh Act.

42.   Class certification of the Nationwide Injunctive Class is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted on or refused to act on grounds generally applicable to the Class, making appropriate declaratory, injunctive, and equitable relief with respect to Plaintiffs and the Class as a whole.

43.   This action should be further certified as a class action under Federal Rule of Civil Procedure 23(a) and (b)(3) for the California Unruh and Disabled Persons Damages Sub-Class. Plaintiff Vargas asserts the subclass, limited to class members who are, or during the relevant time were, residents of California, satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy for the same reasons set forth in preceding paragraph. In addition:

A.   <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the California Unruh and Disabled Persons Damages Sub-Class. The Class issues fully predominate over any individual issue because no inquiry into

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

13

individual conduct is necessary; all that is required is a narrow focus on Defendants' encounters with legally blind California residents in its facilities.

B.   Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

i.   The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

ii.   The individual claims of the Class Members are relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

iii.   When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

iv.   This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

v.   Plaintiffs know of no difficulties to be encountered in the management of this action that would preclude its maintenance as a class action;

vi.   A class action will assure uniformity of decisions among Class Members;

v.   The Class is readily identifiable from Defendants' own records and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and,

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

14

vi.   Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action.

43.   Accordingly, this case should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE ADA, TITLE III**

**[42 U.S.C. §§ 12101 *et seq.*]**

**(Against all Defendants)**

44.   Plaintiffs restate each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

45.   At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, *et seq.* was in full force and effect and applied to Defendant's conduct.

46.   At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendants' conduct.

47.   At all times relevant to this action, Plaintiffs have been substantially limited in the major life activities of seeing. Accordingly, they are considered individuals with a disability as defined under the ADA, 42 U.S.C. § 12102(2).

48.   Defendants own, lease, and/or operate patient service centers that are places of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

49.     Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations." 42 U.S.C. § 12182(a).

50.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation cannot deny participation or offer unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A); 28 C.F.R. §§ 36.202.

51.     Pursuant to Title III of the ADA and its implementing regulations it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

52.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation shall furnish appropriate auxiliary aids and services to ensure effective communication with individual with disabilities. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(b)(1).

53.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation, in choosing the type of auxiliary aid or service to ensure effective communication, must consider the "method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(1)(ii).

54.     Pursuant to Title III of the ADA and its implementing regulations, in order to be effective, the type of auxiliary aid or service provided by the public accommodations "must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a

16

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

disability." 28 C.F.R. § 36.303(c)(1)(ii). To this end, the Ninth Circuit has explained, "assistive technology is not frozen in time: as technology advances, [ ] accommodations should advance as well." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163 (9th Cir. 2011)

55.    Auxiliary aids and services include, but are not limited to, audio recordings, screen reader software, magnification software, optical readers, secondary auditory programs, large print materials, accessible electronic and information technology, other effective methods of making visually delivered materials available to individuals who are blind or have low vision, and other similar services and actions. 28 C.F.R. §§ 36.303(b)(2), (4).

56.    Defendants discriminated against the individual Plaintiffs on the basis of their disability by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of their places of public accommodation, and equal opportunity to participate in and benefit from Defendants' health care services, in violation of the ADA.

57.    Defendants further discriminated against the individual Plaintiffs by failing to ensure effective communication through the specific provision of accessible and effective auxiliary aids and services.

58.    Defendants violated Title III by, without limitation, failing to take the steps necessary to make their e-Check-in touchscreen kiosks readily accessible and usable by persons with visual impairments, thereby denying individuals with visual disabilities the benefits of the e-Check-in touchscreen kiosks and electronic check-in, providing them with benefits that are not equal to those they provide others, and denying them effective communication.

59.    Defendants further violated Title III by, without limitation, utilizing administrative methods, practices, and policies that allow their e-Check-in touchscreen kiosks to be made available without consideration of consumers who

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

17

can only participate in and benefit from Defendants' health care services with screen reader programs.

60.     Making their e-Check-in touchscreen kiosks readily accessible and usable by persons with visual impairments does not change the content of Defendants' electronic check-in procedure or result in making the electronic check-in procedure different, but rather enables individuals with visual disabilities to access e-Check-in touchscreen kiosks that Defendants already provide to sighted individuals.

61.     As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiffs and/or other visually impaired persons seeking Defendants' laboratory services.

62.     Plaintiffs are therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE UNRUH CIVIL RIGHTS ACT

### [Cal. Civil Code § 51, *et seq.*]

### (Against all Defendants)

63.     Plaintiffs restate each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

64.     The Unruh Civil Rights Act, California Civil Code § 51 provides that:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b).

65.     Defendants are a business establishment within the meaning of the

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

18

Unruh Act. Defendants are the owners and operators of business establishments.

66.     Defendants violated the Unruh Act by their acts and omissions, as set forth herein. Specifically, Quest's system for offering to the public touchscreen check-in kiosks at thousands of locations throughout California is a business establishment within the meaning of Civil Code § 51, *et seq.* Quest generates hundreds of millions of dollars in revenue from the appointments which patients check-in for through the use of e-Check-in touchscreen kiosks. The Quest kiosks are an accommodation, advantage, facility, privilege, and service provided by Quest, which are inaccessible to blind patrons. This inaccessibility denies blind patients full and equal access to the accommodations, advantages, facilities, privileges, and services that Defendants make available to the non-disabled public, in violation of the Unruh Civil Rights Act, California Civil Code § 51, *et seq.* These violations are ongoing.

67.     Defendants' actions constitute intentional discrimination against the class on the basis of a disability in violation of California Civil Code §§51, et seq. Defendants are aware of the complete lack of access of the touchscreen check-in kiosks to blind persons yet have deliberately chosen to provide a benefit and service that is inaccessible to the blind.

68.     Defendants are additionally violating California Civil Code § 51, in that the conduct alleged herein constitutes a violation of various provisions of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, as set forth above. California Civil Code § 51(f) provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

69.     The actions of Defendants were and are in violation of the Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.*, and therefore Plaintiffs are entitled to injunctive relief remedying the discrimination. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs and members of the class will continue to suffer irreparable harm.

70.     Plaintiffs are further entitled to statutory minimum damages pursuant to California Civil Code § 52 for every individual violation; i.e., each time a legally blind individual had to try to check-in using the inaccessible touchscreen kiosk.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE DISABLED PERSONS ACT

### [Cal. Civil Code §§ 54-54.3.]

### (Against all Defendants)

71.     Plaintiffs restate each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

72.     California Civil Code§§ 54-54.3 guarantee full and equal access for people with disabilities to all accommodations, advantages, facilities, and privileges of "all places of public accommodation" and "other places to which the general public is invited." Quest's thousands of patient service center locations throughout California featuring the inaccessible e-Check-in touchscreen kiosks constitute "places of public accommodation" or "other places where the public is invited" within the meaning of California Civil Code §§ 54-54.3.

73.     Quest's patient services locations constitute accommodations, advantages, facilities, and privileges provided by Defendants to members of the public in California and are, therefore, subject to the access requirements of California Civil Code § 54.1 applicable to "all places of public accommodation" and "other places to which the general public is invited."

74.     Defendants are violating the right of visually disabled persons to full and equal access to public places by denying full and equal access to Quest's e-Check-in touchscreen kiosks in violation of California Civil Code §§ 54-54.3.

75.     Defendants are also violating California Civil Code §§ 54-54.3, in that their actions are a violation of the ADA. Any violation of the ADA is also a violation of California Civil Code § 54.1.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

76.     As a result of Defendants' wrongful conduct, the individually-named Plaintiff Vargas and the California sub-class are entitled to statutory minimum damages under California Civil Code § 54.3 for each offense.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the members of the Class, pray for:

a.     A Declaratory Judgment that at the commencement of this action Defendants were in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants took no action that was reasonably calculated to ensure that their e-Check-in touchscreen kiosks were fully accessible to, and independently usable by, individuals with visual disabilities;

b.     A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) , and California Civil Code, § 51 *et seq.,* which directs Defendants to take all steps necessary to bring their e-Check-in touchscreen kiosks into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that their e-Check-in touchscreen kiosks are fully accessible to, and independently usable by individuals with visual disabilities, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendants have adopted and is following an institutional policy that will in fact cause it to remain fully in compliance with the law— the specific injunctive relief requested by Plaintiffs are described more fully in paragraph 11 above.

c.     A permanent injunction enjoining Defendants from continuing their discriminatory conduct;

d.     An Order certifying the classes proposed by Plaintiffs, naming

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1   Plaintiffs as class representatives, and appointing their counsel as class

2   counsel;

3   e.   Payment of statutory damages, in accordance with California Civil

4   Code §§ 52(a) and 54.3 to the California sub-class;

5   f.   Payment of costs of suit;

6   g.   Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205,

7   28 CFR § 36.505, Cal. Civil Code §52, and Civ. Proc. Code § 1021.5,

8   including costs of monitoring Defendants' compliance with the

9   judgment (*see Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*,

10  Case No. 2:16-cv-01898-AJS (W.D. Pa. Jan. 11, 2018) (ECF 191)

11  ("Plaintiffs, as the prevailing party, may file a fee petition before the

12  Court surrenders jurisdiction. Pursuant to *Pennsylvania v. Delaware*

13  *Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986),

14  *supplemented*, 483 U.S. 711 (1987), the fee petition may include costs

15  to monitor Defendant's compliance with the permanent injunction.");

16  *see also Access Now, Inc. v. Lax World, LLC*, No. 1:17-cv-10976-DJC

17  (D. Mass. Apr. 17, 2018) (ECF 11) (same);

18  h.   Award of prejudgment interest pursuant to California Civil Code §

19  3291;

20  i.   An Order retaining jurisdiction over this case until Defendants have

21  complied with the Court's Orders; and,

22  j.   The provision of whatever other relief the Court deems just, equitable

23  and appropriate.

24

Dated: September 18, 2019          NYE, STIRLING, HALE & MILLER, LLP

25

26                                 By:   */s/ Jonathan D. Miller*

27                                 Jonathan D. Miller, Esq.
                                   Alison M. Bernal, Esq.
                                   Jordan T. Porter, Esq.
28

*Additional Counsel Listed Below.*

22

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

THE SWEET LAW FIRM, P.C.

By:   */s/ Benjamin J. Sweet*
      Benjamin J. Sweet, Esq.
      *[To be admitted Pro Hac Vice]*

Attorneys for Plaintiffs Julian Vargas, Anne West, and the Proposed Class

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

23

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs JULIAN VARGAS and ANNE WEST hereby demand a trial by jury of all claims so triable in the above-referenced matter.

Dated: September 18, 2019        NYE, STIRLING, HALE & MILLER, LLP

By:   */s/ Jonathan D. Miller*
Jonathan D. Miller, Esq.
Alison M. Bernal, Esq.
Jordan T. Porter, Esq.

THE SWEET LAW FIRM, P.C.

By:   */s/ Benjamin J. Sweet*
Benjamin J. Sweet, Esq.
*[To be admitted Pro Hac Vice]*

Attorneys for Plaintiffs Julian Vargas,
Anne West, and the Proposed Class

CLASS ACTION COMPLAINT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101