Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590

Benjamin J. Sweet
(admission pro hac vice pending)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

Attorneys for Plaintiffs Julian Vargas, Anne West, American Council of the Blind, and the Proposed Class

*Additional Counsel Listed on Signature Page*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN VARGAS, ANNE WEST, and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.: 2:19-cv-8108<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1.   Violation of Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 *et seq.*)<br><br>2.   Violation of California's Unruh Civil Rights Act (Cal. Civil Code § 51 *et seq.*)<br><br>3.   Violation of Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a).<br><br>4.   Violation of California Disabled Persons Act (Cal. Civil Code § 54 54.3)<br><br>JURY TRIAL DEMANDED |

Plaintiffs Julian Vargas and Anne West (hereinafter the "Individual Plaintiffs"), individually and on behalf of all others similarly situated, and Plaintiff American Council of the Blind (hereinafter "ACB," and together with the "Individual Plaintiffs," the "Plaintiffs"),  by their attorneys, assert the following

1

upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on their personal knowledge:

## NATURE OF THE ACTION

1.     Plaintiffs Julian Vargas and Anne West are visually impaired individuals who rely upon auxiliary aids and services such as screen reading software, accessible electronic and information technologies, and other effective methods of making visually delivered materials available to persons who are blind or have low vision. Plaintiff ACB is a nationwide membership organization of blind and visually impaired persons. ACB's mission is to increase the independence, security, equality of opportunity, and quality of life for all blind and visually impaired people.

2.     Defendants Quest Diagnostics Clinical Laboratories, Inc., Quest Diagnostics Holdings, Inc., Quest Diagnostics Incorporated, and Does 1 through 10 (collectively "Defendants" and/or "Quest Diagnostics") discriminated against Plaintiffs by refusing and failing to provide auxiliary aids and services to Plaintiffs, and by requiring Plaintiffs to rely upon other means of communication that are inadequate to provide equal opportunity to participate in and benefit from Defendants' health care services free from discrimination. Specifically, all Quest Diagnostics patient service centers make use of an exclusively visual, touch-screen interface that is inaccessible to the blind.

3.     The Individual Plaintiffs bring this action individually and on behalf of all others similarly situated to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure Plaintiffs effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendants' services. Plaintiffs seek declaratory, injunctive, and equitable relief and attorneys' fees and costs to redress Defendants' unlawful discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its

2

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

implementing regulations. Additionally, Plaintiff Vargas bring this action individually and on behalf of all other similarly situated California residents and seeks declaratory, injunctive, and equitable relief and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of California's Unruh Civil Rights Act, California Civil Code § 51 *et seq.* ("Unruh Act"), Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) ("The Rehabilitation Act") and California's Disabled Persons Act, California Civil Code § 54, *et seq.* ("Disabled Persons Act"), and for statutory damages in accordance with California Civil Code §§ 52(a) and 54.3.

4.     The Individual Plaintiffs have visited Defendants' facilities in California and Connecticut, and were denied full and equal access as a result of Defendants' inaccessible Check-in System, which includes e-Check-in touchscreen kiosks for self-service check-in. Similar denials of full and equal access to Defendants' services have been faced around the country by members of Plaintiff ACB. Defendants require all patients use the inaccessible e-Check-in touchscreen kiosks to announce their arrival, sign in and/or register for appointments.

5.     Defendants' e-Check-in touchscreen kiosks for self-service check-in do not contain the necessary technology that would enable a person with a visual impairment to a) enter any personal information necessary to process a transaction in a manner that ensures the same degree of personal privacy afforded to those without visual impairments; or b) use the device independently and without the assistance of others in the same manner afforded to those without visual impairments. As a result, the Individual Plaintiffs, members of Plaintiff ACB and all other visually impaired individuals are forced to seek the assistance of a sighted person, and thereafter divulge their personal medical information to that sighted person in a nonconfidential setting in order to register.

6.     By failing to make their Check-in system accessible to visually impaired persons, Defendants, public accommodations subject to Title III of the

3

ADA, the Disabled Persons Act, the Rehabilitation Act, and the Unruh Act, deprive blind and visually-impaired individuals the full benefits of Defendants' health care services—all benefits they afford nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III of the ADA, the Disabled Persons Act, the Rehabilitation Act, and the Unruh Act were meant to redress.

7.     Defendants have demonstrated through their interactions with the Individual Plaintiffs and members of ACB that they have adopted a policy and/or pattern and practice of refusing to provide an accessible Check-in system for their visually impaired patients, and that this decision, on information and belief, is based purely on financial considerations, that resulted in the violation of Plaintiffs' civil rights, in order for Defendants to realize a three per cent (3%) quarterly cost savings through its "Invigorate" program while reporting $236,000,000 of net income in the quarter ending June 30, 2019.

8.     Defendants have further demonstrated through their interactions with the Individual Plaintiffs and members of ACB that Defendants' employees are not properly trained regarding the civil rights, communication needs, privacy considerations, or how to interact with visually impaired individuals.

9.     Defendants' discrimination sends a message that it is acceptable for medical providers to adopt policies, procedures and practices that deprive blind and visually impaired individuals of the opportunity to be full partners in their receipt of health care services in exchange for a 3% cost savings.

10.     The ADA and the Unruh Act expressly contemplate injunctive relief aimed at modification of a policy or practice that Plaintiffs seek in this action. In relevant part, the ADA states:

> Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods…

42 U.S.C. § 12188(a)(2); Cal. Civ. Code, § 52(c)(1).

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

11.     Consistent with 42 U.S.C. § 12188(a)(2) and the Unruh Act, Plaintiffs seek a permanent injunction requiring that:

    a.    Defendants take all steps necessary to bring their Check-in system into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that so that blind and visually impaired patients of Quest may check in independently, including ensuring that the arrival of a blind or visually impaired patient is promptly recognized by Quest and that Quest's e-Check-in touchscreen kiosks are fully accessible to, and independently usable by individuals with visual disabilities, through the implementation of necessary technology that would enable persons with a visual impairment to enter any personal information necessary to process a transaction in a manner that ensures the same degree of personal privacy afforded to those without visual impairments and use the device independently and without the assistance of others in the same manner afforded to those without visual impairments;

    b.    Defendants change their policies and practices so that these barriers to accessibility do not reoccur; and

    c.    Plaintiffs' representatives monitor Defendants' facilities to ensure the injunctive relief ordered pursuant to Paragraph 11.a. and 11.b. has been implemented and will remain in place.

12.     Plaintiffs' claims for permanent injunctive relief are asserted as a nationwide class claim pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiffs seek injunctive relief for their own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

5

declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . ..  Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

13.    In addition, Plaintiff Vargas' claims for statutory damages pursuant to California Civil Code §§ 52(a) and 54.3 are asserted as a California statewide class claim pursuant to Fed. R. Civ. P. 23(b)(3).

## **PARTIES**

14.    Plaintiff American Council of the Blind was founded in 1961, and is a national membership organization of approximately 20,000 blind and visually impaired persons, organized as a non-profit corporation under the laws of the District of Columbia. ACB has members in all 50 states and the District of Columbia, and seeks to increase the independence, security, equality of opportunity, and quality of life for all blind and visually impaired people. ACB brings this action in an associational capacity on behalf of its blind and visually impaired members who have been and will continue to be denied the full and equal enjoyment of Defendants' goods and services. ACB exists to ensure that governments, businesses, employers and other individuals comply with the laws that protect the rights of people who are blind or visually impaired to participate fully in all aspects of American society. ACB's members around the nation are current and/or potential customers of Defendants and seek access to Defendants' goods and services on a private and equal basis. However, ACB members have encountered persistent barriers to accessibility during the registration process at Defendants' clinics.

15.    Plaintiff Julian Vargas has at all material times to this Complaint resided in Los Angeles, California. Plaintiff was born with a genetic eye disorder called Leber congenital amaurosis ("LCA"), and as a result is legally blind. Plaintiff is independent, and owns a business teaching individuals with disabilities how to use mobile assistive technology.

16.    Plaintiff Anne West has at all material times to this Complaint resided

6

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

in Hartford County, Connecticut. Plaintiff West is legally blind. Plaintiff West's mother had rubella during pregnancy, and as a result Plaintiff West was born totally blind. She has been a business owner for several years and every day relies upon auxiliary aids and services such as screen reading software, accessible electronic and information technologies, and other methods of making visually delivered materials available to persons who are blind or have low vision in her personal and professional life.

17.     The Individual Plaintiffs and members of ACB are therefore members of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 et seq., the Unruh Act, Cal. Civ. Code, § 51 et seq., and the Disabled Persons Act, Cal. Civ. Code § 54, et seq.

18.     Quest Diagnostics Clinical Laboratories, Inc., is a Delaware corporation, doing business in California since 1976. Quest Diagnostics Clinical Laboratories, Inc., is a wholly owned (100%) subsidiary of Quest Diagnostics Holdings Incorporated.

19.     Quest Diagnostics Holdings Incorporated is a Delaware corporation and is a wholly owned (100%) subsidiary of Quest Diagnostics Incorporated.

20.     Quest Diagnostics Incorporated is a Delaware Corporation, and has been doing business in California since 2004. Each of the Quest Defendants has its principal place of business in Secaucus, New Jersey.

21.     Defendants own and operate laboratories, patient service centers, offices, and other facilities throughout the United States. Defendants are "the world's leading provider of diagnostic testing, information and services that patients and doctors need to make better healthcare decisions. [Its] services range from routine blood tests – such as total cholesterol, Pap testing and white blood cell count – to complex, gene-based and molecular testing." See, "Our Products & Services," at https://www.questdiagnostics.com/home/about/products-services.html (last accessed July 26, 2019). Defendant Quest Diagnostic Incorporated "annually serves

7

one in three adult Americans and half the physicians and hospitals in the United States..." See, "Fact Sheet," at http://newsroom.questdiagnostics.com/ index.php?s=30664 (last accessed July 26, 2019).

22.     The Quest Diagnostics location which Plaintiff Vargas encountered was at 4849 Van Nuys Boulevard, Sherman Oaks, California. The Quest Diagnostics locations which Plaintiff West encountered were at 365 Queen Street, Unit C, Southington, Connecticut, and 183 North Mountain Road, New Britain, Connecticut. Members of ACB have visited Quest locations around the country and encountered similar barriers to accessibility as those encountered by the individual Plaintiffs.

23.     Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7)(G) and Defendants are subject to the requirements of the ADA, the Unruh Act, The Rehabilitation Act, and the Disabled Persons Act.

24.     The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as Does 1 through 10, are unknown to Plaintiffs at this time. Plaintiffs will amend this Complaint to allege their true names and capacities when known. Plaintiffs are informed and believe and thereon allege that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged in this Complaint.

25.     Plaintiffs allege that Defendants, including Doe Defendants, and each of them at all times mentioned in this Complaint were the alter egos, agents and/or employees and/or employers of their Co-Defendants and in doing the things alleged in this Complaint were acting within the course of such agency and/or employment and with the permission and consent of their Co-Defendants.

## FACTUAL BACKGROUND

**The Individual Plaintiffs and Members of ACB Have Been Denied Full and Equal Access to Defendants' Facilities**

26.     Plaintiff Vargas visited Defendant's patient service center located at

8

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

4849 Van Nuys Boulevard, Sherman Oaks, California, on June 25, 2019. In order to sign in at the Quest location, Plaintiff Vargas was required to use an inaccessible touchscreen kiosk, such that Plaintiff Vargas was denied the benefits of Defendants' health care services, facilities, privileges, and advantages, and was segregated and otherwise treated differently than sighted individuals. Defendants maintain e-Check-in touchscreen kiosks for patients to sign in and register, but for visually impaired persons there is no way to navigate the system and indicate to Defendants' staff that they are there for an appointment. It was by chance that an employee appeared to call another patient back that Plaintiff Vargas was able to ask that person for help, informing the employee he was there for routine bloodwork. Plaintiff Vargas had to provide this private information in a nonconfidential setting, causing him significant distress and embarrassment.

27.     Plaintiff West visited Defendants' patient service centers located at 365 Queen Street, Unit C, Southington, Connecticut, and 183 North Mountain Road, New Britain, Connecticut. Like Plaintiff Vargas, in order to sign in, Plaintiff West was required to use an inaccessible touchscreen kiosk, such that Plaintiff West was denied the benefits of Defendants' health care services, facilities, privileges, and advantages, and was segregated and otherwise treated differently than sighted individuals. Defendants maintain e-Check-in touchscreen kiosks for patients to sign in and register, but for visually impaired persons there is no way to navigate the system and indicate to Defendants' staff that they are there for an appointment

28.     Member of ACB have had similar experiences to the Individual Plaintiffs.

29.     ACB member Robin Rehder is a resident of Henderson, Nevada and is blind. She has been a Quest Diagnostics customer for approximately five years. Specifically, she has had her blood drawn at the Quest Diagnostics location at 210 North Boulder Highway, Henderson, Nevada 89015 for several years, usually twice a year. Ms. Rehder is a Medicare beneficiary. Last year, she went to Quest

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Diagnostics for her lab work and there was no one at the front desk to check her in. Since she is blind, she had no way of knowing she needed to use the tablet to check-in. No one came to the front desk to help her and she waited, confused. Eventually, another patient arrived and used the tablet to check-in for her. Ms. Rehder was embarrassed to have to give her personal information to a stranger in order to check-in as a patient at Quest Diagnostics.

30.    ACB member Mary Haroyan lives in Worcester, Massachusetts and is blind. She is an active computer and smart phone user and a Braille reader. She has been a Quest Diagnostics customer for approximately five years and is a Medicare beneficiary. She uses the Quest Diagnostics location at 1 West Boylston Worcester, Massachusetts 01606. Given that Ms. Haroyan is an active technology user, she attempted to use Quest Diagnostics' tablet to check-in the first time she went to the lab after the addition of the tablets. But the tablet was not accessible to her. There was no audio function that would allow Ms. Haroyan to independently use the tablet. Ms. Haroyan regularly uses the text-to-voice feature on her phone and would have been able to read the tablet if it had been made accessible. She was forced to ask the person who drove her to the appointment to fill out the tablet for her. During another visit, she had to have a fellow patient fill out the tablet for her. She felt embarrassed for having to ask for this type of assistance with personal information.

31.    ACB member Nona Haroyan lives in Worcester, Massachusetts with her sister, Mary. Ms. Haroyan is legally blind and is an active computer and smart phone user. She has been a Quest Diagnostics customer for approximately five years. She is a recipient of Mass Health, which is the Medicaid program in her state. She uses the Quest Diagnostics location at 1 West Boylston, Worcester, MA 01606. Like her sister, Nona is an active technology user and she attempted to use Quest Diagnostic's tablet to check-in the first time she went to the lab after the addition of the tablets. But the tablet was not accessible to her. There was no audio function that would allow Ms. Haroyan to independently fill out the tablet. Ms. Haroyan regularly

FIRST AMENDED CLASS ACTION COMPLAINT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

uses the text-to-voice feature on her phone and would have been to read the tablet if it had been made accessible. But Quest Diagnostics did not offer a way for Ms. Haroyan to check-in independently.

32.     In an attempt to correct this problem, Ms. Haroyan tried to schedule an appointment on Quest Diagnostic's website. She thought that maybe if she made an appointment in advance, it would prevent the need to check-in once she arrived. Unfortunately, she ran into several problems when she tried to make the appointment on the website. The website was also not accessible to her screen reader technology. She was unable to select an appointment time from the drop-down menu with her screen-reader because the website was not programmed to work correctly with a screen-reader. Eventually, Ms. Haroyan was able to make an appointment for her lab work, but she quickly learned it did nothing to help the check-in process. She was still unable to check-in independently and had to have another patient help her.

33.     ACB member Kathy Lyons is a resident of Buffalo, New York and is blind. She has been a Quest Diagnostics customer for approximately five years. Specifically, she has had her blood drawn at the Quest Diagnostics at 2609 Delaware Avenue, Buffalo, NY 14216. Ms. Lyons has always had to ask someone else to check her in since Quest implemented the tablet check-in system. She has either relied on her driver to assist her or had to rely on another patient. She goes to Quest Diagnostics for her lab work once a year, and her last visit was in December 2019. She would like to be able to check-in independently and not rely on strangers to assist her. She finds asking for this type of personal assistance to be embarrassing and an invasion of her privacy.

34.     As a result of Defendants' failure to ensure effective communications with the Individual Plaintiffs and members of ACB, and denial of auxiliary aid services, the Individual Plaintiffs and members of ACB received services that were objectively substandard, inaccessible, and inferior to those provided to sighted

11

patients, and were subjected to discriminatory treatment because of their disability.

35.    Despite this difficulty, frustration, and unequal treatment, the Individual Plaintiffs and members of ACB will seek Defendants' health care services in the future, as Defendants partner with nearly every major medical institution for lab work,[1] and further, because of the proximity of Defendant's facilities to their homes and their insurance coverage. Specifically, both Individual Plaintiffs and members of ACB will have to return to Defendants' facilities and anticipate being required to do so in order to have additional testing completed, but are deterred from doing so due to the discrimination they have faced and expect to face in the future. Furthermore, the Individual Plaintiffs and members of ACB intend to return to Defendants' facilities to ascertain whether those facilities remain in violation of accessibility standards.

**Defendants Repeatedly Deny Individuals With Disabilities Full and Equal Access to Defendants' Facilities.**

36.    As the owner and manager of their properties, Defendants employ centralized policies, practices, and procedures with regard to their company-wide policy of electronic check-in at their patient service centers. Defendants' SEC filings indicate they rolled out the e-check-in touchscreen kiosks in 60% of their locations by 2017, and they were in every location by the first quarter of 2018.

37.    Though Defendants may have centralized policies regarding the roll-out of company-wide e-Check-in touchscreen kiosks, and the maintenance and operation of their e-Check-in touchscreen kiosks, Defendants have never had a plan or policy that is reasonably calculated to make their e-Check-in touchscreen kiosks fully accessible to, and independently usable by, individuals with vision related disabilities.

---

[1] *See,* http://newsroom.questdiagnostics.com/index.php?s=30664 (last accessed Sept. 15, 2019) (Quest "[s]erves about half of the physicians and hospitals in the U.S.")

FIRST AMENDED CLASS ACTION COMPLAINT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

38.     As a result of Defendants' non-compliance with the ADA, Disabled Persons Act, and Unruh Act, the Individual Plaintiffs and members of ACB have been denied the benefit of full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages, or accommodations, have been denied participation in and have been treated unequally by Defendants, and Defendants have failed to provide effective and accessible auxiliary aids or services that protect the Individual Plaintiffs and ACB members' privacy and independence.

39.     If Defendants' Check-in system was accessible, i.e. if Defendants removed and remediated the access barriers described above, Plaintiffs could independently and privately utilize Defendants' products and services.

40.     Unfortunately, Defendants deny approximately 8.1 million[2] Americans who have difficulty seeing access to their goods, products, and services because the Check-in System is not accessible, which includes the lack of accessible and usable e-Check-in touchscreen kiosks by persons with visual impairments.

## JURISDICTION AND VENUE

41.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.§ 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

---

[2]     Press Release, United States Census Bureau, Nearly 1 in 5 People Have a Disability in the U.S., Census Bureau Reports *Report Released to Coincide with 22nd Anniversary of the ADA* (Jul. 25, 2012), *available at* https://www.census.gov/newsroom/releases/archives/miscellaneous/cb12-134.html (last accessed April 25, 2019) ("About 8.1 million people had difficulty seeing, including 2.0 million who were blind or unable to see.").

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

42.     This Court has personal jurisdiction over Defendants because Defendants maintain their headquarters in California, have sufficient minimum contact with California, or have otherwise purposely availed themselves of the markets in California through the promotion, marketing, and sale of their products and services in California to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Specifically, Defendants are registered to do business in California and have been doing business in California, including the Central District of California. Quest has 6,600 patient access points, and 2,250 of Quest's own patient service centers.[3] Defendants do substantial business in this judicial district, operating a Quest Diagnostics Nichols Institute in San Juan Capistrano, clinical trial laboratories in San Juan Capistrano and Northridge, and major laboratory facilities in West Hills,[4] in addition to over 120 Quest Diagnostics patient service centers in the District.[5]

43.     Venue is proper under 28 U.S.C. § 1391(a) and (b)(2) because Defendants do substantial business in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District. Defendants engaged in the extensive promotion, marketing, distribution, and sales of the services at issue in this District.

## CLASS ALLEGATIONS

44.     Plaintiffs Julian Vargas and Anne West ("The Individual Plaintiffs") bring this matter on behalf of themselves and those similarly situated.

45.     The Individual Plaintiffs seek certification of the following Nationwide

---

[3] See, http://newsroom.questdiagnostics.com/index.php?s=30664 (last accessed Sept. 15, 2019).

[4] See, https://www.questdiagnostics.com/home/about/locations/regional-contact.html (last accessed September 15, 2019).

[5] See, https://appointment.questdiagnostics.com/patient/findlocation (last accessed September 15, 2019).

FIRST AMENDED CLASS ACTION COMPLAINT

Class: "all legally blind individuals who visited a Quest Diagnostics patient service center in the United States and were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to Quest Diagnostic's failure to comply with the ADA's and Rehabilitation Act's auxiliary aids and services requirements during the Class Period." (the "Nationwide Injunctive Class"). The Individual Plaintiffs reserve the right to amend or modify the Class definition in connection with a motion for Class certification and/or the result of discovery.

46. Plaintiff Vargas also seeks certification of the following California sub-class: "all legally blind individuals who visited a Quest Diagnostics patient service center in California and were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to Quest's use of touchscreen check-in kiosks." Plaintiff Vargas reserves the right to amend or modify the sub-Class definition in connection with a motion for Class certification and/or the result of discovery.

47. The California sub-class seeks class wide damages pursuant to California Civil Code § 52(a) in the amount of $4,000 per violation and, pursuant to California Civil Code § 54.3 in the amount of $1,000 per violation, based on Defendants' wrongful policy and practice of failing to provide full and equal access to visually impaired Californians as alleged herein. This action does not seek class recovery for actual damages, personal injuries or emotional distress that may have been caused by Defendants' conduct alleged herein.

48. This action should be certified as a class action under Federal Rule of Civil Procedure 23(a) and (b)(2) for the Nationwide Injunctive Class. It satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

A. <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs anticipate there are tens of

15

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

thousands of legally blind individuals who are Class Members who have been harmed and suffered discrimination due to Defendants' failure to comply with the ADA's auxiliary aids and services requirements.

B.   Commonality: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are denied their civil rights to full and equal access to, and use and enjoyment of Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as described above.

C.   Typicality: The Individual Plaintiffs' claims are typical of the claims of the members of the proposed Nationwide Injunctive Class. The claims of the Individual Plaintiffs and members of the class are based on the same legal theories and arise from the same unlawful conduct.

D.   Adequacy: The Individual Plaintiffs are all adequate Class representatives. None of their interests conflict with the interests of the Class Members they seek to represent; the Individual Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the class, all of whom are similarly situated individuals with visual impairments, and they have a strong interest in vindicating their own and others civil rights; and, they have retained counsel competent and experienced in complex class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA and Unruh Act.

49.   Class certification of the Nationwide Injunctive Class is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted on or refused to act on grounds generally applicable to the Class, making appropriate declaratory, injunctive, and equitable relief with respect to the Individual Plaintiffs and the Class

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

as a whole.

50.     This action should be further certified as a class action under Federal Rule of Civil Procedure 23(a) and (b)(3) for the California Unruh and Disabled Persons Damages Sub-Class. Plaintiff Vargas asserts the subclass, limited to class members who are, or during the relevant time were, residents of California, satisfies the class action prerequisites of numerosity, commonality, typicality, and adequacy for the same reasons set forth in preceding paragraph. In addition:

A.     <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the California Unruh and Disabled Persons Damages Sub-Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' encounters with legally blind California residents in its facilities.

B.     <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

i.     The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

ii.     The individual claims of the Class Members are relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not  totally impossible—to justify individual actions;

iii.     When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

1      expensive than if it were attempted through filing, discovery, and

2      trial of all individual cases;

3      iv.   This class action will promote orderly, efficient, expeditious,

4            and appropriate adjudication and administration of Class claims;

5      v.    Plaintiffs know of no difficulties to be encountered in the

6            management of this action that would preclude its maintenance

7            as a class action;

8      vi.   A class action will assure uniformity of decisions among Class

9            Members;

10     vii.  The Class is readily identifiable from Defendants' own records

11           and prosecution of this action as a class action will eliminate the

12           possibility of repetitious litigation; and,

13     viii. Class Members' interests in individually controlling the

14           prosecution of separate actions is outweighed by their interest in

15           efficient resolution by single class action.

16     51.   Accordingly, this case should be maintained as a class action under

17  Rule 23(b)(3) because questions of law or fact common to Class Members

18  predominate over any questions affecting only individual members, and because a

19  class action is superior to other available methods for fairly and efficiently

20  adjudicating this controversy.

21                         **FIRST CAUSE OF ACTION**

22                   **VIOLATION OF THE ADA, TITLE III**

23                     **[42 U.S.C. §§ 12101 *et seq.*]**

24                  **(All Plaintiffs Against all Defendants)**

25     52.   Plaintiffs restate each and every allegation set forth in the foregoing

26  paragraphs of this Complaint with the same force and effect as if more fully set forth

27  herein.

28

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

18

FIRST AMENDED CLASS ACTION COMPLAINT

53.     At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, *et seq.* was in full force and effect and applied to Defendant's conduct.

54.     At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendants' conduct.

55.     At all times relevant to this action, the Individual Plaintiffs and members of Plaintiff ACB have been substantially limited in the major life activities of seeing. Accordingly, they are considered individuals with a disability as defined under the ADA, 42 U.S.C. § 12102(2).

56.     Defendants own, lease, and/or operate patient service centers that are places of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

57.     Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations." 42 U.S.C. § 12182(a).

58.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation cannot deny participation or offer unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A); 28 C.F.R. §§ 36.202.

59.     Pursuant to Title III of the ADA and its implementing regulations it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

19

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

60.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation shall furnish appropriate auxiliary aids and services to ensure effective communication with individual with disabilities. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(b)(1).

61.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation, in choosing the type of auxiliary aid or service to ensure effective communication, must consider the "method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(1)(ii).

62.     Pursuant to Title III of the ADA and its implementing regulations, in order to be effective, the type of auxiliary aid or service provided by the public accommodations "must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii). To this end, the Ninth Circuit has explained, "assistive technology is not frozen in time: as technology advances, [ ] accommodations should advance as well." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163 (9th Cir. 2011)

63.     Auxiliary aids and services include, but are not limited to, audio recordings, screen reader software, magnification software, optical readers, secondary auditory programs, large print materials, accessible electronic and information technology, other effective methods of making visually delivered materials available to individuals who are blind or have low vision, and other similar services and actions. 28 C.F.R. §§ 36.303(b)(2), (4).

64.     Defendants discriminated against the Individual Plaintiffs and members of Plaintiff ACB on the basis of their disability by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of their places of public accommodation, and equal opportunity to

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

20

participate in and benefit from Defendants' health care services, in violation of the ADA.

65.     Defendants further discriminated against the Individual Plaintiffs and members of Plaintiff ACB by failing to ensure effective communication through the specific provision of accessible and effective auxiliary aids and services.

66.     Defendants violated Title III by, without limitation, failing to take the steps necessary to make their Check-in System readily accessible and usable by persons with visual impairments, including failing to make their e-Check-in touchscreen kiosks readily accessible and usable by persons with visual impairments, thereby denying individuals with visual disabilities the benefits of the e-Check-in touchscreen kiosks and electronic check-in, providing them with benefits that are not equal to those they provide others, and denying them effective communication.

67.     Defendants further violated Title III by, without limitation, utilizing administrative methods, practices, and policies that allow their e-Check-in touchscreen kiosks to be made available without consideration of consumers who can only participate in and benefit from Defendants' health care services with screen reader programs.

68.     Making their Check-in System accessible and usable by persons with visual impairments, including making their e-Check-in touchscreen kiosks readily accessible and usable by persons with visual impairments does not change the content of Defendants' electronic check-in procedure or result in making the electronic check-in procedure different, but rather enables individuals with visual disabilities to independently check-in, including independently accessing e-Check-in touchscreen kiosks that Defendants already provide to sighted individuals.

69.     As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiffs and/or other visually impaired persons seeking Defendants' laboratory services.

70.     Plaintiffs are therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE UNRUH CIVIL RIGHTS ACT

### [Cal. Civil Code § 51, *et seq.*]

### (Plaintiff Vargas Against all Defendants)

71.     Plaintiffs restate each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

72.     The Unruh Civil Rights Act, California Civil Code § 51 provides that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b).

73.     Defendants are a business establishment within the meaning of the Unruh Act. Defendants are the owners and operators of business establishments.

74.     Defendants violated the Unruh Act by their acts and omissions, as set forth herein. Specifically, Quest's system for offering to the public touchscreen check-in kiosks at thousands of locations throughout California is a business establishment within the meaning of Civil Code § 51, *et seq.* Quest generates hundreds of millions of dollars in revenue from the appointments which patients check-in for through the use of e-Check-in touchscreen kiosks. The Quest kiosks are an accommodation, advantage, facility, privilege, and service provided by Quest, which is inaccessible to blind patrons. This inaccessibility denies blind patients full and equal access to the accommodations, advantages, facilities, privileges, and services that Defendants make available to the non-disabled public, in violation of

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

the Unruh Civil Rights Act, California Civil Code § 51, *et seq.* These violations are ongoing.

75.     Defendants' actions constitute intentional discrimination against the class on the basis of a disability in violation of California Civil Code §§51, et seq. Defendants are aware of the complete lack of access of the touchscreen check-in kiosks to blind persons yet have deliberately chosen to provide a benefit and service that is inaccessible to the blind.

76.     Defendants are additionally violating California Civil Code § 51, in that the conduct alleged herein constitutes a violation of various provisions of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*., as set forth above. California Civil Code § 51(f) provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

77.     The actions of Defendants were and are in violation of the Unruh Civil Rights Act, California Civil Code §§ 51, *et seq*., and therefore Plaintiffs are entitled to injunctive relief remedying the discrimination. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs and members of the class will continue to suffer irreparable harm.

78.     Plaintiffs are further entitled to statutory minimum damages pursuant to California Civil Code § 52 for every individual violation; i.e., each time a legally blind individual had to try to check-in using the inaccessible touchscreen kiosk.

### **THIRD CAUSE OF ACTION**

### **VIOLATION OF THE DISABLED PERSONS ACT**

### **[Cal. Civil Code §§ 54-54.3.]**

### **(Plaintiff Vargas Against all Defendants)**

79.     Plaintiffs restate each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

80.     California Civil Code§§ 54-54.3 guarantee full and equal access for

23

people with disabilities to all accommodations, advantages, facilities, and privileges of "all places of public accommodation" and "other places to which the general public is invited." Quest's thousands of patient service center locations throughout California featuring the inaccessible e-Check-in touchscreen kiosks constitute "places of public accommodation" or "other places where the public is invited" within the meaning of California Civil Code §§ 54-54.3.

81.     Quest's patient services locations constitute accommodations, advantages, facilities, and privileges provided by Defendants to members of the public in California and are, therefore, subject to the access requirements of California Civil Code § 54.1 applicable to "all places of public accommodation" and "other places to which the general public is invited."

82.     Defendants are violating the right of blind and visually impaired persons to full and equal access to public places by denying full and equal access to Quest's e-Check-in touchscreen kiosks in violation of California Civil Code §§ 54-54.3.

83.     Defendants are also violating California Civil Code §§ 54-54.3, in that their actions are a violation of the ADA. Any violation of the ADA is also a violation of California Civil Code § 54.1.

84.     As a result of Defendants' wrongful conduct, the individually named Plaintiff Vargas and the California sub-class are entitled to statutory minimum damages under California Civil Code § 54.3 for each offense.

## **FOURTH CAUSE OF ACTION**
### **VIOLATION OF SECTION 504 OF THE REHABILITATION ACT**
### **[29 U.S.C. § 794]**
### **(Against all Defendants)**

85.     Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

86.     The Individual Plaintiffs and ACB members are individuals with a

24

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

disability protected by Section 504 of the Rehabilitation Act and qualified to receive health services from Quest. See 29 U.S.C. § 794(a); 45 C.F.R. § 84.3(j).

87.     Quest is a recipient of federal financial assistance from The Centers for Medicare & Medicaid Services ("CMS") and is therefore subject to Section 504 of the Rehabilitation Act and its implementing regulations. See 29 U.S.C. § 794; 45 C.F.R. § 84.3(h).

88.     Section 504 of the Rehabilitation Act provides that no qualified individual with a disability shall be subjected to disability-based discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).62. Discrimination includes failing to "[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," or providing qualified handicapped persons with "an aid, benefit, or service that is not as effective as that provided to others." 45 C.F.R. § 84.4(b)(1)(ii)-(iii); see 45 C.F.R. § 84.52(a)(2)-(3).

89.     Section 504 requires health programs or activities that receive federal financial assistance and that have at least fifteen employees to provide auxiliary aids and services to individuals who are blind. 45 C.F.R. § 84.52(b), (d).

90.     A recipient may not directly or through contractual, licensing, or other arrangements, discriminate on the basis of disability. 45 C.F.R. § 84.4(b)(1).

91.     Quest's provision of health care constitutes a program or activity receiving federal financial assistance and, as recipients, they are required to ensure that both they and their contractors comply with Section 504 of the Rehabilitation Act.

92.     Quest has failed and is failing to meet their obligation to provide blind individuals an equal opportunity to use and benefit from their health care programs and activities. In failing to provide blind patients with an accessible Check-in System, Quest has refused to provide the auxiliary aids and services necessary to communicate with blind patients in an equally effective and timely manner that

25

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

protects their privacy and independence.

93.     As a result of Quest's actions and omissions, the Individual Plaintiffs and ACB members have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to Quest's health care services. If there is no change in the status quo, the Individual Plaintiffs and other ACB members will be denied their right to access and engage fully in the provision of their health care.

94.     Plaintiffs are entitled to injunctive relief, as well as reasonable attorneys' fees and costs. Further, each Individual Plaintiff and the class are entitled to compensatory damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the members of the Class, pray for:

a.     On Behalf of all Plaintiffs: A Declaratory Judgment that at the commencement of this action Defendants were in violation of the specific requirements of Title III of the ADA and the Rehabilitation Act described above, and their relevant implementing regulations, in that Defendants took no action that was reasonably calculated to ensure that their Check-in system is fully accessible to, and independently usable by, individuals with visual disabilities;

b.     On Behalf of all Plaintiffs: A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a), 29 U.S.C. § 794, and California Civil Code, § 51 et seq., which directs Defendants to take all steps necessary to bring their Check-in system into full compliance with the requirements set forth in the ADA and the Rehabilitation Act, and their implementing regulations, so that their Check-in system is fully accessible to, and independently usable by individuals with visual disabilities, and which further directs that the Court shall retain

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

26

jurisdiction for a period to be determined to ensure that Defendants have adopted and is following an institutional policy that will in fact cause it to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiffs are described more fully in paragraph 11 above.

c. On Behalf of all Plaintiffs: A permanent injunction enjoining Defendants from continuing their discriminatory conduct;

d. An Order certifying the classes proposed by the Individual Plaintiffs, naming the Individual Plaintiffs as class representatives, and appointing their counsel as class counsel;

e. On Behalf of the Individual Plaintiffs and the Proposed Class: Payment of statutory damages, in accordance with California Civil Code §§ 52(a) and 54.3 to the California sub-class;

f. On Behalf of the Individual Plaintiffs and the Proposed Class: Payment of compensatory damages to the Individual Plaintiffs and the class;

g. On Behalf of all Plaintiffs: Payment of costs of suit;

h. On Behalf of all Plaintiffs: Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205, 28 CFR § 36.505, Cal. Civil Code §52, and Civ. Proc. Code § 1021.5,  including costs of monitoring Defendants' compliance with the judgment (*see Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, Case No. 2:16-cv-01898-AJS (W.D. Pa. Jan. 11, 2018) (ECF 191) ("Plaintiffs, as the prevailing party, may file a fee petition before the Court surrenders jurisdiction. Pursuant to *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986), *supplemented*, 483 U.S. 711 (1987), the fee petition may include costs to monitor Defendant's compliance with the permanent injunction."); *see also Access Now, Inc. v. Lax World, LLC*, No. 1:17-cv-10976-DJC (D. Mass. Apr. 17, 2018) (ECF 11) (same);

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

i.   On Behalf of the Individual Plaintiffs and the Proposed Class: Award of prejudgment interest pursuant to California Civil Code § 3291;

j.   On Behalf of all Plaintiffs: An Order retaining jurisdiction over this case until Defendants have complied with the Court's Orders; and,

k.   On Behalf of all Plaintiffs: The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: May 15, 2020

Respectfully submitted,

By: _____*/s/ Jonathan D. Miller*_____

Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345

Benjamin J. Sweet
(*admission pro hac vice pending*)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

Matther K. Handley
(*admitted pro hac vice*)
mhandley@hfajustice.com
HANDLEY FARAH &
ANDERSON PLLC
777 6th St NW
Washington, DC 20001
Telephone: (202) 559-2411

*Attorneys for Plaintiffs Julian Vargas, Anne West, American Council of the Blind, and the Proposed Class*

FIRST AMENDED CLASS ACTION COMPLAINT

1

## __DEMAND FOR JURY TRIAL__

2

Plaintiffs JULIAN VARGAS, ANNE WEST, and AMERICAN COUNCIL

3   OF THE BLIND hereby demand a trial by jury of all claims so triable in the above-

4   referenced matter.

5

6   Dated: May 15, 2020                Respectfully submitted,

7                                       By: _____/s/ Jonathan D. Miller_____

8                                       Jonathan D. Miller (SBN 220848)
                                        jonathan@nshmlaw.com
9                                       Alison M. Bernal (SBN 264629)
                                        alison@nshmlaw.com
10                                      NYE, STIRLING, HALE
                                        & MILLER, LLP
11                                      33 West Mission Street, Suite 201
                                        Santa Barbara, CA 93101
12                                      Telephone: (805) 963-2345

13                                      Benjamin J. Sweet
                                        (*admission pro hac vice pending*)
14                                      ben@nshmlaw.com
                                        NYE, STIRLING, HALE
15                                      & MILLER, LLP
                                        1145 Bower Hill Road, Suite 104
16                                      Pittsburgh, PA 15243
                                        Telephone: (412) 857-5350

17                                      Matther K. Handley
                                        (*admitted pro hac vice*)
18                                      mhandley@hfajustice.com
                                        HANDLEY FARAH &
19                                      ANDERSON PLLC
                                        777 6th St NW
20                                      Washington, DC 20001
                                        Telephone: (202) 559-2411
21

22                                      *Attorneys for Plaintiffs Julian Vargas, Anne*
                                        *West, American Council of the Blind, and the*
23                                      *Proposed Class*

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101