# EXHIBIT 20

REDACTED

TO BE FILED UNDER SEAL PENDING THE COURT'S RULING ON PLAINTIFF'S APPLICATION

# EXHIBIT 21

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

JULIAN VARGAS, ANNE WEST, and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,

Defendants.

Case No. 2:19-cv-8108

--oOo--

VIDEOTAPED DEPOSITION OF PRUDENCIA MAGANA
Taken on behalf of the Defendants
August 3, 2021
***TAKEN VIA VIDEOCONFERENCE***
--oOo--

BE IT REMEMBERED THAT, pursuant to the Federal Rules of Civil Procedure, the deposition of PRUDENCIA MAGANA, was taken before Maureen Kelly, OCSR No. 00-0364, WCSR No. 3401, on Tuesday, August 3, 2021, commencing at the hour of 10:10 a.m., the proceedings being reported via Zoom videoconference.

--oOo--

APPEARANCES

(ALL APPEARING VIA VIDEOCONFERENCE)

Attorney for the Plaintiffs:

NYE, STIRLING, HALE & MILLER, LLP
BY MR. JONATHAN D. MILLER
MR. BENJAMIN J. SWEET
33 West Mission Street, Suite 201
Santa Barbara, CA 93101-2455
805-963-2345
jonathan@nshmlaw.com
ben@nshmlaw.com

Attorney for the Defendants:

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PC
BY DAVID H. RAIZMAN
400 South Hope Street, Suite 1200
Los Angeles, CA 90071-2818
213-239-9800
david.raizman@ogletree.com

Also Present: John MacDonell - Videographer
Amer Pharaon

--oOo--

INDEX

| EXAMINATION BY: | PAGE |
|---|---|
| MR. MILLER | 5, 96 |
| MR. RAIZMAN | 95 |

--oOo--

EXHIBITS

| EXHIBIT NO. | ITEM | PAGE |
|---|---|---|
| Exhibit 104 | Photo of Vargas | 42 |
| Exhibit 105 | Photo of Vargas | 42 |

--oOo--

INSTRUCTION not to Answer: (None.)

--oOo--

REQUEST for Production: (None.)

--oOo--

A. I don't remember.

Q. As of June 25th, 2019, were you working at the 4955 Van Nuys Boulevard location of Quest?

A. I think so.

Q. And was anyone else working there on that date?

A. I don't remember.

MR. RAIZMAN: Hey, Jon?

MR. MILLER: Yes.

MR. RAIZMAN: I'm going to need a break probably in the next 10 minutes, and I -- you may be getting into a new topic. But you can go for 10 minutes but I do need a break eventually.

MR. MILLER: Why don't we just take the break now? It's just as easy as any time.

MR. RAIZMAN: Okay. Thank you very much.

MR. MILLER: Thank you.

THE VIDEOGRAPHER: Okay. We're off the record. It's 11:03 a.m.

(A recess was taken.)

THE VIDEOGRAPHER: And we are back on the record. It's 11:16 a.m.

BY MR. MILLER: (Continuing)

Q. Ms. Magana, did you interact with Julian Vargas on June 25th, 2019, at a Quest patient service

center located at 4955 Van Nuys Boulevard?

A. I don't remember.

Q. I'm going to share a screen and show you what I'll mark as next in order, Exhibit 104.

(EXHIBIT marked: Exhibit 104.)

BY MR. MILLER: (Continuing)

Q. I'll represent to you this is a photograph of Mr. Vargas. Does this refresh your memory of whether you interacted with Mr. Vargas on June 25th, 2019?

A. I don't remember. I don't remember.

Q. So this photograph does not refresh your memory that you interacted with Mr. Vargas on June 25th, 2019?

A. No.

Q. I will show you another photograph that I will mark next in order, Exhibit 105.

(EXHIBIT marked: Exhibit 105.)

BY MR. MILLER: (Continuing)

Q. It's another photograph of Mr. Vargas. Does this photograph refresh your memory that you interacted with Mr. Vargas on June 25th of 2019?

A. I don't remember.

Q. So the photograph does not refresh your memory that you interacted with Mr. Vargas at a Quest patient service center on June 25th, 2019?

A. No, I don't remember.

Q. So then you're not able to tell us what time Mr. Vargas came into the Quest patient service center on June 25th, 2019, are you?

A. I don't remember.

Q. And you're not able to tell us whether there was a greeter available at the Quest patient service center on June 25th, 2019, are you?

MR. RAIZMAN: Object as to form.

BY MR. MILLER: (Continuing)

Q. You can answer.

A. I don't remember. There is PSRs.

Q. Are you able to -- I'm sorry.

A. PSRs, patient services.

Q. What does -- what does PSR stand for?

A. Patient services center.

Q. A PSC you mean, patient service center?

A. Yes.

Q. Was there any other employee working with you on June 25th, 2019, to assist you at the Quest patient service center at 4955 Van Nuys Boulevard?

MR. RAIZMAN: Object as to form.

THE WITNESS: I don't remember.

BY MR. MILLER: (Continuing)

Q. Can you tell me whether anyone was working

A. I don't remember.

Q. Do you know of any documents that would refresh your memory on the specific training you received around the kiosk for blind patients?

A. Patient every needs -- managing every patient needs.

Q. Outside of the managing every patient needs training, are you aware -- strike that.

So it's your -- it's your memory that the managing every patient needs training contains training around how blind patients can use the kiosk; is that right?

A. I think so.

Q. Are you aware of any other training other than the managing every patient needs training that was provided to you by Quest that indicated how blind patients could use the kiosk?

A. I don't remember.

Q. Did Quest ever tell you that the kiosk was not independently accessible by blind patients?

MR. RAIZMAN: Object as to form.

BY MR. MILLER: (Continuing)

Q. You can answer.

A. I think so.

Q. You think Quest informed you that the kiosk

A. I don't remember.

Q. Have you ever been trained by Quest that you are required to give primary consideration to the accommodation requests of a disabled patient when checking in at a Quest patient service center?

MR. RAIZMAN: Object as to form.

BY MR. MILLER: (Continuing)

Q. You can answer.

A. I think so.

Q. When were you first trained on giving primary consideration to an individual with disabilities' request at a Quest service center?

MR. RAIZMAN: Objection as to form.

BY MR. MILLER: (Continuing)

Q. You can answer.

A. When I first got hired and every year.

Q. Back in 2017?

A. Mm-hmm. And every year.

Q. And was that through the managing every patient needs training you received?

A. I think so.

Q. And you believe that training covered the topic of giving primary consideration to an individual with disabilities' requests when they're checking in. Right?

MR. RAIZMAN: Object as to form.

BY MR. MILLER: (Continuing)

Q. Is that right?

A. I think so.

Q. And what's your understanding of what it means based on the training you had to give primary consideration to an individual with disabilities' accommodation requests when they check in?

MR. RAIZMAN: Object as to form.

BY MR. MILLER: (Continuing)

Q. You can answer.

A. Can you repeat it again?

Q. Yeah.

Based on the training Quest has provided to you, what do you understand it to mean to give primary consideration to an individual with disabilities' request when they are checking in?

A. Help them.

Q. Do you have any understanding as to whether if they make a specific request for an accommodation, that you have to provide it?

MR. RAIZMAN: Objection as to form.

BY MR. MILLER: (Continuing)

Q. You can answer.

A. According to the -- to the Quanum?

Q. My question was a little more specific. Do you have any understanding based on the training you received that if an individual with disabilities asked for a certain type of accommodation, you either have to provide it or document in writing the reasons why you cannot?

MR. RAIZMAN: Object as to form.

BY MR. MILLER: (Continuing)

Q. I'm sorry. Go ahead.

A. I think so.

Q. You think you were provided that training by Quest through the managing every patient needs training?

A. I think so.

Q. And you believe you had that training in 2017; is that right?

A. I think so.

Q. All -- every year up to the present. Correct?

A. Correct.

Q. And have you ever had to document on any occasion -- or strike that.

Have you ever had to provide an accommodation on any occasion to a disabled patient at Quest?

A. Can you repeat it again please?

Q. Yeah.

Have you ever had to give primary consideration to a disabled patient's need for accommodation at a Quest patient service center?

MR. RAIZMAN: Object as to form.

BY MR. MILLER: (Continuing)

Q. You can answer.

A. It depends.

Q. Can you think of any instance as you sit here today where you had to give primary consideration to an individual with disabilities' accommodation request at a Quest patient service center?

A. It all depends.

Q. No. I'm asking whether you can recall any instance where you've ever given primary consideration to an individual with disabilities' accommodation request while employed at Quest.

MR. RAIZMAN: I'm just going to have a standing objection as to form with respect to the phrase "primary consideration".

You can answer. I don't want to keep interrupting.

THE WITNESS: I don't remember.

BY MR. MILLER: (Continuing)

Q. Go ahead.

A. I don't remember.

Q. Are you aware of any occasion where you ever documented that you couldn't provide an accommodation to an individual with disability who was making an accommodation request?

A. I don't remember.

Q. Let me show you what was previously marked in another deposition -- let me see -- as Exhibit 47. And I'll share my screen for ease of reference. This is Exhibit 47 to the Jody Reilly deposition. Can you see the document I'm showing you?

A. Yes.

Q. And it's labeled "Patient Services - Managing Every Patient's Needs due every 12 Months." And I'm going to scroll down through the document, and tell me -- I just want you to generally familiarize yourself with it. I'll blow it up.

MR. RAIZMAN: I'm going to put it in front of her because it's a large document but it's going to take me --

MR. MILLER: Sure.

MR. RAIZMAN: -- a second to do that.

MR. MILLER: Sure. Why don't we -- it's already in the -- it's already in the share folder.

# EXHIBIT 22

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

JULIAN VARGAS, ANNE WEST, and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED, and DOES 1-10, inclusive,

Defendants.

Case No. 2:19-cv-8108

REMOTE DEPOSITION OF CLAIRE STANLEY
(Via Zoom Videoconference)
Thursday, August 19, 2021

REPORTED BY: Michelle Milan Fulmer
CSR No. 6942, RPR, CRR, CRC

JOB NO. 4769235
PAGE 85 THROUGH PAGE 88 IS MARKED "CONFIDENTIAL" UNDER THE PROTECTIVE ORDER AND SEPARATELY BOUND
PAGES 1 - 225

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

JULIAN VARGAS, ANNE WEST, and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED, and DOES 1-10, inclusive,

Defendants.

Case No. 2:19-cv-8108

Remote deposition of CLAIRE STANLEY, taken before Michelle Milan Fulmer, a Certified Shorthand Reporter for the State of California, with principal office in the County of Orange, commencing at 12:06 p.m., Thursday, August 19, 2021.

APPEARANCES OF COUNSEL:

FOR PLAINTIFFS:

NYE, STIRLING, HALE & MILLER, LLP
BY: Jonathan D. Miller, Esq.
33 West Mission Street, Suite 201
Santa Barbara, California 93101
TEL: (805) 963-2345
EMAIL: jonathan@nshmlaw.com
(Via Zoom Videoconference)

FOR DEFENDANTS:

OGLETREE DEAKINS NASH SMOAK & STEWART, PC
BY: David Raizman, Esq.
400 South Hope Street, Suite 1200
Los Angeles, California 90071
TEL: (213) 457-5862
EMAIL: david.raizman@ogletree.com
(Via Zoom Videoconference)

THE VIDEOGRAPHER:

Anthony Gulino
(Via Zoom Videoconference)

ALSO PRESENT:

Amer Pharaon
(Via Zoom Videoconference)

I N D E X

| WITNESS | | EXAMINATION |
|---|---|---|
| CLAIRE STANLEY | | |
| | | PAGE |
| | BY MR. RAIZMAN | 8, 208 |
| | BY MR. MILLER | 196, 218 |

E X H I B I T S

| Exhibit | Description | Page Identified |
|---|---|---|
| Exhibit 106 | Declaration of Claire Stanley | 32 |
| Exhibit 107 | Robin Rehder notes | 108 |
| Exhibit 108 | Stanley_2018_calls Bates stamped PL00673 - 681 | 118 |
| Exhibit 109 | Stanley_2018_calls Bates stamped PL00673 - 681 | 118 |
| Exhibit 110 | Letter from Eric Bridges to Steve Rusckowski, CEO | 133 |
| Exhibit 111 | Survey Responses, Bates stamped PL00683 - 693 | 181 |

(Previously marked)

E X H I B I T S

| Exhibit | Description | Page Identified |
|---|---|---|
| Exhibit 62 | Emails, Bates stamped PL00418 - 439 | 119 |
| Exhibit 63 | ACB Chart, Bates stamped PL00392 | 169 |
| Exhibit 65 | Letter from Eric Bridges to Steve Rusckowski, CEO | 133 |
| Exhibit 66 | Call Log, Bates stamped PL00570 - 573 | 143 |
| Exhibit 67 | ACB notes, Bates stamped PL00577 - 596 | 143 |
| Exhibit 69 | ACB June 2020 Survey, Bates stamped PL00415 - 416 | 144 |

A At least one that I can recall.
Q Okay. Let's explore that, and then we'll try to better understand if there may be others that you're not recalling.
When was that one occasion that you went to Quest? 13:34:12
A It was in 2020. I -- either in the summer or fall of 2020.
Q Did you go as part of your discharge of duties for ACB or as just part of your own health care? 13:34:41
A I went because my doctor ordered lab work.
Q Your doctor ordered lab work. Did your doctor say, "Go get this lab work at Quest"?
A No. My doctor gave me several labs that were in the area and this was one of them. 13:34:57
Q Why did you pick Quest in the summer or fall of 2020?
A I wanted to see what their services were like. 13:35:11
Q Why?
A I just was curious what the setup was like.
Q Were you curious because of this litigation?
A Yes. 13:35:30

line prior to visiting?

A Not that I recall.

Q Okay. And you felt comfortable doing that because you'd had success in your life finding front doors to store locations out there in the -- in the public; correct? 13:43:35

A Yes.

Q Okay. And once you entered the Quest location, how is it that you found --

Well, let me ask you this. 13:43:50

Was there a kiosk available at that patient service center, to your knowledge?

A I don't know because I'm blind and there -- it didn't make any noise. So I had no way of knowing. 13:44:06

Q Understood.

It's possible that you touched one or someone made reference to it and you spoke to someone about a kiosk. So that's why I ask.

But you have no knowledge of there being a kiosk at that location? 13:44:16

A I have no knowledge of what was there, period, because I'm blind and I walked in and heard nothing.

Q So the entire time you were there, you 13:44:29

says, "Come on in, come on in and sign in," and I say, "I need to talk to a human being."

Q Okay. And you're comfortable not using the tablet on those occasions and getting the personal assistance? 13:46:01

MR. MILLER: Lacks foundation.

Go ahead.

THE WITNESS: I want equal access to be independent to sign in the same way all other patients or customers sign in. 13:46:10

BY MR. RAIZMAN:

Q I understand you want that, but you -- you've accepted the personal assistance in those occasions with other medical care providers who use tablets that you were not able to use; correct? 13:46:24

A In the moment I've done what I've had to do, but I am not happy with it. I still believe that I need to be able to independently sign in by myself and have full access to every accommodation or function that every other customer or patient 13:46:44 has.

Q Right.

So how many times have you encountered the use of a tablet device that you were unable to use in connection with your visiting let's stick with 13:46:57

the health care provider industry first?

A I would not be able to give you a number.

Q More than once?

A Probably.

Q Okay. More than the one time you visited Quest? Let's start with that. 13:47:21

A Yes. More than just Quest.

Q Okay. Can you say that it was more or less than five times at other health care providers?

A I don't know. I don't even always know if there is a kiosk there because I can't see it. So unless somebody says, "Sign in on the kiosk," I don't know it's there. 13:47:41

Q Okay. So there may be occasions where you visit a health care provider where you may not even know that they're using a tablet or kiosk device for checking in; is that right? 13:47:54

A Unless somebody verbally says there's a kiosk.

Q Okay. Have you ever used a kiosk or check-in device at any health care provider that had audio output? 13:48:06

A No.

Q What about more generally in the business world? Have you ever encountered in the business 13:48:22

world, in general, the retail world, any commercial activity that you've undertaken where you've been asked or required to use a tablet or touch screen device to interact with that business?

A If you consider banking commercial, yes. 13:48:41 I've used ATMs.

Q Okay. How about other than banking?

A Not that I can think of, no.

Q Restaurants? Ever been asked to use a touch screen device at a restaurant? 13:49:00

A I have been asked to use them.

Q Okay. And in those occasions have you been able to use them?

A No.

Q And have you been provided personal 13:49:12 assistance that allowed you to undertake the transaction at those restaurants?

A Oftentimes, I have to rely on friends that are with me.

Q Okay. So you have received assistance that 13:49:31 allowed you to place the order or, otherwise, interact with the business other than through the tablet or device; correct?

A Can you say it -- restate that?

Q That's okay. We'll just move on. It might 13:49:49

A Again, it's been a while. But if I remember correctly, once the paperwork portion was done and the insurance, which took the longest, getting the actual lab work done was quicker.

Q Okay. Can you give me an estimate of how long it took? 13:59:28

A No, I cannot.

Q Okay. And after the lab work was done, did you immediately proceed to the exit?

A Yes. 13:59:39

Q Did you call a Lyft or Uber to pick you up while you --

A Yes.

Q -- were still in the Quest room or did you exit Quest and then make the call or use the app to ask for a ride? 13:59:48

A I cannot remember.

Q Did you make any requests of anyone at Quest for reasonable modifications or for auxiliary aids or services while you were there? 14:00:10

A Do you mean while I was physically in the location?

Q Yes.

A I said I needed help signing in.

Q Okay. Was that before or after the 14:00:27

individual said, "Are you here for phlebotomy services"?

That's the first thing that the Quest representative said to you; correct?

A I don't think I remember the exact wording, but that's what he conveyed. 14:00:44

Q Okay. And your response to that was, "I need help checking in" or was your response that "Yes"?

A Again, I don't remember the exact wording. I just know I conveyed, "I'm here. I need to check in. I'm here for blood work." 14:00:59

Q Okay. And the immediate response to that from the phlebotomist was to lead you into the back; correct? 14:01:12

A Yes.

Q Any other requests for reasonable modifications of policies, practices, and procedures or for auxiliary aids or services while you were at Quest on that occasion? 14:01:25

A No.

Q Did you ever correspond with Quest in any way, writing or orally, after that?

A After, no.

Q Did you ever correspond with Quest, orally 14:01:44

A No.

Q You indicated that you had to wait for some period of time. You couldn't tell Mr. Raizman specifically how long, but do you have a range or an estimate of how long you waited when you walked in? 17:44:05

A It was probably at least three minutes. Maybe more.

Q Okay. Can you give us the best range that you have or the best estimate of time that you have today? 17:44:13

A Perhaps three to five minutes.

Q Before somebody first interfaced with you?

A Correct.

Q Okay. And then you indicated -- 17:44:21

At any point in time were you able to use a kiosk, assuming there was one, at the location you visited in Rockville?

A No, I was not.

Q Were you able to access any of the services within a kiosk, assuming there was one at that Rockville location? 17:44:32

A No, I was not.

Q For example, were you -- were you ever offered the opportunity to wait outside the facility 17:44:44

# EXHIBIT 23

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JULIAN VARGAS, ANNE WEST AND AMERICAN COUNCIL OF THE BLIND, INDIVIDUALLY ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATION, | ) | CASE NO. |
| PLAINTIFFS, | ) | 2:19-CV-08108 DMG |
| VS. | ) | |
| QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; AND DOES 1-10, INCLUSIVE, | ) | |
| DEFENDANTS. | ) | |

VIDEOCONFERENCE VIDEOTAPED DEPOSITION OF

ROBIN CHARLOTTE REHDER

FRIDAY, MAY 21, 2021

JOB NO. 4589711

REPORTED BY: MELIA BASAVAND, CSR NO. 14089

VIDEOTAPED DEPOSITION OF ROBIN CHARLOTTE REHDER, TAKEN ON BEHALF OF THE DEFENDANTS, AT 10:31 A.M., FRIDAY, MAY 21, 2021, AT HENDERSON, NEVADA, BEFORE MELIA BASAVAND, CSR NO. 14089.

APPEARANCES OF COUNSEL:

FOR THE PLAINTIFFS:

HANDLEY FARAH & ANDERSON
BY: MATTHEW K. HANDLEY, ESQ.
-- VIA VIDEOCONFERENCE --
777 6TH STREET NW
11TH FLOOR
WASHINGTON, D.C., 20001
(202) 559-2411
MHANDLEY@HFAJUSTICE.COM

FOR THE DEFENDANT:

OGLETREE, DEAKINS, NASH, SMOAK & STEWART
BY: AMBER L. ROLLER, ESQ.
-- VIA VIDEOCONFERENCE --
400 SOUTH HOPE STREET
SUITE 1200
LOS ANGELES, CALIFORNIA 90071
(213) 239-9800
AMBER.ROLLER@OGLETREE.COM

ALSO PRESENT: ROBERT FENTON, VIDEOGRAPHER

I N D E X

| WITNESS | EXAMINATION | PAGE |
|---|---|---|
| ROBIN CHARLOTTE REHDER | | |
| | BY MS. ROLLER | 6 |

E X H I B I T S

(NONE.)

the first time that you encountered the E check-in device kiosk?

A Yes.

Q So between 2015, your first visit, and approximately August 7th, 2018, you don't recall coming across the E check-in device?

A No, I don't.

Q And for those visits between that time period would you just check-in with a receptionist?

A Yes.

Q All right. So tell me about your first experience at Quest where they had these E check-in devices.

A When I came in in 2018, there was no one at the desk, and somebody came up to me and offered to help me sign in.

And I said what is it? A touch screen?

They said yes.

And I could tell they were nervous, embarrassed when they were asking me my name and birthday, but they typed it in. And it was a patient, and I called and complained about it because it's against the HIPAA law for a patient to sign another patient in.

I called the local Quest office and

explained my situation. You know, I just didn't feel comfortable, and I could tell that the patient didn't either, and it's not right.

But when I went back in 19 -- in '20, there was one at the desk. And I also --

Q Okay.

A I'm sorry.

Q Go ahead.

A I just felt that that that situation was very uncomfortable, and it shouldn't have happened. And that's why I'm here now too.

I know other places, for example, I understand -- and I know this is out of line, and I apologize -- but I understand stores are trying to go complete checkout by yourself and that to me is putting people out of work. And I have a -- (unintelligible) -- working, and I have a job. It's just losing the human touch, and I don't like it.

I realize it's 2021.

Q Like the automated check-in, checkout processes is because you think that it's displacing workers and taking jobs away from people?

A Plus you're losing the human touch, the communication verbal contact.

Q Okay. So I want to talk about this visit in

# EXHIBIT 24

Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590

Benjamin J. Sweet
(pro hac vice)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

Attorneys for Plaintiffs Julian Vargas, American Council of the Blind, and the Proposed Class

*Additional Counsel Listed on Signature Page*

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

JULIAN VARGAS and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,

Defendants.

CASE NO.: 2:19-cv-8108

**PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FOURTH SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES FROM DEFENDANT QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.**

Plaintiff American Council of the Blind submits the following fourth supplemental response to First Set of Interrogatories from Defendant Quest Diagnostics Clinical Laboratories, Inc.

1

PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FOURTH SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES FROM DEFENDANT QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.

PA0707

**PRELIMINARY STATEMENT**

Each of the following responses is rendered and based upon information in the possession of Plaintiff American Council of the Blind at the time of the preparation of these responses. Discovery will continue as long as permitted by statute or stipulation of the parties, and the investigation of Plaintiff's attorneys and agents will continue to and throughout the trial of this action. Plaintiff, therefore, specifically reserves the right, at the time of trial, to introduce any evidence from any source which may hereinafter be discovered and testimony from any witness whose identity may hereinafter be discovered. If any information has unintentionally been omitted from these responses, Plaintiff reserves the right to apply for relief so as to permit the insertion of the omitted data from these responses.

These introductory comments shall apply to each and every response given herein, and shall be incorporated by reference as though fully set forth in all of the responses appearing in the following pages.

**SUPPLEMENTAL RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 4**

Please identify and describe any and all occasions in which any ACB members (including, without limitation, the Named Members) were unable to utilize the services at a PSC (including, without limitation, any of the PSCs identified in paragraphs 26-33 of the Complaint) because of alleged difficulty using the Kiosk at the PSC (including, but not limited to, any complaints by ACB's members and any documentation of complaints by ACB's members).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4**

ACB objects to this request as overly broad, unduly burdensome, unreasonable, and not proportional to the needs of the case. ACB is a membership organization of over eight thousand individuals. It is impossible for ACB to know any and all occasions in which any ACB members (including, without limitation, the Named Members) were unable to utilize the

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

2

PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FOURTH SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES FROM DEFENDANT QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.

PA0708

services at a PSC. Determining "each and every" such member of ACB would also require ACB to seek out information that is not in its possession, custody or control. Discovery obligations are limited to information "in the responding party's possession, custody, or control." See, e.g., Fed. R. Civ. P. 34(a)(1). No provision of the Rules authorizes a defendant to request information from an associational plaintiff when such information is in the possession, custody, and control of a third party on whose membership the association relies for standing.

ACB also objects to this request to the extent it seeks the production of information impinging on the privacy interests of its members or other third parties.

Without waiving any objections, ACB responds as follows: occasions in which ACB members who have faced accessibility barriers when seeking out Quest's services are described in documents Bates numbered PL00392-PL00402, and PL00418-PL00439. ACB is unaware of any blind ACB member who has been able to independently utilize all of the services of Quest's check-in kiosks, because such services are inaccessible to blind customers. Additional detail concerning blind ACB members' experiences with accessibility barriers at Quest is described below:

- Christina Law goes for testing at Quest every three to six months. When she goes for appointments, she would bring a staff member from her long-term care facility and ask them to help her check in using the kiosk. She has never been able to use the kiosk independently due to her blindness and its inaccessibility. She is planning on returning for follow-up testing and confirmed she would visit other Quest locations if needed.
- Margie Donovan goes to Quest every three to four months. Her last two visits were on August 2, 2021 and in either late March or early April 2021. During her visits she waits in the waiting room until a staff member comes to get another patient, and she asks them to check her in. She has never been able to use the kiosk to check in because it is inaccessible, resulting in delays with her appointments. She is

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

3

PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FOURTH SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES FROM DEFENDANT QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.

PA0709

planning to return to Quest for follow up appointments and would visit other Quest locations if she needed to.

- Chris Gray goes to Quest every three to four months and his last visit was approximately four months ago. When he visits, he waits in the waiting room of the center for a staff member to come out and get another patient. He asks that staff member to help him check in. He has never been able to independently use the kiosk because of his blindness. This resulted in delays with his appointments because he is not able to check in immediately when he enters the facility like other patients. He is planning on returning but said he also goes to LabCorp where the staff is more accommodating. He did confirm that he would be willing to visit other Quest locations if he needed to.
- Don Moore has not visited Quest in approximately two years. When he did go, he had a staff member at the center help him check in for appointments. He has never been able to independently use the kiosks to check in for appointments because they were not accessible to blind patients. He is currently not planning to return to Quest but would if his doctor sent him there.
- Debbie Rozear goes to Quest every three to six months. Her last visit was in January 2021. She usually attends her appointments with someone else and that person helps her check in. She has never been able to independently check in using the kiosk. She is currently undecided as to whether she is going to return to Quest or go to other Quest locations because she recently visited a hospital for lab tests and reported a more accessible experience there.
- Adelle Moller last visited Quest Diagnostics in 2018. She is blind and was not ever able to check in independently due to the inaccessibility of the check-in kiosk. She experienced delays; had to wait multiple times for a staff member to assist her with the check-in process; and politely refused an offer of assistance from a fellow patient waiting their turn because she felt uncomfortable providing a stranger with

4

PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FOURTH SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES FROM DEFENDANT QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.

PA0710

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

her personal information. Adelle no longer visits Quest facilities because her doctor's office has their own lab facility.

- Harvey Heagy last visited Quest in April of 2021. He goes to a Quest facility every three to four months for bloodwork. He is blind and has not ever been able to independently check in using the kiosk due to its inaccessibility. He has had to rely on fellow patients to sign him in and has experienced delays. He would like for the check-in kiosks to be made accessible and does not wish to go to a different Quest facility. He has never been able to use the text-when-the-phlebotomist-is-ready feature of the kiosk.
- Debbie Hietala last visited Quest in November of 2020. She is blind and has not ever been able to independently check in using the check-in kiosk due to its inaccessibility. She does not want to visit a different Quest facility because the location of the one she goes to is conveniently located in her neighborhood. She has to have someone she trusts accompany her to her appointments to assist her with checking in. She has never been able to use the text-when-the-phlebotomist is ready feature of the kiosk.
- Patricia Lipovsky is blind and last visited Quest in 2020. She has never been able to use the check-in kiosk independently due to its inaccessibility. A Quest staff member begrudgingly assisted her with checking in. Ms. Lipovsky felt uncomfortable giving out her personal information with other people in the waiting room. She asked if she could do so privately and was told no. She has never been able to use the text-when-the-phlebotomist is ready feature of the kiosk. She does not want to return to Quest due to her negative experience and now goes to a different facility that is less conveniently located but more accommodating.
- Ian Foley has had several negative experiences when visiting Quest locations. Since the check-in kiosks were inaccessible to him, he often had to rely on someone to accompany him, another person in line, or a staff member to check him

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

5

PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FOURTH SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES FROM DEFENDANT QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.

PA0711

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

in. He was uncomfortable in these situations due to privacy concerns. Since there was no way for him to check in independently, and no receptionist in the waiting area, he would sometimes sit for over an hour before a staff member would recognize that he needed assistance. During his most recent visit to Quest labs in May of 2021, he made an appointment online and received a text alert while sitting in the waiting area when his appointment was ready, but he would prefer to be able to use the functions of the kiosk, and that such functions be made accessible for the blind. He would be willing to visit other Quest locations.

- Nicholas McNeill has visited a couple of different Quest Diagnostics locations. In a recent visit, no staff member was in the reception area to assist him with the check-in process. He waited at least 20 minutes before being acknowledged by staff. Nicholas tried having someone accompany him during the next couple of visits, but this was a burden to him and others. Most recently, he went to another Quest location where he was able to receive text alerts to notify him when he was to be seen. However, during that visit three patients walked in after him and were seen before him because they were able to use the kiosk. He will continue visiting Quest Diagnostics in the future because of frequent lab work.
- Mary Alice Gary first used quest in 2018. She typically goes every 3 to 4 months. Prior to the pandemic, only once was there someone behind the counter to assist her during the check-in process. She did not like accepting help from others waiting in line because she did not want to share private information with them. During the pandemic, staff have been available to obtain names and phone numbers due to social distancing and limits on people inside.
- Holly Turrie last visited Quest Diagnostics in March of 2020. She was unable to independently use the check-in kiosk to sign in. Since the kiosk was inaccessible to her as a blind person, and no staff available to assist, she had to rely on another patient that was also waiting to be seen. The individual offered to assist her with

6

PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FOURTH SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES FROM DEFENDANT QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.

PA0712

the check-in process. She was also not given the option to sit in the waiting room and be alerted via text when a phlebotomist was available to see her. Holly has never been able to independently use the check-in kiosk at any Quest location. She is willing to visit other locations based on appointment availability. She will need to return to Quest Diagnostics in the future to have lab work done.

- Dianne Michaels has visited Quest Diagnostics once. At her visit, no one was there to help with the check-in process when she walked into the Quest waiting area. She does not want to return to Quest unless the kiosks are made accessible.
- Cassandra Jessie visits Quest approximately every 4 months and last visited Quest on May 17, 2021. When she goes to Quest, she has a staff member at the center help her check in for appointments because she is unable to check in independently. She has never been able to independently use the kiosks to check in for appointments because they are not accessible to blind patients. She is currently planning on returning, but only because of the location's convenience.
- Bill White goes for testing at Quest every six months. When he goes for appointments, he would bring his brother, who assists in checking in using the kiosk. He has never been able to use the kiosk independently due to his blindness and the kiosk's inaccessibility. He is planning on returning for follow-up testing and would visit other Quest locations depending on location, as his current location is downstairs from his doctor's office.
- Elizabeth Doane goes to Quest every three to six months. Her last visit was approximately a month ago. At her visits, she would wait in the waiting room until a staff member came and assisted her. She has never been able to use the kiosk independently, resulting in delays with her appointments. She is planning to return to Quest for follow up appointments and would visit other Quest locations if she needed to.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

7

PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FOURTH SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES FROM DEFENDANT QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.

PA0713

- Karlene Fiorello visits Quest about every six months. Her last visit was at the end of March 2021. Because she is blind, when visiting Quest Karlene needs to take a sighted person with her, or she relies on other patients to check in for her. She cannot independently use the kiosk to check in for her appointments. The lack of an accessible check in system has resulted in delays during her appointments, and she dislikes having strangers check in for her. Karlene plans to return to Quest for her different appointments in the future. Karlene would be willing to travel to other Quest locations for her appointments. She has never been able to use the feature of the kiosk allowing a patient to receive a text when the phlebotomist is ready.
- Paula Muysenberg visits Quest two to three times per year. Prior to the pandemic, Paula relied on other patients to sign in to the lab. During the pandemic her husband has made an appointment for her on-line and Paula receives a text announcing when she was ready to be seen. Paula has not been able to use the kiosk to sign in to quest labs without assistance from others. Paula plans to return to Quest in the future. Paula would be willing to visit other Quest locations.
- Debbi Dymek visits Quest approximately every six months. Her last visit was just before Easter. Debbi checks in to Quest by having her sighted husband check in for her because the kiosk is not independently accessible to her. She always has her husband with her, so she does not check in herself. Debbi plans to return to Quest. Debbi would be willing to go to other Quest locations based on availability.
- Claire Stanley visited Quest for blood work once in approximately 2019. When she arrived there was no staff member present to check people in. She believes there was a check-in kiosk in the waiting room, but was unable to independently access it. A staff member heard Claire in the waiting room and came out to check her in and bring her back for her lab work.
- Nona Haroyan's experiences at Quest are described in the transcript of her April 29, 2021 deposition.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

8

PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FOURTH SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES FROM DEFENDANT QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.

PA0714

- Mary Haroyan's experiences at Quest are described in the transcript of her April 29, 2021 deposition.
- Regina Brink's experiences at Quest are described in the transcript of her May 6, 2021 deposition.
- Kathy Lyons's experiences at Quest are described in the transcript of her May 6, 2021 deposition.
- Donna Grahmann's experiences at Quest are described in the transcripts of her May 3, 2021 and August 5, 2021 depositions.
- Ralph Black's experiences at Quest are described in the transcripts of his April 27, 2021 and August 5, 2021 depositions.
- Ardis Bazyn's experiences at Quest are described in the transcripts of her April 27, 2021 and August 6, 2021 depositions.
- Robin Rehder's experiences at Quest are described in the transcript of her May 21, 2021 deposition.

Dated: August 25, 2021

NYE, STIRLING, HALE & MILLER, LLP

*/s/ Jonathan D. Miller*
Jonathan D. Miller
Alison M. Bernal
Benjamin J. Sweet
Jordan T. Porter

HANDLEY FARAH & ANDERSON

*/s/ Matthew Handley*
Matthew K. Handley

*Attorneys for Plaintiffs*

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

9

PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FOURTH SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES FROM DEFENDANT QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.

PA0715

**PROOF OF SERVICE**
**DISTRICT OF COLUMBIA**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the District of Columbia. My business address is 200 Massachusetts Avenue, NW, 7th Floor, Washington, DC, 20001.

On August 25, 2021 I served true copies of the following document(s) described as following document(s):

**PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FOURTH SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES FROM DEFENDANT QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.**

on the interested parties in this action as follows:

David Raizman, Esq.
david.raizman@ogletree.com
Amber L. Roller
amber.roller@ogletree.com
J. Nicholas Marfori
nicholas.marfori@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, California 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

*Attorneys for Defendants*

[X] **BY EMAIL ON AUGUST 25, 2021**: I caused the above listed document(s) to be sent via electronic mail to the above listed email address from the email address mhandley@hfajustice.com and did not receive an error message after sending.

[X] **BY MAIL ON AUGUST 26, 2021:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with my company's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California and the District of Columbia that the above is true and correct. Executed on August 25, 2021.

*/s/ Matthew Handley*
Matthew Handley

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

10

PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FOURTH SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES FROM DEFENDANT QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.

PA0716

**VERIFICATION**

I have read the foregoing PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FOURTH SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES FROM DEFENDANT QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC. and know its contents.

I am the Director of Advocacy and Governmental Affairs of the American Council of the Blind, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. I have read the foregoing document(s). I am informed and believe and on that ground allege that the matters stated in the responses to the Interrogatories are true.

Executed on 9/8/2021.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

DocuSigned by:
Clark Rachfal
878C1C7D71C2426...
Clark Rachfal

# EXHIBIT 25

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
DAVID RAIZMAN, CA Bar No. 129407
david.raizman@ogletree.com
AMBER L. ROLLER, CA Bar No. 273354
amber.roller@ogletree.com
J. NICHOLAS MARFORI, CA Bar No. 311765
nicholas.marfori@ogletree.com
400 South Hope Street, Suite 1200
Los Angeles, California 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.; QUEST DIAGNOSTICS HOLDINGS, INC. and QUEST DIAGNOSTICS INCORPORATED

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JULIAN VARGAS, ANNE WEST and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,

Defendants.

Case No. 2:19-cv-08108 DMG (MRWx)

**DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSES TO PLAINTIFF JULIAN VARGAS' FIRST SET OF INTERROGATORIES**

Complaint Filed: September 18, 2019
Trial Date: January 11, 2022
District Judge: Hon. Dolly M. Gee
Courtroom 8C, First St.
Magistrate Judge: Hon. Michael R. Wilner
Courtroom 550, Roybal

PROPOUNDING PARTY: Plaintiff JULIAN VARGAS

RESPONDING PARTY: Defendant QUEST DIAGNOSTICS INCORPORATED

SET NO.: ONE

Defendant Quest Diagnostics Incorporated ("Defendant") responds to Plaintiff Julian Vargas's ("Plaintiff") First Set of Interrogatories, as follows:

# I.

# PRELIMINARY STATEMENT

The following responses are based on the present knowledge, information, and belief of the three defendants ("Defendants"), as derived from (a) the knowledge and information of present employees of Defendants gained in their capacity as such, and (b) a review of the files maintained by Defendants that would be likely to contain the information called for by the Interrogatories. These responses are subject to amendment and supplementation as Defendants acquires additional information and completes its review and analysis and made without prejudice to Defendants' right to use subsequently discovered or developed information.

Except for facts explicitly stated in these responses, no admissions of any nature whatsoever are implied or should be inferred. The fact that any Interrogatory in this set has been objected to should not be taken as an admission or acceptance of the existence of any facts set forth or assumed by such interrogatory, or that such constitutes admissible evidence.

Defendants respond for themselves alone, and expressly declines to respond on behalf of, or based on information maintained by or available to any other entity or party. Defendants' responses are based solely on information in its possession, custody, and/or control. Specific objections to each Interrogatory are made on an individual basis in Defendants' responses below. In addition to these specific objections, Defendants makes certain continuing objections (the "General Objections") to the interrogatories. Defendants' response to each individual

Interrogatory is submitted without prejudice to, and without in any respect limiting or waiving, any General Objection not expressly set forth in that response.

## II.

## GENERAL OBJECTIONS

Defendants provide these responses subject to the general objections set forth below ("General Objections").

1. Defendants object generally to these Interrogatories on the ground and to the extent that they seek information that is not within Defendants' possession, custody or control, and/or for which Defendants are completely reliant on third parties that Plaintiff has not named as a defendant in this action.

2. Defendants object generally to these Interrogatories to the extent that they seek the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection from disclosure. Defendants does not intend to disclose any information subject to any such privilege or protection from disclosure, and the inadvertent disclosure of privileged or protected information shall not constitute a waiver of any kind.

3. Defendants object generally to these Interrogatories to the extent that they call for disclosure of trade secrets, proprietary information, or other confidential information, the disclosure of which would harm the rights or interests of the owner or possessor of such information. To the extent Plaintiff's Interrogatories call for information that is confidential, private, or proprietary, Defendants will produce the otherwise discoverable information upon Plaintiff's agreement to an appropriate confidentiality order.

4. Defendants object generally to these Interrogatories to the extent they purport to impose obligations beyond those required or authorized by the Federal Rules of Civil Procedure or other applicable law, including without limitation the limit on interrogatories allowed per party set forth in Rule 33(a)(1) of the Federal Rules of Civil Procedure in that the requesting parties who have collectively

exceeded the limit are completely aligned and represented by the same counsel of record.

5. Defendants also objects on the ground that that Plaintiff's definition of "YOU" and "YOUR" is vague and overly broad because Plaintiff has defined "YOU" and "YOUR" to mean "Defendant Quest Diagnostics Incorporated and its consolidated subsidiaries, agents, assigns, employees, representatives, and counsel; and any other representative or person acting on behalf of Defendant." For purposes of responding to each of Plaintiff's Interrogatories which rely upon the term "YOU" or "YOUR," Defendants have reasonably construed "YOU" and "YOUR" to mean and refer to Defendant and its wholly-owned subsidiaries.

6. Defendants object on the ground that Plaintiff's definition of "PATIENT SERVICE CENTER" is vague and overbroad in that it defines "PATIENT SERVICE CENTER" as "a Quest Diagnostics location where a patient can obtain clinical laboratory services from Quest Diagnostics." For purposes of responding to each of the Interrogatories which rely upon the term "PATIENT SERVICE CENTER," Defendants have reasonably construed "PATIENT SERVICE CENTER" to mean and refer only to a patient service center located within the United States that is open to the public, provides specimen collection and related services in furtherance of diagnostic testing services, bears the name Quest Diagnostics, and is operated by Quest Diagnostics Incorporated or its wholly owned subsidiaries. This definition excludes any physician office or similar location, where Quest has placed an employee, such as a phlebotomist, to provide specimen collection services for patients of that physician office or location.

7. Defendants object on the ground that Plaintiff's definition of "E-CHECK-IN KIOSK" is vague and overbroad because it defines "E-CHECK-IN KIOSK" as "Defendant's touchscreen electronic check-in at PATIENT SERVICE CENTERS" without specifying that it is a device used by patients to check-in at Quest patient service centers. For purposes of responding to each of the

Interrogatories which rely upon the term "E-CHECK-IN KIOSK," Defendants have reasonably construed "E-CHECK-IN KIOSK" to mean and refer only to the touchscreen device that can be used by patients to check-in (*i.e.*, inform the facility of their arrival) when they arrive at Patient Service Centers (as defined above), where such kiosks are available. The term "Kiosk" shall be used interchangeably with "E-CHECK-IN KIOSK" subject to Defendants' objection and interpretation as set forth in this paragraph.

These General Objections are incorporated by reference into each and every response below to the extent applicable. Various objections may be specifically referred to in the responses below for purposes of clarity. However, failure to incorporate specifically an objection is not to be construed as a waiver of any such objection.

## III.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

How many patients did Defendant service in 2018 at YOUR PATIENT SERVICE CENTERS located in California?

**RESPONSE TO INTERROGATORY NO. 1:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified. Subject to these objections, the total number of check-ins on the Kiosks at the Patient Services Centers in California in 2018 was 7,515,365.

**INTERROGATORY NO. 2:**

How many unique patient visits did Defendants service in 2018 at YOUR PATIENT SERVICE CENTERS located in California?

4 Case No. 2:19-cv-08108 DMG (MRWx)

46703563_1.docx

DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSE TO PLAINTIFF JULIAN VARGAS'S FIRST SET OF INTERROGATORIES

PA0722

**RESPONSE TO INTERROGATORY NO. 2:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified.

Subject to these objections, after a diligent and good faith search, Defendants are unable to provide a response because its records systems do not permit Defendants to accurately determine the aggregate number of unique patients that visited Patient Service Centers in a given year and thus does not permit Defendants to provide the information purportedly sought.

**INTERROGATORY NO. 3:**

How many of the patients identified in response to interrogatory number 1 are legally blind?

**RESPONSE TO INTERROGATORY NO. 3:**

Defendants objects on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants also objects on the ground that the Interrogatory requires Defendants to undertake a burdensome and extremely complicated and uncertain calculation that itself would be subject to great uncertainty. Defendants further objects on the ground that this Interrogatory calls for disclosure of Defendants' confidential, financial, proprietary, trade secret or competitively sensitive information.

Subject to and without waiving these objections, Defendants respond as follows:

After a diligent and good-faith search, Defendants are unable to respond to this Interrogatory because Defendants does not keep data that would allow Defendants to respond to this Interrogatory.

**INTERROGATORY NO. 4:**

How many patients did Defendant service in 2019 at YOUR PATIENT SERVICE CENTERS located in California?

**RESPONSE TO INTERROGATORY NO. 4:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified. Subject to these objections, the total number of check-ins on the Kiosks at the Patient Services Centers in California in 2019 was 8,584,783.

**INTERROGATORY NO. 5:**

How many unique patient visits did Defendant service in 2019 at YOUR PATIENT SERVICE CENTERS located in California?

**RESPONSE TO INTERROGATORY NO. 5:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified.

Subject to these objections, after a diligent and good faith search, Defendants is unable to provide a response because its records systems do not permit Defendants to accurately determine the aggregate number of unique patients that visited Patient Service Centers in a given year and thus does not permit Defendant to provide the information purportedly sought.

**INTERROGATORY NO. 6:**

How many of the patients identified in response to interrogatory number 4 are legally blind?

**RESPONSE TO INTERROGATORY NO. 6:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants also object on the ground that the Interrogatory requires Defendants to undertake a burdensome and extremely complicated and uncertain calculation that itself would be subject to great uncertainty. Defendants further objects on the ground that this Interrogatory calls for disclosure of Defendants' confidential, financial, proprietary, trade secret or competitively sensitive information.

Subject to and without waiving these objections, Defendants respond as follows:

After a diligent and good-faith search, Defendants are unable to respond to this Interrogatory because Defendants do not maintain data that would permit Defendants to respond to this Interrogatory.

**INTERROGATORY NO. 7:**

How many patients did Defendant service in 2020 at YOUR PATIENT SERVICE CENTERS located in California?

**RESPONSE TO INTERROGATORY NO. 7:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified.

Subject to these objections, the total number of check-ins on the Kiosks at the Patient Services Centers in California in 2020 was 8,027,696.

**INTERROGATORY NO. 8:**

How many unique patient visits did Defendant service in 2020 at YOUR PATIENT SERVICE CENTERS located in California?

**RESPONSE TO INTERROGATORY NO. 8:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified.

Subject to these objections, after a diligent and good faith search, Defendants are unable to provide a response because its records systems do not permit Defendants to accurately determine the aggregate number of unique patients that visited Patient Service Centers in a given year and thus does not permit Defendants to provide the information purportedly sought.

**INTERROGATORY NO. 9:**

How many of the patients identified in response to interrogatory number 7 are legally blind?

**RESPONSE TO INTERROGATORY NO. 9:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants also object on the ground that the Interrogatory requires Defendants to undertake a burdensome and extremely complicated and uncertain calculation that itself would be subject to great uncertainty. Defendants further object on the ground that this Interrogatory calls for disclosure of Defendants' confidential, financial, proprietary, trade secret or competitively sensitive information.

Subject to and without waiving these objections, Defendants respond as follows:

After a diligent and good-faith inquiry, Defendants are unable to respond to this Interrogatory because Defendants do not maintain data that would permit

Defendant to respond to this Interrogatory.

**INTERROGATORY NO. 10:**

IDENTIFY the number of employees working at all of YOUR PATIENT SERVICE CENTERS in the United States of America in 2017.

**RESPONSE TO INTERROGATORY NO. 10:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified.

Subject to these objections, the total number of employees in 2017 in the United States in applicable job positions, including at the Patient Service Centers, was 16,689.

**INTERROGATORY NO. 11:**

IDENTIFY the number of employees working at all of YOUR PATIENT SERVICE CENTERS in the United States of America in 2018.

**RESPONSE TO INTERROGATORY NO. 11:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified.

Subject to these objections, the total number of employees in 2018 in the United States in applicable job positions, including at the Patient Service Centers, was 17,410.

**INTERROGATORY NO. 12:**

IDENTIFY the number of employees working at all of YOUR PATIENT

9 Case No. 2:19-cv-08108 DMG (MRWx)

46703563_1.docx

DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSE TO PLAINTIFF JULIAN VARGAS'S FIRST SET OF INTERROGATORIES

PA0727

SERVICE CENTERS in the United States of America in 2019.

**RESPONSE TO INTERROGATORY NO. 12:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified.

Subject to these objections, the total number of employees in 2019 in the United States in applicable job positions, including at the Patient Service Centers, was 17,547.

**INTERROGATORY NO. 13:**

IDENTIFY the number of employees working at all of YOUR PATIENT SERVICE CENTERS in the United States of America in 2020.

**RESPONSE TO INTERROGATORY NO. 13:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified.

Subject to these objections, the total number of employees in 2020 in the United States in applicable job positions, including at the Patient Service Centers, was 18,517.

**INTERROGATORY NO. 14:**

IDENTIFY all costs associated with equipping an E-CHECK-IN KIOSK at YOUR PATIENT SERVICE CENTERS with translation software.

**RESPONSE TO INTERROGATORY NO. 14:**

Defendants object to this Interrogatory as vague and ambiguous, particularly

as to the phrase "all costs associated with equipping" and "translation software," and Defendants cannot ascertain what the Request is seeking with reasonable particularity. Defendants further object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object on the ground and to the extent that this Interrogatory seeks the production of documents protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection from disclosure.

Subject to and without waiving these objections, Defendants respond as follows:

After a diligent and good-faith inquiry, Defendants areunable to respond to this Interrogatory because Defendants do not have the information requested in its possession, custody, or control.

**INTERROGATORY NO. 15:**

How many patients did Defendant service in 2018 at YOUR PATIENT SERVICE CENTERS located in the United States of America?

**RESPONSE TO INTERROGATORY NO. 15:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified.

Subject to these objections, the total number of check-ins on the Kiosks at the Patient Services Centers in the United States in 2018 was 32,696,929.

**INTERROGATORY NO. 16:**

How many unique patient visits did Defendant service in 2018 at YOUR PATIENT SERVICE CENTERS located in the United States of America?

**RESPONSE TO INTERROGATORY NO. 16:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified.

Subject to these objections, after a diligent and good faith search, Defendants are unable to provide a response because its records systems do not permit Defendants to accurately determine the aggregate number of unique patients that visited Patient Service Centers in a given year and thus does not permit Defendants to provide the information purportedly sought.

**INTERROGATORY NO. 17:**

How many of the patients identified in response to interrogatory number 15 are legally blind?

**RESPONSE TO INTERROGATORY NO. 17:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object on the ground that the Interrogatory requires Defendants to undertake a burdensome and extremely complicated and uncertain calculation that itself would be subject to great uncertainty. Defendants further object on the ground that this Interrogatory calls for disclosure of Defendants' confidential, financial, proprietary, trade secret or competitively sensitive information.

Subject to and without waiving these objections, Defendants respond as follows:

After a diligent and good-faith inquiry, Defendants are unable to respond to this Interrogatory because Defendants do not maintain data that would permit

Defendants to respond to this Interrogatory.

**INTERROGATORY NO. 18:**

How many patients did Defendant service in 2019 at YOUR PATIENT SERVICE CENTERS located in the United States of America?

**RESPONSE TO INTERROGATORY NO. 18:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified.

Subject to these objections, the total number of check-ins on the Kiosks at the Patient Services Centers in the United States in 2019 was 38,046,872.

**INTERROGATORY NO. 19:**

How many unique patient visits did Defendant service in 2019 at YOUR PATIENT SERVICE CENTERS located in the United States of America?

**RESPONSE TO INTERROGATORY NO. 19:**

Defendants further object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified.

Subject to these objections, after a diligent and good faith search, Defendants are unable to provide a response because its records systems do not permit Defendants to accurately determine the aggregate number of unique patients that visited Patient Service Centers in a given year and thus does not permit Defendants to provide the information purportedly sought.

**INTERROGATORY NO. 20:**

How many of the patients identified in response to interrogatory number 18 are legally blind?

**RESPONSE TO INTERROGATORY NO. 20:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants also object on the ground that the Interrogatory requires Defendants to undertake a burdensome and extremely complicated and uncertain calculation that itself would be subject to great uncertainty. Defendants further objects on the ground that this Interrogatory calls for disclosure of Defendants' confidential, financial, proprietary, trade secret or competitively sensitive information.

Subject to and without waiving these objections, Defendants respond as follows:

After a diligent and good-faith inquiry, Defendants are unable to respond to this Interrogatory because Defendants do not maintain data that would permit Defendants to respond to this Interrogatory.

**INTERROGATORY NO. 21:**

How many patients did Defendant service in 2019 at YOUR PATIENT SERVICE CENTERS located in the United States of America?

**RESPONSE TO INTERROGATORY NO. 21:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified. Defendants further object to this Interrogatory on the ground that it is duplicative of Interrogatory No. 18.

Subject to these objections, the total number of check-ins on the Kiosks at the

Patient Service Centers in the United States in 2019 was 38,046,872.

**INTERROGATORY NO. 22:**

How many unique patient visits did Defendant service in 2019 at YOUR PATIENT SERVICE CENTERS located in the United States of America?

**RESPONSE TO INTERROGATORY NO. 22:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified. Defendants further object to this interrogatory on the ground that it is duplicative of Interrogatory No. 20.

Subject to these objections, after a diligent and good faith search, Defendants are unable to provide a response because its records systems do not permit Defendants to accurately determine the aggregate number of unique patients that visited Patient Service Centers in a given year and thus does not permit Defendants to provide the information purportedly sought.

**INTERROGATORY NO. 23:**

How many of the patients identified in response to interrogatory number 21 are legally blind?

**RESPONSE TO INTERROGATORY NO. 23:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants also object on the ground that the Interrogatory requires Defendants to undertake a burdensome and extremely complicated and uncertain calculation that itself would be subject to great uncertainty. Defendants further objects on the ground that this Interrogatory calls for disclosure of Defendants'

confidential, financial, proprietary, trade secret or competitively sensitive information.

Subject to and without waiving these objections, Defendants respond as follows:

After a diligent and good-faith inquiry, Defendants are unable to respond to this Interrogatory because Defendants do not maintain data that would permit Defendants to respond to this Interrogatory.

DATED: April 7, 2021

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ David Raizman
David Raizman
Amber L. Roller
J. Nicholas Marfori

Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.; QUEST DIAGNOSTICS HOLDINGS, INC. and QUEST DIAGNOSTICS INCORPORATED

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and not a party to this action. My business address is 400 South Hope Street, Suite 1200, Los Angeles, California 90071.

On April 8, 2021, I served the following document(s) described as:

DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSES TO PLAINTIFF JULIAN VARGAS' FIRST SET OF INTERROGATORIES

on the persons below as follows:

| | |
|---|---|
| Jonathan D. Miller, Esq.<br>Alison M. Bernal, Esq.<br>Jordan T. Porter, Esq.<br>NYE, STIRLING, HALE & MILLER, LLP<br>33 West Mission Street, Suite 201<br>Santa Barbara, CA 93101<br>Telephone: (805) 963-2345<br>Facsimile: (805) 284-9590<br>Email: jonathan@nshmlaw.com<br>alison@nshmlaw.com<br>jordan@nshmlaw.com<br>lindsey@nshmlaw.com<br>meg@nshmlaw.com | Attorneys for Plaintiffs Julian Vargas, Anne West, American Council of the Blind, and the Proposed Class |
| Matthew K. Handley, Esq.<br>HANDLEY FARAH & ANDERSON PLLC<br>777 6th Street, NW - 11th Floor<br>Washington, DC 20001<br>Telephone: (202) 559-2411<br>Facsimile: (844) 300-1952<br>Email: mhandley@hfajustice.com | Attorneys for Plaintiffs Julian Vargas, Anne West, American Council of the Blind, and the Proposed Class |
| Benjamin J. Sweet, Esq.<br>Nye Stirling Hale & Miller, LLP<br>1145 Bower Hill Road, Suite 104<br>Pittsburgh, PA 15243<br>Telephone: (412) 857-5350<br>Email: ben@nshmlaw.com | Attorneys for Plaintiffs Julian Vargas, Anne West, American Council of the Blind, and the Proposed Class |

I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses as indicated above and:

☐ deposited the sealed envelope or package with the United States Postal Service, with the postage fully prepaid.*

☒ placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope or package with postage fully prepaid.

I am employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on April 8, 2021, at Los Angeles, California.

Gerard Salas
Type or Print Name

Signature

46703563.1

**VERIFICATION**

I have read the foregoing **DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSES TO PLAINTIFF JULIAN VARGAS' FIRST SET OF INTERROGATORIES** and know its contents.

☐ I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters that are stated on information and belief, and to those matters I believe them to be true.

☒ I am ☐ an officer ☐ a partner ☒ Director, National Patient Services, Technology, and Support for Quest Diagnostics Incorporated ("Quest"), a defendant to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

☒ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

☐ The matters stated in the foregoing document are true of my own knowledge except as to those matters that are stated on information and belief, and as to those matters I believe them to be true.

☐ I am one of the attorneys for ___________________ a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on May 21, 2021, at _Schwenksville, Pennsylvania.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Marc Yarrison

Type or Print Name

Signature

47229921.1

# EXHIBIT 26

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
DAVID RAIZMAN, CA Bar No. 129407
david.raizman@ogletree.com
AMBER L. ROLLER, CA Bar No. 273354
amber.roller@ogletree.com
J. NICHOLAS MARFORI, CA Bar No. 311765
nicholas.marfori@ogletree.com
400 South Hope Street, Suite 1200
Los Angeles, California 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.; QUEST DIAGNOSTICS HOLDINGS, INC. and QUEST DIAGNOSTICS INCORPORATED

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JULIAN VARGAS, ANNE WEST and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,

Defendants.

Case No. 2:19-cv-08108 DMG (MRWx)

**DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSE TO PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FIRST SET OF INTERROGATORIES**

Complaint Filed: September 18, 2019
Trial Date: January 11, 2022
District Judge: Hon. Dolly M. Gee
Courtroom 8C, First St.
Magistrate Judge: Hon. Michael R. Wilner
Courtroom 550, Roybal

PROPOUNDING PARTY: Plaintiff AMERICAN COUNCIL OF THE BLIND

RESPONDING PARTY: Defendant QUEST DIAGNOSTICS INCORPORATED

SET NO.: ONE

Defendant Quest Diagnostics Incorporated ("Defendant") responds to Plaintiff American Council of the Blind's ("Plaintiff") First Set of Interrogatories, as follows:

**I.**

**PRELIMINARY STATEMENT**

The following responses are based on the present knowledge, information, and belief of the three defendants ("Defendants"), as derived from (a) the knowledge and information of present employees of Defendants gained in their capacity as such, and (b) a review of the files maintained by Defendants that would be likely to contain the information called for by the Interrogatories. These responses are subject to amendment and supplementation as Defendants acquires additional information and completes its review and analysis and made without prejudice to Defendants' right to use subsequently discovered or developed information.

Except for facts explicitly stated in these responses, no admissions of any nature whatsoever are implied or should be inferred. The fact that any Interrogatory in this set has been objected to should not be taken as an admission or acceptance of the existence of any facts set forth or assumed by such interrogatory, or that such constitutes admissible evidence.

Defendants respond for themselves alone, and expressly declines to respond on behalf of, or based on information maintained by or available to any other entity or party. Defendants' responses are based solely on information in its possession, custody, and/or control. Specific objections to each Interrogatory are made on an individual basis in Defendants' responses below. In addition to these specific objections, Defendants makes certain continuing objections (the "General Objections") to the interrogatories. Defendants' response to each individual

1 Case No. 2:19-cv-08108 DMG (MRWx)

46208779_1.docx

DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSE TO PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FIRST SET OF INTERROGATORIES

PA0739

Interrogatory is submitted without prejudice to, and without in any respect limiting or waiving, any General Objection not expressly set forth in that response.

## II.

## GENERAL OBJECTIONS

Defendants provide these responses subject to the general objections set forth below ("General Objections").

1. Defendants object generally to these Interrogatories on the ground and to the extent that they seek information that is not within Defendants' possession, custody or control, and/or for which Defendants are completely reliant on third parties that Plaintiff has not named as a defendant in this action.

2. Defendants object generally to these Interrogatories to the extent that they seek the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection from disclosure. Defendants does not intend to disclose any information subject to any such privilege or protection from disclosure, and the inadvertent disclosure of privileged or protected information shall not constitute a waiver of any kind.

3. Defendants object generally to these Interrogatories to the extent that they call for disclosure of trade secrets, proprietary information, or other confidential information, the disclosure of which would harm the rights or interests of the owner or possessor of such information. To the extent Plaintiff's Interrogatories call for information that is confidential, private, or proprietary, Defendants will produce the otherwise discoverable information upon Plaintiff's agreement to an appropriate confidentiality order.

4. Defendants object generally to these Interrogatories to the extent they purport to impose obligations beyond those required or authorized by the Federal Rules of Civil Procedure or other applicable law, including without limitation the limit on interrogatories allowed per party set forth in Rule 33(a)(1) of the Federal Rules of Civil Procedure in that the requesting parties who have collectively

exceeded the limit are completely aligned and represented by the same counsel of record.

5. Defendants also objects on the ground that that Plaintiff's definition of "YOU" and "YOUR" is vague and overly broad because Plaintiff has defined "YOU" and "YOUR" to mean "Defendant Quest Diagnostics Incorporated and its consolidated subsidiaries, agents, assigns, employees, representatives, and counsel; and any other representative or person acting on behalf of Defendant." For purposes of responding to each of Plaintiff's Interrogatories which rely upon the term "YOU" or "YOUR," Defendants have reasonably construed "YOU" and "YOUR" to mean and refer to Defendant and its wholly-owned subsidiaries.

6. Defendants object on the ground that Plaintiff's definition of "PATIENT SERVICE CENTER" is vague and overbroad in that it defines "PATIENT SERVICE CENTER" as "a Quest Diagnostics location where a patient can obtain clinical laboratory services from Quest Diagnostics." For purposes of responding to each of the Interrogatories which rely upon the term "PATIENT SERVICE CENTER," Defendants have reasonably construed "PATIENT SERVICE CENTER" to mean and refer only to a patient service center located within the United States that is open to the public, provides specimen collection and related services in furtherance of diagnostic testing services, bears the name Quest Diagnostics, and is operated by Quest Diagnostics Incorporated or its wholly owned subsidiaries. This definition excludes any physician office or similar location, where Quest has placed an employee, such as a phlebotomist, to provide specimen collection services for patients of that physician office or location.

7. Defendants object on the ground that Plaintiff's definition of "E-CHECK-IN KIOSK" is vague and overbroad because it defines "E-CHECK-IN KIOSK" as "Defendant's touchscreen electronic check-in at PATIENT SERVICE CENTERS" without specifying that it is a device used by patients to check-in at Quest patient service centers. For purposes of responding to each of the

3 Case No. 2:19-cv-08108 DMG (MRWx)

46208779_1.docx

DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSE TO PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FIRST SET OF INTERROGATORIES

PA0741

Interrogatories which rely upon the term "E-CHECK-IN KIOSK," Defendants have reasonably construed "E-CHECK-IN KIOSK" to mean and refer only to the touchscreen device that can be used by patients to check-in (i.e., inform the facility of their arrival) when they arrive at Patient Service Centers (as defined above), where such kiosks are available. The term "Kiosk" shall be used interchangeably with "E-CHECK-IN KIOSK" subject to Defendants' objection and interpretation as set forth in this paragraph.

These General Objections are incorporated by reference into each and every response below to the extent applicable. Various objections may be specifically referred to in the responses below for purposes of clarity. However, failure to incorporate specifically an objection is not to be construed as a waiver of any such objection.

## III.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

How many patients did Defendant service in 2017 at YOUR PATIENT SERVICE CENTERS located in California?

**RESPONSE TO INTERROGATORY NO. 1:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified. Subject to these objections, the total number of check-ins on the Kiosks at the Patient Services Centers in California in 2017 was 4,366,111.

**INTERROGATORY NO. 2:**

How many unique patient visits did Defendant service in 2017 at YOUR PATIENT SERVICE CENTERS located in California?

**RESPONSE TO INTERROGATORY NO. 2:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case.  Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified.

Subject to these objections, after a diligent and good faith search, Defendants are unable to provide a response because its records systems do not permit Defendants to accurately determine the aggregate number of unique patients that visited Patient Service Centers in a given year and thus does not permit Defendants to provide the information purportedly sought.

**INTERROGATORY NO. 3:**

How many of the patients identified in response to interrogatory number 1 are legally blind?

**RESPONSE TO INTERROGATORY NO. 3:**

Defendants objects on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case.  Defendants also objects on the ground that the Interrogatory requires Defendants to undertake a burdensome and extremely complicated and uncertain calculation that itself would be subject to great uncertainty.  Defendants further objects on the ground that this Interrogatory calls for disclosure of Defendants' confidential, financial, proprietary, trade secret or competitively sensitive information.

Subject to and without waiving these objections, Defendants respond as follows:

After a diligent and good-faith search, Defendants are unable to respond to this Interrogatory because Defendants does not keep data that would allow Defendants to respond to this Interrogatory.

5                                    Case No. 2:19-cv-08108 DMG (MRWx)

46208779_1.docx

DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSE TO
PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FIRST SET OF INTERROGATORIES

PA0743

**INTERROGATORY NO. 4:**

How many patients did Defendant service in 2017 at YOUR PATIENT SERVICE CENTERS located in the United States of America?

**RESPONSE TO INTERROGATORY NO. 4:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified.

Subject to these objections, the total number of check-ins on the Kiosks at the Patient Services Centers in the United States in 2017 was 15,924,343.

**INTERROGATORY NO. 5:**

How many unique patient visits did Defendant service in 2017 at YOUR PATIENT SERVICE CENTERS located in the United States of America?

**RESPONSE TO INTERROGATORY NO. 5:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants further object to this Interrogatory as overbroad and unduly burdensome, in that it would require an amount of time and effort for response that is unreasonable and unjustified.

Subject to these objections, after a diligent and good faith search, Defendants are unable to provide a response because its records systems do not permit Defendants to accurately determine the aggregate number of unique patients that visited Patient Service Centers in a given year and thus does not permit Defendants to provide the information purportedly sought.

**INTERROGATORY NO. 6:**

How many of the patients identified in response to interrogatory number 4 are legally blind?

6 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSE TO PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FIRST SET OF INTERROGATORIES

46208779_1.docx

PA0744

**RESPONSE TO INTERROGATORY NO. 6:**

Defendants object on the ground that the Interrogatory seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case. Defendants also object on the ground that the Interrogatory requires Defendants to undertake a burdensome and extremely complicated and uncertain calculation that itself would be subject to great uncertainty. Defendants further object on the ground that this Interrogatory calls for disclosure of Defendants' confidential, financial, proprietary, trade secret or competitively sensitive information.

Subject to and without waiving these objections, Defendants respond as follows:

After a diligent and good-faith inquiry, Defendants are unable to respond to this Interrogatory because Defendants do not maintain data that would permit Defendant to respond to this Interrogatory.

DATED: April 7, 2021

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ David Raizman
David Raizman
Amber L. Roller
J. Nicholas Marfori

Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.; QUEST DIAGNOSTICS HOLDINGS, INC. and QUEST DIAGNOSTICS INCORPORATED

7 Case No. 2:19-cv-08108 DMG (MRWx)

46208779_1.docx

DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSE TO PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FIRST SET OF INTERROGATORIES

PA0745

**CERTIFICATE OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and not a party to this action. My business address is 400 South Hope Street, Suite 1200, Los Angeles, California 90071.

On April 8, 2021, I served the following document(s) described as:

DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSE TO PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FIRST SET OF INTERROGATORIES

on the persons below as follows:

| | |
|---|---|
| Jonathan D. Miller, Esq.<br>Alison M. Bernal, Esq.<br>Jordan T. Porter, Esq.<br>NYE, STIRLING, HALE & MILLER, LLP<br>33 West Mission Street, Suite 201<br>Santa Barbara, CA 93101<br>Telephone: (805) 963-2345<br>Facsimile: (805) 284-9590<br>Email: jonathan@nshmlaw.com<br>alison@nshmlaw.com<br>jordan@nshmlaw.com<br>lindsey@nshmlaw.com<br>meg@nshmlaw.com | Attorneys for Plaintiffs<br>Julian Vargas, Anne West, American Council of the Blind, and the Proposed Class |
| Matthew K. Handley, Esq.<br>HANDLEY FARAH & ANDERSON PLLC<br>777 6th Street, NW - 11th Floor<br>Washington, DC 20001<br>Telephone: (202) 559-2411<br>Facsimile: (844) 300-1952<br>Email: mhandley@hfajustice.com | Attorneys for Plaintiffs<br>Julian Vargas, Anne West, American Council of the Blind, and the Proposed Class |
| Benjamin J. Sweet, Esq.<br>Nye Stirling Hale & Miller, LLP<br>1145 Bower Hill Road, Suite 104<br>Pittsburgh, PA 15243<br>Telephone: (412) 857-5350<br>Email: ben@nshmlaw.com | Attorneys for Plaintiffs<br>Julian Vargas, Anne West, American Council of the Blind, and the Proposed Class |

I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses as indicated above and:

☐ deposited the sealed envelope or package with the United States Postal Service, with the postage fully prepaid.*

☒ placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope or package with postage fully prepaid.

I am employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on April 8, 2021, at Los Angeles, California.

Gerard Salas

Type or Print Name

Signature

# VERIFICATION

I have read the foregoing **DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSE TO PLAINTIFF AMERICAN COUNCIL OF THE BLIND'S FIRST SET OF INTERROGATORIES** and know its contents.

☐ I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters that are stated on information and belief, and to those matters I believe them to be true.

☒ I am ☐ an officer ☐ a partner ☒ Director, National Patient Services, Technology, and Support for Quest Diagnostics Incorporated ("Quest"), a defendant to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

☒ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

☐ The matters stated in the foregoing document are true of my own knowledge except as to those matters that are stated on information and belief, and as to those matters I believe them to be true.

☐ I am one of the attorneys for ____________________ a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on May 21, 2021, at Schwenksville, Pennsylvania.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Marc Yarrison

Type or Print Name

[signature]

Signature

# EXHIBIT 27

REDACTED

TO BE FILED UNDER SEAL PENDING THE COURT'S RULING ON PLAINTIFF'S APPLICATION

# EXHIBIT 28

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
DAVID RAIZMAN, CA Bar No. 129407
david.raizman@ogletree.com
AMBER L. ROLLER, CA Bar No. 273354
amber.roller@ogletree.com
J. NICHOLAS MARFORI, CA Bar No. 311765
nicholas.marfori@ogletree.com
400 South Hope Street, Suite 1200
Los Angeles, California 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.; QUEST DIAGNOSTICS HOLDINGS, INC. and QUEST DIAGNOSTICS INCORPORATED

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JULIAN VARGAS, ANNE WEST and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,

Defendants.

Case No. 2:19-cv-08108 DMG (MRWx)

**DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSE TO PLAINTIFF JULIAN VARGAS' FIRST SET OF REQUESTS FOR ADMISSION**

Complaint Filed: September 18, 2019
Trial Date: January 11, 2022
District Judge: Hon. Dolly M. Gee
Courtroom 8C, First St.
Magistrate Judge: Hon. Michael R. Wilner
Courtroom 550, Roybal

Case No. 2:19-cv-08108 DMG (MRWx)
47339893_4.docx
DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSE TO PLAINTIFF JULIAN VARGAS' FIRST SET OF REQUESTS FOR ADMISSION
PA0750

PROPOUNDING PARTY: Plaintiff JULIAN VARGAS

RESPONDING PARTY: Defendant QUEST DIAGNOSTICS INCORPORATED

SET NO.: ONE

Defendant Quest Diagnostics Incorporated ("Defendant") responds to Plaintiff Julian Vargas' First Set of Requests for Admission to Defendant Quest Diagnostics Incorporated (the "Requests") as follows:

**I.**

**PRELIMINARY STATEMENT**

Defendant makes the following answers, responses, and objections to the Requests of Plaintiff Julian Vargas ("Plaintiff"). Each of the following responses is made subject to any and all objections as to competence, relevance or other grounds that would require exclusion of such statement if made by a witness present and testifying in court. Any and all such objections and grounds are expressly reserved and may be interposed at the time of the trial.

These responses are based on Defendant's present knowledge, information, and belief, as derived from (a) the knowledge and information of present employees of Defendant gained in their capacity as such, and (b) a review of the files maintained by Defendant that would be likely to contain the information called for by the Requests. These responses are subject to amendment and supplementation as Defendant acquires additional information and completes its review and analysis and made without prejudice to Defendant's right to use subsequently discovered or developed information.

No incidental or implied admissions are intended by these Responses. The fact that Defendant responds or objects to any Request should not be taken as an admission that Defendant accepts or admits the existence of any facts assumed by such Request or that such Response or objection constitutes admissible evidence as to any such assumed facts. The fact that Defendant responds to part of or all of any

Request is not intended to be, and shall not be, construed as, a waiver by Defendant of any part of any objection to any Request.

Defendant will respond to Plaintiff's Requests in accordance with Rules 26 and 36 and will not provide responses to the extent such responses would exceed the requirements of those Rules. Defendant responds for it alone, and expressly declines to respond on behalf of, or based on information maintained by or available to any other entity or party. Specific objections to each Request are made on an individual basis in Defendant's responses below. In addition to these specific objections, Defendant makes certain continuing objections (the "General Objections") to the Requests. Defendant's response to each individual request is submitted without prejudice to, and without in any respect limiting or waiving, any General Objection not expressly set forth in that response.

## II.

## GENERAL OBJECTIONS

Defendant provides these responses subject to the general objections set forth below ("General Objections").

1. Defendant objects that Plaintiff's definition of "YOU" and "YOUR" is vague and overly broad because Plaintiff has defined "YOU" and "YOUR" to mean "Defendant Quest Diagnostics Incorporated and its consolidated subsidiaries, agents, assigns, employees, representatives, and counsel; and any other representative or person acting on behalf of Defendant." For purposes of responding to each of Plaintiff's Requests which rely upon the term "YOU" or "YOUR," Defendant has reasonably construed "YOU" and "YOUR" to mean and refer only to Defendant.

2. Defendant objects on the ground that Plaintiff's definition of "PATIENT SERVICE CENTER" is vague and overbroad in that it defines "PATIENT SERVICE CENTER" as "a Quest Diagnostics location where a patient can obtain clinical laboratory services from Quest Diagnostics." For purposes of responding to each of the Requests which rely upon the term "PATIENT SERVICE

CENTER," Defendant has reasonably construed "PATIENT SERVICE CENTER" to mean and refer only to a patient service center located within the United States that is open to the public, provides specimen collection and related services in furtherance of diagnostic testing services, bears the name Quest Diagnostics, and is operated by Quest Diagnostics Incorporated or its wholly owned subsidiaries. This definition excludes any physician office or similar location, where Quest has placed an employee, such as a phlebotomist, to provide specimen collection services for patients of that physician office or location.

3. Defendant objects on the ground that Plaintiff's definition of "E-CHECK-IN KIOSK" that it is vague and overbroad because it defines "E-CHECK-IN KIOSK" as "Defendant's touchscreen electronic check-in at its PATIENT SERVICE CENTERS" without specifying that it is a device used by patients to check-in at Quest patient service centers. For purposes of responding to each of the Requests which rely upon the term "E-CHECK-IN KIOSK," Defendant has reasonably construed "E-CHECK-IN KIOSK" to mean and refer only to the touchscreen device that can be used by patients to check-in (*i.e.*, inform the facility of their arrival) when they arrive at Patient Service Centers (as defined herein), where such kiosks are available. The term "Kiosk" shall be used interchangeably with "E-CHECK-IN KIOSK" subject to Defendant's objection and interpretation as set forth in this paragraph.

These General Objections are incorporated by reference into each and every response below to the extent applicable. Various objections may be specifically referred to in the responses below for purposes of clarity. However, failure to incorporate specifically an objection is not to be construed as a waiver of any such objection..

## III.

## RESPONSES TO REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that documents produced by Quest, Bates numbered as follows—QUEST-VARGAS000036496; QUEST-VARGAS000035087-90; QUEST-VARGAS000033037-48; QUEST-VARGAS000035119-76; QUEST-VARGAS000034658-66; QUEST-VARGAS000007361-63; QUEST-VARGAS000037909-10; QUEST-VARGAS000037977; QUEST-VARGAS000035335-36; QUEST-VARGAS000036699; QUEST-VARGAS000028740-41; QUEST-VARGAS000028746-47; QUEST-VARGAS000030878-79; QUEST-VARGAS000038805-06; QUEST-VARGAS000037605-06; QUEST-VARGAS000037980-81; QUEST-VARGAS000036566-78; QUEST-VARGAS000036700-02; QUEST-VARGAS000036947-54; QUEST-VARGAS000040261-64; QUEST-VARGAS000040267-69; QUEST-VARGAS000040280-84; QUEST-VARGAS000039990; QUEST-VARGAS000039966-67; QUEST-VARGAS000035475-76; QUEST-VARGAS000000022-41; QUEST-VARGAS000004496-99; QUEST-VARGAS000040161-66; QUEST-VARGAS000040791; QUEST-VARGAS000002811; QUEST-VARGAS000000583-637; QUEST-VARGAS000036495-96; QUEST-VARGAS000036320; QUEST-VARGAS000000858; QUEST-VARGAS000001053-54; QUEST-VARGAS000036677-81; QUEST-VARGAS000035240-43; QUEST-VARGAS000028740-41; QUEST-VARGAS000039721-26; QUEST-VARGAS000038679; QUEST-VARGAS000031121; QUEST-VARGAS000040972-41085; QUEST-VARGAS000041092-41152; QUEST-VARGAS000030691; QUEST-VARGAS000034803-34941; QUEST-VARGAS000032693-94; QUEST-VARGAS000031630-35; QUEST-VARGAS000041684; QUEST-

VARGAS000036226; QUEST-VARGAS000036322; QUEST-VARGAS000036276; QUEST-VARGAS000036501; QUEST-VARGAS000038939-40; and QUEST-VARGAS000037495-96—are true and authentic copies of the genuine original documents.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Defendant incorporates the above Preliminary Statement and General Objections into this response by this reference as though they are set forth in full. Defendant further objects that this Request is unduly burdensome and improperly compound as it requests admissions regarding 52 separate documents, comprising over 600 pages and each such "document" often consisting of multiple documents. Defendant also objects on the ground and to the extent that this Request calls for admissions regarding documents protected by the attorney-client privilege and attorney-work-product doctrine, including documents that are subject to the Clawback Order (ECF No. 64) in this action. Plaintiff's continued retention or use of, or reference to, a document subject to the Clawback Order, as exhibited in this Request, constitutes contempt of that Order.

Subject to and without waiving the objections, Defendant responds as follows: Defendant directs Plaintiff to Exhibit 1 to these Responses, which sets forth Defendant's response as to each of the documents identified in this Request for which a response may be provided. Except as expressly admitted in Exhibit 1, all other portions of this Request are denied.

**REQUEST FOR ADMISSION NO. 2:**

Admit that documents produced by Quest, Bates numbered as follows—QUEST-VARGAS000036496; QUEST-VARGAS000035087-90; QUEST-VARGAS000033037-48; QUEST-VARGAS000035119-76; QUEST-VARGAS000034658-66; QUEST-VARGAS000007361-63; QUEST-VARGAS000037909-10; QUEST-VARGAS000037977; QUEST-VARGAS000035335-36; QUEST-VARGAS000036699; QUEST-

VARGAS000028740-41; QUEST-VARGAS000028746-47; QUEST-VARGAS000030878-79; QUEST-VARGAS000038805-06; QUEST-VARGAS000037605-06; QUEST-VARGAS000037980-81; QUEST-VARGAS000036566-78; QUEST-VARGAS000036700-02; QUEST-VARGAS000036947-54; QUEST-VARGAS000040261-64; QUEST-VARGAS000040267-69; QUEST-VARGAS000040280-84; QUEST-VARGAS000039990; QUEST-VARGAS000039966-67; QUEST-VARGAS000035475-76; QUEST-VARGAS000000022-41; QUEST-VARGAS000004496-99; QUEST-VARGAS000040161-66; QUEST-VARGAS000040791; QUEST-VARGAS000002811; QUEST-VARGAS000000583-637; QUEST-VARGAS000036495-96; QUEST-VARGAS000036320; QUEST-VARGAS000000858; QUEST-VARGAS000001053-54; QUEST-VARGAS000036677-81; QUEST-VARGAS000035240-43; QUEST-VARGAS000028740-41; QUEST-VARGAS000039721-26; QUEST-VARGAS000038679; QUEST-VARGAS000031121; QUEST-VARGAS000040972-41085; QUEST-VARGAS000041092-41152; QUEST-VARGAS000030691; QUEST-VARGAS000034803-34941; QUEST-VARGAS000032693-94; QUEST-VARGAS000031630-35; QUEST-VARGAS000041684; QUEST-VARGAS000036226; QUEST-VARGAS000036322; QUEST-VARGAS000036276; QUEST-VARGAS000036501; QUEST-VARGAS000038939-40; and QUEST-VARGAS000037495-96—were made at or near the time of the regularly conducted activity to which the documents pertain.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Defendant incorporates the above Preliminary Statement and General Objections into this response by this reference as though they are set forth in full. Defendant further objects that this Request is unduly burdensome and improperly compound as it requests admissions regarding 52 separate documents, comprising

over 600 pages and each such document often consisting of multiple documents. Defendant also objects that this Request is vague and ambiguous as to the phrase "regularly conducted activity," given the varying substance, origin, and nature of each of the 52 documents identified in this Request and the varying "activities" described within each of the documents. Defendant also objects on the ground and to the extent that this Request calls for admissions regarding documents protected by the attorney-client privilege and attorney-work-product doctrine, including documents that are subject to the Clawback Order (ECF No. 64) in this action. Plaintiff's continued retention or use of, or reference to, a document subject to the Clawback Order, as exhibited in this Request, constitutes contempt of that Order.

Subject to and without waiving the objections, Defendant responds as follows: Defendant directs Plaintiff to Exhibit 1 to these Responses, which sets forth Defendant's response as to each of the documents identified in this Request for which a response may be provided. Except as expressly admitted in Exhibit 1, all other portions of this Request are denied.

**REQUEST FOR ADMISSION NO. 3:**

Admit that documents produced by Quest, Bates numbered as follows—QUEST-VARGAS000036496; QUEST-VARGAS000035087-90; QUEST-VARGAS000033037-48; QUEST-VARGAS000035119-76; QUEST-VARGAS000034658-66; QUEST-VARGAS000007361-63; QUEST-VARGAS000037909-10; QUEST-VARGAS000037977; QUEST-VARGAS000035335-36; QUEST-VARGAS000036699; QUEST-VARGAS000028740-41; QUEST-VARGAS000028746-47; QUEST-VARGAS000030878-79; QUEST-VARGAS000038805-06; QUEST-VARGAS000037605-06; QUEST-VARGAS000037980-81; QUEST-VARGAS000036566-78; QUEST-VARGAS000036700-02; QUEST-VARGAS000036947-54; QUEST-VARGAS000040261-64; QUEST-VARGAS000040267-69; QUEST-VARGAS000040280-84; QUEST-

VARGAS000039990; QUEST-VARGAS000039966-67; QUEST-VARGAS000035475-76; QUEST-VARGAS000000022-41; QUEST-VARGAS000004496-99; QUEST-VARGAS000040161-66; QUEST-VARGAS000040791; QUEST-VARGAS000002811; QUEST-VARGAS000000583-637; QUEST-VARGAS000036495-96; QUEST-VARGAS000036320; QUEST-VARGAS000000858; QUEST-VARGAS000001053-54; QUEST-VARGAS000036677-81; QUEST-VARGAS000035240-43; QUEST-VARGAS000028740-41; QUEST-VARGAS000039721-26; QUEST-VARGAS000038679; QUEST-VARGAS000031121; QUEST-VARGAS000040972-41085; QUEST-VARGAS000041092-41152; QUEST-VARGAS000030691; QUEST-VARGAS000034803-34941; QUEST-VARGAS000032693-94; QUEST-VARGAS000031630-35; QUEST-VARGAS000041684; QUEST-VARGAS000036226; QUEST-VARGAS000036322; QUEST-VARGAS000036276; QUEST-VARGAS000036501; QUEST-VARGAS000038939-40; and QUEST-VARGAS000037495-96—were made by a person with knowledge of the activity to which the documents pertain or were made from information transmitted by a person with knowledge of the activity to which the documents pertain.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Defendant incorporates the above Preliminary Statement and General Objections into this response by this reference as though they are set forth in full. Defendant further objects that this Request is unduly burdensome and improperly compound as it requests admissions regarding 52 separate documents, comprising over 600 pages and each such document often consisting of multiple documents. Defendant also objects that this Request is vague and ambiguous as to the term "activity" and phrase "information transmitted," given the varying substance, origin, and nature of each of the 52 documents identified in this Request and the varying

"activities" and "information" described within each of the documents. Defendant also objects on the ground and to the extent that this Request calls for admissions regarding documents protected by the attorney-client privilege and attorney-work-product doctrine, including documents that are subject to the Clawback Order (ECF No. 64) in this action. Plaintiff's continued retention or use of, or reference to, a document subject to the Clawback Order, as exhibited in this Request, constitutes contempt of that Order.

Subject to and without waiving the objections, Defendant responds as follows: Defendant directs Plaintiff to Exhibit 1 to these Responses, which sets forth Defendant's response as to each of the documents identified in this Request for which a response may be provided. Except as expressly admitted in Exhibit 1, all other portions of this Request are denied.

**REQUEST FOR ADMISSION NO. 4:**

Admit that documents produced by Quest, Bates numbered as follows—QUEST-VARGAS000036496; QUEST-VARGAS000035087-90; QUEST-VARGAS000033037-48; QUEST-VARGAS000035119-76; QUEST-VARGAS000034658-66; QUEST-VARGAS000007361-63; QUEST-VARGAS000037909-10; QUEST-VARGAS000037977; QUEST-VARGAS000035335-36; QUEST-VARGAS000036699; QUEST-VARGAS000028740-41; QUEST-VARGAS000028746-47; QUEST-VARGAS000030878-79; QUEST-VARGAS000038805-06; QUEST-VARGAS000037605-06; QUEST-VARGAS000037980-81; QUEST-VARGAS000036566-78; QUEST-VARGAS000036700-02; QUEST-VARGAS000036947-54; QUEST-VARGAS000040261-64; QUEST-VARGAS000040267-69; QUEST-VARGAS000040280-84; QUEST-VARGAS000039990; QUEST-VARGAS000039966-67; QUEST-VARGAS000035475-76; QUEST-VARGAS000000022-41; QUEST-VARGAS000004496-99; QUEST-VARGAS000040161-66; QUEST-

VARGAS000040791; QUEST-VARGAS000002811; QUEST-VARGAS000000583-637; QUEST-VARGAS000036495-96; QUEST-VARGAS000036320; QUEST-VARGAS000000858; QUEST-VARGAS000001053-54; QUEST-VARGAS000036677-81; QUEST-VARGAS000035240-43; QUEST-VARGAS000028740-41; QUEST-VARGAS000039721-26; QUEST-VARGAS000038679; QUEST-VARGAS000031121; QUEST-VARGAS000040972-41085; QUEST-VARGAS000041092-41152; QUEST-VARGAS000030691; QUEST-VARGAS000034803-34941; QUEST-VARGAS000032693-94; QUEST-VARGAS000031630-35; QUEST-VARGAS000041684; QUEST-VARGAS000036226; QUEST-VARGAS000036322; QUEST-VARGAS000036276; QUEST-VARGAS000036501; QUEST-VARGAS000038939-40; and QUEST-VARGAS000037495-96—were prepared and kept by YOU in the course of regularly conducted activity of a business, organization, occupation, or calling.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Defendant incorporates the above Preliminary Statement and General Objections into this response by this reference as though they are set forth in full. Defendant further objects that this Request is unduly burdensome and improperly compound as it requests admissions regarding 52 separate documents, comprising over 600 pages and each such document often consisting of multiple documents. Defendant also objects that this Request is vague and ambiguous as to the term “activity” and phrase “information transmitted,” given the varying substance, origin, and nature of each of the 52 documents identified in this Request and the varying “activities” and “information” described within each of the documents. Defendant also objects on the ground and to the extent that this Request calls for admissions regarding documents protected by the attorney-client privilege and attorney-work-product doctrine, including documents that are subject to the Clawback Order (ECF

No. 64) in this action. Plaintiff's continued retention or use of, or reference to, a document subject to the Clawback Order, as exhibited in this Request, constitutes contempt of that Order.

Subject to and without waiving the objections, Defendant responds as follows: Defendant directs Plaintiff to Exhibit 1 to these Responses, which sets forth Defendant's response as to each of the documents identified in this Request for which a response may be provided. Except as expressly admitted in Exhibit 1, all other portions of this Request are denied.

**REQUEST FOR ADMISSION NO. 5:**

Admit that documents produced by Quest, Bates numbered as follows—QUEST-VARGAS000036496; QUEST-VARGAS000035087-90; QUEST-VARGAS000033037-48; QUEST-VARGAS000035119-76; QUEST-VARGAS000034658-66; QUEST-VARGAS000007361-63; QUEST-VARGAS000037909-10; QUEST-VARGAS000037977; QUEST-VARGAS000035335-36; QUEST-VARGAS000036699; QUEST-VARGAS000028740-41; QUEST-VARGAS000028746-47; QUEST-VARGAS000030878-79; QUEST-VARGAS000038805-06; QUEST-VARGAS000037605-06; QUEST-VARGAS000037980-81; QUEST-VARGAS000036566-78; QUEST-VARGAS000036700-02; QUEST-VARGAS000036947-54; QUEST-VARGAS000040261-64; QUEST-VARGAS000040267-69; QUEST-VARGAS000040280-84; QUEST-VARGAS000039990; QUEST-VARGAS000039966-67; QUEST-VARGAS000035475-76; QUEST-VARGAS000000022-41; QUEST-VARGAS000004496-99; QUEST-VARGAS000040161-66; QUEST-VARGAS000040791; QUEST-VARGAS000002811; QUEST-VARGAS000000583-637; QUEST-VARGAS000036495-96; QUEST-VARGAS000036320; QUEST-VARGAS000000858; QUEST-VARGAS000001053-54; QUEST-VARGAS000036677-81; QUEST-

VARGAS000035240-43; QUEST-VARGAS000028740-41; QUEST-VARGAS000039721-26; QUEST-VARGAS000038679; QUEST-VARGAS000031121; QUEST-VARGAS000040972-41085; QUEST-VARGAS000041092-41152; QUEST-VARGAS000030691; QUEST-VARGAS000034803-34941; QUEST-VARGAS000032693-94; QUEST-VARGAS000031630-35; QUEST-VARGAS000041684; QUEST-VARGAS000036226; QUEST-VARGAS000036322; QUEST-VARGAS000036276; QUEST-VARGAS000036501; QUEST-VARGAS000038939-40; and QUEST-VARGAS000037495-96—were made in the regular practice of the activity to which the documents pertain.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Defendant incorporates the above Preliminary Statement and General Objections into this response by this reference as though they are set forth in full. Defendant further objects that this Request is unduly burdensome and improperly compound as it requests admissions regarding 52 separate documents, comprising over 600 pages and each such document often consisting of multiple documents. Defendant also objects that this Request is vague and ambiguous as to the phrase "regular practice of the activity," given the varying substance, origin, and nature of each of the 52 documents identified in this Request and the various "activities" described within each of the documents. Defendant also objects on the ground and to the extent that this Request calls for admissions regarding documents protected by the attorney-client privilege and attorney-work-product doctrine, including documents that are subject to the Clawback Order (ECF No. 64) in this action. Plaintiff's continued retention or use of, or reference to, a document subject to the Clawback Order, as exhibited in this Request, constitutes contempt of that Order.

**REQUEST FOR ADMISSION NO. 6:**

Admit that all foundational requirements for the admission of documents produced by Quest, Bates numbered as follows—QUEST-VARGAS000036496;

QUEST-VARGAS000035087-90; QUEST-VARGAS000033037-48; QUEST-VARGAS000035119-76; QUEST-VARGAS000034658-66; QUEST-VARGAS000007361-63; QUEST-VARGAS000037909-10; QUEST-VARGAS000037977; QUEST-VARGAS000035335-36; QUEST-VARGAS000036699; QUEST-VARGAS000028740-41; QUEST-VARGAS000028746-47; QUEST-VARGAS000030878-79; QUEST-VARGAS000038805-06; QUEST-VARGAS000037605-06; QUEST-VARGAS000037980-81; QUEST-VARGAS000036566-78; QUEST-VARGAS000036700-02; QUEST-VARGAS000036947-54; QUEST-VARGAS000040261-64; QUEST-VARGAS000040267-69; QUEST-VARGAS000040280-84; QUEST-VARGAS000039990; QUEST-VARGAS000039966-67; QUEST-VARGAS000035475-76; QUEST-VARGAS000000022-41; QUEST-VARGAS000004496-99; QUEST-VARGAS000040161-66; QUEST-VARGAS000040791; QUEST-VARGAS000002811; QUEST-VARGAS000000583-637; QUEST-VARGAS000036495-96; QUEST-VARGAS000036320; QUEST-VARGAS000000858; QUEST-VARGAS000001053-54; QUEST-VARGAS000036677-81; QUEST-VARGAS000035240-43; QUEST-VARGAS000028740-41; QUEST-VARGAS000039721-26; QUEST-VARGAS000038679; QUEST-VARGAS000031121; QUEST-VARGAS000040972-41085; QUEST-VARGAS000041092-41152; QUEST-VARGAS000030691; QUEST-VARGAS000034803-34941; QUEST-VARGAS000032693-94; QUEST-VARGAS000031630-35; QUEST-VARGAS000041684; QUEST-VARGAS000036226; QUEST-VARGAS000036322; QUEST-VARGAS000036276; QUEST-VARGAS000036501; QUEST-VARGAS000038939-40; and QUEST-VARGAS000037495-96—have been satisfied.

13 Case No. 2:19-cv-08108 DMG (MRWx)

47339893_4.docx

DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSE TO PLAINTIFF JULIAN VARGAS' FIRST SET OF REQUESTS FOR ADMISSION

PA0763

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Defendant incorporates the above Preliminary Statement and General Objections into this response by this reference as though they are set forth in full. Defendant further objects that this Request is unduly burdensome and improperly compound as it requests admissions regarding 52 separate documents, comprising over 600 pages and each often consisting of multiple documents. Defendant also objects that this Request is vague and ambiguous given the varying substance, origin, and nature of each of the 52 documents identified in this Request and some of the individual documents within each of the documents. Defendant also objects that this Request is vague and ambiguous in its use of the phrase "foundational requirements," as potentially applying to varying, unidentified requirements that are readily capable of definition. Defendant also objects on the ground and to the extent that this Request calls for admissions regarding documents protected by the attorney-client privilege and attorney-work-product doctrine, including documents that are subject to the Clawback Order (ECF No. 64) in this action. Plaintiff's continued retention or use of, or reference to, a document subject to the Clawback Order, as exhibited in this Request, constitutes contempt of that Order.

**REQUEST FOR ADMISSION NO. 7:**

Admit that YOU maintain accurate records of all patient visits to PATIENT SERVICE CENTERS in the United States which occurred from September 2019 to present.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Defendant incorporates the above Preliminary Statement and General Objections into this response by this reference as though they are set forth in full. Defendant objects on the ground that the Request is vague and ambiguous as a whole and as to the terms/phrases "accurate records" and "all patient visits," as Defendant cannot ascertain what the request is seeking with any reasonable specificity. Defendant further objects that the request is overbroad on the ground and to the

14 Case No. 2:19-cv-08108 DMG (MRWx)

47339893_4.docx

DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S
RESPONSE TO PLAINTIFF JULIAN VARGAS' FIRST SET OF REQUESTS FOR ADMISSION

PA0764

extent that it seeks information not relevant to any subject matter of this action nor reasonably likely to lead to the discovery of admissible evidence because such information is not relevant to Plaintiffs' claims.  Defendant also objects on the ground and to the extent that this Request calls for information that is protected from disclosure by the attorney-client privilege and attorney-work-product doctrine. Further, Defendant objects on the ground and to the extent that this Request calls for disclosure of Defendant's proprietary information and/or confidential information concerning individuals who are not parties to this action in violation of their privacy rights.  Defendant further objects to this Request on the ground and to the extent that the records it maintains are only accurate to the extent that accurate information is provided by patients or other third parties.  Defendant further objects to this Request on the ground that some of the information recorded may have been edited, corrected, amended, changed, deleted, updated, or otherwise modified in the ordinary course of business and/or subject to Quest's document retention policy.

Subject to and without waiving the objections, Defendant responds as follows: Defendant admits that, subject to any edits, corrections, amendments, changes, deletions or updates made in the ordinary course of business and subject to its document retention policy, Quest maintains records of the names that: (1) individuals without appointments used when checking in at a Patient Service Center kiosk from September 2019 to the present; and (2) individuals with appointments who checked in for their appointments at a Patient Service Center kiosk from September 2019 to the present used to schedule their appointments.  Except as expressly admitted, all other portions of this Request are denied.

**REQUEST FOR ADMISSION NO. 8:**

Admit that YOU maintain the names of patients for all patient visits to PATIENT SERVICE CENTERS in the United States which occurred from September 2019 to present.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Defendant incorporates the above Preliminary Statement and General Objections into this response by this reference as though they are set forth in full. Defendant objects on the ground that the Request is vague and ambiguous as a whole and as to the phrase "all patient visits," as Defendant cannot ascertain what the request is seeking with any reasonable specificity. Defendant further objects that the request is overbroad on the ground and to the extent that it seeks information not relevant to any subject matter of this action nor reasonably likely to lead to the discovery of admissible evidence because such information is not relevant to Plaintiffs' claims. Defendant also objects on the ground and to the extent that this Request calls for information that is protected from disclosure by the attorney-client privilege and attorney-work-product doctrine. Further, Defendant objects on the ground and to the extent that this Request calls for disclosure of Defendant's proprietary information and/or confidential information concerning individuals who are not parties to this action in violation of their privacy rights. Defendant further objects to this Request on the ground and to the extent that the names it maintains in its records consist solely of the names provided by patients or other third parties. Defendant further objects to this Request on the ground that some of the name information recorded may have been edited, corrected, amended, changed, deleted, updated, or otherwise modified in the ordinary course of business and/or subject to Quest's document retention policy.

Subject to and without waiving the objections, Defendant responds as follows: Defendant admits that, subject to any edits, corrections, amendments, changes, deletions or updates made in the ordinary course of business and subject to its document retention policy, Quest maintains records of the names that: (1) individuals without appointments used when checking in at a Patient Service Center kiosk from September 2019 to the present; and (2) individuals with appointments who checked in for their appointments at a Patient Service Center kiosk from September 2019 to

16 Case No. 2:19-cv-08108 DMG (MRWx)
47339893_4.docx
DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S
RESPONSE TO PLAINTIFF JULIAN VARGAS' FIRST SET OF REQUESTS FOR ADMISSION
PA0766

the present used to schedule their appointments. Except as expressly admitted, all other portions of this Request are denied.

**REQUEST FOR ADMISSION NO. 9:**

Admit that YOU maintain patient healthcare insurance information of patients for all patient visits to PATIENT SERVICE CENTERS in the United States which occurred from September 2019 to present.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Defendant incorporates the above Preliminary Statement and General Objections into this response by this reference as though they are set forth in full. Defendant objects on the ground that the Request is vague and ambiguous as a whole and as to the terms/phrases “patient healthcare insurance information” and “all patient visits,” as Defendant cannot ascertain what the request is seeking with any reasonable specificity. Defendant further objects that the request is overbroad on the ground and to the extent that it seeks information not relevant to any subject matter of this action nor reasonably likely to lead to the discovery of admissible evidence because such information is not relevant to Plaintiffs’ claims. Defendant also objects on the ground and to the extent that this Request calls for information that is protected from disclosure by the attorney-client privilege and attorney-work-product doctrine. Further, Defendant objects on the ground and to the extent that this Request calls for disclosure of Defendant’s proprietary information and/or confidential information concerning individuals who are not parties to this action in violation of their privacy rights. Defendant further objects to this Request on the ground and to the extent that the health insurance information it maintains in its records consists solely of the health insurance information provided by some (but not all) patients or other third parties. Defendant further objects to this Request on the ground that some of the health insurance information recorded may have been edited, corrected, amended, changed, deleted, updated, or otherwise modified in the ordinary course of business and/or subject to Quest’s document retention policy.

17 Case No. 2:19-cv-08108 DMG (MRWx)

47339893_4.docx

DEFENDANT QUEST DIAGNOSTICS INCORPORATED’S RESPONSE TO PLAINTIFF JULIAN VARGAS’ FIRST SET OF REQUESTS FOR ADMISSION

PA0767

Subject to and without waiving the objections, Defendant responds as follows: Defendant admits that, subject to any edits, corrections, amendments, changes, deletions or updates made in the ordinary course of business and its document retention policy, Quest maintains certain healthcare insurance information for patients serviced at Patient Service Centers from September 2019 to the present, but only to the extent that: (1) Quest requested that the patient provide the healthcare insurance information, as such information is not requested from all patients serviced at Patient Service Centers; (2) the patient provided the healthcare insurance information and the information was inputted into Quest's system; and (3) the patient's order was entered, completed, and filed. Except as expressly admitted, all other portions of this Request are denied.

**REQUEST FOR ADMISSION NO. 10:**

Admit that YOU maintain patient home address information for all patient visits to PATIENT SERVICE CENTERS in the United States which occurred from September 2019 to present.

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Defendant incorporates the above Preliminary Statement and General Objections into this response by this reference as though they are set forth in full. Defendant objects on the ground that the Request is vague and ambiguous as a whole and as to the phrase "all patient visits," as Defendant cannot ascertain what the request is seeking with any reasonable specificity. Defendant further objects that the request is overbroad on the ground and to the extent that it seeks information not relevant to any subject matter of this action nor reasonably likely to lead to the discovery of admissible evidence because such information is not relevant to Plaintiffs' claims. Defendant also objects on the ground and to the extent that this Request calls for information that is protected from disclosure by the attorney-client privilege and attorney-work-product doctrine. Further, Defendant objects on the ground and to the extent that this Request calls for disclosure of Defendant's

18 Case No. 2:19-cv-08108 DMG (MRWx)

47339893_4.docx

DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S
RESPONSE TO PLAINTIFF JULIAN VARGAS' FIRST SET OF REQUESTS FOR ADMISSION

PA0768

proprietary information and/or confidential information concerning individuals who are not parties to this action in violation of their privacy rights. Defendant further objects to this Request on the ground and to the extent that the patient home address information it maintains in its records consists solely of the home address information provided by patients or other third parties. Defendant further objects to this Request on the ground that some of the home address information recorded may have been edited, corrected, amended, changed, deleted, updated, or otherwise modified in the ordinary course of business and/or subject to Quest's document retention policy.

Subject to and without waiving the objections, Defendant responds as follows: Defendant admits that, subject to any edits, corrections, amendments, changes, deletions or updates made in the ordinary course of business and subject to its document retention policy, Quest maintains home address information for patients serviced at Patient Service Centers from September 2019 to the present, but only to the extent that: (1) Quest requested that the patient provide the home address information, as such information is not requested from all patients serviced at Patient Service Centers; (2) the patient provided the home address information and the information was inputted into Quest's system; and (3) the patient's order was entered, completed, and filed. Except as expressly admitted, all other portions of this Request are denied.

**REQUEST FOR ADMISSION NO. 11:**

Admit that YOU maintain patient telephone numbers for all patient visits to PATIENT SERVICE CENTERS in the United States which occurred from September 2019 to present.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Defendant incorporates the above Preliminary Statement and General Objections into this response by this reference as though they are set forth in full. Defendant objects on the ground that the Request is vague and ambiguous as a whole

and as to the phrase "all patient visits," as Defendant cannot ascertain what the request is seeking with any reasonable specificity. Defendant further objects that the request is overbroad on the ground and to the extent that it seeks information not relevant to any subject matter of this action nor reasonably likely to lead to the discovery of admissible evidence because such information is not relevant to Plaintiffs' claims. Defendant also objects on the ground and to the extent that this Request calls for information that is protected from disclosure by the attorney-client privilege and attorney-work-product doctrine. Further, Defendant objects on the ground and to the extent that this Request calls for disclosure of Defendant's proprietary information and/or confidential information concerning individuals who are not parties to this action in violation of their privacy rights. Defendant further objects to this Request on the ground and to the extent that the telephone numbers it maintains in its records consist solely of the telephone numbers provided by patients or other third parties. Defendant further objects to this Request on the ground that some of the telephone numbers information recorded may have been edited, corrected, amended, changed, deleted, updated, or otherwise modified in the ordinary course of business and/or subject to Quest's document retention policy.

Subject to and without waiving the objections, Defendant responds as follows: Defendant admits that, subject to any edits, corrections, amendments, changes, deletions or updates made in the ordinary course of business and subject to its document retention policy, Quest maintains a telephone number for patients serviced at Patient Service Centers from September 2019 to the present, but only to the extent that: (1) Quest requested that the patient provide their telephone number, as such information is not requested from all patients serviced at Patient Service Centers; (2) the patient provided the telephone number and that information was inputted into Quest's system; and (3) the patient's order was entered, completed, and filed. Except as expressly admitted, all other portions of this Request are denied.

20 Case No. 2:19-cv-08108 DMG (MRWx)

47339893_4.docx

DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S
RESPONSE TO PLAINTIFF JULIAN VARGAS' FIRST SET OF REQUESTS FOR ADMISSION

PA0770

**REQUEST FOR ADMISSION NO. 12:**

Admit that YOU maintain patient email address information for all patient visits to PATIENT SERVICE CENTERS in the United States which occurred from September 2019 to present.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Defendant incorporates the above Preliminary Statement and General Objections into this response by this reference as though they are set forth in full. Defendant objects on the ground that the Request is vague and ambiguous as a whole and as to the phrase "all patient visits," as Defendant cannot ascertain what the request is seeking with any reasonable specificity. Defendant further objects that the request is overbroad on the ground and to the extent that it seeks information not relevant to any subject matter of this action nor reasonably likely to lead to the discovery of admissible evidence because such information is not relevant to Plaintiffs' claims. Defendant also objects on the ground and to the extent that this Request calls for information that is protected from disclosure by the attorney-client privilege and attorney-work-product doctrine. Further, Defendant objects on the ground and to the extent that this Request calls for disclosure of Defendant's proprietary information and/or confidential information concerning individuals who are not parties to this action in violation of their privacy rights. Defendant further objects to this Request on the ground and to the extent that the email information it maintains in its records consist solely of the email information provided by patients or other third parties. Defendant further objects to this Request on the ground that some of the email information recorded may have been edited, corrected, amended, changed, deleted, updated, or otherwise modified in the ordinary course of business and/or subject to Quest's document retention policy.

Subject to and without waiving the objections, Defendant responds as follows: Defendant admits that, subject to any edits, corrections, amendments, changes, deletions or updates made in the ordinary course of business and subject to its

document retention policy, Quest maintains email addresses for patients serviced at Patient Service Centers from September 2019 to the present, but only to the extent that: (1) Quest requested that the patient provide their email address; (2) the patient opted to provide the email address and that information was inputted into Quest's system; and (3) the patient's order was entered, completed, and filed. Except as expressly admitted, all other portions of this Request are denied.

DATED: July 9, 2021

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ David Raizman
David Raizman
Amber L. Roller
J. Nicholas Marfori

Attorneys for Defendants QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.; QUEST DIAGNOSTICS HOLDINGS, INC. and QUEST DIAGNOSTICS INCORPORATED

22 Case No. 2:19-cv-08108 DMG (MRWx)
47339893_4.docx
DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSE TO PLAINTIFF JULIAN VARGAS' FIRST SET OF REQUESTS FOR ADMISSION
PA0772

# Exhibit 1

PA0773

| Document Bates Nos. | RFA 1 | RFA 2 | RFA 3 | RFA 4 |
| --- | --- | --- | --- | --- |
| QUEST-VARGAS000036496 | Deny | Deny | Deny | Deny |
| QUEST-VARGAS000035087-90 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that made on or near November 14, 2017. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000033037-48 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made approximately Fall of 2018. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000035119-76 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that made on or near February 20, 2017. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000034658-66 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that the entries on the spreadsheet were made on or near the date on the 2nd and/or 3rd columns of the spreadsheet. Deny all other portions of Request. | Admit that the enties made in the column "Detailed Resolution" were made by a person who had knowledge of the information contained within that column. Deny all other portions of Request. | Admit |
| QUEST-VARGAS000007361-63 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near May 5, 2016. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000037909-10 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near October 18, 2016. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000037977 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny as to the images of Twitter posts. Deny all other portions of Request. | Admit that it was made on or near January 5, 2017. Deny all other portions of Request. | Admit as to email itself, but lack knowledge to admit or deny as to the Twitter posts. Deny all other portions of Request. | Admit as to email itself. Deny all other portions of Request. |
| QUEST-VARGAS000035335-36 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near February 10, 2017. Deny all other portions of Request. | Admit as to the emails drafted by Gina Hall and Marc Yarrison, but lack knowledge to admit or deny as to the Patient Inquiry (February 9, 2017, 9:52 a.m. email). Deny all other portions of Request. | Admit |
| QUEST-VARGAS000036699 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny as to the images of Twitter posts. Deny all other portions of Request. | Admit that it was made on or near March 6, 2017. Deny all other portions of Request. | Admit as to email itself, but lack knowledge to admit or deny as to the Twitter post. Deny all other portions of Request. | Admit as to email itself, but lack knowledge to admit or deny as to the Twitter posts. Deny all other portions of Request. |
| QUEST-VARGAS000028740-41 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near March 22, 2017. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000028746-47 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near January 15, 2019. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000030878-79 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near February 5, 2019. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000037605-06 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that the email itself was made on or near June 11, 2019. Deny all other portions of Request. | Admit as to the June 11, 2019 email, but lack knowledge to admit or deny as to the Patient Inquiry (May 15, 2019 email). Deny all other portions of Request. | Admit |

| | | | | |
|---|---|---|---|---|
| QUEST-VARGAS000037980-81 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near November 1, 2019. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000036566-78 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near November 15, 2016. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000036700-02 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near June 12, 2017. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000036947-54 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. | Admit that it was made on or near October 7, 2016. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000040261-64 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near August 27, 2015. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000040267-69 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near August 27, 2015. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000040280-84 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near September 3, 2015. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000039990 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made as part of the capital expenditure approval process. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000039966-67 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near April 25, 2016. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000035475-76 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near June 4, 2016. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000000022-41 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near April 2016. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000004496-99 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near June 23, 2016. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000040161-66 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near April 11, 2017. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000040791 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near December 11, 2017. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000002811 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near October 3, 2016. Deny all other portions of Request. | Admit | Admit |

| QUEST-VARGAS000000583-637 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near September 18, 2018. Deny all other portions of Request. | Admit | Admit |
|---|---|---|---|---|
| QUEST-VARGAS000036495-96 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near April 21, 2016. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000036320 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near July 11, 2016. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000000858 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near September 25, 2017. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000001053-54 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near May 10, 2017. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000036677-81 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near January 9, 2017. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000035240-43 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near February 20, 2017. Deny all other portions of Request. | Lack knowledge to admit or deny as to the Patient Inquiry (February 17, 2017 9:11 a.m. email). Admit as to the content contained in the remaining emails. Deny all other portions of Request. | Admit |
| QUEST-VARGAS000028740-41 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near March 22, 2017. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000039721-26 | Admit, except as to Bates no. QUEST-VARGAS000039726 and as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near March 12, 2021, except as to Bates no. QUEST-VARGAS000039726. Deny all other portions of Request. | Admit, except as to Bates no. QUEST-VARGAS000039726. Deny all other portions of Request. | Admit, except as to Bates no. QUEST-VARGAS000039726. Deny all other portions of Request. |
| QUEST-VARGAS000038679 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or before October 1, 2010. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000031121 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near 2014. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000040972-41085 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near August 7, 2018. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000041092-41152 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near August 7, 2018. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000030691 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near November 6, 2018. Deny all other portions of Request. | Admit | Admit |

| | | | | |
|---|---|---|---|---|
| QUEST-VARGAS000034803-34941 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near March 4, 2021. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000032693-94 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near October 5, 2010. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000031630-35 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Defendant lacks adequate information at this time to admit or deny this Request. | Admit | Admit |
| QUEST-VARGAS000041684 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near May 2016. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000036226 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made as part of the capital expenditure approval process. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000036322 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near November 28, 2016. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000036276 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near December 21, 2015. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000036501 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near April 26, 2016. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000038939-40 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near January 18, 2019. Deny all other portions of Request. | Admit | Admit |
| QUEST-VARGAS000037495-96 | Admit, except as to any portions that are distorted or not legible, or portions that have been redacted, or any attachments not included within the document. Deny all other portions of Request. | Admit that it was made on or near July 15, 2016. Deny all other portions of Request. | Admit | Admit |

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and not a party to this action. My business address is 400 South Hope Street, Suite 1200, Los Angeles, California 90071.

On July 9, 2021, I served the following document(s) described as:

DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSE TO PLAINTIFF JULIAN VARGAS' FIRST SET OF REQUESTS FOR ADMISSION

**BY COURTESY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person[s] at the e-mail addresses listed on the attached service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

| | |
|---|---|
| Jonathan D. Miller, Esq.<br>Alison M. Bernal, Esq.<br>Jordan T. Porter, Esq.<br>NYE, STIRLING, HALE & MILLER, LLP<br>33 West Mission Street, Suite 201<br>Santa Barbara, CA 93101<br>Telephone: (805) 963-2345<br>Facsimile: (805) 284-9590<br>Email: jonathan@nshmlaw.com<br>alison@nshmlaw.com<br>jordan@nshmlaw.com<br>lindsey@nshmlaw.com<br>meg@nshmlaw.com | Attorneys for Plaintiffs Julian Vargas, Anne West, American Council of the Blind, and the Proposed Class |
| Matthew K. Handley, Esq.<br>HANDLEY FARAH & ANDERSON PLLC<br>200 Massachusetts Avenue, NW – 7th Fl.<br>Washington, DC 20001<br>Telephone: (202) 559-2411<br>Facsimile: (844) 300-1952<br>Email: mhandley@hfajustice.com | Attorneys for Plaintiffs Julian Vargas, Anne West, American Council of the Blind, and the Proposed Class |
| Benjamin J. Sweet, Esq.<br>Nye Stirling Hale & Miller, LLP<br>1145 Bower Hill Road, Suite 104<br>Pittsburgh, PA 15243<br>Telephone: (412) 857-5350<br>Email: ben@nshmlaw.com | Attorneys for Plaintiffs Julian Vargas, Anne West, American Council of the Blind, and the Proposed Class |

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on July 9, 2021, at Los Angeles, California.

Marilyn Moretti

Type or Print Name Signature

46497414.1

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and not a party to this action. My business address is 400 South Hope Street, Suite 1200, Los Angeles, California 90071.

On July 9, 2021, I served the following document(s) described as:

DEFENDANT QUEST DIAGNOSTICS INCORPORATED'S RESPONSE TO PLAINTIFF JULIAN VARGAS' FIRST SET OF REQUESTS FOR ADMISSION

on the persons below as follows:

| | |
|---|---|
| Jonathan D. Miller, Esq.<br>Alison M. Bernal, Esq.<br>Jordan T. Porter, Esq.<br>NYE, STIRLING, HALE & MILLER, LLP<br>33 West Mission Street, Suite 201<br>Santa Barbara, CA 93101<br>Telephone: (805) 963-2345<br>Facsimile: (805) 284-9590<br>Email: jonathan@nshmlaw.com<br>alison@nshmlaw.com<br>jordan@nshmlaw.com<br>lindsey@nshmlaw.com<br>meg@nshmlaw.com | Attorneys for Plaintiffs<br>Julian Vargas, Anne West,<br>American Council of the Blind,<br>and the Proposed Class |
| Matthew K. Handley, Esq.<br>HANDLEY FARAH & ANDERSON PLLC<br>200 Massachusetts Avenue, NW – 7th Fl.<br>Washington, DC 20001<br>Telephone: (202) 559-2411<br>Facsimile: (844) 300-1952<br>Email: mhandley@hfajustice.com | Attorneys for Plaintiffs<br>Julian Vargas, Anne West,<br>American Council of the Blind,<br>and the Proposed Class |
| Benjamin J. Sweet, Esq.<br>Nye Stirling Hale & Miller, LLP<br>1145 Bower Hill Road, Suite 104<br>Pittsburgh, PA 15243<br>Telephone: (412) 857-5350<br>Email: ben@nshmlaw.com | Attorneys for Plaintiffs<br>Julian Vargas, Anne West,<br>American Council of the Blind,<br>and the Proposed Class |

I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses as indicated above and:

☐ deposited the sealed envelope or package with the United States Postal Service, with the postage fully prepaid.*

☒ placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope or package with postage fully prepaid.

I am employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on July 9, 2021, at Los Angeles, California.

Wendy Jones
Type or Print Name

[signature]
Signature

46709212.1

# EXHIBIT 29

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
DAVID RAIZMAN, CA Bar No. 129407
david.raizman@ogletree.com
AMBER L. ROLLER, CA Bar No. 273354
amber.roller@ogletree.com
J. NICHOLAS MARFORI, CA Bar No. 311765
nicholas.marfori@ogletree.com
400 South Hope Street, Suite 1200
Los Angeles, California 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.; QUEST DIAGNOSTICS HOLDINGS, INC. and QUEST DIAGNOSTICS INCORPORATED

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JULIAN VARGAS, ANNE WEST, and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,

Defendants.

Case No. 2:19-cv-08108 DMG(MRWx)

**DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S RESPONSE TO PLAINTIFF ANNE WEST'S FIRST SET OF INTERROGATORIES**

Complaint Filed: September 18, 2019
Removal Filed: Date
Trial Date: None
District Judge: Hon. Dolly M. Gee
Courtroom 8C, First St.
Magistrate Judge: Hon. Michael R. Wilner
Courtroom 550, Roybal

PROPOUNDING PARTY: Plaintiff ANNE WEST

RESPONDING PARTY: Defendant QUEST DIAGNOSTICS, INCORPORATED

SET NO.: ONE

Defendant Quest Diagnostics, Incorporated ("Defendant" or "Quest") responds to plaintiff Anne West's ("Plaintiff") First Set of Interrogatories, as follows:

I.

**PRELIMINARY STATEMENT**

The following responses are based on Defendant's present knowledge, information, and belief, as derived from (a) the knowledge and information of present employees of Defendant gained in their capacity as such, and (b) a review of the files maintained by Defendant that would be likely to contain the information called for by the Interrogatories. These responses are subject to amendment and supplementation as Defendant acquires additional information and completes its review and analysis and made without prejudice to Defendant's right to use subsequently discovered or developed information.

Except for explicit facts admitted herein, no admissions of any nature whatsoever are implied or should be inferred. The fact that any Interrogatory herein has been objected to should not be taken as an admission or acceptance of the existence of any facts set forth or assumed by such interrogatory, or that such constitutes admissible evidence.

Defendant responds for itself alone, and expressly declines to respond on behalf of, or based on information maintained by or available to any other entity or party. Defendant's responses are based solely on information in its possession, custody, and/or control. Specific objections to each Interrogatory are made on an individual basis in Defendant's responses below. In addition to these specific

1 Case No. 2:19-cv-08108 DMG(MRWx)

44638098_7.docx

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S RESPONSE TO PLAINTIFF ANNE WEST'S FIRST SET OF INTERROGATORIES

PA0783

objections, Defendant makes certain continuing objections (the "General Objections") to the interrogatories. Defendant's response to each individual Interrogatory is submitted without prejudice to, and without in any respect limiting or waiving, any General Objection not expressly set forth in that response.

## II.

## GENERAL OBJECTIONS

Defendant provides these responses subject to the general objections set forth below ("General Objections").

1. Defendant objects generally to these Interrogatories on the ground and to the extent that they seek information that is not within Defendant's possession, custody or control, and/or for which Defendant is completely reliant on third parties that Plaintiff has not named as a defendant in this action.

2. Defendant objects generally to these Interrogatories to the extent that they seek the disclosure of information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection from disclosure. Defendant does not intend to disclose any information subject to any such privilege or protection from disclosure, and the inadvertent disclosure of privileged or protected information shall not constitute a waiver of any kind.

3. Defendant objects generally to these Interrogatories to the extent that they call for disclosure of trade secrets, proprietary information, or other confidential information, the disclosure of which would harm the rights or interests of the owner or possessor of such information. To the extent Plaintiff's Interrogatories call for information that is confidential, private, or proprietary, Defendant will produce the otherwise discoverable information upon Plaintiff's agreement to an appropriate confidentiality order.

4. Defendant objects generally to these Interrogatories to the extent they purport to impose obligations beyond those required or authorized by the Federal

Rules of Civil Procedure or other applicable law.

5. Defendant also objects on the ground that that Plaintiff's definition of "YOU" and "YOUR" is vague and overly broad because Plaintiff has defined "YOU" and "YOUR" to mean "Defendant Quest Diagnostics Incorporated and its consolidated subsidiaries, agents, assigns, employees, representatives, and counsel; and any other representative or person acting on behalf of Defendant." For purposes of responding to each of Plaintiff's Interrogatories which rely upon the term "YOU" or "YOUR," Defendant has reasonably construed "YOU" and "YOUR" to mean and refer only to Defendant.

6. Defendant objects on the ground that Plaintiff's definition of "PATIENT SERVICE CENTER" is vague and overbroad in that it defines "PATIENT SERVICE CENTER" as "a Quest Diagnostics location where a patient can obtain clinical laboratory services from Quest Diagnostics." For purposes of responding to each of the Interrogatories which rely upon the term "PATIENT SERVICE CENTER," Defendant has reasonably construed "PATIENT SERVICE CENTER" to mean and refer only to a patient service center located within the United States that is open to the public, provides specimen collection and related services in furtherance of diagnostic testing services, bears the name Quest Diagnostics, and is operated by Quest Diagnostics Incorporated or its wholly owned subsidiaries. This definition excludes any physician office or similar location, where Quest has placed an employee, such as a phlebotomist, to provide specimen collection services for patients of that physician office or location.

7. Defendant objects on the ground that Plaintiff's definition of "E-CHECK-IN KIOSK" that it is vague and overbroad because it defines "E-CHECK-IN KIOSK" as "Defendant's touchscreen electronic check-in at PATIENT SERVICE CENTERS" without specifying that it is a device used by patients to check-in at Quest patient service centers. For purposes of responding to each of the

Interrogatories which rely upon the term "E-CHECK-IN KIOSK," Defendant has reasonably construed "E-CHECK-IN KIOSK" to mean and refer only to the touchscreen device that can be used by patients to check-in (i.e., inform the facility of their arrival) when they arrive at Patient Service Centers (as defined herein), where such kiosks are available. The term "Kiosk" shall be used interchangeably with "E-CHECK-IN KIOSK" subject to Defendant's objection and interpretation as set forth in this paragraph.

These General Objections are incorporated by reference into each and every response below to the extent applicable. Various objections may be specifically referred to in the responses below for purposes of clarity. However, failure to incorporate specifically an objection is not to be construed as a waiver of any such objection.

**III.**

**RESPONSES TO INTERROGATORY**

**INTERROGATORY NO. 1:**

IDENTIFY all facts that support YOUR Second Affirmative Defense as set forth in YOUR ANSWER.

**RESPONSE TO INTERROGATORY NO. 1:**

Defendant also objects on the ground that this Interrogatory seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or protection from disclosure. Defendant further objects that this Interrogatory is premature because discovery in this matter is just beginning and a deferred answer may be appropriate. *See* Fed. R. Civ. P. 33, cmt. to Subdivision (b) (1970 Amend.). Defendant's affirmative defenses may be based, in part, upon information or documents not presently within Defendant's knowledge or possession, which will be discovered during the course of discovery. Defendant further objects on the ground that this Interrogatory is overly broad and

unduly burdensome in that the Interrogatory seeks "all facts" and requires Defendant to provide a narrative account of its case. *See Hernandez v. Best Buy Co.,* No. 13CV2587-JM KSC, 2014 WL 5454505, at *6 (S.D. Cal. Oct. 27, 2014) (citing *Hiskett v. Wal–Mart Stores, Inc.,* 180 F.R.D. 403, 404–405 (D. Kan. 1998)).

Subject to and without waiving its objections, and reasonably interpreting this Interrogatory to seek only the principal facts that support Defendant's Second Affirmative Defense, Defendant responds as follows:

Defendant denies that it deprives, or ever deprived, blind and visually-impaired individuals of the full benefits of its services at Patient Service Centers. In addition, Defendant is in the process of further improving access to its services at its Patient Service Centers for persons who are blind or who have visual impairments, which improvements will be complete before the time that this action is finally adjudicated. More specifically, Defendant has developed and/or continues to implement measures at each Patient Service Center that has Kiosks, including, but not limited it:

- Maintaining practices and procedures for Patient Services Representatives stationed at patient service centers ("PSRs") related to assisting patients who are blind or visually impaired, including assisting such patients with using the Kiosk to check in.
- Providing Kiosks programmed to respond to a specified touchscreen gesture on the Kiosk by a patient who is blind or visually impaired that (A) automatically checks in the patient without the need to gather any additional information at the Kiosk and placing the patient in queue to be serviced by, or speak with, a PSR; and (B) triggers an audible Kiosk message advising the patient they have signed in, assigning the patient a numerical ID number, informing the patient that their number will be called, and instructing the patient to take a seat until the assigned and

audibly-announced number is called.

- Inclusion of an audio segment to the Quest TV audio/video programming currently played at Patient Service Centers that instructs all patients who are blind or visually impaired on how to check in using the Kiosk by using a specified touchscreen gesture.
- Training PSRs on patient assistance procedures and Kiosk functionality for patients who are blind or visually impaired as part of the Americans with Disabilities Act training that is provided to: (a) all PSRs upon being newly hired; and (b) all currently-employed PSRs on an annual or biennial basis.

Discovery is continuing, and Defendant intends to supplement its response upon discovery of additional information.

**INTERROGATORY NO. 2:**

IDENTIFY all DOCUMENTS YOU contend supports the facts identified in YOUR response to Interrogatory No. 1.

**RESPONSE TO INTERROGATORY NO. 2:**

Defendant incorporates the above Preliminary Statement and General Objections into this response by this reference as though they are set forth in full. Defendant further objects that this Interrogatory is premature because discovery in this matter is just beginning and a deferred answer may be appropriate. *See* Fed. R. Civ. P. 33, cmt. to Subdivision (b) (1970 Amend.). Defendant also objects on the ground and to the extent that this Interrogatory seeks information and documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or protection from disclosure. Defendant's affirmative defenses may be based, in part, upon information or documents not presently within Defendant's knowledge or possession, which will be discovered during the course of discovery.

Subject to and without waiving its objections, Defendant responds as follows:

The Kiosks themselves, the Quest TV content, including the audio played on the Quest TVs, Quest's relevant, responsive Patient Services policies and procedures (including the "Greet Patient Etiquette" policy), and Quest's training materials, including "Managing Every Patient's Needs" training. Discovery is continuing, and Defendant intends to supplement its response upon discovery of additional information.

**INTERROGATORY NO. 3:**

IDENTIFY all PERSONS known to YOU to have knowledge AND/OR information concerning the facts identified in YOUR response to Interrogatory No. 1.

**RESPONSE TO INTERROGATORY NO. 3:**

Marc Yarrison, Taylor Carr, and Max O'Campo. These individuals may be contacted solely through counsel for Defendant.

**INTERROGATORY NO. 4:**

IDENTIFY all facts that support YOUR Fourth and Fifth Affirmative Defenses that Plaintiffs lack standing, as set forth in YOUR ANSWER.

**RESPONSE TO INTERROGATORY NO. 4:**

Defendant objects that this Interrogatory is premature because discovery in this matter is just beginning and a deferred answer may be appropriate. *See* Fed. R. Civ. P. 33, cmt. to Subdivision (b) (1970 Amend.). Defendant's affirmative defenses may be based, in part, upon information or documents not presently within Defendant's knowledge or possession, which will be discovered during the course of discovery. Defendant further objects on the ground that this Interrogatory is overly broad and unduly burdensome in that the Interrogatory seeks "all facts" and requires Defendant to provide a narrative account of its case. *See Hernandez v. Best Buy Co.*, No. 13CV2587-JM KSC, 2014 WL 5454505, at *6 (S.D. Cal. Oct. 27, 2014) (citing

7 Case No. 2:19-cv-08108 DMG(MRWx)
44638098_7.docx
DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S RESPONSE TO PLAINTIFF ANNE WEST'S FIRST SET OF INTERROGATORIES
PA0789

*Hiskett v. Wal–Mart Stores, Inc.*, 180 F.R.D. 403, 404–405 (D. Kan. 1998)).

Subject to and without waiving its objections, and reasonably interpreting this Interrogatory to seek only the principal facts that support Defendant's Fourth and Fifth Affirmative Defense, Defendant responds as follows:

Plaintiffs Vargas and West and the members of the American Council of the Blind lack standing because they have not suffered an injury in fact as required for standing under Article III of the United States Constitution. Plaintiff American Council of the Blind cannot establish associational standing because its members lack standing to sue in their own right and because the claims asserted and relief requested requires the participation of the individual members. Discovery is continuing and Defendant intends to supplement its response upon discovery of additional information regarding Plaintiffs and their alleged experiences at Patient Service Centers.

**INTERROGATORY NO. 5:**

IDENTIFY every "equivalent service" YOU offered to Plaintiffs at YOUR PATIENT SERVICE CENTER, as set forth in YOUR ANSWER.

**RESPONSE TO INTERROGATORY NO. 5:**

Defendant objects on the ground that this Interrogatory is vague and ambiguous, particularly because it fails to define the term "equivalent service," which is not defined and is subject to multiple definitions. Defendant also objects on the ground that the Interrogatory calls for a legal conclusion. Defendant also objects that this Interrogatory is premature because discovery in this matter is just beginning and a deferred answer may be appropriate. *See* Fed. R. Civ. P. 33, cmt. to Subdivision (b) (1970 Amend.). Defendant's affirmative defenses may be based, in part, upon information or documents not presently within Defendant's knowledge or possession, which will be discovered during the course of discovery.

Subject to and without waiving its objections, and reasonably interpreting this

Interrogatory to seek only the principal facts in response to the Interrogatory, Defendant responds as follows:

Defendant maintains practices and procedures and trainings requiring PSRs to accommodate and assist patients with visual impairments, including assisting such patients with checking in. Discovery is continuing and Defendant intends to supplement its response upon discovery of additional information.

**INTERROGATORY NO. 6:**

IDENTIFY all DOCUMENTS YOU contend supports the facts identified in YOUR response to Interrogatory No. 5.

**RESPONSE TO INTERROGATORY NO. 6:**

Quest's relevant, responsive Patient Services policies and procedures (including the "Greet Patient Etiquette" standard operating procedure) and "Managing Every Patient's Needs" training. Discovery is continuing, and Defendant intends to supplement its response upon discovery of additional information.

**INTERROGATORY NO. 7:**

IDENTIFY all facts that support YOUR Eighth Affirmative Defense, as set forth in YOUR ANSWER.

**RESPONSE TO INTERROGATORY NO. 7:**

Defendant incorporates the above Preliminary Statement and General Objections into this response by this reference as though they are set forth in full. Defendant objects on the ground that this Interrogatory is unduly burdensome as it is duplicative of Interrogatory No. 5. Defendant further objects on the ground that this Interrogatory calls for a legal conclusion. Defendant also objects that this Interrogatory is premature because discovery in this matter is just beginning and a deferred answer may be appropriate. *See* Fed. R. Civ. P. 33, cmt. to Subdivision (b) (1970 Amend.). Defendant's affirmative defenses may be based, in part, upon information or documents not presently within Defendant's knowledge or

9 Case No. 2:19-cv-08108 DMG(MRWx)

44638098_7.docx

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S RESPONSE TO PLAINTIFF ANNE WEST'S FIRST SET OF INTERROGATORIES

PA0791

possession, which will be discovered during the course of discovery.

**INTERROGATORY NO. 8:**

IDENTIFY all DOCUMENTS YOU contend supports the facts identified in YOUR response to Interrogatory No. 7.

**RESPONSE TO INTERROGATORY NO. 8:**

Defendant objects that this Interrogatory is unduly burdensome because it is duplicative of Interrogatory No. 6.

Subject to and without waiving its objections, Defendant responds as follows:

Not applicable.

**INTERROGATORY NO. 9:**

IDENTIFY all PERSONS known to YOU to have knowledge AND/OR information concerning the facts identified in YOUR response to Interrogatory No. 7.

**RESPONSE TO INTERROGATORY NO. 9:**

Not applicable.

**INTERROGATORY NO. 10:**

IDENTIFY all facts that support YOUR Ninth Affirmative Defense, as set forth in YOUR ANSWER.

**RESPONSE TO INTERROGATORY NO. 10:**

Defendant objects that this Interrogatory is premature because discovery in this matter is just beginning and a deferred answer may be appropriate. *See* Fed. R. Civ. P. 33, cmt. to Subdivision (b) (1970 Amend.). Defendant's affirmative defenses may be based, in part, upon information or documents not presently within Defendant's knowledge or possession, which will be discovered during the course of discovery.

Subject to and without waiving its objections, and reasonably interpreting the Interrogatory to seek on the principal facts that support Defendant's Ninth

10 Case No. 2:19-cv-08108 DMG(MRWx)
44638098_7.docx
DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S RESPONSE TO PLAINTIFF ANNE WEST'S FIRST SET OF INTERROGATORIES
PA0792

Affirmative Defense, Defendant responds as follows:

Defendant's overall self-service check-in process is an essential aspect of Defendant's business model and of Defendant's ability to provide a positive, efficient, and simple patient experience. Plaintiffs' apparent request for the elimination of the Kiosks, which support Defendant's self-service check-in process, would result in a fundamental alteration of the nature of the services provided by Defendant at its Patient Service Centers. Discovery is continuing, and Defendant intends to provide supplemental and/or amended responses upon discovery of additional information.

**INTERROGATORY NO. 11:**

IDENTIFY all DOCUMENTS YOU contend supports the facts identified in YOUR response to Interrogatory No. 10.

**RESPONSE TO INTERROGATORY NO. 11:**

Defendant objects on the ground and to the extent that this Interrogatory seeks information and documents protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege or protection from disclosure. Defendant further objects that this Interrogatory is premature because discovery in this matter is just beginning and a deferred answer may be appropriate. *See* Fed. R. Civ. P. 33, cmt. to Subdivision (b) (1970 Amend.). Defendant's affirmative defenses may be based, in part, upon information or documents not presently within Defendant's knowledge or possession, which will be discovered during the course of discovery.

Subject to and without waiving its objections, Defendant responds as follows:

The Capital Expenditure Request for the E Check-In project and the New Patient Experience Deployment CapEx Request PowerPoint presentation. Discovery is continuing, and Defendant intends to provide supplemental and/or amended responses upon discovery of additional information.

11 Case No. 2:19-cv-08108 DMG(MRWx)

44638098_7.docx

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S RESPONSE TO PLAINTIFF ANNE WEST'S FIRST SET OF INTERROGATORIES

PA0793

**INTERROGATORY NO. 12:**

IDENTIFY all PERSONS known to YOU to have knowledge AND/OR information concerning the facts identified in YOUR response to Interrogatory No. 10.

**RESPONSE TO INTERROGATORY NO. 12:**

Marc Yarrison, Christopher Grant, and Max O'Campo. These individuals may be contacted solely through counsel for Defendant.

**INTERROGATORY NO. 13:**

IDENTIFY all of YOUR PATIENT SERVICE CENTERS that feature an E-CHECK-IN KIOSK.

**RESPONSE TO INTERROGATORY NO. 13:**

Defendant objects on the ground that this Interrogatory is vague, ambiguous, and overbroad in its use of the term "E-CHECK-IN KIOSK."

Subject to and without waiving its objections, Defendant responds as follows:

Defendant refers Plaintiff to the documents produced in response to Plaintiff's Request for Production of Documents No. 42, which identifies the Patient Service Centers that offer a Kiosk as a means for patients to check in.

**INTERROGATORY NO. 14:**

IDENTIFY all of YOUR PATIENT SERVICE CENTERS that feature an E-CHECK-IN KIOSK that is independently-usable by visually impaired PERSONS.

**RESPONSE TO INTERROGATORY NO. 14:**

Defendant incorporates the above Preliminary Statement and General Objections into this response by this reference as though they are set forth in full. Defendant objects on the ground that this Interrogatory is vague, ambiguous, and overbroad, particularly as to the term "independently-usable," as Defendant cannot ascertain what information this Interrogatory seeking with reasonable particularity. Defendant also objects on the ground that the Interrogatory calls for a legal

12 Case No. 2:19-cv-08108 DMG(MRWx)

44638098_7.docx

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S RESPONSE TO PLAINTIFF ANNE WEST'S FIRST SET OF INTERROGATORIES

PA0794

conclusion.

Subject to and without waiving its objections, Defendant responds as follows:

Defendant maintains that its patient check-in process at its patient service centers, including offering a Kiosk for patient check-in, is usable by visually-impaired patients. Defendant refers Plaintiff to the documents produced in response to Plaintiff's Request for Production of Documents No. 42, which lists the patient service centers that offer a Kiosk as a means for patients to check in.

**INTERROGATORY NO. 15:**

IDENTIFY the total amount of operating costs YOU saved by outfitting YOUR PATIENT SERVICE CENTERS with E-CHECK-IN KIOSKS.

**RESPONSE TO INTERROGATORY NO. 15:**

Defendant objects on the ground that this Interrogatory is vague, ambiguous, and overbroad as to time, particularly as to the terms "total amount," "operating costs, and "outfitting," as Defendant cannot ascertain what information this Interrogatory seeking with reasonable particularity. Defendant further objects on the ground that this Interrogatory calls for disclosure of Defendant's confidential, financial, proprietary, trade secret or competitively sensitive information. Defendant further objects that this Interrogatory is premature because discovery in this matter is just beginning and a deferred answer may be appropriate. *See* Fed. R. Civ. P. 33, cmt. to Subdivision (b) (1970 Amend.). Defendant also objects on the ground that the Interrogatory requires Defendant to engage a forensic expert to undertake a burdensome and extremely complicated and uncertain calculation that itself would be subject to great uncertainty. Defendant also objects on the ground and to the extent that the Interrogatory requires Defendant to develop and then share its thoughts, mental impressions, and strategies regarding its defense of the action. Defendant also objects on the ground that the request seeks information not relevant to any party's claim or defense and is not proportional to the needs of the case.

13 Case No. 2:19-cv-08108 DMG(MRWx)

44638098_7.docx

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S RESPONSE TO PLAINTIFF ANNE WEST'S FIRST SET OF INTERROGATORIES

PA0795

Subject to and without waiving its objections, Defendant responds as follows:

The Capital Expenditure Request for the E Check-In project and the New Patient Experience Deployment CapEx Request PowerPoint presentation show estimated, potential costs/savings information for the E Check-In project.

**INTERROGATORY NO. 16:**

IDENTIFY all PERSONS supplying YOU with the E-CHECK-IN KIOSK hardware.

**RESPONSE TO INTERROGATORY NO. 16:**

Defendant objects on the ground that this Interrogatory is vague, ambiguous, and overbroad as to time, particularly as to the terms "supplying" and "hardware," as Defendant cannot ascertain what information this Interrogatory seeking with reasonable particularity. Defendant further objects on the ground that this Interrogatory calls for disclosure of Defendant's confidential, financial, proprietary, trade secret or competitively sensitive information.

Subject to and without waiving its objections, Defendant responds as follows:

Defendant will provide a substantive response to this Interrogatory once a protective order is in place.

**INTERROGATORY NO. 17:**

IDENTIFY all PERSONS supplying YOU with the E-CHECK-IN KIOSK software.

**RESPONSE TO INTERROGATORY NO. 17:**

Defendant objects on the ground that this Interrogatory is vague, ambiguous, and overbroad, particularly as to the terms "supplying" and "software," as Defendant cannot ascertain what information this Interrogatory seeking with reasonable particularity.

Subject to and without waiving its objections, Defendant responds as follows:

Defendant developed and maintains all software operating on the Kiosks that

14 Case No. 2:19-cv-08108 DMG(MRWx)

44638098_7.docx

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S RESPONSE TO PLAINTIFF ANNE WEST'S FIRST SET OF INTERROGATORIES

PA0796

did not come as part of the standard software on the tablets used in the Kiosks.

DATED: October 28, 2020

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: [signature]

David Raizman
Amber L. Roller
J. Nicholas Marfori

Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.; QUEST DIAGNOSTICS HOLDINGS, INC. and QUEST DIAGNOSTICS INCORPORATED

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and not a party to this action. My business address is 400 South Hope Street, Suite 1200, Los Angeles, California 90071.

On October 28, 2020, I served the following document(s) described as:

**DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S RESPONSE TO PLAINTIFF ANNE WEST'S FIRST SET OF INTERROGATORIES**

on the persons below as follows:

| | |
|---|---|
| Jonathan D. Miller, Esq.<br>Alison M. Bernal, Esq.<br>Jordan T. Porter, Esq.<br>NYE, STIRLING, HALE & MILLER, LLP<br>33 West Mission Street, Suite 201<br>Santa Barbara, CA 93101<br>Telephone: (805) 963-2345<br>Facsimile: (805) 284-9590<br>Email: jonathan@nshmlaw.com<br>alison@nshmlaw.com | Attorneys for Plaintiffs<br>Julian Vargas and Anne West |
| Matthew K. Handley, Esq.<br>HANDLEY FARAH & ANDERSON PLLC<br>777 6th Street, NW - 11th Floor<br>Washington, DC 20001<br>Telephone: (202) 559-2411<br>Facsimile: (844) 300-1952<br>Email: mhandley@hfajustice.com | Attorneys for Plaintiffs<br>Julian Vargas and Anne West |
| Benjamin J. Sweet, Esq.<br>Nye Stirling Hale & Miller, LLP<br>1145 Bower Hill Road, Suite 104<br>Pittsburgh, PA 15243<br>Telephone: (412) 857-5350<br>Email: ben@nshmlaw.com | Attorneys for Plaintiffs<br>Julian Vargas and Anne West |

I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses as indicated above and:

☐ deposited the sealed envelope or package with the United States Postal Service, with the postage fully prepaid.*

☒ placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the

ordinary course of business with the United States Postal Service, in a sealed envelope or package with postage fully prepaid.

I am employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on October 28, 2020, at Los Angeles, California.

Sasan Ektefaie
Type or Print Name

Signature

* (SIGNATURE MUST BE OF PERSON DEPOSITING ENVELOPE IN MAIL SLOT, BOX, OR BAG)

40404493.1



RECEIVED
NOV 02 2020
By:

PA0800

# EXHIBIT 30

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
DAVID RAIZMAN, CA Bar No. 129407
david.raizman@ogletree.com
AMBER L. ROLLER, CA Bar No. 273354
amber.roller@ogletree.com
J. NICHOLAS MARFORI, CA Bar No. 311765
nicholas.marfori@ogletree.com
400 South Hope Street, Suite 1200
Los Angeles, California 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.; QUEST DIAGNOSTICS HOLDINGS, INC. and QUEST DIAGNOSTICS INCORPORATED

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JULIAN VARGAS and ANNE WEST, individually on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,

Defendants.

Case No. 2:19-cv-08108 DMG (MRWx)

**DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE**

Date: March 8, 2021
Time: 8:00 a.m. PST/ 11:00 a.m. EST
Place: Veritext Remote Deposition; Tel: 866-299-5227 (Zoom link to be provided)

Complaint Filed: September 18, 2019
Removal Filed: Date
Trial Date: None
District Judge: Hon. Dolly M. Gee, Courtroom 8C, First St.
Magistrate Judge: Hon. Michael R. Wilner, Courtroom 550, Roybal

1 Case No. 2:19-cv-08108 DMG (MRWx)
DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE
48145216_1.docx
PA0801

Defendants Quest Diagnostics Incorporated ("Defendant") hereby objects and further responds to Plaintiff Julian Vargas's Amended Rule 30(b)(6) Deposition Notice to Person Most Knowledgeable at Quest Diagnostics, Incorporated (the "Notice"). Julian Vargas is referred to as "Plaintiff" below, and all plaintiffs in this action are referred to collectively below as "Plaintiffs."

I.

**PRELIMINARY STATEMENT**

These responses, while based on a diligent search and other efforts by all defendants in this action ("Defendants") and their counsel to obtain requested documents, reflect only the current state of Defendants' possession of materials and its knowledge, understanding and belief relating to the matters about which inquiry has been made. Discovery and investigation in this action continue. In addition, Defendants have not yet completed investigation of the facts, documents and evidence relating to these requests for information and this action and may still discover facts, documents or evidence that are not set forth or reflected in these responses, but which may be responsive. Accordingly, these responses are neither intended as, nor should any way be deemed, an admission or representation that further documents or information does not exist. Defendants anticipate that as this action proceeds, further documents and information may be discovered, and Defendants reserves the right to modify or supplement these responses based on subsequently discovered matters.

Defendants respond for themselves alone, and expressly decline to respond on behalf of, or based on information maintained by or available to any other entity or party. Defendants' responses are based solely on information in their possession, custody and/or control that each has encountered as part of its diligent, good faith efforts. Specific objections to each request are made on an individual basis in Defendants' responses below. In addition to these specific objections, Defendants

2 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0802

make certain continuing objections (the "General Objections") to the Notice. Defendants' response to each individual topic is submitted without prejudice to, and without in any respect limiting or waiving, any General Objection not expressly set forth in that response. Defendants reserve the right to amend or supplement these objections and responses. Defendants further reserve the right to object to the admission of any of the documents or testimony provided pursuant to the Notice at any hearing or in any proceeding before the Court including, but not limited to, any merits briefing.

## II.

## GENERAL OBJECTIONS

Defendants provide these responses to the Notice subject to the general objections set forth below (the "General Objections"):

1. Defendants generally object to the Notice on the grounds that, beyond the overbreadth and unduly burdensomeness of various particular subject matters in the Notice, the Notice, taken as a whole, is overbroad and unduly burdensome in that it purports to require Defendants to prepare witnesses on a vast number of subjects, many of which would require hours and hours of study without the ability to adequately prepare witness on such subjects.

2. Defendants generally object to the Notice on the grounds that it employs "artful pleading" to evade the letter and spirit of the limitation on the number of depositions that can be taken in an action without leave of Court or agreement of the parties, as codified in Rule 30(a)(2)(a)(i) of the Federal Rules of Civil Procedure.

3. Defendants generally object to the Notice on the ground and to the extent that, in conjunction with individual notices of deposition sent to at least two of Defendants' designated witnesses under this Notice, it purports to require witnesses to switch between roles in the same deposition as both a percipient witness and as a Rule 30(b)(6) witness.

4. Defendants generally object on the ground that Plaintiff's definition of "YOU" and "YOUR" is vague and overly broad because Plaintiff has defined "YOU" and "YOUR" to mean "Defendant Quest Diagnostics Incorporated and its consolidated subsidiaries, agents, assigns, employees, representatives, and counsel; and any other representative or person acting on behalf of Defendant." For purposes of responding to each of the topics in the Notice that use the term "YOU" or "YOUR," Defendants have reasonably construed "YOU" and "YOUR" to mean and refer only to defendant Quest Diagnostics Incorporated and its wholly-owned subsidiaries in the United States. Accordingly, responses to each of the topics in the Notice are provided on behalf of all of the Defendants.

5. Defendants generally object on the ground that Plaintiff's definition of "PATIENT SERVICE CENTER" is vague and overbroad in that it defines "PATIENT SERVICE CENTER" as "a Quest Diagnostics location where a patient can obtain clinical laboratory services from Quest Diagnostics." For purposes of responding to each of the topics in the Notice, Defendants have reasonably construed "PATIENT SERVICE CENTER" to mean and refer only to a patient service center located within the United States that is open to the public, provides specimen collection and related services in furtherance of diagnostic testing services, bears the name Quest Diagnostics, and is operated by Quest Diagnostics Incorporated or one of its wholly-owned subsidiaries. This definition excludes any physician office or similar location where Quest has placed an employee, such as a phlebotomist, to provide specimen collection services for patients of that physician office or location.

6. Defendants generally object on the ground that Plaintiff's definition of "E-CHECK-IN KIOSK" is vague and overbroad because it defines "E-CHECK-IN KIOSK" as "Defendant's touchscreen electronic check-in at PATIENT SERVICE CENTERS" without specifying that it is a device used by patients to check in at Quest patient service centers. For purposes of responding to each of the topics that

rely upon the term "E-CHECK-IN KIOSK," Defendants have reasonably construed "E-CHECK-IN KIOSK" to mean and refer only to the touchscreen device that can be used by patients to check in (i.e., inform that facility of their arrival) when they arrive at Patient Service Centers (as defined above), where such kiosks are available. The term "Kiosk" shall be used interchangeably with "E-CHECK-IN KIOSK" subject to Defendants' objection and interpretation as set forth in this paragraph.

7. The parties have met and conferred extensively over a prolonged period on the propriety of this Notice and the topics included in the Notice, as well as the adequacy of the testimony provided in response to the Notice, including without limitation in meet and confer sessions conducted on April 27, 2021 and May 12, 2021, in an informal discovery conference with the Court on May 3, 2021, and through emails and letters (including without limitation Defendants' May 7, 2021 letter). Defendants hereby incorporate by reference the objections stated by them throughout this meet and confer process.

These General Objections are incorporated by reference into each and every response to any topic below to the extent applicable. Various objections may be specifically referred to in the responses below for purposes of clarity. However, failure to incorporate specifically an objection is not to be construed as a waiver of any such objection.

## III.

## OBJECTIONS TO TOPICS

**TOPIC NO. 1:**

YOUR decision to outfit YOUR PATIENT SERVICE CENTERS with E-CHECK-IN KIOSKS.

**OBJECTION TO TOPIC NO. 1:**

Subject to their objections, Defendants will produce Marc Yarrison as their designee to testify on this topic.

5 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0805

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 1:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

Each of the specific topics for which Plaintiffs propose further deposition testimony at page 4 of their May 11, 2021 letter are inappropriate for further deposition testimony from a Rule 30(b)(6) designee for one or more of the following reasons: Plaintiffs had ample opportunity to question one or more of Defendants' Rule 30(b)(6) designees about these topics and failed to take advantage of those opportunities; Plaintiffs exhausted the seven hours of testimony they were seeking from Defendants' designee on this topic and did not use the allotted time in a good faith effort to gather the desired testimony; Plaintiffs failed to present Defendants' Rule 30(b)(6) designees with documents that would permit them to respond to these topics; Defendants' Rule 30(b)(6) designees adequately addressed these topics; and/or the identified topics are not relevant to a claim or defense in the action. Defendants further respond that they did not undertake an analysis of costs, undue burden or fundamental alteration in making the determination to implement the eCheck-in Kiosks in 2016.

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 1:**

The final version of the CapEx document that was approved by Quest was produced by Defendants as Bates No. QUEST-VARGAS000035245 on March 26, 2021.

**TOPIC NO. 2:**

The reasons why YOU decided to outfit YOUR PATIENT SERVICE CENTERS with E-CHECK-IN KIOSKS.

6 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0806

**OBJECTION TO TOPIC NO. 2:**

Subject to their objections, Defendants will produce Marc Yarrison as their designee to testify on this topic.

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 2:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

Each of the specific topics for which Plaintiffs propose further deposition testimony at page 4 of their May 11, 2021 letter are inappropriate for further deposition testimony from a Rule 30(b)(6) designee for one or more of the following reasons:  Plaintiffs had ample opportunity to question one or more of Defendants' Rule 30(b)(6) designees about these topics and failed to take advantage of those opportunities; Plaintiffs exhausted the seven hours of testimony they were seeking from Defendants' designee on this topic and did not use the allotted time in a good faith effort to gather the desired testimony; Plaintiffs failed to present Defendants' Rule 30(b)(6) designees with documents that would permit them to respond to these topics; Defendants' Rule 30(b)(6) designees adequately addressed these topics; and/or the identified topics are not relevant to a claim or defense in the action. Defendants further respond that they did not undertake an analysis of costs, undue burden or fundamental alteration in making the determination to implement the eCheck-in Kiosks in 2016.

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 2:**

The final version of the CapEx document that was approved by Quest was produced by Defendants as Bates No. QUEST-VARGAS000035245 on March 26, 2021.

**TOPIC NO. 3:**

The amount of business operating costs YOU saved by switching YOUR PATIENT SERVICE CENTERS to E-CHECK-IN KIOSKS from live-person check-in procedures.

**OBJECTION TO TOPIC NO. 3:**

Defendants object to this topic on the grounds that it assumes facts that are not true, including but not limited to the assumption that the deployment of Kiosks at the Patient Service Centers saved "business operating costs" and the assumption that Defendants have calculated "[t]he amount of business operating costs" saved by deploying Kiosks. Defendants further object to this topic on the ground that it is vague and ambiguous with respect to the term "business operating costs."

Subject to their objections, Defendants will produce Marc Yarrison as their designee to testify on Defendants' projections of the additional costs that could be incurred and saved by reason of the deployment of the Kiosks.

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 3:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

Each of the specific topics for which Plaintiffs propose further deposition testimony at page 4 of their May 11, 2021 letter are inappropriate for further deposition testimony from a Rule 30(b)(6) designee for one or more of the following reasons: Plaintiffs had ample opportunity to question one or more of Defendants' Rule 30(b)(6) designees about these topics and failed to take advantage of those opportunities; Plaintiffs exhausted the seven hours of testimony they were seeking from Defendants' designee on this topic and did not use the allotted time in a good

faith effort to gather the desired testimony; Plaintiffs failed to present Defendants' Rule 30(b)(6) designees with documents that would permit them to respond to these topics; Defendants' Rule 30(b)(6) designees adequately addressed these topics; and/or the identified topics are not relevant to a claim or defense in the action. Defendants further respond that they did not undertake an analysis of costs, undue burden or fundamental alteration in making the determination to implement the eCheck-in Kiosks in 2016.

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 3:**

The final version of the CapEx document that was approved by Quest was produced by Defendants as Bates No. QUEST-VARGAS000035245 on March 26, 2021.

**TOPIC NO. 4:**

All proposals YOU sought from vendors to provide E-CHECK-IN KIOSKS at YOUR PATIENT SERVICE CENTERS.

**OBJECTION TO TOPIC NO. 4:**

Defendants object to this topic on the ground that it does not seek information that relates to a claim or defense in this action. Defendants further object to this topic on the ground that it is grossly overbroad in its scope and disproportionate to the needs of this case in that, viewed most generously as to potential relevance, it seeks vast quantities of information that do not relate to a claim or defense in the action.

Subject to their objections, Defendants will produce Max Ocampo as their designee to testify on this topic.

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 4:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and

9 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0809

meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

Defendants' designee on this topic should not be made to re-appear for deposition for one or more of the following reasons: Plaintiffs had ample opportunity to question Defendants' Rule 30(b)(6) designee about this topic and failed to take advantage of those opportunities; Plaintiffs exhausted the seven hours of testimony they were seeking from Defendants' designee on this topic and did not use the allotted time in a good faith effort to gather the desired testimony; Plaintiffs failed to present Defendants' Rule 30(b)(6) designee with documents that would permit him to respond to Plaintiffs' questions on these topics; Defendants' Rule 30(b)(6) designee adequately addressed the questions asked of him on this topic; and/or the identified topic is not relevant to a claim or defense in the action. Defendants further respond that they currently purchase the Lillitab kiosks from ePlus, without any written agreement in place with Lillitab. Defendants further respond that they will agree to meet and confer further on any alleged need for further testimony from a Rule 30(b)(6) designee on this topic after Plaintiffs have exhausted good faith efforts to gather documents from those third parties that they have subpoenaed, or will subpoena, for documents and/or deposition testimony.

**TOPIC NO. 5:**

The date on which YOU began implementing E-CHECK-IN KIOSKS at YOUR PATIENT SERVICE CENTERS.

**OBJECTION TO TOPIC NO. 5:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic.

Subject to their objections, and pursuant to an agreement of the parties,

10 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0810

Defendants have produced a document (Bates No. QUEST-VARGAS 00000039568-39608) that provides the date on which the e-check-in on the Kiosk was first deployed at a Patient Service Center.

**TOPIC NO. 6:**

The number of PATIENT SERVICE CENTERS with E-CHECK-IN KIOSKS in the United States as of September 18, 2019.

**OBJECTION TO TOPIC NO. 6:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic.

Subject to their objections, and pursuant to an agreement of the parties, Defendants have produced a document (Bates No. QUEST-VARGAS 00000039568-39608) that provides the date on which e-check-in on the Kiosk was first deployed at each Patient Service Center.

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 6:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

The data collected in the document labeled as Bates No. QUEST-VARGAS 00000039568-39608 results from an amalgam of two databases that were independently-sourced, meaning that not all information provided is necessarily consistent with other information provided. Nonetheless, it is the best record that Defendants have of the first activation and first use of the Kiosks.

The data populating the column labeled "Active Date" in Bates No. QUEST-VARGAS 00000039568-39608 reports the date on which eCheck-in was first

11 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0811

activated at the particular Patient Service Centers identified in the document. The data populating the column labeled "First Check-In" in Bates No. QUEST-VARGAS 00000039568-39608 reports the date when a check-in transaction was first recorded at that location.

**TOPIC NO. 7:**

The number of PATIENT SERVICE CENTERS with E-CHECK-IN KIOSKS in California as of September 18, 2019.

**OBJECTION TO TOPIC NO. 7:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic.

Subject to their objections, and pursuant to an agreement of the parties, Defendants have produced a document (Bates No. QUEST-VARGAS 00000039568-39608) that provides the date on which e-check-in on the Kiosk was first deployed at each Patient Service Center.

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 7:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

The data collected in the document labeled as Bates No. QUEST-VARGAS 00000039568-39608 results from an amalgam of two databases that were independently-sourced, meaning that not all information provided is necessarily consistent with other information provided. Nonetheless, it is the best record that Defendants have of the first activation and first use of the Kiosks.

The data populating the column labeled "Active Date" in Bates No. QUEST-

12 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0812

VARGAS 00000039568-39608 reports the date on which eCheck-in was first activated at the particular Patient Service Centers identified in the document. The data populating the column labeled "First Check-In" in Bates No. QUEST-VARGAS 00000039568-39608 reports the date when a check-in transaction was first recorded at that location.

**TOPIC NO. 8:**

The number of PATIENT SERVICE CENTERS in the United States as of September 18, 2019, that have a live person available during all business hours to check in patients.

**OBJECTION TO TOPIC NO. 8:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. Defendants further object to this topic in that the information sought by this topic has been provided to Plaintiffs in the form of a spreadsheet.

Subject to their objections, and pursuant to an agreement of the parties, Defendants respond that, as of September 18, 2019, every Patient Services Center in the United States had a live person available to assist with checking in patients during all business hours that the Patient Service Center was operating.

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 8:**

Subject to their objections, and pursuant to an agreement of the parties, Defendants respond that they will produce a document that identifies the number of Patient Service employees in the United States who were employed by defendant Quest Diagnostics Incorporated and/or its wholly-owned subsidiaries in 2019 and who held the job titles reflected in the spreadsheet, as well as the work location to which they were coded at that time. Employees who held more than one job title in a given reporting period are counted separately for each job title held.

13 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0813

**SECOND FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 8 (August 16, 2021):**

Subject to their objections, and pursuant to an agreement of the parties, Defendants respond that they have previously produced a document (QUEST-VARGAS 42007 that identifies the number of Patient Service employees in the United States who were employed by defendant Quest Diagnostics Incorporated and/or its wholly-owned subsidiaries in 2019 and who held the job titles reflected in the spreadsheet, as well as the work location to which they were coded at that time. Employees who held more than one job title in a given reporting period are listed separately for each job title held.

Although Plaintiffs have not requested information regarding independent contractors working at Patient Service Centers, Defendants are also producing, contemporaneously with these Objections, a document (QUEST-VARGAS 42029) that identifies the number of independent contractors who were assigned in the years 2017-2020 to positions that typically would work at Patient Service Centers and the work location to which they were coded at that time. Independent contractors who were assigned to work during multiple time periods are counted separately for each time period worked. Defendants are also producing a spreadsheet (QUEST-VARGAS 42028) that identifies the job templates and descriptions for these independent contractors.

**TOPIC NO. 9:**

The number of PATIENT SERVICE CENTERS in California as of September 18, 2019, that have a live person available during all business hours to check in patients.

**OBJECTION TO TOPIC NO. 9:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing

the information sought by this topic. Defendants further object to this topic in that the information sought by this topic has been provided to Plaintiffs in the form of a spreadsheet.

Subject to their objections, and pursuant to an agreement of the parties, Defendants respond that, as of September 18, 2019, every Patient Services Center in California had a live person available to assist with checking in patients during all business hours that the Patient Service Center was operating.

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 9:**

Subject to their objections, and pursuant to an agreement of the parties, Defendants respond that they will produce a document that identifies the number of Patient Service employees in California who were employed by defendant Quest Diagnostics Incorporated and/or its wholly-owned subsidiaries in 2019 and who held the job titles reflected in the spreadsheet, as well as the work location to which they were coded at that time. Employees who held more than one job title in a given reporting period are counted separately for each job title held.

**SECOND FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 9 (August 16, 2021):**

Subject to their objections, and pursuant to an agreement of the parties, Defendants respond that they have previously produced a document (QUEST-VARGAS 42006) that identifies the number of Patient Service employees in California who were employed by defendant Quest Diagnostics Incorporated and/or its wholly-owned subsidiaries in 2019 and who held the job titles reflected in the spreadsheet, as well as the work location to which they were coded at that time. Employees who held more than one job title in a given reporting period are listed separately for each job title held.

Although Plaintiffs have not requested information regarding independent contractors working at Patient Service Centers, Defendants are also producing,

15 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0815

contemporaneously with these Objections, a document (QUEST-VARGAS 42029) that identifies the number of independent contractors who were assigned in the years 2017-2020 to positions that typically would work at Patient Service Centers and the work location to which they were coded at that time. Independent contractors who were assigned to work during multiple time periods are counted separately for each time period worked. Defendants are also producing a spreadsheet (QUEST-VARGAS 42028) that identifies the job templates and descriptions for these independent contractors.

**TOPIC NO. 10:**

The number of PATIENT SERVICE CENTERS in the United States as of September 18, 2019, that have only one employee working during regular business hours.

**OBJECTION TO TOPIC NO. 10:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. In fact, Plaintiffs have agreed that Defendants may supply this information through a sworn, written response. Defendants further object to this topic on the ground that it is seeks information that is grossly burdensome and disproportionate to the needs of this action in that the information sought is unique as to each of thousands of Patient Service Centers and constantly varies.

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 10:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

The information that Plaintiffs seek through this Topic cannot be readily determined from any centralized database at Quest. The available information responsive to this Topic that is centrally maintained is found in: (1) the document produced by Defendants as Bates No. 41938-42005, which reports, as of September 2019, the average number of Patient Services full-time equivalents ("FTE") that were assigned within its financial system to each Patient Service Center; and (2) a document to be produced by Defendants that provides an FTE working productivity analysis for each Patient Service Center, as of September 2019.

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 10:**

On May 28, 2021, Defendants produced BATES NO. QUEST-VARGAS 000042006, which is the FTE working productivity analysis for each Patient Service Center, as of September 2019, referenced above.

Subject to their objections, and pursuant to an agreement of the parties, Defendants further respond that they will produce a document that identifies the number of Patient Service employees in the United States who were employed by defendant Quest Diagnostics Incorporated and/or its wholly-owned subsidiaries in 2019 and who held the job titles reflected in the spreadsheet, as well as the work location to which they were coded at that time. Employees who held more than one job title in a given reporting period are counted separately for each job title held.

**SECOND FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 10 (August 16, 2021):**

Subject to their objections, and pursuant to an agreement of the parties, Defendants respond that they have previously produced a document (QUEST-VARGAS 42007 that identifies the number of Patient Service employees in the United States who were employed by defendant Quest Diagnostics Incorporated and/or its wholly-owned subsidiaries in 2019 and who held the job titles reflected in the spreadsheet, as well as the work location to which they were coded at that time.

17 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0817

Employees who held more than one job title in a given reporting period are listed separately for each job title held.

Although Plaintiffs have not requested information regarding independent contractors working at Patient Service Centers, Defendants are also producing, contemporaneously with these Objections, a document (QUEST-VARGAS 42029) that identifies the number of independent contractors who were assigned in the years 2017-2020 to positions that typically would work at Patient Service Centers and the work location to which they were coded at that time. Independent contractors who were assigned to work during multiple time periods are counted separately for each time period worked. Defendants are also producing a spreadsheet (QUEST-VARGAS 42028) that identifies the job templates and descriptions for these independent contractors.

**TOPIC NO. 11:**

The number of PATIENT SERVICE CENTERS in California as of September 18, 2019, that have only one employee working during regular business hours.

**OBJECTION TO TOPIC NO. 11:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. In fact, Plaintiffs have agreed that Defendants may supply this information through a sworn, written response. Defendants further object to this topic on the ground that it is seeks information that is grossly burdensome and disproportionate to the needs of this action in that the information sought is unique as to the approximately more than 400 Patient Service Centers in California, as of September 18, 2019, and constantly varies.

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 11:**

Subject to their above objections and those presented in their various meet and

18 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0818

confer emails and letters (including without limitation the May 5, 2021 letter) and meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

The information that Plaintiffs seek through this Topic cannot be readily determined from any centralized database at Quest. The available information responsive to this Topic that is centrally maintained is found in: (1) the document produced by Defendants as Bates No. 41938-42005, which reports, as of September 2019, the average number of Patient Services full-time equivalents ("FTE") that were assigned within its financial system to each Patient Service Center; and (2) a document to be produced by Defendants that provides an FTE working productivity analysis for each Patient Service Center, as of September 2019.

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 11:**

On May 28, 2021, Defendants produced BATES NO. QUEST-VARGAS 000042006, which is the FTE working productivity analysis for each Patient Service Center, as of September 2019, referenced above.

Subject to their objections, and pursuant to an agreement of the parties, Defendants further respond that they will produce a document that identifies the number of Patient Service employees in California who were employed by defendant Quest Diagnostics Incorporated and/or its wholly-owned subsidiaries in 2019 and who held the job titles reflected in the spreadsheet, as well as the work location to which they were coded at that time. Employees who held more than one job title in a given reporting period are counted separately for each job title held.

**SECOND FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 11 (August 16, 2021):**

Subject to their objections, and pursuant to an agreement of the parties, Defendants respond that they have previously produced a document (QUEST-

19 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0819

VARGAS 42006) that identifies the number of Patient Service employees in California who were employed by defendant Quest Diagnostics Incorporated and/or its wholly-owned subsidiaries in 2019 and who held the job titles reflected in the spreadsheet, as well as the work location to which they were coded at that time. Employees who held more than one job title in a given reporting period are listed separately for each job title held.

Although Plaintiffs have not requested information regarding independent contractors working at Patient Service Centers, Defendants are also producing, contemporaneously with these Objections, a document (QUEST-VARGAS 42029) that identifies the number of independent contractors who were assigned in the years 2017-2020 to positions that typically would work at Patient Service Centers and the work location to which they were coded at that time. Independent contractors who were assigned to work during multiple time periods are counted separately for each time period worked. Defendants are also producing a spreadsheet (QUEST-VARGAS 42028) that identifies the job templates and descriptions for these independent contractors. 7215201Defendants respond that they have previously produced a document (QUEST-VARGAS [insert number of previously-produced document] that identifies the number of Patient Service employees in the United States who were employed by defendant Quest Diagnostics Incorporated and/or its wholly-owned subsidiaries in 2019 and who held the job titles reflected in the spreadsheet, as well as the work location to which they were coded at that time.

**TOPIC NO. 12:**

YOUR maintenance, management, and/or administration policies, practices and/or procedures at YOUR PATIENT SERVICE CENTERS.

**OBJECTION TO TOPIC NO. 12:**

Defendants object to this topic on the grounds that it seeks information that is grossly burdensome and disproportionate to the needs of this action in that the

20 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0820

"policies, practices and/or procedures" applicable to the maintenance, management, and/or administrative policies of thousands of Patient Service Centers seeks a vast quantity of information, the vast majority of which does not relate to a claim or defense in the action. Defendants further object to this topic on the ground that the policies, practices and/or procedures at the Patient Service Centers can vary widely depending on a number of factors.

Subject to their objections, Defendants will produce Jody Reilly to testify about the policies and procedures in effect at the Patient Service Centers that are relevant to issues concerning patients who are blind or who have visual impairments.

**TOPIC NO. 13:**

The maintenance, management, and/or administration policies, practices and/or procedures of the E-CHECK-IN KIOSKS.

**OBJECTION TO TOPIC NO. 13:**

Defendants object to this topic on the ground that it is seeks information that is grossly burdensome and disproportionate to the needs of this action in that the "policies, practices and/or procedures" applicable to the Kiosks seeks a vast quantity of information, the vast majority of which does not relate to a claim or defense in the action. Defendants further object to this topic on the ground that the policies, practices and/or procedures at the Patient Service Centers applicable to the Kiosks can vary widely depending on a number of factors.

Subject to their objections, Defendants will produce Jody Reilly to testify about the policies and procedures in effect at the Patient Service Centers relevant to issues concerning patients who are blind or who have visual impairments.

**TOPIC NO. 14:**

YOUR management structure from the corporate owner to the individual PATIENT SERVICE CENTER managers.

21 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0821

**OBJECTION TO TOPIC NO. 14:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. Defendants further object to this topic on the ground that the information sought by this topic has been provided to Plaintiffs in the form of an organizational chart. Defendants further object to this topic on the ground that it is grossly disproportionate to the needs of the case as the vast majority of the information about the "management structure" about which Plaintiffs seek testimony bears no relation to a claim or defense in the action.

Subject to their objections, and pursuant to an agreement of the parties, Defendants have agreed to provide a sworn, written statement providing the following information:

(1) As of the date identified in the statement, the identity of the Executive Director of National Patient Services, his or her direct reports, and their direct reports' reports.

(2) As of the date identified in the statement, the identity of the Vice President, Strategy and Digital Transformation and his or her direct reports.

(3) As of the date identified the statement, the identity of the Quest Diagnostics Patient Services Directors.

(4) As of the present date, the direct supervisors of the individuals identified in Numbers 1, 2, and 3 above.

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 14:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response as to certain positions within Quest in 2018 and

2019:

1. In 2018 and 2019, the Executive Director of National Patient Services was Chris Grant. His direct reports who reported to him at any point during that time period were: Adria Marallo, Catherine, Garroni, Beverly Hoskinson, Marc Yarrison, Priscilla Pruitt, Taylor Carr, and Joseph Hulseman.

2. In 2018 and 2019, the identity of the Executive Director, O2C Process and Programs was Tom Walsh. His direct reports who reported to him at any point during that time period were: Constance Crimmins, John Edward Matalavy, Sean Kent, Joseph Locricchio, Richard Congersky, and Yatin Birla.

3. In 2018 and 2019, the Senior Directors of Patient Services for the Patient Service Centers were: Katherine McCarthy, Cynthia Beltzer, Lisa Marie Gavin, Keith Ward, and Walter Dusseldorp. In 2018 and 2019, the Directors of Patient Services for the Patient Service Centers were: Malinda Weyrick, Jeremy Stein, and Tanuj Pasricha.

4. In 2018 and 2019, Scott Jeffers was the direct supervisor of the Executive Director of National Patient Services and the Executive Director, 02C Process and Programs.

**TOPIC NO. 15:**

Any agreements between YOU and any other PERSON regarding providing maintenance, management, and/or administration of the check-in procedures at each location identified in Plaintiffs' FIRST AMENDED COMPLAINT, Paragraphs 26 and 27.

**OBJECTION TO TOPIC NO. 15:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. Defendants further object to this topic on the ground that the information sought by this topic has been provided to Plaintiffs in the

23 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0823

form of the agreements, which speak for themselves. Defendants further object to this topic on the ground that it is grossly disproportionate to the needs of the case as the vast majority of the information about any such agreements bears no relation to a claim or defense in the action.

Subject to their objections, Defendants agree to produce Max Ocampo as their designee to testify on this topic.

**TOPIC NO. 16:**

Any agreements between YOU and any other PERSON regarding providing maintenance, management, and/or administration of the E-CHECK-IN KIOSKS check-in procedures at each location identified in Plaintiffs' FIRST AMENDED COMPLAINT, Paragraphs 26 and 27.

**OBJECTION TO TOPIC NO. 16:**

Defendants object to this topic on the ground that it is vague and ambiguous in its request for information regarding the "maintenance, management, and administration of . . . check-in procedures." Defendants further object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. Defendants further object to this topic on the ground that the information sought by this topic has been sought Plaintiffs in the form of the agreements, which would speak for themselves.

Subject to their objections, Defendants agree to produce Max Ocampo as their designee to testify on this topic only to the extent there are any such agreements, as Defendants reasonably understand this topic.

**TOPIC NO. 17:**

All actions taken by YOU to ensure the E-CHECK-IN KIOSKS at YOUR PATIENT SERVICE CENTERS are compliant with the ADA.

24 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0824

**OBJECTION TO TOPIC NO. 17:**

Defendants object to this topic on the grounds that it is overbroad and disproportionate to the needs of the case as the vast majority of the information about ADA compliance bears no relation to a claim or defense in the action, except to the extent that it impacts the use of the check-in procedures by patients who are blind or who have visual impairments.  Defendants further object to this topic on the grounds that it is vague and ambiguous in its use of the phrase "compliant with the ADA" as the ADA is a vast and complex statutory and regulatory scheme.

Subject to their objections, and pursuant to an agreement of the parties, Defendants will produce Marc Yarrison to testify on this topic as it relates to the use of the check-in procedures at Patient Service Centers by patients who are blind or who have visual impairments.

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 17:**

Subject to their objections, and pursuant to an agreement of the parties, Defendants further respond that QUEST-VARGAS 40793 is a Quest business record and QUEST-VARGAS 41653-41781 is a compilation of Quest business records.

**TOPIC NO. 18:**

All actions taken by YOU to ensure the E-CHECK-IN KIOSKS at YOUR PATIENT SERVICE CENTERS are compliant with the REHAB ACT.

**OBJECTION TO TOPIC NO. 18:**

Defendants object to this topic on the grounds that it is overbroad and disproportionate to the needs of the case as the vast majority of the information about Rehabilitation Act compliance bears no relation to a claim or defense in the action, except to the extent that it impacts the use of the check-in procedures by patients who are blind or who have visual impairments.  Defendants further object to this topic on the grounds that it is vague and ambiguous in its use of the phrase "compliant with the REHAB ACT" as the Rehabilitation Act is a vast and complex

25                    Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0825

statutory and regulatory scheme.

Subject to their objections, and pursuant to an agreement of the parties, Defendants will produce Marc Yarrison to testify on this topic as it relates to the use of the check-in procedures at Patient Service Centers by patients who are blind or who have visual impairments.

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 18:**

Subject to their objections, and pursuant to an agreement of the parties, Defendants further respond that QUEST-VARGAS 40793 is a Quest business record and QUEST-VARGAS 41653-41781 is a compilation of Quest business records.

**TOPIC NO. 19:**

All policies or procedures maintain by YOU that address compliance with the ADA at YOUR PATIENT SERVICE CENTERS.

**OBJECTION TO TOPIC NO. 19:**

Defendants object to this topic on the grounds that it is overbroad and disproportionate to the needs of the case as the vast majority of the information about ADA compliance bears no relation to a claim or defense in the action, except to the extent that it impacts the use of the check-in procedures by patients who are blind or who have visual impairments. Defendants further object to this topic on the grounds that it is vague and ambiguous in its use of the phrase "compliance with the ADA" as the ADA is a vast and complex statutory and regulatory scheme.

Subject to their objections, and pursuant to an agreement of the parties, Defendants will produce Jody Reilly to testify on this topic as it relates to the use of the check-in procedures at Patient Service Centers by patients who are blind or who have visual impairments.

**TOPIC NO. 20:**

All policies or procedures maintain by YOU that address compliance with the REHAB ACT at YOUR PATIENT SERVICE CENTERS.

26 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0826

**OBJECTION TO TOPIC NO. 20:**

Defendants object to this topic on the grounds that it is overbroad and disproportionate to the needs of the case as the vast majority of the information about Rehabilitation Act compliance bears no relation to a claim or defense in the action, except to the extent that it impacts the use of the check-in procedures by patients who are blind or who have visual impairments. Defendants further object to this topic on the grounds that it is vague and ambiguous in its use of the phrase "compliance with the REHAB ACT" as the Rehabilitation Act is a vast and complex statutory and regulatory scheme.

Subject to their objections, and pursuant to an agreement of the parties, Defendants will produce Jody Reilly to testify on this topic as it relates to the use of the check-in procedures at Patient Service Centers by patients who are blind or who have visual impairments.

**TOPIC NO. 21:**

All policies or procedures maintained by YOU to ensure compliance with providing aids and auxiliary services, as defined in 28 C.F.R. 36.303 at PATIENT SERVICE CENTERS from January 1, 2016, to present.

**OBJECTION TO TOPIC NO. 21:**

Defendants object to this topic on the grounds that it is vague and ambiguous in its use of the phrase "providing aids and auxiliary services," as that phrase is neither used nor defined in 28 C.F.R. § 36.303, and in its use of the phrase "compliance with providing…." Defendants further object to this topic on the grounds that it is overbroad and disproportionate to the needs of the case as the vast majority of the information about compliance with 28 C.F.R. § 36.303 bears no relation to a claim or defense in the action, except to the extent that it impacts the use of the check-in procedures by patients who are blind or who have visual

27 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0827

impairments.

Subject to their objections, and pursuant to an agreement of the parties, Defendants will produce Jody Reilly to testify on this topic as it relates to the use of the check-in procedures at Patient Service Centers by patients who are blind or who have visual impairments.

**TOPIC NO. 22:**

All policies or procedures maintained by YOU that demonstrate each way in which YOU ensured effective communication, as defined in 28 C.F.R. 36.303(c), with visually impaired PERSONS during the E-CHECK-IN KIOSK check-in process, at YOUR PATIENT SERVICE CENTERS from January 1, 2016, to present.

**OBJECTION TO TOPIC NO. 22:**

Defendants object to this topic on the grounds that it is vague and ambiguous in its use of the phrase "effective communication, as defined in 28 C.F.R. § 36.303(c)" as "effective communication" is not defined in that regulation.

Subject to their objections, Defendants will produce Jody Reilly to testify on this topic as it relates to communicating with patients who are blind or who have visual impairments while using the check-in procedures at the Patient Service Centers.

**TOPIC NO. 23:**

The training YOU provide to YOUR employees and independent contractors RELATING to how to communicate effectively with visually impaired PERSONS during the check-in process at YOUR PATIENT SERVICE CENTERS.

**OBJECTION TO TOPIC NO. 23:**

Subject to their objections, Defendants will produce Jody Reilly to testify on this topic as it relates to communicating with patients who are blind or who have visual impairments while using the check-in procedures at the Patient Service

28 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0828

Centers.

**TOPIC NO. 24:**

All complaints YOU have received from January 1, 2016, to the present from any individual YOU know to be legally blind alleging difficulty accessing the E-CHECK-IN at YOUR PATIENT SERVICE CENTERS.

**OBJECTION TO TOPIC NO. 24:**

Defendants object to this topic on the grounds that it is vague and ambiguous in its use of the term "complaints," which is subject to multiple interpretations by different individuals. Defendants further object to this topic on the ground that it falsely assumes that Defendants "know" that any of the patients are legally blind. Defendants further object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. Defendants further object to this topic on the grouns that it is unduly burdensome to the extent it would purport to require any designee to master all of the facts related to any given "complaint," especially when all such available facts are recorded in documents that have been produced to Plaintiffs in this action. Defendants further object to this topic on the ground that the information sought by this topic has been provided to Plaintiffs in the form of the complaints, which speak for themselves.

Subject to their objections, Defendants agree to produce Jody Reilly as their designee to testify on this topic to the extent it involves the maintenance of documents relating to feedback Patient Advocacy received from patients claiming to be blind or to have visual impairments who experienced difficulties using the check-in procedures at the Patient Service Centers.

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 24:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and

meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

Defendants agree that the statements made by or attributed to the individuals and/or patients that are contained or reported in the following documents were received by Defendants; recorded, maintained, or generated by Defendants in the ordinary course of business; and that the documents themselves are business records recorded, maintained or generated in the ordinary course of business: QUEST-VARGAS 28740-41, 34658, 35335.

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 24:**

Subject to their objections, and pursuant to an agreement of the parties, Defendants further respond that QUEST-VARGAS 37977-37978 is a Quest business record and QUEST-VARGAS 41653-41681 is a compilation of Quest business records.

**TOPIC NO. 25:**

All complaints YOU have received from January 1, 2016, to the present from any individual RELATING to the E-CHECK-IN at YOUR PATIENT SERVICE CENTERS.

**OBJECTION TO TOPIC NO. 25:**

Defendants object to this topic on the ground that it is vague and ambiguous in its use of the term "complaints," which is subject to multiple interpretations by different individuals. Defendants further object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. Defendants further object to this topic on the ground that it is unduly burdensome to the extent it would purport to require any designee to master all of the facts related to any given

"complaint," especially when all such available facts are recorded in documents that have been produced to Plaintiffs in this action. Defendants further object to this topic on the ground that it is unduly burdensome and grossly disproportionate to the needs of the case in that all of the complaints of individuals other than putative class members relating to the use of check-in procedures at the Patient Service Centers bears no relation to a claim or defense in the action. All of the relevant information sought by this topic is sought in Topic No. 24.

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 25:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

Defendants agree that the statements made by or attributed to the individuals and/or patients that are contained or reported in the following documents were received by Defendants; recorded, maintained, or generated by Defendants in the ordinary course of business; and that the documents themselves are business records recorded, maintained or generated in the ordinary course of business: QUEST-VARGAS 28740-41, 34658, 35335.

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 25:**

Subject to their objections, and pursuant to an agreement of the parties, Defendants further respond that QUEST-VARGAS 37977-37978 is a Quest business record and QUEST-VARGAS 41653-41681 is a compilation of Quest business records.

31 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0831

**TOPIC NO. 26:**

All agreements, COMMUNICATIONS or other DOCUMENTS between YOU and any state, federal or local regulator regarding the ADA and/or any other state or local accessibility regulation that is related to YOUR PATIENT SERVICE CENTERS.

**OBJECTION TO TOPIC NO. 26:**

Defendants object to this topic on the grounds that it is unduly burdensome, overbroad and disproportionate to the needs of the case as the vast majority of the information about ADA compliance issues bears no relation to a claim or defense in the action, except to the extent that it impacts the use of the check-in procedures by patients who are blind or who have visual impairments.

Subject to their objections, Defendants will produce Jody Reilly to testify on this topic as it relates to any communications between Defendant and any state, federal or local regulator, relating to the use of the Kiosks at Patient Service Centers by patients who are blind or who have visual impairments, which were located after a diligent and good faith search.

**TOPIC NO. 27:**

YOUR customer demographics or similar customer-related metrics that include information concerning customers with visual disabilities or other disabilities, including the number of visually impaired PERSONS who patronize YOUR PATIENT SERVICE CENTERS on a weekly, monthly and/or annual basis.

**OBJECTION TO TOPIC NO. 27:**

Defendants object to this topic on the ground that it falsely assumes that Defendants maintain demographic information about patients with visual disabilities.

Subject to their objections, Defendants state that there is no demographic information on patients with visual disabilities at Patient Service Centers that they were able to identify after a diligent and good faith search and thus no designee can

32 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0832

testify to that issue.

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 27:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

The number of times the three-finger swipe has been applied to the Kiosks at the Patient Service Centers does not provide responsive information because, among other things, anyone (regardless of visual impairment) can apply the three-finger swipe and the three-finger swipe can be applied either intentionally or inadvertently by patients, Defendants' staff, or any other individuals (e.g., the thre-finger swipe was inadvertently applied numerous times by Defendants' staff when cleaning the Kiosks during the COVID-19 pandemic). Notwithstanding the inability to correlate three-finger swipe data with the number of patients with visual impairments who visit Patient Service Centers, the number of times that the three-finger swipe has been applied on a monthly basis at Patient Service Center Kiosks is:

- August 2020: 25,724 times
- September 2020: 31,409 times
- October 2020: 29,205 times
- November 2020: 22,909 times
- December 2020: 24,040 times
- January 2021: 21,530 times
- February 2021: 17,993 times

**TOPIC NO. 28:**

All efforts YOU made between January 1, 2016, to the present, to make the E-CHECK-IN KIOSKS accessible and independently usable by visually impaired

PERSONS.

**OBJECTION TO TOPIC NO. 28:**

Subject to their objections, Defendants will produce Marc Yarrison as their designee to testify on this topic, except to the extent that Defendants will produce Taylor Carr as their designee to testify on efforts related to the implementation of the three-finger swipe process for patients with visual impairments to check in at Patient Service Centers.

**TOPIC NO. 29:**

All efforts YOU made between January 1, 2016, to the present, to give primary consideration to the requests of visually impaired PERSONS when determining to implement E-CHECK-IN KIOSKS at YOUR PATIENT SERVICE CENTERS.

**OBJECTION TO TOPIC NO. 29:**

Defendants object to this topic on the grounds that it is vague and ambiguous in its use of the phrase "primary consideration" in this context and its use of the phrase "the requests of visually impaired PERSONS" without identifying which requests or what they relate to. Defendants further object to this topic on the ground that it falsely assumes that they received "requests of visually impaired PERSONS" at the time it was determined to deploy the Kiosks.

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 29:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

Defendants restate and incorporate here all of their objections stated during the depositions of the Rule 30(b)(6) designee(s) or other witnesses, and again during the

meet and confer process referenced above, that were based on the attorney-client privilege and attorney work product doctrine as it applies to the consideration that led to the implementation of the three-finger swipe and related documentary, auditory and operational changes. Subject to these objections, and Plaintiffs' express agreement that the production of such documents will not constitute a waiver (subject matter or otherwise) of the attorney-client privilege and attorney work product protection, Defendants will produce on May 21, 2021 documents bearing Bates Nos. QUEST-VARGAS 41938-41976, which are non-privileged documents relating to the statements of third parties who provided feedback to Defendants on their preferred methodology of interacting with the Kiosks. Defendants further agree to consider in good faith any future request that Plaintiffs may make for additional deposition testimony directed at the content of such documents and any non-privileged events or statements relating to such content.

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 29:**

Subject to their objections, and pursuant to an agreement of the parties, Defendants further respond that they will offer to produce Taylor Carr for an additional 60 minutes of testimony on the topic of the unredacted portions of the non-privileged documents produced after Mr. Carr's deposition (QUEST-VARGAS 41938-41976), provided that (1) Plaintiffs waive any and all objections to Quest's prior assertions of attorney-client and work product privilege as to Quest's considerations of modifications to the e-Check-in kiosk before implementing the three-finger swipe and associated changes, (2) Plaintiffs do not inquire into the same privileged areas of questioning to which Quest previously objected, and (3) Plaintiffs waive their pursuit of further testimony under this Topic.

**TOPIC NO. 30:**

YOUR claim, in your Sixth Affirmative Defense, that Plaintiffs failed to request a reasonable modification of policies, practices or procedures and/or

35 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0835

Plaintiffs failed to request an auxiliary aid or service.

**OBJECTION TO TOPIC NO. 30:**

Defendants object to this topic on the ground that testimony cannot be provided as to the absence of an event.

Subject to their objections, Defendants will produce Jody Reilly as their designee to testify, where applicable, to the company's lack of information following a diligent and good faith search about any requests by individual Plaintiffs to request a reasonable modification of policies, practices or procedures and/or for an auxiliary aid or service.

**TOPIC NO. 31:**

All efforts YOU made between January 1, 2016, and the present to consider all resources available for use in the funding and operation of YOUR E-CHECK-IN KIOSKS when concluding that providing E-CHECK-IN-KIOSKS accessible to visually impaired PERSONS would be a fundamental alteration of the nature of YOUR self check-in service.

**OBJECTION TO TOPIC NO. 31:**

Defendants object to this topic on the grounds that it is vague and ambiguous in its use of the phrase "consider all resources available" and Kiosks "accessible to visually impaired PERSONS" in that different visually impaired PERSONS would need different means of accessing the same device. Defendants further object to this topic on the grounds that it falsely assumes that the check-in process was or is not fully accessible to persons with visual impairments, or that Defendants concluded that providing Kiosks "accessible to visually impaired PERSONS would be a fundamental alteration."

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 31:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and

36 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0836

meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

Defendants restate and incorporate here all of their objections stated during the depositions of the Rule 30(b)(6) designee(s) or other witnesses, and again during the meet and confer process referenced above, that were based on the attorney-client privilege and attorney work product doctrine as it applies to the consideration that led to the implementation of the three-finger swipe and related documentary, auditory and operational changes. Subject to these objections, and Plaintiffs' express agreement that the production of such documents will not constitute a waiver (subject matter or otherwise) of the attorney-client privilege and attorney work product protection, Defendants will produce on May 21, 2021 documents bearing Bates Nos. QUEST-VARGAS 41938-41976, which are non-privileged documents relating to the statements of third parties who provided feedback to Defendants on their preferred methodology of interacting with the Kiosks. Defendants further agree to consider in good faith any future request that Plaintiffs may make for additional deposition testimony directed at the content of such documents and any non-privileged events or statements relating to such content.

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 31:**

Subject to their objections, and pursuant to an agreement of the parties, Defendants further respond that they will offer to produce Taylor Carr for an additional 60 minutes of testimony on the topic of the unredacted portions of the non-privileged documents produced after Mr. Carr's deposition (QUEST-VARGAS 41938-41976), provided that (1) Plaintiffs waive any and all objections to Quest's prior assertions of attorney-client and work product privilege as to Quest's considerations of modifications to the e-Check-in kiosk before implementing the three-finger swipe and associated changes, (2) Plaintiffs do not inquire into the same

37 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0837

privileged areas of questioning to which Quest previously objected, and (3) Plaintiffs waive their pursuit of further testimony under this Topic.

**TOPIC NO. 32:**

All efforts YOU made between January 1, 2017, to the present to consider the resources available for use in the funding and operation of YOUR E-CHECK-IN KIOSK when concluding that providing E-CHECK-IN KIOSKS accessible to visually impaired PERSONS would result in an undue financial burden.

**OBJECTION TO TOPIC NO. 32:**

Defendants object to this topic on the grounds that it is vague and ambiguous in its use of the phrase "consider the resources available" and Kiosks "accessible to visually impaired PERSONS" in that different visually impaired PERSONS would need different means of accessing the same device. Defendants further object to this topic on the grounds that it falsely assumes that the check-in process was not fully accessible to persons with visual impairments or that Defendants concluded that providing Kiosks "accessible to visually impaired PERSONS would result in an undue financial burden."

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 32:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

Defendants restate and incorporate here all of their objections stated during the depositions of the Rule 30(b)(6) designee(s) or other witnesses, and again during the meet and confer process referenced above, that were based on the attorney-client privilege and attorney work product doctrine as it applies to the consideration that

38 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0838

led to the implementation of the three-finger swipe and related documentary, auditory and operational changes. Subject to these objections, and Plaintiffs' express agreement that the production of such documents will not constitute a waiver (subject matter or otherwise) of the attorney-client privilege and attorney work product protection, Defendants will produce on May 21, 2021 documents bearing Bates Nos. QUEST-VARGAS 41938-41976, which are non-privileged documents relating to the statements of third parties who provided feedback to Defendants on their preferred methodology of interacting with the Kiosks. Defendants further agree to consider in good faith any future request that Plaintiffs may make for additional deposition testimony directed at the content of such documents and any non-privileged events or statements relating to such content.

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 32:**

Subject to their objections, and pursuant to an agreement of the parties, Defendants further respond that they will offer to produce Taylor Carr for an additional 60 minutes of testimony on the topic of the unredacted portions of the non-privileged documents produced after Mr. Carr's deposition (QUEST-VARGAS 41938-41976), provided that (1) Plaintiffs waive any and all objections to Quest's prior assertions of attorney-client and work product privilege as to Quest's considerations of modifications to the e-Check-in kiosk before implementing the three-finger swipe and associated changes, (2) Plaintiffs do not inquire into the same privileged areas of questioning to which Quest previously objected, and (3) Plaintiffs waive their pursuit of further testimony under this Topic.

**TOPIC NO. 33:**

All efforts YOU made between January 1, 2017, to the present to consider the resources available for use in the funding and operation of YOUR E-CHECK-IN KIOSK when concluding that providing E-CHECK-IN KIOSK accessible to visually

impaired PERSONS would result in an undue administrative burden.

**OBJECTION TO TOPIC NO. 33:**

Defendants object to this topic on the ground that it is vague and ambiguous in its use of the phrase "consider the resources available" and Kiosk "accessible to visually impaired PERSONS" in that different visually impaired PERSONS would need different means of accessing the same device. Defendants further object to this topic on the ground that it falsely assumes that the check-in process was not fully accessible to persons with visual impairments, or that Defendants concluded that providing Kiosks "accessible to visually impaired PERSONS would result in an undue administrative burden."

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 33:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

Defendants restate and incorporate here all of their objections stated during the depositions of the Rule 30(b)(6) designee(s) or other witnesses, and again during the meet and confer process referenced above, that were based on the attorney-client privilege and attorney work product doctrine as it applies to the consideration that led to the implementation of the three-finger swipe and related documentary, auditory and operational changes. Subject to these objections, and Plaintiffs' express agreement that the production of such documents will not constitute a waiver (subject matter or otherwise) of the attorney-client privilege and attorney work product protection, Defendants will produce on May 21, 2021 documents bearing Bates Nos. QUEST-VARGAS 41938-41976, which are non-privileged documents relating to the statements of third parties who provided feedback to Defendants on

40 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0840

their preferred methodology of interacting with the Kiosks. Defendants further agree to consider in good faith any future request that Plaintiffs may make for additional deposition testimony directed at the content of such documents and any non-privileged events or statements relating to such content.

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 33:**

Subject to their objections, and pursuant to an agreement of the parties, Defendants further respond that they will offer to produce Taylor Carr for an additional 60 minutes of testimony on the topic of the unredacted portions of the non-privileged documents produced after Mr. Carr's deposition (QUEST-VARGAS 41938-41976), provided that (1) Plaintiffs waive any and all objections to Quest's prior assertions of attorney-client and work product privilege as to Quest's considerations of modifications to the e-Check-in kiosk before implementing the three-finger swipe and associated changes, (2) Plaintiffs do not inquire into the same privileged areas of questioning to which Quest previously objected, and (3) Plaintiffs waive their pursuit of further testimony under this Topic.

**TOPIC NO. 34:**

The number of patients YOU serviced from January 1, 2017, to the present at YOUR PATIENT SERVICE CENTERS in California.

**OBJECTION TO TOPIC NO. 34:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. Defendants further object to this topic on the ground and to the extent it is duplicative of other discovery requests propounded in this action.

Subject to their objections, and pursuant to an agreement of the parties,

41 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0841

Defendants have agreed to provide a sworn, written statement providing the number of check-ins at the Patient Services Centers in California from January 2017 through February 2021.

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 34 (August 16, 2021):**

Subject to their objections, Defendants provide the following supplemental response. The approximate number of walk-in and appointment patients for whom orders were entered and filed in each of the years 2017-2020 at Patient Service Centers in California, not including orders for specimens dropped off at Patient Service Centers in California, is as follows:

- 2017: 7,212,678
- 2018: 7,248,481
- 2019: 7,797,947
- 2020: 7,215,201

**TOPIC NO. 35:**

The number of unique patient visits that occurred from January 1, 2017, to the present at YOUR PATIENT SERVICE CENTERS in California.

**OBJECTION TO TOPIC NO. 35:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. Defendants further object to this topic on the ground that it is vague and ambiguous in its use of the phrases "unique patient visits" and "visits," each of which is subject to multiple interpretations. Defendants further object to this topic on the ground that their records systems do not permit Defendants to accurately isolate each unique patient's visits to the Patient Service Centers and thus does not permit Defendants to provide the information purportedly sought.

42 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0842

Defendants further object to this topic on the ground and to the extent it is duplicative of other discovery requests propounded in this action.

**TOPIC NO. 36:**

The number of patients YOU serviced at YOUR PATIENT SERVICE CENTERS in California from January 1, 2017, to the present who are legally blind.

**OBJECTION TO TOPIC NO. 36:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. In fact, Plaintiffs have agreed to permit Defendants to produce the responsive information in the form of a sworn, written statement. Defendants further object to this topic on the grounds that it is vague and ambiguous in its use of the phrases "legally blind" and "patients," each of which is subject to multiple interpretations. Such ambiguity is further amplified here where Plaintiffs do not use the phrase "unique" to describe the number of patients as they did in Topic No. 35. Defendants further object to this topic on the ground that their records systems do not permit Defendants to accurately isolate each unique patient's visits to the Patient Service Centers and thus does not permit Defendants to provide the information purportedly sought. Defendants further object to this topic on the ground and to the extent it is duplicative of other discovery requests propounded in this action. Defendants further object to this topic on the ground that it falsely assumes that Defendants collect or maintain records of patients who are legally blind.

Subject to their objections, and despite Plaintiffs' agreement to permit a sworn, written response in lieu of testimony, Defendants are unable to produce either a designee or a sworn written statement providing the information sought because

43 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0843

such information does not exist.

**TOPIC NO. 37:**

The number of patients YOU serviced at YOUR PATIENT SERVICE CENTERS in the United States from January 1, 2017, to the present who are legally blind.

**OBJECTION TO TOPIC NO. 37:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. In fact, Plaintiffs have agreed to permit Defendants to produce the responsive information in the form of a sworn, written statement. Defendants further object to this topic on the ground that it is vague and ambiguous in its use of the phrases "legally blind" and "patients," each of which is subject to multiple interpretations. Such ambiguity is further amplified here where Plaintiffs do not use the phrase "unique" to describe the number of patients as they did in Topic No. 35. Defendants further object to this topic on the ground that their records systems do not permit Defendants to accurately isolate each unique patient's visits to the Patient Service Centers and thus does not permit Defendants to provide the information purportedly sought. Defendants further object to this topic on the ground and to the extent it is duplicative of other discovery requests propounded in this action. Defendants further object to this topic on the ground that it falsely assumes that Defendants collect or maintain records of patients who are legally blind.

Subject to their objections, and despite Plaintiffs' agreement to permit a sworn, written response in lieu of testimony, Defendants are unable to produce either a designee or a sworn written statement providing the information sought because such information does not exist.

44 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0844

**TOPIC NO. 38:**

The number of visually impaired PERSONS who visited YOUR PATIENT SERVICE CENTERS and utilized YOUR E-CHECK-IN KIOSKS.

**OBJECTION TO TOPIC NO. 38:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. In fact, Plaintiffs have agreed to permit Defendants to produce the responsive information in the form of a sworn, written statement. Defendants further object to this topic on the ground that it is vague and ambiguous in its use of the phrase "number of visually impaired PERSONS," which is subject to multiple interpretations. Such ambiguity is further amplified here where Plaintiffs do not use the phrase "unique" to describe the number of persons as they did in Topic No. 35. Defendants further object to this topic on the ground that their records systems do not permit Defendants to accurately isolate each unique patient's visits to the Patient Service Centers and thus does not permit Defendants to provide the information purportedly sought. Defendants further object to this topic on the ground and to the extent it is duplicative of other discovery requests propounded in this action. Defendants further object to this topic on the ground that it falsely assumes that Defendants collect or maintain records of patients who are visually impaired.

Subject to their objections, and despite Plaintiffs' agreement to permit a sworn, written response in lieu of testimony, Defendants are unable to produce either a designee or a sworn written statement providing the information sought because such information does not exist.

**SUPPLEMENTAL RESPONSE TO NO. 38:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and

45 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0845

meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

The number of times the three-finger swipe has been applied to the Kiosks at the Patient Service Centers does not provide responsive information because, among other things, anyone (regardless of visual impairment) can apply the three-finger swipe and the three-finger swipe can be applied either intentionally or inadvertently by patients, Defendants' staff, or any other individuals (e.g., the thre-finger swipe was inadvertently applied numerous times by Defendants' staff when cleaning the Kiosks during the COVID-19 pandemic). Notwithstanding the inability to correlate three-finger swipe data with the number of patients with visual impairments who visit Patient Service Centers, the number of times that the three-finger swipe has been applied on a monthly basis at Patient Service Center Kiosks is:

- August 2020: 25,724 times
- September 2020: 31,409 times
- October 2020: 29,205 times
- November 2020: 22,909 times
- December 2020: 24,040 times
- January 2021: 21,530 times
- February 2021: 17,993 times

**TOPIC NO. 39:**

The number of PATIENT SERVICE CENTERS that utilize E-CHECK-IN KIOSKS with screen-reader accessibility.

**OBJECTION TO TOPIC NO. 39:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. In fact, Plaintiffs have agreed to permit

46 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0846

Defendants to produce the responsive information in the form of a sworn, written statement. Defendants further object to this topic on the grounds that it is vague and ambiguous in its use of the phrase "screen-reader accessibility."

Subject to their objections, Defendants respond that none of the Patient Service Centers has Kiosks that are equipped with screen-reading software.

**TOPIC NO. 40:**

How patient data is recorded by YOU.

**OBJECTION TO TOPIC NO. 40:**

Defendants object to this topic on the ground that it is vague and ambiguous as to what the underlying subject of testimony is because "patient data" and the means of recording "patient data" can refer to vast quantities and categories of information maintained by Defendants. Defendants further object to this topic on the grounds that it is unduly burdensome and grossly disproportionate to the needs of this action in that Defendants maintain vast amounts of patient data in multiple different categories, the vast majority of which bear no relation to a claim or defense in this action.

Subject to their objections, Defendants will produce Marc Yarrison as their designee to testify on the topic of what patient data is recorded by the Kiosks at the Patient Service Centers.

**TOPIC NO. 41:**

How YOU define blindness, legal blindness and/or visual disability.

**OBJECTION TO TOPIC NO. 41:**

Defendants object to this topic on the ground that it falsely assumes that Defendants "define" the terms referenced in this topic.

**TOPIC NO. 42:**

The information stated in YOUR 2018 SEC 10-Q filings.

**OBJECTION TO TOPIC NO. 42:**

Defendants object to this topic on the ground that it is vague and ambiguous in identifying which of the four 2018 10-Q filings is referenced, or what information in any of the filings is the subject of the testimony sought. Defendants further object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. Defendants further object to this topic on the ground that it is unduly burdensome and grossly disproportionate to the needs of this action in that it seeks testimony on a vast quantity of information on dozens, if not hundreds, of topics.

**TOPIC NO. 43:**

The information stated in YOUR 2019 SEC 10-Q filings.

**OBJECTION TO TOPIC NO. 43:**

Defendants object to this topic on the ground that it is vague and ambiguous in identifying which of the four 2018 10-Q filings is referenced, or what information in any of the filings is the subject of the testimony sought. Defendants further object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. Defendants further object to this topic on the ground that it is unduly burdensome and grossly disproportionate to the needs of this action in that it seeks testimony on a vast quantity of information on dozens, if not hundreds, of topics.

**TOPIC NO. 44:**

The number of full-time equivalent employees at each of YOUR PATIENT SERVICE CENTERS.

**OBJECTION TO TOPIC NO. 44:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. In fact, Plaintiffs have agreed to permit

48 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0848

Defendants to produce the responsive information in the form of a sworn, written statement. Defendants further object to this topic on the ground that the phrase "full-time equivalent employees" is subject to multiple interpretations. Defendants further object to this topic on the grounds that is unduly burdensome in that it seeks a tremendous amount of information about more than 2,000 Patient Service Centers, each of which is subject to daily variations in its employee count. Defendants further object to this topic on the ground that it is grossly disproportionate to the needs of this case in that it seeks vast quantities of variable information from thousands of sources that is not related to a claim or defense in the action. Among other things, the number of full-time employees at any given Patient Service Center does not provide any information about the number of employees working at that Patient Service Center at any given time. Defendants further object to this topic on the ground that it is duplicative of other discovery requests propounded by Plaintiffs in the action.

Subject to their objections, and pursuant to an agreement of the parties to provide the responsive information in the form of a sworn, written statement, Defendants respond that they will provide a sworn, written statement identifying the overall number of employees working at Patient Service Centers from 2017 through 2020.

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 44:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

The information that Plaintiffs seek through this Topic cannot be readily

49 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0849

determined from any centralized database at Quest. The available information responsive to this Topic that is centrally maintained is found in: (1) the document produced by Defendants as Bates No. 41938-42005, which reports, as of September 2019, the average number of Patient Services full-time equivalents ("FTE") that were assigned within its financial system to each Patient Service Center; and (2) a document to be produced by Defendants that provides an FTE working productivity analysis for each Patient Service Center, as of September 2019.

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 44:**

On May 28, 2021, Defendants produced BATES NO. QUEST-VARGAS 000042006, which is the FTE working productivity analysis for each Patient Service Center, as of September 2019, referenced above.

**SECOND FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 44 (August 16, 2021):**

Subject to their objections, and pursuant to an agreement of the parties, Defendants respond that they have previously produced a document (QUEST-VARGAS 42007) that identifies the number of Patient Service employees in the United States who were employed by defendant Quest Diagnostics Incorporated and/or its wholly-owned subsidiaries in 2019 and who held the job titles reflected in the spreadsheet, as well as the work location to which they were coded at that time. Employees who held more than one job title in a given reporting period are listed separately for each job title held.

Although Plaintiffs have not requested information regarding independent contractors working at Patient Service Centers, Defendants are also producing, contemporaneously with these Objections, a document (QUEST-VARGAS 42029) that identifies the number of independent contractors who were assigned in the years 2017-2020 to positions that typically would work at Patient Service Centers and the work location to which they were coded at that time. Independent contractors who

50 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0850

were assigned to work during multiple time periods are counted separately for each time period worked. Defendants are also producing a spreadsheet (QUEST-VARGAS 42028) that identifies the job templates and descriptions for these independent contractors.

**TOPIC NO. 45:**

The number of monthly patient encounters at YOUR PATIENT SERVICE CENTERS in California during each year from 2017 through 2020.

**OBJECTION TO TOPIC NO. 45:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. In fact, Plaintiffs have agreed to permit Defendants to produce the responsive information in the form of a sworn, written statement. Defendants further object to this topic on the ground that the phrase "patient encounters" is subject to multiple interpretations. Defendants further object to this topic on the grounds that is unduly burdensome and grossly disproportionate to the needs of this case in that it seeks vast quantities of information, on a monthly basis, that are not related to a claim or defense in the action. Defendants further object to this topic on the ground that it is duplicative of other discovery requests propounded by Plaintiffs in the action.

Subject to their objections, and pursuant to an agreement of the parties, Defendants respond that they will provide a sworn, written statement identifying the number of check-ins at the Patient Service Centers in California from 2017 through 2020.

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 45:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and meet and confer discussions (including without limitation those on April 27, 2021

and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

The approximate number of check-ins recorded at the Patient Service Centers in California in each of the following years were:

- 2017: 4,366,111
- 2018: 7,515,365
- 2019: 8,584,783
- 2020: 8,027,696

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 45 (August 16, 2021):**

Subject to their objections, Defendants provide the following supplemental response. The approximate number of walk-in and appointment patients for whom orders were entered and filed in each of the years 2017-2020 at Patient Service Centers in California, not including orders for specimens dropped off at Patient Service Centers in California, is as follows:

•2017: 7,212,678
•2018: 7,248,481
•2019: 7,797,947
•2020: 7,215,201

**TOPIC NO. 46:**

The number of monthly patient encounters at YOUR PATIENT SERVICE CENTERS in the United States during each year from 2017 through 2020.

**OBJECTION TO TOPIC NO. 46:**

Defendants object to this topic on the ground that it is an inappropriate subject for deposition testimony and other, far more appropriate methods exist for securing the information sought by this topic. In fact, Plaintiffs have agreed to permit Defendants to produce the responsive information in the form of a sworn, written

52 Case No. 2:19-cv-08108 DMG (MRWx)
DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE
48145216_1.docx
PA0852

statement. Defendants further object to this topic on the ground that the phrase "patient encounters" is subject to multiple interpretations. Defendants further object to this topic on the grounds that is unduly burdensome and grossly disproportionate to the needs of this case in that it seeks vast quantities of information, on a monthly basis, that are not related to a claim or defense in the action. Defendants further object to this topic on the ground that it is duplicative of other discovery requests propounded by Plaintiffs in the action.

Subject to their objections, and pursuant to an agreement of the parties, Defendants respond that they will provide a sworn, written statement identifying the number of check-ins at the Patient Service Centers in the United States from 2017 through 2020.

**SUPPLEMENTAL RESPONSE TO TOPIC NO. 46:**

Subject to their above objections and those presented in their various meet and confer emails and letters (including without limitation the May 5, 2021 letter) and meet and confer discussions (including without limitation those on April 27, 2021 and May 12, 2021) and pursuant to an agreement of the parties, Defendants provide the following supplemental response:

The approximate number of check-ins recorded at the Patient Service Centers in the United States in each of the following years were:

- 2017: 15,924,343
- 2018: 32,696,929
- 2019: 38,046,872
- 2020: 35,404,092

**FURTHER SUPPLEMENTAL RESPONSE TO TOPIC NO. 46 (August 16, 2021):**

Subject to their objections, Defendants provide the following supplemental response. The approximate number of walk-in and appointment patients for whom

orders were entered and filed in each of the years 2017-2020 at Patient Service Centers in the United States, not including orders for specimens dropped off at Patient Service Centers in the United States, is as follows:

- 2017: 32,274,118
- 2018: 32,200,027
- 2019: 34,610,742
- 2020: 32,007,219

DATED: August 16, 2021

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ David Raizman
David Raizman
Amber L. Roller
J. Nicholas Marfori

Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.; QUEST DIAGNOSTICS HOLDINGS, INC. and QUEST DIAGNOSTICS INCORPORATED

54 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0854

# VERIFICATION

I have read the foregoing **DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE** and know its contents.

☐ I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters that are stated on information and belief, and to those matters I believe them to be true.

☒ I am ☐ an officer ☐ a partner ☒ Director, National Patient Services, Technology, and Support for Quest Diagnostics Incorporated ("Quest"), a defendant to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

☒ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

☐ The matters stated in the foregoing document are true of my own knowledge except as to those matters that are stated on information and belief, and as to those matters I believe them to be true.

☐ I am one of the attorneys for ____________________ a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on August __, 2021, at ____________, ____________.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

____________________________________ ____________________________________

Type or Print Name Signature

1 Case No. 2:19-cv-08108 DMG (MRWx)

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

48145216_1.docx

PA0855

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California; I am over the age of 18 years and not a party to this action. My business address is 400 South Hope Street, Suite 1200, Los Angeles, California 90071.

On August 16, 2021, I served the following document(s) described as:

DEFENDANT QUEST DIAGNOSTICS, INCORPORATED'S OBJECTIONS AND SECOND FURTHER SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF JULIAN VARGAS'S AMENDED RULE 30(b)(6) DEPOSITION NOTICE

on the persons below as follows:

| | |
|---|---|
| Jonathan D. Miller, Esq.<br>Alison M. Bernal, Esq.<br>Jordan T. Porter, Esq.<br>NYE, STIRLING, HALE & MILLER, LLP<br>33 West Mission Street, Suite 201<br>Santa Barbara, CA 93101<br>Telephone: (805) 963-2345<br>Facsimile: (805) 284-9590<br>Email: jonathan@nshmlaw.com<br>alison@nshmlaw.com<br>jordan@nshmlaw.com<br>lindsey@nshmlaw.com<br>meg@nshmlaw.com | Attorneys for Plaintiffs Julian Vargas, Anne West, American Council of the Blind, and the Proposed Class |
| Matthew K. Handley, Esq.<br>HANDLEY FARAH & ANDERSON PLLC<br>200 Massachusetts Avenue, NW – 7th Fl.<br>Washington, DC 20001<br>Telephone: (202) 559-2411<br>Facsimile: (844) 300-1952<br>Email: mhandley@hfajustice.com | Attorneys for Plaintiffs Julian Vargas, Anne West, American Council of the Blind, and the Proposed Class |
| Benjamin J. Sweet, Esq.<br>Nye Stirling Hale & Miller, LLP<br>1145 Bower Hill Road, Suite 104<br>Pittsburgh, PA 15243<br>Telephone: (412) 857-5350<br>Email: ben@nshmlaw.com | Attorneys for Plaintiffs Julian Vargas, Anne West, American Council of the Blind, and the Proposed Class |

I enclosed the documents in sealed envelopes or package addressed to the persons at the addresses as indicated above and placed the envelope or package for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope or package with postage fully prepaid.

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on August 16, 2021, at Los Angeles, California.

Marilyn Moretti

Type or Print Name                                        Signature

48145216.1

# EXHIBIT 31

Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590

Benjamin J. Sweet
(Admitted *Pro Hac Vice*)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

*Attorneys for Plaintiffs Julian Vargas, American Council of the Blind, and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

JULIAN VARGAS, ANNE WEST, and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,

Defendants.

CASE NO.: 2:19-cv-8108

**DECLARATION OF MARK DERRY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Complaint Filed: September 18, 2019
Pretrial Conf: December 7, 2021
Trial Date: January 11, 2022
District Judge: Hon. Dolly M. Gee
Magistrate: Hon. Michael M. Wilner

**DECLARATION OF MARK DERRY**

I, Mark Derry, hereby declare:

1. I am an Americans with Disabilities Act ("ADA") investigator and President of Eastlake, Derry & Associates, LLC, ADA Accessibility Solutions. I have extensive experience in accessibility, universal design, and ADA consulting and training. The following facts are within my personal knowledge and, if called as a

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

witness, I could and would competently testify to these facts. I make this declaration in support of Plaintiff's Motion for Class Certification.

2. Attached hereto as **Exhibit A** is a true and correct copy of my curriculum vitae which outlines my experience in investigating and opining on the accessibility of public accommodations.

3. Plaintiffs' counsel retained me to investigate whether Defendant Quest's eCheck-in kiosks at certain Patient Service Center ("PSC") locations were accessible to blind individuals.

4. Following my retention, I investigated 24 Quest PSC locations between June 12, 2021, and August 18, 2021.

5. I personally visited each of the 24 Quest PSC locations detailed in my report.

6. While at each PSC, I assessed the accessibility of the eCheck-in kiosk. I also took photographs at each location.

7. I put the results of my investigation into a report, dated August 23, 2021. This report is based on my personal observations during my investigation and my experience in the field of ADA accessibility. A true and correct copy of my report is attached as **Exhibit B.**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 4th day of September, 2021, in Morgantown, West Virginia.

DocuSigned by:
Mark Derry
447E5418B42F4FB...

Mark Derry, Declarant

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

# EXHIBIT A

PA0860

**Mark E. Derry**
**(304)685-3510**

**737 Powell Ave.**
**Morgantown, WV 26505**

# Curriculum Vitae

**PROFILE:**

< Extensive architectural and communication accessibility design and barrier removal experience
< Expert in laws relevant to civil rights as well as building codes and standards for accessibility
< Nationally-known Trainer, with the ability to effectively develop and deliver positive learning outcomes
< Strong commitment to the Americans with Disabilities Act (ADA), and Independent Living Philosophy

**EXPERIENCE OUTLINE:**

**Eastlake, Derry & Associates, LLC**
737 Powell Avenue, Morgantown, WV 26505
***President,*** 6/99 to present

**Mr. Derry currently provides accessibility & ADA consulting and training services, including accessibility surveys and survey training for State and Local Governments, Public Accommodations, Fair Housing entities, Corporations, and Advocates. He has provided accessibility surveys as well as plan review services for various architectural firms, and surveyed almost every type of facility since 1999, with his specialties having included Universities, Medical Care Facilities, and Public Accommodations with multiple locations.** In 2001, Mark assessed the Johns Hopkins University Campus, in Baltimore, MD, with more than 60 buildings at 2.6 million square feet over 128 campus acres. In 2004, he completed an accessibility survey of Loyola College of Maryland, and in 2018 Morgan State University in Baltimore, and has provided access survey consulting with Lock Haven University and Kutztown University in PA. From 2002 thru 2005, Mark provided site surveys and settlement consultations for Access Now v. Triad Hospitals, Inc with over 50 hospital campus facilities in the mid- and southwest, and the following year provided consulting for case settlement with the Department of Justice regarding multiple locations of Valley Radiology imaging centers. From 2007-2015 Mr. Derry worked with Community Health Systems Professional Services Corporation on an accessibility survey and remediation program for over 260 medical care facilities throughout the U.S., as well as due diligence surveys of prospective facility acquisitions, and new construction plan review. Other satisfied proactive accessibility program development clients have included RadioShack Corporation, Zamias Property Management Services, the American Psychological Association, City of Bowie, MD, the WV Attorney General's Office, Wood County Airport, among many others.

**Mr. Derry Provides presentations on the ADA Titles II & III, the ADA Accessibility Standards and updates, Fair Housing / 504 accessibility, and Accessibility Survey Training.** Since 2015, Mr. Derry has developed and presented a new training project with the National Council on Independent Living (NCIL), called the ADA Accessibility Survey Academy Project (ADA ASAP) to provide accessibility survey training nationally for staff at Centers for Independent Living. Other past training customers include the ADA National Network, the U.S. Department of Defense, Tennessee DOT, New Mexico DOT, Cornell University, The Kennedy Center for the Performing Arts, AIA West Virginia, AIA Oklahoma, Oklahoma State University, Arkansas State University, the National Center on Accessibility, Penn State University, Department of Defense, Triad Hospitals, and many (over 100) Centers for Independent Living nationally.

**Mr. Derry is a past Vice President of NCIL. He has represented NCIL on the Public Rights of Way Access Advisory Committee for the U.S. Access Board, and more recently on the Medical & Diagnostic Equipment Advisory Committee. He served as a member of the NCIL Board of Directors from 2000 thru 2016. As Co-Chair of the NCIL ADA/Civil Rights Subcommittee, he provided written and oral testimony regarding rulemaking on accessibility standards, and several settlement/consent agreements to the U.S. Department of Justice, the U.S. Access Board and in the Congressional Record. Mark is a past Chair of the West Virginia Statewide Independent Living Council (SILC), Past Chair of the West Virginia ADA Coalition, and 2015 Inductee to the WV Independent Living Hall of Fame.**

**National ADA Network**
**ADA Center for the Mid-Atlantic Region (Federal Region 3)**
451 Hungerford Drive, Rockville, MD 20850-4151
***Technical Assistance Specialist,*** 8/97 to 10/99 (1999 to 2010 contract **Trainer**)

Provided technical assistance to callers on the national ADA Hotline, and helped develop a tracking system for handling calls. Developed new curriculum directed at architects and building officials and wrote articles for Center Newsletter "ADA in Focus", and articles for training ads and CIL newsletters.

Continued as a contract Trainer, providing presentations on behalf of the ADA Center within Region III, including a multi-level ADA Standards training utilizing survey techniques to teach the principles of accessibility and Universal Design.

**Action Toward Independence, Inc.**
2927 Route 6, Slate Hill, NY 10973
***Program Manager / Architectural Barrier Consultant / ADA Coordinator,*** 3/94 to 7/97

Responsible for initial setup of full-time Satellite Office, and for the management of Center operations, training and supervision of five full time staff and three volunteers. Developed architectural consulting services including: commercial site surveys, home evaluations to determine consumers' needs, project planning, and contract administration. Set up and organized a Resource Library for ADA and Assistive Technology at the Center. Developed and hosted monthly NPR radio call-in talk show called "Making Waves" to promote awareness and provide information on ADA and other issues effecting people with disabilities.

**Ma-Mar Construction, Inc.,** Sparrowbush, NY
***Owner,*** 1983 to 1993

Owned and operated construction business specializing in residential home improvements and remodeling. Designed and built custom kitchens, bathrooms, and other projects utilizing up to three construction crews while managing marketing, sales, and bookkeeping operations.

**Wright-Way, Inc.,** Garland, TX
***Accessible Van Designer/Builder,*** 1981-1983

Specialized in the design and construction of accessible van conversions. Installed wheelchair lifts, power doors, power seat systems, hand controls, raised roofs, and complete interiors to enable people with disabilities to drive.

**MILITARY SERVICE:** *United States Air Force,* Honorably Discharged

**EDUCATION and TRAINING:**

U.S. Air Force, Denver, CO, **Technical Procurement,** *1976*
U.S. Air Force, Whiteman AFB, MO, **Contract Administration** *1977*
Bergen Community College, Paramus, NJ **Construction Estimating** *1986*
Action Toward Independence, Slate Hill, NY **ADA/ADAAG Training** (DREDF) *1994*
NCIL ADA-ILC National Training Project, **Advanced ADA Training** (M.Golden) *1996*
ADA-Ohio Training Project, **EEOC/ADA Title I Advanced Training** (R.Jones) *1997*
Department of Justice, **ADA Title II & III Advanced Training** *1998*
NCIL/DOJ/DOT**, ADA & Transportation Training** *1998*
BOCA International**, Accessibility Codes Training** *1998*
Access Board (USATBCB), **Accessibility Guidelines Advanced Training** *1999*
National Center on Accessibility (NCA), **Recreation Guidelines Training** *2000*

**DETAILED EXPERIENCE:**
(Since founding Eastlake, Derry & Associates in 1999)

**2018**
Tabit v. Kroger Stores – ADA Survey (limited) and Deposition for injury case
Advanced Survey Level 3 Training – Wisconsin
American Psychological Association (APA) Convention Sites – Chicago, IL
Carlson Lynch Sweet Kilpela & Carpenter, LLP Pittsburgh – ADA Public Rights of Way Survey Training
Moe's Mini Warehousing, Parkersburg, WV – ADA Survey and Report
Toyota Motor Company, Buffalo, WV Plant – ADA Survey and Report
2018 National ADA Symposium, Pittsburgh, PA – Attendee
Buchanan Ingersoll Rooney, PC - ALDI Stores ADA Surveys and Reports
Maryland Commission on Civil Rights, Baltimore, MD – Access to ADA Surveys Level 1

**2017**
University of Arkansas – ADA Survey Training Level 1 & 2
Morgan State University (MSU) Campus Survey – 50 Campus Building & Associated Walkways
NCIL ASAP Training – Camp Hill, PA
American Psychological Association (APA) Convention Sites – San Francisco
NCIL ASAP Training – LaCrosse, Wisconsin
University of Arkansas – ADA Survey Training Level 1 & 2
WVnet Offices, Morgantown, WV – ADA Survey and Report

**2016**
United Refining Company (374 Kwik Fill Gas Stations and Conv. Stores surveyed for settlement)
Clear Mountain Banks (10 Branches surveyed)
American Psychological Association (APA) Convention Sites – Washington, DC
NCIL ASAP Training – Nitro, West Virginia
Pennsylvania Parks and Forests Survey Training
ACIL, Charleston, WV – Advanced Level 3 ADA Survey Training
Stage AE, Pittsburgh, PA – ADA Consultation and Report for settlement
NCIL ASAP Training – ILRCSF San Francisco
Independence First, Milwaukee, WI (1-on-1 Survey Training with interpreter)
Monmouth County, NJ – (Subcon of UD&C) ADA Accessibility Training

**2015**
CHS Hospitals (Final 4)
Fairfax County, VA: Survey Training(s) for USDOJ settlement remediation surveys
American Psychological Association (APA) Convention Sites – Washington, DC
Pittsburgh Penguins Lemieux Sports Complex – New construction ADA Plan Review
ADA Anniversary Celebration at the White House and Kennedy Center for the Performing Arts
ADA Legacy Bus Tour (May 4-8)
West Virginia Disability Caucus
IRWW Final Session at Penn State
NCIL ASAP Survey Training Project Beta Tested – Eastern Shore CIL

**2014**

CHS Hospitals (Multiple Campus)
Carlson Lynch Sweet Kilpela & Carpenter, LLP - Investigator Survey Training
Red Cross – developed NCIL/Red Cross MOU for accessibility surveys at emergency shelters
American Psychological Association (APA) Convention Sites – Toronto
Lehigh Valley, PA CIL Survey Trainings (Level 1 & Level 2)
MD Human Rights Commission – Access to ADA Survey Training Level 1
PA Recreation and Park Society - ADA Accessibility Training
Inclusive Recreation for Wounded Warriors (IRWW) – Penn State/DOD project (typically 4 times per year)

**2013**

CHS Hospitals (Typically one campus per month)
American Psychological Association (APA) Convention Sites – Honolulu, HI
Freedom Valley CIL – ADA Standards Training
Amtrak Survey Training (Subcon of UD&C) – Philadelphia, PA
Produced Minority Report for MDEAAC at U.S. Access Board
Fairfax County, VA – Access to ADA Level 2 Survey Training
Mountain State CIL, Huntington, WV – Access to ADA Level 1Survey Training
Anthracite Region CIL, PA Training – ADA Accessibility Standards Training
CLINCH CIL VA Training – ADA Accessibility Standards
Hampton Inn Charleston, WV – ADA Facility Survey & Report
Progressive Independence, Norman, OK – Access to ADA Surveys Training Level 2
Inclusive Recreation for Wounded Warriors (IRWW) – Penn State/DOD project (typically 4 times per year)

**2012**

CHS Hospitals (Typically one campus per month)
Johns Hopkins Medical Research Campus (Subcon of UD&C) Survey of Wolfe Building
Mainstream Inc., Littlerock, AR - Access to ADA Surveys Level 1 & 2
Fairfax County, VA Level 1 Survey Training
American Psychological Association (APA) Convention Sites – Washington, DC
City of Morgantown, WV – ADA Title II Survey Training Level 1
Progressive Independence, Norman, OK – Access to ADA Surveys Level 1
Virginia Statewide IL Conference – Keynote Speaker
Inclusive Recreation for Wounded Warriors (IRWW) – Penn State/DOD project (typically 4 times per year)

**2011**

CHS Hospitals (Typically one campus per month)
City of Tulsa, OK – AIA and Code Officials – Accessibility Surveys Level 1
Amtrak Stations – Phoenix, Tucson, and Flagstaff – ADA Surveys and Reports (Subcon of UD&C)
American Psychological Association (APA) Convention Sites – Orlando, FL
Amtrak 30th Street Station, Philadelphia, PA – Facility Survey (Subcon of UD&C)
Mainstream Inc., Littlerock, AR - Access to ADA Surveys Level 1 & 2
Kansas Association of CILs – Keynote Address
Amtrak Union Station, Chicago, IL - ADA Survey (Subcon of UD&C)
CHS Hospitals – Matsu Valley Regional Hospital, Palmer, AK
Johns Hopkins Medical Research Campus – (Subcon of UD&C) Multiple Buildings Surveys
Amtrak ASAS Training II – Jacobs Engineering Survey Training (Subcon of UD&C)
Inclusive Recreation for Wounded Warriors (IRWW) – Penn State/DOD project (typically 4 times per year)

**2010**
CHS Hospitals (Typically one campus per month)
UPMC Hospital Plan Reviews (final 10/10 Subcon of ADA Inc.)
Dollar Bank Plan Reviews (multiple as Subcon of ADA Inc.)
Amtrak ASAS Training I – Jacobs Engineering Survey Training (Subcon of UD&C)
Sterling Jewelers Store Surveys - 21 Stores (Subcon of UD&C)
Mid-Atlantic ADA Center - Access to ADAAG Level 2 Training – York, PA
American Psychological Association (APA) Convention Sites

**2009**
CHS Hospitals (Typically one campus per month)
Mainstream Inc., Littlerock, AR - Access to ADA Surveys Level 1 & 2
Inclusive Recreation for Wounded Warriors (IRWW) – Penn State/DOD project (typically 4 times per year)
Lehigh Valley, PA CIL – Music-fest Survey Training
Life and Independence for Today (LIFT) CIL - Access to ADAAG Survey Training Level 2
Days Inn Arlington, VA – Survey and Report for settlement
Blue Ridge CIL, VA – Access to ADAAG Level 1
American Psychological Association (APA) Convention Sites – Washington, DC
Mid-Atlantic ADA Center - Access to ADAAG Level 1 - Newark, DE
UPMC Hospital Plan Reviews (Subcon of ADA Inc.)
Quik Trip Corp Tech. Assistance – 1-year consulting project re: U.S. DOJ settlement remediation (500 stores)

**2008**
CHS Hospitals (Typically one campus per month)
Inclusive Recreation for Wounded Warriors (IRWW) – Penn State/DOD project (typically 4 times per year)
SWDBTAC Webcast: Accessibility in Medical Care Facilities
Kansas Association of CILs – Keynote Speaker
Liberty Resources, Philadelphia, PA – Access to ADAAG Level 1 & 2
UPMC Hospital Plan Reviews (Subcon of ADA Inc.)
American Psychological Association (APA) Convention Sites – Toronto
Quik Trip Corp Tulsa, OK – Corporate Training – ADA Surveying at Quik Trip Stores
Pipestem and Canaan Valley Resorts, WV – Title II Park Surveys and Reports
Burger King (200 California Stores) Surveys and Reports (Subcon of UD&C)
American Psychological Association (APA) Convention Sites
Loch Haven University, PA – Site Walkthroughs and Reports / limited surveys
Altoona, PA CIL – Access to ADAAG Level 1 Training
DE Department of Transportation – Accessible Public Rights of Way Survey Presentation
Access to ADA Surveys Level 3 Training – ED&A Offices, Morgantown, WV
ADA Amendments Act Negotiation Meetings representing NCIL (several leading up to the 2008 passage)

**2007**
CHS Hospitals – Initial meetings to begin ADA Program
Mid-Atlantic ADA Center - Access to ADAAG Level 2 Alexandria, VA
Inclusive Recreation for Wounded Warriors (IRWW) – Penn State/DOD project initial trial training
Ability Resources, Tulsa, OK – Access to ADAAG Level 1
CVS Stores (15) Sandusky and Cleveland, OH – (Subcon of UD&C) Surveys and Reports for settlement
CIL of Central PA – Access to ADAAG Level 1 Training
Federated Stores (Macy's) in MD, VA, and DC – (Subcon of UD&C) Surveys & Reports for settlement
American Psychological Association (APA) Convention Sites
Bohler Engineering, MD – Accessible Public Rights of Way Training
West Virginia Fire Marshall's Office – Access to ADA Surveys Training
Glenarden, MD Title II Consultations re: City Hall
Freedom Center CIL, Frederick, MD – Access to ADAAG Level 2 Training
Williamsport, PA CIL – Access to ADAAG Level 2 Training
Asian American Hotel Owners Association – ADA Consulting re existing properties
AIA West Virginia – Access to ADAAG Update Session / Panel
Barter Theatre, Abingdon, VA – ADA Survey, Consultation and Deposition for ADA case
Kutztown University, PA – ADA Survey and consultation for facility remediation / settlement
Radio Shack Corporate Offices, Fort Worth Texas – ADA Consultation and Design

**2006**
Gould Turner Group - Plan Review – Oro Valley Hospital, Nevada
Life and Independence for Today (LIFT) CIL  - Access to ADAAG Survey Training Level 1
Tri-County Patriots for Independent Living – Access to ADAAG Level 2
City of Charlotte, NC – Title II ADA Accessibility Training
Kanawha County Libraries, West Virginia – Survey and Report for U.S.DOJ settlement
VA IL State Conference – Keynote Speaker
Jonesboro, AR – Access to ADA Title II Accessibility Surveys Level 1
Mainstream Inc., Little Rock, AR - Access to ADA Surveys Level 2
NEPACIL, Scranton, PA – Retreat Keynote Speaker
American Psychological Association (APA) Convention Sites
Lifepoint Hospitals, Logan, WV – ADA Consultation and report
Harbor's Edge Assisted Living Center, Norfolk, VA – Accessibility Survey and Report
Great Lakes Region ADA Center Webinar: Signage for Permanent Rooms and Spaces
Radio Shack Washington, DC Stores – ADA Surveys for settlement
CIL of North Central PA – Access to ADAAG Level 1 Survey Training
GAP Store, Laurel Park Mall, IL – ADA Survey and Report for remediation of barriers
Freedom CIL, Frederick, MD – Access to ADAAG Level 1
Mid-Atlantic ADA Center - Access to ADAAG Level 1 – Morgantown, WV
Radio Shack Corporate, Fort Worth, TX – Tech Assist., consultation re counters & displays
American Health Lawyers Association (AHLA) – Luncheon Presentation
AHLA Webinar: Update on ADA and Healthcare Facilities (co-presented with Minh Vu and John Wodatch)
Triad Hospitals – Final Settlement Meetings
Radio Shack Corporate, Fort Worth, TX – Store Model Reviews for Merchandising Floorplans
Radio Shack Corporate, Fort Worth, TX – ADA Program video and handouts review and comments
Radiologix, Inc. – Survey and Reports for four imaging facilities in San Jose, CA for settlement
Triad Hospitals – Stipulation Review and comments for settlement
West Virginia Code Officials Association – ADA Update Training

**2005**

Triad Hospitals (Typically one or two campus per month)
Radio Shack - ADA Plan Reviews – Model Store Floorplans
Tennessee DOT – Access to ADAAG Survey Training Level 1 & 2
Advanced Radiology, Baltimore, MD – ADA Surveys and reports for settlement
APRIL Conference, Honolulu, HI - Attendee
Radio Shack – Tech Assist. on Nextel and Verizon Displays
City of Morgantown – ADA Title II Training
American Psychological Association (APA) Convention Sites
Access to ADAAG Level 1 & 2 – ED&A Offices, Morgantown, WV
15th Annual ADA Celebration, Charleston, WV – Keynote Speaker
Triad Hospitals – Testimony at Fairness Hearing for Settlement
WVU Hospitals – ADA Facilities Seminar
AIA West Virginia – Access to ADAAG Update Session / Panel
Mainstream Inc., Little Rock, AR - Access to ADA Surveys Level 1 & 2

**2004**

Triad Hospitals (Typically one or two campus per month)
Safeway Grocery Stores (300 stores in CA, MD, VA, PA, and NJ (Subcon of UD&C) ADA Surveys
Walmart Wyomissing, PA Store - ADA Survey for settlement
Ingersoll-Rand Corporation – ADA Consulting re: proposed Disability Awareness Campaign
Mid-Atlantic ADA Center - Access to ADAAG Level 1 - Bowie, MD
Kennedy Center for the Performing Arts LEAD Conference – ADA Surveys Basics
City of Jonesboro, AR – Access to ADAAG Title II Survey Training
American Psychological Association (APA) Convention Sites
Loyola University of Maryland – ADA Campus Survey (20 buildings) and Report / Tech Asst.
Gould Turner Group, Nashville, TN – ADA Plan Review – hospitals
Mid-Atlantic ADA Center - Access to ADAAG Level 2 - Bowie, MD

**2003**

Triad Hospitals (Typically one or two campus per month)
"Good Access is Good Business" – T24 CALDAG Training, Sacramento, CA
University of Arkansas – ADA Title II Training
City of Wheeling, WV – ADA Title II Training
AIA West Virginia – Access to ADAAG Update Session / Panel
Gould Turner Group, Nashville, TN – ADA Plan Review – hospitals
Fairmont State College, Fairmont, WV – ADA Surveys (limited) and consultation on remediation
National Council on Independent Living (NCIL) ADA Survey Training – Oklahoma City, OK
ADA Anniversary Gala, Washington, DC – Guest
Lifepoint Hospitals, Logan, WV – ADA Due-diligence Walkthrough
WV ADA Coalition – Access to ADAAG Level 1 – Flatwoods, WV
Mid-Atlantic ADA Center - Access to ADAAG Basic - Bowie, MD
National Center on Accessibility (NCA) – Staff Training – ADA Accessibility Surveys
Montgomery County, NJ – (Subcon of UD&C) ADA Title II Accessibility Training
American Psychological Association (APA) Convention Sites
CJ Maggie's Restaurants – ADA Survey and Report - Morgantown, WV Store
ADA Compliance Services Company, Park Ridge, NJ – Staff Accessibility Survey Training
Triad Hospitals – ADA Settlement Negotiations Meetings, Miami, FL

**2002**
Triad Hospitals (Typically one or two campus per month)
Jacksonville CIL, Jacksonville, FL – Access to ADAAG Survey Training
Williamsport, PA CIL – Access to ADAAG Level 1 Training
York CIL, York, PA – Access to ADAAG and ANSI Training
Life and Independence for Today (LIFT) CIL - Access to ADAAG and ANSI Training
Mainstream Inc., Little Rock, AR - Access to ADA Surveys
Mid-Atlantic ADA Center - Access to ADAAG Level 2 - Bowie, MD
WV Bed & Breakfast Owners Association – ADA Presentation, Lakeview C.C.
The Westin Diplomat Resort Hotel, Hollywood, FL – ADA Site Survey
Justin Dart Memorial / ADA Gala – Guest
American Psychological Association (APA) Convention Sites
Tampa CIL, Tampa FL – Access to ADAAG Survey Training
Ability Resources, Tulsa, OK – Access to ADAAG Survey Training
Penn State University and the PA ADA Coalition – Access to ADAAG Survey Training
Bastian & Harris, AIA Charleston, WV – ADA Consultation and Plan Review re: Marshall University

**2001**
Mid-Atlantic ADA Center - Access to ADAAG Level 1 - Bowie, MD
Triad Hospitals – Initial ADA Remediation Project Presentation – Dallas, TX
Lehigh Valley CIL – Mid-Atlantic ADA Center Resource Library Training
WV Commission on the Arts, Accessibility Advisory Committee – ADA Access Presentation
PA ADA Coalition Retreat – ADA Surveys for Advocacy
Manassis CIL, VA – Access to ADAAG Level 1 Training
Lehigh Valley CIL, PA - Access to ADAAG Level 1 Training
Bovis Lend/Lease Corp., Nashville, TN – Access to ADA Basic Training
American Psychological Association (APA) Convention Sites
Johns Hopkins University, Homewood Campus – ADA Survey and Report – 56 Buildings/128 acres
U.S. Access Board PROWAAC Meeting, Atlanta, GA – Member representing NCIL
Triad Hospitals – River Region Medical Center – 1st ADA Survey and Report of 50-hospital case
Mainstream Inc., Little Rock, AR - Access to ADA Surveys
Mid-Atlantic ADA Center - Access to ADAAG Level 1 – Charleston, WV
Kansas Association of CILs – Access to ADAAG Survey Training Level 1
Kansas City CIL - Access to ADAAG Survey Training Level 1
CJ Maggie's Restaurants, Buchannon and Elkins, WV – ADA Surveys and Reports
Hawaii ADA Coalition, Honolulu, Hawaii – Access to ADAAG Survey Training Level 1
Westin Diplomat Resort Hotel, Hollywood, FL – New Construction Project 2nd Plan Reviews
AIA West Virginia – Access to ADAAG Update Session / Panel

**2000**
Westin Diplomat Resort Hotel, Hollywood, FL – New Construction Project 1st Plan Reviews
Stewart v. Kanawha County Mediation – ADA consultation regarding curb ramp remediation
Naval Surface Warfare Center, MD – Accessibility Training – Accessible Facilities for Employees
Herald Dispatch Newspaper, Huntington, WV – ADA Consultation and design for Main Entrance
U.S. Access Board PROWAAC Meeting DC – Member representing NCIL
New Mexico State Department of Highways and Transportation – ADA Survey Program Trainings (2)
Federated Department Stores, Atlanta, GA – (Subcon of UD&C) ADA Surveys of 18 Stores
WV Supreme Court – ADA Title II Facilities Training

**<u>2000 (continued)</u>**

U.S. Access Board PROWAAC Meeting San Francisco – Member representing NCIL
City of Bowie, MD – ADA Consultations for DOJ Project Civic Access Settlement
Wood County Airport, Wood County, WV – ADA Survey and Report
Mainstream Inc., Little Rock, AR - Access to ADA Surveys
U.S. Access Board PROWAAC Meeting DC – Member representing NCIL
WV Interior Designers Conference – ADA Accessibility Presentation
Hertz Rental Car Corporate Office, Park Ridge, NJ – "Good Access is Good Business" presentation
DMW Landscape Architects, Towson, MD – ADA Access in the Public Rights-of-Way
PCCD Conference, Harrisburg, PA – Keynote Speaker/Facilitator
Bristol CIL, Bristol, VA – Access to ADAAG Basic Training
American Psychological Association (APA) Convention Sites
SWDBTAC – Access to ADAAG Survey Training, Biloxi, MS
Burns & McDonnell, AIA, Kansas City, KS – ADA Accessibility Surveys for Hertz Rental Car Properties
NCIL National Teleconference – "Providing ADA Surveys at Your Centers"

**<u>1999</u>**

Zamias Properties – ADA Surveys of 15 Shopping Malls
All Federal Region 3 CILs - Mid-Atlantic ADA Center Resource Library Training onsite
American Psychological Association (APA) – ADA Surveys (limited) of Convention Sites

# EXHIBIT B

PA0870



737 Powell Avenue, Morgantown, WV 26505

■ 304-685-3510

www.adaderry.net ■ adamarkd@gmail.com

**August 23,2021**

**Outline of Issues for Mark Derry to Investigate:**

1) When you walk into Quest, does the location have a bell or device to announce your presence? **No, very few locations had an entrance bell or device to announce your presence.**

2) When you walk into Quest, is there a patient service representative available in the waiting room to assist patients with check in? **No. There may sometimes be a window, but the window was never staffed. You have to catch a staff member when they pop their head out the treatment area door to call the next person in the cue, as they rarely ask if anyone needs assistance.**

3) When you walk into Quest, how are individuals directed to the e-Check In Kiosk?

Is there signage? **Yes. Usually printed, sometimes handwritten on paper.**
How are blind patients directed? **They are not directed until/unless the message plays on the LCD Monitor. Then they would have to find the kiosk. Not all kiosks were set up for the three finger swipe. Many times it would be just one out of three kiosks would accept the three finger swipe, at some other locations none would take the swipe.**
Is there an audio message that plays on the LCD monitor? **Sometimes. Softly.** If so, how frequently does the message play? **Inconsistently at 15 to 20 minutes at some locations**. Is it audible? **Yes, if you are near the monitor.** What does the message say? **To proceed to a kiosk and do a three finger swipe, and you will be placed in the que to be called by staff. If you need assistance you should ask a staff member…(but they only appear in the doorway to call the next person by name, and then they are gone. They never asked if anyone needed additional assistance, with very few exceptions.)**

4) Wait time – how long does one have to wait to hear the audio message instructing someone to check in? **15 to 20 minutes if it is playing at all.**

5) When attempting to utilize the three finger swipe, are you able to access independently any of the other features on the Kiosk? **No.** Edit personal information? **No.** Wait by text option? **No.**

6) Does the Kiosk have a help button? **Yes, but only to sighted individuals using the touch screen.** Is that button available only on the touch screen or in an area independent of the touch screen? **Only on the touch screen when you can see and you tap it. It is <u>not made available</u> <u>at all</u> on the three finger swipe screens.**

7) Once you three finger swipe, is there a confirming audio message that instructs you that you are checked in? **Sometimes.** Does that audio message tell you an estimated wait time? **If it comes on, Yes.**

8) Once checked in via three finger swipe, does your entry appear in the video LCD monitor wait time que? **Yes.** Are there any aids or auxiliary services to let blind patients know where they are in the cue? **No.** How long is the wait for a Quest employee to come out of the back room once three finger swipe occurs? **Wait time varies by how many people are in the cue – which if you are blind, you don't necessarily know. Staff calls people in the order they came in at most locations. Staff do not come out based on the three finger swipe immediately.**

9) Do you observe Quest employees regularly "sweeping" the waiting room to see if anyone needs help? **Almost never.**

10) How many Quest employees are you observing from the public waiting room in each location? **Usually two to three.**



Tracking Sheet - Quest Patient Se

**Investigator:** Mark Derry
**Contact:** 304-685-3510
**Trip Date:** 6/12/21-6/14/21; 8/12/21 - 8/18/21
**Report Date:** 8/23/2021

Eastlake, Derry & Associates, LLC — ADA Accessibility Solutions

| | | | | Approach | | Accessible Kiosk Features | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Date | Address / Office Location | State | Audible Entrance Bell or Device? | Staffed Waiting Room? | Audible Directions to Kiosk? | Audible Message on LCD Monitor? | Audio Instructions Wait Time | Three Finger Swipe on all kiosks? | Confirming Message Provided? | Appears on LCD with wait time and Positon | Staff Regulary Sweeping to offer help? | Comments | Photos |
| 1 | 6/12/2021 | 7789 Foothill Blvd, Tujunga | CA | No | No | No | No | N/A | N/A | N/A | N/A | No | Located in a Von's Supermarket Pharmacy. No kiosk is provided. | Quest1 |
| 2 | 6/12/2021 | 8501 Wilshire Blvd, Suite 305, Beverly Hills | CA | No | No | No | No | N/A | Yes (1) | No | Yes | Yes | Un-staffed window. Staff explained they were closing for the day. | Quest2 |
| 3 | 6/14/2021 | 201 S. Buena Vista St., Suite 225, Burbank | CA | No | No | No | No | N/A | Yes (1) | No | Yes | No | Three finger swipe worked, then staff member came out to ask if I needed assistance. | Quest3 |
| 4 | | 2701 W Alameda Ave, Suite 406, Burbank | CA | No | No | No | No | N/A | No | N/A | N/A | No | No Three finger swipe, but staff came out when she was helping someone else. | Quest4 |
| 5 | | 2601 W. Alameda Ave Suite 114 Burbank | CA | No | No | No | No | N/A | No | No | N/A | Yes | Three finger sweep did not work. Large reception room with person behind a desk. | Quest5 |
| 6 | | 18370 Burbank Blvd, Suite 108 Tarzana | CA | No | No | No | No | N/A | Yes | Yes | Yes | No | This was a different model kiosk than the usual. Had voice output. No input available following swipe. | Quest6 |
| 7 | | 5525 Etiwanda Ave, Suite 307 Tarzana | CA | No | No | No | No | N/A | No | N/A | N/A | No | Three finger swipe did not work. | Quest7 |
| 8 | | 14624 Sherman Way, Suite 101 Van Nuys | CA | No | No | No | No | N/A | Yes | No | Yes | No | Swipe worked but there was no audible confirmation | Quest8 |
| 9 | | 4849 Van Nuys Blvd., Suite 208 Sherman Oaks | CA | **Location Closed at time of Site Visit** | | | | | | | | | Location Closed Temporarily | Quest9 |
| 10 | 6/14/2021 | 4955 Van Nuys Blvd., Suite 611 Sherman Oaks | CA | No | No | No | No | N/A | Yes | Yes | Yes | No | | Quest10 |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 | 8/12/2021 | 1779 Walden Ave Suite 300 Cheektowaga | NY | No | No | No | Yes | N/A | Yes | Yes | Yes | Yes | "Not taking walk-ins right now" | Quest11 |
| 12 | | 1317 Jefferson Ave, Buffalo | NY | Yes | No | No | Yes | 15 Min | No | No | No | No | Three finger swipe just brought up tap screen for sighted. | Quest12 |
| 13 | | 455 Delaware Ave Buffalo | NY | Yes | No | No | Yes | 15 Min. | Not all - 1 of 2 | Yes | Yes | No | Kiosk did not provide any options as it does for sighted patients | Quest13 |
| 14 | | 3842 Harlem Rd., Cheektowaga | NY | No | No | No | Yes | 15 Min. | No | N/A | N/A | No | Very crowded waiting room. | Quest14 |
| 15 | | 264 Center Rd., West Seneca | NY | Yes | No | No | No | N/A | Yes | Yes | Yes | No | This had different touch screen kiosk. No other features available | Quest15 |
| 16 | 8/12/2021 | 1106 Union Rd, Southgate Plz, West Seneca | NY | No | No | No | No | N/A | 1 of 3 | Yes | Yes | No | They took Ashley before me, she had a 4 minute wait and I had a 1 minute wait. | Quest16 |
| 17 | 8/13/2021 | 3500 Main St., University Plz Amherst | NY | **Location Closed at time of Site Visit** | | | | | | | | | Sign says "Closed until further Notice" | Quest17 |
| 18 | | 3620 Sheridan Dr., Suite 100 Amherst | NY | No | No | No | No | N/A | 2 of 3 | Yes | Yes | No | Swipe only on 2 of 3 kiosks | Quest18 |
| 19 | | 2350 Maple Rd., Amherst | NY | No | No | No | No | N/A | 1 of 2 | Yes | Yes | No | Closed 2pm, went back next day. | Quest22 Quest19 |
| 20 | 8/13/2021 | 3950 E. Robinson Rd., Suite 105 Amherst | NY | Yes | No | No | Yes | 15 Min. | Yes | Yes | Yes | No | Could not access any other features or help button from three finger swipe | Quest20 |
| 21 | | 4181 Transit Rd., Transit Town Plz Amherst | NY | No | No | No | Yes | Not in 30 min there | No 0 of 3 | N/A | N/A | No | Very busy location. | Quest21 |
| 22 | 8/18/2021 | 233 Broad St Milford | CT | No | No | No | Yes | 17 Min. | Yes | Yes | Yes | No | Message for blind consumers played 17 minutes after I arrived | Quest23 |
| 23 | | 2890 Main St Stratford | CT | No | No | No | Yes | 8 Min after arrival | Yes | Yes | Yes | No | Message tells you you are number but doesn't say how many others are in the que | Quest24 |
| 24 | 8/18/2021 | 1825 Barnum Ave Stratford | CT | **Location Closed at time of Site Visit** | | | | | | | | | Note on door says location closed as of July 16th | Quest25 |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 25 | 8/18/2021 | 555 Lordship Blvd Stratford | CT | No | Yes | No | N/A | N/A | Yes | Yes | Yes | Yes | "tell her to knock on the door and someone will come out and help" | Quest26 |
| 26 | | 970 E. Main St, Bridgeport | CT | No | No | No | Yes | 10 Min after arrival | Yes | Yes | Yes | No | | Quest27 |
| 27 | | 1450 Barnum Ave Bridgeport | CT | **Location Closed at time of Site Visit** | | | | | | | | | Note on door reads "No Appointments" "Closed early" | Quest28 |
| 28 | | 1677 E. Main St Bridgeport | CT | **Location Closed at time of Site Visit** | | | | | | | | | Note on door reads Closed please visit other locations | Quest29 |
| 29 | 8/18/2021 | 3180 Main St. Beechmont Ave Bldg., 1st Fl Bridgeport | CT | No | No | No | Yes | 15 Min. | Yes | Yes | Yes | No | You have to yell at them when they stick their head thru the door so they stop. | Quest30 |

# EXHIBIT 32

Jonathan D. Miller (Bar No. 220848)
jonathan@nshmlaw.com
Alison M. Bernal (Bar No. 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE & MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, California 93101
Telephone: (805) 963-2345
Facsimile: (805) 563-5385

Attorneys for Plaintiffs Julian Vargas, American Council of the Blind, and the Proposed Class

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

JULIAN VARGAS, and AMERICAN COUNCIL OF THE BLIND, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,

Defendants.

CASE NO.: 2:19-cv-8108

**DECLARATION OF RACHAEL BRADLEY MONTGOMERY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Hearing Date:** **October 29, 2021**
**Time:** **10:00 am**
**Courtroom:** **8C**

Complaint Filed: September 18, 2019
Pretrial Conf: December 7, 2021
Trial Date: January 11, 2022
District Judge: Hon. Dolly M. Gee
Magistrate: Hon. Michael M. Wilner

I, Rachael Bradley Montgomery, declare as follows:

1. I make this declaration based on my personal knowledge. If called to testify, I could and would competently testify as to the matters set forth herein. This declaration is submitted in support of plaintiffs' motion for class certification and opposition to defendants' motion for summary judgement.

## I. QUALIFICATIONS

### Professional and Educational Background

2. I have over 20 years of experience in usability, disability-related education, and accessibility. I currently work as an Accessibility Specialist at the Library of Congress, though this report is not being done in my capacity as an employee of the Library of Congress. Prior to July 2021, I consulted on the accessibility of kiosks, web sites, software applications, and overall organizations for several years. As a consultant, I regularly evaluated kiosks, web sites, and mobile applications for clients. I have written and implemented kiosk and web standards, procurement guidelines, testing methodologies, and training programs for a number of organizations. I co-chair the W3C Accessibility Guidelines Working Group and am executive director of a charity that helps small organizations remove accessibility barriers.

3. I have a Master's in Information Studies focused on usability of emerging technology from University of Illinois Urbana-Champaign. I have a PhD in Information Science focused on usability and accessibility from University of Maryland, College Park. I periodically teach courses in usability, user experience, and accessibility at both institutions, as well as speak about these topics at various events. A copy of my CV is attached as **Exhibit A**.

4. During the previous 4 years I have been deposed once in relation to kiosk accessibility, in the civil action styled Davis, et al. v. Laboratory Corporation of America Holdings, 20-cv-00893 (C.D. Cal.).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## II. ASSIGNMENT

5. I have been retained by counsel for Plaintiffs to offer my expert opinion on:

- Whether the services provided by Quest's kiosks are independently and privately accessible to blind users, and
- Whether providing kiosks that are independently and privately accessible to blind users would be readily achievable, and would not result in an undue financial burden or fundamentally alter the essential nature of the goods and services offered by Quest.

6. **Exhibit B** includes a list of all documents and data that I considered for my assignment.

7. I reserve the right to amend or supplement this declaration if additional relevant documents or information become available.

8. I am being compensated at a rate of $125 per hour for my time spent on this matter except for time spent preparing for and testifying at deposition, for which I am being compensated $200 per hour for my time.

9. My compensation is not contingent on the nature of my findings or the outcome of this case.

## III. OPINIONS

### A. The services provided by the Quest kiosks are not independently and privately accessible to blind users.

10. **Exhibit C** presents the standards from the Americans with Disabilities Act (ADA), Section 508 of the Rehabilitation Act of 1973 (508), and Web Content Accessibility Guidelines that support blind users. Some key requirements to ensure independent access from these standards are:

- Speech output either publicly through speakers or privately through headphones (ADA 707.5, 508 402.2). If the kiosk output includes personal information, output through headphones would be expected to provide comparable privacy to visual output (508 405.1). Speech output allows blind users to interact with the kiosks and complete their tasks using the kiosk (508 302.1).
- Braille instructions to indicate how to start speech output (ADA 707.8, 508 402.2.5).
- Tactile controls which make using the kiosk much easier for low vision and blind users (ADA 707.6.1, 508 407.3.1). and
- Volume control and the ability to repeat speech (ADA 707.5.1, 508 402.3.1, 402.2.4)

**a) Kiosk prior to addition of help button or three finger swipe**

11. I was unable to personally assess the version of the kiosk that existed prior to the addition of the help button or three finger swipe; however, it is described in Adam Aronson's deposition transcript of 6/29/21, Julian Vargas' deposition transcript of 04/22/21, Tom Walsh's deposition transcript of 07/01/21, Marc Yarrison's deposition transcript of 4/8/21, Exhibit #2 to the transcripts (Quest-Vargas000036494) and Exhibit #7 to the transcripts (Quest-Vargas000007361-7363).

12. Based on these descriptions, the kiosks did not have a headphone jack (Aronson p. 57), provide speech output (Walsh p. 43, 63), braille instructions (Vargas p. 124, Yarrison p. 116-117) or a tactile navigation keypad (Vargas p. 124).

13. Without speech output and tactile controls, there is no way for a blind user, who relies on tactile and audio alternatives, to independently and privately access any services provided by the kiosk, including any check in services.

14. This version of the kiosk also allowed sighted users to interact with it using a non-English language, and view wait time and place in queue (Exhibit #2 to the

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

transcripts p. 2), none of which would be independently and privately accessible to a blind user. The television, as designed to work with this version of the kiosk, also displayed name, visit details, and wait time.

**b) Kiosk with help button prior to addition of three finger swipe**

15. I inspected the version of the Kiosk that included the help button but did not yet include three finger swipe functionality on July 30, 2021.

16. The help button on the kiosk I inspected threw an error message (see Figure 1).

17. My understanding is that pressing the help button, which was located on the screen and not tactilely discernable, was designed to provide an audio message to assist the user. Even if this is the case, the kiosk is not independently or privately accessible because it does not include any braille instructions on how to start the speech output.

*Figure 1: Error on Kiosk Inspected July 30*

*Figure 2: Check in Options on Kiosk Inspected July 30*

*Figure 3: Check in Complete on Kiosk Inspected July 30*

18. This kiosk also lacks tactilely discernable controls. 407.3.1 in Section 508 states "Input controls shall be operable by touch and tactilely discernible without activation." 707.6.1 in the ADA states, "At least one tactilely discernible input control shall be provided for each function." If the only speech output provided in this version is triggered by the help button, a blind user should be able to identify

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

the help button by touch, without activating it. In this design, the kiosk has no tactile indication of where the help button is located or that it even exists. The button is located in the upper right of the screen, but not in the corner, so even with directions, it could be missed by the blind user.

19. Finally, this kiosk design does not allow the user to control the volume or repeat the speech output. The ability to control the volume output and repeat speech is important in a public setting where it may be difficult to hear or a user may be distracted.

20. I also attempted a three finger swipe on this version of the kiosk, but the three finger swipe did not work and returned an error message.

21. The services provided by this kiosk are not independently or privately accessible because the kiosk does not include any braille instructions on how to start the speech output, the help button cannot be located tactilely, and the user is unable to control volume and speech output.

**c) Kiosk with help button and three finger swipe**

22. I inspected the version of the kiosk with the help button and three finger swipe functionality during two visits to Quest labs.

23. The first visit was to the lab at 21785 Filigree Ct, Unit 204, Ashburn, VA 20147, United States on July 29, 2021.

24. The second visit was the to the lab at 521 E Market St, Leesburg, VA 20176 on August 30, 2021.

25. In both cases a three finger swipe led to audio output.

26. During the first visit, I was visiting for a lab appointment and was unable to fully understand what was said in the audio output.

27. In the second visit, I was able to confirm the audio output provided a patient number, wait time, and told me to take a seat.

28. Both locations had a television providing information on place in queue and approximate wait time.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

29. In the first visit, the audio from the television was barely audible and I never heard instructions on kiosk use within the 4 minutes I was in the waiting room.

30. In the second visit, the television was audible and played the instructions on how to use the three finger swipe after about 7 minutes in the waiting room.

31. The three finger swipe used for adding an individual to queue does not meet accessibility standards as it lacks:

- Braille instructions to initiate the speech output;
- Tactilely discernable controls; and
- Volume control and the ability to repeat speech

32. Unless a phlebotomist is present in the waiting room to explain how to use the kiosk, an individual who does not know about the three finger swipe option in advance has no way to find out how to interact with the kiosk without the television, due to the lack of braille instructions and tactile controls. The primary way to know about the three finger swipe is through the television.

33. The lack of volume control and inability to repeat speech presents a major hurdle in this attempted three finger swipe solution.

34. The television must be on with adequate volume to tell the user about the three finger swipe but the user cannot interrupt or pause the television (ADA 707.5.1, 508 402.2.4).

35. The television audio makes it more difficult to hear the speech output on the kiosk and the user has no way to find out what was said if they miss it without using a three finger swipe a second time.

36. In the version of the kiosk with the help button and the three finger swipe, the only feature of the kiosk possibly available to the blind user is the ability to be added to the queue and wait in the waiting room.

37. The only way to monitor one's place in the queue while waiting is through the display on the television screen.

38. The kiosks I inspected offered several additional services, including:

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

- Languages other than English,
- Checking in with an appointment, which are given priority,
- Picking up an empty collection container,
- Delivering a prepared specimen, and
- Choosing to wait somewhere other than the waiting room.

39. These additional features are captured in figures 4, 5 and 6 which were taken during my August 30th visit.

Figure 4: What can we help you with screen

Figure 5: What can we help you with screen

Figure 6: Where will you wait screen

40. In addition to the missing services, the delay in waiting for the instructions on how to use the kiosk potentially places the blind patient behind other patients who arrive while the blind patient is waiting to hear what to do or get assistance.

41. The queueing order by the kiosk is: Appointments, Healthcare Professional Drop Off or Pick Up, Patient Drop Off or Pick Up, all others (Quanum Release Notes December 2017 QUEST-VARGAS000039496 p. 9). Patients using the smart help are given a number as a walk-in, which falls under "all others" (New ECheckin Requirements QUEST-VARGAS000035545, #13.5.2.3.3).

42. This queuing delay occurred during my second inspection visit. No staff was present when I entered, so I waited to sign in until I heard the audio instructions on

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

the three finger swipe. This took a little over 7 minutes. By the time the instructions played on the television, two other patients had entered and used the kiosk before me and my announced wait time was over 30 minutes. As a sighted individual, I could tell my position in queue from the television, but a blind individual would have no way to tell this.

43. In addition to adding a patient to queue, the three finger swipe is also intended to notify a phlebotomist that a visually impaired patient is in the waiting room through an alert bell (Yarrison Transcript p. 244) and in Quanum (Exhibit #47 to the transcripts p. 45). Per Exhibit #47 (Quest-Vargas000034803-34941) "[a]fter the patient identified as "Visually impaired" appears in your queue, you should promptly go to the waiting room, call the patient by their numerical ID (e.g., Patient 01), greet the patient, and ask them whether they have an appointment." (p. 46). Phlebotomists have the option of turning off the audio signal (Yarrison Transcript, p. 245). This could lead to a longer wait time before the blind patient gets assistance. In my first visit, the phlebotomist came out in 2 minutes 50 seconds. While I cannot be certain that the audio signal was turned off in my second visit, the phlebotomist did not come out to assist me after I used the three finger swipe. Someone came out and brought another patient back 6 minutes after the three finger swipe, but did not ask about a visually impaired patient.

44. Based on my observations and review of documents, the services available through the Quest kiosks are not independently and privately accessible to blind users. If the kiosk services provided are expanded, such as ID and insurance card recognition and payment (see Tom Walsh's deposition transcript of 07/01/21 p. 86-89) these would also not be accessible to blind users.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**B. Providing kiosks at Quest labs that are independently and privately accessible to blind users is readily achievable and would not create an undue financial burden or fundamentally alter the essential nature of the goods and services offered by Quest.**

45. Readily achievable solutions exist for providing an independently accessible kiosk for blind users. The iPad selected for these kiosks includes built in speech reader capabilities within its standard accessibility suite. This screen reader provides the speech output needed to interact with a kiosk application.

46. Lilitab, the kiosk vendor from which Quest purchased the kiosk shells, provided an option to include a standard headphone jack for approximately $30 per kiosk (Adam Aronson's deposition transcript of 6/29/21 p. 38). The H and M units offered by Lilitab also allow for optional volume control access (Adam Aronson's deposition transcript of 6/29/21 p. 4). The custom software could use common accessibility practices to integrate with iOS' built in screenreader. This approach would have ensured all kiosk services were accessible to blind users. iOS software can also be coded to start the screen reader when personal headphones are inserted into the headphone jack. Creating accessible software that works with a screen reader is a common solution that provides kiosk accessibility for blind individuals and private listening that would provide the privacy needed for health information.

47. This solution outlined in paragraph 46 would allow Quest to maintain the functionality and utility of its kiosks, while increasing the accessibility for blind users.

48. Other options also exist, including the AudioNav keypad for iOS which costs $309.75 (Exhibit D p.1) and has tactile navigation keys and a headphone jack. This kit includes the firmware, adapter, cables, and power supply for the keypad. The iPad adapter allows multiple USB cables to be used so that the kiosk can receive power and work with devices. An additional cost would be required to mount the keypad. The advantage of using the AudioNav or a comparable keypad is that it uses

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

an external headphone jack, rather than the headphone jack of the actual iPad. This lowers maintenance costs if the tactile keypad needs to be replaced due to wear.

49. Using iOS' native screenreader along with accessible software, allowing speech output through a headphone jack, and providing an tactile keypad for navigation would allow all current and future services provided by the kiosk to be independently and privately accessible to blind users.

50. Based on the information presented above, it is my opinion to a reasonable degree of certainty that the services provided by the Quest kiosk are not privately and independently accessible to blind users. None of the versions, including the most recent, meet accessibility standards. Even if a blind user was able to perform a three finger swipe on the kiosk, the kiosk does not provide the same set of services to blind users as it provides to sighted kiosk users.

51. Based on the information presented above, it is also my opinion to a reasonable degree of certainty that providing kiosks accessible to blind users is readily achievable, and would not create an undue financial burden, or fundamentally alter the essential nature of the goods and services offered by Quest.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Signed this 9th day of September 2021, in Paeonian Springs, VA.

DocuSigned by: Rachael Bradley Montgomery
51229E6F1E6A4E9...

/s/

RACHAEL BRADLEY MONTGOMERY, Declarant

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

DocuSign Envelope ID: 891E79C4-ACE7-4734-A9E5-68F6E14EEBDE

# Exhibit A

PA0887

# Rachael Bradley Montgomery, PhD

16766 Clarkes Gap Road; Paeonian Springs, VA 20129
ta11y.accessibility@gmail.com
410-591-9202

## Skills Summary

- 20 years of experience in disability-related education, accessibility, and human computer interaction
- Experience evaluating and remediating kiosks, websites, mobile and desktop applications, and facilities
- Seven years of experience setting up large-scale accessibility programs at 3 separate organizations
  - Working with corporate leadership and across departments and locations to effect change
  - Establishing and growing disability related employee resource groups integrated into a larger diversity program
- Four years of experience applying ADA and Section 508, as well as other accessibility and universal design best practices to kiosk evaluation and procurement
- Five years of program and department management experience, managing between 30 and 60 fulltime equivalents across multiple projects
- Experience with WCAG and applying WCAG 2.0 and 2.1 to specific organization's needs
- Experience designing and adapting accessibility and usability courses to serve the needs of students with a wide range of technical and domain experience
  - Created three courses on accessibility and usability for professional students. Instructed over 1,500 developers, testers, program managers, designers and usability engineers
  - Nine years of experience teaching online and in-person in both university and professional settings

## Professional Experience

**Library of Congress** **Jul 2021-Present**
- Accessibility Specialist

**Ta11y Consulting** **May 2019 - Present**
- Accessibility and usability consulting

**MITRE, McLean, VA** **Mar 2004 - May 2019**
- Usability and Accessibility, Principle Engineer
- Accessibility Council Lead
- Associate Department Head and Project Manager

**Hood College, Frederick, Maryland** **Oct 2002 - Feb 2004**
**Enoch Pratt Free Library, Baltimore, Maryland** **May 2002 - Sep 2002**
**Woodruff Library, Emory University, Atlanta, Georgia** **Jun 2000 - Mar 2002**

## Service

**Accessible Community, Paeonian Springs, VA** **2017 - Present**
- Director of 501c3 Charity dedicated to helping small businesses, libraries, religious organizations, and other community organizations better engage with people with disabilities
- Providing seminars on physical and technical accessibility

**Web Accessibility Working Group (W3C)** **2016 - Present**
- Co-chair Accessibility Guidelines Working Group (March, 2020-Present)

- Co-facilitator Cognitive and Learning Disabilities Task Force (August 2019-Present)
- Contributor WCAG 2.1 and related documents
- Editor on WCAG 2.2, WCAG 3.0 and Making Content Usable

## Teaching Experience

**Adjunct Lecturer** — College of Information Studies, University of Maryland, College Park
Fall 2021-Present — Trace Center Faculty Affiliate – Universal Kiosk Standards
Fall 2019-Present — Information User Needs and Assessment, User Centered Design
Spring 2010-2013 — Introduction to Information Technology

**Adjunct Lecturer** — School of Information Science, University of Illinois, Urbana Champaign
2019-Present — Usability Engineering

**Instructor** — Professional Settings
2012-Present — Accessibility for Developers, Testers, and Usability Engineers

## Education

**PhD in information Studies** — **December 2009**
University of Maryland, College Park, MD

**MS in Information Science** — **August 2003**
University of Illinois, Champaign, IL

**BA in Art History and Historic Preservation (Phi Beta Kappa)** — **May 1998**
Goucher College, Towson, MD

**ADA Coordinator Certification** (In Process)

**Certificates in Universal Design** (Human Performance, Public Accommodations, Interior Environments)
Center for Inclusive Design and Environmental Access, University of Buffalo

## Select Publications and Presentation

Bradley Montgomery, R., and Boniello Miller, L (2021). Most Common Kiosk Mistakes. CSUN Assistive Technology Conference. Virtual.

Spellman, J., Montgomery, R., Lauriat, S. and Cooper, M. editors (2021). W3C Accessibility Guidelines (WCAG) 3.0 W3C Editor's Draft 20 January 2021. Latest at https://w3c.github.io/silver/guidelines/

Seeman, L., Bradley Montgomery, R., Lee, S. and Ran, R. editors. Making content usable for people with cognitive and learning disabilities W3C Working Draft 11 December 2020. Latest at https://www.w3.org/TR/coga-usable/

Adams, C., Campbell, A. Montgomery, R., Cooper, M. and Kirkpatrick, A. editors. Web Content Accessibility Guidelines (WCAG) 2.2 W3C Working Draft 11 August 2020. Latest at https://www.w3.org/TR/WCAG22/

Bradley Montgomery, R. (2020). Creating a Usable Kiosk Experience for Customers with Disabilities. The Paciello Group Development Blog.

Boniello Miller, L. and Bradley Montgomery, R. (2020) Kiosk Accessibility: Understanding the Kiosk User Experience. *CSUN Assistive Technology Conference*. San Diego, CA.

Bradley Montgomery, R. (2020). Creating an Accessible Escape Room. *CSUN Assistive Technology Conference*. San Diego, CA.

Bostic, T., Bradley Montgomery, R., Brunelle, J., Chudnov, D., Higgins, J., and Stanley, J. (2019). Exploring the Intersections of Web Science and Accessibility. *International Conference on Human Systems Engineering and Design*. Munich, Germany.

Bradley Montgomery, R. (2018). Beyond Standards. Taking a Holistic Approach to Accessibility Evaluation. *CSUN Assistive Technology Conference*. San Diego, CA.

Weiss, M. and Bradley Montgomery, R. (2017).  Using Personas and Other Usability Techniques to Improve Accessibility. *CSUN Assistive Technology Conference*. San Diego, CA.

Bradley Montgomery, R. and Weiss, M. (2016). Comparing Custom Accessibility Checklists. *CSUN Assistive Technology Conference*. San Diego, CA.

# Exhibit B
# Documents Considered

- Quest-Vargas000036494
- Quest-Vargas000035087-35090
- Quest-Vargas000035119-35176
- Quest-Vargas000034658-34666
- Quest-Vargas000007361-7363
- Quest-Vargas000037909-37910
- Quest-Vargas000037977-37978
- Quest-Vargas000036699
- Quest-Vargas000028740-28741
- Quest-Vargas000035335-35336
- Quest-Vargas000028746-28747
- Quest-Vargas000030878-30879
- Quest-Vargas000037605-37606
- Quest-Vargas000037980-37981
- Quest-Vargas000036566-36578
- Quest-Vargas000036700-36702
- Quest-Vargas000036947-36954
- Quest-Vargas000040261-40264
- Quest-Vargas000040267-40269
- Quest-Vargas000040280-40284
- Quest-Vargas000039990
- Quest-Vargas000039966-39967
- Quest-Vargas000035475-35476
- Quest-Vargas000000022-41
- Quest-Vargas000004496-4499
- Quest-Vargas000040161-40166
- Quest-Vargas000040791
- Quest-Vargas000000583-637
- Quest-Vargas000036677-36681
- Quest-Vargas000030691
- Quest-Vargas000034803-34941
- Quest-Vargas000036266
- Quest-Vargas000036322
- Quest-Vargas000005723-5731
- Quest-Vargas000007941-7945
- Quest-Vargas000004496-4499
- Quest-Vargas000023072-23075
- Quest-Vargas000029367-29369
- Quest-Vargas000030591-30592
- Quest-Vargas000029304-29309

- Quest-Vargas000041970-41971
- Quest-Vargas000041962
- Quest-Vargas000041949-41952
- Quest-Vargas000041972-41976
- Quest-Vargas000041963-41969
- Quest-Vargas000041953-41961
- Quest-Vargas000041938-41948
- Quest-Vargas000028016-28017
- Quest-Vargas000009816-9819
- Quest-Vargas000005703
- Quest-Vargas000038770-38771
- Quest-Vargas000035545-35549
- Quest-Vargas000038755-38775
- Quest-Vargas000039488-39511
- Transcript of 6-29-21 Deposition of Adam Aronson
- Transcript of 4-22-21 Deposition of Julian Vargas
- Transcript of 7-1-21 Deposition of Tom Walsh
- Transcript of 4-8-21 Deposition of Marc Yarrison
- Transcript of 4-12-21 Deposition of Taylor Carr
- Transcript of 7-30-21 Deposition of Taylor Carr
- Email exchanges between Lilitab and Quest discussing QR Code Reader Tray
- Email exchanges regarding Quest migrating from the "K head" to the new "H head" unit––describes "forward looking" functionality
- Final "CapEx" submitted for eCheck-In project
- The website lilitab.com

# Exhibit C: Referenced Standards

## ADA Standards that Support Blind Users

Abbreviated. Full standards including exceptions at:
https://www.ada.gov/regs2010/2010ADAStandards/2010ADAstandards.htm

**307.2 Protrusion Limits:** Objects with leading edges more than 27 inches (685 mm) and not more than 80 inches (2030 mm) above the finish floor or ground shall protrude 4 inches (100 mm) maximum horizontally into the circulation path.

**707.5 Speech Output:** Machines shall be speech enabled. Operating instructions and orientation, visible transaction prompts, user input verification, error messages, and all displayed information for full use shall be accessible to and independently usable by individuals with vision impairments. Speech shall be delivered through a mechanism that is readily available to all users, including but not limited to, an industry standard connector or a telephone handset. Speech shall be recorded or digitized human, or synthesized.

**707.5.1 User Control:** Speech shall be capable of being repeated or interrupted. Volume control shall be provided for the speech function.

**707.5.2 Receipts**: Where receipts are provided, speech output devices shall provide audible balance inquiry information, error messages, and all other information on the printed receipt necessary to complete or verify the transaction.

**707.6.1 Input Controls:** At least one tactilely discernible input control shall be provided for each function. Where provided, key surfaces not on active areas of display screens, shall be raised above surrounding surfaces. Where membrane keys are the only method of input, each shall be tactilely discernable from surrounding surfaces and adjacent keys.

**707.6.2 Numeric Keys:** Numeric keys shall be arranged in a 12-key ascending or descending telephone keypad layout. The number five key shall be tactilely distinct from the other keys.

**707.6.3.2 Tactile Symbols**: Function key surfaces shall have tactile symbols as follows: Enter or Proceed key: raised circle; Clear or Correct key: raised left arrow; Cancel key: raised letter ex; Add Value key: raised plus sign; Decrease Value key: raised minus sign.

**707.8 Braille Instructions:** Braille instructions for initiating the speech mode shall be provided.

## Section 508 Kiosk Standards that Support Blind Users

Abbreviated. Full standards including exceptions at: https://www.access-board.gov/ict/#508

**C205.2 WCAG Conformance:** User interface components, as well as the content of platforms and applications shall conform to Level A and Level AA Success Criteria and Conformance Requirements in WCAG 2.0 (incorporated by reference, see 702.10.1).

**302.1 Without Vision:** Where a visual mode of operation is provided, ICT shall provide at least one mode of operation that does not require user vision.

**402.2 Speech-Output Enabled:** ICT with a display screen shall be speech-output enabled for full and independent use by individuals with vision impairments.

**402.2.1 Information Displayed On-Screen:** Speech output shall be provided for all information displayed on-screen.

**402.2.2 Transactional Outputs:** Where transactional outputs are provided, the speech output shall audibly provide all information necessary to verify a transaction.

**402.2.3 Speech Delivery Type and Coordination:** Speech output shall be delivered through a mechanism that is readily available to all users, including, but not limited to, an industry standard connector or a telephone handset. Speech shall be recorded or digitized human, or synthesized. Speech output shall be coordinated with information displayed on the screen.

**402.2.4 User Control:** Speech output for any single function shall be automatically interrupted when a transaction is selected. Speech output shall be capable of being repeated and paused.

**402.2.5 Braille Instructions:** Where speech output is required by 402.2, braille instructions for initiating the speech mode of operation shall be provided. Braille shall be contracted and shall conform to 36 CFR part 1191, Appendix D, Section 703.3.1.

**402.3 Volume:** ICT that delivers sound, including speech output required by 402.2, shall provide volume control and output amplification conforming to 402.3.

**402.3.1 Private Listening:** Where ICT provides private listening, it shall provide a mode of operation for controlling the volume. Where ICT delivers output by an audio transducer typically held up to the ear, a means for effective magnetic wireless coupling to hearing technologies shall be provided.

**402.3.2 Non-private Listening:** Where ICT provides non-private listening, incremental volume control shall be provided with output amplification up to a level of at least 65 dB. A function shall be provided to automatically reset the volume to the default level after every use.

**405.1 Privacy, General:** The same degree of privacy of input and output shall be provided to all individuals. When speech output required by 402.2 is enabled, the screen shall not blank automatically.

**406.1 Standard Connections, General:** Where data connections used for input and output are provided, at least one of each type of connection shall conform to industry standard non-proprietary formats.

**407.3.1 Tactilely Discernible:** Input controls shall be operable by touch and tactilely discernible without activation.

**407.3.2 Alphabetic Keys:** Where provided, individual alphabetic keys shall be arranged in a QWERTY-based keyboard layout and the “F” and “J” keys shall be tactilely distinct from the other keys.

**407.3.3 Numeric Keys:** Where provided, numeric keys shall be arranged in a 12-key ascending or descending keypad layout. The number five key shall be tactilely distinct from the other keys. Where the ICT provides an alphabetic overlay on numeric keys, the relationships between letters and digits shall conform to ITU-T Recommendation E.161 (incorporated by reference, see 702.7.1).

**407.7 Tickets, Fare Cards, and Keycards:** Where tickets, fare cards, or keycards are provided, they shall have an orientation that is tactilely discernible if orientation is important to further use of the ticket, fare card, or keycard.

**410.1 General:** Where provided, color coding shall not be used as the only means of conveying information, indicating an action, prompting a response, or distinguishing a visual element.

## WCAG 2.1 A and AA Criteria that Support Blind Users

Abbreviated. Full standards including exceptions at: https://www.w3.org/TR/WCAG21/

**1.1.1 Non-text Content**: All non-text content that is presented to the user has a text alternative that serves the equivalent purpose, except for the situations listed below: Controls, Inputs; Time-Based Media; Test; Sensory; CAPTCHA, and Decoration, Formatting, Invisible.

**1.2.1 Audio Only and Video Only**: For prerecorded audio-only and prerecorded video-only media, the following are true, except when the audio or video is a media alternative for text and is clearly labeled.

**1.2.3 Audio Description or Media Alternative (Prerecorded)**: An alternative for time-based media or audio description of the prerecorded video content is provided for synchronized media, except when the media is a media alternative for text and is clearly labeled as such.

**1.2.5 Audio Description (Prerecorded)**: Audio description is provided for all prerecorded video content in synchronized media.

**1.3.1 Info and Relationships**: Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

**1.3.2 Meaningful Sequence**: When the sequence in which content is presented affects its meaning, a correct reading sequence can be programmatically determined.

**1.3.3 Sensory Characteristics**: Instructions provided for understanding and operating content do not rely solely on sensory characteristics of components such as shape, color, size, visual location, orientation, or sound.

**1.3.4 Orientation**: Content does not restrict its view and operation to a single display orientation, such as portrait or landscape, unless a specific display orientation is essential.

**1.4.1 Use of Color**: Color is not used as the only visual means of conveying information, indicating an action, prompting a response, or distinguishing a visual element.

**1.4.2 Audio Control**: If any audio on a Web page plays automatically for more than 3 seconds, either a mechanism is available to pause or stop the audio, or a mechanism is available to control audio volume independently from the overall system volume level.

**1.4.13 Content on Hover or Focus**: Where receiving and then removing pointer hover or keyboard focus triggers additional content to become visible and then hidden, the following are true. Dismissable, Hoverable, Persistent

**2.1.1 Keyboard**: All functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function requires input that depends on the path of the user's movement and not just the endpoints.

**2.1.2 No Keyboard Trap**: If keyboard focus can be moved to a component of the page using a keyboard interface, then focus can be moved away from that component using only a keyboard interface, and, if it requires more than unmodified arrow or tab keys or other standard exit methods, the user is advised of the method for moving focus away.

**2.2.1 Timing Adjustable (Level A)**: For each time limit that is set by the content, at least one of the following is true: Turn off, Adjust, Extend, Real-time Exception, Essential Exception, 20 Hour Exception

**2.2.2 Pause, Stop, Hide**: For moving, blinking, scrolling, or auto-updating information, all of the following are true

**2.4.1 Bypass Blocks**: A mechanism is available to bypass blocks of content that are repeated on multiple Web pages.

**2.4.2 Page Titled**: Web pages have titles that describe topic or purpose.

**2.4.3 Focus Order**: If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

**2.4.4 Link Purpose (In Context)**: The purpose of each link can be determined from the link text alone or from the link text together with its programmatically determined link context, except where the purpose of the link would be ambiguous to users in general.

**2.4.5 Multiple Ways**: More than one way is available to locate a Web page within a set of Web pages except where the Web Page is the result of, or a step in, a process.

**2.4.6 Headings and Labels**: Headings and labels describe topic or purpose.

**3.1.1 Language of Page**: The default human language of each Web page can be programmatically determined.

**3.1.2 Language of Parts**: The human language of each passage or phrase in the content can be programmatically determined except for proper names, technical terms, words of indeterminate language, and words or phrases that have become part of the vernacular of the immediately surrounding text.

**3.2.1 On Focus**: When any user interface component receives focus, it does not initiate a change of context.

**3.2.2 On Input**: Changing the setting of any user interface component does not automatically cause a change of context unless the user has been advised of the behavior before using the component.

**3.2.3 Consistent Navigation**: Navigational mechanisms that are repeated on multiple Web pages within a set of Web pages occur in the same relative order each time they are repeated, unless a change is initiated by the user.

**3.2.4 Consistent Identification**: Components that have the same functionality within a set of Web pages are identified consistently.

**3.3.1 Error Identification**: If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

**3.3.2 Labels or Instruction**: Labels or instructions are provided when content requires user input.

**3.3.3 Error Suggestion**: If an input error is automatically detected and suggestions for correction are known, then the suggestions are provided to the user, unless it would jeopardize the security or purpose of the content.

**3.3.4 Error Prevention (Legal, Financial, Data**): For Web pages that cause legal commitments or financial transactions for the user to occur, that modify or delete user-controllable data in data storage systems, or that submit user test responses, at least one of the following is true: Reversible, Checked, Confirmed

**4.1.2 Name, Role, Value**: For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

**4.1.3 Status Messages**: In content implemented using markup languages, status messages can be programmatically determined through role or properties such that they can be presented to the user by assistive technologies without receiving focus.

# Exhibit D

DocuSign Envelope ID: 891E79C4-ACE7-4734-A9E5-68F6E14EEBDE

DocuSign Envelope ID: 891E79C4-ACE7-4734-A9E5-68F6E14EEBDE

# AudioNav Keypad for iOS – Screenshot 9 Sept 2021

Lisa Seeman

Interface Specialists since 1986

+44 (0)1895 431421 +1 (480) 584 3518

Home About Products Manufacturing News Downloads Contact Search

KMA

Part Number: INP781-01 Range: ATP

AudioNav™ Developer Kit for iOS

PRICE EACH $309.75 excl VAT

Qty 1

Add to Cart

For ordered quantities of up to **20** pieces these products are usually despatched within **10** working days. Please contact us for a despatch schedule for deliveries of more than 20 pieces.

DESCRIPTION

The AudioNav was developed primarily for use in applications where the host PC is a Windows PC. However, it is also possible to use this ADA compliant assistive USB interface with an iOS device.

Please note: the AudioNav must have iOS specific firmware in order for it to work with an iOS device. Some other interface products are also required.

This developer kit contains everything needed for connecting an AudioNav to an iOS device, including the AudioNav itself (with iOS specific firmware).

The kit contains:

- AudioNav with iOS specific firmware (please note, the kit is supplied with a panel mounted version of the AudioNav with green LEDs)
- iPad adaptor (with 3 USB sockets)
- Cable USB A to mini USB (Qty 2)
- Lightning to USB Camera Adaptor
- Power Supply (2 port) with USA adaptor
- Cable USB A to Lightning
- Cable USB A to micro USB

AudioNav Website

# EXHIBIT 33

Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345

Benjamin J. Sweet
(*Admitted Pro Hac Vice*)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

Attorneys for Plaintiffs Julian Vargas, American Council of the Blind, and the Proposed Class

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

JULIAN VARGAS, ANNE WEST, and AMERICAN COUNCIL OF THE BLIND, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,

Defendants.

CASE NO.: 2:19-cv-8108

**DECLARATION OF JED GREENE, CPA, CFF, CMA, IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Hearing Date:** **October 29, 2021**
**Time:** **10:00 am**
**Courtroom:** **8C**

Complaint Filed: September 18, 2019
Pretrial Conf: December 7, 2021
Trial Date: January 11, 2022
District Judge: Hon. Dolly M. Gee
Magistrate: Hon. Michael M. Wilner

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

# DECLARATION OF JED GREENE, CPA, CRR, CMA

I, Jed Greene, declare as follows:

1. I make this declaration based on my personal knowledge. If called to testify, I could and would competently testify as to the matters set forth herein. This declaration is submitted in support of plaintiffs' motion for class certification and opposition to defendants' motion for summary judgement.

## I. INTRODUCTION

2. Five Corners Consulting Group, LLC ("Five Corners Group") was retained by Counsel for Julian Vargas, et al. (the "Plaintiffs") in the case against Quest Diagnostics Clinical Laboratories, Inc., Quest Diagnostics Holdings, Inc., and Quest Diagnostics Incorporated (collectively, "Quest" or "Defendants") to determine the minimum number of legally blind persons that attempted to use a Quest touchscreen electronic check-in ("Quest Kiosk") at a Quest Patient Service Center ("PSC") during the period of January 2018 through December 2019.

## II. SUMMARY OF FINDINGS

3. From January 2018 through December 2019, a minimum of 6,152 legally blind persons located in California attempted to use a Quest Kiosk. From January 2018 through December 2019, a minimum of 31,863 legally blind persons located in the United States attempted to use a Quest Kiosk. The basis for my conclusions includes, but is not limited to, the following facts and analyses (as discussed more below):

a. The average percentages of the United States and California populations that are legally blind are 0.33% and 0.27%, respectively. The minimum percentages (the low end of the 95% confidence interval) of the United States and California populations that are legally blind are 0.25% and 0.21%, respectively.

b. In 2018, there were 32,696,929 Quest Kiosk check-ins in the United States and 7,515,365 Kiosk check-ins in California.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

c. In 2019, there were 38,046,872 Quest Kiosk check-ins in the United States and 8,584,783 Kiosk check-ins in California.

d. Quest has approximately 2,200 PSCs nationwide, with more than 90% of the U.S. population residing within 20 miles of a PSC.[1]

e. From 2017 through 2019, the average United States population was 326,882,067 and the average California population was 39,503,488. During that same time period, the minimum United States population was 325,719,178 and the minimum California population was 39,461,588.

## III. SUMMARY OF EXPERT QUALIFICATIONS

4. I am a Principal at Five Corners Group. I have been working as a litigation and forensic consultant for over 22 years and I have been working in the accounting profession for over 25 years. In that time, I have worked on more than 100 complex litigation matters, generally in state Superior Courts and Federal Courts, that have required extensive cost estimation, valuation, and/or economic analysis. I have performed this work for large and small companies in the private sector, as well as for state and federal agencies (*e.g.*, State of California and Securities & Exchange Commission). My curriculum vitae is attached as **Exhibit A** and a listing of my testimony in prior litigation matters is attached as **Exhibit B**.

5. I am a Certified Public Accountant, licensed in the State of California, a Certified Management Accountant, certified by the Institute of Management Accountants and Certified in Financial Forensics through the American Institute of Certified Public Accountants ("AICPA").

6. I am currently an adjunct professor at Golden Gate University in San

[1] https://images.wellness.questdiagnostics.com/Web/QuestDiagnosticsServices/%7B2e980321-760a-485d-9c32-5bf16832e5ec%7D_PSC_Product_Overview.pdf?_ga=2.174926690.1580939982.1630711866-509577012.1630711866.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Francisco, California. I teach in its Forensic Accounting Program (a subset of its Masters of Accounting Program) and previously served on its Advisory Board. I currently teach or have previously taught the following classes: *Intellectual Property; Introduction to Financial Forensic Accounting; Economic Damages;* and *Lost Wages and Employment Litigation*. I have also taught several classes relating to litigation consulting and expert testimony to audiences including California Society of Certified Public Accountants ("CalCPA") and the Federal Bureau of Investigations.

7. I am a member of CalCPA, a 40,000-member organization. I was elected by its State Council and completed a two-year term as a Board member for CalCPA in 2011. I also served as a State Council member and as a member of its Economic Damages Section. I have previously served as President, First Vice President, Second Vice President, Secretary, and Treasurer of the San Francisco Chapter, as co-chair of its Litigation Consulting Services Committee in San Francisco, and as a member of its statewide Litigation Steering Committee. In 2020, I received the Distinguished Service Award for my service to the San Francisco Chapter of CalCPA. I am a member of the AICPA and have previously served on its six-member Economic Damages Task Force.

8. Five Corners Group charges $425 per hour for time I spend consulting and time that may be spent testifying related to my analysis in this matter. Other professionals working under my direction on this matter have billing rates of $275 to $375 per hour. My compensation is not dependent on the outcome of this matter. Neither I nor the Five Corners Group has a financial interest in the outcome of this litigation.

**IV. EVIDENCE CONSIDERED**

9. In undertaking this assignment, I have considered information from a variety of sources, each of which is of a type that is reasonably relied upon by

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

experts in my field. Those sources are cited herein, in the accompanying Exhibits, and/or identified in Exhibit C to this declaration.

10. I have also relied upon my own professional judgment and expertise gathered from my 25 years of experience involving litigation matters and accounting.

## V. BACKGROUND

### A. Quest

11. Quest is "the leading provider in the United States, where [it] conduct[s] substantially all of [its] business, of clinical laboratory and anatomic pathology testing, and related services.[2] Quest's patients "comprise approximately one-third of the adult population of the United States annually, and approximately one-half of the adult population in the United States over a three-year period. [Quest] estimates that annually [it] serve[s] approximately half of the physicians and half of the hospitals in the United States."[3]

12. Quest "offers wellness screenings at approximately 2,200 Patient Service Centers (PSCs) nationwide, with more than 90% of the U.S. population residing within 20 miles of a PSC."[4]

13. In 2016, Quest launched electronic check-in for patients.[5] By 2017, approximately 45% of their locations had Kiosks, and they were in every location by 2018.[6]

14. In 2018, Quest achieved revenues of $7.5 billion and a net income of $736 million. In 2019, those numbers increased to $7.7 billion in

---

[2] Quest Diagnostics, Inc. 2019 10-K, p. 10.

[3] Quest Diagnostics, Inc. 2019 10-K, p. 2.

[4] https://images.wellness.questdiagnostics.com/Web/QuestDiagnosticsServices/%7B2e980321-760a-485d-9c32-5bf16832e5ec%7D_PSC_Product_Overview.pdf?_ga=2.174926690.1580939982.1630711866-509577012.1630711866.

[5] Quest Diagnostics, Inc. 2017 10-K, p. 5.

[6] Deposition of Marc Yarrison dated April 8, 2021, pp. 35-36.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

revenue and $858 million in net income.[7] Revenue dramatically jumped in 2020 to $9.4 billion with $1.5 billion in net income. [8]

**B. Legally Blind Persons**

15. "In 2015, a total of 1.02 million people were blind, and approximately 3.22 million people in the United States had vision impairment."[9] Legally blind is defined as "best-corrected visual acuity worse than or equal to 20/200 in the better-seeing eye."[10] Another study performed by JAMA Ophthalmology, published in July 2021, estimated that there were 1.08 million legally blind people in the United States in 2017, or 0.33% of the population.[11] There are several statistical studies on the number of legally blind persons, broken down by geography, age and race. Some of these studies are discussed more below.

## VI. ANALYSES

16. There are two major factors in determining the number of legally blind persons that attempted to use a Quest Kiosk: (1) Quest's penetration in the United States and California markets; and (2) the percent of the population that is legally blind.

17. As mentioned above, Quest services one-third of the adult population of the United States annually, and approximately one-half of the adult population in the United States over a three-year period,[12] and 90% of the U.S. population

---

[7] Quest Diagnostics, Inc. 2019 10-K, p. 52.
[8] Quest Diagnostics, Inc. 2020 10-K, p. F-4.
[9] https://www.cdc.gov/visionhealth/risk/burden.htm.
[10] https://www.aao.org/newsroom/eye-health-statistics#_edn11.
[11] "Prevalence of Visual Acuity Loss or Blindness in the US"; JAMA Ophthalmology, published July 2021; Abraham D. Flaxman, PhD; John S. Wittenborn, BS; Toshana Robalik, BS; Rohit Gulia, MS; Robert B. Gerzoff, MS; Elizabeth A. Lundeen, PhD, MPH; Jinan Saaddine, MD, MPH; David B. Rein, PhD, MPA.
[12] Quest did not disclose this same information for minors, however, I have assumed that similar percentages would apply to the population of minors. Given that the legally blind prevalence in minors is relatively low (source -

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

residing within 20 miles of a Quest PSC.[13] In 2018 and 2019, Quest processed approximately 168 million and 175 million test requisitions, respectively, with a portion of those test requisitions from in-person visits to its PSCs.[14]

18. The Center for Disease Control and Prevention ("CDC") publishes statistics and estimates on the prevalence of blindness (legally blind), through the Vision and Eye Health Surveillance System ("VEHSS").

19. "CDC's Vision Health Initiative (VHI) and NORC at the University of Chicago partnered to develop the National Vision and Eye Health Surveillance System (VEHSS). VEHSS leverages new and existing data sources to help health professionals, researchers, policy makers, and patients understand the scope of vision loss, eye disorders, and eye care services in the United States."[15] As shown in the image below, the VEHSS relies on a number of well-established sources as the basis for its findings.

https://www.cdc.gov/visionhealth/vehss/index.html), any deviance in the minor percentages from the adult percentages would have a minimal, if any, effect on the numbers determined in Analysis #2 and #3 and would not affect Analysis #1.

[13] Quest Diagnostics, Inc. 2019 10-K, p. 2.; https://images.wellness.questdiagnostics.com/Web/QuestDiagnosticsServices/%7B2e980321-760a-485d-9c32-5bf16832e5ec%7D_PSC_Product_Overview.pdf?_ga=2.174926690.1580939982.1630711866-509577012.1630711866.

[14] Quest Diagnostics, Inc. 2019 10-K, p. 9, Quest Diagnostics, Inc. 2018 10-K, p. 8.

[15] https://www.cdc.gov/visionhealth/vehss/project/index.html.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

IMAGE 1 – VEHSS DATA SOURCES[16]

CDC Centers for Disease Control and Prevention

# Information on Data Sources

VEHSS brings many different sources of data together in one place, where each is analyzed using consistent methods, and outcomes are reported using uniform case definitions. The four different types of data included in VEHSS described below are available for researchers interested in results from individual data sets.

VEHSS also combines these data sources to produce the VEHSS Composite Estimates, intended to provide more comprehensive estimates of major vision and eye health indicators than can be captured in any single data source

National Surveys
High-level overview of the six national surveys included in the surveillance system.

Examination-Based Studies
Brief overview of examination-based studies and prevalence of adult vision impairment and age-related eye disease in America.

Electronic Health Records and Registries
Review of Electronic medical record databases/EMR registries including their highlighted coverage area.

Administrative Claims Records
Review of Medicare, Medicaid, MarketScan and VSP claims databases including their highlighted coverage area.

20. The latest statistics provided by the CDC and the VEHSS from 2017 are summarized and applied to 2017 population information in the table below.

TABLE 1 – LEGALLY BLIND PREVALENCE[17]

| | | *95% Confidence Interval* | |
|---|---|---|---|
| | **Average** | **Low End** | **High End** |
| **California** | | | |
| Percent of Population that is Legally Blind - Average (2017) | 0.27% | 0.21% | 0.33% |
| California Population (2017) | 39,536,653 | 39,536,653 | 39,536,653 |
| Number of Legally Blind Persons in California | 106,749 | 83,027 | 130,471 |
| **United States** | | | |
| Percent of Population that is Legally Blind - Average (2017) | 0.33% | 0.25% | 0.40% |
| United States Population (2017) | 325,719,178 | 325,719,178 | 325,719,178 |
| Number of Legally Blind Persons in United States | 1,074,873 | 814,298 | 1,302,877 |

[16] https://www.cdc.gov/visionhealth/vehss/data/index.html.
[17] See Exhibit E.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**A. Analysis #1: Quest Kiosk Check-Ins**

21. The first analysis performed was to analyze the number of check-ins at a Quest Kiosk at one of its PSCs. The Defendant provided interrogatory responses of the number of Quest Kiosk check-ins for 2018 and 2019 for both California and the United States. Based on these annual Quest Kiosk check-ins, the average annual Quest Kiosk check-ins and the minimum annual Quest Kiosk check-ins were determined, as demonstrated in the table below:

TABLE 2 – KIOSK CHECK-INS[18]

| | California | United States |
|---|---|---|
| Check-ins on Kiosks (2018) | 7,515,365 | 32,696,929 |
| Check-ins on Kiosks (2019) | 8,584,783 | 38,046,872 |
| Average Annual Check-ins | 8,050,074 | 35,371,901 |
| Minimum Annual Check-ins | 7,515,365 | 32,696,929 |

22. Within any given year, the same person could check into a Quest Kiosk multiple times. According to one health website: "Your doctor will typically recommend that you get routine blood work at least once a year, around the same time as your yearly physical. But this is the bare minimum. There are several major reasons you may want to get blood tests more often than that."[19] Through documents, testimonials and depositions in this matter, I was able to identify 19 patients who stated that they visited a PSC an average of 2.57 times per year.[20] Based on this information and analysis, the estimated number of patients attempting to use a Quest Kiosk was determined (by dividing the number of Quest Kiosk check-ins by the average visits per year). As a result, on average, 13,787,992 patients in the United States attempted to use a Quest Kiosk annually, while

[18] See Exhibit E.
[19] https://www.healthline.com/health/blood-tests#frequency.
[20] See Exhibit I.

3,137,925 patients in California attempted to use a Quest Kiosk annually.[21] Additionally, at a minimum, an estimated 12,745,286 patients in the United States attempted to use a Quest Kiosk annually, while 2,929,495 patients in California attempted to use a Quest Kiosk annually.[22]

23. Finally, the CDC statistics mentioned above were used to determine the number of legally blind persons that attempted to use a Quest Kiosk. Based on this analysis, on average, 45,500 legally blind persons in the United States attempted to use a Quest Kiosk annually, while 8,472 legally blind persons in California attempted to use a Quest Kiosk annually, see Table 3 below. At a minimum, 31,863 legally blind persons in the United States attempted to use a Quest Kiosk annually, while 6,152 legally blind persons in California attempted to use a Quest Kiosk annually, see Table 3 below. These figures are on an annual basis, so the number of legally blind persons who attempted to use a Quest Kiosk from January 2018 through December 2019 is likely higher.[23]

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

[21] See Exhibit E.
[22] See Exhibit E.
[23] Quest provided the number of kiosk visits on an annual basis. Although it is likely that a person could visit a Quest PSC in both 2018 and 2019, Quest did not provide information on how often that occurs.

TABLE 3 – ANALYSIS #1[24]

| | California | United States |
|---|---|---|
| Check-ins on Kiosks (2018) | 7,515,365 | 32,696,929 |
| Check-ins on Kiosks (2019) | 8,584,783 | 38,046,872 |
| Average Annual Check-ins | 8,050,074 | 35,371,901 |
| Minimum Annual Check-ins | 7,515,365 | 32,696,929 |
| Average Patient Visits Per Year | 2.57 | 2.57 |
| Estimated Patients Per Year (Average) | 3,137,925 | 13,787,992 |
| Estimated Patients Per Year (Minimum) | 2,929,495 | 12,745,286 |
| Percent of Population that is Legally Blind - Average (2017) | 0.27% | 0.33% |
| Percent of Population that is Legally Blind - Low End of 95% Confidence (2017) | 0.21% | 0.25% |
| ***Average Legally Blind Population That Attempted to Use a Quest Kiosk*** | **8,472** | **45,500** |
| ***Minimum Legally Blind Population That Attempted to Use a Quest Kiosk*** | **6,152** | **31,863** |

### B. Analysis #2: Quest Users Based on Total Population

24. Another measure of the legally blind population that attempted to use a Quest Kiosk is based on an analysis that starts with the population of the United States and California during the 2017, 2018, and 2019 calendar years.[25] Note that the population figures are derived from three different sources: the 2017 data is derived from the CDC statistics mentioned above; the 2018 data is derived from a "QuickFacts" table provided by the United States Census Bureau; and the 2019 data is derived from a United States Census Bureau table titled "Annual Estimates of the Resident Population for the United States, Regions, States, and Puerto Rico: April 1, 2010 to July 1, 2019".[26] From these annual population numbers, I determined the average population and the minimum population over those three years.

---

[24] See Exhibit E.

[25] Although the period analyzed in this declaration does not include 2017, 2017 numbers are used for Analysis #2 and #3 to better match with the legally blind statistics (2017 was the latest data available for legally blind statistics). The use of the 2017 population numbers slightly lowers the United States results in Analysis #2 and #3.

[26] Source of California 2017 information: https://ddt-vehss.cdc.gov/LP?LocationId=06&DataSourceTypeId=PREVESTIMATES&DataS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

25. According to the Quest Annual Reports from 2017 through 2020, 33% of the U.S. adult population utilized Quest during a one-year period and 50% of the U.S. adult population used Quest during a three-year period.[27] To determine the percent of the population that utilized Quest during a two-year period (to best match the period of January 2018 through December 2019), the middle point between the one-year period of 33% and the three-year period of 50% was used, or 41.5%.

26. As mentioned above, in 2018 and 2019, Quest processed approximately 168 million and 175 million test requisitions, respectively. A portion of those requisitions were persons who attempted to use a Quest Kiosk, which can be estimated by the number of Quest Kiosk check-ins during the similar time period, as summarized in the table below.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

ourceId=PREV&TopicId=TVFUNC&CategoryId=CVISAC&IndicatorId=QBM&ShowFootnotes=true&View=Chart&CompareViewYear=1&CompareId=&CompareId2=&YearId=YR9&ResponseId=RVUSB&AgeId=AGEALL&GenderId=GALL&RaceId=ALLRACE&RiskFactorId=RFPERS&RiskFactorResponseId=RFTOT&DataValueTypeId=AGEADJPREV&MapClassifierId=quantile&MapClassifierCount=4&CountyFlag=N; Source of National 2017 Information: https://ddt-vehss.cdc.gov/LP?LocationId=59&DataSourceTypeId=PREVESTIMATES&DataSourceId=PREV&TopicId=TVFUNC&CategoryId=CVISAC&IndicatorId=QBM&ShowFootnotes=true&View=Chart&CompareViewYear=1&CompareId=&CompareId2=&YearId=YR9&ResponseId=RVUSB&AgeId=AGEALL&GenderId=GALL&RaceId=ALLRACE&RiskFactorId=RFPERS&RiskFactorResponseId=RFTOT&DataValueTypeId=AGEADJPREV&MapClassifierId=quantile&MapClassifierCount=4&CountyFlag=false; https://www.census.gov/quickfacts/fact/table/CA,US/PST045219; https://www.census.gov/data/tables/time-series/demo/popest/2010s-national-total.html#par_textimage_2011805803.

[27] Quest Diagnostics, Inc. 2019 10-K, p. 2.

TABLE 4 – QUEST TEST REQUISITIONS[28]

| | 2018 | 2019 |
|---|---|---|
| Number of Total Test Requisitions by Quest | 168,000,000 | 175,000,000 |
| Check-ins on Kiosks | 32,696,929 | 38,046,872 |
| Percent of Test Requisitions Requiring a Kiosk | 19.5% | 21.7% |
| ***Average Percent of Test Requisitions Requiring a Kiosk (2018-2019)*** | | **20.6%** |

27. Multiplying the 41.5% United States population that used Quest during a two-year period by the 20.6% of test requisitions that require a Quest Kiosk, results in 8.5% of the United States population attempted to use a Quest Kiosk from January 2018 through December 2019.[29] Multiplying the population, and the percent of the U.S. population that on average attempted to use a Quest Kiosk from January 2018 through December 2019, results in, on average, 27,947,541 patients in the United States attempted to use a Quest Kiosk, while 3,377,442 patients in California attempted to use a Quest Kiosk.[30] Additionally, at a minimum, an estimated 27,848,117 patients in the United States attempted to use a Quest Kiosk, while 3,373,860 patients in California attempted to use a Quest Kiosk.[31]

28. These figures are then multiplied by the percent of United States and California population that are legally blind, resulting in an estimate of the average number of the legally blind population that attempted to use a Quest Kiosk from January 2018 through December 2019. According to this analysis, 92,227 legally blind persons in the United States attempted to use a Quest Kiosk, while 9,119 legally blind persons in California attempted to use a Quest Kiosks (see Table 5 below). Additionally, multiplying the minimum estimate of the population that attempted to use a Quest Kiosk by the low end of the estimated population that are

[28] See Exhibit H.
[29] See Exhibit F.
[30] See Exhibit F.
[31] See Exhibit F.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

legally blind, at the low end of the 95% confidence interval, results in an estimate of the minimum number of legally blind persons that attempted to use a Quest Kiosk. According to this analysis, at a minimum, 69,620 legally blind persons in the United States attempted to use a Quest Kiosk, while 7,085 legally blind persons in California attempted to use a Quest Kiosk (see Table 5 below).

TABLE 5 – ANALYSIS #2[32]

| | **California** | **United States** |
|---|---|---|
| Population (2017) | 39,536,653 | 325,719,178 |
| Population (2018) | 39,461,588 | 326,687,501 |
| Population (2019) | 39,512,223 | 328,239,523 |
| *Average Population* | 39,503,488 | 326,882,067 |
| *Minimum Population* | 39,461,588 | 325,719,178 |
| Percent of U.S. Population Using a Quest Kiosk | 8.5% | 8.5% |
| Average Population That Attempted to Use a Quest Kiosk | 3,377,442 | 27,947,541 |
| Minimum Population That Attempted to Use a Quest Kiosk | 3,373,860 | 27,848,117 |
| Percent of Population that is Legally Blind - Average (2017) | 0.27% | 0.33% |
| Percent of Population that is Legally Blind - Low End of 95% Confidence (2017) | 0.21% | 0.25% |
| ***Average Legally Blind Population That Attempted to Use a Quest Kiosk*** | **9,119** | **92,227** |
| ***Minimum Legally Blind Population That Attempted to Use a Quest Kiosk*** | **7,085** | **69,620** |

### C. Analysis #3: Quest Users Based on Serviced Population

29. The third analysis is similar to Analysis #2, except that the populations in counties that do not have a Quest PSC are removed. Quest "offers wellness screenings at approximately 2,200 Patient Service Centers (PSCs) nationwide, with more than 90% of the U.S. population residing within 20 miles of a PSC."[33] However, there are several United States counties that do not have a Quest PSC. For example, in California, there are 15 counties that do not have Quest PSCs.[34] These counties tend to be the least populated counties. Conversely, in Los Angeles

[32] See Exhibit F.

[33] https://images.wellness.questdiagnostics.com/Web/QuestDiagnosticsServices/%7B2e980321-760a-485d-9c32-5bf16832e5ec%7D_PSC_Product_Overview.pdf?_ga=2.174926690.1580939982.1630711866-509577012.1630711866.

[34] See Exhibit K.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

County, there are 77 Quest PSCs.[35] In the United States, there are several states that do not have any PSCs: Arizona, Hawaii, North Dakota, Oklahoma, South Dakota, Vermont, and Wyoming.[36] The remaining population that resides in counties with a Quest PSC is below.

TABLE 6 – COUNTIES WITH A PSC[37]

| | California | United States |
|---|---|---|
| Average Population in Counties That Have Quest Centers | 38,611,507 | 223,059,021 |
| Minimum Population in Counties That Have Quest Centers | 38,417,236 | 221,194,239 |

30. Similar to Analysis #2, the percent of population the that used a Quest Kiosk, as well as the percentage of the population that is legally blind, is applied to the average population in counties that have Quest centers, resulting in 62,934 legally blind persons in the United States that attempted to use a Quest Kiosk, while 8,913 legally blind persons in California attempted to use a Quest Kiosk (see Table 7 below). Additionally, at a minimum, 47,279 legally blind persons in the United States attempted to use a Quest Kiosk, while 6,898 legally blind persons in California attempted to use a Quest Kiosk (see Table 7 below).

[35] See Exhibit L.
[36] See Exhibit M.
[37] See Exhibit G.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

TABLE 7 – ANALYSIS #3[38]

| | California | United States |
|---|---|---|
| Average Population in Counties That Have Quest Centers | 38,611,507 | 223,059,021 |
| Minimum Population in Counties That Have Quest Centers | 38,417,236 | 221,194,239 |
| Percent of U.S. Population Using a Quest Kiosk | 8.5% | 8.5% |
| Average Population That Attempted to Use a Quest Kiosk | 3,301,180 | 19,070,948 |
| Minimum Population That Attempted to Use a Quest Kiosk | 3,284,571 | 18,911,515 |
| Percent of Population that is Legally Blind - Average (2017) | 0.27% | 0.33% |
| Percent of Population that is Legally Blind - Low End of 95% Confidence (2017) | 0.21% | 0.25% |
| ***Average Legally Blind Population That Attempted to Use a Quest Kiosk*** | **8,913** | **62,934** |
| ***Minimum Legally Blind Population That Attempted to Use a Quest Kiosk*** | **6,898** | **47,279** |

31. By excluding counties that do not have a Quest PSC, the United States population serviced by a Quest PSC drops by approximately 32%, while California drops by approximately 2 percent. Based on this analysis, the remaining 68% of the United States population serviced by a Quest PSC is much lower than the 90% of the U.S. population residing within 20 miles of a PSC, as purported by Quest. So, the resulting figures could be lower than actual. In addition, Quest's estimate of the percent of the United States population that is serviced by Quest was used, which inherently already excludes populations that are geographically outside the reasonable reach of a Quest PSC. Therefore, by applying Quest's estimate of the percent of the United States population that is serviced by Quest to the paired down population numbers in this analysis would result in numbers that are likely lower than the actual amount of legally blind persons that visit a Quest PSC. In addition, using the Quest estimate of 90% to the entire U.S. and California populations would result in higher numbers than in Table 7 for the number of legally blind persons that attempted to use a Quest Kiosk.

[38] See Exhibit G.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## VII. CONCLUSION

32. The table below summarizes the results of the three analyses. Based on these three analyses, from January 2018 through December 2019, the minimum number of legally blind persons in the United States that attempted to use a Quest Kiosk is 31,863 while the minimum number of legally blind persons in California that attempted to use a Quest Kiosk is 6,152.

TABLE 8 – ANALYSES SUMMARY[39]

| | California | United States |
|---|---|---|
| **Analysis #1: Check-ins** | | |
| *Average Legally Blind Population That Attempted to Use a Quest Kiosk* | 8,472 | 45,500 |
| *Minimum Legally Blind Population That Attempted to Use a Quest Kiosk* | 6,152 | 31,863 |
| **Analysis #2: Total Population** | | |
| *Average Legally Blind Population That Attempted to Use a Quest Kiosk* | 9,119 | 92,227 |
| *Minimum Legally Blind Population That Attempted to Use a Quest Kiosk* | 7,085 | 69,620 |
| **Analysis #3: Serviced Population** | | |
| *Average Legally Blind Population That Attempted to Use a Quest Kiosk* | 8,913 | 62,934 |
| *Minimum Legally Blind Population That Attempted to Use a Quest Kiosk* | 6,898 | 47,279 |

33. The three analyses result in similar results. Analysis #2 and #3 are higher than Analysis #1 because they consider a two-year period, while Analysis #1 is an annual figure. Analysis #3 is lower than Analysis #2 because the populations of counties without Quest PSCs are excluded.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed at 875 4th Street, San Rafael, CA this 9 th day of September 2021.

JED GREENE, CPA, CFF, CMA

[39] See Exhibit D.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

# Jed Greene, CPA, CFF, CMA

Principal

jed.greene@5cornersgroup.com
415.508.3377

Jed Greene is a Principal at Five Corners Group. Mr. Greene has over 20 years of experience handling various matters involving intellectual property disputes, commercial litigation and fraud investigations. He also advises companies on various intellectual property issues, including licensing, acquisition, valuation, patent filings, and patent litigation risk assessment. Prior to joining Five Corners Group, Mr. Greene led the commercial litigation practice at Seiler LLP and worked in the litigation consulting practices of FTI Consulting, Inc., LECG, LLC and Hemming Morse, Inc.

Mr. Greene has worked on over 100 matters including fraud investigations, patent infringement, misappropriation of trade secrets, breach of contract disputes, trademark infringement, business interruption, anti-trust violations, accountants' liability actions, false advertising, troubled acquisitions, and employment disputes.

Mr. Greene is a Certified Public Accountant (CPA), a Certified Management Accountant (CMA), and Certified in Financial Forensics (CFF). Mr. Greene also serves as an adjunct professor in the Forensic Accounting Program at Golden Gate University.

## Certifications

| | |
|---|---|
| Certified Public Accountant, State of California (active) | 1998 |
| Certified Management Accountant (active) | 2004 |
| Certified in Financial Forensics (active) | 2008 |

## Education

University of California, Santa Barbara
*B.A. Business Economics, Emphasis in Accounting*

## Professional Affiliations

Member, American Institute of Certified Public Accountants
- Economic Damages Task Force *(2006 to 2011)*
- Instructor – Economic Damages/Individuals: Financial Forensic Accounting Series – CFF Credential Training *(2010 – present)*

Member, California Society of CPAs
- State Council *(2003 to 2007, 2009 to 2014)*
- Board of Directors, State Council *(2009 to 2011)*
- Nominations Committee of State Council *(2006 to 2008)*
- State Economic Damages Section *(2006 to 2015)*
- State Litigation Steering Committee *(2006 to 2007)*
- Board of Directors, San Francisco Chapter *(2001 to 2015)*
- President *(2013 to 2014)*, First Vice-President *(2012 to 2013),* Second Vice-President *(2011 to 2012),* Secretary *(2010 to 2011),* and Treasurer *(2009 to 2010)*, San Francisco Chapter
- Co-Chair, San Francisco Litigation Consulting Services Committee *(2006 to 2008)*



Member, Licensing Executives Society (2018)

Member, Institute of Management Accountants

Golden Gate University Forensic Accounting Program
- Advisory Board Member *(2009 to present)*
- Adjunct Professor *(2009 to present)*
  - Instructor, *Lost Wages and Employment Litigation*
  - Instructor, *Economic Damages*
  - Instructor, *Intellectual Property*
  - Guest Instructor, *Introduction to Forensic Accounting*

Treasurer, Downtown San Rafael Business Improvement District *(2017 to present)*

Steering Committee Member (Alternate), San Rafael General Plan 2040 *(2018 to 2021)*

U.S. Patent No. D846,831 (Named Inventor)

## Professional Experience

| | |
|---|---|
| Five Corners Group<br>*Principal* | 2011 – Present |
| Golden Gate University<br>*Adjunct Professor* | 2009 – Present |
| Carneros Bay<br>*Chief Financial Officer* | 2015 – 2016 |
| Seiler, LLP<br>*Principal* | 2009 – 2011 |
| FTI Consulting, Inc.<br>*Director* | 2006 – 2009 |
| LECG, LLC<br>*Senior Managing Consultant* | 2006 |
| Hemming Morse, Inc.<br>*Senior through Manager* | 1998 – 2006 |
| McGowan Guntermann<br>*Accountant through Senior Accountant* | 1995 – 1998 |



## Presentations

- *"Fraud Prevention and Cybersecurity"*, Bank of Marin, San Rafael, CA, 2019 (co-presenter)
- *"Forensic Accounting"*, San Rafael Rotary Club, San Rafael, CA, 2017
- *"Update on Intellectual Property Damages"*, Economic Damages Section, California Society of CPAs, Oakland, CA, 2012
- *"Case Law Review: Highlights from Recent Damages Cases"*, AICPA National Forensic Accounting Conference, Chicago, IL, 2011
- *"Ten Key Economic Damages Cases of 2010"*, Economic Damages Section, California Society of CPAs, Los Angeles, CA, 2011
- "*Understanding and Utilizing Financial Statements"*, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, CA, 2008
- *"Patent Damages After eBay",* Litigation Consulting Committee, California Society of CPAs, San Francisco, CA, 2007 (panel moderator)
- *"Expert Witnesses",* Thelen, Reid, Brown, Raysman & Steiner, San Francisco, CA, 2007
- *"Litigation Consulting and Forensic Accounting",* California Society of CPAs, Riverside, CA, 2006
- *"Backdated Options: What You Need to Know"*, Litigation Consulting Committee, California Society of CPAs, San Francisco, CA, 2006 (panel moderator)
- *"A Career in Accounting"*, Dominican College, San Rafael, CA, 2006
- "*Forensic Accounting and Litigation Consulting",* UC Santa Barbara, Accounting Association, 2006
- "*Patent Damages",* California Society of CPAs, San Francisco, CA, 2005
- "*Expert Pitfalls",* California Society of CPAs, San Francisco, CA, 2005
- "*Forensic Accounting",* UC Santa Barbara, Accounting Association, 2005
- "*Calculating Damages in Patent Infringement",* Hemming Morse, Inc., San Francisco, CA, 2005
- "*Getting Certified",* California Society of CPAs, Young Professionals Committee, San Francisco, CA, 2004
- "*How to Avoid Pitfalls in Expert Testimony",* California Society of CPAs, San Francisco, CA, 2003
- "*Understanding the Power of Discounting in Damages",* Barristers Club, San Francisco, CA, 2002
- "*Intellectual Property Damages",* Federal Bureau of Investigation, Quantico, VA, 2001
- "*The SEC, Fraud and the Auditor",* California Society of CPAs, Accounting and Auditing Group, Santa Barbara, CA, 2000
- Hastings College of Law, College of Advocacy, Participated in Business Litigation Institute Seminar as Expert Witness, 2000
- "*Calculating Damages in Patent Infringement: A Case Study",* Hemming Morse, Inc., San Francisco, CA, 2000
- "*Understanding Financial Statements",* Miller, Starr & Regalia, Walnut Creek, CA, 1999

## Publications

- "*Best Practices for Early Patent Damages Contentions*", San Francisco Daily Journal, January 2018
- "*Rebalancing Your IP Portfolio*", Licensing Executive Society Insights, June 2015 (co-author)
- "*Recent Patent Law is Diminishing the Value of United States Patents*", Licensing Executive Society Insights, March 2015
- "*Using Google Scholar to Research Case Law and a Review of Recent Cases*", National Litigation Consultants' Review, Summer 2012 (co-author)
- "*New Federal Discovery Rules for Experts*", Financial Expert, Winter 2011
- "*A Rule of Thumb in Patent Damages?*", The Witness Chair, Summer 2005
- "*CPA: A License to Lead*", Candidate Connection, published by the California Society of CPAs, Fall 2004

## Selected Experience

*Intellectual Property Consulting*

- Created a risk model to assess the potential exposure of patent litigation for new product launches for a Fortune 500 company.
- Assisted in the start-up and development of an intellectual property licensing and technology company.
- Analyzed the potential market and potential damages in a pre-litigation assessment of alleged trade secrets misappropriation.
- Developed an outbound licensing policy for the intellectual property owned by a storage router manufacturer.
- Assisted in the negotiations of settlement agreements, revenue sharing agreements and licensing agreements for a Fortune 500 company.

*Intellectual Property Litigation*

- Hired as the damages expert for the defendant, a large software provider. The plaintiff alleged that the defendant infringed its patents related to the creation of websites. Prepared rebuttal opinions to the plaintiff's claim of lost profits and reasonable royalty damages.
- Retained by multiple software company defendants accused of infringing patents related to data transformation. We filed several rebuttal and supplemental damages reports.
- Assisted a supplier of audio components for mobile devices in multiple patent litigations against its competitor.
- Hired as the damages expert for the defendant, a business intelligence software developer. Plaintiff alleged the defendant infringed its patent related to the casino industry.
- Retained by a licensing entity to assess damages related to the patent infringement by a mobile phone manufacturer.

*Commercial Litigation*

- Anti-trust – Retained by the plaintiffs in a class action suit against a large software developer. The plaintiffs claimed that they were damaged as a result of the defendant's alleged violation of anti-trust laws.
- Business Interruption – Retained by the defendants, a group of crab fishermen. Plaintiff alleged that the defendants sabotaged the fishing operations of the plaintiff. Submitted a Rule 26 expert report on damages sustained by the plaintiff as a result of the alleged actions of the defendants.
- Lost Wages – Retained by the defendant, a cardiac surgeon. The plaintiff alleged the hospital racially discriminated against him, resulting in harm to his career. Testified on the amount of damages due to the plaintiff as a result of the alleged actions of the hospital.
- Audit Failure – Retained by the Securities and Exchange Commission. Assisted in assessing whether an audit of the financial statements of a semiconductor company was performed in accordance with Generally Accepted Auditing Standards.
- Breach of Fiduciary Duty – Retained by the plaintiffs, investors in a hedge fund that went into receivership after a complex ponzi scheme was discovered. Plaintiffs alleged that their investment monitor, the defendant, breached its fiduciary duty to the plaintiffs. Performed a calculation of lost profits due to the plaintiffs as a result of the alleged actions.
- Breach of Contract – Retained by the plaintiff, a Mexican cement manufacturer. The plaintiff alleged that the defendant failed to implement software purchased by the plaintiff. Helped determine the lost profits and costs incurred by the plaintiff.
- Wrongful Termination – Retained by the defendant, a hospital. The plaintiff alleged that he was wrongfully terminated by the hospital. Prepared a damage calculation and a Federal Rule 26 expert report assuming the hospital was liable for the alleged actions.

*Investigations and Receiverships*

- Fraud – Retained by the relators in a *qui tam* case. Investigated the alleged over-billings of an American company contracted by the Coalition Provisional Authority to assist in the reconstruction of Iraq shortly after the U.S. invasion of Iraq.
- Fraud – Retained by one of the trustees of a family trust that owed several apartment complexes. Investigated the cash flow activities of the apartment complexes.
- Receivership – Retained by limited partnership hedge fund. Assisted the court-appointed limited purpose receiver to investigate any possible wrongdoings and to liquidate and distribute the assets of the partnership to the remaining limited partners.

# Jed Greene, CPA, CFF, CMA

*Trial and Arbitration Testimony*

**In the Matter of Certain Integrated Circuits and Products Containing the Same (2019)**
U.S. International Trade Commission
Investigation No. 337-TA-3358

**Daniel Miranda and Landmark Protection, Inc. v. U.S. Security Associates, Inc. (2019)**
U.S. District Court, Northern District of California
Case No. 5:18-cv-00734-LHK

**Uri Cohen v. General Patent Corporation, Seed Layers Technology, LLC and Does 1 through 20 (2012)**
American Arbitration Association
Case No. 13 117 000488 12

*Deposition Testimony*

**Intel Corporation v. Tela Innovations, Inc. (2020)**
U.S. District Court, Northern District of California
Case No. 18-CV-02848-WHO

**In the Matter of Certain Integrated Circuits and Products Containing the Same (2019)**
U.S. International Trade Commission
Investigation No. 337-TA-3358

**Daniel Miranda and Landmark Protection, Inc. v. U.S. Security Associates, Inc. (2019)**
U.S. District Court, Northern District of California
Case No. 5:18-cv-00734-LHK

**Promega Corporation v. Applied Biosystems, LLC, Life Technologies Corporation, and California Institute of Technology (2013)**
U.S. District Court, Northern District of Illinois
Case No. 13-cv-02333

**CoorsTek, Inc. v. Steven F. Reiber and Mary L. Reiber (2011)**
U.S. District Court, District of Colorado
Case No. 08-cv-01133-KMT-CBS

**James M. Ross v. Atmel Corporation (2010)**
Superior Court of the State of California, County of Santa Clara
Case No. 109CV147464

**Kenneth Correa v. Kevin Grauman; The Outsource Group, LLC; Emportal, Inc. and Payroll and Benefits Experts, Inc. (2009)**
Superior Court of the State of California, County of Contra Costa
Case No. C07-1284

Jed Greene, **CPA, CFF, CMA**

*Deposition Testimony (cont.)*

**Coyness L. Ennix, Jr., M.D. v. Alta Bates Summit Medical Center (2008)**
U.S. District Court, Northern District of California
Case No. C 07-2486 WHA

**Lockheed Martin Corporation v. RFI Supply Inc., formerly known as RFI Communications &
Security Systems, et al. and related third party complaint, and counter-complaint (2006)**
U.S. District Court, Northern District of California – San Jose Division
Case Nos. CV-00-20002 (JF), C-03-CV-04617 (JF)

*Written Testimony*

**Intel Corporation v. Tela Innovations, Inc. (2020)**
U.S. District Court, Northern District of California
Case No. 18-CV-02848-WHO

**In the Matter of Certain Integrated Circuits and Products Containing the Same (2019)**
U.S. International Trade Commission
Investigation No. 337-TA-3358

**Daniel Miranda and Landmark Protection, Inc. v. U.S. Security Associates, Inc. (2019)**
U.S. District Court, Northern District of California
Case No. 5:18-cv-00734-LHK

**Famsa, Inc. & Hill Country Holdings, LLC dba Ashley Furniture v. Bexar Appraisal District
(2018)**
District Court of Bexar County, Texas
Case No. 2017 CI 18230

**Charles E. Touhey v. Accessible Bath Technologies, LLC (2017)**
Supreme Court of the State of New York, County of Albany
Index No. 1002-15

**Altair Instruments, Inc. v. Rodan & Fields, LLC (2016)**
U.S. District Court, Central District of California
Case No. 2:13-CV-7448-GW (JEMx)

**Ingrid & Isabel, LLC v. Baby Be Mine, LLC (2014)**
U.S. District Court, Northern District of California
Case No. CV-13-1806-JCS

**Promega Corporation v. Applied Biosystems, LLC, Life Technologies Corporation, and
California Institute of Technology (2013)**
U.S. District Court, Northern District of Illinois
Case No. 13-cv-02333

*Written Testimony (cont.)*

**Interwoven, Inc. v. Vertical Computer Systems, Inc. (2013)**
U.S. District Court, Northern District of California
Case No. 3:10-cv-04645

**Uri Cohen v. General Patent Corporation, Seed Layers Technology, LLC and Does 1 through 20 (2012)**
American Arbitration Association
Case No. 13 117 000488 12

**Bally Technologies, Inc. v. Business Intelligence Systems Solutions, Inc. (2011)**
U.S. District Court, District of Nevada
Case No. 2:10-cv-0440

**Area 55, Inc. v. Celeras LLC, Pandamerican LLC and Franmara, Inc. (2011)**
U.S. District Court, Southern District of California
Case No. 3:09 CV 2755 H-NLS

**CoorsTek, Inc. v. Steven F. Reiber and Mary L. Reiber (2011)**
U.S. District Court, District of Colorado
Case No. 08-cv-01133-KMT-CBS

**Coyness L. Ennix, Jr., M.D. v. Alta Bates Summit Medical Center (2008)**
U.S. District Court, Northern District of California
Case No. C 07-2486 WHA

**Lockheed Martin Corporation v. RFI Supply Inc., formerly known as RFI Communications & Security Systems, et al. and related third party complaint, and counter-complaint (2006)**
U.S. District Court, Northern District of California – San Jose Division
Case Nos. CV-00-20002 (JF), C-03-CV-04617 (JF)

**Nizar A. Yaqub, M.D. v. Salinas Valley Memorial Healthcare System, d/b/a Salinas Valley Memorial Hospital (2005)**
U.S. District Court, Northern District of California
Case No. C02-02703 JF

**John Dooley, et al. v. Crab Boat Owners Association, et al. (2003)**
U.S. District Court, Northern District of California
Case No. C 02 0676 MHP

Exhibit C

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Documents Considered

## *BATES*

PL00393-402
PL00668-672
QUEST-VARGAS000028740-41
QUEST-VARGAS000034658-666
QUEST-VARGAS000035335-36
QUEST-VARGAS000036677-681
QUEST-VARGAS000036699
QUEST-VARGAS000037605-06
QUEST-VARGAS000038474-533
QUEST-VARGAS000042006
QUEST-VARGAS35240-43
QUEST-VARGAS35335-36
QUEST-VARGAS37909-10

## *DEPOSITION AND COURT DOCUMENTS*

Plaintiff American Council for the Blind's Third Supplemental Response to the First Set of Interrogatories from Defendant Quest Diagnostics Clinical Laboratories, Inc.
Deposition of Yarrison, Marc dated 04.08.21
Defendant Quest Diagnostics Incorporated's Response To Plaintiff Julian Vargas's First Set of Interrogatories
Deposition of Bazyn, Ardis dated 04.27.21
Deposition of Black, Ralph dated 04.27.21
Deposition of Brink, Regina dated 05.06.21
Deposition of Grahmann, Donna dated 05.03.21
Deposition of Haroyan, Mary dated 04.29.21
Deposition of Haroyan, Nona dated 04.29.21
Deposition of Lyons, Kathy dated 05.06.21
Deposition of Rachfal, Clark dated 06.09.21
Deposition of Vargas, Julian dated 04.22.21
First Amended Class Action Complaint
Stipulated Protective Order

## *PUBLIC SOURCES*

"Prevalence of Visual Acuity Loss or Blindness in the US"; JAMA Ophthalmology, published July 2021; Abraham D. Flaxman, PhD; John S. Wittenborn, BS; Toshana Robalik, BS; Rohit Gulia, MS; Robert B. Gerzoff, MS; Elizabeth A. Lundeen, PhD, MPH; Jinan Saaddine, MD, MPH; David B. Rein, PhD, MPA.
2017 Quest Diagnostics, Inc. 10-K
2018 Quest Diagnostics, Inc. 10-K
2019 Quest Diagnostics, Inc. 10-K
2020 Quest Diagnostics, Inc. 10-K
to July 1, 2019

https://ddt-vehss.cdc.gov/LP?LocationId=06&DataSourceTypeId=PREVESTIMATES&DataSourceId=PREV&TopicId=TVFUNC&CategoryId=CVISAC&IndicatorId=QBM&ShowFootnotes=true&View=Chart&CompareViewYear=1&CompareId=&CompareId2=&YearId=YR9&ResponseId=RVUSB&AgeId=AGEALL&GenderId=GALL&RaceId=ALLRACE&RiskFactorId=RFPERS&RiskFactorResponseId=RFTOT&DataValueTypeId=AGEADJPREV&MapClassifierId=quantile&MapClassifierC
https://ddt-vehss.cdc.gov/LP?LocationId=06&DataSourceTypeId=PREVESTIMATES&DataSourceId=PREV&TopicId=TVFUNC&CategoryId=CVISAC&IndicatorId=QBM&ShowFootnotes=true&View=Chart&CompareViewYear=1&CompareId=&CompareId2=&YearId=YR9&ResponseId=RVUSB&AgeId=AGEALL&GenderId=GALL&RaceId=ALLRACE&RiskFactorId=RFPERS&RiskFactorResponseId=RFTOT&DataValueTypeId=AGEADJPREV&MapClassifierId=quantile&MapClassifierC
https://ddt-vehss.cdc.gov/LP?LocationId=59&DataSourceTypeId=PREVESTIMATES&DataSourceId=PREV&TopicId=TVFUNC&CategoryId=CVISAC&IndicatorId=QBM&ShowFootnotes=true&View=Chart&CompareViewYear=1&CompareId=&CompareId2=&YearId=YR9&ResponseId=RVUSB&AgeId=AGEALL&GenderId=GALL&RaceId=ALLRACE&RiskFactorId=RFPERS&RiskFactorResponseId=RFTOT&DataValueTypeId=AGEADJPREV&MapClassifierId=quantile&MapClassifierC
https://ddt-vehss.cdc.gov/LP?LocationId=59&DataSourceTypeId=PREVESTIMATES&DataSourceId=PREV&TopicId=TVFUNC&CategoryId=CVISAC&IndicatorId=QBM&ShowFootnotes=true&View=Chart&CompareViewYear=1&CompareId=&CompareId2=&YearId=YR9&ResponseId=RVUSB&AgeId=AGEALL&GenderId=GALL&RaceId=ALLRACE&RiskFactorId=RFPERS&RiskFactorResponseId=RFTOT&DataValueTypeId=AGEADJPREV&MapClassifierId=quantile&MapClassifierC
https://images.wellness.questdiagnostics.com/Web/QuestDiagnosticsServices/%7B2e980321-760a-485d-9c32-5bf16832e5ec%7D_PSC_Product_Overview.pdf?_ga=2.174926690.1580939982.1630711866-
https://images.wellness.questdiagnostics.com/Web/QuestDiagnosticsServices/%7B2e980321-760a-485d-9c32-5bf16832e5ec%7D_PSC_Product_Overview.pdf?_ga=2.174926690.1580939982.1630711866-
https://images.wellness.questdiagnostics.com/Web/QuestDiagnosticsServices/%7B2e980321-760a-485d-9c32-5bf16832e5ec%7D_PSC_Product_Overview.pdf?_ga=2.174926690.1580939982.1630711866-
https://images.wellness.questdiagnostics.com/Web/QuestDiagnosticsServices/%7B2e980321-760a-485d-9c32-5bf16832e5ec%7D_PSC_Product_Overview.pdf?_ga=2.174926690.1580939982.1630711866-
https://www.aao.org/newsroom/eye-health-statistics#_edn11.
https://www.cdc.gov/visionhealth/risk/burden.htm.
https://www.cdc.gov/visionhealth/vehss/data/index.html.
https://www.cdc.gov/visionhealth/vehss/index.html.
https://www.cdc.gov/visionhealth/vehss/project/index.html.
https://www.census.gov/quickfacts/fact/table/CA,US/PST045219
https://www.census.gov/quickfacts/fact/table/CA,US/PST045219; https://www.census.gov/data/tables/time-series/demo/popest/2010s-national-total.html#par_textimage_2011805803.
https://www.healthline.com/health/blood-tests#frequency.

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***
Legally Blind Population That Attempted to Used a Quest Kiosk (Summary of Three Analyses)

| | California | United States |
|---|---|---|
| **Analysis #1: Check-ins** | | |
| *Average Legally Blind Population That Attempted to Use a Quest Kiosk* [1] | 8,472 | 45,500 |
| *Minimum Legally Blind Population That Attempted to Use a Quest Kiosk* [1] | 6,152 | 31,863 |
| **Analysis #2: Total Population** | | |
| *Average Legally Blind Population That Attempted to Use a Quest Kiosk* [2] | 9,119 | 92,227 |
| *Minimum Legally Blind Population That Attempted to Use a Quest Kiosk* [2] | 7,085 | 69,620 |
| **Analysis #3: Serviced Population** | | |
| *Average Legally Blind Population That Attempted to Use a Quest Kiosk* [3] | 8,913 | 62,934 |
| *Minimum Legally Blind Population That Attempted to Use a Quest Kiosk* [3] | 6,898 | 47,279 |

Notes:
(1) See Exhibit E
(2) See Exhibit F
(3) See Exhibit G

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***
Estimated Legally Blind Population That Attempted to Use a Quest Kiosk (Based on Kiosk Check-ins)
Analysis #1

| | California | United States |
|---|---|---|
| Check-ins on Kiosks (2018) [1,2] | 7,515,365 | 32,696,929 |
| Check-ins on Kiosks (2019) [3,4] | 8,584,783 | 38,046,872 |
| ***Average Annual Check-ins*** | 8,050,074 | 35,371,901 |
| ***Minimum Annual Check-ins*** | 7,515,365 | 32,696,929 |
| Average Patient Visits Per Year [6] | 2.57 | 2.57 |
| ***Estimated Patients Per Year (Average)*** | 3,137,925 | 13,787,992 |
| ***Estimated Patients Per Year (Minimum)*** | 2,929,495 | 12,745,286 |
| Percent of Population that is Legally Blind - Average (2017) [7,8] | 0.27% | 0.33% |
| Percent of Population that is Legally Blind - High End of 95% Confidence (2017) [7,8] | 0.33% | 0.40% |
| Percent of Population that is Legally Blind - Low End of 95% Confidence (2017) [7,8] | 0.21% | 0.25% |
| ***Average Legally Blind Population That Visited a Quest PSC*** | 8,472 | 45,500 |
| ***Minimum Legally Blind Population That Visited a Quest PSC*** | 6,152 | 31,863 |

Notes:

(1) Source of California information: Defendant Quest Diagnostics Incorporated's Response To Plaintiff Julian Vargas's First Set of Interrogatories, p. 4.
(2) Source of United States information: Defendant Quest Diagnostics Incorporated's Response To Plaintiff Julian Vargas's First Set of Interrogatories, p. 11.
(3) Source of California information: Defendant Quest Diagnostics Incorporated's Response To Plaintiff Julian Vargas's First Set of Interrogatories, p. 6.
(4) Source of United States information: Defendant Quest Diagnostics Incorporated's Response To Plaintiff Julian Vargas's First Set of Interrogatories, p. 13.
(5) Source of California information: Defendant Quest Diagnostics Incorporated's Response To Plaintiff Julian Vargas's First Set of Interrogatories, p. 7.
(6) See Exhibit I.

(7)Source of California information: https://ddt-vehss.cdc.gov/LP?LocationId=06&DataSourceTypeId=PREVESTIMATES&DataSourceId=PREV&TopicId=TVFUNC&CategoryId=CVISAC&IndicatorId=QBM&ShowFootnotes=true&View=Chart&CompareViewYear=1&CompareId=&CompareId2=&YearId=YR9&ResponseId=RVUSB&AgeId=AGEALL&GenderId=GALL&RaceId=ALLRACE&RiskFactorId=RFPERS&RiskFactorResponseId=RFTOT&DataValueTypeId=AGEADJPREV&MapClassifierId=quantile&MapClassifierCount=4&CountyFlag=N

(8) Source of National Information: https://ddt-vehss.cdc.gov/LP?LocationId=59&DataSourceTypeId=PREVESTIMATES&DataSourceId=PREV&TopicId=TVFUNC&CategoryId=CVISAC&IndicatorId=QBM&ShowFootnotes=true&View=Chart&CompareViewYear=1&CompareId=&CompareId2=&YearId=YR9&ResponseId=RVUSB&AgeId=AGEALL&GenderId=GALL&RaceId=ALLRACE&RiskFactorId=RFPERS&RiskFactorResponseId=RFTOT&DataValueTypeId=AGEADJPREV&MapClassifierId=quantile&MapClassifierCount=4&CountyFlag=false

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***
Estimated Legally Blind Population Serviced by Quest (Based on Entire Population)
Analysis #2

| | California | United States |
|---|---|---|
| Population (2017) [1,2] | 39,536,653 | 325,719,178 |
| Population (2018) [3] | 39,461,588 | 326,687,501 |
| Population (2019) [4] | 39,512,223 | 328,239,523 |
| ***Average Population*** | 39,503,488 | 326,882,067 |
| ***Minimum Population*** | 39,461,588 | 325,719,178 |
| Percent of U.S. Population Serviced by Quest in a Two-Year Period [5,6] | 41.5% | 41.5% |
| Average Percent of Test Requisitions Requiring a Kiosk (2018-2019) | 20.6% | 20.6% |
| Percent of U.S. Population Using a Quest Kiosk | 8.5% | 8.5% |
| ***Average Population Serviced by Quest*** | 3,377,442 | 27,947,541 |
| ***Minimum Population Serviced by Quest*** | 3,373,860 | 27,848,117 |
| Percent of Population that is Legally Blind - Average (2017) [1,2] | 0.27% | 0.33% |
| Percent of Population that is Legally Blind - High End of 95% Confidence (2017) [1,2] | 0.33% | 0.40% |
| Percent of Population that is Legally Blind - Low End of 95% Confidence (2017) [1,2] | 0.21% | 0.25% |
| ***Average Legally Blind Population Serviced by Quest*** | 9,119 | 92,227 |
| ***Minimum Legally Blind Population Serviced by Quest*** | 7,085 | 69,620 |

Notes:

(1)Source of California information: https://ddt-vehss.cdc.gov/LP?LocationId=06&DataSourceTypeId=PREVESTIMATES&DataSourceId=PREV&TopicId=TVFUNC&CategoryId=CVISAC&IndicatorId=QBM&ShowFootnotes=true&View=Chart&CompareViewYear=1&CompareId=&CompareId2=&YearId=YR9&ResponseId=RVUSB&AgeId=AGEALL&GenderId=GALL&RaceId=ALLRACE&RiskFactorId=RFPERS&RiskFactorResponseId=RFTOT&DataValueTypeId=AGEADJPREV&MapClassifierId=quantile&MapClassifierCount=4&CountyFlag=N

(2) Source of National Information: https://ddt-vehss.cdc.gov/LP?LocationId=59&DataSourceTypeId=PREVESTIMATES&DataSourceId=PREV&TopicId=TVFUNC&CategoryId=CVISAC&IndicatorId=QBM&ShowFootnotes=true&View=Chart&CompareViewYear=1&CompareId=&CompareId2=&YearId=YR9&ResponseId=RVUSB&AgeId=AGEALL&GenderId=GALL&RaceId=ALLRACE&RiskFactorId=RFPERS&RiskFactorResponseId=RFTOT&DataValueTypeId=AGEADJPREV&MapClassifierId=quantile&MapClassifierCount=4&CountyFlag=false

(3) Table 1. Annual Estimates of the Resident Population for the United States, Regions, States, and Puerto Rico: April 1, 2010 to July 1, 2019

(4) https://www.census.gov/quickfacts/fact/table/CA,US/PST045219

(4) Table 1. Annual Estimates of the Resident Population for the United States, Regions, States, and Puerto Rico: April 1, 2010 to July 1, 2019

(5) The percent of the California population serviced by Quest is assumed to be similar to the percent of the U.S. population serviced by Quest.

(6) "The patients we serve comprise approximately one-third of the adult population of the United States annually, and approximately one-half of the adult population in the United States over a three-year period." Source:  2018 Quest Diagnostics, Inc. 10-K, p. 2

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***
Estimated Legally Blind Population Serviced by Quest (Based on Population of Counties That Have Quest Centers)
Analysis #3

| | California | United States |
|---|---|---|
| ***Average Population in Counties That Have Quest Centers*** [1] | 38,611,507 | 223,059,021 |
| ***Minimum Population in Counties That Have Quest Centers*** [1] | 38,417,236 | 221,194,239 |
| Percent of U.S. Population Serviced by Quest in a Two-Year Period [2, 3] | 41.5% | 41.5% |
| Average Percent of Test Requisitions Requiring a Kiosk (2018-2019) | 20.6% | 20.6% |
| Percent of U.S. Population Using a Quest Kiosk | 8.5% | 8.5% |
| ***Average Population Serviced by Quest*** | 3,301,180 | 19,070,948 |
| ***Minimum Population Serviced by Quest*** | 3,284,571 | 18,911,515 |
| Percent of Population that is Legally Blind - Average (2017) [4, 5] | 0.27% | 0.33% |
| Percent of Population that is Legally Blind - High End of 95% Confidence (2017) [4, 5] | 0.33% | 0.40% |
| Percent of Population that is Legally Blind - Low End of 95% Confidence (2017) [4, 5] | 0.21% | 0.25% |
| ***Average Legally Blind Population Serviced by Quest*** | 8,913 | 62,934 |
| ***Minimum Legally Blind Population Serviced by Quest*** | 6,898 | 47,279 |

Source:
(1) Exhibit J
(2) The percent of the California population serviced by Quest is assumed to be similar to the percent of the U.S. population
(3) "The patients we serve comprise approximately one-third of the adult population of the United States annually, and approximately one-half of the adult population in the United States over a three-year period." Source: 2018 Quest Diagnostics, Inc. 10-K, p. 2
(4)Source of California information: https://ddt-vehss.cdc.gov/LP?LocationId=06&DataSourceTypeId=PREVESTIMATES&DataSourceId=PREV&TopicId=TVFUNC&CategoryId=CVISAC&IndicatorId=QBM&ShowFootnotes=true&View=Chart&CompareViewYear=1&CompareId=&CompareId2=&YearId=YR9&ResponseId=RVUSB&AgeId=AGEALL&GenderId=GALL&RaceId=ALLRACE&RiskFactorId=RFPERS&RiskFactorResponseId=RFTOT&DataValueTypeId=AGEADJPREV&MapClassifierId=quantile&MapClassifierCount=4&CountyFlag=N
(5) Source of National Information: https://ddt-vehss.cdc.gov/LP?LocationId=59&DataSourceTypeId=PREVESTIMATES&DataSourceId=PREV&TopicId=TVFUNC&CategoryId=CVISAC&IndicatorId=QBM&ShowFootnotes=true&View=Chart&CompareViewYear=1&CompareId=&CompareId2=&YearId=YR9&ResponseId=RVUSB&AgeId=AGEALL&GenderId=GALL&RaceId=ALLRACE&RiskFactorId=RFPERS&RiskFactorResponseId=RFTOT&DataValueTypeId=AGEADJPREV&MapClassifierId=quantile&MapClassifierCount=4&CountyFlag=false

Exhibit H

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***
Percent of Quest Test Requisitions Requiring a Kiosk

| | United States |
|---|---|
| Number of Total Test Requisitions by Quest (2019) [1] | 175,000,000 |
| Check-ins on Kiosks (2019) [2] | 38,046,872 |
| Percent of Test Requisitions Requiring a Kiosk | 21.7% |
| | |
| Number of Total Test Requisitions by Quest (2018) [3] | 168,000,000 |
| Check-ins on Kiosks (2018) [4] | 32,696,929 |
| Percent of Test Requisitions Requiring a Kiosk | 19.5% |
| | |
| ***Average Percent of Test Requisitions Requiring a Kiosk (2018-2019)*** | **20.6%** |

Notes:
(1) 2019 Quest Diagnostics, Inc. 10-K, p. 9
(2) Source of United States information: Defendant Quest Diagnostics Incorporated's Response To Plaintiff Julian Vargas's First Set of Interrogatories, p. 11.
(3) 2018 Quest Diagnostics, Inc. 10-K, p. 8
(4) Source of United States information: Defendant Quest Diagnostics Incorporated's Response To Plaintiff Julian Vargas's First Set of Interrogatories, p. 13.

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Patient Visits per Year

| Patient | Visits per Year | Source |
|---|---|---|
| Ardis Bazyn | 1.43 | Deposition of Ardis Bazyn dated April 27, 2021, p. 23. |
| Brink Regina | 5.00 | Deposition of Brink Regina dated May 6, 2021, p. 40. |
| Donna Grahmann | 4.00 | Deposition of Donna Grahmann dated May 3, 2021, p. 32. |
| Mary Haroyen | 1.10 | Deposition of Mary Haroyen dated April 29, 2021, p. 27. |
| Nona Haroyen | 2.00 | Deposition of Nona Haroyen dated April 29, 2021, p. 32. |
| Kathy Lyons | 1.00 | Deposition of Kathy Lyons dated May 6, 2021, p. 33. |
| Julian Vargas | 1.00 | Deposition of Julian Vargas dated April 22, 2021, p. 49. |
| Christina Law | 2.67 | PL00668 |
| Margie Donovan | 3.43 | PL00668 |
| Chris Gray | 3.43 | PL00668 |
| Debbie Rozear | 2.67 | PL00669 |
| Karlene Fiorello | 2.00 | PL00669 |
| Paula Muysenberg | 2.50 | PL00669 |
| Debbi Dymek | 2.00 | PL00669 |
| Mary Alice Gary | 3.43 | PL00670 |
| Cassandra Jessie | 3.00 | PL00671 |
| Bill White | 2.00 | PL00671 |
| Elizabeth Doane | 2.67 | PL00671 |
| Harvey Heagy | 3.43 | PL00672 |
| ***Average*** | **2.57** | |

Exhibit J

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***
Population of Counties with Quest PSCs (by State)

| State | 2018 Population | 2019 Population | Population | Avg Population | Min Population |
|---|---|---|---|---|---|
| AK | 496,201 | 493,166 | 497,972 | 495,780 | 490,218 |
| AL | 2,521,768 | 2,532,048 | 2,512,281 | 2,522,032 | 2,508,312 |
| AR | 1,137,181 | 1,148,398 | 1,125,951 | 1,137,177 | 1,124,874 |
| CA | 38,652,883 | 38,703,758 | 38,477,880 | 38,611,507 | 38,417,236 |
| CO | 4,922,573 | 4,985,189 | 4,850,673 | 4,919,478 | 4,850,673 |
| CT | 3,571,520 | 3,565,287 | 3,575,074 | 3,570,627 | 3,565,039 |
| DC | 701,547 | 705,749 | 692,683 | 699,993 | 692,683 |
| DE | 965,479 | 973,764 | 957,248 | 965,497 | 957,248 |
| FL | 20,670,672 | 20,899,649 | 20,332,306 | 20,634,209 | 20,323,125 |
| GA | 6,399,149 | 6,463,822 | 6,326,956 | 6,396,642 | 6,323,194 |
| IA | 658,636 | 663,104 | 652,058 | 657,933 | 652,058 |
| ID | 833,091 | 854,154 | 814,328 | 833,858 | 814,328 |
| IL | 10,293,790 | 10,258,540 | 10,325,222 | 10,292,517 | 10,252,072 |
| IN | 1,340,193 | 1,347,522 | 1,337,074 | 1,341,596 | 1,335,807 |
| KS | 1,678,689 | 1,685,791 | 1,671,715 | 1,678,732 | 1,669,692 |
| KY | 1,431,308 | 1,432,286 | 1,426,230 | 1,429,941 | 1,425,538 |
| LA | 2,299,046 | 2,295,765 | 2,299,770 | 2,298,194 | 2,285,383 |
| MA | 6,783,497 | 6,793,592 | 6,751,496 | 6,776,195 | 6,747,808 |
| MD | 4,820,421 | 4,837,990 | 4,797,721 | 4,818,711 | 4,797,073 |
| ME | 157,734 | 158,158 | 157,205 | 157,699 | 157,205 |
| MI | 6,447,560 | 6,446,056 | 6,439,709 | 6,444,442 | 6,425,127 |
| MN | 1,806,797 | 1,816,164 | 1,790,279 | 1,804,413 | 1,790,279 |
| MO | 4,001,835 | 4,013,418 | 3,989,519 | 4,001,591 | 3,978,032 |
| MS | 360,534 | 363,351 | 357,179 | 360,355 | 357,179 |
| MT | 455,416 | 460,906 | 448,595 | 454,972 | 448,336 |
| NC | 5,546,286 | 5,618,005 | 5,470,498 | 5,544,930 | 5,469,523 |
| NE | 882,918 | 890,417 | 873,775 | 882,370 | 873,775 |
| NH | 1,140,410 | 1,146,206 | 1,135,364 | 1,140,660 | 1,135,223 |
| NJ | 8,886,025 | 8,882,190 | 8,878,503 | 8,882,239 | 8,860,190 |
| NM | 1,382,471 | 1,387,554 | 1,377,820 | 1,382,615 | 1,377,042 |
| NV | 2,790,857 | 2,840,673 | 2,738,093 | 2,789,874 | 2,738,093 |
| NY | 16,637,070 | 16,572,160 | 16,668,400 | 16,625,877 | 16,562,008 |
| OH | 6,342,276 | 6,346,206 | 6,330,042 | 6,339,508 | 6,306,979 |
| OR | 2,874,878 | 2,894,443 | 2,843,219 | 2,870,847 | 2,843,219 |
| PA | 10,555,916 | 10,567,665 | 10,535,777 | 10,553,119 | 10,515,128 |
| RI | 801,006 | 803,223 | 799,606 | 801,278 | 799,606 |
| SC | 2,567,010 | 2,609,582 | 2,522,572 | 2,566,388 | 2,522,572 |
| TN | 3,380,298 | 3,413,149 | 3,345,876 | 3,379,774 | 3,345,867 |
| TX | 23,961,569 | 24,280,720 | 23,630,954 | 23,957,748 | 23,622,376 |
| UT | 1,520,026 | 1,536,381 | 1,499,721 | 1,518,709 | 1,499,646 |
| VA | 4,290,087 | 4,310,097 | 4,486,488 | 4,362,224 | 4,257,905 |
| WA | 4,864,990 | 4,928,382 | 4,784,194 | 4,859,189 | 4,784,194 |
| WI | 1,115,895 | 1,115,287 | 1,119,750 | 1,116,977 | 1,114,250 |
| WV | 180,410 | 178,124 | 183,279 | 180,604 | 178,124 |
| Grand Total | 223,127,918 | 224,218,091 | 221,831,055 | 223,059,021 | 221,194,239 |
| | | | | | |
| California | 38,652,883 | 38,703,758 | 38,477,880 | 38,611,507 | 38,417,236 |

Notes:
(1) See Exhibit O

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***
California Counties with Quest PSCs

| CA Counties[1,2] | Quest PSC |
|---|---|
| Alameda County | Yes |
| Amador County | Yes |
| Butte County | Yes |
| Colusa County | Yes |
| Contra Costa County | Yes |
| El Dorado County | Yes |
| Fresno County | Yes |
| Glenn County | Yes |
| Imperial County | Yes |
| Kern County | Yes |
| Kings County | Yes |
| Lake County | Yes |
| Los Angeles County | Yes |
| Madera County | Yes |
| Marin County | Yes |
| Mariposa County | Yes |
| Merced County | Yes |
| Monterey County | Yes |
| Napa County | Yes |
| Nevada County | Yes |
| Orange County | Yes |
| Placer County | Yes |
| Riverside County | Yes |
| Sacramento County | Yes |
| San Benito County | Yes |
| San Bernardino County | Yes |
| San Diego County | Yes |
| San Francisco County | Yes |
| San Joaquin County | Yes |
| San Mateo County | Yes |
| Santa Barbara County | Yes |
| Santa Clara County | Yes |
| Santa Cruz County | Yes |
| Shasta County | Yes |
| Solano County | Yes |
| Sonoma County | Yes |
| Stanislaus County | Yes |
| Sutter County | Yes |
| Tehama County | Yes |
| Tulare County | Yes |
| Tuolumne County | Yes |
| Ventura County | Yes |

Exhibit K

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***
California Counties with Quest PSCs

| CA Counties[1,2] | Quest PSC |
|---|---|
| Yolo County | Yes |
| Alpine County | No |
| Calaveras County | No |
| Del Norte County | No |
| Humboldt County | No |
| Inyo County | No |
| Lassen County | No |
| Mendocino County | No |
| Modoc County | No |
| Mono County | No |
| Plumas County | No |
| San Luis Obispo County | No |
| Sierra County | No |
| Siskiyou County | No |
| Trinity County | No |
| Yuba County | No |

Notes:
(1) See QUEST-VARGAS000042006 - CONFIDENTIAL-NSHM-FS1.xlsx.
(2) https://www.calif.com/california-counties.php

*Prepared in connection with the declaration of Jed Greene, CPA, CFF, CMA*

Page 2 of 2

PA0937

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Los Angeles County Quest PSC Locations

| City | State | Site Code | Region | BU | Site Descriptor | Address | Zip | County |
|---|---|---|---|---|---|---|---|---|
| Agoura Hills | CA | F4I | West | West Hills | Agoura Hills Canwood - Employer Drug Testing Not Offered | 29525 Canwood St | 91301-4230 | Los Angeles, CA |
| Arcadia | CA | CXW | West | West Hills | Arcadia West Huntington - Employer Drug Testing Not Offered | 301 W Huntington Dr | 91007-1505 | Los Angeles, CA |
| Arcadia | CA | VU4 | West | West Hills | Arcadia West Duarte - Employer Drug Testing Not Offered | 612 W Duarte Rd | 91007-9224 | Los Angeles, CA |
| Bellflower | CA | CXJ | West | West Hills | Bellflower Artesia Boulevard - Employer Drug Testing Not Offered | 10230 Artesia Blvd | 90706-6769 | Los Angeles, CA |
| Beverly Hills | CA | CQZ | West | West Hills | Beverly Hills Bedford - Employer Drug Testing Not Offered | 435 North Bedford Dr. | 90210-4321 | Los Angeles, CA |
| Beverly Hills | CA | QBH | West | West Hills | Beverly Hills Robertson - Employer Drug Testing Not Offered | 150 N Robertson Blvd | 90211-2145 | Los Angeles, CA |
| Beverly Hills | CA | RYX | West | West Hills | Beverly Hills Wilshire | 8501 Wilshire Blvd | 90211-3117 | Los Angeles, CA |
| Burbank | CA | DKU | West | West Hills | Burbank 2601 West Alameda - Employer Drug Testing Not Offered | 2601 W Alameda Ave | 91505-4808 | Los Angeles, CA |
| Burbank | CA | G4Y | West | West Hills | Burbank S. Buena Vista St - Employer Drug Testing Not Offered | 201 S Buena Vista St | 91505-4575 | Los Angeles, CA |
| Covina | CA | CZQ | West | West Hills | Covina East San Bernardino Road | 554 E San Bernardino Rd | 91723-1748 | Los Angeles, CA |
| Diamond Bar | CA | CZM | West | West Hills | Diamond Bar North Diamond Bar - Employer Drug Testing Not Offered | 750 N Diamond Bar Blvd | 91765-1023 | Los Angeles, CA |
| Downey | CA | CUZ | West | West Hills | Downey Brookshire - Employer Drug Testing Not Offered | 11525 Brookshire Ave | 90241-4982 | Los Angeles, CA |
| Downey | CA | CVF | West | West Hills | Downey South Paramount - Employer Drug Testing Not Offered | 10800 Paramount Blvd | 90241-3300 | Los Angeles, CA |
| Glendale | CA | CXY | West | West Hills | Glendale North Verdugo - Employer Drug Testing Not Offered | 3600 N Verdugo Rd | 91208-1219 | Los Angeles, CA |
| Glendale | CA | CYY | West | West Hills | Glendale South Central - Employer Drug Testing Not Offered | 800 S Central Ave | 91204-4379 | Los Angeles, CA |
| Glendale | CA | FBH | West | West Hills | Glendale South Chevy Chase - Employer Drug Testing Not Offered | 801 S Chevy Chase Dr | 91205-4437 | Los Angeles, CA |
| Glendale | CA | Y3B | West | West Hills | Glendale South Central | 1500 S Central Ave | 91204-2556 | Los Angeles, CA |
| Glendora | CA | CZU | West | West Hills | Glendora South Grand Avenue - Employer Drug Testing Not Offered | 210 S Grand Ave | 91741-4265 | Los Angeles, CA |
| Hacienda Heights | CA | CZV | West | West Hills | Hacienda Heights Colima - Employer Drug Testing Not Offered | 17138 Colima Rd | 91745-6783 | Los Angeles, CA |
| Hawthorne | CA | HWN | West | West Hills | Hawthorne West 118th - Employer Drug Testing Not Offered | 4477 W 118th St | 90250-2256 | Los Angeles, CA |
| Inglewood | CA | CVZ | West | West Hills | Inglewood North Prairie - Employer Drug Testing Not Offered | 323 N Prairie Ave | 90301-4503 | Los Angeles, CA |
| La Crescenta | CA | K4M | West | West Hills | Inside La Crescenta Vons Store - Employer Drug Testing Not Offered | 3233 Foothill Blvd | 91214-2636 | Los Angeles, CA |
| Lancaster | CA | LAJ | West | West Hills | Lancaster West Avenue J - Employer Drug Testing Not Offered | 1629 W Avenue J | 93534-2850 | Los Angeles, CA |
| Long Beach | CA | BEJ | West | West Hills | Long Beach East 28th Street - Employer Drug Testing Not Offered | 701 E 28Th St | 90806-2706 | Los Angeles, CA |
| Long Beach | CA | CXL | West | West Hills | Long Beach Downey Avenue - Employer Drug Testing Not Offered | 5830 Downey Ave | 90805-4517 | Los Angeles, CA |
| Long Beach | CA | CXO | West | West Hills | Long Beach Atlantic Avenue - Employer Drug Testing Not Offered | 2880 Atlantic Ave | 90806-1716 | Los Angeles, CA |
| Long Beach | CA | CXP | West | West Hills | Long Beach Woodruff Avenue - Employer Drug Testing Not Offered | 3816 Woodruff Ave | 90808-2146 | Los Angeles, CA |
| Long Beach | CA | CXS | West | West Hills | Long Beach 1043 Elm Avenue - Employer Drug Testing Not Offered | 1043 Elm Ave | 90813-3296 | Los Angeles, CA |
| Long Beach | CA | UV8 | West | West Hills | Long Beach Termino - Employer Drug Testing Not Offered | 1760 Termino Ave | 90804-2151 | Los Angeles, CA |
| Long Beach | CA | UV9 | West | West Hills | Long Beach 2650 Elm Avenue - Employer Drug Testing Not Offered | 2650 Elm Ave | 90806-1606 | Los Angeles, CA |
| Los Angeles | CA | CQH | West | West Hills | Los Angeles East 3rd | 420 E 3rd St | 90013-1646 | Los Angeles, CA |
| Los Angeles | CA | CQM | West | West Hills | Los Angeles South Grand - Employer Drug Testing Not Offered | 1414 S Grand Ave | 90015-3071 | Los Angeles, CA |
| Los Angeles | CA | CQN | West | West Hills | Los Angeles1127 Wilshire | 1127 Wilshire Blvd | 90017-3901 | Los Angeles, CA |
| Los Angeles | CA | CQP | West | West Hills | Los Angeles East Cesar Chavez - Employer Drug Testing Not Offered | 1632 E. Cesar Chavez Ave. | 90033-2412 | Los Angeles, CA |
| Los Angeles | CA | CQT | West | West Hills | Los Angeles Beverly - Employer Drug Testing Not Offered | 2105 Beverly Blvd | 90057-2250 | Los Angeles, CA |
| Los Angeles | CA | CQU | West | West Hills | Century City - Employer Drug Testing Not Offered | 2080 Century Park E | 90067-2015 | Los Angeles, CA |
| Los Angeles | CA | K4P | West | West Hills | Inside Sunset Blvd Vons Store - Employer Drug Testing Not Offered | 4520 W Sunset Blvd | 90027-6057 | Los Angeles, CA |
| Los Angeles | CA | OC1 | West | West Hills | Los Angeles South Virgil - Employer Drug Testing Not Offered | 500 S Virgil Ave | 90010-1425 | Los Angeles, CA |
| Los Angeles | CA | W2K | West | West Hills | Culver City South Centinela Avenue - Employer Drug Testing Not Offered | 4036 S Centinela Ave | 90066-4907 | Los Angeles, CA |
| Lynwood | CA | G3K | West | West Hills | Lynwood Long Beach Blvd - Employer Drug Testing Not Offered | 10747 Long Beach Blvd | 90262-1910 | Los Angeles, CA |
| Montebello | CA | CXF | West | West Hills | Montebello North 4th - Employer Drug Testing Not Offered | 433 N 4th St | 90640-4311 | Los Angeles, CA |
| Newhall | CA | S3I | West | West Hills | Inside Newhall Vons Store - Employer Drug Testing Not Offered | 24160 Lyons Ave | 91321-2442 | Los Angeles, CA |
| North Hollywood | CA | EJY | West | West Hills | North Hollywood Riverside - Employer Drug Testing Not Offered | 12626 Riverside Dr | 91607-3477 | Los Angeles, CA |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***
Los Angeles County Quest PSC Locations

| City | State | Site Code | Region | BU | Site Descriptor | Address | Zip | County |
|---|---|---|---|---|---|---|---|---|
| Northridge | CA | B6E | West | West Hills | Northridge Roscoe Boulevard | 18350 Roscoe Blvd | 91325-5607 | Los Angeles, CA |
| Palmdale | CA | CUF | West | West Hills | Palmdale Auto Center Drive - Employer Drug Testing Not Offered | 843 Auto Center Dr | 93551-4489 | Los Angeles, CA |
| Palmdale | CA | HS6 | West | West Hills | Palmdale 11th Street West - Employer Drug Testing Not Offered | 41230 11Th St W | 93551-1411 | Los Angeles, CA |
| Pasadena | CA | CXZ | West | West Hills | Pasadena North Madison - Employer Drug Testing Not Offered | 65 N Madison Ave | 91101-2048 | Los Angeles, CA |
| Pasadena | CA | CYB | West | West Hills | Pasadena Bellefontaine - Employer Drug Testing Not Offered | 50 Bellefontaine St | 91105-3132 | Los Angeles, CA |
| Pasadena | CA | CYU | West | West Hills | Pasadena East Green | 960 E. Green St. | 91106-2405 | Los Angeles, CA |
| Pasadena | CA | GKL | West | West Hills | Pasadena North Fair Oaks - Employer Drug Testing Not Offered | 1845 N Fair Oaks Ave | 91103-1620 | Los Angeles, CA |
| Pomona | CA | GJS | West | West Hills | Pomona Bonita Avenue - Employer Drug Testing Not Offered | 250 W Bonita Ave Bldg A , | 91767-1850 | Los Angeles, CA |
| Redondo Beach | CA | CVX | West | West Hills | Redondo Beach North Prospect Avenue | 520 N Prospect Ave | 90277-3043 | Los Angeles, CA |
| Rolling Hills Estates | CA | U1R | West | West Hills | Rolling Hills Estates Silver Spur - Employer Drug Testing Not Offered | 883 Silver Spur Rd | 90274-3803 | Los Angeles, CA |
| San Dimas | CA | CZW | West | West Hills | San Dimas West Covina Boulevard - Employer Drug Testing Not Offered | 1330 W Covina Blvd | 91773-3200 | Los Angeles, CA |
| San Gabriel | CA | CZZ | West | West Hills | San Gabriel West Las Tunas | 416 W LasTunas Dr | 91776-1236 | Los Angeles, CA |
| San Pedro | CA | CXN | West | West Hills | San Pedro West 6th | 1294 W 6th St | 90731-2998 | Los Angeles, CA |
| Santa Clarita | CA | CZB | West | West Hills | Santa Clarita Town Center Drive - Employer Drug Testing Not Offered | 24305 Town Center Dr | 91355-1345 | Los Angeles, CA |
| Santa Clarita | CA | I4I | West | West Hills | Inside Santa Clarita Vons Store - Employer Drug Testing Not Offered | 16550 Soledad Canyon Rd | 91387-3215 | Los Angeles, CA |
| Santa Monica | CA | CWF | West | West Hills | Santa Monica 15th - Employer Drug Testing Not Offered | 1260 15Th St. | 90404-1145 | Los Angeles, CA |
| Sherman Oaks | CA | O4O | West | West Hills | Sherman Oaks Van Nuys Blvd - Employer Drug Testing Not Offered | 4955 Van Nuys Blvd | 91403-1838 | Los Angeles, CA |
| Sherman Oaks | CA | SHO | West | West Hills | Sherman Oaks Van Nuys - Employer Drug Testing Not Offered | 4849 Van Nuys Blvd | 91403-2120 | Los Angeles, CA |
| Studio City | CA | G4Z | West | West Hills | Studio City Riverside Drive - Employer Drug Testing Not Offered | 12660 Riverside Dr | 91607-3491 | Los Angeles, CA |
| Tarzana | CA | CZG | West | West Hills | Tarzana Burbank - Employer Drug Testing Not Offered | 18370 Burbank Blvd | 91356-2815 | Los Angeles, CA |
| Tarzana | CA | G4X | West | West Hills | Tarzana Etiwanda Ave - Employer Drug Testing Not Offered | 5525 Etiwanda Ave | 91356-6135 | Los Angeles, CA |
| Tarzana | CA | TD | West | West Hills | Tarzana Etiwanda - Employer Drug Testing Not Offered | 5525 Etiwanda Ave | 91356-6128 | Los Angeles, CA |
| Torrance | CA | CWK | West | West Hills | Torrance Boulevard - Employer Drug Testing Not Offered | 4201 Torrance Blvd | 90503-4532 | Los Angeles, CA |
| Torrance | CA | DLC | West | West Hills | Torrance Madison | 23441 Madison St | 90505-4735 | Los Angeles, CA |
| Torrance | CA | DLM | West | West Hills | Torrance Lomita Boulevard - Employer Drug Testing Not Offered | 3500 Lomita Blvd | 90505-5025 | Los Angeles, CA |
| Tujunga | CA | K4U | West | West Hills | Inside Tujunga Vons Store - Employer Drug Testing Not Offered | 7789 Foothill Blvd | 91042-2137 | Los Angeles, CA |
| Valencia | CA | S3K | West | West Hills | Inside Valencia Vons Store - Employer Drug Testing Not Offered | 25850 The Old Rd | 91381-1710 | Los Angeles, CA |
| Van Nuys | CA | QE2 | West | West Hills | Van Nuys 14624 Sherman - Employer Drug Testing Not Offered | 14624 Sherman Way | 91405-2287 | Los Angeles, CA |
| West Covina | CA | DAB | West | West Hills | West Covina Sunset Avenue - Employer Drug Testing Not Offered | 1135 S Sunset Ave | 91790-3964 | Los Angeles, CA |
| West Hills | CA | O4A | West | West Hills | West Hills Medical Center Dr - Employer Drug Testing Not Offered | 7345 Medical Center Dr | 91307-1920 | Los Angeles, CA |
| West Hills | CA | WHL | West | West Hills | West Hills Medical Center - Employer Drug Testing Not Offered | 7230 Medical Center Dr | 91307-4022 | Los Angeles, CA |
| Westlake Village | CA | CZH | West | West Hills | Westlake Village La Venta | 1220 La Venta Dr. | 91361-3749 | Los Angeles, CA |
| Whittier | CA | K3Q | West | West Hills | Whittier Painter Avenue - Employer Drug Testing Not Offered | 8135 Painter Ave | 90602-3176 | Los Angeles, CA |
| Whittier | CA | WIT | West | West Hills | Whittier Whittier | 15141 Whittier Blvd | 90603-2158 | Los Angeles, CA |

Notes:
(1) See QUEST-VARGAS000042006 - CONFIDENTIAL-NSHM-FS1.xlsx.

Exhibit M

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***
States with Quest PSCs

| U.S. States | Quest PSC |
| --- | --- |
| Alabama | Yes |
| Alaska | Yes |
| Arizona | No |
| Arkansas | Yes |
| California | Yes |
| Colorado | Yes |
| Connecticut | Yes |
| Delaware | Yes |
| Florida | Yes |
| Georgia | Yes |
| Hawaii | No |
| Idaho | Yes |
| Illinois | Yes |
| Indiana | Yes |
| Iowa | Yes |
| Kansas | Yes |
| Kentucky | Yes |
| Louisiana | Yes |
| Maine | Yes |
| Maryland | Yes |
| Massachusetts | Yes |
| Michigan | Yes |
| Minnesota | Yes |
| Mississippi | Yes |
| Missouri | Yes |
| Montana | Yes |
| Nebraska | Yes |
| Nevada | Yes |
| New Hampshire | Yes |

*Prepared in connection with the declaration of Jed Greene, CPA, CFF, CMA*

Page 1 of 2
PA0940

Exhibit M

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***
States with Quest PSCs

| U.S. States | Quest PSC |
|---|---|
| New Jersey | Yes |
| New Mexico | Yes |
| New York | Yes |
| North Carolina | Yes |
| North Dakota | No |
| Ohio | Yes |
| Oklahoma | No |
| Oregon | Yes |
| Pennsylvania | Yes |
| Rhode Island | Yes |
| South Carolina | Yes |
| South Dakota | No |
| Tennessee | Yes |
| Texas | Yes |
| Utah | Yes |
| Vermont | No |
| Virginia | Yes |
| Washington | Yes |
| West Virginia | Yes |
| Wisconsin | Yes |
| Wyoming | No |

Notes:
(1) See QUEST-VARGAS000042006 - CONFIDENTIAL-NSHM-FS1.xlsx.

*Prepared in connection with the declaration of Jed Greene, CPA, CFF, CMA*

Page 2 of 2
PA0941

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Abilene,TX | Abilene | TX | YLW | Taylor,TX | 137,294 | 138,034 | 136,870 | 137,399 | 136,870 |
| Abington,PA | Abington | PA | UOY | Montgomery,PA | 826,924 | 830,915 | 823,823 | 827,221 | 823,823 |
| Addison,TX | Addison | TX | P3E | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Agoura Hills,CA | Agoura Hills | CA | F4I | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Aiken,SC | Aiken | SC | HF7 | Aiken,SC | 169,449 | 170,872 | 168,301 | 169,541 | 168,301 |
| Akron,OH | Akron | OH | LMO | Summit,OH | 541,353 | 541,013 | 541,334 | 541,233 | 541,013 |
| Alameda,CA | Alameda | CA | CKB | Alameda,CA | 1,666,756 | 1,671,329 | 1,656,754 | 1,664,946 | 1,656,754 |
| Alamogordo,NM | Alamogordo | NM | XFF | Otero,NM | 66,659 | 67,490 | 66,137 | 66,762 | 66,137 |
| Albany,GA | Albany | GA | KJ2 | Dougherty,GA | 89,200 | 87,956 | 89,703 | 88,953 | 87,956 |
| Albany,NY | Albany | NY | ABO | Albany,NY | 306,585 | 305,506 | 306,968 | 306,353 | 305,506 |
| Albuquerque,NM | Albuquerque | NM | A3E | Bernalillo,NM | 678,034 | 679,121 | 677,858 | 678,338 | 677,858 |
| Albuquerque,NM | Albuquerque | NM | ND4 | Bernalillo,NM | 678,034 | 679,121 | 677,858 | 678,338 | 677,858 |
| Albuquerque,NM | Albuquerque | NM | O6D | Bernalillo,NM | 678,034 | 679,121 | 677,858 | 678,338 | 677,858 |
| Albuquerque,NM | Albuquerque | NM | QOW | Bernalillo,NM | 678,034 | 679,121 | 677,858 | 678,338 | 677,858 |
| Albuquerque,NM | Albuquerque | NM | W4S | Bernalillo,NM | 678,034 | 679,121 | 677,858 | 678,338 | 677,858 |
| Albuquerque,NM | Albuquerque | NM | XFI | Bernalillo,NM | 678,034 | 679,121 | 677,858 | 678,338 | 677,858 |
| Alden,NY | Alden | NY | QH2 | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Alexandria,VA | Alexandria | VA | AXA | Fairfax,VA | 1,148,463 | 1,147,532 | 1,145,862 | 1,147,286 | 1,145,862 |
| Alexandria,VA | Alexandria | VA | P1X | Alexandria City,VA | 159,069 | 159,428 | 157,613 | 158,703 | 157,613 |
| Alice,TX | Alice | TX | ALY | Jim Wells,TX | 40,756 | 40,482 | 40,972 | 40,737 | 40,482 |
| Aliso Viejo,CA | Aliso Viejo | CA | FQ6 | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Allen,TX | Allen | TX | P3F | Collin,TX | 1,004,307 | 1,034,730 | 973,977 | 1,004,338 | 973,977 |
| Allen,TX | Allen | TX | W5D | Collin,TX | 1,004,307 | 1,034,730 | 973,977 | 1,004,338 | 973,977 |
| Allentown,PA | Allentown | PA | ALO | Lehigh,PA | 368,359 | 369,318 | 365,052 | 367,576 | 365,052 |
| Allentown,PA | Allentown | PA | FDW | Lehigh,PA | 368,359 | 369,318 | 365,052 | 367,576 | 365,052 |
| Allison Park,PA | Allison Park | PA | M3Q | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| ALPHARETTA,GA | ALPHARETTA | GA | IK1 | Fulton,GA | 1,050,131 | 1,063,937 | 1,036,200 | 1,050,089 | 1,036,200 |
| Altamonte Springs,FL | Altamonte Springs | FL | XGP | Seminole,FL | 468,122 | 471,826 | 461,402 | 467,117 | 461,402 |
| Alton,IL | Alton | IL | IPW | Madison,IL | 264,026 | 262,966 | 264,776 | 263,923 | 262,966 |
| Amarillo,TX | Amarillo | TX | T2Z | Potter,TX | 118,711 | 117,415 | 119,674 | 118,600 | 117,415 |
| Ambridge,PA | Ambridge | PA | AMJ | Beaver,PA | 164,582 | 163,929 | 165,833 | 164,781 | 163,929 |
| Amherst,NH | Amherst | NH | TKE | Hillsborough,NH | 414,630 | 417,025 | 413,035 | 414,897 | 413,035 |
| Amherst,NY | Amherst | NY | AHS | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Amherst,NY | Amherst | NY | ESE | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Amherst,NY | Amherst | NY | GF1 | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Amherst,NY | Amherst | NY | QUZ | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Amherst,NY | Amherst | NY | ZCG | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Amsterdam,NY | Amsterdam | NY | J1O | Montgomery,NY | 49,394 | 49,221 | 49,302 | 49,306 | 49,221 |
| Anaheim,CA | Anaheim | CA | DBR | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Anaheim,CA | Anaheim | CA | DGI | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Anaheim,CA | Anaheim | CA | DGJ | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Anchorage,AK | Anchorage | AK | AA | Anchorage Municipality,A | 290,521 | 288,000 | 293,531 | 290,684 | 288,000 |
| Anderson,CA | Anderson | CA | K2Z | Shasta,CA | 179,709 | 180,080 | 179,212 | 179,667 | 179,212 |
| Andover,MA | Andover | MA | QAN | Essex,MA | 788,183 | 789,034 | 783,676 | 786,964 | 783,676 |
| Annandale,VA | Annandale | VA | EYX | Fairfax,VA | 1,148,463 | 1,147,532 | 1,145,862 | 1,147,286 | 1,145,862 |
| Annandale,VA | Annandale | VA | WDN | Fairfax,VA | 1,148,463 | 1,147,532 | 1,145,862 | 1,147,286 | 1,145,862 |
| Annapolis,MD | Annapolis | MD | JJV | Anne Arundel,MD | 575,523 | 579,234 | 571,275 | 575,344 | 571,275 |
| Anniston,AL | Anniston | AL | QFY | Calhoun,AL | 114,331 | 113,605 | 114,618 | 114,185 | 113,605 |
| Antioch,CA | Antioch | CA | ANI | Contra Costa,CA | 1,150,519 | 1,153,526 | 1,142,251 | 1,148,765 | 1,142,251 |
| Apopka,FL | Apopka | FL | TWO | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |
| Apple Valley,CA | Apple Valley | CA | DEX | San Bernardino,CA | 2,166,753 | 2,180,085 | 2,149,031 | 2,165,290 | 2,149,031 |
| Arcadia,CA | Arcadia | CA | CXW | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Arcadia,CA | Arcadia | CA | VU4 | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Arcadia,FL | Arcadia | FL | D4V | DeSoto,FL | 37,368 | 38,001 | 36,903 | 37,424 | 36,903 |
| Arlington,MA | Arlington | MA | VLV | Middlesex,MA | 1,608,470 | 1,611,699 | 1,600,842 | 1,607,004 | 1,600,842 |
| Arlington,TX | Arlington | TX | ARN | Tarrant,TX | 2,081,446 | 2,102,515 | 2,049,770 | 2,077,910 | 2,049,770 |
| Arlington,TX | Arlington | TX | SAD | Tarrant,TX | 2,081,446 | 2,102,515 | 2,049,770 | 2,077,910 | 2,049,770 |
| Arlington,VA | Arlington | VA | HPQ | Arlington,VA | 236,025 | 236,842 | 233,464 | 235,444 | 233,464 |
| Arlington,VA | Arlington | VA | JPC | Arlington,VA | 236,025 | 236,842 | 233,464 | 235,444 | 233,464 |
| Arlington Heights,IL | Arlington Heights | IL | XER | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Arnold,MO | Arnold | MO | GGP | Jefferson,MO | 224,410 | 225,081 | 223,951 | 224,481 | 223,951 |
| Arvada,CO | Arvada | CO | A2X | Jefferson,CO | 579,392 | 582,881 | 574,798 | 579,024 | 574,798 |
| Ashburn,VA | Ashburn | VA | EGP | Loudoun,VA | 405,522 | 413,538 | 395,134 | 404,731 | 395,134 |
| Asheville,NC | Asheville | NC | XJ7 | Buncombe,NC | 259,259 | 261,191 | 256,886 | 259,112 | 256,886 |
| Aspinwall,PA | Aspinwall | PA | ZIL | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Astoria,NY | Astoria | NY | ASA | Queens,NY | 2,274,605 | 2,253,858 | 2,287,388 | 2,271,950 | 2,253,858 |
| Astoria,NY | Astoria | NY | YBC | Queens,NY | 2,274,605 | 2,253,858 | 2,287,388 | 2,271,950 | 2,253,858 |
| Athens,GA | Athens | GA | AN | Clarke,GA | 127,268 | 128,331 | 126,176 | 127,258 | 126,176 |
| Atkinson,NH | Atkinson | NH | SSK | Rockingham,NH | 308,287 | 309,769 | 306,359 | 308,138 | 306,359 |
| Atlanta,GA | Atlanta | GA | FPU | Fulton,GA | 1,050,131 | 1,063,937 | 1,036,200 | 1,050,089 | 1,036,200 |
| Atlanta,GA | Atlanta | GA | J4T | Fulton,GA | 1,050,131 | 1,063,937 | 1,036,200 | 1,050,089 | 1,036,200 |
| Atlanta,GA | Atlanta | GA | JJK | Fulton,GA | 1,050,131 | 1,063,937 | 1,036,200 | 1,050,089 | 1,036,200 |
| Atlanta,GA | Atlanta | GA | XT5 | Fulton,GA | 1,050,131 | 1,063,937 | 1,036,200 | 1,050,089 | 1,036,200 |
| Atlantis,FL | Atlantis | FL | ARQ | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| Auburn,CA | Auburn | CA | DII | Placer,CA | 392,330 | 398,329 | 385,512 | 392,057 | 385,512 |
| Auburn,MA | Auburn | MA | HC5 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Augusta,ME | Augusta | ME | F3F | Kennebec,ME | 122,044 | 122,302 | 121,753 | 122,033 | 121,753 |
| Aurora,CO | Aurora | CO | AUU | Adams,CO | 511,354 | 517,421 | 504,108 | 510,961 | 504,108 |
| Aurora,CO | Aurora | CO | Q1W | Adams,CO | 511,354 | 517,421 | 504,108 | 510,961 | 504,108 |
| Aurora,IL | Aurora | IL | AEO | Kane,IL | 532,720 | 532,403 | 531,376 | 532,166 | 531,376 |
| Aurora,IL | Aurora | IL | FUP | Kane,IL | 532,720 | 532,403 | 531,376 | 532,166 | 531,376 |
| Austell,GA | Austell | GA | AU | Cobb,GA | 756,070 | 760,141 | 751,218 | 755,810 | 751,218 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Austin,TX | Austin | TX | I2Y | Travis,TX | 1,246,572 | 1,273,954 | 1,226,805 | 1,249,110 | 1,226,805 |
| Austin,TX | Austin | TX | I2Z | Travis,TX | 1,246,572 | 1,273,954 | 1,226,805 | 1,249,110 | 1,226,805 |
| Austin,TX | Austin | TX | J2A | Travis,TX | 1,246,572 | 1,273,954 | 1,226,805 | 1,249,110 | 1,226,805 |
| Austin,TX | Austin | TX | YE6 | Travis,TX | 1,246,572 | 1,273,954 | 1,226,805 | 1,249,110 | 1,226,805 |
| Austintown,OH | Austintown | OH | XX4 | Mahoning,OH | 229,216 | 228,683 | 229,961 | 229,287 | 228,683 |
| Aventura,FL | Aventura | FL | UXC | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Avon,CT | Avon | CT | AAK | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Avon,CT | Avon | CT | AVN | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Avon,CT | Avon | CT | HY4 | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Azle,TX | Azle | TX | BQL | Tarrant,TX | 2,081,446 | 2,102,515 | 2,049,770 | 2,077,910 | 2,049,770 |
| Babylon,NY | Babylon | NY | ZAA | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| Bakersfield,CA | Bakersfield | CA | DDI | Kern,CA | 893,758 | 900,202 | 887,641 | 893,867 | 887,641 |
| Bakersfield,CA | Bakersfield | CA | DDJ | Kern,CA | 893,758 | 900,202 | 887,641 | 893,867 | 887,641 |
| Bakersfield,CA | Bakersfield | CA | O3M | Kern,CA | 893,758 | 900,202 | 887,641 | 893,867 | 887,641 |
| Bakersfield,CA | Bakersfield | CA | OE4 | Kern,CA | 893,758 | 900,202 | 887,641 | 893,867 | 887,641 |
| Bakersfield,CA | Bakersfield | CA | RBO | Kern,CA | 893,758 | 900,202 | 887,641 | 893,867 | 887,641 |
| Baldwinsville,NY | Baldwinsville | NY | A3W | Onondaga,NY | 461,649 | 460,528 | 462,872 | 461,683 | 460,528 |
| Baltimore,MD | Baltimore | MD | B2C | Baltimore,MD | 827,859 | 827,370 | 828,018 | 827,749 | 827,370 |
| Baltimore,MD | Baltimore | MD | ETZ | Baltimore,MD | 827,859 | 827,370 | 828,018 | 827,749 | 827,370 |
| Baltimore,MD | Baltimore | MD | GAR | Baltimore,MD | 827,859 | 827,370 | 828,018 | 827,749 | 827,370 |
| Bangor,PA | Bangor | PA | BAG | Northampton,PA | 304,564 | 305,285 | 302,809 | 304,219 | 302,809 |
| Barrington,IL | Barrington | IL | HCC | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Barstow,CA | Barstow | CA | HSL | San Bernardino,CA | 2,166,753 | 2,180,085 | 2,149,031 | 2,165,290 | 2,149,031 |
| Batavia,IL | Batavia | IL | ETQ | Kane,IL | 532,720 | 532,403 | 531,376 | 532,166 | 531,376 |
| Baton Rouge,LA | Baton Rouge | LA | YME | East Baton Rouge Parish,I | 442,058 | 440,059 | 443,763 | 441,960 | 440,059 |
| Bay City,MI | Bay City | MI | BCI | Bay,MI | 103,702 | 103,126 | 104,104 | 103,644 | 103,126 |
| Bay City,MI | Bay City | MI | BCY | Bay,MI | 103,702 | 103,126 | 104,104 | 103,644 | 103,126 |
| Bay Shore,NY | Bay Shore | NY | BHR | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| Bayonne,NJ | Bayonne | NJ | A5A | Hudson,NJ | 671,931 | 672,391 | 670,046 | 671,456 | 670,046 |
| Bayside,NY | Bayside | NY | BSD | Queens,NY | 2,274,605 | 2,253,858 | 2,287,388 | 2,271,950 | 2,253,858 |
| Baytown,TX | Baytown | TX | BAE | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Baytown,TX | Baytown | TX | HYX | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Beaumont,CA | Beaumont | CA | DDZ | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Beaumont,TX | Beaumont | TX | TJ | Jefferson,TX | 253,234 | 251,565 | 254,340 | 253,046 | 251,565 |
| Beaver,PA | Beaver | PA | BEW | Beaver,PA | 164,582 | 163,929 | 165,833 | 164,781 | 163,929 |
| Beaver,PA | Beaver | PA | PB2 | Beaver,PA | 164,582 | 163,929 | 165,833 | 164,781 | 163,929 |
| Beaverton,OR | Beaverton | OR | E2M | Washington,OR | 596,904 | 601,592 | 589,481 | 595,992 | 589,481 |
| Bedford,NH | Bedford | NH | C3M | Hillsborough,NH | 414,630 | 417,025 | 413,035 | 414,897 | 413,035 |
| Bedford,TX | Bedford | TX | BIV | Tarrant,TX | 2,081,446 | 2,102,515 | 2,049,770 | 2,077,910 | 2,049,770 |
| Bedford Park,IL | Bedford Park | IL | A6X | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Beeville,TX | Beeville | TX | BVL | Bee,TX | 32,467 | 32,565 | 32,611 | 32,548 | 32,467 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Bel Air,MD | Bel Air | MD | BAR | Harford,MD | 253,882 | 255,441 | 252,222 | 253,848 | 252,222 |
| Bel Air,MD | Bel Air | MD | BLZ | Harford,MD | 253,882 | 255,441 | 252,222 | 253,848 | 252,222 |
| Bel Air,MD | Bel Air | MD | JFW | Harford,MD | 253,882 | 255,441 | 252,222 | 253,848 | 252,222 |
| Bellaire,TX | Bellaire | TX | LLZ | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Belle Glade,FL | Belle Glade | FL | YVF | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| Belle Vernon,PA | Belle Vernon | PA | UD5 | Fayette,PA | 130,323 | 129,274 | 131,302 | 130,300 | 129,274 |
| Belleville,IL | Belleville | IL | GX | St. Clair,IL | 261,360 | 259,686 | 262,338 | 261,128 | 259,686 |
| Bellevue,PA | Bellevue | PA | XYR | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Bellevue,WA | Bellevue | WA | E2B | King,WA | 2,228,364 | 2,252,782 | 2,195,502 | 2,225,549 | 2,195,502 |
| Bellevue,WA | Bellevue | WA | E2C | King,WA | 2,228,364 | 2,252,782 | 2,195,502 | 2,225,549 | 2,195,502 |
| Bellflower,CA | Bellflower | CA | CXJ | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Bellingham,WA | Bellingham | WA | J2K | Whatcom,WA | 225,197 | 229,247 | 220,821 | 225,088 | 220,821 |
| Bellingham,WA | Bellingham | WA | J3B | Whatcom,WA | 225,197 | 229,247 | 220,821 | 225,088 | 220,821 |
| Bellingham,WA | Bellingham | WA | Q4U | Whatcom,WA | 225,197 | 229,247 | 220,821 | 225,088 | 220,821 |
| Bellingham,WA | Bellingham | WA | W1H | Whatcom,WA | 225,197 | 229,247 | 220,821 | 225,088 | 220,821 |
| Bellingham,WA | Bellingham | WA | W1I | Whatcom,WA | 225,197 | 229,247 | 220,821 | 225,088 | 220,821 |
| Bellingham,WA | Bellingham | WA | W1J | Whatcom,WA | 225,197 | 229,247 | 220,821 | 225,088 | 220,821 |
| Belmont,MI | Belmont | MI | GPS | Kent,MI | 653,350 | 656,955 | 648,121 | 652,809 | 648,121 |
| Belton,MO | Belton | MO | ITT | Cass,MO | 104,769 | 105,780 | 103,597 | 104,715 | 103,597 |
| Benicia,CA | Benicia | CA | EEO | Solano,CA | 445,725 | 447,643 | 441,829 | 445,066 | 441,829 |
| Benson,NC | Benson | NC | IYG | Johnston,NC | 202,692 | 209,339 | 196,870 | 202,967 | 196,870 |
| Bentonville,AR | Bentonville | AR | VFU | Benton,AR | 272,266 | 279,141 | 265,759 | 272,389 | 265,759 |
| Berkeley,CA | Berkeley | CA | CW2 | Alameda,CA | 1,666,756 | 1,671,329 | 1,656,754 | 1,664,946 | 1,656,754 |
| Bernardsville,NJ | Bernardsville | NJ | BES | Somerset,NJ | 330,181 | 328,934 | 329,838 | 329,651 | 328,934 |
| Bethalto,IL | Bethalto | IL | RPX | Madison,IL | 264,026 | 262,966 | 264,776 | 263,923 | 262,966 |
| Bethel,CT | Bethel | CT | KUQ | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Bethel Park,PA | Bethel Park | PA | PTE | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Bethel Park,PA | Bethel Park | PA | ZEG | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Bethesda,MD | Bethesda | MD | I2S | Montgomery,MD | 1,048,478 | 1,050,688 | 1,043,530 | 1,047,565 | 1,043,530 |
| Bethesda,MD | Bethesda | MD | WIV | Montgomery,MD | 1,048,478 | 1,050,688 | 1,043,530 | 1,047,565 | 1,043,530 |
| Bethlehem,PA | Bethlehem | PA | BET | Northampton,PA | 304,564 | 305,285 | 302,809 | 304,219 | 302,809 |
| Bethlehem,PA | Bethlehem | PA | JJA | Northampton,PA | 304,564 | 305,285 | 302,809 | 304,219 | 302,809 |
| Bethpage,NY | Bethpage | NY | BBN | Nassau,NY | 1,357,534 | 1,356,924 | 1,356,509 | 1,356,989 | 1,356,509 |
| Beverly Hills,CA | Beverly Hills | CA | CQZ | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Beverly Hills,CA | Beverly Hills | CA | QBH | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Beverly Hills,CA | Beverly Hills | CA | RYX | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Beverly Hills,FL | Beverly Hills | FL | TV6 | Citrus,FL | 147,682 | 149,657 | 145,169 | 147,503 | 145,169 |
| Big Stone Gap,VA | Big Stone Gap | VA | GK6 | Wise,VA | 37,875 | 37,383 | 38,486 | 37,915 | 37,383 |
| Billings,MT | Billings | MT | VGT | Yellowstone,MT | 160,029 | 161,300 | 159,008 | 160,112 | 159,008 |
| Birmingham,AL | Birmingham | AL | HNX | Jefferson,AL | 659,429 | 658,573 | 659,680 | 659,227 | 658,573 |
| Birmingham,AL | Birmingham | AL | O1K | Jefferson,AL | 659,429 | 658,573 | 659,680 | 659,227 | 658,573 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Birmingham,AL | Birmingham | AL | YCI | Jefferson,AL | 659,429 | 658,573 | 659,680 | 659,227 | 658,573 |
| Birmingham,MI | Birmingham | MI | OT3 | Oakland,MI | 1,256,694 | 1,257,584 | 1,253,185 | 1,255,821 | 1,253,185 |
| Blasdell,NY | Blasdell | NY | L4Y | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Bloomfield,CT | Bloomfield | CT | EJS | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Bloomfield,CT | Bloomfield | CT | G3O | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Bloomfield Hills,MI | Bloomfield Hills | MI | BLH | Oakland,MI | 1,256,694 | 1,257,584 | 1,253,185 | 1,255,821 | 1,253,185 |
| Bloomingdale,IL | Bloomingdale | IL | A6L | DuPage,IL | 927,247 | 922,921 | 929,060 | 926,409 | 922,921 |
| Bloomingdale,IL | Bloomingdale | IL | GDA | DuPage,IL | 927,247 | 922,921 | 929,060 | 926,409 | 922,921 |
| Bloomington,IL | Bloomington | IL | IBL | McLean,IL | 172,410 | 171,517 | 172,578 | 172,168 | 171,517 |
| Blue Springs,MO | Blue Springs | MO | ITU | Jackson,MO | 700,784 | 703,011 | 696,216 | 700,004 | 696,216 |
| Bluffton,SC | Bluffton | SC | BFN | Beaufort,SC | 188,876 | 192,122 | 186,095 | 189,031 | 186,095 |
| Boca Raton,FL | Boca Raton | FL | BOR | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| Boca Raton,FL | Boca Raton | FL | BRP | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| Boca Raton,FL | Boca Raton | FL | YUX | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| Boerne,TX | Boerne | TX | LLT | Kendall,TX | 45,603 | 47,431 | 43,769 | 45,601 | 43,769 |
| Bolingbrook,IL | Bolingbrook | IL | QTB | Will,IL | 691,149 | 690,743 | 689,315 | 690,402 | 689,315 |
| Bonita Springs,FL | Bonita Springs | FL | BNS | Lee,FL | 754,470 | 770,577 | 737,468 | 754,172 | 737,468 |
| Bonita Springs,FL | Bonita Springs | FL | DUQ | Lee,FL | 754,470 | 770,577 | 737,468 | 754,172 | 737,468 |
| Bonney Lake,WA | Bonney Lake | WA | S4U | Pierce,WA | 893,756 | 904,980 | 877,013 | 891,916 | 877,013 |
| Boston,MA | Boston | MA | LGW | Suffolk,MA | 803,147 | 803,907 | 796,605 | 801,220 | 796,605 |
| Boston,MA | Boston | MA | YH3 | Suffolk,MA | 803,147 | 803,907 | 796,605 | 801,220 | 796,605 |
| Boulder,CO | Boulder | CO | A2Z | Boulder,CO | 324,636 | 326,196 | 322,510 | 324,447 | 322,510 |
| Bound Brook,NJ | Bound Brook | NJ | BWT | Somerset,NJ | 330,181 | 328,934 | 329,838 | 329,651 | 328,934 |
| Bourbonnais,IL | Bourbonnais | IL | KKE | Kankakee,IL | 109,953 | 109,862 | 110,637 | 110,151 | 109,862 |
| Bowie,MD | Bowie | MD | AXT | Prince George's,MD | 909,619 | 909,327 | 908,670 | 909,205 | 908,670 |
| Bowie,MD | Bowie | MD | BOE | Prince George's,MD | 909,619 | 909,327 | 908,670 | 909,205 | 908,670 |
| Boynton Beach,FL | Boynton Beach | FL | M2A | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| Boynton Beach,FL | Boynton Beach | FL | UWX | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| Boynton Beach,FL | Boynton Beach | FL | YOS | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| Bozeman,MT | Bozeman | MT | C3K | Gallatin,MT | 111,682 | 114,434 | 108,063 | 111,393 | 108,063 |
| Bradenton,FL | Bradenton | FL | BAD | Manatee,FL | 394,387 | 403,253 | 384,213 | 393,951 | 384,213 |
| Bradenton,FL | Bradenton | FL | SBT | Manatee,FL | 394,387 | 403,253 | 384,213 | 393,951 | 384,213 |
| Bradenton,FL | Bradenton | FL | XQQ | Manatee,FL | 394,387 | 403,253 | 384,213 | 393,951 | 384,213 |
| Braintree,MA | Braintree | MA | ZT | Norfolk,MA | 703,230 | 706,775 | 700,437 | 703,481 | 700,437 |
| Brandon,FL | Brandon | FL | GII | Hillsborough,FL | 1,451,919 | 1,471,968 | 1,422,278 | 1,448,722 | 1,422,278 |
| Branford,CT | Branford | CT | BRJ | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Branson,MO | Branson | MO | BSO | Taney,MO | 55,719 | 55,928 | 55,114 | 55,587 | 55,114 |
| Brawley,CA | Brawley | CA | DEJ | Imperial,CA | 181,523 | 181,215 | 180,701 | 181,146 | 180,701 |
| Brentwood,CA | Brentwood | CA | DQG | Contra Costa,CA | 1,150,519 | 1,153,526 | 1,142,251 | 1,148,765 | 1,142,251 |
| Brentwood,NY | Brentwood | NY | T4X | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| Brick,NJ | Brick | NJ | S4G | Ocean,NJ | 601,478 | 607,186 | 596,415 | 601,693 | 596,415 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Bridgeport,CT | Bridgeport | CT | BPG | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Bridgeport,CT | Bridgeport | CT | BPO | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Bridgeport,CT | Bridgeport | CT | JDU | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Bridgeport,CT | Bridgeport | CT | ZWC | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Bridgeport,MI | Bridgeport | MI | BGT | Saginaw,MI | 190,791 | 190,539 | 191,821 | 191,050 | 190,539 |
| Bridgeton,MO | Bridgeton | MO | MNW | St. Louis,MO | 995,219 | 994,205 | 996,919 | 995,448 | 994,205 |
| Bridgeton,NJ | Bridgeton | NJ | LHD | Cumberland,NJ | 150,635 | 149,527 | 151,906 | 150,689 | 149,527 |
| Brighton,CO | Brighton | CO | C3H | Adams,CO | 511,354 | 517,421 | 504,108 | 510,961 | 504,108 |
| Brighton,MA | Brighton | MA | VLY | Suffolk,MA | 803,147 | 803,907 | 796,605 | 801,220 | 796,605 |
| Brighton,MA | Brighton | MA | VLZ | Suffolk,MA | 803,147 | 803,907 | 796,605 | 801,220 | 796,605 |
| Brighton,MA | Brighton | MA | VNJ | Suffolk,MA | 803,147 | 803,907 | 796,605 | 801,220 | 796,605 |
| Bristol,CT | Bristol | CT | BRS | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Bristol,CT | Bristol | CT | HY9 | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Bristol,TN | Bristol | TN | EK7 | Sullivan,TN | 157,599 | 158,348 | 157,050 | 157,666 | 157,050 |
| Bristol,TN | Bristol | TN | X1I | Sullivan,TN | 157,599 | 158,348 | 157,050 | 157,666 | 157,050 |
| Brockton,MA | Brockton | MA | BT | Plymouth,MA | 518,422 | 521,202 | 515,303 | 518,309 | 515,303 |
| Brockton,MA | Brockton | MA | VMF | Plymouth,MA | 518,422 | 521,202 | 515,303 | 518,309 | 515,303 |
| Brockton,MA | Brockton | MA | VMG | Plymouth,MA | 518,422 | 521,202 | 515,303 | 518,309 | 515,303 |
| Brodheadsville,PA | Brodheadsville | PA | SG1 | Monroe,PA | 169,294 | 170,271 | 168,032 | 169,199 | 168,032 |
| Bronx,NY | Bronx | NY | AD5 | Bronx,NY | 1,432,087 | 1,418,207 | 1,435,068 | 1,428,454 | 1,418,207 |
| Bronx,NY | Bronx | NY | BRX | Bronx,NY | 1,432,087 | 1,418,207 | 1,435,068 | 1,428,454 | 1,418,207 |
| Bronx,NY | Bronx | NY | FE6 | Bronx,NY | 1,432,087 | 1,418,207 | 1,435,068 | 1,428,454 | 1,418,207 |
| Bronx,NY | Bronx | NY | J2Z | Bronx,NY | 1,432,087 | 1,418,207 | 1,435,068 | 1,428,454 | 1,418,207 |
| Bronx,NY | Bronx | NY | WBG | Bronx,NY | 1,432,087 | 1,418,207 | 1,435,068 | 1,428,454 | 1,418,207 |
| Brookline,MA | Brookline | MA | QBP | Norfolk,MA | 703,230 | 706,775 | 700,437 | 703,481 | 700,437 |
| Brookline,MA | Brookline | MA | S4S | Norfolk,MA | 703,230 | 706,775 | 700,437 | 703,481 | 700,437 |
| Brooklyn,NY | Brooklyn | NY | A5B | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | BB9 | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | BGP | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | BKK | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | BKN | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | BKR | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | BRK | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | EJM | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | HQX | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | JFL | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | JKL | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | NZG | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | P5W | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | Q5F | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | Q5G | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Brooklyn,NY | Brooklyn | NY | R2G | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | R5B | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | R5C | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | R5H | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | S5B | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooklyn,NY | Brooklyn | NY | TYS | Kings,NY | 2,578,074 | 2,559,903 | 2,589,974 | 2,575,984 | 2,559,903 |
| Brooksville,FL | Brooksville | FL | SRH | Hernando,FL | 190,582 | 193,920 | 186,313 | 190,272 | 186,313 |
| Brooksville,FL | Brooksville | FL | XZK | Hernando,FL | 190,582 | 193,920 | 186,313 | 190,272 | 186,313 |
| Brownsville,TX | Brownsville | TX | F6E | Cameron,TX | 422,139 | 423,163 | 421,666 | 422,323 | 421,666 |
| Brunswick,GA | Brunswick | GA | NJ7 | Glynn,GA | 84,975 | 85,292 | 84,470 | 84,912 | 84,470 |
| Bryn Mawr,PA | Bryn Mawr | PA | TAD | Montgomery,PA | 826,924 | 830,915 | 823,823 | 827,221 | 823,823 |
| Buda,TX | Buda | TX | L5K | Hays,TX | 222,706 | 230,191 | 213,366 | 222,088 | 213,366 |
| Buffalo,NY | Buffalo | NY | LE2 | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Buffalo,NY | Buffalo | NY | WE7 | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Buffalo,NY | Buffalo | NY | YKQ | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Buffalo,NY | Buffalo | NY | ZRS | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Buffalo Grove,IL | Buffalo Grove | IL | TJN | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Burbank,CA | Burbank | CA | DKU | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Burbank,CA | Burbank | CA | G4Y | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Burke,VA | Burke | VA | G3S | Fairfax,VA | 1,148,463 | 1,147,532 | 1,145,862 | 1,147,286 | 1,145,862 |
| Burleson,TX | Burleson | TX | DD9 | Johnson,TX | 171,121 | 175,817 | 167,212 | 171,383 | 167,212 |
| Burlington,NJ | Burlington | NJ | PJ1 | Burlington,NJ | 444,745 | 445,349 | 445,702 | 445,265 | 444,745 |
| Burton,MI | Burton | MI | A6U | Genesee,MI | 406,688 | 405,813 | 407,875 | 406,792 | 405,813 |
| Burton,MI | Burton | MI | BTN | Genesee,MI | 406,688 | 405,813 | 407,875 | 406,792 | 405,813 |
| Butler,NJ | Butler | NJ | GIE | Morris,NJ | 493,070 | 491,845 | 493,379 | 492,765 | 491,845 |
| Cadillac,MI | Cadillac | MI | QKK | Wexford,MI | 33,446 | 33,631 | 33,256 | 33,444 | 33,256 |
| Camarillo,CA | Camarillo | CA | DCP | Ventura,CA | 848,142 | 846,006 | 847,263 | 847,137 | 846,006 |
| Camarillo,CA | Camarillo | CA | OE5 | Ventura,CA | 848,142 | 846,006 | 847,263 | 847,137 | 846,006 |
| Camarillo,CA | Camarillo | CA | TDV | Ventura,CA | 848,142 | 846,006 | 847,263 | 847,137 | 846,006 |
| Cameron Park,CA | Cameron Park | CA | DJL | El Dorado,CA | 190,746 | 192,843 | 188,563 | 190,717 | 188,563 |
| Camillus,NY | Camillus | NY | XC7 | Onondaga,NY | 461,649 | 460,528 | 462,872 | 461,683 | 460,528 |
| Camp Hill,PA | Camp Hill | PA | CPI | Cumberland,PA | 251,131 | 253,370 | 249,328 | 251,276 | 249,328 |
| Canton,GA | Canton | GA | CNN | Cherokee,GA | 253,914 | 258,773 | 247,515 | 253,401 | 247,515 |
| Canton,MI | Canton | MI | JDX | Wayne,MI | 1,754,453 | 1,749,343 | 1,757,299 | 1,753,698 | 1,749,343 |
| Canton,OH | Canton | OH | RAI | Stark,OH | 371,248 | 370,606 | 372,404 | 371,419 | 370,606 |
| Canyonville,OR | Canyonville | OR | FFK | Douglas,OR | 110,114 | 110,980 | 109,114 | 110,069 | 109,114 |
| Cape Coral,FL | Cape Coral | FL | FCC | Lee,FL | 754,470 | 770,577 | 737,468 | 754,172 | 737,468 |
| Cape Coral,FL | Cape Coral | FL | YWV | Lee,FL | 754,470 | 770,577 | 737,468 | 754,172 | 737,468 |
| Cape Girardeau,MO | Cape Girardeau | MO | PU8 | Cape Girardeau,MO | 78,638 | 78,871 | 78,491 | 78,667 | 78,491 |
| Capitola,CA | Capitola | CA | DLZ | Santa Cruz,CA | 273,841 | 273,213 | 273,962 | 273,672 | 273,213 |
| Carbondale,IL | Carbondale | IL | ZX1 | Jackson,IL | 57,289 | 56,750 | 57,977 | 57,339 | 56,750 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Carlisle,PA | Carlisle | PA | CIS | Cumberland,PA | 251,131 | 253,370 | 249,328 | 251,276 | 249,328 |
| Carlsbad,CA | Carlsbad | CA | ZTP | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| Carmel,NY | Carmel | NY | GYP | Putnam,NY | 98,814 | 98,320 | 98,787 | 98,640 | 98,320 |
| Carmichael,CA | Carmichael | CA | DHN | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Carmichael,CA | Carmichael | CA | DIJ | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Carmichael,CA | Carmichael | CA | DJM | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Carmichael,CA | Carmichael | CA | T2I | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Carnegie,PA | Carnegie | PA | WYW | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Carrollton,TX | Carrollton | TX | CTP | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Carson City,NV | Carson City | NV | QCV | Carson City,NV | 55,202 | 55,916 | 54,773 | 55,297 | 54,773 |
| Cary,NC | Cary | NC | MQX | Wake,NC | 1,091,273 | 1,111,761 | 1,069,079 | 1,090,704 | 1,069,079 |
| Cary,NC | Cary | NC | YXX | Wake,NC | 1,091,273 | 1,111,761 | 1,069,079 | 1,090,704 | 1,069,079 |
| Casselberry,FL | Casselberry | FL | S5L | Seminole,FL | 468,122 | 471,826 | 461,402 | 467,117 | 461,402 |
| Castle Rock,CO | Castle Rock | CO | Z1X | Douglas,CO | 342,989 | 351,154 | 336,041 | 343,395 | 336,041 |
| CASTRO VALLEY,CA | CASTRO VALLEY | CA | DOJ | Alameda,CA | 1,666,756 | 1,671,329 | 1,656,754 | 1,664,946 | 1,656,754 |
| Catonsville,MD | Catonsville | MD | CTV | Baltimore,MD | 827,859 | 827,370 | 828,018 | 827,749 | 827,370 |
| Catonsville,MD | Catonsville | MD | XVG | Baltimore,MD | 827,859 | 827,370 | 828,018 | 827,749 | 827,370 |
| Cedarhurst,NY | Cedarhurst | NY | CDU | Nassau,NY | 1,357,534 | 1,356,924 | 1,356,509 | 1,356,989 | 1,356,509 |
| Celebration,FL | Celebration | FL | YYO | Osceola,FL | 368,456 | 375,751 | 351,955 | 365,387 | 351,955 |
| Centennial,CO | Centennial | CO | C3A | Arapahoe,CO | 651,797 | 656,590 | 644,560 | 650,982 | 644,560 |
| Center Moriches,NY | Center Moriches | NY | SYS | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| Ceres,CA | Ceres | CA | J1S | Stanislaus,CA | 548,126 | 550,660 | 543,194 | 547,327 | 543,194 |
| Chalfont,PA | Chalfont | PA | GEM | Bucks,PA | 627,812 | 628,270 | 626,806 | 627,629 | 626,806 |
| Chambersburg,PA | Chambersburg | PA | K2W | Franklin,PA | 154,579 | 155,027 | 154,147 | 154,584 | 154,147 |
| Champaign,IL | Champaign | IL | CGN | Champaign,IL | 209,918 | 209,689 | 209,922 | 209,843 | 209,689 |
| Charleston,SC | Charleston | SC | HRK | Charleston,SC | 406,222 | 411,406 | 401,165 | 406,264 | 401,165 |
| Charlotte,NC | Charlotte | NC | CDM | Mecklenburg,NC | 1,093,750 | 1,110,356 | 1,074,475 | 1,092,860 | 1,074,475 |
| Charlotte,NC | Charlotte | NC | MB6 | Mecklenburg,NC | 1,093,750 | 1,110,356 | 1,074,475 | 1,092,860 | 1,074,475 |
| Charlotte,NC | Charlotte | NC | UJ9 | Mecklenburg,NC | 1,093,750 | 1,110,356 | 1,074,475 | 1,092,860 | 1,074,475 |
| Charlotte Harbor,FL | Charlotte Harbor | FL | JVW | Charlotte,FL | 184,849 | 188,910 | 181,067 | 184,942 | 181,067 |
| Chattanooga,TN | Chattanooga | TN | BD | Hamilton,TN | 364,293 | 367,804 | 360,919 | 364,339 | 360,919 |
| Cheektowaga,NY | Cheektowaga | NY | HRM | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Cheektowaga,NY | Cheektowaga | NY | ZQH | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Chelmsford,MA | Chelmsford | MA | CHL | Middlesex,MA | 1,608,470 | 1,611,699 | 1,600,842 | 1,607,004 | 1,600,842 |
| Cherry Hill,NJ | Cherry Hill | NJ | CRY | Camden,NJ | 506,353 | 506,471 | 506,738 | 506,521 | 506,353 |
| Cheshire,CT | Cheshire | CT | IBD | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Chesterfield,MO | Chesterfield | MO | GKI | St. Louis,MO | 995,219 | 994,205 | 996,919 | 995,448 | 994,205 |
| Chicago,IL | Chicago | IL | AZE | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Chicago,IL | Chicago | IL | BKA | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Chicago,IL | Chicago | IL | CCF | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Chicago,IL | Chicago | IL | CLP | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Chicago,IL | Chicago | IL | CSB | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Chicago,IL | Chicago | IL | PET | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Chicago,IL | Chicago | IL | XYX | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Chico,CA | Chico | CA | BVC | Butte,CA | 230,339 | 219,186 | 225,817 | 225,114 | 219,186 |
| Chico,CA | Chico | CA | CW5 | Butte,CA | 230,339 | 219,186 | 225,817 | 225,114 | 219,186 |
| Chico,CA | Chico | CA | FEV | Butte,CA | 230,339 | 219,186 | 225,817 | 225,114 | 219,186 |
| Chino,CA | Chino | CA | C2H | San Bernardino,CA | 2,166,753 | 2,180,085 | 2,149,031 | 2,165,290 | 2,149,031 |
| Chipley,FL | Chipley | FL | V2U | Washington,FL | 24,793 | 25,473 | 24,764 | 25,010 | 24,764 |
| Chittenango,NY | Chittenango | NY | JA4 | Madison,NY | 71,117 | 70,941 | 71,205 | 71,088 | 70,941 |
| Chowchilla,CA | Chowchilla | CA | DUS | Madera,CA | 156,882 | 157,327 | 155,433 | 156,547 | 155,433 |
| Chula Vista,CA | Chula Vista | CA | CVK | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| Chula Vista,CA | Chula Vista | CA | DBQ | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| Chula Vista,CA | Chula Vista | CA | FVI | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| Chula Vista,CA | Chula Vista | CA | QEC | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| Cicero,NY | Cicero | NY | JXC | Onondaga,NY | 461,649 | 460,528 | 462,872 | 461,683 | 460,528 |
| Cincinnati,OH | Cincinnati | OH | ALS | Hamilton,OH | 815,445 | 817,473 | 813,589 | 815,502 | 813,589 |
| Cincinnati,OH | Cincinnati | OH | EKL | Hamilton,OH | 815,445 | 817,473 | 813,589 | 815,502 | 813,589 |
| Cincinnati,OH | Cincinnati | OH | G6Q | Hamilton,OH | 815,445 | 817,473 | 813,589 | 815,502 | 813,589 |
| Cincinnati,OH | Cincinnati | OH | LY4 | Hamilton,OH | 815,445 | 817,473 | 813,589 | 815,502 | 813,589 |
| Cinnaminson,NJ | Cinnaminson | NJ | XHR | Burlington,NJ | 444,745 | 445,349 | 445,702 | 445,265 | 444,745 |
| Clarkston,MI | Clarkston | MI | CKS | Oakland,MI | 1,256,694 | 1,257,584 | 1,253,185 | 1,255,821 | 1,253,185 |
| Clarksville,TN | Clarksville | TN | YOJ | Montgomery,TN | 205,312 | 208,993 | 200,180 | 204,828 | 200,180 |
| Clawson,MI | Clawson | MI | CWN | Oakland,MI | 1,256,694 | 1,257,584 | 1,253,185 | 1,255,821 | 1,253,185 |
| Clearwater,FL | Clearwater | FL | GW | Pinellas,FL | 973,058 | 974,996 | 964,666 | 970,907 | 964,666 |
| Clearwater,FL | Clearwater | FL | XUX | Pinellas,FL | 973,058 | 974,996 | 964,666 | 970,907 | 964,666 |
| Cleburne,TX | Cleburne | TX | BQA | Johnson,TX | 171,121 | 175,817 | 167,212 | 171,383 | 167,212 |
| Clermont,FL | Clermont | FL | L2X | Lake,FL | 356,720 | 367,118 | 345,867 | 356,568 | 345,867 |
| Clermont,FL | Clermont | FL | YYW | Lake,FL | 356,720 | 367,118 | 345,867 | 356,568 | 345,867 |
| Clifton,NJ | Clifton | NJ | CFT | Passaic,NJ | 503,183 | 501,826 | 503,637 | 502,882 | 501,826 |
| Clinton,MA | Clinton | MA | HC9 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Clinton,MD | Clinton | MD | CNI | Prince George's,MD | 909,619 | 909,327 | 908,670 | 909,205 | 908,670 |
| Clinton Twp,MI | Clinton Twp | MI | A6V | Macomb,MI | 872,795 | 873,972 | 870,325 | 872,364 | 870,325 |
| Clovis,CA | Clovis | CA | DUU | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |
| Clovis,CA | Clovis | CA | U1N | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |
| Clovis,CA | Clovis | CA | W3E | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |
| Clovis,NM | Clovis | NM | QOT | Curry,NM | 49,338 | 48,954 | 49,732 | 49,341 | 48,954 |
| Coalinga,CA | Coalinga | CA | DUW | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |
| Cobleskill,NY | Cobleskill | NY | BY9 | Schoharie,NY | 31,146 | 30,999 | 31,222 | 31,122 | 30,999 |
| Coeur D Alene,ID | Coeur D Alene | ID | S5Y | Kootenai,ID | 161,209 | 165,697 | 157,322 | 161,409 | 157,322 |
| Cohasset,MA | Cohasset | MA | COH | Norfolk,MA | 703,230 | 706,775 | 700,437 | 703,481 | 700,437 |
| Colchester,CT | Colchester | CT | U3C | New London,CT | 266,285 | 265,206 | 267,390 | 266,294 | 265,206 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| College Park,MD | College Park | MD | CKP | Prince George's,MD | 909,619 | 909,327 | 908,670 | 909,205 | 908,670 |
| College Station,TX | College Station | TX | K1N | Brazos,TX | 225,781 | 229,211 | 222,981 | 225,991 | 222,981 |
| Collinsville,IL | Collinsville | IL | SXJ | Madison,IL | 264,026 | 262,966 | 264,776 | 263,923 | 262,966 |
| Colorado Springs,CO | Colorado Springs | CO | B3S | El Paso,CO | 712,089 | 720,403 | 698,974 | 710,489 | 698,974 |
| Colorado Springs,CO | Colorado Springs | CO | CH1 | El Paso,CO | 712,089 | 720,403 | 698,974 | 710,489 | 698,974 |
| Colorado Springs,CO | Colorado Springs | CO | COY | El Paso,CO | 712,089 | 720,403 | 698,974 | 710,489 | 698,974 |
| Colorado Springs,CO | Colorado Springs | CO | CSG | El Paso,CO | 712,089 | 720,403 | 698,974 | 710,489 | 698,974 |
| Colorado Springs,CO | Colorado Springs | CO | H3U | El Paso,CO | 712,089 | 720,403 | 698,974 | 710,489 | 698,974 |
| Columbia,IL | Columbia | IL | V3M | Monroe,IL | 34,373 | 34,637 | 34,168 | 34,393 | 34,168 |
| Columbia,MD | Columbia | MD | B2B | Howard,MD | 322,621 | 325,690 | 318,855 | 322,389 | 318,855 |
| Columbia,MD | Columbia | MD | CLU | Howard,MD | 322,621 | 325,690 | 318,855 | 322,389 | 318,855 |
| Columbia,MO | Columbia | MO | UU2 | Boone,MO | 179,061 | 180,463 | 177,651 | 179,058 | 177,651 |
| Columbia,SC | Columbia | SC | D6G | Richland,SC | 414,202 | 415,759 | 411,357 | 413,773 | 411,357 |
| Columbiana,OH | Columbiana | OH | RBA | Columbiana,OH | 102,473 | 101,883 | 103,190 | 102,515 | 101,883 |
| Columbus,GA | Columbus | GA | D6D | Muscogee,GA | 194,169 | 195,769 | 195,739 | 195,226 | 194,169 |
| Columbus,OH | Columbus | OH | KWO | Franklin,OH | 1,307,698 | 1,316,756 | 1,290,360 | 1,304,938 | 1,290,360 |
| Columbus,OH | Columbus | OH | OVG | Franklin,OH | 1,307,698 | 1,316,756 | 1,290,360 | 1,304,938 | 1,290,360 |
| Colusa,CA | Colusa | CA | TYO | Colusa,CA | 21,418 | 21,547 | 21,454 | 21,473 | 21,418 |
| Commack,NY | Commack | NY | LMC | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| Commerce Township,MI | Commerce Township | MI | A6D | Oakland,MI | 1,256,694 | 1,257,584 | 1,253,185 | 1,255,821 | 1,253,185 |
| Concord,CA | Concord | CA | CO | Contra Costa,CA | 1,150,519 | 1,153,526 | 1,142,251 | 1,148,765 | 1,142,251 |
| Concord,NH | Concord | NH | FH3 | Merrimack,NH | 150,650 | 151,391 | 149,917 | 150,653 | 149,917 |
| Concord,NH | Concord | NH | QCN | Merrimack,NH | 150,650 | 151,391 | 149,917 | 150,653 | 149,917 |
| Conifer,CO | Conifer | CO | B3T | Jefferson,CO | 579,392 | 582,881 | 574,798 | 579,024 | 574,798 |
| Conroe,TX | Conroe | TX | COQ | Montgomery,TX | 589,770 | 607,391 | 571,949 | 589,703 | 571,949 |
| Conway,SC | Conway | SC | BK8 | Horry,SC | 344,105 | 354,081 | 332,172 | 343,453 | 332,172 |
| Cookeville,TN | Cookeville | TN | TJ7 | Putnam,TN | 78,631 | 80,245 | 77,447 | 78,774 | 77,447 |
| Cooper City,FL | Cooper City | FL | VTP | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Coppell,TX | Coppell | TX | B2T | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Coral Gables,FL | Coral Gables | FL | FKJ | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Coral Springs,FL | Coral Springs | FL | CSS | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Coral Springs,FL | Coral Springs | FL | DUL | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Coraopolis,PA | Coraopolis | PA | CPO | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Corbin,KY | Corbin | KY | NUT | Whitley,KY | 36,101 | 36,264 | 36,131 | 36,165 | 36,101 |
| Corning,CA | Corning | CA | KK | Tehama,CA | 64,018 | 65,084 | 63,912 | 64,338 | 63,912 |
| Corona,CA | Corona | CA | CYJ | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Corona,CA | Corona | CA | HH1 | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Corona,CA | Corona | CA | QCP | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Corpus Christi,TX | Corpus Christi | TX | CAE | Nueces,TX | 362,026 | 362,294 | 361,540 | 361,953 | 361,540 |
| Corpus Christi,TX | Corpus Christi | TX | TR | Nueces,TX | 362,026 | 362,294 | 361,540 | 361,953 | 361,540 |
| Cortland,NY | Cortland | NY | IDW | Cortland,NY | 47,722 | 47,581 | 47,865 | 47,723 | 47,581 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***
Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Corydon,IN | Corydon | IN | LYO | Harrison,IN | 40,214 | 40,515 | 39,940 | 40,223 | 39,940 |
| Costa Mesa,CA | Costa Mesa | CA | DBG | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Costa Mesa,CA | Costa Mesa | CA | QHJ | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Country Club Hills,IL | Country Club Hills | IL | A6Y | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Covina,CA | Covina | CA | CZQ | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Covington,LA | Covington | LA | UBA | St. Tammany Parish,LA | 258,035 | 260,419 | 255,155 | 257,870 | 255,155 |
| Cranberry Twp,PA | Cranberry Twp | PA | OI8 | Butler,PA | 187,638 | 187,853 | 186,899 | 187,463 | 186,899 |
| Crestview,FL | Crestview | FL | VHT | Okaloosa,FL | 206,934 | 210,738 | 203,794 | 207,155 | 203,794 |
| Crestview Hills,KY | Crestview Hills | KY | LNV | Kenton,KY | 166,292 | 166,998 | 165,668 | 166,319 | 165,668 |
| Crown Point,IN | Crown Point | IN | BJ1 | Lake,IN | 484,440 | 485,493 | 485,707 | 485,213 | 484,440 |
| Crystal Lake,IL | Crystal Lake | IL | CYK | McHenry,IL | 308,251 | 307,774 | 307,714 | 307,913 | 307,714 |
| Crystal River,FL | Crystal River | FL | JG | Citrus,FL | 147,682 | 149,657 | 145,169 | 147,503 | 145,169 |
| Cumming,GA | Cumming | GA | QBN | Forsyth,GA | 236,993 | 244,252 | 228,383 | 236,543 | 228,383 |
| Cuyahoga Falls,OH | Cuyahoga Falls | OH | CUA | Summit,OH | 541,353 | 541,013 | 541,334 | 541,233 | 541,013 |
| Dallas,TX | Dallas | TX | BYR | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Dallas,TX | Dallas | TX | CDT | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Dallas,TX | Dallas | TX | CSL | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Dallas,TX | Dallas | TX | D3X | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Dallas,TX | Dallas | TX | D5Y | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Dallas,TX | Dallas | TX | FLP | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Dallas,TX | Dallas | TX | J6E | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Dallas,TX | Dallas | TX | PRZ | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Dallas,TX | Dallas | TX | Q3W | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Dallas,TX | Dallas | TX | RLA | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Dallas,TX | Dallas | TX | TXE | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Dallas,TX | Dallas | TX | WNI | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Dallas,TX | Dallas | TX | YR4 | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| DALY CITY,CA | DALY CITY | CA | KDH | San Mateo,CA | 768,681 | 766,573 | 767,423 | 767,559 | 766,573 |
| Dana Point,CA | Dana Point | CA | HSJ | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Danbury,CT | Danbury | CT | A2N | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Danbury,CT | Danbury | CT | GMR | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Danvers,MA | Danvers | MA | FJ9 | Essex,MA | 788,183 | 789,034 | 783,676 | 786,964 | 783,676 |
| Danville,CA | Danville | CA | I4R | Contra Costa,CA | 1,150,519 | 1,153,526 | 1,142,251 | 1,148,765 | 1,142,251 |
| Darien,CT | Darien | CT | DRN | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Davenport,FL | Davenport | FL | KHZ | Polk,FL | 706,597 | 724,777 | 686,218 | 705,864 | 686,218 |
| Davenport,IA | Davenport | IA | DNP | Scott,IA | 172,803 | 172,943 | 172,446 | 172,731 | 172,446 |
| Davie,FL | Davie | FL | YQK | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Davis,CA | Davis | CA | DHQ | Yolo,CA | 220,118 | 220,500 | 217,352 | 219,323 | 217,352 |
| Davis,CA | Davis | CA | QE4 | Yolo,CA | 220,118 | 220,500 | 217,352 | 219,323 | 217,352 |
| Davison,MI | Davison | MI | DAS | Genesee,MI | 406,688 | 405,813 | 407,875 | 406,792 | 405,813 |
| Daytona Beach,FL | Daytona Beach | FL | DYB | Volusia,FL | 546,101 | 553,284 | 536,487 | 545,291 | 536,487 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Daytona Beach,FL | Daytona Beach | FL | YZB | Volusia,FL | 546,101 | 553,284 | 536,487 | 545,291 | 536,487 |
| Dearborn,MI | Dearborn | MI | MYY | Wayne,MI | 1,754,453 | 1,749,343 | 1,757,299 | 1,753,698 | 1,749,343 |
| Decatur,AL | Decatur | AL | NV | Morgan,AL | 119,203 | 119,679 | 119,213 | 119,365 | 119,203 |
| Decatur,GA | Decatur | GA | J3I | DeKalb,GA | 754,906 | 759,297 | 749,323 | 754,509 | 749,323 |
| Decatur,IL | Decatur | IL | DCT | Macon,IL | 104,504 | 104,009 | 105,528 | 104,680 | 104,009 |
| Deerfield Beach,FL | Deerfield Beach | FL | DBP | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| DeKalb,IL | DeKalb | IL | OG3 | DeKalb,IL | 104,349 | 104,897 | 104,366 | 104,537 | 104,349 |
| Del Rey Oaks,CA | Del Rey Oaks | CA | E3Z | Monterey,CA | 433,950 | 434,061 | 433,410 | 433,807 | 433,410 |
| Deland,FL | Deland | FL | DLD | Volusia,FL | 546,101 | 553,284 | 536,487 | 545,291 | 536,487 |
| Delray Beach,FL | Delray Beach | FL | DYE | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| Delta,CO | Delta | CO | C3I | Delta,CO | 30,884 | 31,162 | 30,565 | 30,870 | 30,565 |
| Deltona,FL | Deltona | FL | D4W | Volusia,FL | 546,101 | 553,284 | 536,487 | 545,291 | 536,487 |
| Deltona,FL | Deltona | FL | UE9 | Volusia,FL | 546,101 | 553,284 | 536,487 | 545,291 | 536,487 |
| Deltona,FL | Deltona | FL | YZC | Volusia,FL | 546,101 | 553,284 | 536,487 | 545,291 | 536,487 |
| Demorest,GA | Demorest | GA | CC3 | Habersham,GA | 45,373 | 45,328 | 44,626 | 45,109 | 44,626 |
| Denton,TX | Denton | TX | DEN | Denton,TX | 858,741 | 887,207 | 833,822 | 859,923 | 833,822 |
| Denver,CO | Denver | CO | DVE | Denver,CO | 716,265 | 727,211 | 705,576 | 716,351 | 705,576 |
| Denver,CO | Denver | CO | E3K | Denver,CO | 716,265 | 727,211 | 705,576 | 716,351 | 705,576 |
| Denver,CO | Denver | CO | EAV | Denver,CO | 716,265 | 727,211 | 705,576 | 716,351 | 705,576 |
| Denver,CO | Denver | CO | IOW | Denver,CO | 716,265 | 727,211 | 705,576 | 716,351 | 705,576 |
| Denville,NJ | Denville | NJ | AXU | Morris,NJ | 493,070 | 491,845 | 493,379 | 492,765 | 491,845 |
| Depew,NY | Depew | NY | TRA | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Derby,CT | Derby | CT | DRE | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Derby,NY | Derby | NY | YWI | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Derry,NH | Derry | NH | YFC | Rockingham,NH | 308,287 | 309,769 | 306,359 | 308,138 | 306,359 |
| Derry,NH | Derry | NH | YTS | Rockingham,NH | 308,287 | 309,769 | 306,359 | 308,138 | 306,359 |
| Desoto,TX | Desoto | TX | XEH | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Devon,PA | Devon | PA | KXL | Chester,PA | 522,086 | 524,989 | 519,560 | 522,212 | 519,560 |
| Diamond Bar,CA | Diamond Bar | CA | CZM | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Doral,FL | Doral | FL | YXC | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Douglas,GA | Douglas | GA | JJ9 | Coffee,GA | 43,055 | 43,273 | 43,021 | 43,116 | 43,021 |
| Douglas,MA | Douglas | MA | IC3 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Dover,DE | Dover | DE | B2F | Kent,DE | 178,540 | 180,786 | 176,699 | 178,675 | 176,699 |
| Dover,DE | Dover | DE | DVP | Kent,DE | 178,540 | 180,786 | 176,699 | 178,675 | 176,699 |
| Downey,CA | Downey | CA | CUZ | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Downey,CA | Downey | CA | CVF | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Downingtown,PA | Downingtown | PA | GXJ | Chester,PA | 522,086 | 524,989 | 519,560 | 522,212 | 519,560 |
| Downingtown,PA | Downingtown | PA | PZJ | Chester,PA | 522,086 | 524,989 | 519,560 | 522,212 | 519,560 |
| Doylestown,PA | Doylestown | PA | DYT | Bucks,PA | 627,812 | 628,270 | 626,806 | 627,629 | 626,806 |
| Draper,UT | Draper | UT | JVG | Salt Lake,UT | 1,148,692 | 1,160,437 | 1,133,646 | 1,147,592 | 1,133,646 |
| Dublin,CA | Dublin | CA | K4J | Alameda,CA | 1,666,756 | 1,671,329 | 1,656,754 | 1,664,946 | 1,656,754 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Dublin,OH | Dublin | OH | DUB | Franklin,OH | 1,307,698 | 1,316,756 | 1,290,360 | 1,304,938 | 1,290,360 |
| Dublin,VA | Dublin | VA | HZF | Pulaski,VA | 34,060 | 34,027 | 34,182 | 34,090 | 34,027 |
| Dundalk,MD | Dundalk | MD | DUN | Baltimore,MD | 827,859 | 827,370 | 828,018 | 827,749 | 827,370 |
| Dunnellon,FL | Dunnellon | FL | XWW | Marion,FL | 359,062 | 365,579 | 353,526 | 359,389 | 353,526 |
| E. Harwich,MA | E. Harwich | MA | HRW | Barnstable,MA | 213,471 | 212,990 | 213,496 | 213,319 | 212,990 |
| East Aurora,NY | East Aurora | NY | AUO | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| East Brunswick,NJ | East Brunswick | NJ | EBR | Middlesex,NJ | 826,172 | 825,062 | 825,920 | 825,718 | 825,062 |
| East Greenville,PA | East Greenville | PA | JFU | Montgomery,PA | 826,924 | 830,915 | 823,823 | 827,221 | 823,823 |
| East Hartford,CT | East Hartford | CT | EHT | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| East Haven,CT | East Haven | CT | BZ3 | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| East Haven,CT | East Haven | CT | EHV | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| East Lyme,CT | East Lyme | CT | C2Q | New London,CT | 266,285 | 265,206 | 267,390 | 266,294 | 265,206 |
| East Patchogue,NY | East Patchogue | NY | EB | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| East Point,GA | East Point | GA | FD | Fulton,GA | 1,050,131 | 1,063,937 | 1,036,200 | 1,050,089 | 1,036,200 |
| East Setauket,NY | East Setauket | NY | DTW | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| East Stroudsburg,PA | East Stroudsburg | PA | ESR | Monroe,PA | 169,294 | 170,271 | 168,032 | 169,199 | 168,032 |
| Easton,PA | Easton | PA | ESO | Northampton,PA | 304,564 | 305,285 | 302,809 | 304,219 | 302,809 |
| Easton,PA | Easton | PA | IVZ | Northampton,PA | 304,564 | 305,285 | 302,809 | 304,219 | 302,809 |
| Eastvale,CA | Eastvale | CA | K4K | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Edina,MN | Edina | MN | OS | Hennepin,MN | 1,257,925 | 1,265,843 | 1,245,837 | 1,256,535 | 1,245,837 |
| Edison,NJ | Edison | NJ | EDS | Middlesex,NJ | 826,172 | 825,062 | 825,920 | 825,718 | 825,062 |
| El Cajon,CA | El Cajon | CA | LJ | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| El Centro,CA | El Centro | CA | DEK | Imperial,CA | 181,523 | 181,215 | 180,701 | 181,146 | 180,701 |
| El Cerrito,CA | El Cerrito | CA | SZR | Contra Costa,CA | 1,150,519 | 1,153,526 | 1,142,251 | 1,148,765 | 1,142,251 |
| El Dorado Hills,CA | El Dorado Hills | CA | ME4 | El Dorado,CA | 190,746 | 192,843 | 188,563 | 190,717 | 188,563 |
| El Paso,TX | El Paso | TX | D6W | El Paso,TX | 836,825 | 839,238 | 836,062 | 837,375 | 836,062 |
| El Paso,TX | El Paso | TX | EPP | El Paso,TX | 836,825 | 839,238 | 836,062 | 837,375 | 836,062 |
| El Paso,TX | El Paso | TX | FEK | El Paso,TX | 836,825 | 839,238 | 836,062 | 837,375 | 836,062 |
| El Paso,TX | El Paso | TX | HJL | El Paso,TX | 836,825 | 839,238 | 836,062 | 837,375 | 836,062 |
| El Paso,TX | El Paso | TX | QET | El Paso,TX | 836,825 | 839,238 | 836,062 | 837,375 | 836,062 |
| El Paso,TX | El Paso | TX | TOW | El Paso,TX | 836,825 | 839,238 | 836,062 | 837,375 | 836,062 |
| El Paso,TX | El Paso | TX | VDS | El Paso,TX | 836,825 | 839,238 | 836,062 | 837,375 | 836,062 |
| El Paso,TX | El Paso | TX | VVI | El Paso,TX | 836,825 | 839,238 | 836,062 | 837,375 | 836,062 |
| Eldersburg,MD | Eldersburg | MD | ELL | Carroll,MD | 168,267 | 168,447 | 167,699 | 168,138 | 167,699 |
| Elgin,IL | Elgin | IL | SR1 | Kane,IL | 532,720 | 532,403 | 531,376 | 532,166 | 531,376 |
| Elizabethtown,KY | Elizabethtown | KY | YCR | Hardin,KY | 110,279 | 110,958 | 108,527 | 109,921 | 108,527 |
| Elk Grove,CA | Elk Grove | CA | B2J | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Elkton,MD | Elkton | MD | E6Q | Cecil,MD | 102,644 | 102,855 | 102,552 | 102,684 | 102,552 |
| Ellenton,FL | Ellenton | FL | XTE | Manatee,FL | 394,387 | 403,253 | 384,213 | 393,951 | 384,213 |
| Ellicott City,MD | Ellicott City | MD | ELT | Howard,MD | 322,621 | 325,690 | 318,855 | 322,389 | 318,855 |
| Elmhurst,NY | Elmhurst | NY | YRD | Queens,NY | 2,274,605 | 2,253,858 | 2,287,388 | 2,271,950 | 2,253,858 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Emmaus,PA | Emmaus | PA | POF | Lehigh,PA | 368,359 | 369,318 | 365,052 | 367,576 | 365,052 |
| Encinitas,CA | Encinitas | CA | QNC | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| Enfield,CT | Enfield | CT | IY5 | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Enfield,CT | Enfield | CT | LCD | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Englewood,CO | Englewood | CO | A2K | Arapahoe,CO | 651,797 | 656,590 | 644,560 | 650,982 | 644,560 |
| Englewood,CO | Englewood | CO | ENG | Arapahoe,CO | 651,797 | 656,590 | 644,560 | 650,982 | 644,560 |
| Englewood,FL | Englewood | FL | FQP | Sarasota,FL | 426,329 | 433,742 | 419,496 | 426,522 | 419,496 |
| Englewood,NJ | Englewood | NJ | ENW | Bergen,NJ | 932,816 | 932,202 | 930,390 | 931,803 | 930,390 |
| Ephrata,PA | Ephrata | PA | GWR | Lancaster,PA | 543,969 | 545,724 | 540,999 | 543,564 | 540,999 |
| Escondido,CA | Escondido | CA | ESC | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| Essex,CT | Essex | CT | EEX | Middlesex,CT | 162,870 | 162,436 | 163,053 | 162,786 | 162,436 |
| Eugene,OR | Eugene | OR | W1C | Lane,OR | 378,549 | 382,067 | 373,340 | 377,985 | 373,340 |
| Eugene,OR | Eugene | OR | W1X | Lane,OR | 378,549 | 382,067 | 373,340 | 377,985 | 373,340 |
| Eugene,OR | Eugene | OR | W1Y | Lane,OR | 378,549 | 382,067 | 373,340 | 377,985 | 373,340 |
| Eugene,OR | Eugene | OR | W1Z | Lane,OR | 378,549 | 382,067 | 373,340 | 377,985 | 373,340 |
| Euless,TX | Euless | TX | OI7 | Tarrant,TX | 2,081,446 | 2,102,515 | 2,049,770 | 2,077,910 | 2,049,770 |
| Eureka,MO | Eureka | MO | GGQ | St. Louis,MO | 995,219 | 994,205 | 996,919 | 995,448 | 994,205 |
| Eustis,FL | Eustis | FL | TAV | Lake,FL | 356,720 | 367,118 | 345,867 | 356,568 | 345,867 |
| Eustis,FL | Eustis | FL | XSV | Lake,FL | 356,720 | 367,118 | 345,867 | 356,568 | 345,867 |
| Evans,GA | Evans | GA | H6O | Columbia,GA | 154,077 | 156,714 | 150,705 | 153,832 | 150,705 |
| Evanston,IL | Evanston | IL | RNC | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Exton,PA | Exton | PA | EXO | Chester,PA | 522,086 | 524,989 | 519,560 | 522,212 | 519,560 |
| Exton,PA | Exton | PA | YKB | Chester,PA | 522,086 | 524,989 | 519,560 | 522,212 | 519,560 |
| Fair Oaks,CA | Fair Oaks | CA | DJN | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Fairbanks,AK | Fairbanks | AK | XU4 | Fairbanks North Star Boro | 98,565 | 96,849 | 99,072 | 98,162 | 96,849 |
| Fairfax,VA | Fairfax | VA | ANE | Fairfax,VA | 1,148,463 | 1,147,532 | 1,145,862 | 1,147,286 | 1,145,862 |
| Fairfax,VA | Fairfax | VA | B2E | Fairfax,VA | 1,148,463 | 1,147,532 | 1,145,862 | 1,147,286 | 1,145,862 |
| Fairfax,VA | Fairfax | VA | FIF | Fairfax,VA | 1,148,463 | 1,147,532 | 1,145,862 | 1,147,286 | 1,145,862 |
| Fairfield,CA | Fairfield | CA | DHT | Solano,CA | 445,725 | 447,643 | 441,829 | 445,066 | 441,829 |
| Fairfield,CT | Fairfield | CT | FAF | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Fairfield,CT | Fairfield | CT | NY5 | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Fairfield,CT | Fairfield | CT | POS | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Fairfield,OH | Fairfield | OH | IZN | Butler,OH | 382,000 | 383,134 | 380,019 | 381,718 | 380,019 |
| Fairfield Township,OH | Fairfield Township | OH | C6K | Butler,OH | 382,000 | 383,134 | 380,019 | 381,718 | 380,019 |
| Fairless Hills,PA | Fairless Hills | PA | EKI | Bucks,PA | 627,812 | 628,270 | 626,806 | 627,629 | 626,806 |
| Fairview Park,OH | Fairview Park | OH | EGH | Cuyahoga,OH | 1,241,718 | 1,235,072 | 1,247,451 | 1,241,414 | 1,235,072 |
| Fall River,MA | Fall River | MA | RJ8 | Bristol,MA | 564,092 | 565,217 | 561,037 | 563,449 | 561,037 |
| Fall River,MA | Fall River | MA | YOB | Bristol,MA | 564,092 | 565,217 | 561,037 | 563,449 | 561,037 |
| Fallbrook,CA | Fallbrook | CA | TX8 | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| Falls Church,VA | Falls Church | VA | I2V | Fairfax,VA | 1,148,463 | 1,147,532 | 1,145,862 | 1,147,286 | 1,145,862 |
| Falmouth,MA | Falmouth | MA | FAO | Barnstable,MA | 213,471 | 212,990 | 213,496 | 213,319 | 212,990 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Farmington,CT | Farmington | CT | KMN | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Farmington,MO | Farmington | MO | ZUA | St. Francois,MO | 66,737 | 67,215 | 66,643 | 66,865 | 66,643 |
| Fayetteville,AR | Fayetteville | AR | H3C | Washington,AR | 236,611 | 239,187 | 232,289 | 236,029 | 232,289 |
| Fayetteville,GA | Fayetteville | GA | R1M | Fayette,GA | 113,181 | 114,421 | 112,303 | 113,302 | 112,303 |
| Fayetteville,NC | Fayetteville | NC | IK2 | Cumberland,NC | 333,430 | 335,509 | 332,861 | 333,933 | 332,861 |
| Federal Way,WA | Federal Way | WA | E2D | King,WA | 2,228,364 | 2,252,782 | 2,195,502 | 2,225,549 | 2,195,502 |
| Fenton,MI | Fenton | MI | FEN | Genesee,MI | 406,688 | 405,813 | 407,875 | 406,792 | 405,813 |
| Fenton,MI | Fenton | MI | NFJ | Genesee,MI | 406,688 | 405,813 | 407,875 | 406,792 | 405,813 |
| Fernandina Beach,FL | Fernandina Beach | FL | FND | Nassau,FL | 85,936 | 88,625 | 83,098 | 85,886 | 83,098 |
| Ferndale,WA | Ferndale | WA | H3G | Whatcom,WA | 225,197 | 229,247 | 220,821 | 225,088 | 220,821 |
| Festus,MO | Festus | MO | FS | Jefferson,MO | 224,410 | 225,081 | 223,951 | 224,481 | 223,951 |
| Firestone,CO | Firestone | CO | V3G | Weld,CO | 314,815 | 324,492 | 305,345 | 314,884 | 305,345 |
| Fishkill,NY | Fishkill | NY | FIS | Dutchess,NY | 293,939 | 294,218 | 293,754 | 293,970 | 293,754 |
| Fitchburg,MA | Fitchburg | MA | FIT | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Fitchburg,MA | Fitchburg | MA | SSF | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Flemington,NJ | Flemington | NJ | FMN | Hunterdon,NJ | 124,807 | 124,371 | 124,823 | 124,667 | 124,371 |
| Flint,MI | Flint | MI | A6P | Genesee,MI | 406,688 | 405,813 | 407,875 | 406,792 | 405,813 |
| Flint,MI | Flint | MI | FNL | Genesee,MI | 406,688 | 405,813 | 407,875 | 406,792 | 405,813 |
| Flint,MI | Flint | MI | FVP | Genesee,MI | 406,688 | 405,813 | 407,875 | 406,792 | 405,813 |
| Flint,MI | Flint | MI | TFZ | Genesee,MI | 406,688 | 405,813 | 407,875 | 406,792 | 405,813 |
| Flint,MI | Flint | MI | ZFD | Genesee,MI | 406,688 | 405,813 | 407,875 | 406,792 | 405,813 |
| Floral Park,NY | Floral Park | NY | FPK | Nassau,NY | 1,357,534 | 1,356,924 | 1,356,509 | 1,356,989 | 1,356,509 |
| Florence,AL | Florence | AL | UJ3 | Lauderdale,AL | 92,604 | 92,729 | 92,556 | 92,630 | 92,556 |
| Florence,MA | Florence | MA | YEZ | Hampshire,MA | 161,139 | 160,830 | 161,032 | 161,000 | 160,830 |
| Florida City,FL | Florida City | FL | D6T | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Florissant,MO | Florissant | MO | Q1U | St. Louis,MO | 995,219 | 994,205 | 996,919 | 995,448 | 994,205 |
| Flourtown,PA | Flourtown | PA | X3X | Montgomery,PA | 826,924 | 830,915 | 823,823 | 827,221 | 823,823 |
| Flower Mound,TX | Flower Mound | TX | B2U | Denton,TX | 858,741 | 887,207 | 833,822 | 859,923 | 833,822 |
| Flowermound,TX | Flowermound | TX | TF9 | Denton,TX | 858,741 | 887,207 | 833,822 | 859,923 | 833,822 |
| Flowood,MS | Flowood | MS | ZHC | Rankin,MS | 154,250 | 155,271 | 152,677 | 154,066 | 152,677 |
| Flushing,NY | Flushing | NY | LDX | Queens,NY | 2,274,605 | 2,253,858 | 2,287,388 | 2,271,950 | 2,253,858 |
| Foley,AL | Foley | AL | QZI | Baldwin,AL | 217,855 | 223,234 | 212,830 | 217,973 | 212,830 |
| Folsom,CA | Folsom | CA | ME6 | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Folsom,CA | Folsom | CA | YOV | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Folsom,PA | Folsom | PA | JKF | Delaware,PA | 565,231 | 566,747 | 564,554 | 565,511 | 564,554 |
| Fontana,CA | Fontana | CA | XPV | San Bernardino,CA | 2,166,753 | 2,180,085 | 2,149,031 | 2,165,290 | 2,149,031 |
| Forest Hills,NY | Forest Hills | NY | FHL | Queens,NY | 2,274,605 | 2,253,858 | 2,287,388 | 2,271,950 | 2,253,858 |
| Forked River,NJ | Forked River | NJ | T4U | Ocean,NJ | 601,478 | 607,186 | 596,415 | 601,693 | 596,415 |
| Fort Collins,CO | Fort Collins | CO | V3H | Larimer,CO | 350,660 | 356,899 | 344,786 | 350,782 | 344,786 |
| Fort Myers,FL | Fort Myers | FL | GDI | Lee,FL | 754,470 | 770,577 | 737,468 | 754,172 | 737,468 |
| Fort Myers,FL | Fort Myers | FL | GT | Lee,FL | 754,470 | 770,577 | 737,468 | 754,172 | 737,468 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Fort Myers,FL | Fort Myers | FL | K3G | Lee,FL | 754,470 | 770,577 | 737,468 | 754,172 | 737,468 |
| Fort Pierce,FL | Fort Pierce | FL | FFP | St. Lucie,FL | 320,425 | 328,297 | 312,947 | 320,556 | 312,947 |
| Fort Pierce,FL | Fort Pierce | FL | XPT | St. Lucie,FL | 320,425 | 328,297 | 312,947 | 320,556 | 312,947 |
| Fort Smith,AR | Fort Smith | AR | FTE | Sebastian,AR | 127,570 | 127,827 | 127,591 | 127,663 | 127,570 |
| Fort Smith,AR | Fort Smith | AR | TZU | Sebastian,AR | 127,570 | 127,827 | 127,591 | 127,663 | 127,570 |
| Fort Walton Beach,FL | Fort Walton Beach | FL | FWB | Okaloosa,FL | 206,934 | 210,738 | 203,794 | 207,155 | 203,794 |
| Fort Wayne,IN | Fort Wayne | IN | FWY | Allen,IN | 375,079 | 379,299 | 372,575 | 375,651 | 372,575 |
| Fort Wayne,IN | Fort Wayne | IN | J1M | Allen,IN | 375,079 | 379,299 | 372,575 | 375,651 | 372,575 |
| Fort Worth,TX | Fort Worth | TX | D3T | Tarrant,TX | 2,081,446 | 2,102,515 | 2,049,770 | 2,077,910 | 2,049,770 |
| Fort Worth,TX | Fort Worth | TX | FSK | Tarrant,TX | 2,081,446 | 2,102,515 | 2,049,770 | 2,077,910 | 2,049,770 |
| Fort Worth,TX | Fort Worth | TX | FTX | Tarrant,TX | 2,081,446 | 2,102,515 | 2,049,770 | 2,077,910 | 2,049,770 |
| Fort Worth,TX | Fort Worth | TX | Q1V | Tarrant,TX | 2,081,446 | 2,102,515 | 2,049,770 | 2,077,910 | 2,049,770 |
| Fort Worth,TX | Fort Worth | TX | TF | Tarrant,TX | 2,081,446 | 2,102,515 | 2,049,770 | 2,077,910 | 2,049,770 |
| Fort Worth,TX | Fort Worth | TX | YLX | Tarrant,TX | 2,081,446 | 2,102,515 | 2,049,770 | 2,077,910 | 2,049,770 |
| Foster City,CA | Foster City | CA | F2M | San Mateo,CA | 768,681 | 766,573 | 767,423 | 767,559 | 766,573 |
| Fountain,CO | Fountain | CO | V3B | El Paso,CO | 712,089 | 720,403 | 698,974 | 710,489 | 698,974 |
| Fountain Valley,CA | Fountain Valley | CA | DGG | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Fountain Valley,CA | Fountain Valley | CA | DU4 | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Fountain Valley,CA | Fountain Valley | CA | QFT | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Fountain Valley,CA | Fountain Valley | CA | VV4 | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Foxboro,MA | Foxboro | MA | FOX | Norfolk,MA | 703,230 | 706,775 | 700,437 | 703,481 | 700,437 |
| Foxboro,MA | Foxboro | MA | YFG | Norfolk,MA | 703,230 | 706,775 | 700,437 | 703,481 | 700,437 |
| Framingham,MA | Framingham | MA | FRA | Middlesex,MA | 1,608,470 | 1,611,699 | 1,600,842 | 1,607,004 | 1,600,842 |
| Frankenmuth,MI | Frankenmuth | MI | FKM | Saginaw,MI | 190,791 | 190,539 | 191,821 | 191,050 | 190,539 |
| Franklin,TN | Franklin | TN | FKN | Williamson,TN | 231,978 | 238,412 | 225,389 | 231,926 | 225,389 |
| Frederick,MD | Frederick | MD | ZMZ | Frederick,MD | 254,943 | 259,547 | 251,422 | 255,304 | 251,422 |
| Fredericksburg,VA | Fredericksburg | VA | MJR | Fredericksburg City,VA | 29,171 | 29,036 | 28,622 | 28,943 | 28,622 |
| Fredericksburg,VA | Fredericksburg | VA | XAM | Fredericksburg City,VA | 29,171 | 29,036 | 28,622 | 28,943 | 28,622 |
| Freedom,CA | Freedom | CA | D2H | Santa Cruz,CA | 273,841 | 273,213 | 273,962 | 273,672 | 273,213 |
| Freehold,NJ | Freehold | NJ | FRO | Monmouth,NJ | 620,459 | 618,795 | 621,659 | 620,304 | 618,795 |
| Freeport,NY | Freeport | NY | FRR | Nassau,NY | 1,357,534 | 1,356,924 | 1,356,509 | 1,356,989 | 1,356,509 |
| Fremont,CA | Fremont | CA | ACI | Alameda,CA | 1,666,756 | 1,671,329 | 1,656,754 | 1,664,946 | 1,656,754 |
| Fremont,CA | Fremont | CA | DPJ | Alameda,CA | 1,666,756 | 1,671,329 | 1,656,754 | 1,664,946 | 1,656,754 |
| Fremont,CA | Fremont | CA | DPK | Alameda,CA | 1,666,756 | 1,671,329 | 1,656,754 | 1,664,946 | 1,656,754 |
| Fresno,CA | Fresno | CA | DVK | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |
| Fresno,CA | Fresno | CA | DVZ | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |
| Fresno,CA | Fresno | CA | DWA | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |
| Fresno,CA | Fresno | CA | GFJ | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |
| Fresno,CA | Fresno | CA | GTC | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |
| Fresno,CA | Fresno | CA | GZC | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |
| Fresno,CA | Fresno | CA | I4Z | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Fresno,CA | Fresno | CA | LUX | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |
| Fresno,CA | Fresno | CA | O1N | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |
| Fresno,CA | Fresno | CA | S2A | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |
| Friendswood,TX | Friendswood | TX | HNL | Galveston,TX | 337,858 | 342,139 | 332,885 | 337,627 | 332,885 |
| Frisco,TX | Frisco | TX | CDK | Collin,TX | 1,004,307 | 1,034,730 | 973,977 | 1,004,338 | 973,977 |
| Ft. Lauderdale,FL | Ft. Lauderdale | FL | ZBR | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Fullerton,CA | Fullerton | CA | DBU | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Fullerton,CA | Fullerton | CA | DGL | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Gadsden,AL | Gadsden | AL | UJ4 | Etowah,AL | 102,611 | 102,268 | 102,748 | 102,542 | 102,268 |
| Gainesville,FL | Gainesville | FL | B6X | Alachua,FL | 268,851 | 269,043 | 265,443 | 267,779 | 265,443 |
| Gainesville,FL | Gainesville | FL | GAI | Alachua,FL | 268,851 | 269,043 | 265,443 | 267,779 | 265,443 |
| Gainesville,FL | Gainesville | FL | GV | Alachua,FL | 268,851 | 269,043 | 265,443 | 267,779 | 265,443 |
| Gainesville,FL | Gainesville | FL | X5I | Alachua,FL | 268,851 | 269,043 | 265,443 | 267,779 | 265,443 |
| Gainesville,FL | Gainesville | FL | YZD | Alachua,FL | 268,851 | 269,043 | 265,443 | 267,779 | 265,443 |
| Gainesville,VA | Gainesville | VA | XAN | Prince William,VA | 466,235 | 470,335 | 461,423 | 465,998 | 461,423 |
| Gaithersburg,MD | Gaithersburg | MD | B2D | Montgomery,MD | 1,048,478 | 1,050,688 | 1,043,530 | 1,047,565 | 1,043,530 |
| Galloway,NJ | Galloway | NJ | ABC | Atlantic,NJ | 263,989 | 263,670 | 266,105 | 264,588 | 263,670 |
| Galveston,TX | Galveston | TX | E3C | Galveston,TX | 337,858 | 342,139 | 332,885 | 337,627 | 332,885 |
| Gambrills,MD | Gambrills | MD | P1V | Anne Arundel,MD | 575,523 | 579,234 | 571,275 | 575,344 | 571,275 |
| Garden City,NY | Garden City | NY | GDC | Nassau,NY | 1,357,534 | 1,356,924 | 1,356,509 | 1,356,989 | 1,356,509 |
| Garden Grove,CA | Garden Grove | CA | DBV | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Gardner,MA | Gardner | MA | G3I | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Garland,TX | Garland | TX | E3D | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Garland,TX | Garland | TX | P3S | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Geneva,IL | Geneva | IL | AF9 | Kane,IL | 532,720 | 532,403 | 531,376 | 532,166 | 531,376 |
| Germantown,MD | Germantown | MD | GTW | Montgomery,MD | 1,048,478 | 1,050,688 | 1,043,530 | 1,047,565 | 1,043,530 |
| Germantown,TN | Germantown | TN | W2W | Shelby,TN | 936,365 | 937,166 | 936,374 | 936,635 | 936,365 |
| Gibsonia,PA | Gibsonia | PA | NRI | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Gig Harbor,WA | Gig Harbor | WA | Q4V | Pierce,WA | 893,756 | 904,980 | 877,013 | 891,916 | 877,013 |
| Gilbertsville,PA | Gilbertsville | PA | KGY | Montgomery,PA | 826,924 | 830,915 | 823,823 | 827,221 | 823,823 |
| Gilford,NH | Gilford | NH | YED | Belknap,NH | 61,145 | 61,303 | 60,887 | 61,112 | 60,887 |
| Gilroy,CA | Gilroy | CA | DPO | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| Gilroy,CA | Gilroy | CA | Y3R | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| Glassboro,NJ | Glassboro | NJ | MQY | Gloucester,NJ | 291,525 | 291,636 | 291,165 | 291,442 | 291,165 |
| Glastonbury,CT | Glastonbury | CT | GLA | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Glastonbury,CT | Glastonbury | CT | T2Y | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Glen Burnie,MD | Glen Burnie | MD | GBN | Anne Arundel,MD | 575,523 | 579,234 | 571,275 | 575,344 | 571,275 |
| Glen Burnie,MD | Glen Burnie | MD | GBU | Anne Arundel,MD | 575,523 | 579,234 | 571,275 | 575,344 | 571,275 |
| Glen Carbon,IL | Glen Carbon | IL | EDV | Madison,IL | 264,026 | 262,966 | 264,776 | 263,923 | 262,966 |
| Glen Cove,NY | Glen Cove | NY | BBO | Nassau,NY | 1,357,534 | 1,356,924 | 1,356,509 | 1,356,989 | 1,356,509 |
| Glendale,CA | Glendale | CA | CXY | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Glendale,CA | Glendale | CA | CYY | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Glendale,CA | Glendale | CA | FBH | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Glendale,CA | Glendale | CA | Y3B | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Glendora,CA | Glendora | CA | CZU | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Glenolden,PA | Glenolden | PA | YMF | Delaware,PA | 565,231 | 566,747 | 564,554 | 565,511 | 564,554 |
| Glenshaw,PA | Glenshaw | PA | ZNS | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Glenview,IL | Glenview | IL | R4G | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Gold River,CA | Gold River | CA | O3K | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Golden,CO | Golden | CO | V3I | Jefferson,CO | 579,392 | 582,881 | 574,798 | 579,024 | 574,798 |
| Goldsboro,NC | Goldsboro | NC | YJ7 | Wayne,NC | 123,237 | 123,131 | 123,603 | 123,324 | 123,131 |
| Goleta,CA | Goleta | CA | CIZ | Santa Barbara,CA | 445,780 | 446,499 | 444,829 | 445,703 | 444,829 |
| Goshen,NY | Goshen | NY | GHN | Orange,NY | 382,126 | 384,940 | 380,085 | 382,384 | 380,085 |
| Granbury,TX | Granbury | TX | JJW | Hood,TX | 60,177 | 61,643 | 58,318 | 60,046 | 58,318 |
| Granby,CT | Granby | CT | JY1 | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Grand Blanc,MI | Grand Blanc | MI | FNM | Genesee,MI | 406,688 | 405,813 | 407,875 | 406,792 | 405,813 |
| Grand Blanc,MI | Grand Blanc | MI | GRQ | Genesee,MI | 406,688 | 405,813 | 407,875 | 406,792 | 405,813 |
| Grand Island,NY | Grand Island | NY | JI1 | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Grand Junction,CO | Grand Junction | CO | B2L | Mesa,CO | 152,951 | 154,210 | 151,218 | 152,793 | 151,218 |
| Grand Prairie,TX | Grand Prairie | TX | E3E | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Grand Rapids,MI | Grand Rapids | MI | GPR | Kent,MI | 653,350 | 656,955 | 648,121 | 652,809 | 648,121 |
| Grand Rapids,MI | Grand Rapids | MI | GRA | Kent,MI | 653,350 | 656,955 | 648,121 | 652,809 | 648,121 |
| Grandville,MI | Grandville | MI | DR8 | Kent,MI | 653,350 | 656,955 | 648,121 | 652,809 | 648,121 |
| Grapevine,TX | Grapevine | TX | P3G | Tarrant,TX | 2,081,446 | 2,102,515 | 2,049,770 | 2,077,910 | 2,049,770 |
| Grass Valley,CA | Grass Valley | CA | DJQ | Nevada,CA | 99,508 | 99,755 | 99,244 | 99,502 | 99,244 |
| Grass Valley,CA | Grass Valley | CA | T3I | Nevada,CA | 99,508 | 99,755 | 99,244 | 99,502 | 99,244 |
| Great Falls,MT | Great Falls | MT | KI3 | Cascade,MT | 81,688 | 81,366 | 81,625 | 81,560 | 81,366 |
| Greeley,CO | Greeley | CO | C3J | Weld,CO | 314,815 | 324,492 | 305,345 | 314,884 | 305,345 |
| Greenbelt,MD | Greenbelt | MD | GK3 | Prince George's,MD | 909,619 | 909,327 | 908,670 | 909,205 | 908,670 |
| Greenbrae,CA | Greenbrae | CA | L2T | Marin,CA | 259,662 | 258,826 | 259,943 | 259,477 | 258,826 |
| Greenbrae,CA | Greenbrae | CA | Y6A | Marin,CA | 259,662 | 258,826 | 259,943 | 259,477 | 258,826 |
| Greensboro,NC | Greensboro | NC | WJ3 | Guilford,NC | 532,607 | 537,174 | 527,868 | 532,550 | 527,868 |
| Greensboro,NC | Greensboro | NC | WJ6 | Guilford,NC | 532,607 | 537,174 | 527,868 | 532,550 | 527,868 |
| Greensburg,PA | Greensburg | PA | IE7 | Westmoreland,PA | 350,459 | 348,899 | 352,590 | 350,649 | 348,899 |
| Greensburg,PA | Greensburg | PA | WE8 | Westmoreland,PA | 350,459 | 348,899 | 352,590 | 350,649 | 348,899 |
| Greenville,NC | Greenville | NC | D6F | Pitt,NC | 179,575 | 180,742 | 178,433 | 179,583 | 178,433 |
| Greenville,NC | Greenville | NC | VJ6 | Pitt,NC | 179,575 | 180,742 | 178,433 | 179,583 | 178,433 |
| Greenville,SC | Greenville | SC | SGE | Greenville,SC | 514,621 | 523,542 | 507,003 | 515,055 | 507,003 |
| Greenville,TX | Greenville | TX | GVN | Hunt,TX | 96,606 | 98,594 | 94,162 | 96,454 | 94,162 |
| Griffin,GA | Griffin | GA | GFN | Spalding,GA | 66,107 | 66,703 | 65,306 | 66,039 | 65,306 |
| Groton,CT | Groton | CT | GRT | New London,CT | 266,285 | 265,206 | 267,390 | 266,294 | 265,206 |
| Guilford,CT | Guilford | CT | JY2 | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Gulfport,MS | Gulfport | MS | ZFA | Harrison,MS | 206,284 | 208,080 | 204,502 | 206,289 | 204,502 |
| Gurnee,IL | Gurnee | IL | GNE | Lake,IL | 699,587 | 696,535 | 701,473 | 699,198 | 696,535 |
| Hacienda Heights,CA | Hacienda Heights | CA | CZV | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Hackensack,NJ | Hackensack | NJ | HAK | Bergen,NJ | 932,816 | 932,202 | 930,390 | 931,803 | 930,390 |
| Hackettstown,NJ | Hackettstown | NJ | HKT | Warren,NJ | 105,528 | 105,267 | 105,862 | 105,552 | 105,267 |
| Haddon Heights,NJ | Haddon Heights | NJ | DSY | Camden,NJ | 506,353 | 506,471 | 506,738 | 506,521 | 506,353 |
| Haddonfield,NJ | Haddonfield | NJ | HAD | Camden,NJ | 506,353 | 506,471 | 506,738 | 506,521 | 506,353 |
| Hallandale Beach,FL | Hallandale Beach | FL | ZBT | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Hamburg,NY | Hamburg | NY | HBR | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Hamburg,PA | Hamburg | PA | GXO | Berks,PA | 420,529 | 421,164 | 418,025 | 419,906 | 418,025 |
| Hamden,CT | Hamden | CT | HAE | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Hamden,CT | Hamden | CT | HMA | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Hamden,CT | Hamden | CT | MUD | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Hamilton,NJ | Hamilton | NJ | HTL | Mercer,NJ | 368,188 | 367,430 | 367,922 | 367,847 | 367,430 |
| Hamilton,OH | Hamilton | OH | FHO | Butler,OH | 382,000 | 383,134 | 380,019 | 381,718 | 380,019 |
| Hammond,IN | Hammond | IN | A6Z | Lake,IN | 484,440 | 485,493 | 485,707 | 485,213 | 484,440 |
| Hammond,LA | Hammond | LA | J6H | Tangipahoa Parish,LA | 133,837 | 134,758 | 132,057 | 133,551 | 132,057 |
| Hampton,VA | Hampton | VA | HAM | Hampton City,VA | 134,330 | 134,510 | 135,041 | 134,627 | 134,330 |
| Hanford,CA | Hanford | CA | DWB | Kings,CA | 151,382 | 152,940 | 150,691 | 151,671 | 150,691 |
| Hanford,CA | Hanford | CA | HNF | Kings,CA | 151,382 | 152,940 | 150,691 | 151,671 | 150,691 |
| Hanover,MA | Hanover | MA | HNV | Plymouth,MA | 518,422 | 521,202 | 515,303 | 518,309 | 515,303 |
| Hanover,MD | Hanover | MD | P1W | Anne Arundel,MD | 575,523 | 579,234 | 571,275 | 575,344 | 571,275 |
| Harleysville,PA | Harleysville | PA | ZUM | Montgomery,PA | 826,924 | 830,915 | 823,823 | 827,221 | 823,823 |
| Harrisburg,PA | Harrisburg | PA | FVF | Dauphin,PA | 276,864 | 278,299 | 275,632 | 276,932 | 275,632 |
| Harrisburg,PA | Harrisburg | PA | GYZ | Dauphin,PA | 276,864 | 278,299 | 275,632 | 276,932 | 275,632 |
| Harrisburg,PA | Harrisburg | PA | ZNH | Dauphin,PA | 276,864 | 278,299 | 275,632 | 276,932 | 275,632 |
| Hartford,CT | Hartford | CT | HAF | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Hartford,CT | Hartford | CT | JY3 | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Hartford,CT | Hartford | CT | JY5 | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Hartford,CT | Hartford | CT | N1T | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Hartford,CT | Hartford | CT | SXI | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Harvard,MA | Harvard | MA | BS7 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Harwich Port,MA | Harwich Port | MA | X6U | Barnstable,MA | 213,471 | 212,990 | 213,496 | 213,319 | 212,990 |
| Hauppauge,NY | Hauppauge | NY | DTX | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| Haverhill,MA | Haverhill | MA | EN4 | Essex,MA | 788,183 | 789,034 | 783,676 | 786,964 | 783,676 |
| Havertown,PA | Havertown | PA | FDX | Delaware,PA | 565,231 | 566,747 | 564,554 | 565,511 | 564,554 |
| Hawthorne,CA | Hawthorne | CA | HWN | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Hays,KS | Hays | KS | ITG | Ellis,KS | 28,646 | 28,553 | 28,775 | 28,658 | 28,553 |
| Hayward,CA | Hayward | CA | DMI | Alameda,CA | 1,666,756 | 1,671,329 | 1,656,754 | 1,664,946 | 1,656,754 |
| Hazlet,NJ | Hazlet | NJ | HZT | Monmouth,NJ | 620,459 | 618,795 | 621,659 | 620,304 | 618,795 |
| Hazleton,PA | Hazleton | PA | GXH | Luzerne,PA | 317,859 | 317,417 | 317,663 | 317,646 | 317,417 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Healdsburg,CA | Healdsburg | CA | VPO | Sonoma,CA | 498,643 | 494,336 | 499,772 | 497,584 | 494,336 |
| Hebron,CT | Hebron | CT | JY6 | Tolland,CT | 150,689 | 150,721 | 151,063 | 150,824 | 150,689 |
| Hellertown,PA | Hellertown | PA | GXD | Northampton,PA | 304,564 | 305,285 | 302,809 | 304,219 | 302,809 |
| Hemet,CA | Hemet | CA | DFK | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Hempstead,NY | Hempstead | NY | HNY | Nassau,NY | 1,357,534 | 1,356,924 | 1,356,509 | 1,356,989 | 1,356,509 |
| Henderson,NC | Henderson | NC | RCR | Vance,NC | 44,635 | 44,535 | 44,479 | 44,550 | 44,479 |
| Henderson,NV | Henderson | NV | BI8 | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Henderson,NV | Henderson | NV | F2L | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Henderson,NV | Henderson | NV | KIH | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Henderson,NV | Henderson | NV | KS9 | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Henderson,NV | Henderson | NV | LB6 | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Henderson,NV | Henderson | NV | LEZ | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Henderson,NV | Henderson | NV | SE5 | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Hercules,CA | Hercules | CA | GNC | Contra Costa,CA | 1,150,519 | 1,153,526 | 1,142,251 | 1,148,765 | 1,142,251 |
| Herndon,VA | Herndon | VA | F3N | Fairfax,VA | 1,148,463 | 1,147,532 | 1,145,862 | 1,147,286 | 1,145,862 |
| Hesperia,CA | Hesperia | CA | DFA | San Bernardino,CA | 2,166,753 | 2,180,085 | 2,149,031 | 2,165,290 | 2,149,031 |
| Hialeah,FL | Hialeah | FL | FHH | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Hialeah,FL | Hialeah | FL | HPW | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Hialeah,FL | Hialeah | FL | PTO | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Hickory,NC | Hickory | NC | VJ7 | Catawba,NC | 158,687 | 159,551 | 157,613 | 158,617 | 157,613 |
| High Point,NC | High Point | NC | YJ3 | Guilford,NC | 532,607 | 537,174 | 527,868 | 532,550 | 527,868 |
| Highland,IL | Highland | IL | WII | Madison,IL | 264,026 | 262,966 | 264,776 | 263,923 | 262,966 |
| Highlands Ranch,CO | Highlands Ranch | CO | Y1R | Douglas,CO | 342,989 | 351,154 | 336,041 | 343,395 | 336,041 |
| Hilton Head,SC | Hilton Head | SC | W6J | Beaufort,SC | 188,876 | 192,122 | 186,095 | 189,031 | 186,095 |
| Hoboken,NJ | Hoboken | NJ | T4E | Hudson,NJ | 671,931 | 672,391 | 670,046 | 671,456 | 670,046 |
| Hoffman Estates,IL | Hoffman Estates | IL | HOF | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Holden,MA | Holden | MA | JC1 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Holicong,PA | Holicong | PA | WBP | Bucks,PA | 627,812 | 628,270 | 626,806 | 627,629 | 626,806 |
| Hollister,CA | Hollister | CA | W3M | San Benito,CA | 61,467 | 62,808 | 60,376 | 61,550 | 60,376 |
| Hollywood,FL | Hollywood | FL | GFW | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Hollywood,FL | Hollywood | FL | HLW | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Holmdel,NJ | Holmdel | NJ | HOM | Monmouth,NJ | 620,459 | 618,795 | 621,659 | 620,304 | 618,795 |
| Homestead,FL | Homestead | FL | EQF | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Homosassa,FL | Homosassa | FL | XPU | Citrus,FL | 147,682 | 149,657 | 145,169 | 147,503 | 145,169 |
| Horsham,PA | Horsham | PA | QLS | Montgomery,PA | 826,924 | 830,915 | 823,823 | 827,221 | 823,823 |
| Houma,LA | Houma | LA | TBE | Terrebonne Parish,LA | 111,163 | 110,461 | 112,054 | 111,226 | 110,461 |
| Houston,TX | Houston | TX | A2S | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | AJ | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | BEY | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | BNZ | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | BVF | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Houston,TX | Houston | TX | EEL | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | EFW | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | ETW | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | FNN | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | HWY | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | IAE | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | IOG | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | KAF | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | MZI | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | Q1X | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | SVB | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | VPA | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | WEA | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | XGN | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Houston,TX | Houston | TX | XY | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Howard Beach,NY | Howard Beach | NY | HBN | Queens,NY | 2,274,605 | 2,253,858 | 2,287,388 | 2,271,950 | 2,253,858 |
| Howell,NJ | Howell | NJ | HWL | Monmouth,NJ | 620,459 | 618,795 | 621,659 | 620,304 | 618,795 |
| Hudson,FL | Hudson | FL | HDO | Pasco,FL | 539,090 | 553,947 | 524,602 | 539,213 | 524,602 |
| Humble,TX | Humble | TX | SVG | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Huntersville,NC | Huntersville | NC | XJ1 | Mecklenburg,NC | 1,093,750 | 1,110,356 | 1,074,475 | 1,092,860 | 1,074,475 |
| Huntington,NY | Huntington | NY | HUG | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| Huntington Beach,CA | Huntington Beach | CA | DBH | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Huntington Beach,CA | Huntington Beach | CA | DFU | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Huntington Beach,CA | Huntington Beach | CA | I4T | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Huntington Beach,CA | Huntington Beach | CA | O3O | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Huntsville,AL | Huntsville | AL | D6A | Madison,AL | 367,004 | 372,909 | 362,276 | 367,396 | 362,276 |
| Huntsville,AL | Huntsville | AL | QKF | Madison,AL | 367,004 | 372,909 | 362,276 | 367,396 | 362,276 |
| Hyannis,MA | Hyannis | MA | A5L | Barnstable,MA | 213,471 | 212,990 | 213,496 | 213,319 | 212,990 |
| Hyde Park,NY | Hyde Park | NY | GVG | Dutchess,NY | 293,939 | 294,218 | 293,754 | 293,970 | 293,754 |
| Idaho Falls,ID | Idaho Falls | ID | HYY | Bonneville,ID | 116,444 | 119,062 | 114,392 | 116,633 | 114,392 |
| Independence,MO | Independence | MO | KPO | Jackson,MO | 700,784 | 703,011 | 696,216 | 700,004 | 696,216 |
| Indio,CA | Indio | CA | DDY | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Inglewood,CA | Inglewood | CA | CVZ | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Inverness,FL | Inverness | FL | JD | Citrus,FL | 147,682 | 149,657 | 145,169 | 147,503 | 145,169 |
| Irvine,CA | Irvine | CA | DBF | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Irvine,CA | Irvine | CA | DFT | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Irvine,CA | Irvine | CA | ZFM | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Irving,TX | Irving | TX | TIR | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Irwin,PA | Irwin | PA | ZC8 | Westmoreland,PA | 350,459 | 348,899 | 352,590 | 350,649 | 348,899 |
| Issaquah,WA | Issaquah | WA | E2P | King,WA | 2,228,364 | 2,252,782 | 2,195,502 | 2,225,549 | 2,195,502 |
| Ithaca,NY | Ithaca | NY | T2N | Tompkins,NY | 102,419 | 102,180 | 102,642 | 102,414 | 102,180 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Jackson,CA | Jackson | CA | JKC | Amador,CA | 39,405 | 39,752 | 38,429 | 39,195 | 38,429 |
| Jackson,CA | Jackson | CA | K4L | Amador,CA | 39,405 | 39,752 | 38,429 | 39,195 | 38,429 |
| Jackson,MI | Jackson | MI | JKZ | Jackson,MI | 158,566 | 158,510 | 158,636 | 158,571 | 158,510 |
| Jacksonville,FL | Jacksonville | FL | C4S | Duval,FL | 948,652 | 957,755 | 936,186 | 947,531 | 936,186 |
| Jacksonville,FL | Jacksonville | FL | FID | Duval,FL | 948,652 | 957,755 | 936,186 | 947,531 | 936,186 |
| Jacksonville,FL | Jacksonville | FL | FVQ | Duval,FL | 948,652 | 957,755 | 936,186 | 947,531 | 936,186 |
| Jacksonville,FL | Jacksonville | FL | JKV | Duval,FL | 948,652 | 957,755 | 936,186 | 947,531 | 936,186 |
| Jacksonville,FL | Jacksonville | FL | JV | Duval,FL | 948,652 | 957,755 | 936,186 | 947,531 | 936,186 |
| Jacksonville,FL | Jacksonville | FL | RC4 | Duval,FL | 948,652 | 957,755 | 936,186 | 947,531 | 936,186 |
| Jacksonville,FL | Jacksonville | FL | RC5 | Duval,FL | 948,652 | 957,755 | 936,186 | 947,531 | 936,186 |
| Jacksonville,FL | Jacksonville | FL | UZG | Duval,FL | 948,652 | 957,755 | 936,186 | 947,531 | 936,186 |
| Jacksonville,FL | Jacksonville | FL | X5J | Duval,FL | 948,652 | 957,755 | 936,186 | 947,531 | 936,186 |
| Jacksonville,FL | Jacksonville | FL | XMC | Duval,FL | 948,652 | 957,755 | 936,186 | 947,531 | 936,186 |
| Jacksonville,FL | Jacksonville | FL | XUF | Duval,FL | 948,652 | 957,755 | 936,186 | 947,531 | 936,186 |
| Jacksonville,FL | Jacksonville | FL | YZG | Duval,FL | 948,652 | 957,755 | 936,186 | 947,531 | 936,186 |
| Jacksonville,NC | Jacksonville | NC | XM3 | Onslow,NC | 196,915 | 197,938 | 195,069 | 196,641 | 195,069 |
| Jacksonville Beach,FL | Jacksonville Beach | FL | YZF | Duval,FL | 948,652 | 957,755 | 936,186 | 947,531 | 936,186 |
| Jamaica,NY | Jamaica | NY | CU3 | Queens,NY | 2,274,605 | 2,253,858 | 2,287,388 | 2,271,950 | 2,253,858 |
| Jamesburg,NJ | Jamesburg | NJ | EPJ | Middlesex,NJ | 826,172 | 825,062 | 825,920 | 825,718 | 825,062 |
| Jenkintown,PA | Jenkintown | PA | PZK | Montgomery,PA | 826,924 | 830,915 | 823,823 | 827,221 | 823,823 |
| Jersey City,NJ | Jersey City | NJ | O2G | Hudson,NJ | 671,931 | 672,391 | 670,046 | 671,456 | 670,046 |
| Johnson City,NY | Johnson City | NY | YWT | Broome,NY | 191,925 | 190,488 | 193,188 | 191,867 | 190,488 |
| Johnson City,TN | Johnson City | TN | JT | Washington,TN | 128,661 | 129,375 | 127,805 | 128,614 | 127,805 |
| Johnston,RI | Johnston | RI | YFD | Providence,RI | 636,953 | 638,931 | 635,737 | 637,207 | 635,737 |
| Johnstown,NY | Johnstown | NY | JTN | Fulton,NY | 53,633 | 53,383 | 53,646 | 53,554 | 53,383 |
| Joliet,IL | Joliet | IL | JOL | Will,IL | 691,149 | 690,743 | 689,315 | 690,402 | 689,315 |
| Jonesboro,AR | Jonesboro | AR | JOB | Craighead,AR | 108,816 | 110,332 | 107,345 | 108,831 | 107,345 |
| Joplin,MO | Joplin | MO | Q6Z | Jasper,MO | 120,455 | 121,328 | 119,920 | 120,568 | 119,920 |
| Jupiter,FL | Jupiter | FL | JUP | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| Kalamazoo,MI | Kalamazoo | MI | KMZ | Kalamazoo,MI | 264,680 | 265,066 | 262,745 | 264,164 | 262,745 |
| Kansas City,KS | Kansas City | KS | LKR | Wyandotte,KS | 165,321 | 165,429 | 164,861 | 165,204 | 164,861 |
| Kansas City,MO | Kansas City | MO | IM | Jackson,MO | 700,784 | 703,011 | 696,216 | 700,004 | 696,216 |
| Kansas City,MO | Kansas City | MO | ITC | Jackson,MO | 700,784 | 703,011 | 696,216 | 700,004 | 696,216 |
| Kansas City,MO | Kansas City | MO | MXT | Jackson,MO | 700,784 | 703,011 | 696,216 | 700,004 | 696,216 |
| Kansas City,MO | Kansas City | MO | VKL | Jackson,MO | 700,784 | 703,011 | 696,216 | 700,004 | 696,216 |
| Katy,TX | Katy | TX | J7A | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Katy,TX | Katy | TX | KHX | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Katy,TX | Katy | TX | KWW | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Keene,NH | Keene | NH | GH2 | Cheshire,NH | 75,901 | 76,085 | 76,042 | 76,009 | 75,901 |
| Keizer,OR | Keizer | OR | F2U | Marion,OR | 345,412 | 347,818 | 339,641 | 344,290 | 339,641 |
| Keller,TX | Keller | TX | E3T | Tarrant,TX | 2,081,446 | 2,102,515 | 2,049,770 | 2,077,910 | 2,049,770 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Keller,TX | Keller | TX | KDD | Tarrant,TX | 2,081,446 | 2,102,515 | 2,049,770 | 2,077,910 | 2,049,770 |
| Kenner,LA | Kenner | LA | KNN | Jefferson Parish,LA | 433,884 | 432,493 | 434,850 | 433,742 | 432,493 |
| Kennett Square,PA | Kennett Square | PA | YMG | Chester,PA | 522,086 | 524,989 | 519,560 | 522,212 | 519,560 |
| Kenosha,WI | Kenosha | WI | ZAJ | Kenosha,WI | 168,926 | 169,561 | 168,524 | 169,004 | 168,524 |
| Kensington,CT | Kensington | CT | JY7 | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Kerman,CA | Kerman | CA | DWC | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |
| Kernersville,NC | Kernersville | NC | AK1 | Forsyth,NC | 379,216 | 382,295 | 375,195 | 378,902 | 375,195 |
| Killeen,TX | Killeen | TX | KLN | Bell,TX | 355,397 | 362,924 | 348,574 | 355,632 | 348,574 |
| King Of Prussia,PA | King Of Prussia | PA | HPK | Montgomery,PA | 826,924 | 830,915 | 823,823 | 827,221 | 823,823 |
| Kingsport,TN | Kingsport | TN | BS5 | Sullivan,TN | 157,599 | 158,348 | 157,050 | 157,666 | 157,050 |
| Kingsport,TN | Kingsport | TN | FK2 | Sullivan,TN | 157,599 | 158,348 | 157,050 | 157,666 | 157,050 |
| Kingston,NY | Kingston | NY | GRX | Ulster,NY | 178,418 | 177,573 | 178,665 | 178,219 | 177,573 |
| Kingsville,TX | Kingsville | TX | HXG | Kleberg,TX | 30,722 | 30,680 | 30,974 | 30,792 | 30,680 |
| Kingwood,TX | Kingwood | TX | YR6 | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Kirkland,WA | Kirkland | WA | U2A | King,WA | 2,228,364 | 2,252,782 | 2,195,502 | 2,225,549 | 2,195,502 |
| Kirkland,WA | Kirkland | WA | U2G | King,WA | 2,228,364 | 2,252,782 | 2,195,502 | 2,225,549 | 2,195,502 |
| Kirkwood,MO | Kirkwood | MO | MKW | St. Louis,MO | 995,219 | 994,205 | 996,919 | 995,448 | 994,205 |
| Kissimmee,FL | Kissimmee | FL | KIS | Osceola,FL | 368,456 | 375,751 | 351,955 | 365,387 | 351,955 |
| Kissimmee,FL | Kissimmee | FL | KMM | Osceola,FL | 368,456 | 375,751 | 351,955 | 365,387 | 351,955 |
| Kissimmee,FL | Kissimmee | FL | LD8 | Osceola,FL | 368,456 | 375,751 | 351,955 | 365,387 | 351,955 |
| Kissimmee,FL | Kissimmee | FL | XNN | Osceola,FL | 368,456 | 375,751 | 351,955 | 365,387 | 351,955 |
| La Crescenta,CA | La Crescenta | CA | K4M | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| La Mesa,CA | La Mesa | CA | DBT | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| La Mesa,CA | La Mesa | CA | LAM | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| La Palma,CA | La Palma | CA | L5I | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| La Place,LA | La Place | LA | JLR | St. John the Baptist Parish | 43,119 | 42,837 | 43,242 | 43,066 | 42,837 |
| La Plata,MD | La Plata | MD | F3W | Charles,MD | 161,476 | 163,257 | 159,428 | 161,387 | 159,428 |
| La Quinta,CA | La Quinta | CA | R1A | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Lacey,WA | Lacey | WA | H4Q | Thurston,WA | 286,056 | 290,536 | 279,711 | 285,434 | 279,711 |
| Lady Lake,FL | Lady Lake | FL | LAD | Lake,FL | 356,720 | 367,118 | 345,867 | 356,568 | 345,867 |
| Lady Lake,FL | Lady Lake | FL | VGW | Lake,FL | 356,720 | 367,118 | 345,867 | 356,568 | 345,867 |
| Lady Lake,FL | Lady Lake | FL | XMO | Lake,FL | 356,720 | 367,118 | 345,867 | 356,568 | 345,867 |
| Lafayette,CA | Lafayette | CA | DPV | Contra Costa,CA | 1,150,519 | 1,153,526 | 1,142,251 | 1,148,765 | 1,142,251 |
| Lafayette,CA | Lafayette | CA | J4B | Contra Costa,CA | 1,150,519 | 1,153,526 | 1,142,251 | 1,148,765 | 1,142,251 |
| Lafayette,LA | Lafayette | LA | LAE | Lafayette Parish,LA | 243,113 | 244,390 | 241,973 | 243,159 | 241,973 |
| Laguna Hills,CA | Laguna Hills | CA | HQQ | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Laguna Hills,CA | Laguna Hills | CA | OE9 | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Laguna Niguel,CA | Laguna Niguel | CA | PE1 | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Lake City,FL | Lake City | FL | RMU | Columbia,FL | 70,668 | 71,686 | 69,968 | 70,774 | 69,968 |
| Lake Elsinore,CA | Lake Elsinore | CA | A2I | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Lake Jackson,TX | Lake Jackson | TX | FNI | Brazoria,TX | 368,887 | 374,264 | 360,677 | 367,943 | 360,677 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Lake Mary,FL | Lake Mary | FL | QIL | Seminole,FL | 468,122 | 471,826 | 461,402 | 467,117 | 461,402 |
| Lake Mary,FL | Lake Mary | FL | QRX | Seminole,FL | 468,122 | 471,826 | 461,402 | 467,117 | 461,402 |
| Lake Orion,MI | Lake Orion | MI | EAX | Oakland,MI | 1,256,694 | 1,257,584 | 1,253,185 | 1,255,821 | 1,253,185 |
| Lake Placid,FL | Lake Placid | FL | WKG | Highlands,FL | 104,933 | 106,221 | 103,437 | 104,864 | 103,437 |
| Lake Placid,NY | Lake Placid | NY | BY8 | Essex,NY | 37,288 | 36,885 | 37,459 | 37,211 | 36,885 |
| Lake Success,NY | Lake Success | NY | LS | Nassau,NY | 1,357,534 | 1,356,924 | 1,356,509 | 1,356,989 | 1,356,509 |
| Lake Wales,FL | Lake Wales | FL | LWP | Polk,FL | 706,597 | 724,777 | 686,218 | 705,864 | 686,218 |
| Lake Worth,FL | Lake Worth | FL | GFV | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| Lake Worth,TX | Lake Worth | TX | FBA | Tarrant,TX | 2,081,446 | 2,102,515 | 2,049,770 | 2,077,910 | 2,049,770 |
| Lakeland,FL | Lakeland | FL | LKE | Polk,FL | 706,597 | 724,777 | 686,218 | 705,864 | 686,218 |
| Lakeland,FL | Lakeland | FL | XVR | Polk,FL | 706,597 | 724,777 | 686,218 | 705,864 | 686,218 |
| Lakeport,CA | Lakeport | CA | DHZ | Lake,CA | 64,317 | 64,386 | 64,195 | 64,299 | 64,195 |
| Lakeway,TX | Lakeway | TX | C2O | Travis,TX | 1,246,572 | 1,273,954 | 1,226,805 | 1,249,110 | 1,226,805 |
| Lakewood,CO | Lakewood | CO | C3B | Jefferson,CO | 579,392 | 582,881 | 574,798 | 579,024 | 574,798 |
| Lakewood,WA | Lakewood | WA | JOM | Pierce,WA | 893,756 | 904,980 | 877,013 | 891,916 | 877,013 |
| Lancaster,CA | Lancaster | CA | LAJ | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Lancaster,NY | Lancaster | NY | ERZ | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Lancaster,PA | Lancaster | PA | AXX | Lancaster,PA | 543,969 | 545,724 | 540,999 | 543,564 | 540,999 |
| Lancaster,SC | Lancaster | SC | EK3 | Lancaster,SC | 95,035 | 98,012 | 92,308 | 95,118 | 92,308 |
| Lancaster,TX | Lancaster | TX | X5H | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Land O Lakes,FL | Land O Lakes | FL | HD2 | Pasco,FL | 539,090 | 553,947 | 524,602 | 539,213 | 524,602 |
| Langhorne,PA | Langhorne | PA | OXF | Bucks,PA | 627,812 | 628,270 | 626,806 | 627,629 | 626,806 |
| Lansdale,PA | Lansdale | PA | QTZ | Montgomery,PA | 826,924 | 830,915 | 823,823 | 827,221 | 823,823 |
| Lansing,IL | Lansing | IL | ZNP | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Lapeer,MI | Lapeer | MI | MR2 | Lapeer,MI | 87,921 | 87,607 | 88,038 | 87,855 | 87,607 |
| Laredo,TX | Laredo | TX | HZE | Webb,TX | 275,120 | 276,652 | 273,526 | 275,099 | 273,526 |
| Largo,FL | Largo | FL | ICX | Pinellas,FL | 973,058 | 974,996 | 964,666 | 970,907 | 964,666 |
| Larkspur,CA | Larkspur | CA | Y6G | Marin,CA | 259,662 | 258,826 | 259,943 | 259,477 | 258,826 |
| Las Cruces,NM | Las Cruces | NM | DC1 | Doña Ana,NM | 217,278 | 218,195 | 216,069 | 217,181 | 216,069 |
| Las Vegas,NV | Las Vegas | NV | BUH | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Las Vegas,NV | Las Vegas | NV | GU2 | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Las Vegas,NV | Las Vegas | NV | GU3 | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Las Vegas,NV | Las Vegas | NV | NBZ | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Las Vegas,NV | Las Vegas | NV | QAP | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Las Vegas,NV | Las Vegas | NV | QD6 | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Las Vegas,NV | Las Vegas | NV | QFR | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Las Vegas,NV | Las Vegas | NV | QMY | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Las Vegas,NV | Las Vegas | NV | QNZ | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Las Vegas,NV | Las Vegas | NV | QRC | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Las Vegas,NV | Las Vegas | NV | UR9 | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| Latham,NY | Latham | NY | LTH | Albany,NY | 306,585 | 305,506 | 306,968 | 306,353 | 305,506 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Laurel,MD | Laurel | MD | LRU | Prince George's,MD | 909,619 | 909,327 | 908,670 | 909,205 | 908,670 |
| Lawrence,KS | Lawrence | KS | ZLP | Douglas,KS | 121,109 | 122,259 | 120,290 | 121,219 | 120,290 |
| Lawrence,MA | Lawrence | MA | FQ7 | Essex,MA | 788,183 | 789,034 | 783,676 | 786,964 | 783,676 |
| Lawrence,MA | Lawrence | MA | VMK | Essex,MA | 788,183 | 789,034 | 783,676 | 786,964 | 783,676 |
| Lawrenceville,GA | Lawrenceville | GA | E6P | Gwinnett,GA | 927,337 | 936,250 | 915,046 | 926,211 | 915,046 |
| Lawrenceville,GA | Lawrenceville | GA | GMB | Gwinnett,GA | 927,337 | 936,250 | 915,046 | 926,211 | 915,046 |
| Lawrenceville,NJ | Lawrenceville | NJ | LWV | Mercer,NJ | 368,188 | 367,430 | 367,922 | 367,847 | 367,430 |
| Layton,UT | Layton | UT | BHQ | Davis,UT | 351,101 | 355,481 | 345,767 | 350,783 | 345,767 |
| Leander,TX | Leander | TX | XT2 | Williamson,TX | 566,463 | 590,551 | 547,604 | 568,206 | 547,604 |
| Lebanon,PA | Lebanon | PA | GWE | Lebanon,PA | 141,339 | 141,793 | 139,729 | 140,954 | 139,729 |
| Lebanon,TN | Lebanon | TN | IYT | Wilson,TN | 140,954 | 144,657 | 136,666 | 140,759 | 136,666 |
| Leechburg,PA | Leechburg | PA | JA5 | Armstrong,PA | 65,352 | 64,735 | 65,867 | 65,318 | 64,735 |
| Lees Summit,MO | Lees Summit | MO | IYK | Jackson,MO | 700,784 | 703,011 | 696,216 | 700,004 | 696,216 |
| Leesburg,FL | Leesburg | FL | S2X | Lake,FL | 356,720 | 367,118 | 345,867 | 356,568 | 345,867 |
| Leesburg,VA | Leesburg | VA | DTA | Loudoun,VA | 405,522 | 413,538 | 395,134 | 404,731 | 395,134 |
| Leesburg,VA | Leesburg | VA | HOI | Loudoun,VA | 405,522 | 413,538 | 395,134 | 404,731 | 395,134 |
| Lehigh Acres,FL | Lehigh Acres | FL | FQU | Lee,FL | 754,470 | 770,577 | 737,468 | 754,172 | 737,468 |
| Leominster,MA | Leominster | MA | JC2 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Leominster,MA | Leominster | MA | RS3 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Leominster,MA | Leominster | MA | UB8 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Levittown,PA | Levittown | PA | FVA | Bucks,PA | 627,812 | 628,270 | 626,806 | 627,629 | 626,806 |
| Levittown,PA | Levittown | PA | YCS | Bucks,PA | 627,812 | 628,270 | 626,806 | 627,629 | 626,806 |
| Lewes,DE | Lewes | DE | BBS | Sussex,DE | 229,389 | 234,225 | 224,384 | 229,333 | 224,384 |
| Lewiston,NY | Lewiston | NY | LWT | Niagara,NY | 210,060 | 209,281 | 210,820 | 210,054 | 209,281 |
| Lexington,KY | Lexington | KY | IID | Fayette,KY | 322,426 | 323,152 | 320,601 | 322,060 | 320,601 |
| Lexington,VA | Lexington | VA | HJ3 | Rockbridge,VA | 22,761 | 22,573 | 22,570 | 22,635 | 22,570 |
| Lincoln,CA | Lincoln | CA | DJR | Placer,CA | 392,330 | 398,329 | 385,512 | 392,057 | 385,512 |
| Lincoln,NE | Lincoln | NE | QLI | Lancaster,NE | 316,527 | 319,090 | 313,158 | 316,258 | 313,158 |
| Linwood,NJ | Linwood | NJ | LIN | Atlantic,NJ | 263,989 | 263,670 | 266,105 | 264,588 | 263,670 |
| Little Rock,AR | Little Rock | AR | ES9 | Pulaski,AR | 391,918 | 391,911 | 392,967 | 392,265 | 391,911 |
| Little Rock,AR | Little Rock | AR | IL | Pulaski,AR | 391,918 | 391,911 | 392,967 | 392,265 | 391,911 |
| Littleton,CO | Littleton | CO | GGB | Arapahoe,CO | 651,797 | 656,590 | 644,560 | 650,982 | 644,560 |
| Littleton,CO | Littleton | CO | LTO | Arapahoe,CO | 651,797 | 656,590 | 644,560 | 650,982 | 644,560 |
| Live Oak,FL | Live Oak | FL | IJ1 | Suwannee,FL | 44,179 | 44,417 | 44,046 | 44,214 | 44,046 |
| Live Oak,TX | Live Oak | TX | TPR | Bexar,TX | 1,981,187 | 2,003,554 | 1,952,843 | 1,979,195 | 1,952,843 |
| Livermore,CA | Livermore | CA | DPX | Alameda,CA | 1,666,756 | 1,671,329 | 1,656,754 | 1,664,946 | 1,656,754 |
| Liverpool,NY | Liverpool | NY | L4E | Onondaga,NY | 461,649 | 460,528 | 462,872 | 461,683 | 460,528 |
| Livingston,NJ | Livingston | NJ | LVN | Essex,NJ | 798,570 | 798,975 | 795,404 | 797,650 | 795,404 |
| Livonia,MI | Livonia | MI | LVI | Wayne,MI | 1,754,453 | 1,749,343 | 1,757,299 | 1,753,698 | 1,749,343 |
| Lockport,NY | Lockport | NY | GC3 | Niagara,NY | 210,060 | 209,281 | 210,820 | 210,054 | 209,281 |
| LODI,CA | LODI | CA | QE7 | San Joaquin,CA | 752,491 | 762,148 | 742,603 | 752,414 | 742,603 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Lodi,CA | Lodi | CA | YMB | San Joaquin,CA | 752,491 | 762,148 | 742,603 | 752,414 | 742,603 |
| Loganville,GA | Loganville | GA | XZU | Walton,GA | 93,202 | 94,593 | 91,442 | 93,079 | 91,442 |
| Loma Linda,CA | Loma Linda | CA | SPL | San Bernardino,CA | 2,166,753 | 2,180,085 | 2,149,031 | 2,165,290 | 2,149,031 |
| Lombard,IL | Lombard | IL | HIG | DuPage,IL | 927,247 | 922,921 | 929,060 | 926,409 | 922,921 |
| Lombard,IL | Lombard | IL | VK2 | DuPage,IL | 927,247 | 922,921 | 929,060 | 926,409 | 922,921 |
| Londonderry,NH | Londonderry | NH | LDO | Rockingham,NH | 308,287 | 309,769 | 306,359 | 308,138 | 306,359 |
| Lone Tree,CO | Lone Tree | CO | BIF | Douglas,CO | 342,989 | 351,154 | 336,041 | 343,395 | 336,041 |
| Lone Tree,CO | Lone Tree | CO | D1K | Douglas,CO | 342,989 | 351,154 | 336,041 | 343,395 | 336,041 |
| Long Beach,CA | Long Beach | CA | BEJ | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Long Beach,CA | Long Beach | CA | CXL | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Long Beach,CA | Long Beach | CA | CXO | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Long Beach,CA | Long Beach | CA | CXP | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Long Beach,CA | Long Beach | CA | CXS | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Long Beach,CA | Long Beach | CA | UV8 | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Long Beach,CA | Long Beach | CA | UV9 | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Longmont,CO | Longmont | CO | A2Y | Boulder,CO | 324,636 | 326,196 | 322,510 | 324,447 | 322,510 |
| Longview,TX | Longview | TX | TV | Gregg,TX | 123,251 | 123,945 | 123,443 | 123,546 | 123,251 |
| Longview,WA | Longview | WA | W1M | Cowlitz,WA | 108,752 | 110,593 | 106,778 | 108,708 | 106,778 |
| Longwood,FL | Longwood | FL | LON | Seminole,FL | 468,122 | 471,826 | 461,402 | 467,117 | 461,402 |
| Los Alamitos,CA | Los Alamitos | CA | ALM | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Los Alamitos,CA | Los Alamitos | CA | CXD | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Los Angeles,CA | Los Angeles | CA | CQH | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Los Angeles,CA | Los Angeles | CA | CQM | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Los Angeles,CA | Los Angeles | CA | CQN | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Los Angeles,CA | Los Angeles | CA | CQP | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Los Angeles,CA | Los Angeles | CA | CQT | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Los Angeles,CA | Los Angeles | CA | CQU | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Los Angeles,CA | Los Angeles | CA | K4P | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Los Angeles,CA | Los Angeles | CA | OC1 | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Los Angeles,CA | Los Angeles | CA | W2K | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| LOS BANOS,CA | LOS BANOS | CA | DWT | Merced,CA | 274,151 | 277,680 | 271,382 | 274,404 | 271,382 |
| Los Gatos,CA | Los Gatos | CA | DQA | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| Los Lunas,NM | Los Lunas | NM | QOZ | Valencia,NM | 76,305 | 76,688 | 76,027 | 76,340 | 76,027 |
| Louisville,KY | Louisville | KY | DSG | Jefferson,KY | 768,101 | 766,757 | 767,419 | 767,426 | 766,757 |
| Louisville,KY | Louisville | KY | PKY | Jefferson,KY | 768,101 | 766,757 | 767,419 | 767,426 | 766,757 |
| Loveland,CO | Loveland | CO | E3L | Larimer,CO | 350,660 | 356,899 | 344,786 | 350,782 | 344,786 |
| Lowell,MA | Lowell | MA | QLO | Middlesex,MA | 1,608,470 | 1,611,699 | 1,600,842 | 1,607,004 | 1,600,842 |
| Loxahatchee,FL | Loxahatchee | FL | YOT | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| Lubbock,TX | Lubbock | TX | LUB | Lubbock,TX | 307,627 | 310,569 | 304,808 | 307,668 | 304,808 |
| Lufkin,TX | Lufkin | TX | LFN | Angelina,TX | 86,810 | 86,715 | 87,322 | 86,949 | 86,715 |
| Lumberton,NJ | Lumberton | NJ | MOL | Burlington,NJ | 444,745 | 445,349 | 445,702 | 445,265 | 444,745 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Lutherville,MD | Lutherville | MD | PY | Baltimore,MD | 827,859 | 827,370 | 828,018 | 827,749 | 827,370 |
| Lynden,WA | Lynden | WA | I3C | Whatcom,WA | 225,197 | 229,247 | 220,821 | 225,088 | 220,821 |
| Lynn Haven,FL | Lynn Haven | FL | D6U | Bay,FL | 186,240 | 174,705 | 182,161 | 181,035 | 174,705 |
| Lynwood,CA | Lynwood | CA | G3K | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Macon,GA | Macon | GA | MG | Bibb,GA | 152,903 | 153,159 | 153,200 | 153,087 | 152,903 |
| Macungie,PA | Macungie | PA | YKC | Lehigh,PA | 368,359 | 369,318 | 365,052 | 367,576 | 365,052 |
| Madera,CA | Madera | CA | DRA | Madera,CA | 156,882 | 157,327 | 155,433 | 156,547 | 155,433 |
| Madison,CT | Madison | CT | MSM | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Malta,NY | Malta | NY | MW1 | Saratoga,NY | 230,170 | 229,863 | 228,502 | 229,512 | 228,502 |
| Manahawkin,NJ | Manahawkin | NJ | MNK | Ocean,NJ | 601,478 | 607,186 | 596,415 | 601,693 | 596,415 |
| Manalapan,NJ | Manalapan | NJ | GKJ | Monmouth,NJ | 620,459 | 618,795 | 621,659 | 620,304 | 618,795 |
| Manasquan,NJ | Manasquan | NJ | E5R | Monmouth,NJ | 620,459 | 618,795 | 621,659 | 620,304 | 618,795 |
| Manassas,VA | Manassas | VA | HOQ | Manassas City,VA | 41,046 | 41,085 | 41,174 | 41,102 | 41,046 |
| Manchester,CT | Manchester | CT | JY8 | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Manchester,CT | Manchester | CT | MTK | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Manchester,NH | Manchester | NH | EWA | Hillsborough,NH | 414,630 | 417,025 | 413,035 | 414,897 | 413,035 |
| Mandeville,LA | Mandeville | LA | HIL | St. Tammany Parish,LA | 258,035 | 260,419 | 255,155 | 257,870 | 255,155 |
| Manhattan,KS | Manhattan | KS | YST | Riley,KS | 74,712 | 74,232 | 75,056 | 74,667 | 74,232 |
| Mansfield,CT | Mansfield | CT | MY3 | Tolland,CT | 150,689 | 150,721 | 151,063 | 150,824 | 150,689 |
| Mansfield,OH | Mansfield | OH | MAF | Richland,OH | 120,987 | 121,154 | 121,100 | 121,080 | 120,987 |
| Mansfield,TX | Mansfield | TX | MFL | Tarrant,TX | 2,081,446 | 2,102,515 | 2,049,770 | 2,077,910 | 2,049,770 |
| Mansfield Center,CT | Mansfield Center | CT | MNF | Tolland,CT | 150,689 | 150,721 | 151,063 | 150,824 | 150,689 |
| Manteca,CA | Manteca | CA | LUW | San Joaquin,CA | 752,491 | 762,148 | 742,603 | 752,414 | 742,603 |
| Manteca,CA | Manteca | CA | ME8 | San Joaquin,CA | 752,491 | 762,148 | 742,603 | 752,414 | 742,603 |
| Maple Shade,NJ | Maple Shade | NJ | KHA | Burlington,NJ | 444,745 | 445,349 | 445,702 | 445,265 | 444,745 |
| Marco Island,FL | Marco Island | FL | V2W | Collier,FL | 378,201 | 384,902 | 371,453 | 378,185 | 371,453 |
| Margate,FL | Margate | FL | YQL | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Marianna,FL | Marianna | FL | CIW | Jackson,FL | 48,112 | 46,414 | 47,945 | 47,490 | 46,414 |
| Marietta,GA | Marietta | GA | WZ | Cobb,GA | 756,070 | 760,141 | 751,218 | 755,810 | 751,218 |
| Marina,CA | Marina | CA | VXA | Monterey,CA | 433,950 | 434,061 | 433,410 | 433,807 | 433,410 |
| Marion,OH | Marion | OH | XFT | Marion,OH | 65,427 | 65,093 | 65,299 | 65,273 | 65,093 |
| Mariposa,CA | Mariposa | CA | DWU | Mariposa,CA | 17,405 | 17,203 | 17,420 | 17,343 | 17,203 |
| Marlborough,CT | Marlborough | CT | T4K | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Marlborough,MA | Marlborough | MA | JC5 | Middlesex,MA | 1,608,470 | 1,611,699 | 1,600,842 | 1,607,004 | 1,600,842 |
| Marlborough,MA | Marlborough | MA | JC6 | Middlesex,MA | 1,608,470 | 1,611,699 | 1,600,842 | 1,607,004 | 1,600,842 |
| Marlton,NJ | Marlton | NJ | EFV | Burlington,NJ | 444,745 | 445,349 | 445,702 | 445,265 | 444,745 |
| Marrero,LA | Marrero | LA | LA | Jefferson Parish,LA | 433,884 | 432,493 | 434,850 | 433,742 | 432,493 |
| Maryville,IL | Maryville | IL | MMV | Madison,IL | 264,026 | 262,966 | 264,776 | 263,923 | 262,966 |
| Mason,OH | Mason | OH | JEM | Warren,OH | 231,945 | 234,602 | 229,132 | 231,893 | 229,132 |
| Massapequa Park,NY | Massapequa Park | NY | GNH | Nassau,NY | 1,357,534 | 1,356,924 | 1,356,509 | 1,356,989 | 1,356,509 |
| Mattapan,MA | Mattapan | MA | VC3 | Suffolk,MA | 803,147 | 803,907 | 796,605 | 801,220 | 796,605 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Matthews,NC | Matthews | NC | WJ7 | Mecklenburg,NC | 1,093,750 | 1,110,356 | 1,074,475 | 1,092,860 | 1,074,475 |
| Mays Landing,NJ | Mays Landing | NJ | IXU | Atlantic,NJ | 263,989 | 263,670 | 266,105 | 264,588 | 263,670 |
| Mc Lean,VA | Mc Lean | VA | CBX | Fairfax,VA | 1,148,463 | 1,147,532 | 1,145,862 | 1,147,286 | 1,145,862 |
| Mc Murray,PA | Mc Murray | PA | MCU | Washington,PA | 207,018 | 206,865 | 207,212 | 207,032 | 206,865 |
| McAllen,TX | McAllen | TX | TX | Hidalgo,TX | 862,298 | 868,707 | 855,176 | 862,060 | 855,176 |
| McKinney,TX | McKinney | TX | MKI | Collin,TX | 1,004,307 | 1,034,730 | 973,977 | 1,004,338 | 973,977 |
| Mechanicsburg,PA | Mechanicsburg | PA | P4Z | Cumberland,PA | 251,131 | 253,370 | 249,328 | 251,276 | 249,328 |
| Medford,NJ | Medford | NJ | SRN | Burlington,NJ | 444,745 | 445,349 | 445,702 | 445,265 | 444,745 |
| Medford,NY | Medford | NY | DTY | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| Medford,OR | Medford | OR | G2M | Jackson,OR | 219,411 | 220,944 | 216,574 | 218,976 | 216,574 |
| Media,PA | Media | PA | XEB | Delaware,PA | 565,231 | 566,747 | 564,554 | 565,511 | 564,554 |
| Melbourne,FL | Melbourne | FL | H6P | Brevard,FL | 595,203 | 601,942 | 585,507 | 594,217 | 585,507 |
| Melbourne,FL | Melbourne | FL | M2D | Brevard,FL | 595,203 | 601,942 | 585,507 | 594,217 | 585,507 |
| Melbourne,FL | Melbourne | FL | MR5 | Brevard,FL | 595,203 | 601,942 | 585,507 | 594,217 | 585,507 |
| Melbourne,FL | Melbourne | FL | WU7 | Brevard,FL | 595,203 | 601,942 | 585,507 | 594,217 | 585,507 |
| Melrose,MA | Melrose | MA | MLS | Middlesex,MA | 1,608,470 | 1,611,699 | 1,600,842 | 1,607,004 | 1,600,842 |
| Menifee,CA | Menifee | CA | DFN | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Menlo Park,CA | Menlo Park | CA | I4S | San Mateo,CA | 768,681 | 766,573 | 767,423 | 767,559 | 766,573 |
| Mentor,OH | Mentor | OH | XI3 | Lake,OH | 230,102 | 230,149 | 229,954 | 230,068 | 229,954 |
| Merced,CA | Merced | CA | CW6 | Merced,CA | 274,151 | 277,680 | 271,382 | 274,404 | 271,382 |
| Merced,CA | Merced | CA | DWW | Merced,CA | 274,151 | 277,680 | 271,382 | 274,404 | 271,382 |
| Merced,CA | Merced | CA | QE8 | Merced,CA | 274,151 | 277,680 | 271,382 | 274,404 | 271,382 |
| Meriden,CT | Meriden | CT | CWW | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Meriden,CT | Meriden | CT | JY9 | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Meriden,CT | Meriden | CT | MRA | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Meridian,ID | Meridian | ID | S5Z | Ada,ID | 468,764 | 481,587 | 456,849 | 469,067 | 456,849 |
| Merrick,NY | Merrick | NY | WWZ | Nassau,NY | 1,357,534 | 1,356,924 | 1,356,509 | 1,356,989 | 1,356,509 |
| Merritt Island,FL | Merritt Island | FL | MRT | Brevard,FL | 595,203 | 601,942 | 585,507 | 594,217 | 585,507 |
| Mesquite,TX | Mesquite | TX | B2W | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Mesquite,TX | Mesquite | TX | TCR | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Metairie,LA | Metairie | LA | BEX | Jefferson Parish,LA | 433,884 | 432,493 | 434,850 | 433,742 | 432,493 |
| Metairie,LA | Metairie | LA | VY | Jefferson Parish,LA | 433,884 | 432,493 | 434,850 | 433,742 | 432,493 |
| Methuen,MA | Methuen | MA | FQ8 | Essex,MA | 788,183 | 789,034 | 783,676 | 786,964 | 783,676 |
| Methuen,MA | Methuen | MA | FZM | Essex,MA | 788,183 | 789,034 | 783,676 | 786,964 | 783,676 |
| Methuen,MA | Methuen | MA | LE5 | Essex,MA | 788,183 | 789,034 | 783,676 | 786,964 | 783,676 |
| Miami,FL | Miami | FL | AQX | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Miami,FL | Miami | FL | FCG | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Miami,FL | Miami | FL | FZP | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Miami,FL | Miami | FL | HB5 | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Miami,FL | Miami | FL | IB2 | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Miami,FL | Miami | FL | MP | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Miami,FL | Miami | FL | SIU | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Miami,FL | Miami | FL | WVV | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Miami,FL | Miami | FL | YUY | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Miami,FL | Miami | FL | YXD | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Miami,FL | Miami | FL | ZBQ | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Miami Beach,FL | Miami Beach | FL | MIB | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Middle Village,NY | Middle Village | NY | MIV | Queens,NY | 2,274,605 | 2,253,858 | 2,287,388 | 2,271,950 | 2,253,858 |
| Middleborough,MA | Middleborough | MA | RJ9 | Plymouth,MA | 518,422 | 521,202 | 515,303 | 518,309 | 515,303 |
| Middleburg Heights,OH | Middleburg Heights | OH | IX | Cuyahoga,OH | 1,241,718 | 1,235,072 | 1,247,451 | 1,241,414 | 1,235,072 |
| Middlebury,CT | Middlebury | CT | JV1 | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Middletown,CT | Middletown | CT | FJR | Middlesex,CT | 162,870 | 162,436 | 163,053 | 162,786 | 162,436 |
| Middletown,DE | Middletown | DE | MEW | New Castle,DE | 557,550 | 558,753 | 556,165 | 557,489 | 556,165 |
| Midland,MI | Midland | MI | LTX | Midland,MI | 83,223 | 83,156 | 83,355 | 83,245 | 83,156 |
| Midlothian,VA | Midlothian | VA | FSN | Chesterfield,VA | 348,281 | 352,802 | 343,551 | 348,211 | 343,551 |
| Milford,CT | Milford | CT | PX1 | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Milford,DE | Milford | DE | KYK | Sussex,DE | 229,389 | 234,225 | 224,384 | 229,333 | 224,384 |
| Milford,MA | Milford | MA | JC8 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Mill Valley,CA | Mill Valley | CA | DIB | Marin,CA | 259,662 | 258,826 | 259,943 | 259,477 | 258,826 |
| Mill Valley,CA | Mill Valley | CA | Y6H | Marin,CA | 259,662 | 258,826 | 259,943 | 259,477 | 258,826 |
| Millbrae,CA | Millbrae | CA | DQH | San Mateo,CA | 768,681 | 766,573 | 767,423 | 767,559 | 766,573 |
| Millbury,MA | Millbury | MA | KC1 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Millville,DE | Millville | DE | KYL | Sussex,DE | 229,389 | 234,225 | 224,384 | 229,333 | 224,384 |
| Millville,NJ | Millville | NJ | MLV | Cumberland,NJ | 150,635 | 149,527 | 151,906 | 150,689 | 149,527 |
| Milpitas,CA | Milpitas | CA | XMZ | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| Milton,FL | Milton | FL | EFI | Santa Rosa,FL | 179,295 | 184,313 | 174,755 | 179,454 | 174,755 |
| Milwaukee,WI | Milwaukee | WI | MWK | Milwaukee,WI | 946,969 | 945,726 | 951,226 | 947,974 | 945,726 |
| Milwaukie,OR | Milwaukie | OR | G2F | Clackamas,OR | 415,416 | 418,187 | 410,463 | 414,689 | 410,463 |
| Mineola,NY | Mineola | NY | W2G | Nassau,NY | 1,357,534 | 1,356,924 | 1,356,509 | 1,356,989 | 1,356,509 |
| Minneapolis,MN | Minneapolis | MN | SMA | Hennepin,MN | 1,257,925 | 1,265,843 | 1,245,837 | 1,256,535 | 1,245,837 |
| Miramar,FL | Miramar | FL | XPF | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Mission Hills,CA | Mission Hills | CA | CZE | Santa Barbara,CA | 445,780 | 446,499 | 444,829 | 445,703 | 444,829 |
| Mission Hills,CA | Mission Hills | CA | F4K | Santa Barbara,CA | 445,780 | 446,499 | 444,829 | 445,703 | 444,829 |
| Mission Viejo,CA | Mission Viejo | CA | GEJ | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Mission Viejo,CA | Mission Viejo | CA | JMY | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Mobile,AL | Mobile | AL | HJ7 | Mobile,AL | 413,908 | 413,210 | 414,114 | 413,744 | 413,210 |
| Modesto,CA | Modesto | CA | DWZ | Stanislaus,CA | 548,126 | 550,660 | 543,194 | 547,327 | 543,194 |
| MODESTO,CA | MODESTO | CA | DXA | Stanislaus,CA | 548,126 | 550,660 | 543,194 | 547,327 | 543,194 |
| MODESTO,CA | MODESTO | CA | DXC | Stanislaus,CA | 548,126 | 550,660 | 543,194 | 547,327 | 543,194 |
| MODESTO,CA | MODESTO | CA | DXD | Stanislaus,CA | 548,126 | 550,660 | 543,194 | 547,327 | 543,194 |
| Modesto,CA | Modesto | CA | DXE | Stanislaus,CA | 548,126 | 550,660 | 543,194 | 547,327 | 543,194 |
| MODESTO,CA | MODESTO | CA | ZNC | Stanislaus,CA | 548,126 | 550,660 | 543,194 | 547,327 | 543,194 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Mokena,IL | Mokena | IL | WTY | Will,IL | 691,149 | 690,743 | 689,315 | 690,402 | 689,315 |
| Monroe,MI | Monroe | MI | K6K | Monroe,MI | 150,174 | 150,500 | 149,727 | 150,134 | 149,727 |
| Monroe,NY | Monroe | NY | NKD | Orange,NY | 382,126 | 384,940 | 380,085 | 382,384 | 380,085 |
| Monroeville,PA | Monroeville | PA | HQF | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Monroeville,PA | Monroeville | PA | HS5 | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Monroeville,PA | Monroeville | PA | KXC | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Montclair,NJ | Montclair | NJ | MNE | Essex,NJ | 798,570 | 798,975 | 795,404 | 797,650 | 795,404 |
| Montebello,CA | Montebello | CA | CXF | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Monterey,CA | Monterey | CA | CKG | Monterey,CA | 433,950 | 434,061 | 433,410 | 433,807 | 433,410 |
| Montgomery,AL | Montgomery | AL | D6B | Montgomery,AL | 226,504 | 226,486 | 226,941 | 226,644 | 226,486 |
| Montrose,CO | Montrose | CO | P1Y | Montrose,CO | 42,206 | 42,758 | 41,686 | 42,217 | 41,686 |
| Monument,CO | Monument | CO | A2L | El Paso,CO | 712,089 | 720,403 | 698,974 | 710,489 | 698,974 |
| Moorestown,NJ | Moorestown | NJ | PVA | Burlington,NJ | 444,745 | 445,349 | 445,702 | 445,265 | 444,745 |
| Moreno Valley,CA | Moreno Valley | CA | HQB | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Morgan Hill,CA | Morgan Hill | CA | DQB | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| Morristown,NJ | Morristown | NJ | JAE | Morris,NJ | 493,070 | 491,845 | 493,379 | 492,765 | 491,845 |
| Morristown,TN | Morristown | TN | R3Z | Hamblen,TN | 64,629 | 64,934 | 64,132 | 64,565 | 64,132 |
| Morrisville,NC | Morrisville | NC | DY7 | Wake,NC | 1,091,273 | 1,111,761 | 1,069,079 | 1,090,704 | 1,069,079 |
| Mount Airy,MD | Mount Airy | MD | Q3I | Carroll,MD | 168,267 | 168,447 | 167,699 | 168,138 | 167,699 |
| Mount Dora,FL | Mount Dora | FL | XSX | Lake,FL | 356,720 | 367,118 | 345,867 | 356,568 | 345,867 |
| Mount Morris,MI | Mount Morris | MI | MTM | Genesee,MI | 406,688 | 405,813 | 407,875 | 406,792 | 405,813 |
| Mount Vernon,IL | Mount Vernon | IL | K5T | Jefferson,IL | 37,708 | 37,684 | 37,985 | 37,792 | 37,684 |
| Mount Vernon,NY | Mount Vernon | NY | MUV | Westchester,NY | 968,213 | 967,506 | 968,890 | 968,203 | 967,506 |
| Mount Vernon,WA | Mount Vernon | WA | K3J | Skagit,WA | 127,835 | 129,205 | 125,612 | 127,551 | 125,612 |
| Mountain View,CA | Mountain View | CA | DQC | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| Mountain View,CA | Mountain View | CA | K4R | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| Mt Laurel,NJ | Mt Laurel | NJ | QY4 | Burlington,NJ | 444,745 | 445,349 | 445,702 | 445,265 | 444,745 |
| Mt Sterling,KY | Mt Sterling | KY | ELW | Montgomery,KY | 28,109 | 28,157 | 27,884 | 28,050 | 27,884 |
| Mt. Kisco,NY | Mt. Kisco | NY | LXA | Westchester,NY | 968,213 | 967,506 | 968,890 | 968,203 | 967,506 |
| Mt. Lebanon,PA | Mt. Lebanon | PA | SZL | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Mt. Pleasant,MI | Mt. Pleasant | MI | R2L | Isabella,MI | 70,463 | 69,872 | 70,688 | 70,341 | 69,872 |
| Murfreesboro,TN | Murfreesboro | TN | TMU | Rutherford,TN | 324,647 | 332,285 | 315,815 | 324,249 | 315,815 |
| Murphy,TX | Murphy | TX | D1W | Collin,TX | 1,004,307 | 1,034,730 | 973,977 | 1,004,338 | 973,977 |
| Murray,UT | Murray | UT | HA9 | Salt Lake,UT | 1,148,692 | 1,160,437 | 1,133,646 | 1,147,592 | 1,133,646 |
| Murrieta,CA | Murrieta | CA | DFL | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Murrieta,CA | Murrieta | CA | K1F | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Murrysville,PA | Murrysville | PA | YQY | Westmoreland,PA | 350,459 | 348,899 | 352,590 | 350,649 | 348,899 |
| Muskegon,MI | Muskegon | MI | MUK | Muskegon,MI | 173,599 | 173,566 | 173,297 | 173,487 | 173,297 |
| Myerstown,PA | Myerstown | PA | GWH | Lebanon,PA | 141,339 | 141,793 | 139,729 | 140,954 | 139,729 |
| Myrtle Beach,SC | Myrtle Beach | SC | EOG | Horry,SC | 344,105 | 354,081 | 332,172 | 343,453 | 332,172 |
| Mystic,CT | Mystic | CT | QBM | New London,CT | 266,285 | 265,206 | 267,390 | 266,294 | 265,206 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| N. Attleboro,MA | N. Attleboro | MA | VMO | Bristol,MA | 564,092 | 565,217 | 561,037 | 563,449 | 561,037 |
| Nanuet,NY | Nanuet | NY | E5I | Rockland,NY | 325,522 | 325,789 | 324,422 | 325,244 | 324,422 |
| Nanuet,NY | Nanuet | NY | NU | Rockland,NY | 325,522 | 325,789 | 324,422 | 325,244 | 324,422 |
| Napa,CA | Napa | CA | DIP | Napa,CA | 138,789 | 137,744 | 139,623 | 138,719 | 137,744 |
| Napa,CA | Napa | CA | DNU | Napa,CA | 138,789 | 137,744 | 139,623 | 138,719 | 137,744 |
| Naperville,IL | Naperville | IL | NPV | DuPage,IL | 927,247 | 922,921 | 929,060 | 926,409 | 922,921 |
| Naples,FL | Naples | FL | GOL | Collier,FL | 378,201 | 384,902 | 371,453 | 378,185 | 371,453 |
| Naples,FL | Naples | FL | GRN | Collier,FL | 378,201 | 384,902 | 371,453 | 378,185 | 371,453 |
| Naples,FL | Naples | FL | QXC | Collier,FL | 378,201 | 384,902 | 371,453 | 378,185 | 371,453 |
| Naples,FL | Naples | FL | TV7 | Collier,FL | 378,201 | 384,902 | 371,453 | 378,185 | 371,453 |
| Naples,FL | Naples | FL | W2F | Collier,FL | 378,201 | 384,902 | 371,453 | 378,185 | 371,453 |
| Nashua,NH | Nashua | NH | JNX | Hillsborough,NH | 414,630 | 417,025 | 413,035 | 414,897 | 413,035 |
| Nashville,TN | Nashville | TN | NVE | Davidson,TN | 690,516 | 694,144 | 687,488 | 690,716 | 687,488 |
| Nashville,TN | Nashville | TN | UU6 | Davidson,TN | 690,516 | 694,144 | 687,488 | 690,716 | 687,488 |
| National City,CA | National City | CA | GLT | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| Natrona Heights,PA | Natrona Heights | PA | NAR | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Neptune,NJ | Neptune | NJ | NEU | Monmouth,NJ | 620,459 | 618,795 | 621,659 | 620,304 | 618,795 |
| New Bedford,MA | New Bedford | MA | T1H | Bristol,MA | 564,092 | 565,217 | 561,037 | 563,449 | 561,037 |
| New Braunfels,TX | New Braunfels | TX | JF6 | Comal,TX | 148,141 | 156,209 | 141,642 | 148,664 | 141,642 |
| New Brighton,MN | New Brighton | MN | ML | Ramsey,MN | 548,872 | 550,321 | 544,442 | 547,878 | 544,442 |
| New Britain,CT | New Britain | CT | U3E | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| New Britain,CT | New Britain | CT | V3D | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| New Castle,DE | New Castle | DE | E6R | New Castle,DE | 557,550 | 558,753 | 556,165 | 557,489 | 556,165 |
| New Castle,PA | New Castle | PA | J5T | Lawrence,PA | 86,128 | 85,512 | 86,727 | 86,122 | 85,512 |
| New Castle,PA | New Castle | PA | M3V | Lawrence,PA | 86,128 | 85,512 | 86,727 | 86,122 | 85,512 |
| New Castle,PA | New Castle | PA | M3W | Lawrence,PA | 86,128 | 85,512 | 86,727 | 86,122 | 85,512 |
| New City,NY | New City | NY | NCI | Rockland,NY | 325,522 | 325,789 | 324,422 | 325,244 | 324,422 |
| New Haven,CT | New Haven | CT | NEX | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| New Haven,CT | New Haven | CT | NHA | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| New Haven,CT | New Haven | CT | NHT | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| New Kensington,PA | New Kensington | PA | GJ8 | Westmoreland,PA | 350,459 | 348,899 | 352,590 | 350,649 | 348,899 |
| New London,CT | New London | CT | EFE | New London,CT | 266,285 | 265,206 | 267,390 | 266,294 | 265,206 |
| New London,CT | New London | CT | KY3 | New London,CT | 266,285 | 265,206 | 267,390 | 266,294 | 265,206 |
| New Milford,CT | New Milford | CT | I6R | Litchfield,CT | 181,095 | 180,333 | 182,002 | 181,143 | 180,333 |
| New Milford,CT | New Milford | CT | ZGB | Litchfield,CT | 181,095 | 180,333 | 182,002 | 181,143 | 180,333 |
| New Orleans,LA | New Orleans | LA | ELY | Orleans Parish,LA | 391,004 | 390,144 | 390,845 | 390,664 | 390,144 |
| New Orleans,LA | New Orleans | LA | SNO | Orleans Parish,LA | 391,004 | 390,144 | 390,845 | 390,664 | 390,144 |
| New Paltz,NY | New Paltz | NY | GFQ | Ulster,NY | 178,418 | 177,573 | 178,665 | 178,219 | 177,573 |
| New Port Richey,FL | New Port Richey | FL | B6V | Pasco,FL | 539,090 | 553,947 | 524,602 | 539,213 | 524,602 |
| New Port Richey,FL | New Port Richey | FL | NP | Pasco,FL | 539,090 | 553,947 | 524,602 | 539,213 | 524,602 |
| New Rochelle,NY | New Rochelle | NY | NRE | Westchester,NY | 968,213 | 967,506 | 968,890 | 968,203 | 967,506 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| New Smyrna Beach,FL | New Smyrna Beach | FL | DZS | Volusia,FL | 546,101 | 553,284 | 536,487 | 545,291 | 536,487 |
| New Tripoli,PA | New Tripoli | PA | RK2 | Lehigh,PA | 368,359 | 369,318 | 365,052 | 367,576 | 365,052 |
| New York,NY | New York | NY | A5E | New York,NY | 1,629,055 | 1,628,706 | 1,631,993 | 1,629,918 | 1,628,706 |
| New York,NY | New York | NY | CE9 | New York,NY | 1,629,055 | 1,628,706 | 1,631,993 | 1,629,918 | 1,628,706 |
| New York,NY | New York | NY | DE1 | New York,NY | 1,629,055 | 1,628,706 | 1,631,993 | 1,629,918 | 1,628,706 |
| New York,NY | New York | NY | DE2 | New York,NY | 1,629,055 | 1,628,706 | 1,631,993 | 1,629,918 | 1,628,706 |
| New York,NY | New York | NY | HAT | New York,NY | 1,629,055 | 1,628,706 | 1,631,993 | 1,629,918 | 1,628,706 |
| New York,NY | New York | NY | JTK | New York,NY | 1,629,055 | 1,628,706 | 1,631,993 | 1,629,918 | 1,628,706 |
| New York,NY | New York | NY | KWV | New York,NY | 1,629,055 | 1,628,706 | 1,631,993 | 1,629,918 | 1,628,706 |
| New York,NY | New York | NY | NEY | New York,NY | 1,629,055 | 1,628,706 | 1,631,993 | 1,629,918 | 1,628,706 |
| New York,NY | New York | NY | NNO | New York,NY | 1,629,055 | 1,628,706 | 1,631,993 | 1,629,918 | 1,628,706 |
| New York,NY | New York | NY | NNY | New York,NY | 1,629,055 | 1,628,706 | 1,631,993 | 1,629,918 | 1,628,706 |
| New York,NY | New York | NY | Q5I | New York,NY | 1,629,055 | 1,628,706 | 1,631,993 | 1,629,918 | 1,628,706 |
| New York,NY | New York | NY | QWE | New York,NY | 1,629,055 | 1,628,706 | 1,631,993 | 1,629,918 | 1,628,706 |
| New York,NY | New York | NY | SIX | New York,NY | 1,629,055 | 1,628,706 | 1,631,993 | 1,629,918 | 1,628,706 |
| New York,NY | New York | NY | T2O | New York,NY | 1,629,055 | 1,628,706 | 1,631,993 | 1,629,918 | 1,628,706 |
| New York,NY | New York | NY | TXX | New York,NY | 1,629,055 | 1,628,706 | 1,631,993 | 1,629,918 | 1,628,706 |
| New York,NY | New York | NY | VFB | New York,NY | 1,629,055 | 1,628,706 | 1,631,993 | 1,629,918 | 1,628,706 |
| New York,NY | New York | NY | YGO | New York,NY | 1,629,055 | 1,628,706 | 1,631,993 | 1,629,918 | 1,628,706 |
| Newark,DE | Newark | DE | HRG | New Castle,DE | 557,550 | 558,753 | 556,165 | 557,489 | 556,165 |
| Newark,DE | Newark | DE | V4N | New Castle,DE | 557,550 | 558,753 | 556,165 | 557,489 | 556,165 |
| Newark,NJ | Newark | NJ | NEK | Essex,NJ | 798,570 | 798,975 | 795,404 | 797,650 | 795,404 |
| Newburgh,NY | Newburgh | NY | NGK | Orange,NY | 382,126 | 384,940 | 380,085 | 382,384 | 380,085 |
| Newbury Park,CA | Newbury Park | CA | GYV | Ventura,CA | 848,142 | 846,006 | 847,263 | 847,137 | 846,006 |
| Newfane,NY | Newfane | NY | QKR | Niagara,NY | 210,060 | 209,281 | 210,820 | 210,054 | 209,281 |
| Newhall,CA | Newhall | CA | S3I | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Newington,CT | Newington | CT | FJN | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Newington,CT | Newington | CT | MY4 | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Newman,CA | Newman | CA | KGI | Stanislaus,CA | 548,126 | 550,660 | 543,194 | 547,327 | 543,194 |
| Newport Beach,CA | Newport Beach | CA | DBI | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Newport Beach,CA | Newport Beach | CA | DBM | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Newport News,VA | Newport News | VA | R2B | Newport News City,VA | 178,523 | 179,225 | 179,673 | 179,140 | 178,523 |
| Newton,NJ | Newton | NJ | SZS | Sussex,NJ | 140,801 | 140,488 | 141,483 | 140,924 | 140,488 |
| Newtown,CT | Newtown | CT | LVW | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Newtown,PA | Newtown | PA | NKU | Bucks,PA | 627,812 | 628,270 | 626,806 | 627,629 | 626,806 |
| Niagara Falls,NY | Niagara Falls | NY | WPV | Niagara,NY | 210,060 | 209,281 | 210,820 | 210,054 | 209,281 |
| Niagara Falls,NY | Niagara Falls | NY | ZQL | Niagara,NY | 210,060 | 209,281 | 210,820 | 210,054 | 209,281 |
| Niceville,FL | Niceville | FL | DTS | Okaloosa,FL | 206,934 | 210,738 | 203,794 | 207,155 | 203,794 |
| Norfolk,MA | Norfolk | MA | RM1 | Norfolk,MA | 703,230 | 706,775 | 700,437 | 703,481 | 700,437 |
| Norfolk,VA | Norfolk | VA | LJ9 | Norfolk City,VA | 243,585 | 242,742 | 244,601 | 243,643 | 242,742 |
| Norristown,PA | Norristown | PA | NRT | Montgomery,PA | 826,924 | 830,915 | 823,823 | 827,221 | 823,823 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| North Babylon,NY | North Babylon | NY | OD8 | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| North Creek,NY | North Creek | NY | CM2 | Warren,NY | 64,215 | 63,944 | 64,276 | 64,145 | 63,944 |
| North Dartmouth,MA | North Dartmouth | MA | Z2W | Bristol,MA | 564,092 | 565,217 | 561,037 | 563,449 | 561,037 |
| North Fort Myers,FL | North Fort Myers | FL | XDP | Lee,FL | 754,470 | 770,577 | 737,468 | 754,172 | 737,468 |
| North Grafton,MA | North Grafton | MA | IC9 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| North Grosvenordale,CT | North Grosvenordale | CT | Z5H | Windham,CT | 117,059 | 116,782 | 116,566 | 116,802 | 116,566 |
| North Haven,CT | North Haven | CT | BJ5 | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| North Haven,CT | North Haven | CT | C7R | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| North Haven,CT | North Haven | CT | KY2 | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| North Haven,CT | North Haven | CT | NHO | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| North Hollywood,CA | North Hollywood | CA | EJY | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| North Kansas City,MO | North Kansas City | MO | SNK | Clay,MO | 246,360 | 249,948 | 242,516 | 246,275 | 242,516 |
| North Las Vegas,NV | North Las Vegas | NV | QLL | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| North Las Vegas,NV | North Las Vegas | NV | QM6 | Clark,NV | 2,226,115 | 2,266,715 | 2,182,004 | 2,224,945 | 2,182,004 |
| North Lima,OH | North Lima | OH | VW6 | Mahoning,OH | 229,216 | 228,683 | 229,961 | 229,287 | 228,683 |
| North Little Rock,AR | North Little Rock | AR | ES6 | Pulaski,AR | 391,918 | 391,911 | 392,967 | 392,265 | 391,911 |
| North Miami Beach,FL | North Miami Beach | FL | FTI | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| North Port,FL | North Port | FL | QD5 | Sarasota,FL | 426,329 | 433,742 | 419,496 | 426,522 | 419,496 |
| North Tonawanda,NY | North Tonawanda | NY | XJY | Niagara,NY | 210,060 | 209,281 | 210,820 | 210,054 | 209,281 |
| Northborough,MA | Northborough | MA | UW1 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Northglenn,CO | Northglenn | CO | H1K | Adams,CO | 511,354 | 517,421 | 504,108 | 510,961 | 504,108 |
| Northridge,CA | Northridge | CA | B6E | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Norwalk,CT | Norwalk | CT | NOL | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Norwalk,CT | Norwalk | CT | YIN | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Norwich,CT | Norwich | CT | NOX | New London,CT | 266,285 | 265,206 | 267,390 | 266,294 | 265,206 |
| Norwich,CT | Norwich | CT | T3W | New London,CT | 266,285 | 265,206 | 267,390 | 266,294 | 265,206 |
| Norwich,CT | Norwich | CT | U3F | New London,CT | 266,285 | 265,206 | 267,390 | 266,294 | 265,206 |
| Norwich,CT | Norwich | CT | U3G | New London,CT | 266,285 | 265,206 | 267,390 | 266,294 | 265,206 |
| Norwood,MA | Norwood | MA | BJO | Norfolk,MA | 703,230 | 706,775 | 700,437 | 703,481 | 700,437 |
| Norwood,MA | Norwood | MA | VMQ | Norfolk,MA | 703,230 | 706,775 | 700,437 | 703,481 | 700,437 |
| Norwood,MA | Norwood | MA | VMR | Norfolk,MA | 703,230 | 706,775 | 700,437 | 703,481 | 700,437 |
| Norwood,MA | Norwood | MA | YFB | Norfolk,MA | 703,230 | 706,775 | 700,437 | 703,481 | 700,437 |
| Nottingham,MD | Nottingham | MD | PHA | Baltimore,MD | 827,859 | 827,370 | 828,018 | 827,749 | 827,370 |
| Novato,CA | Novato | CA | Y6I | Marin,CA | 259,662 | 258,826 | 259,943 | 259,477 | 258,826 |
| Novi,MI | Novi | MI | NOV | Oakland,MI | 1,256,694 | 1,257,584 | 1,253,185 | 1,255,821 | 1,253,185 |
| Oak Lawn,IL | Oak Lawn | IL | OAJ | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Oak Park,IL | Oak Park | IL | QOP | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Oakdale,CA | Oakdale | CA | KIF | Stanislaus,CA | 548,126 | 550,660 | 543,194 | 547,327 | 543,194 |
| Oakhurst,CA | Oakhurst | CA | DXG | Madera,CA | 156,882 | 157,327 | 155,433 | 156,547 | 155,433 |
| OAKLAND,CA | OAKLAND | CA | CKK | Alameda,CA | 1,666,756 | 1,671,329 | 1,656,754 | 1,664,946 | 1,656,754 |
| Oakland,CA | Oakland | CA | DMP | Alameda,CA | 1,666,756 | 1,671,329 | 1,656,754 | 1,664,946 | 1,656,754 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Oakland,CA | Oakland | CA | DQM | Alameda,CA | 1,666,756 | 1,671,329 | 1,656,754 | 1,664,946 | 1,656,754 |
| Oakland,CA | Oakland | CA | K3X | Alameda,CA | 1,666,756 | 1,671,329 | 1,656,754 | 1,664,946 | 1,656,754 |
| OAKLAND,CA | OAKLAND | CA | LI1 | Alameda,CA | 1,666,756 | 1,671,329 | 1,656,754 | 1,664,946 | 1,656,754 |
| Oakland Park,FL | Oakland Park | FL | FTA | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Ocala,FL | Ocala | FL | FLO | Marion,FL | 359,062 | 365,579 | 353,526 | 359,389 | 353,526 |
| Ocala,FL | Ocala | FL | OBC | Marion,FL | 359,062 | 365,579 | 353,526 | 359,389 | 353,526 |
| Ocala,FL | Ocala | FL | OV | Marion,FL | 359,062 | 365,579 | 353,526 | 359,389 | 353,526 |
| Ocala,FL | Ocala | FL | YZI | Marion,FL | 359,062 | 365,579 | 353,526 | 359,389 | 353,526 |
| Oceanside,CA | Oceanside | CA | LI | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| Ocoee,FL | Ocoee | FL | OCO | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |
| Ocoee,FL | Ocoee | FL | XPD | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |
| Odessa,TX | Odessa | TX | ODS | Ector,TX | 161,960 | 166,223 | 160,579 | 162,921 | 160,579 |
| Ojai,CA | Ojai | CA | HFG | Ventura,CA | 848,142 | 846,006 | 847,263 | 847,137 | 846,006 |
| Okeechobee,FL | Okeechobee | FL | GGX | Okeechobee,FL | 41,654 | 42,168 | 41,144 | 41,655 | 41,144 |
| Olathe,KS | Olathe | KS | KVD | Johnson,KS | 598,127 | 602,401 | 591,506 | 597,345 | 591,506 |
| Old Saybrook,CT | Old Saybrook | CT | IO4 | Middlesex,CT | 162,870 | 162,436 | 163,053 | 162,786 | 162,436 |
| Oldsmar,FL | Oldsmar | FL | D4Q | Pinellas,FL | 973,058 | 974,996 | 964,666 | 970,907 | 964,666 |
| Olney,MD | Olney | MD | IG5 | Montgomery,MD | 1,048,478 | 1,050,688 | 1,043,530 | 1,047,565 | 1,043,530 |
| Olympia,WA | Olympia | WA | E2E | Thurston,WA | 286,056 | 290,536 | 279,711 | 285,434 | 279,711 |
| OLYMPIA,WA | OLYMPIA | WA | OH6 | Thurston,WA | 286,056 | 290,536 | 279,711 | 285,434 | 279,711 |
| Omaha,NE | Omaha | NE | OMH | Douglas,NE | 566,391 | 571,327 | 560,617 | 566,112 | 560,617 |
| Orange,CA | Orange | CA | DBX | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Orange,CA | Orange | CA | DCA | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Orange,CA | Orange | CA | DCB | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Orange,CA | Orange | CA | DGN | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Orange,CA | Orange | CA | I4K | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Orange,CT | Orange | CT | YXQ | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Orange,TX | Orange | TX | WFU | Orange,TX | 83,474 | 83,396 | 84,069 | 83,646 | 83,396 |
| Orange City,FL | Orange City | FL | ONG | Volusia,FL | 546,101 | 553,284 | 536,487 | 545,291 | 536,487 |
| Orange Park,FL | Orange Park | FL | E4H | Clay,FL | 215,908 | 219,252 | 211,405 | 215,522 | 211,405 |
| Orange Park,FL | Orange Park | FL | FOP | Clay,FL | 215,908 | 219,252 | 211,405 | 215,522 | 211,405 |
| Orange Park,FL | Orange Park | FL | HUK | Clay,FL | 215,908 | 219,252 | 211,405 | 215,522 | 211,405 |
| Orchard Park,NY | Orchard Park | NY | N1S | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Oregon City,OR | Oregon City | OR | H4P | Clackamas,OR | 415,416 | 418,187 | 410,463 | 414,689 | 410,463 |
| Orland,CA | Orland | CA | B2G | Glenn,CA | 27,967 | 28,393 | 27,976 | 28,112 | 27,967 |
| Orland Park,IL | Orland Park | IL | C4B | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Orlando,FL | Orlando | FL | CFU | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |
| Orlando,FL | Orlando | FL | EF5 | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |
| Orlando,FL | Orlando | FL | FUF | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |
| Orlando,FL | Orlando | FL | GLO | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |
| Orlando,FL | Orlando | FL | GOI | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Orlando,FL | Orlando | FL | LK2 | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |
| Orlando,FL | Orlando | FL | M2C | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |
| Orlando,FL | Orlando | FL | NCU | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |
| Orlando,FL | Orlando | FL | O2O | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |
| Orlando,FL | Orlando | FL | ORR | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |
| Orlando,FL | Orlando | FL | OY | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |
| Orlando,FL | Orlando | FL | RII | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |
| Orlando,FL | Orlando | FL | YDM | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |
| Orlando,FL | Orlando | FL | ZDE | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |
| Orleans,MA | Orleans | MA | QOR | Barnstable,MA | 213,471 | 212,990 | 213,496 | 213,319 | 212,990 |
| Ormond Beach,FL | Ormond Beach | FL | FOR | Volusia,FL | 546,101 | 553,284 | 536,487 | 545,291 | 536,487 |
| Oroville,CA | Oroville | CA | L2U | Butte,CA | 230,339 | 219,186 | 225,817 | 225,114 | 219,186 |
| Osterville,MA | Osterville | MA | OSV | Barnstable,MA | 213,471 | 212,990 | 213,496 | 213,319 | 212,990 |
| Overland Park,KS | Overland Park | KS | ISX | Johnson,KS | 598,127 | 602,401 | 591,506 | 597,345 | 591,506 |
| Overland Park,KS | Overland Park | KS | ITL | Johnson,KS | 598,127 | 602,401 | 591,506 | 597,345 | 591,506 |
| Overland Park,KS | Overland Park | KS | MER | Johnson,KS | 598,127 | 602,401 | 591,506 | 597,345 | 591,506 |
| Oviedo,FL | Oviedo | FL | OVI | Seminole,FL | 468,122 | 471,826 | 461,402 | 467,117 | 461,402 |
| Owings Mills,MD | Owings Mills | MD | LJD | Baltimore,MD | 827,859 | 827,370 | 828,018 | 827,749 | 827,370 |
| Oxnard,CA | Oxnard | CA | DCQ | Ventura,CA | 848,142 | 846,006 | 847,263 | 847,137 | 846,006 |
| Oxnard,CA | Oxnard | CA | DCS | Ventura,CA | 848,142 | 846,006 | 847,263 | 847,137 | 846,006 |
| Oxnard,CA | Oxnard | CA | PE5 | Ventura,CA | 848,142 | 846,006 | 847,263 | 847,137 | 846,006 |
| Oxon Hill,MD | Oxon Hill | MD | E4N | Prince George's,MD | 909,619 | 909,327 | 908,670 | 909,205 | 908,670 |
| Pacific Grove,CA | Pacific Grove | CA | Q1Y | Monterey,CA | 433,950 | 434,061 | 433,410 | 433,807 | 433,410 |
| Pahrump,NV | Pahrump | NV | EFD | Nye,NV | 45,186 | 46,523 | 44,380 | 45,363 | 44,380 |
| Palatine,IL | Palatine | IL | NBY | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Palatka,FL | Palatka | FL | B6W | Putnam,FL | 74,043 | 74,521 | 73,252 | 73,939 | 73,252 |
| Palatka,FL | Palatka | FL | GBF | Putnam,FL | 74,043 | 74,521 | 73,252 | 73,939 | 73,252 |
| Palm Bay,FL | Palm Bay | FL | D4X | Brevard,FL | 595,203 | 601,942 | 585,507 | 594,217 | 585,507 |
| Palm Bay,FL | Palm Bay | FL | XPI | Brevard,FL | 595,203 | 601,942 | 585,507 | 594,217 | 585,507 |
| Palm Beach Gardens,FL | Palm Beach Gardens | FL | PAG | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| Palm Beach Gardens,FL | Palm Beach Gardens | FL | YUZ | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| Palm City,FL | Palm City | FL | XPG | Martin,FL | 160,742 | 161,000 | 159,065 | 160,269 | 159,065 |
| Palm Coast,FL | Palm Coast | FL | HFW | Flagler,FL | 112,085 | 115,081 | 109,801 | 112,322 | 109,801 |
| Palm Coast,FL | Palm Coast | FL | XRC | Flagler,FL | 112,085 | 115,081 | 109,801 | 112,322 | 109,801 |
| Palm Harbor,FL | Palm Harbor | FL | JJR | Pinellas,FL | 973,058 | 974,996 | 964,666 | 970,907 | 964,666 |
| Palm Harbor,FL | Palm Harbor | FL | PHP | Pinellas,FL | 973,058 | 974,996 | 964,666 | 970,907 | 964,666 |
| Palm Springs,CA | Palm Springs | CA | DEQ | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Palm Springs,FL | Palm Springs | FL | PSG | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| Palmdale,CA | Palmdale | CA | CUF | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Palmdale,CA | Palmdale | CA | HS6 | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Palmer,AK | Palmer | AK | W3V | Matanuska-Susitna Borou | 107,115 | 108,317 | 105,369 | 106,934 | 105,369 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Panama City Beach,FL | Panama City Beach | FL | TCS | Bay,FL | 186,240 | 174,705 | 182,161 | 181,035 | 174,705 |
| Paoli,PA | Paoli | PA | NQE | Chester,PA | 522,086 | 524,989 | 519,560 | 522,212 | 519,560 |
| Paramus,NJ | Paramus | NJ | IZQ | Bergen,NJ | 932,816 | 932,202 | 930,390 | 931,803 | 930,390 |
| Paris,TX | Paris | TX | PRI | Lamar,TX | 49,729 | 49,859 | 49,611 | 49,733 | 49,611 |
| Park Ridge,IL | Park Ridge | IL | DEM | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Parker,CO | Parker | CO | CEQ | Douglas,CO | 342,989 | 351,154 | 336,041 | 343,395 | 336,041 |
| Parker,CO | Parker | CO | H3R | Douglas,CO | 342,989 | 351,154 | 336,041 | 343,395 | 336,041 |
| Parkville,MD | Parkville | MD | P4P | Baltimore,MD | 827,859 | 827,370 | 828,018 | 827,749 | 827,370 |
| Parma,OH | Parma | OH | IY | Cuyahoga,OH | 1,241,718 | 1,235,072 | 1,247,451 | 1,241,414 | 1,235,072 |
| Parsippany,NJ | Parsippany | NJ | PPC | Morris,NJ | 493,070 | 491,845 | 493,379 | 492,765 | 491,845 |
| Pasadena,CA | Pasadena | CA | CXZ | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Pasadena,CA | Pasadena | CA | CYB | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Pasadena,CA | Pasadena | CA | CYU | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Pasadena,CA | Pasadena | CA | GKL | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Pasadena,MD | Pasadena | MD | Q3J | Anne Arundel,MD | 575,523 | 579,234 | 571,275 | 575,344 | 571,275 |
| Pasadena,TX | Pasadena | TX | S1P | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Patchogue,NY | Patchogue | NY | YI5 | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| Patterson,CA | Patterson | CA | R3U | Stanislaus,CA | 548,126 | 550,660 | 543,194 | 547,327 | 543,194 |
| Pawtucket,RI | Pawtucket | RI | QPW | Providence,RI | 636,953 | 638,931 | 635,737 | 637,207 | 635,737 |
| Pearland,TX | Pearland | TX | E3F | Brazoria,TX | 368,887 | 374,264 | 360,677 | 367,943 | 360,677 |
| Peekskill,NY | Peekskill | NY | G2C | Westchester,NY | 968,213 | 967,506 | 968,890 | 968,203 | 967,506 |
| Pembroke Pines,FL | Pembroke Pines | FL | FPP | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Pembroke Pines,FL | Pembroke Pines | FL | SVK | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Penn Hills,PA | Penn Hills | PA | S2U | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Penn Valley,CA | Penn Valley | CA | T3J | Nevada,CA | 99,508 | 99,755 | 99,244 | 99,502 | 99,244 |
| Pennsauken,NJ | Pennsauken | NJ | EYM | Camden,NJ | 506,353 | 506,471 | 506,738 | 506,521 | 506,353 |
| Pennsville,NJ | Pennsville | NJ | PMK | Salem,NJ | 62,746 | 62,385 | 62,990 | 62,707 | 62,385 |
| Pensacola,FL | Pensacola | FL | FPC | Escambia,FL | 315,104 | 318,316 | 313,491 | 315,637 | 313,491 |
| Pensacola,FL | Pensacola | FL | GEQ | Escambia,FL | 315,104 | 318,316 | 313,491 | 315,637 | 313,491 |
| Pensacola,FL | Pensacola | FL | TV5 | Escambia,FL | 315,104 | 318,316 | 313,491 | 315,637 | 313,491 |
| Pensacola,FL | Pensacola | FL | ZIJ | Escambia,FL | 315,104 | 318,316 | 313,491 | 315,637 | 313,491 |
| Perkasie,PA | Perkasie | PA | YKE | Bucks,PA | 627,812 | 628,270 | 626,806 | 627,629 | 626,806 |
| Perris,CA | Perris | CA | LFI | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Petaluma,CA | Petaluma | CA | EQG | Sonoma,CA | 498,643 | 494,336 | 499,772 | 497,584 | 494,336 |
| Petersburg,VA | Petersburg | VA | XF4 | Petersburg City,VA | 31,056 | 31,346 | 31,362 | 31,255 | 31,056 |
| Petoskey,MI | Petoskey | MI | CE2 | Emmet,MI | 33,225 | 33,415 | 33,104 | 33,248 | 33,104 |
| Philadelphia,PA | Philadelphia | PA | COT | Philadelphia,PA | 1,583,592 | 1,584,064 | 1,579,075 | 1,582,244 | 1,579,075 |
| Philadelphia,PA | Philadelphia | PA | EGF | Philadelphia,PA | 1,583,592 | 1,584,064 | 1,579,075 | 1,582,244 | 1,579,075 |
| Philadelphia,PA | Philadelphia | PA | EVZ | Philadelphia,PA | 1,583,592 | 1,584,064 | 1,579,075 | 1,582,244 | 1,579,075 |
| Philadelphia,PA | Philadelphia | PA | F6H | Philadelphia,PA | 1,583,592 | 1,584,064 | 1,579,075 | 1,582,244 | 1,579,075 |
| Philadelphia,PA | Philadelphia | PA | FPX | Philadelphia,PA | 1,583,592 | 1,584,064 | 1,579,075 | 1,582,244 | 1,579,075 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Philadelphia,PA | Philadelphia | PA | GGG | Philadelphia,PA | 1,583,592 | 1,584,064 | 1,579,075 | 1,582,244 | 1,579,075 |
| Philadelphia,PA | Philadelphia | PA | GZG | Philadelphia,PA | 1,583,592 | 1,584,064 | 1,579,075 | 1,582,244 | 1,579,075 |
| Philadelphia,PA | Philadelphia | PA | HBK | Philadelphia,PA | 1,583,592 | 1,584,064 | 1,579,075 | 1,582,244 | 1,579,075 |
| Philadelphia,PA | Philadelphia | PA | JTS | Philadelphia,PA | 1,583,592 | 1,584,064 | 1,579,075 | 1,582,244 | 1,579,075 |
| Philadelphia,PA | Philadelphia | PA | KHB | Philadelphia,PA | 1,583,592 | 1,584,064 | 1,579,075 | 1,582,244 | 1,579,075 |
| Philadelphia,PA | Philadelphia | PA | PHJ | Philadelphia,PA | 1,583,592 | 1,584,064 | 1,579,075 | 1,582,244 | 1,579,075 |
| Philadelphia,PA | Philadelphia | PA | U3N | Philadelphia,PA | 1,583,592 | 1,584,064 | 1,579,075 | 1,582,244 | 1,579,075 |
| Philadelphia,PA | Philadelphia | PA | WLN | Philadelphia,PA | 1,583,592 | 1,584,064 | 1,579,075 | 1,582,244 | 1,579,075 |
| Philadelphia,PA | Philadelphia | PA | XBV | Philadelphia,PA | 1,583,592 | 1,584,064 | 1,579,075 | 1,582,244 | 1,579,075 |
| Philadelphia,PA | Philadelphia | PA | YCU | Philadelphia,PA | 1,583,592 | 1,584,064 | 1,579,075 | 1,582,244 | 1,579,075 |
| Philadelphia,PA | Philadelphia | PA | YMH | Philadelphia,PA | 1,583,592 | 1,584,064 | 1,579,075 | 1,582,244 | 1,579,075 |
| Philadelphia,PA | Philadelphia | PA | YUQ | Philadelphia,PA | 1,583,592 | 1,584,064 | 1,579,075 | 1,582,244 | 1,579,075 |
| Phoenixville,PA | Phoenixville | PA | IXV | Chester,PA | 522,086 | 524,989 | 519,560 | 522,212 | 519,560 |
| Phoenixville,PA | Phoenixville | PA | RDH | Chester,PA | 522,086 | 524,989 | 519,560 | 522,212 | 519,560 |
| Pikesville,MD | Pikesville | MD | IG8 | Baltimore,MD | 827,859 | 827,370 | 828,018 | 827,749 | 827,370 |
| Pikesville,MD | Pikesville | MD | NYR | Baltimore,MD | 827,859 | 827,370 | 828,018 | 827,749 | 827,370 |
| Pinecrest,FL | Pinecrest | FL | DAD | Miami-Dade,FL | 2,714,854 | 2,716,940 | 2,699,428 | 2,710,407 | 2,699,428 |
| Piscataway,NJ | Piscataway | NJ | D1T | Middlesex,NJ | 826,172 | 825,062 | 825,920 | 825,718 | 825,062 |
| PITTSBURG,CA | PITTSBURG | CA | CKR | Contra Costa,CA | 1,150,519 | 1,153,526 | 1,142,251 | 1,148,765 | 1,142,251 |
| Pittsburgh,PA | Pittsburgh | PA | ET9 | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Pittsburgh,PA | Pittsburgh | PA | FT4 | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Pittsburgh,PA | Pittsburgh | PA | FT5 | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Pittsburgh,PA | Pittsburgh | PA | GPC | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Pittsburgh,PA | Pittsburgh | PA | OAD | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Pittsburgh,PA | Pittsburgh | PA | PA3 | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Pittsburgh,PA | Pittsburgh | PA | PTQ | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Pittsburgh,PA | Pittsburgh | PA | PTU | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Pittsburgh,PA | Pittsburgh | PA | PTY | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Pittsburgh,PA | Pittsburgh | PA | WGW | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Pittsburgh,PA | Pittsburgh | PA | WIZ | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Pittsburgh,PA | Pittsburgh | PA | XJN | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Pittsfield,MA | Pittsfield | MA | XHI | Berkshire,MA | 125,901 | 124,944 | 126,425 | 125,757 | 124,944 |
| Placentia,CA | Placentia | CA | QGE | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Placerville,CA | Placerville | CA | DJU | El Dorado,CA | 190,746 | 192,843 | 188,563 | 190,717 | 188,563 |
| Plainfield,CT | Plainfield | CT | U3H | Windham,CT | 117,059 | 116,782 | 116,566 | 116,802 | 116,566 |
| Plainfield,IL | Plainfield | IL | A6M | Will,IL | 691,149 | 690,743 | 689,315 | 690,402 | 689,315 |
| Plainsboro,NJ | Plainsboro | NJ | QZY | Middlesex,NJ | 826,172 | 825,062 | 825,920 | 825,718 | 825,062 |
| Plainview,NY | Plainview | NY | AUL | Nassau,NY | 1,357,534 | 1,356,924 | 1,356,509 | 1,356,989 | 1,356,509 |
| Plano,TX | Plano | TX | E3G | Collin,TX | 1,004,307 | 1,034,730 | 973,977 | 1,004,338 | 973,977 |
| Plano,TX | Plano | TX | P3T | Collin,TX | 1,004,307 | 1,034,730 | 973,977 | 1,004,338 | 973,977 |
| Plano,TX | Plano | TX | PBY | Collin,TX | 1,004,307 | 1,034,730 | 973,977 | 1,004,338 | 973,977 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Plano,TX | Plano | TX | PMP | Collin,TX | 1,004,307 | 1,034,730 | 973,977 | 1,004,338 | 973,977 |
| Plant City,FL | Plant City | FL | PLY | Hillsborough,FL | 1,451,919 | 1,471,968 | 1,422,278 | 1,448,722 | 1,422,278 |
| Plantation,FL | Plantation | FL | PLN | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Plantation,FL | Plantation | FL | PNT | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Pleasant Hill,CA | Pleasant Hill | CA | PHC | Contra Costa,CA | 1,150,519 | 1,153,526 | 1,142,251 | 1,148,765 | 1,142,251 |
| Pleasanton,CA | Pleasanton | CA | CKT | Alameda,CA | 1,666,756 | 1,671,329 | 1,656,754 | 1,664,946 | 1,656,754 |
| Pleasanton,TX | Pleasanton | TX | C4L | Atascosa,TX | 50,322 | 51,153 | 49,528 | 50,334 | 49,528 |
| Plymouth,MA | Plymouth | MA | YZS | Plymouth,MA | 518,422 | 521,202 | 515,303 | 518,309 | 515,303 |
| Pocatello,ID | Pocatello | ID | KZH | Bannock,ID | 86,674 | 87,808 | 85,765 | 86,749 | 85,765 |
| Pomona,CA | Pomona | CA | GJS | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Pomona,NY | Pomona | NY | PNA | Rockland,NY | 325,522 | 325,789 | 324,422 | 325,244 | 324,422 |
| Pompano Beach,FL | Pompano Beach | FL | M2B | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Port Arthur,TX | Port Arthur | TX | SPA | Jefferson,TX | 253,234 | 251,565 | 254,340 | 253,046 | 251,565 |
| Port Charlotte,FL | Port Charlotte | FL | VB | Charlotte,FL | 184,849 | 188,910 | 181,067 | 184,942 | 181,067 |
| Port Jefferson Station,NY | Port Jefferson Statior | NY | PJF | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| Port Orange,FL | Port Orange | FL | L2Y | Volusia,FL | 546,101 | 553,284 | 536,487 | 545,291 | 536,487 |
| Port Saint Lucie,FL | Port Saint Lucie | FL | D4R | St. Lucie,FL | 320,425 | 328,297 | 312,947 | 320,556 | 312,947 |
| Port St Lucie,FL | Port St Lucie | FL | D4Y | St. Lucie,FL | 320,425 | 328,297 | 312,947 | 320,556 | 312,947 |
| Port St Lucie,FL | Port St Lucie | FL | GBY | St. Lucie,FL | 320,425 | 328,297 | 312,947 | 320,556 | 312,947 |
| Port St Lucie,FL | Port St Lucie | FL | MFS | St. Lucie,FL | 320,425 | 328,297 | 312,947 | 320,556 | 312,947 |
| Portland,OR | Portland | OR | E2O | Multnomah,OR | 809,072 | 812,855 | 804,606 | 808,844 | 804,606 |
| Portland,OR | Portland | OR | PYG | Multnomah,OR | 809,072 | 812,855 | 804,606 | 808,844 | 804,606 |
| Portsmouth,NH | Portsmouth | NH | GOB | Rockingham,NH | 308,287 | 309,769 | 306,359 | 308,138 | 306,359 |
| Pottstown,PA | Pottstown | PA | POT | Montgomery,PA | 826,924 | 830,915 | 823,823 | 827,221 | 823,823 |
| Pottstown,PA | Pottstown | PA | YMI | Montgomery,PA | 826,924 | 830,915 | 823,823 | 827,221 | 823,823 |
| Pottsville,PA | Pottsville | PA | GWZ | Schuylkill,PA | 141,815 | 141,359 | 142,674 | 141,949 | 141,359 |
| Poughkeepsie,NY | Poughkeepsie | NY | FNK | Dutchess,NY | 293,939 | 294,218 | 293,754 | 293,970 | 293,754 |
| Poughkeepsie,NY | Poughkeepsie | NY | U4B | Dutchess,NY | 293,939 | 294,218 | 293,754 | 293,970 | 293,754 |
| Poway,CA | Poway | CA | PWA | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| Price,UT | Price | UT | LGG | Carbon,UT | 20,233 | 20,463 | 20,308 | 20,335 | 20,233 |
| Prince Frederick,MD | Prince Frederick | MD | I2T | Calvert,MD | 92,065 | 92,525 | 91,511 | 92,034 | 91,511 |
| Princeton,NJ | Princeton | NJ | PRE | Mercer,NJ | 368,188 | 367,430 | 367,922 | 367,847 | 367,430 |
| Prospect,CT | Prospect | CT | PST | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Prosper,TX | Prosper | TX | K6V | Collin,TX | 1,004,307 | 1,034,730 | 973,977 | 1,004,338 | 973,977 |
| Providence,RI | Providence | RI | QRA | Providence,RI | 636,953 | 638,931 | 635,737 | 637,207 | 635,737 |
| Provincetown,MA | Provincetown | MA | XIE | Barnstable,MA | 213,471 | 212,990 | 213,496 | 213,319 | 212,990 |
| Pueblo,CO | Pueblo | CO | C3C | Pueblo,CO | 167,422 | 168,424 | 165,982 | 167,276 | 165,982 |
| Pueblo,CO | Pueblo | CO | P1S | Pueblo,CO | 167,422 | 168,424 | 165,982 | 167,276 | 165,982 |
| Pueblo,CO | Pueblo | CO | PUB | Pueblo,CO | 167,422 | 168,424 | 165,982 | 167,276 | 165,982 |
| Puyallup,WA | Puyallup | WA | GJJ | Pierce,WA | 893,756 | 904,980 | 877,013 | 891,916 | 877,013 |
| Puyallup,WA | Puyallup | WA | NMN | Pierce,WA | 893,756 | 904,980 | 877,013 | 891,916 | 877,013 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Puyallup,WA | Puyallup | WA | XU5 | Pierce,WA | 893,756 | 904,980 | 877,013 | 891,916 | 877,013 |
| Quakertown,PA | Quakertown | PA | XBW | Bucks,PA | 627,812 | 628,270 | 626,806 | 627,629 | 626,806 |
| Quincy,MA | Quincy | MA | QQU | Norfolk,MA | 703,230 | 706,775 | 700,437 | 703,481 | 700,437 |
| Radford,VA | Radford | VA | MJ3 | Radford City,VA | 18,101 | 18,249 | 17,691 | 18,014 | 17,691 |
| Raleigh,NC | Raleigh | NC | AK3 | Wake,NC | 1,091,273 | 1,111,761 | 1,069,079 | 1,090,704 | 1,069,079 |
| Raleigh,NC | Raleigh | NC | F6A | Wake,NC | 1,091,273 | 1,111,761 | 1,069,079 | 1,090,704 | 1,069,079 |
| Raleigh,NC | Raleigh | NC | PS1 | Wake,NC | 1,091,273 | 1,111,761 | 1,069,079 | 1,090,704 | 1,069,079 |
| Ramsey,NJ | Ramsey | NJ | RAM | Bergen,NJ | 932,816 | 932,202 | 930,390 | 931,803 | 930,390 |
| Rancho Cucamonga,CA | Rancho Cucamonga | CA | CYW | San Bernardino,CA | 2,166,753 | 2,180,085 | 2,149,031 | 2,165,290 | 2,149,031 |
| Rancho Mirage,CA | Rancho Mirage | CA | DEW | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Rancho Santa Margarita,C | Rancho Santa Margai | CA | EGZ | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Randolph,NJ | Randolph | NJ | RAO | Morris,NJ | 493,070 | 491,845 | 493,379 | 492,765 | 491,845 |
| Reading,PA | Reading | PA | GXQ | Berks,PA | 420,529 | 421,164 | 418,025 | 419,906 | 418,025 |
| Reading,PA | Reading | PA | GXU | Berks,PA | 420,529 | 421,164 | 418,025 | 419,906 | 418,025 |
| Reading,PA | Reading | PA | XRU | Berks,PA | 420,529 | 421,164 | 418,025 | 419,906 | 418,025 |
| Red Bank,NJ | Red Bank | NJ | RDB | Monmouth,NJ | 620,459 | 618,795 | 621,659 | 620,304 | 618,795 |
| Red Bluff,CA | Red Bluff | CA | DIH | Tehama,CA | 64,018 | 65,084 | 63,912 | 64,338 | 63,912 |
| Redding,CA | Redding | CA | CW3 | Shasta,CA | 179,709 | 180,080 | 179,212 | 179,667 | 179,212 |
| Redding,CA | Redding | CA | Z1J | Shasta,CA | 179,709 | 180,080 | 179,212 | 179,667 | 179,212 |
| Redlands,CA | Redlands | CA | WU5 | San Bernardino,CA | 2,166,753 | 2,180,085 | 2,149,031 | 2,165,290 | 2,149,031 |
| Redondo Beach,CA | Redondo Beach | CA | CVX | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Redwood City,CA | Redwood City | CA | Z1K | San Mateo,CA | 768,681 | 766,573 | 767,423 | 767,559 | 766,573 |
| REEDLEY,CA | REEDLEY | CA | HF1 | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |
| Reidsville,NC | Reidsville | NC | YJ4 | Rockingham,NC | 90,617 | 91,010 | 91,077 | 90,901 | 90,617 |
| Reisterstown,MD | Reisterstown | MD | LJF | Baltimore,MD | 827,859 | 827,370 | 828,018 | 827,749 | 827,370 |
| Reno,NV | Reno | NV | QMX | Washoe,NV | 464,354 | 471,519 | 456,936 | 464,270 | 456,936 |
| Reno,NV | Reno | NV | QQC | Washoe,NV | 464,354 | 471,519 | 456,936 | 464,270 | 456,936 |
| Reno,NV | Reno | NV | QRL | Washoe,NV | 464,354 | 471,519 | 456,936 | 464,270 | 456,936 |
| Renton,WA | Renton | WA | HDR | King,WA | 2,228,364 | 2,252,782 | 2,195,502 | 2,225,549 | 2,195,502 |
| Reston,VA | Reston | VA | I2W | Fairfax,VA | 1,148,463 | 1,147,532 | 1,145,862 | 1,147,286 | 1,145,862 |
| Richardson,TX | Richardson | TX | B2X | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Richardson,TX | Richardson | TX | P3J | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Richboro,PA | Richboro | PA | FVC | Bucks,PA | 627,812 | 628,270 | 626,806 | 627,629 | 626,806 |
| Richmond,TX | Richmond | TX | RMN | Fort Bend,TX | 788,081 | 811,688 | 765,394 | 788,388 | 765,394 |
| Richmond,TX | Richmond | TX | W5W | Fort Bend,TX | 788,081 | 811,688 | 765,394 | 788,388 | 765,394 |
| Richmond,VA | Richmond | VA | G3U | Richmond,VA | 8,970 | 9,023 | 226,622 | 81,538 | 8,970 |
| Richmond,VA | Richmond | VA | XDS | Richmond,VA | 8,970 | 9,023 | 226,622 | 81,538 | 8,970 |
| Ridgecrest,CA | Ridgecrest | CA | EFJ | Kern,CA | 893,758 | 900,202 | 887,641 | 893,867 | 887,641 |
| Ridgefield,CT | Ridgefield | CT | IGT | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Ridgewood,NJ | Ridgewood | NJ | RGE | Bergen,NJ | 932,816 | 932,202 | 930,390 | 931,803 | 930,390 |
| Rio Grande,NJ | Rio Grande | NJ | RGD | Cape May,NJ | 92,446 | 92,039 | 93,086 | 92,524 | 92,039 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Rio Rancho,NM | Rio Rancho | NM | XFK | Sandoval,NM | 145,096 | 146,748 | 142,704 | 144,849 | 142,704 |
| Riverdale,GA | Riverdale | GA | RU | Clayton,GA | 289,197 | 292,256 | 283,538 | 288,330 | 283,538 |
| Riverhead,NY | Riverhead | NY | J5D | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| Riverside,CA | Riverside | CA | DFG | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Riverside,CA | Riverside | CA | DFI | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Riverside,CA | Riverside | CA | DGT | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Riverside,CA | Riverside | CA | DKY | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Riverside,CA | Riverside | CA | H3W | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Riverside,CA | Riverside | CA | PE6 | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Riverview,FL | Riverview | FL | XWX | Hillsborough,FL | 1,451,919 | 1,471,968 | 1,422,278 | 1,448,722 | 1,422,278 |
| Riverview,MI | Riverview | MI | URW | Wayne,MI | 1,754,453 | 1,749,343 | 1,757,299 | 1,753,698 | 1,749,343 |
| Roanoke,VA | Roanoke | VA | HJ4 | Roanoke,VA | 94,086 | 94,186 | 99,229 | 95,834 | 94,086 |
| Roanoke,VA | Roanoke | VA | HK3 | Roanoke,VA | 94,086 | 94,186 | 99,229 | 95,834 | 94,086 |
| Roanoke,VA | Roanoke | VA | HK4 | Roanoke,VA | 94,086 | 94,186 | 99,229 | 95,834 | 94,086 |
| Roanoke,VA | Roanoke | VA | SJ7 | Roanoke,VA | 94,086 | 94,186 | 99,229 | 95,834 | 94,086 |
| Rochester Hills,MI | Rochester Hills | MI | FMJ | Oakland,MI | 1,256,694 | 1,257,584 | 1,253,185 | 1,255,821 | 1,253,185 |
| Rock Hill,SC | Rock Hill | SC | EK4 | York,SC | 273,782 | 280,979 | 265,872 | 273,544 | 265,872 |
| Rockford,IL | Rockford | IL | HF4 | Winnebago,IL | 283,630 | 282,572 | 284,819 | 283,674 | 282,572 |
| Rockford,IL | Rockford | IL | XDB | Winnebago,IL | 283,630 | 282,572 | 284,819 | 283,674 | 282,572 |
| Rockledge,FL | Rockledge | FL | VNH | Brevard,FL | 595,203 | 601,942 | 585,507 | 594,217 | 585,507 |
| Rocklin,CA | Rocklin | CA | Z1L | Placer,CA | 392,330 | 398,329 | 385,512 | 392,057 | 385,512 |
| Rockport,TX | Rockport | TX | DIR | Aransas,TX | 23,446 | 23,510 | 24,462 | 23,806 | 23,446 |
| Rockville,MD | Rockville | MD | QRO | Montgomery,MD | 1,048,478 | 1,050,688 | 1,043,530 | 1,047,565 | 1,043,530 |
| Rockville,MD | Rockville | MD | RKV | Montgomery,MD | 1,048,478 | 1,050,688 | 1,043,530 | 1,047,565 | 1,043,530 |
| Rockville Centre,NY | Rockville Centre | NY | RKE | Nassau,NY | 1,357,534 | 1,356,924 | 1,356,509 | 1,356,989 | 1,356,509 |
| Rockwall,TX | Rockwall | TX | NQN | Rockwall,TX | 100,546 | 104,915 | 97,175 | 100,879 | 97,175 |
| Rockwall,TX | Rockwall | TX | P3D | Rockwall,TX | 100,546 | 104,915 | 97,175 | 100,879 | 97,175 |
| Rogersville,TN | Rogersville | TN | FK6 | Hawkins,TN | 56,713 | 56,786 | 56,611 | 56,703 | 56,611 |
| Rolla,MO | Rolla | MO | ROL | Phelps,MO | 44,551 | 44,573 | 44,630 | 44,585 | 44,551 |
| Rolling Hills Estates,CA | Rolling Hills Estates | CA | U1R | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Rome,GA | Rome | GA | FQC | Floyd,GA | 97,964 | 98,498 | 97,369 | 97,944 | 97,369 |
| Rome,NY | Rome | NY | XC8 | Oneida,NY | 229,474 | 228,671 | 229,959 | 229,368 | 228,671 |
| Roseburg,OR | Roseburg | OR | W1E | Douglas,OR | 110,114 | 110,980 | 109,114 | 110,069 | 109,114 |
| Roselle,NJ | Roselle | NJ | HIW | Union,NJ | 556,402 | 556,341 | 554,033 | 555,592 | 554,033 |
| Roseville,CA | Roseville | CA | DIU | Placer,CA | 392,330 | 398,329 | 385,512 | 392,057 | 385,512 |
| ROSEVILLE,CA | ROSEVILLE | CA | NE2 | Placer,CA | 392,330 | 398,329 | 385,512 | 392,057 | 385,512 |
| ROSEVILLE,CA | ROSEVILLE | CA | RVL | Placer,CA | 392,330 | 398,329 | 385,512 | 392,057 | 385,512 |
| Round Lake Beach,IL | Round Lake Beach | IL | A6O | Lake,IL | 699,587 | 696,535 | 701,473 | 699,198 | 696,535 |
| Round Rock,TX | Round Rock | TX | R1E | Williamson,TX | 566,463 | 590,551 | 547,604 | 568,206 | 547,604 |
| Rowlett,TX | Rowlett | TX | B2Y | Dallas,TX | 2,629,350 | 2,635,516 | 2,606,868 | 2,623,911 | 2,606,868 |
| Royal Palm Beach,FL | Royal Palm Beach | FL | WPB | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Royersford,PA | Royersford | PA | XZR | Montgomery,PA | 826,924 | 830,915 | 823,823 | 827,221 | 823,823 |
| Ruskin,FL | Ruskin | FL | SCY | Hillsborough,FL | 1,451,919 | 1,471,968 | 1,422,278 | 1,448,722 | 1,422,278 |
| Rutherford,NJ | Rutherford | NJ | G2D | Bergen,NJ | 932,816 | 932,202 | 930,390 | 931,803 | 930,390 |
| Rutherford,NJ | Rutherford | NJ | RPS | Bergen,NJ | 932,816 | 932,202 | 930,390 | 931,803 | 930,390 |
| Rutherford College,NC | Rutherford College | NC | FL1 | Burke,NC | 90,405 | 90,485 | 89,968 | 90,286 | 89,968 |
| S. Attleboro,MA | S. Attleboro | MA | VMS | Bristol,MA | 564,092 | 565,217 | 561,037 | 563,449 | 561,037 |
| S. Weymouth,MA | S. Weymouth | MA | WYM | Norfolk,MA | 703,230 | 706,775 | 700,437 | 703,481 | 700,437 |
| Sacramento,CA | Sacramento | CA | DJD | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Sacramento,CA | Sacramento | CA | DJI | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Sacramento,CA | Sacramento | CA | DJX | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Sacramento,CA | Sacramento | CA | G2L | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Sacramento,CA | Sacramento | CA | J5K | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Sacramento,CA | Sacramento | CA | JST | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Sacramento,CA | Sacramento | CA | K4S | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Sacramento,CA | Sacramento | CA | RE2 | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| SACRAMENTO,CA | SACRAMENTO | CA | RE3 | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Sacramento,CA | Sacramento | CA | S5X | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Sacramento,CA | Sacramento | CA | VGK | Sacramento,CA | 1,538,746 | 1,552,058 | 1,524,553 | 1,538,452 | 1,524,553 |
| Saginaw,MI | Saginaw | MI | A6G | Saginaw,MI | 190,791 | 190,539 | 191,821 | 191,050 | 190,539 |
| Saginaw,MI | Saginaw | MI | SGU | Saginaw,MI | 190,791 | 190,539 | 191,821 | 191,050 | 190,539 |
| Saginaw,MI | Saginaw | MI | XU6 | Saginaw,MI | 190,791 | 190,539 | 191,821 | 191,050 | 190,539 |
| Saint Charles,MO | Saint Charles | MO | UH | St. Charles,MO | 398,780 | 402,022 | 394,290 | 398,364 | 394,290 |
| Saint Cloud,FL | Saint Cloud | FL | IAF | Osceola,FL | 368,456 | 375,751 | 351,955 | 365,387 | 351,955 |
| Saint Cloud,FL | Saint Cloud | FL | LK7 | Osceola,FL | 368,456 | 375,751 | 351,955 | 365,387 | 351,955 |
| Saint Joseph,MI | Saint Joseph | MI | SJG | Berrien,MI | 153,790 | 153,401 | 154,133 | 153,775 | 153,401 |
| Saint Joseph,MO | Saint Joseph | MO | GXZ | Buchanan,MO | 88,163 | 87,364 | 88,460 | 87,996 | 87,364 |
| Saint Louis,MO | Saint Louis | MO | BA | St. Louis,MO | 995,219 | 994,205 | 996,919 | 995,448 | 994,205 |
| Saint Louis,MO | Saint Louis | MO | LD | St. Louis City,MO | 303,419 | 300,576 | 308,174 | 304,056 | 300,576 |
| Saint Louis,MO | Saint Louis | MO | LM | St. Louis,MO | 995,219 | 994,205 | 996,919 | 995,448 | 994,205 |
| Saint Louis,MO | Saint Louis | MO | MDR | St. Louis City,MO | 303,419 | 300,576 | 308,174 | 304,056 | 300,576 |
| Saint Louis,MO | Saint Louis | MO | UC | St. Louis,MO | 995,219 | 994,205 | 996,919 | 995,448 | 994,205 |
| Saint Marys,GA | Saint Marys | GA | LJ4 | Camden,GA | 53,651 | 54,666 | 53,231 | 53,849 | 53,231 |
| Saint Peters,MO | Saint Peters | MO | SPT | St. Charles,MO | 398,780 | 402,022 | 394,290 | 398,364 | 394,290 |
| Salem,NH | Salem | NH | V5V | Rockingham,NH | 308,287 | 309,769 | 306,359 | 308,138 | 306,359 |
| Salem,OH | Salem | OH | U6A | Columbiana,OH | 102,473 | 101,883 | 103,190 | 102,515 | 101,883 |
| Salem,OR | Salem | OR | F2V | Marion,OR | 345,412 | 347,818 | 339,641 | 344,290 | 339,641 |
| Salem,VA | Salem | VA | LGL | Salem City,VA | 25,293 | 25,301 | 25,317 | 25,304 | 25,293 |
| Salinas,CA | Salinas | CA | BW9 | Monterey,CA | 433,950 | 434,061 | 433,410 | 433,807 | 433,410 |
| Salinas,CA | Salinas | CA | DQQ | Monterey,CA | 433,950 | 434,061 | 433,410 | 433,807 | 433,410 |
| Salisbury,MD | Salisbury | MD | SBX | Wicomico,MD | 103,044 | 103,609 | 102,539 | 103,064 | 102,539 |
| Salisbury,NC | Salisbury | NC | DU1 | Rowan,NC | 141,128 | 142,088 | 140,296 | 141,171 | 140,296 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| San Antonio,TX | San Antonio | TX | BDR | Bexar,TX | 1,981,187 | 2,003,554 | 1,952,843 | 1,979,195 | 1,952,843 |
| San Antonio,TX | San Antonio | TX | JBA | Bexar,TX | 1,981,187 | 2,003,554 | 1,952,843 | 1,979,195 | 1,952,843 |
| San Antonio,TX | San Antonio | TX | JSY | Bexar,TX | 1,981,187 | 2,003,554 | 1,952,843 | 1,979,195 | 1,952,843 |
| San Antonio,TX | San Antonio | TX | K6Z | Bexar,TX | 1,981,187 | 2,003,554 | 1,952,843 | 1,979,195 | 1,952,843 |
| San Antonio,TX | San Antonio | TX | LYD | Bexar,TX | 1,981,187 | 2,003,554 | 1,952,843 | 1,979,195 | 1,952,843 |
| San Antonio,TX | San Antonio | TX | MTR | Bexar,TX | 1,981,187 | 2,003,554 | 1,952,843 | 1,979,195 | 1,952,843 |
| San Antonio,TX | San Antonio | TX | NEP | Bexar,TX | 1,981,187 | 2,003,554 | 1,952,843 | 1,979,195 | 1,952,843 |
| San Antonio,TX | San Antonio | TX | OBR | Bexar,TX | 1,981,187 | 2,003,554 | 1,952,843 | 1,979,195 | 1,952,843 |
| San Antonio,TX | San Antonio | TX | QMC | Bexar,TX | 1,981,187 | 2,003,554 | 1,952,843 | 1,979,195 | 1,952,843 |
| San Antonio,TX | San Antonio | TX | SEO | Bexar,TX | 1,981,187 | 2,003,554 | 1,952,843 | 1,979,195 | 1,952,843 |
| San Antonio,TX | San Antonio | TX | THC | Bexar,TX | 1,981,187 | 2,003,554 | 1,952,843 | 1,979,195 | 1,952,843 |
| San Antonio,TX | San Antonio | TX | W5V | Bexar,TX | 1,981,187 | 2,003,554 | 1,952,843 | 1,979,195 | 1,952,843 |
| San Antonio,TX | San Antonio | TX | YD7 | Bexar,TX | 1,981,187 | 2,003,554 | 1,952,843 | 1,979,195 | 1,952,843 |
| San Antonio,TX | San Antonio | TX | Z1G | Bexar,TX | 1,981,187 | 2,003,554 | 1,952,843 | 1,979,195 | 1,952,843 |
| San Benito,TX | San Benito | TX | V5E | Cameron,TX | 422,139 | 423,163 | 421,666 | 422,323 | 421,666 |
| San Bernardino,CA | San Bernardino | CA | DFE | San Bernardino,CA | 2,166,753 | 2,180,085 | 2,149,031 | 2,165,290 | 2,149,031 |
| San Carlos,CA | San Carlos | CA | DMQ | San Mateo,CA | 768,681 | 766,573 | 767,423 | 767,559 | 766,573 |
| San Clemente,CA | San Clemente | CA | SCT | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| San Clemente,CA | San Clemente | CA | VV2 | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| San Diego,CA | San Diego | CA | ALV | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| San Diego,CA | San Diego | CA | CRD | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| San Diego,CA | San Diego | CA | INM | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| San Diego,CA | San Diego | CA | SDO | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| San Diego,CA | San Diego | CA | XLN | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| San Diego,CA | San Diego | CA | XNS | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| San Dimas,CA | San Dimas | CA | CZW | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| San Francisco,CA | San Francisco | CA | CKX | San Francisco,CA | 880,696 | 881,549 | 874,961 | 879,069 | 874,961 |
| San Francisco,CA | San Francisco | CA | CKZ | San Francisco,CA | 880,696 | 881,549 | 874,961 | 879,069 | 874,961 |
| San Francisco,CA | San Francisco | CA | CW1 | San Francisco,CA | 880,696 | 881,549 | 874,961 | 879,069 | 874,961 |
| San Francisco,CA | San Francisco | CA | DMT | San Francisco,CA | 880,696 | 881,549 | 874,961 | 879,069 | 874,961 |
| San Francisco,CA | San Francisco | CA | HKS | San Francisco,CA | 880,696 | 881,549 | 874,961 | 879,069 | 874,961 |
| San Francisco,CA | San Francisco | CA | J4C | San Francisco,CA | 880,696 | 881,549 | 874,961 | 879,069 | 874,961 |
| SAN FRANCISCO,CA | SAN FRANCISCO | CA | SG8 | San Francisco,CA | 880,696 | 881,549 | 874,961 | 879,069 | 874,961 |
| San Francisco,CA | San Francisco | CA | VXB | San Francisco,CA | 880,696 | 881,549 | 874,961 | 879,069 | 874,961 |
| San Gabriel,CA | San Gabriel | CA | CZZ | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| San Jose,CA | San Jose | CA | COX | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| San Jose,CA | San Jose | CA | CPU | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| San Jose,CA | San Jose | CA | D2I | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| San Jose,CA | San Jose | CA | DMU | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| San Jose,CA | San Jose | CA | DMX | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| SAN JOSE,CA | SAN JOSE | CA | DNF | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |

Exhibit O

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| San Jose,CA | San Jose | CA | DOF | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| San Jose,CA | San Jose | CA | DRJ | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| San Jose,CA | San Jose | CA | X2D | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| SAN LEANDRO,CA | SAN LEANDRO | CA | DOQ | Alameda,CA | 1,666,756 | 1,671,329 | 1,656,754 | 1,664,946 | 1,656,754 |
| San Mateo,CA | San Mateo | CA | EZA | San Mateo,CA | 768,681 | 766,573 | 767,423 | 767,559 | 766,573 |
| SAN PABLO,CA | SAN PABLO | CA | DNG | Contra Costa,CA | 1,150,519 | 1,153,526 | 1,142,251 | 1,148,765 | 1,142,251 |
| San Pedro,CA | San Pedro | CA | CXN | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| San Rafael,CA | San Rafael | CA | DKC | Marin,CA | 259,662 | 258,826 | 259,943 | 259,477 | 258,826 |
| San Rafael,CA | San Rafael | CA | Q1Z | Marin,CA | 259,662 | 258,826 | 259,943 | 259,477 | 258,826 |
| San Ramon,CA | San Ramon | CA | U2B | Contra Costa,CA | 1,150,519 | 1,153,526 | 1,142,251 | 1,148,765 | 1,142,251 |
| San Ramon,CA | San Ramon | CA | U2C | Contra Costa,CA | 1,150,519 | 1,153,526 | 1,142,251 | 1,148,765 | 1,142,251 |
| Sandusky,OH | Sandusky | OH | UXV | Erie,OH | 74,513 | 74,266 | 74,780 | 74,520 | 74,266 |
| Sanford,FL | Sanford | FL | XRM | Seminole,FL | 468,122 | 471,826 | 461,402 | 467,117 | 461,402 |
| Sanger,CA | Sanger | CA | L2D | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |
| Santa Ana,CA | Santa Ana | CA | AG | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Santa Ana,CA | Santa Ana | CA | XMG | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Santa Barbara,CA | Santa Barbara | CA | YPF | Santa Barbara,CA | 445,780 | 446,499 | 444,829 | 445,703 | 444,829 |
| Santa Clarita,CA | Santa Clarita | CA | CZB | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Santa Clarita,CA | Santa Clarita | CA | I4I | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Santa Cruz,CA | Santa Cruz | CA | DOS | Santa Cruz,CA | 273,841 | 273,213 | 273,962 | 273,672 | 273,213 |
| Santa Cruz,CA | Santa Cruz | CA | W3N | Santa Cruz,CA | 273,841 | 273,213 | 273,962 | 273,672 | 273,213 |
| Santa Fe,NM | Santa Fe | NM | XXY | Santa Fe,NM | 149,761 | 150,358 | 149,293 | 149,804 | 149,293 |
| Santa Maria,CA | Santa Maria | CA | CTJ | Santa Barbara,CA | 445,780 | 446,499 | 444,829 | 445,703 | 444,829 |
| Santa Monica,CA | Santa Monica | CA | CWF | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Santa Paula,CA | Santa Paula | CA | DCU | Ventura,CA | 848,142 | 846,006 | 847,263 | 847,137 | 846,006 |
| Santa Rosa,CA | Santa Rosa | CA | DKH | Sonoma,CA | 498,643 | 494,336 | 499,772 | 497,584 | 494,336 |
| Santee,CA | Santee | CA | I4O | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| Sarasota,FL | Sarasota | FL | FBV | Sarasota,FL | 426,329 | 433,742 | 419,496 | 426,522 | 419,496 |
| Sarasota,FL | Sarasota | FL | GDZ | Sarasota,FL | 426,329 | 433,742 | 419,496 | 426,522 | 419,496 |
| Sarasota,FL | Sarasota | FL | UVK | Sarasota,FL | 426,329 | 433,742 | 419,496 | 426,522 | 419,496 |
| Saugerties,NY | Saugerties | NY | FQW | Ulster,NY | 178,418 | 177,573 | 178,665 | 178,219 | 177,573 |
| Savannah,GA | Savannah | GA | D6E | Chatham,GA | 289,166 | 289,430 | 288,496 | 289,031 | 288,496 |
| Schaumburg,IL | Schaumburg | IL | RAU | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Schenectady,NY | Schenectady | NY | AY8 | Schenectady,NY | 155,079 | 155,299 | 154,859 | 155,079 | 154,859 |
| Schertz,TX | Schertz | TX | D6Q | Guadalupe,TX | 163,276 | 166,847 | 158,966 | 163,030 | 158,966 |
| Scotts Valley,CA | Scotts Valley | CA | P3V | Santa Cruz,CA | 273,841 | 273,213 | 273,962 | 273,672 | 273,213 |
| Scranton,PA | Scranton | PA | KSM | Lackawanna,PA | 210,269 | 209,674 | 210,652 | 210,198 | 209,674 |
| Seaford,DE | Seaford | DE | SFD | Sussex,DE | 229,389 | 234,225 | 224,384 | 229,333 | 224,384 |
| Seaford,NY | Seaford | NY | EHQ | Nassau,NY | 1,357,534 | 1,356,924 | 1,356,509 | 1,356,989 | 1,356,509 |
| Seal Beach,CA | Seal Beach | CA | VV3 | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Seattle,WA | Seattle | WA | NRS | King,WA | 2,228,364 | 2,252,782 | 2,195,502 | 2,225,549 | 2,195,502 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Sebastian,FL | Sebastian | FL | VJP | Indian River,FL | 157,187 | 159,923 | 153,989 | 157,033 | 153,989 |
| Sebastopol,CA | Sebastopol | CA | DKI | Sonoma,CA | 498,643 | 494,336 | 499,772 | 497,584 | 494,336 |
| Sebring,FL | Sebring | FL | SBN | Highlands,FL | 104,933 | 106,221 | 103,437 | 104,864 | 103,437 |
| Sebring,FL | Sebring | FL | XRH | Highlands,FL | 104,933 | 106,221 | 103,437 | 104,864 | 103,437 |
| Seguin,TX | Seguin | TX | UO3 | Guadalupe,TX | 163,276 | 166,847 | 158,966 | 163,030 | 158,966 |
| Selden,NY | Selden | NY | VZ | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| Selma,CA | Selma | CA | VGV | Fresno,CA | 991,950 | 999,101 | 984,521 | 991,857 | 984,521 |
| Seminole,FL | Seminole | FL | SMN | Pinellas,FL | 973,058 | 974,996 | 964,666 | 970,907 | 964,666 |
| Seven Fields,PA | Seven Fields | PA | IE8 | Butler,PA | 187,638 | 187,853 | 186,899 | 187,463 | 186,899 |
| Sewell,NJ | Sewell | NJ | BDJ | Gloucester,NJ | 291,525 | 291,636 | 291,165 | 291,442 | 291,165 |
| Sharon,PA | Sharon | PA | GC4 | Mercer,PA | 110,471 | 109,424 | 111,518 | 110,471 | 109,424 |
| Shasta Lake,CA | Shasta Lake | CA | DZR | Shasta,CA | 179,709 | 180,080 | 179,212 | 179,667 | 179,212 |
| Shawnee Mission,KS | Shawnee Mission | KS | XZW | Johnson,KS | 598,127 | 602,401 | 591,506 | 597,345 | 591,506 |
| Shelton,CT | Shelton | CT | SXH | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Sherman,TX | Sherman | TX | C4M | Grayson,TX | 133,787 | 136,212 | 131,014 | 133,671 | 131,014 |
| Sherman Oaks,CA | Sherman Oaks | CA | O4O | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Sherman Oaks,CA | Sherman Oaks | CA | SHO | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Shillington,PA | Shillington | PA | GXS | Berks,PA | 420,529 | 421,164 | 418,025 | 419,906 | 418,025 |
| Shiloh,IL | Shiloh | IL | QFN | St. Clair,IL | 261,360 | 259,686 | 262,338 | 261,128 | 259,686 |
| Shoreline,WA | Shoreline | WA | I5B | King,WA | 2,228,364 | 2,252,782 | 2,195,502 | 2,225,549 | 2,195,502 |
| Shreveport,LA | Shreveport | LA | LP | Caddo Parish,LA | 242,833 | 240,204 | 245,831 | 242,956 | 240,204 |
| Shrewsbury,MA | Shrewsbury | MA | KC4 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Shrewsbury,MA | Shrewsbury | MA | KC5 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Sicklerville,NJ | Sicklerville | NJ | KSP | Camden,NJ | 506,353 | 506,471 | 506,738 | 506,521 | 506,353 |
| Sicklerville,NJ | Sicklerville | NJ | ZIO | Camden,NJ | 506,353 | 506,471 | 506,738 | 506,521 | 506,353 |
| Silver Spring,MD | Silver Spring | MD | LCW | Montgomery,MD | 1,048,478 | 1,050,688 | 1,043,530 | 1,047,565 | 1,043,530 |
| Simi Valley,CA | Simi Valley | CA | SIO | Ventura,CA | 848,142 | 846,006 | 847,263 | 847,137 | 846,006 |
| Simi Valley,CA | Simi Valley | CA | ZA3 | Ventura,CA | 848,142 | 846,006 | 847,263 | 847,137 | 846,006 |
| Simsbury,CT | Simsbury | CT | SMU | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Skokie,IL | Skokie | IL | SKO | Cook,IL | 5,171,960 | 5,150,233 | 5,198,275 | 5,173,489 | 5,150,233 |
| Slidell,LA | Slidell | LA | M5J | St. Tammany Parish,LA | 258,035 | 260,419 | 255,155 | 257,870 | 255,155 |
| Smithtown,NY | Smithtown | NY | SME | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| Smyrna,TN | Smyrna | TN | S6S | Rutherford,TN | 324,647 | 332,285 | 315,815 | 324,249 | 315,815 |
| Snellville,GA | Snellville | GA | GSN | Gwinnett,GA | 927,337 | 936,250 | 915,046 | 926,211 | 915,046 |
| Solon,OH | Solon | OH | SLO | Cuyahoga,OH | 1,241,718 | 1,235,072 | 1,247,451 | 1,241,414 | 1,235,072 |
| Solvang,CA | Solvang | CA | CTQ | Santa Barbara,CA | 445,780 | 446,499 | 444,829 | 445,703 | 444,829 |
| Somerset,NJ | Somerset | NJ | SOM | Somerset,NJ | 330,181 | 328,934 | 329,838 | 329,651 | 328,934 |
| Somersworth,NH | Somersworth | NH | U1K | Strafford,NH | 129,797 | 130,633 | 129,124 | 129,851 | 129,124 |
| Somerville,MA | Somerville | MA | NMV | Middlesex,MA | 1,608,470 | 1,611,699 | 1,600,842 | 1,607,004 | 1,600,842 |
| SONOMA,CA | SONOMA | CA | YLR | Sonoma,CA | 498,643 | 494,336 | 499,772 | 497,584 | 494,336 |
| SONORA,CA | SONORA | CA | HSQ | Tuolumne,CA | 54,387 | 54,478 | 54,045 | 54,303 | 54,045 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Souderton,PA | Souderton | PA | JGT | Montgomery,PA | 826,924 | 830,915 | 823,823 | 827,221 | 823,823 |
| South Bend,IN | South Bend | IN | L2E | St. Joseph,IN | 270,972 | 271,826 | 270,216 | 271,005 | 270,216 |
| South Charleston,WV | South Charleston | WV | ZVI | Kanawha,WV | 180,410 | 178,124 | 183,279 | 180,604 | 178,124 |
| South Pasadena,FL | South Pasadena | FL | FSP | Pinellas,FL | 973,058 | 974,996 | 964,666 | 970,907 | 964,666 |
| South Plainfield,NJ | South Plainfield | NJ | EDN | Middlesex,NJ | 826,172 | 825,062 | 825,920 | 825,718 | 825,062 |
| South Windsor,CT | South Windsor | CT | IWI | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Southbury,CT | Southbury | CT | BPH | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Southbury,CT | Southbury | CT | TNJ | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Southbury,CT | Southbury | CT | TNJ | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Southington,CT | Southington | CT | U3I | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Southington,CT | Southington | CT | ZM3 | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Southlake,TX | Southlake | TX | P3K | Tarrant,TX | 2,081,446 | 2,102,515 | 2,049,770 | 2,077,910 | 2,049,770 |
| Sparks,NV | Sparks | NV | KZU | Washoe,NV | 464,354 | 471,519 | 456,936 | 464,270 | 456,936 |
| Spencer,MA | Spencer | MA | KC8 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Spokane,WA | Spokane | WA | FCQ | Spokane,WA | 513,603 | 522,798 | 505,505 | 513,969 | 505,505 |
| Spokane Valley,WA | Spokane Valley | WA | F4G | Spokane,WA | 513,603 | 522,798 | 505,505 | 513,969 | 505,505 |
| Spring Branch,TX | Spring Branch | TX | C4N | Comal,TX | 148,141 | 156,209 | 141,642 | 148,664 | 141,642 |
| Spring Hill,FL | Spring Hill | FL | D4Z | Hernando,FL | 190,582 | 193,920 | 186,313 | 190,272 | 186,313 |
| Spring Hill,FL | Spring Hill | FL | SPR | Hernando,FL | 190,582 | 193,920 | 186,313 | 190,272 | 186,313 |
| Spring Hill,FL | Spring Hill | FL | XPJ | Hernando,FL | 190,582 | 193,920 | 186,313 | 190,272 | 186,313 |
| Springfield,IL | Springfield | IL | ISP | Sangamon,IL | 195,639 | 194,672 | 196,861 | 195,724 | 194,672 |
| Springfield,MA | Springfield | MA | T5X | Hampden,MA | 468,388 | 466,372 | 467,871 | 467,544 | 466,372 |
| Springfield,MO | Springfield | MO | I1H | Greene,MO | 291,054 | 293,086 | 289,756 | 291,299 | 289,756 |
| Springfield,OR | Springfield | OR | X1B | Lane,OR | 378,549 | 382,067 | 373,340 | 377,985 | 373,340 |
| Springfield,OR | Springfield | OR | X1C | Lane,OR | 378,549 | 382,067 | 373,340 | 377,985 | 373,340 |
| Springfield,PA | Springfield | PA | SPG | Delaware,PA | 565,231 | 566,747 | 564,554 | 565,511 | 564,554 |
| Springville,NY | Springville | NY | E5Y | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| St Augustine,FL | St Augustine | FL | AGT | St. Johns,FL | 253,814 | 264,672 | 244,674 | 254,387 | 244,674 |
| St Augustine,FL | St Augustine | FL | YAP | St. Johns,FL | 253,814 | 264,672 | 244,674 | 254,387 | 244,674 |
| St Petersburg,FL | St Petersburg | FL | FIE | Pinellas,FL | 973,058 | 974,996 | 964,666 | 970,907 | 964,666 |
| St Petersburg,FL | St Petersburg | FL | SPJ | Pinellas,FL | 973,058 | 974,996 | 964,666 | 970,907 | 964,666 |
| St Petersburg,FL | St Petersburg | FL | XTF | Pinellas,FL | 973,058 | 974,996 | 964,666 | 970,907 | 964,666 |
| Stafford,VA | Stafford | VA | RMX | Stafford,VA | 149,824 | 152,882 | 146,773 | 149,826 | 146,773 |
| Stamford,CT | Stamford | CT | SFE | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Stamford,CT | Stamford | CT | SMV | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| State College,PA | State College | PA | Z4P | Centre,PA | 162,601 | 162,385 | 161,960 | 162,315 | 161,960 |
| Staten Island,NY | Staten Island | NY | AAD | Richmond,NY | 476,260 | 476,143 | 474,893 | 475,765 | 474,893 |
| Staten Island,NY | Staten Island | NY | HYL | Richmond,NY | 476,260 | 476,143 | 474,893 | 475,765 | 474,893 |
| Staten Island,NY | Staten Island | NY | KKL | Richmond,NY | 476,260 | 476,143 | 474,893 | 475,765 | 474,893 |
| Staten Island,NY | Staten Island | NY | SIB | Richmond,NY | 476,260 | 476,143 | 474,893 | 475,765 | 474,893 |
| Staten Island,NY | Staten Island | NY | SIE | Richmond,NY | 476,260 | 476,143 | 474,893 | 475,765 | 474,893 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Staten Island,NY | Staten Island | NY | SNU | Richmond,NY | 476,260 | 476,143 | 474,893 | 475,765 | 474,893 |
| Staten Island,NY | Staten Island | NY | TNV | Richmond,NY | 476,260 | 476,143 | 474,893 | 475,765 | 474,893 |
| Staten Island,NY | Staten Island | NY | VIC | Richmond,NY | 476,260 | 476,143 | 474,893 | 475,765 | 474,893 |
| Staten Island,NY | Staten Island | NY | XLM | Richmond,NY | 476,260 | 476,143 | 474,893 | 475,765 | 474,893 |
| Statesboro,GA | Statesboro | GA | LJ2 | Bulloch,GA | 77,242 | 79,608 | 76,120 | 77,657 | 76,120 |
| Statesville,NC | Statesville | NC | Y2U | Iredell,NC | 178,332 | 181,806 | 175,538 | 178,559 | 175,538 |
| Sterling,VA | Sterling | VA | G3N | Loudoun,VA | 405,522 | 413,538 | 395,134 | 404,731 | 395,134 |
| Stockbridge,GA | Stockbridge | GA | STB | Henry,GA | 229,728 | 234,561 | 225,356 | 229,882 | 225,356 |
| Stockton,CA | Stockton | CA | CW4 | San Joaquin,CA | 752,491 | 762,148 | 742,603 | 752,414 | 742,603 |
| Stockton,CA | Stockton | CA | NE3 | San Joaquin,CA | 752,491 | 762,148 | 742,603 | 752,414 | 742,603 |
| Stockton,CA | Stockton | CA | NE4 | San Joaquin,CA | 752,491 | 762,148 | 742,603 | 752,414 | 742,603 |
| Stockton,CA | Stockton | CA | RE6 | San Joaquin,CA | 752,491 | 762,148 | 742,603 | 752,414 | 742,603 |
| STOCKTON,CA | STOCKTON | CA | RE7 | San Joaquin,CA | 752,491 | 762,148 | 742,603 | 752,414 | 742,603 |
| Stockton,CA | Stockton | CA | RE8 | San Joaquin,CA | 752,491 | 762,148 | 742,603 | 752,414 | 742,603 |
| Stockton,CA | Stockton | CA | VE1 | San Joaquin,CA | 752,491 | 762,148 | 742,603 | 752,414 | 742,603 |
| Stratford,CT | Stratford | CT | SFS | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Stratford,CT | Stratford | CT | XEU | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Stratford,NJ | Stratford | NJ | HMZ | Camden,NJ | 506,353 | 506,471 | 506,738 | 506,521 | 506,353 |
| Stuart,FL | Stuart | FL | STU | Martin,FL | 160,742 | 161,000 | 159,065 | 160,269 | 159,065 |
| Studio City,CA | Studio City | CA | G4Z | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Suffern,NY | Suffern | NY | SUF | Rockland,NY | 325,522 | 325,789 | 324,422 | 325,244 | 324,422 |
| Sugar Land,TX | Sugar Land | TX | SGL | Fort Bend,TX | 788,081 | 811,688 | 765,394 | 788,388 | 765,394 |
| Summerfield,FL | Summerfield | FL | GBT | Marion,FL | 359,062 | 365,579 | 353,526 | 359,389 | 353,526 |
| Summerville,SC | Summerville | SC | FTZ | Dorchester,SC | 160,718 | 162,809 | 158,299 | 160,609 | 158,299 |
| Sumterville,FL | Sumterville | FL | R2F | Sumter,FL | 128,719 | 132,420 | 125,044 | 128,728 | 125,044 |
| Sun City,CA | Sun City | CA | E1D | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Sunnyvale,CA | Sunnyvale | CA | DNJ | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| Sunnyvale,CA | Sunnyvale | CA | Z1M | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| Sunnyvale,CA | Sunnyvale | CA | Z1N | Santa Clara,CA | 1,932,337 | 1,927,852 | 1,927,470 | 1,929,220 | 1,927,470 |
| Sunrise,FL | Sunrise | FL | XPH | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Superior,CO | Superior | CO | B2I | Boulder,CO | 324,636 | 326,196 | 322,510 | 324,447 | 322,510 |
| Supply,NC | Supply | NC | WJ8 | Brunswick,NC | 136,880 | 142,820 | 131,815 | 137,172 | 131,815 |
| Sutton,MA | Sutton | MA | KC9 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Suwanee,GA | Suwanee | GA | FPZ | Gwinnett,GA | 927,337 | 936,250 | 915,046 | 926,211 | 915,046 |
| Syosset,NY | Syosset | NY | J3D | Nassau,NY | 1,357,534 | 1,356,924 | 1,356,509 | 1,356,989 | 1,356,509 |
| Syracuse,NY | Syracuse | NY | HLL | Onondaga,NY | 461,649 | 460,528 | 462,872 | 461,683 | 460,528 |
| Syracuse,NY | Syracuse | NY | XC9 | Onondaga,NY | 461,649 | 460,528 | 462,872 | 461,683 | 460,528 |
| Tacoma,WA | Tacoma | WA | L4N | Pierce,WA | 893,756 | 904,980 | 877,013 | 891,916 | 877,013 |
| Tacoma,WA | Tacoma | WA | RR | Pierce,WA | 893,756 | 904,980 | 877,013 | 891,916 | 877,013 |
| Takoma Park,MD | Takoma Park | MD | KPR | Montgomery,MD | 1,048,478 | 1,050,688 | 1,043,530 | 1,047,565 | 1,043,530 |
| Tallahassee,FL | Tallahassee | FL | IT | Leon,FL | 291,657 | 293,582 | 289,770 | 291,670 | 289,770 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Tallahassee,FL | Tallahassee | FL | VU2 | Leon,FL | 291,657 | 293,582 | 289,770 | 291,670 | 289,770 |
| Tallahassee,FL | Tallahassee | FL | YFN | Leon,FL | 291,657 | 293,582 | 289,770 | 291,670 | 289,770 |
| Tamarac,FL | Tamarac | FL | TMR | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Tampa,FL | Tampa | FL | D6V | Hillsborough,FL | 1,451,919 | 1,471,968 | 1,422,278 | 1,448,722 | 1,422,278 |
| Tampa,FL | Tampa | FL | FEF | Hillsborough,FL | 1,451,919 | 1,471,968 | 1,422,278 | 1,448,722 | 1,422,278 |
| Tampa,FL | Tampa | FL | LTP | Hillsborough,FL | 1,451,919 | 1,471,968 | 1,422,278 | 1,448,722 | 1,422,278 |
| Tampa,FL | Tampa | FL | NKR | Hillsborough,FL | 1,451,919 | 1,471,968 | 1,422,278 | 1,448,722 | 1,422,278 |
| Tampa,FL | Tampa | FL | TPS | Hillsborough,FL | 1,451,919 | 1,471,968 | 1,422,278 | 1,448,722 | 1,422,278 |
| Tampa,FL | Tampa | FL | UMP | Hillsborough,FL | 1,451,919 | 1,471,968 | 1,422,278 | 1,448,722 | 1,422,278 |
| Tampa,FL | Tampa | FL | UVR | Hillsborough,FL | 1,451,919 | 1,471,968 | 1,422,278 | 1,448,722 | 1,422,278 |
| Tampa,FL | Tampa | FL | V2T | Hillsborough,FL | 1,451,919 | 1,471,968 | 1,422,278 | 1,448,722 | 1,422,278 |
| Tarpon Springs,FL | Tarpon Springs | FL | C4J | Pinellas,FL | 973,058 | 974,996 | 964,666 | 970,907 | 964,666 |
| Tarzana,CA | Tarzana | CA | CZG | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Tarzana,CA | Tarzana | CA | G4X | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Tarzana,CA | Tarzana | CA | TD | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Taunton,MA | Taunton | MA | SJ1 | Bristol,MA | 564,092 | 565,217 | 561,037 | 563,449 | 561,037 |
| Taunton,MA | Taunton | MA | XL2 | Bristol,MA | 564,092 | 565,217 | 561,037 | 563,449 | 561,037 |
| Teaneck,NJ | Teaneck | NJ | TEA | Bergen,NJ | 932,816 | 932,202 | 930,390 | 931,803 | 930,390 |
| Tehachapi,CA | Tehachapi | CA | GZO | Kern,CA | 893,758 | 900,202 | 887,641 | 893,867 | 887,641 |
| Temecula,CA | Temecula | CA | DFO | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Temecula,CA | Temecula | CA | HX3 | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Temecula,CA | Temecula | CA | O2V | Riverside,CA | 2,445,789 | 2,470,546 | 2,411,439 | 2,442,591 | 2,411,439 |
| Temple,TX | Temple | TX | E4E | Bell,TX | 355,397 | 362,924 | 348,574 | 355,632 | 348,574 |
| Terrytown,LA | Terrytown | LA | MEY | Jefferson Parish,LA | 433,884 | 432,493 | 434,850 | 433,742 | 432,493 |
| Teterboro,NJ | Teterboro | NJ | KQI | Bergen,NJ | 932,816 | 932,202 | 930,390 | 931,803 | 930,390 |
| Teterboro,NJ | Teterboro | NJ | KQI | Bergen,NJ | 932,816 | 932,202 | 930,390 | 931,803 | 930,390 |
| Texarkana,TX | Texarkana | TX | TXK | Bowie,TX | 93,688 | 93,245 | 93,373 | 93,435 | 93,245 |
| Texas City,TX | Texas City | TX | ZEJ | Galveston,TX | 337,858 | 342,139 | 332,885 | 337,627 | 332,885 |
| The Villages,FL | The Villages | FL | OT4 | Sumter,FL | 128,719 | 132,420 | 125,044 | 128,728 | 125,044 |
| The Woodlands,TX | The Woodlands | TX | JMQ | Montgomery,TX | 589,770 | 607,391 | 571,949 | 589,703 | 571,949 |
| The Woodlands,TX | The Woodlands | TX | P3O | Montgomery,TX | 589,770 | 607,391 | 571,949 | 589,703 | 571,949 |
| Thorndale,PA | Thorndale | PA | ETD | Chester,PA | 522,086 | 524,989 | 519,560 | 522,212 | 519,560 |
| Thousand Oaks,CA | Thousand Oaks | CA | CZJ | Ventura,CA | 848,142 | 846,006 | 847,263 | 847,137 | 846,006 |
| Tifton,GA | Tifton | GA | NJ8 | Tift,GA | 40,542 | 40,644 | 40,541 | 40,576 | 40,541 |
| Titusville,FL | Titusville | FL | TTV | Brevard,FL | 595,203 | 601,942 | 585,507 | 594,217 | 585,507 |
| Toledo,OH | Toledo | OH | A6F | Lucas,OH | 429,612 | 428,348 | 431,102 | 429,687 | 428,348 |
| Tomball,TX | Tomball | TX | TBP | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Toms River,NJ | Toms River | NJ | RNJ | Ocean,NJ | 601,478 | 607,186 | 596,415 | 601,693 | 596,415 |
| Toms River,NJ | Toms River | NJ | TOS | Ocean,NJ | 601,478 | 607,186 | 596,415 | 601,693 | 596,415 |
| Tonawanda,NY | Tonawanda | NY | KNM | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Topeka,KS | Topeka | KS | ITV | Shawnee,KS | 177,290 | 176,875 | 177,852 | 177,339 | 176,875 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Topsham,ME | Topsham | ME | Q6L | Sagadahoc,ME | 35,690 | 35,856 | 35,452 | 35,666 | 35,452 |
| Torrance,CA | Torrance | CA | CWK | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Torrance,CA | Torrance | CA | DLC | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Torrance,CA | Torrance | CA | DLM | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Torrington,CT | Torrington | CT | YWL | Litchfield,CT | 181,095 | 180,333 | 182,002 | 181,143 | 180,333 |
| Totowa,NJ | Totowa | NJ | TTA | Passaic,NJ | 503,183 | 501,826 | 503,637 | 502,882 | 501,826 |
| Towson,MD | Towson | MD | LJG | Baltimore,MD | 827,859 | 827,370 | 828,018 | 827,749 | 827,370 |
| Tracy,CA | Tracy | CA | DXN | San Joaquin,CA | 752,491 | 762,148 | 742,603 | 752,414 | 742,603 |
| Tracy,CA | Tracy | CA | SE1 | San Joaquin,CA | 752,491 | 762,148 | 742,603 | 752,414 | 742,603 |
| Trappe,PA | Trappe | PA | AKQ | Montgomery,PA | 826,924 | 830,915 | 823,823 | 827,221 | 823,823 |
| Trenton,NJ | Trenton | NJ | TRE | Mercer,NJ | 368,188 | 367,430 | 367,922 | 367,847 | 367,430 |
| Trevose,PA | Trevose | PA | H2N | Bucks,PA | 627,812 | 628,270 | 626,806 | 627,629 | 626,806 |
| Trinity,FL | Trinity | FL | GEX | Pasco,FL | 539,090 | 553,947 | 524,602 | 539,213 | 524,602 |
| Troy,MI | Troy | MI | GNX | Oakland,MI | 1,256,694 | 1,257,584 | 1,253,185 | 1,255,821 | 1,253,185 |
| Trumbull,CT | Trumbull | CT | HBA | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Trumbull,CT | Trumbull | CT | JKT | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Trumbull,CT | Trumbull | CT | KY6 | Fairfield,CT | 943,971 | 943,332 | 943,926 | 943,743 | 943,332 |
| Tucker,GA | Tucker | GA | ZZ1 | DeKalb,GA | 754,906 | 759,297 | 749,323 | 754,509 | 749,323 |
| Tujunga,CA | Tujunga | CA | K4U | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Tulare,CA | Tulare | CA | DXI | Tulare,CA | 464,589 | 466,195 | 461,898 | 464,227 | 461,898 |
| Turlock,CA | Turlock | CA | DXJ | Stanislaus,CA | 548,126 | 550,660 | 543,194 | 547,327 | 543,194 |
| Turlock,CA | Turlock | CA | IIA | Stanislaus,CA | 548,126 | 550,660 | 543,194 | 547,327 | 543,194 |
| Turnersville,NJ | Turnersville | NJ | TUV | Gloucester,NJ | 291,525 | 291,636 | 291,165 | 291,442 | 291,165 |
| Tuscaloosa,AL | Tuscaloosa | AL | BS3 | Tuscaloosa,AL | 208,319 | 209,355 | 207,305 | 208,326 | 207,305 |
| Tustin,CA | Tustin | CA | F5R | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Twinsburg,OH | Twinsburg | OH | YWN | Summit,OH | 541,353 | 541,013 | 541,334 | 541,233 | 541,013 |
| Tyler,TX | Tyler | TX | TYR | Smith,TX | 229,749 | 232,751 | 227,449 | 229,983 | 227,449 |
| Uncasville,CT | Uncasville | CT | U3K | New London,CT | 266,285 | 265,206 | 267,390 | 266,294 | 265,206 |
| Union,MO | Union | MO | UNM | Franklin,MO | 103,716 | 103,967 | 103,191 | 103,625 | 103,191 |
| Union,NJ | Union | NJ | TYQ | Union,NJ | 556,402 | 556,341 | 554,033 | 555,592 | 554,033 |
| Uniontown,OH | Uniontown | OH | GRP | Stark,OH | 371,248 | 370,606 | 372,404 | 371,419 | 370,606 |
| Uniontown,PA | Uniontown | PA | YI | Fayette,PA | 130,323 | 129,274 | 131,302 | 130,300 | 129,274 |
| Unionville,CT | Unionville | CT | LXT | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Upland,CA | Upland | CA | CZK | San Bernardino,CA | 2,166,753 | 2,180,085 | 2,149,031 | 2,165,290 | 2,149,031 |
| Upland,CA | Upland | CA | FDA | San Bernardino,CA | 2,166,753 | 2,180,085 | 2,149,031 | 2,165,290 | 2,149,031 |
| Upland,CA | Upland | CA | K4V | San Bernardino,CA | 2,166,753 | 2,180,085 | 2,149,031 | 2,165,290 | 2,149,031 |
| Urbandale,IA | Urbandale | IA | DEO | Polk,IA | 485,833 | 490,161 | 479,612 | 485,202 | 479,612 |
| Utica,NY | Utica | NY | YC1 | Oneida,NY | 229,474 | 228,671 | 229,959 | 229,368 | 228,671 |
| VACAVILLE,CA | VACAVILLE | CA | ENP | Solano,CA | 445,725 | 447,643 | 441,829 | 445,066 | 441,829 |
| Valdosta,GA | Valdosta | GA | ZGQ | Lowndes,GA | 116,309 | 117,406 | 115,364 | 116,360 | 115,364 |
| Valencia,CA | Valencia | CA | S3K | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Vallejo,CA | Vallejo | CA | DKO | Solano,CA | 445,725 | 447,643 | 441,829 | 445,066 | 441,829 |
| Valparaiso,IN | Valparaiso | IN | F2E | Porter,IN | 169,488 | 170,389 | 168,636 | 169,504 | 168,636 |
| Valrico,FL | Valrico | FL | BNR | Hillsborough,FL | 1,451,919 | 1,471,968 | 1,422,278 | 1,448,722 | 1,422,278 |
| Van Nuys,CA | Van Nuys | CA | QE2 | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Vancouver,WA | Vancouver | WA | J2M | Clark,WA | 481,427 | 488,241 | 473,252 | 480,973 | 473,252 |
| Vancouver,WA | Vancouver | WA | VCV | Clark,WA | 481,427 | 488,241 | 473,252 | 480,973 | 473,252 |
| Vancouver,WA | Vancouver | WA | X1D | Clark,WA | 481,427 | 488,241 | 473,252 | 480,973 | 473,252 |
| Venice,FL | Venice | FL | FVE | Sarasota,FL | 426,329 | 433,742 | 419,496 | 426,522 | 419,496 |
| Ventnor City,NJ | Ventnor City | NJ | VNR | Atlantic,NJ | 263,989 | 263,670 | 266,105 | 264,588 | 263,670 |
| Ventura,CA | Ventura | CA | DCJ | Ventura,CA | 848,142 | 846,006 | 847,263 | 847,137 | 846,006 |
| Ventura,CA | Ventura | CA | I4U | Ventura,CA | 848,142 | 846,006 | 847,263 | 847,137 | 846,006 |
| Ventura,CA | Ventura | CA | YJY | Ventura,CA | 848,142 | 846,006 | 847,263 | 847,137 | 846,006 |
| Vernon,CT | Vernon | CT | RM2 | Tolland,CT | 150,689 | 150,721 | 151,063 | 150,824 | 150,689 |
| Vernon Hills,IL | Vernon Hills | IL | LZJ | Lake,IL | 699,587 | 696,535 | 701,473 | 699,198 | 696,535 |
| Vero Beach,FL | Vero Beach | FL | VEB | Indian River,FL | 157,187 | 159,923 | 153,989 | 157,033 | 153,989 |
| Vero Beach,FL | Vero Beach | FL | VRB | Indian River,FL | 157,187 | 159,923 | 153,989 | 157,033 | 153,989 |
| Vero Beach,FL | Vero Beach | FL | X5K | Indian River,FL | 157,187 | 159,923 | 153,989 | 157,033 | 153,989 |
| Victorville,CA | Victorville | CA | DAZ | San Bernardino,CA | 2,166,753 | 2,180,085 | 2,149,031 | 2,165,290 | 2,149,031 |
| Vidalia,GA | Vidalia | GA | LJ5 | Toombs,GA | 26,902 | 26,830 | 26,972 | 26,901 | 26,830 |
| Vineland,NJ | Vineland | NJ | SDV | Cumberland,NJ | 150,635 | 149,527 | 151,906 | 150,689 | 149,527 |
| Vineland,NJ | Vineland | NJ | VIL | Cumberland,NJ | 150,635 | 149,527 | 151,906 | 150,689 | 149,527 |
| Virginia Beach,VA | Virginia Beach | VA | F6J | Virginia Beach City,VA | 449,849 | 449,974 | 450,201 | 450,008 | 449,849 |
| Virginia Beach,VA | Virginia Beach | VA | SD2 | Virginia Beach City,VA | 449,849 | 449,974 | 450,201 | 450,008 | 449,849 |
| Visalia,CA | Visalia | CA | YRJ | Tulare,CA | 464,589 | 466,195 | 461,898 | 464,227 | 461,898 |
| Vista,CA | Vista | CA | DDU | San Diego,CA | 3,333,861 | 3,338,330 | 3,316,073 | 3,329,421 | 3,316,073 |
| Voorhees,NJ | Voorhees | NJ | X3W | Camden,NJ | 506,353 | 506,471 | 506,738 | 506,521 | 506,353 |
| Voorhees Township,NJ | Voorhees Township | NJ | G3G | Camden,NJ | 506,353 | 506,471 | 506,738 | 506,521 | 506,353 |
| Waco,TX | Waco | TX | TY | McLennan,TX | 254,196 | 256,623 | 251,089 | 253,969 | 251,089 |
| Wading River,NY | Wading River | NY | WDV | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| Waldorf,MD | Waldorf | MD | WCP | Charles,MD | 161,476 | 163,257 | 159,428 | 161,387 | 159,428 |
| Wallingford,CT | Wallingford | CT | FH4 | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Wallingford,CT | Wallingford | CT | LY7 | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Wallingford,CT | Wallingford | CT | WLF | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Walnut Creek,CA | Walnut Creek | CA | CW7 | Contra Costa,CA | 1,150,519 | 1,153,526 | 1,142,251 | 1,148,765 | 1,142,251 |
| Waltham,MA | Waltham | MA | TKO | Middlesex,MA | 1,608,470 | 1,611,699 | 1,600,842 | 1,607,004 | 1,600,842 |
| Wareham,MA | Wareham | MA | QWH | Plymouth,MA | 518,422 | 521,202 | 515,303 | 518,309 | 515,303 |
| Warren,MI | Warren | MI | A6W | Macomb,MI | 872,795 | 873,972 | 870,325 | 872,364 | 870,325 |
| Warren,NJ | Warren | NJ | HFC | Somerset,NJ | 330,181 | 328,934 | 329,838 | 329,651 | 328,934 |
| Warren,OH | Warren | OH | LFD | Trumbull,OH | 198,539 | 197,974 | 200,367 | 198,960 | 197,974 |
| Warrington,PA | Warrington | PA | RIN | Bucks,PA | 627,812 | 628,270 | 626,806 | 627,629 | 626,806 |
| Warwick,RI | Warwick | RI | WWD | Kent,RI | 164,053 | 164,292 | 163,869 | 164,071 | 163,869 |

*Prepared in connection with the declaration of Jed Greene, CPA, CFF, CMA*

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Washington,DC | Washington | DC | GTO | District of Columbia,DC | 701,547 | 705,749 | 692,683 | 699,993 | 692,683 |
| Washington,DC | Washington | DC | KKR | District of Columbia,DC | 701,547 | 705,749 | 692,683 | 699,993 | 692,683 |
| Washington,DC | Washington | DC | NIN | District of Columbia,DC | 701,547 | 705,749 | 692,683 | 699,993 | 692,683 |
| Washington,MO | Washington | MO | WSS | Franklin,MO | 103,716 | 103,967 | 103,191 | 103,625 | 103,191 |
| Washington,PA | Washington | PA | V1I | Washington,PA | 207,018 | 206,865 | 207,212 | 207,032 | 206,865 |
| Wasilla,AK | Wasilla | AK | J3G | Matanuska-Susitna Borou | 107,115 | 108,317 | 105,369 | 106,934 | 105,369 |
| Waterbury,CT | Waterbury | CT | IRX | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Waterbury,CT | Waterbury | CT | WBU | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Waterbury,CT | Waterbury | CT | WBY | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| Wauchula,FL | Wauchula | FL | JJS | Hardee,FL | 27,168 | 26,937 | 27,131 | 27,079 | 26,937 |
| Wauwatosa,WI | Wauwatosa | WI | HLE | Milwaukee,WI | 946,969 | 945,726 | 951,226 | 947,974 | 945,726 |
| Waycross,GA | Waycross | GA | LJ6 | Ware,GA | 35,587 | 35,734 | 35,593 | 35,638 | 35,587 |
| Waynesboro,PA | Waynesboro | PA | GWM | Franklin,PA | 154,579 | 155,027 | 154,147 | 154,584 | 154,147 |
| Weatherford,TX | Weatherford | TX | WTD | Parker,TX | 138,070 | 142,878 | 133,811 | 138,253 | 133,811 |
| Webster,TX | Webster | TX | O1D | Harris,TX | 4,680,045 | 4,713,325 | 4,646,630 | 4,680,000 | 4,646,630 |
| Wellesley,MA | Wellesley | MA | WLE | Norfolk,MA | 703,230 | 706,775 | 700,437 | 703,481 | 700,437 |
| Wellington,FL | Wellington | FL | XDX | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| Wellington,FL | Wellington | FL | XOL | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| Wentzville,MO | Wentzville | MO | GGU | St. Charles,MO | 398,780 | 402,022 | 394,290 | 398,364 | 394,290 |
| Weslaco,TX | Weslaco | TX | J6N | Hidalgo,TX | 862,298 | 868,707 | 855,176 | 862,060 | 855,176 |
| Wesley Chapel,FL | Wesley Chapel | FL | B6Y | Pasco,FL | 539,090 | 553,947 | 524,602 | 539,213 | 524,602 |
| Wesley Chapel,FL | Wesley Chapel | FL | LSY | Pasco,FL | 539,090 | 553,947 | 524,602 | 539,213 | 524,602 |
| West Boylston,MA | West Boylston | MA | LC3 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| West Chester,OH | West Chester | OH | ISQ | Butler,OH | 382,000 | 383,134 | 380,019 | 381,718 | 380,019 |
| West Chester,PA | West Chester | PA | WCH | Chester,PA | 522,086 | 524,989 | 519,560 | 522,212 | 519,560 |
| West Covina,CA | West Covina | CA | DAB | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| West Grove,PA | West Grove | PA | WGO | Chester,PA | 522,086 | 524,989 | 519,560 | 522,212 | 519,560 |
| West Hartford,CT | West Hartford | CT | GBV | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| West Haven,CT | West Haven | CT | BZ5 | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| West Haven,CT | West Haven | CT | WEN | New Haven,CT | 856,971 | 854,757 | 857,513 | 856,414 | 854,757 |
| West Hills,CA | West Hills | CA | O4A | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| West Hills,CA | West Hills | CA | WHL | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| West Lake Hills,TX | West Lake Hills | TX | E3U | Travis,TX | 1,246,572 | 1,273,954 | 1,226,805 | 1,249,110 | 1,226,805 |
| West Mifflin,PA | West Mifflin | PA | WMJ | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| West New York,NJ | West New York | NJ | FTJ | Hudson,NJ | 671,931 | 672,391 | 670,046 | 671,456 | 670,046 |
| West Palm Beach,FL | West Palm Beach | FL | GDM | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| West Palm Beach,FL | West Palm Beach | FL | WPL | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| West Palm Beach,FL | West Palm Beach | FL | XIX | Palm Beach,FL | 1,482,876 | 1,496,770 | 1,465,027 | 1,481,558 | 1,465,027 |
| West Sacramento,CA | West Sacramento | CA | DKP | Yolo,CA | 220,118 | 220,500 | 217,352 | 219,323 | 217,352 |
| West Sayville,NY | West Sayville | NY | WSV | Suffolk,NY | 1,480,830 | 1,476,601 | 1,483,832 | 1,480,421 | 1,476,601 |
| West Seneca,NY | West Seneca | NY | ESD | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| West Seneca,NY | West Seneca | NY | SNE | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Westboro,MA | Westboro | MA | LC4 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Westboro,MA | Westboro | MA | LC5 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Westbrook,CT | Westbrook | CT | KVL | Middlesex,CT | 162,870 | 162,436 | 163,053 | 162,786 | 162,436 |
| Westfield,NJ | Westfield | NJ | ESG | Union,NJ | 556,402 | 556,341 | 554,033 | 555,592 | 554,033 |
| Westlake Village,CA | Westlake Village | CA | CZH | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Westminster,CA | Westminster | CA | DFZ | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| Westminster,CO | Westminster | CO | D3N | Adams,CO | 511,354 | 517,421 | 504,108 | 510,961 | 504,108 |
| Westminster,MD | Westminster | MD | WSM | Carroll,MD | 168,267 | 168,447 | 167,699 | 168,138 | 167,699 |
| Westmont,IL | Westmont | IL | DON | DuPage,IL | 927,247 | 922,921 | 929,060 | 926,409 | 922,921 |
| Weston,FL | Weston | FL | ETA | Broward,FL | 1,946,107 | 1,952,778 | 1,926,205 | 1,941,697 | 1,926,205 |
| Westwood,NJ | Westwood | NJ | EMN | Bergen,NJ | 932,816 | 932,202 | 930,390 | 931,803 | 930,390 |
| Wethersfield,CT | Wethersfield | CT | LY9 | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Wethersfield,CT | Wethersfield | CT | MY1 | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Wethersfield,CT | Wethersfield | CT | WEF | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Wexford,PA | Wexford | PA | YQX | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| Wheat Ridge,CO | Wheat Ridge | CO | WHD | Jefferson,CO | 579,392 | 582,881 | 574,798 | 579,024 | 574,798 |
| Wheaton,MD | Wheaton | MD | I2U | Montgomery,MD | 1,048,478 | 1,050,688 | 1,043,530 | 1,047,565 | 1,043,530 |
| White Oak,PA | White Oak | PA | QYW | Allegheny,PA | 1,217,281 | 1,216,045 | 1,221,744 | 1,218,357 | 1,216,045 |
| White Plains,NY | White Plains | NY | WHS | Westchester,NY | 968,213 | 967,506 | 968,890 | 968,203 | 967,506 |
| Whitefish,MT | Whitefish | MT | C3L | Flathead,MT | 102,017 | 103,806 | 99,899 | 101,907 | 99,899 |
| Whittier,CA | Whittier | CA | K3Q | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Whittier,CA | Whittier | CA | WIT | Los Angeles,CA | 10,073,906 | 10,039,107 | 10,081,570 | 10,064,861 | 10,039,107 |
| Wichita,KS | Wichita | KS | KL | Sedgwick,KS | 513,484 | 516,042 | 513,375 | 514,300 | 513,375 |
| Wichita Falls,TX | Wichita Falls | TX | C4O | Wichita,TX | 131,807 | 132,230 | 131,596 | 131,878 | 131,596 |
| Wichita Falls,TX | Wichita Falls | TX | W4C | Wichita,TX | 131,807 | 132,230 | 131,596 | 131,878 | 131,596 |
| Williamsville,NY | Williamsville | NY | WIE | Erie,NY | 919,717 | 918,702 | 919,355 | 919,258 | 918,702 |
| Willimantic,CT | Willimantic | CT | MY2 | Windham,CT | 117,059 | 116,782 | 116,566 | 116,802 | 116,566 |
| Willingboro,NJ | Willingboro | NJ | IVY | Burlington,NJ | 444,745 | 445,349 | 445,702 | 445,265 | 444,745 |
| Wilmington,DE | Wilmington | DE | CMW | New Castle,DE | 557,550 | 558,753 | 556,165 | 557,489 | 556,165 |
| Wilmington,DE | Wilmington | DE | JGU | New Castle,DE | 557,550 | 558,753 | 556,165 | 557,489 | 556,165 |
| Wilmington,DE | Wilmington | DE | MRK | New Castle,DE | 557,550 | 558,753 | 556,165 | 557,489 | 556,165 |
| Wilmington,DE | Wilmington | DE | T4V | New Castle,DE | 557,550 | 558,753 | 556,165 | 557,489 | 556,165 |
| Wilmington,NC | Wilmington | NC | FL2 | New Hanover,NC | 232,256 | 234,473 | 227,938 | 231,556 | 227,938 |
| Wilson,NC | Wilson | NC | A1B | Wilson,NC | 81,392 | 81,801 | 81,435 | 81,543 | 81,392 |
| Winchester,VA | Winchester | VA | HK9 | Winchester City,VA | 27,962 | 28,078 | 27,897 | 27,979 | 27,897 |
| Windsor,CT | Windsor | CT | T4N | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Windsor Locks,CT | Windsor Locks | CT | WIK | Hartford,CT | 892,580 | 891,720 | 893,561 | 892,620 | 891,720 |
| Winston Salem,NC | Winston Salem | NC | AZF | Forsyth,NC | 379,216 | 382,295 | 375,195 | 378,902 | 375,195 |
| Winter Haven,FL | Winter Haven | FL | L2Z | Polk,FL | 706,597 | 724,777 | 686,218 | 705,864 | 686,218 |
| Winter Park,FL | Winter Park | FL | WNT | Orange,FL | 1,381,540 | 1,393,452 | 1,349,746 | 1,374,913 | 1,349,746 |

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|
| Winter Springs,FL | Winter Springs | FL | YYT | Seminole,FL | 468,122 | 471,826 | 461,402 | 467,117 | 461,402 |
| Woodbridge,VA | Woodbridge | VA | WDE | Prince William,VA | 466,235 | 470,335 | 461,423 | 465,998 | 461,423 |
| Woodbridge,VA | Woodbridge | VA | YLV | Prince William,VA | 466,235 | 470,335 | 461,423 | 465,998 | 461,423 |
| Woodbury,NJ | Woodbury | NJ | WDB | Gloucester,NJ | 291,525 | 291,636 | 291,165 | 291,442 | 291,165 |
| Woodland,CA | Woodland | CA | I2A | Yolo,CA | 220,118 | 220,500 | 217,352 | 219,323 | 217,352 |
| Woodland,CA | Woodland | CA | SE2 | Yolo,CA | 220,118 | 220,500 | 217,352 | 219,323 | 217,352 |
| Woodland Park,CO | Woodland Park | CO | C3D | Teller,CO | 25,113 | 25,388 | 24,524 | 25,008 | 24,524 |
| Woodridge,IL | Woodridge | IL | BVY | DuPage,IL | 927,247 | 922,921 | 929,060 | 926,409 | 922,921 |
| Worcester,MA | Worcester | MA | APW | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Worcester,MA | Worcester | MA | LC9 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Worcester,MA | Worcester | MA | MC5 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Worcester,MA | Worcester | MA | MC7 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Worcester,MA | Worcester | MA | WRZ | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Worcester,MA | Worcester | MA | WZU | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Worcester,MA | Worcester | MA | YS8 | Worcester,MA | 829,054 | 830,622 | 824,772 | 828,149 | 824,772 |
| Wrentham,MA | Wrentham | MA | VMY | Norfolk,MA | 703,230 | 706,775 | 700,437 | 703,481 | 700,437 |
| Wyomissing,PA | Wyomissing | PA | QUX | Berks,PA | 420,529 | 421,164 | 418,025 | 419,906 | 418,025 |
| Yarmouth Port,MA | Yarmouth Port | MA | O1B | Barnstable,MA | 213,471 | 212,990 | 213,496 | 213,319 | 212,990 |
| Yonkers,NY | Yonkers | NY | YON | Westchester,NY | 968,213 | 967,506 | 968,890 | 968,203 | 967,506 |
| Yorba Linda,CA | Yorba Linda | CA | K4W | Orange,CA | 3,175,973 | 3,175,692 | 3,168,044 | 3,173,236 | 3,168,044 |
| York,PA | York | PA | EYN | York,PA | 447,847 | 449,058 | 445,565 | 447,490 | 445,565 |
| York,PA | York | PA | F2Z | York,PA | 447,847 | 449,058 | 445,565 | 447,490 | 445,565 |
| Yorkville,IL | Yorkville | IL | JFE | Kendall,IL | 127,717 | 128,990 | 126,054 | 127,587 | 126,054 |
| Youngstown,OH | Youngstown | OH | JD6 | Mahoning,OH | 229,216 | 228,683 | 229,961 | 229,287 | 228,683 |
| Youngstown,OH | Youngstown | OH | TJY | Mahoning,OH | 229,216 | 228,683 | 229,961 | 229,287 | 228,683 |
| Yuba City,CA | Yuba City | CA | DOD | Sutter,CA | 96,348 | 96,971 | 96,109 | 96,476 | 96,109 |
| YUBA CITY,CA | YUBA CITY | CA | GIH | Sutter,CA | 96,348 | 96,971 | 96,109 | 96,476 | 96,109 |
| Yucaipa,CA | Yucaipa | CA | DFD | San Bernardino,CA | 2,166,753 | 2,180,085 | 2,149,031 | 2,165,290 | 2,149,031 |
| Yucca Valley,CA | Yucca Valley | CA | TX7 | San Bernardino,CA | 2,166,753 | 2,180,085 | 2,149,031 | 2,165,290 | 2,149,031 |
| Yulee,FL | Yulee | FL | E4A | Nassau,FL | 85,936 | 88,625 | 83,098 | 85,886 | 83,098 |
| Zephyrhills,FL | Zephyrhills | FL | ZEP | Pasco,FL | 539,090 | 553,947 | 524,602 | 539,213 | 524,602 |
| #N/A | #N/A | #N/A | Q5D | #N/A | #N/A | #N/A | #N/A | #N/A | #N/A |
| #N/A | #N/A | #N/A | NHV | #N/A | #N/A | #N/A | #N/A | #N/A | #N/A |
| #N/A | #N/A | #N/A | T6J | #N/A | #N/A | #N/A | #N/A | #N/A | #N/A |
| #N/A | #N/A | #N/A | H4U | #N/A | #N/A | #N/A | #N/A | #N/A | #N/A |
| #N/A | #N/A | #N/A | I7I | #N/A | #N/A | #N/A | #N/A | #N/A | #N/A |
| #N/A | #N/A | #N/A | F5O | #N/A | #N/A | #N/A | #N/A | #N/A | #N/A |

Notes:

(1)Source: PSC locations are from QUEST-VARGAS000042006 - CONFIDENTIAL-NSHM-FS1.xlsx.

Exhibit O

***Julian Vargas, et al. v. Quest Diagnostics, Inc., et al.***

Quest PSCs and Related County Populations [1]

| City,State | City | State | Site Code | County | 2018 Population [2] | 2019 Population [2] | Population [3] | Avg Population | Min Population |
|---|---|---|---|---|---|---|---|---|---|

(2) https://www.census.gov/data/tables/time-series/demo/popest/2010s-counties-total.html.

(3) https://simplemaps.com/data/us-counties

*Prepared in connection with the declaration of Jed Greene, CPA, CFF, CMA*

Page 53 of 53

PA0994

# EXHIBIT 34

Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590

Benjamin J. Sweet
(Admitted *Pro Hac Vice*)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

*Attorneys for Plaintiffs Julian Vargas, American Council of the Blind, and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

JULIAN VARGAS, ANNE WEST, and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,

Defendants.

CASE NO.: 2:19-cv-8108

**DECLARATION OF RICHARD SIMMONS IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Complaint Filed: September 18, 2019
Pretrial Conf: December 7, 2021
Trial Date: January 11, 2022
District Judge: Hon. Dolly M. Gee
Magistrate: Hon. Michael M. Wilner

**DECLARATION OF RICHARD SIMMONS**

I, RICHARD SIMMONS, hereby declare:

1. I am the President of Analytics Consulting LLC ("Analytics")[1]. My company is one of the leading providers of class and collective action notice and claims management programs in the nation. It is my understanding that Analytics' class action consulting practice, including the design and implementation of legal notice campaigns, is the oldest in the country. Through my work, I have personally overseen court-ordered class and collective notice programs in more than 2,000 matters. The following facts are within my personal knowledge and, if called as a witness, I could and would competently testify to these facts. I make this declaration in support of Plaintiff's Motion for Class Certification.

**Background and Experience**

2. Founded in 1970, Analytics has consulted for 51 years regarding the design and implementation of legal notice and claims management programs relating to class and collective action litigation. These engagements include notice and claims administration involving antitrust, civil rights, consumer fraud, data breach, employment, insurance, product defect/liability, and securities litigation.

3. Analytics' clients include corporations, law firms (both plaintiff and defense), and the federal government. Analytics' long-term federal contracts include the following:

a. Since 1998, Analytics has been under contract (five consecutive five-year contracts) with the Federal Trade Commission ("FTC") to administer and provide expert advice regarding notice (including published notice) and claims processing in their settlements/redress programs.

[1] In October 2013, Analytics Consulting LLC acquired Analytics, Incorporated. I am the former President of Analytics, Incorporated (also d/b/a "BMC Group Class Action Services"). References to "Analytics" herein include the prior legal entity.

b. In 2012, Analytics was awarded a 10-year contract by the Department of Justice ("DOJ") to administer and provide expert advice regarding (including published notice) notice and claims processing to support their asset forfeiture/remission program; and,

c. Since 2013, Analytics has been appointed as a Distribution Agent (two consecutive five-year terms) by the Securities and Exchange Commission ("SEC") to administer and provide expert advice regarding notice (including published notice) and claims processing to support their investor settlements.

4. I joined Analytics in 1990 and have 31 years of direct experience in designing and implementing class action settlements and notice campaigns. The notice programs I have managed range in size from fewer than 100 class members to more than 40 million known class members, including some of the largest and most complex notice and claims administration programs in history.

5. I have testified in state and federal courts as to the design and implementation of notice programs, claims processes, and the impact attorney communications has had on claims rates. As has always been my practice, I personally performed or oversaw Analytics' consulting services in each of the cases indicated on my CV, which is attached hereto as **Exhibit A**.

6. I have presented to panels of judges and lawyers on issues regarding class notice, claims processing, and disbursement. In 2011, I was a panelist at the Federal Judicial Center's ("FJC") workshop/meeting regarding class action notice and settlement administration. In 2014, I was interviewed by the CFPB regarding notice and claims administration in class action litigation as part of their study on arbitration and consumer class litigation waivers. In 2016, I worked with the FTC to conduct research regarding: a) the impact of alternate forms of notice on fund participation rates; and, b) the impact of alternate formats of checks on check cashing rates. In

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

2016, I was an invited participant to the Duke Law Conference on Class Action Settlements regarding electronic notification of class members. In 2017, I was the primary author of the Duke Law Conference on Class Action Settlement's guide to best practices regarding the evaluation of class action notice campaigns (including notice by electronic means). In 2021, I assisted in the development of George Washington University Law School's forthcoming Class Action Best Practices Checklist.

7. I have co-authored and presented CLE programs and whitepapers regarding class notice and class action claims administration. In 2016, I co-authored a paper titled "Crafting Digital Class Notices That Actually Provide Notice" (Law360.com, New York (March 10, 2016). My speaking engagements regarding notice include: *Risks and Regulations: Best Practices that Protect Class Member Confidentiality*, HB Litigation Conference on Class Action Mastery in New York City (2018); *Recent Developments in Class Action Notice and Claims Administration*, Practising Law Institute in New York City (2017); *The Beginning and the End of Class Action Lawsuits*, Perrin Class Action Litigation Conference in Chicago (2017); *Class Action Administration: Data and Technology*, Harris Martin Target Data Breach Conference in San Diego (2014); *Developments in Legal Notice*, accredited CLE Program, presented at Shook Hardy & Bacon, LLP in Kansas City (2013), Halunen & Associates in Minneapolis (2013), and Susman Godfrey in Dallas (2014); and *Class Actions 101: Best Practices and Potential Pitfalls in Providing Class Notice*, CLE Program, presented to the Kansas Bar Association (March 2009).

8. I have been recognized by courts for my opinion as to which method of notification is appropriate for a given case and whether a certain method of notice represents the best notice practicable under the circumstances. Some of the cases in which I testified are:

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

a. Honorable Stephen J. Murphy III, *Doe 1 v. Deja vu Servs., Inc.*, No. 2:16-cv-10877, ECF No. 77 (E.D. Mich. June 19, 2017):

*Also, the Plaintiffs certified that notice had been provided in accordance with the Court's preliminary approval order. The notices stated—in clear and easily understandable terms—the key information class members needed to make an informed decision: the nature of the action, the class claims, the definition of the class, the general outline of the settlement, how to elect for a cash payment, how to opt out of the class, how to object to the settlement, the right of class members to secure counsel, and the binding nature of the settlement on class members who do not to opt out.*

* * *

*In addition, the parties took additional steps to provide notice to class members, including through targeted advertisements on social media. The Court finds that the parties have provided the "best notice that is practicable under the circumstances," and complied with the requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, and due process.*[2]

b. Associate Justice Edward P. Leibensberger, *Geanacopoulos v. Philip Morris USA, Inc.*, No. 9884CV06002, Dkt. No. 230 (Mass. Super. Ct. Sept. 30, 2016):

*The Court finds that the plan of Notice as described in paragraphs 12 through 20 of the Settlement Agreement, including the use of email, mail, publication and internet notice, constituted the best notice practicable under the circumstances and constituted due and sufficient notice to the Class.*

c. Honorable Edward J. Davila, *In re: Google Referrer Header Privacy Litig.*, No. 5:10-cv-04809, ECF No. 85 (N.D. Cal. Mar. 31, 2015):

*On the issue of appropriate notice, the court previously recognized the uniqueness of the class asserted in this case, since it could potentially cover most internet users in the United States. On that ground, the court approved the proposed notice plan involving four media channels: (1) internet-based notice using paid banner ads targeted at potential class members (in English and in Spanish on Spanish-language websites); (2) notice via "earned media" or, in other words, through articles in the press; (3) a website decided solely to the settlement (in English and Spanish versions); and (4) a toll-free telephone number where class members can obtain additional information and request a class notice. In addition, the court approved the content and appearance of the class notice and related forms as consistent with Rule 23(c)(2)(B).*
*The court again finds that the notice plan and class notices are consistent with Rule 23, and that the plan has been fully and properly implemented by the parties and the class administrator.*

---

[2] Unless otherwise indicated, citations are omitted and emphasis is added.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

d. Honorable Terrence F. McVerry, *Kobylanski. v. Motorola Mobility, Inc.*, No. 2:13-cv-01181, ECF No. 43 (W.D. Pa. Oct. 9, 2014):

*The Court finds that the distribution of the Notice to Class Members Re: Pendency of Class Action, as provided for in the Order Granting Preliminary Approval for the Settlement, constituted the best notice practicable under the circumstances to all Persons within the definition of the Class and fully met the requirements of due process under the United States Constitution.*

e. Honorable Thomas N. O'Neill, Jr., *In re: CertainTeed Fiber Cement Siding Litig.*, No. 2:11-md-02270, ECF No. 119 (E.D. Pa. Mar. 20, 2014):

*Class Members were provided with notice of the settlement in the manner and form set forth in the settlement agreement. Notice was also provided to pertinent state and federal officials. The notice plan was reasonably calculated to give actual notice to Class Members of their right to receive benefits from the settlement or to be excluded from the settlement or object to the settlement. The notice plan met the requirements of Rule 23 and due process.*

f. Honorable Robert W. Gettleman, *In re Aftermarket Filters Antitrust Litig.*, No. 1:08-cv-04883, ECF No. 1031 (N.D. Ill. Oct. 25, 2012):

*Due and adequate notice of the Settlement was provided to the Class. . . . The manner of giving notice provided in this case fully satisfies the requirements of Federal Rule of Civil Procedure 23 and due process, constitutes the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons entitled thereto. A full and fair opportunity was provided to the members of the Class to be heard regarding the Settlements.*

g. Honorable Marco A. Roldan, *Plubell v. Merck & Co., Inc.*, NO. 04CV235817-01, Final Judgment and Order (Mo. Cir. Ct. Mar. 15, 2013):

*Under the circumstances, the notice of this Settlement provided to Class Members in accordance with the Notice Order was the best notice practicable of the proceedings and matters set forth therein, including the proposed Settlement, to all Persons entitled to such notice, and said notice fully satisfied the requirements due process and Missouri law.*

h. Honorable James P. Kleinberg, *Skold v. Intel Corp.*, No. 2005-CV-039231, Order on Motion for Approval (Cal. Super. Ct. Mar. 14, 2013):

*The Court finds that Plaintiff's proposed Notice plan has a reasonable chance of reaching a substantial percentage of class members.*

i. Honorable J. Phil Gilbert, *Greenville IL v. Syngenta Crop Prot., Inc.*, No 3:10-cv-00188, ECF No. 325 (S.D. Ill. Oct. 23, 2012):

> *The Notice provided to the Class fully complied with Rule 23, was the best notice practicable, satisfied all constitutional due process requirements, and provides the Court with jurisdiction over the Class Members.*

9. In addition to my class action consulting work, I taught a college course in antitrust economics, was a guest lecturer at the University of Minnesota Law School on issues of statistical and economic analysis, was a charter member of the American Academy of Economic and Financial Experts, and was a referee for the Journal of Legal Economics (reviewing and critiquing peer-reviewed articles on the application of economic and statistical analysis to legal issues).

**Assignment**

10. I have been retained by counsel for Plaintiffs to offer my expert opinion on whether, based on my experience and available information, a class notice and (if required) a claims administration process could be conducted reliably and efficiently if Plaintiffs prevail in this action and a class resolution is finally approved by the Court.

11. I am being compensated at a rate of $325 per hour for my time spent on this matter.

12. My compensation is not contingent on the nature of my findings or the outcome of this case.

**Documents Reviewed**

13. In preparing this Declaration, I relied upon the following Documents provided to me by Counsel.

a) Bates-stamped numbers QUEST-VARGAS10369-10372; QUEST-VARGAS16052-16074; QUEST-VARGAS37833-37872; QUEST-VARGAS32305-32308; QUEST-VARGAS40876-408777; and QUEST-VARGAS2470-2474
b) Deposition of Marc Yarrison
c) Deposition of Tom Walsh
d) Deposition of Taylor Carr

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

e) Exhibit 31 – Bates QUEST-VARGAS40791

f) Quest Website Welcome Kit – Online Services[3]

**Development of a Notice and Claims Administration Plan**

14. The process for the development of a notification and claims administration plan has evolved to a standardized process: a) a class is defined based upon identifiable criteria; b) based upon those criteria, data is identified that would assist in the delivery of direct notice; c) to the degree that there is a lack of data that would support direct notice, data first- and third- parties is gathered to develop a plan for notice by publication; and d) factors that would influence the delivery or effectiveness of notice are identified and taken into consideration in the development of a notification and claims administration plan.

15. This generalized process is used in nearly every class action notice program and is outlined in detail in the best practices identified in the Federal Judicial Center's (or "FJC") Publication "*Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*" (2010).

16. For purposes of a notice program, I have been informed by counsel that no class has been certified in this matter, and that I should assume that a potential class would include all individuals in the United States who are legally blind and visited a Quest patient service center and attempted to use the e-check in kiosk between January 1, 2018, and December 31, 2019.

17. Based upon the above, if the Court were to certify a Class, then one would exist based on identifiable criteria. The question then turns to whether or not data exists that assist in providing notice to members of the class.

18. Based upon the documents that I reviewed, Quest: a) collected contact information, including patient name, email address, and telephone from patients as

---

[3] Document exists at https://hcpenroll.questdiagnostics.com/for-your-patients/, last accessed on September 7, 2021.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

part of the appointment process; and, b) updated records to reflect the fact that an appointment did, or did not, take place. If a patient attempted to make an appointment on-site, but did not access the on-site applications, it does not appear that Quest maintained information regarding that visit since registration started at the on-site kiosk.

19. Based upon the above, data exists to provide direct notice to all members of a Class who made and/or attended an appointment. A published notice plan would need to be developed regarding class members who attempted to access the e-check in kiosk and failed. These are standard processes in the development of any notice and claims administration plan, and the combination of known and unknown class members is typical in many class action notice campaigns. There is nothing atypical about this case that would render a notice campaign administratively infeasible.

20. The nature of the class would influence the type of notice that should be provided. In this matter, all class members are legally blind, and the method of notice should be tailored to address that consideration.

21. Email or text message notice should be preferred to long form mailed notice. Information to support this type of notice campaign is available, and initial communications regarding appointments took place via email and text messaging. These are standard considerations in the design of modern notice campaigns and pose no unique manageability issue with respect to notice.

22. Additionally, assistive technologies exist to make these formats of notice more effective (and therefore preferred) than mailed notice for the proposed class. Websites and message content can be formatted to directly facilitate the use of these technologies, so that the notices that would be used here would informative and easy to understand for legally blind class members.

23. Not all patients identified within the available data are class members. This will result in the class being "over notified" – which is common in many settlements and preferable to under-notification of class members. It has been

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

traditionally preferred to notify too many people, out of an abundance of caution, than to notify fewer class members. In this matter – where emailed or text message notice would be the most effective form of direct notice – class notice would be very economical.

24. Given the nature of the notice described above, if Plaintiffs prevail in this action and a class resolution is approved by the Court, then a claims process would be required. Online and paper processes – standard in any class action settlement – would be similarly employed. The administration of a claims process for this action could be done in manner consistent with my decades of experience, established best practices, and would pose no unique manageability issue with respect to claims administration.

25. Claims submitted could be independently verified using third party data. For example, and without limitation, claims submitted by individuals with Drivers Licenses would be suspect and subject to additional review, as driver license holders in California are unlikely to be legally blind. This is a standard practice and is similar to many situations where eligibility is confirmed with third party records.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 9th day of September, 2021, in Chanhassen, Minnesota.

DocuSigned by:
Richard Simmons
12F53D2F1395498...

Richard Simmons, Declarant

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

# EXHIBIT A



# Richard W. Simmons

Richard W. Simmons is the President of Analytics Consulting LLC[1]. Mr. Simmons joined Analytics in 1990 and has more than 31 years of experience developing and implementing class action communications and settlement programs.

Mr. Simmons' first legal notice consulting engagement was the *Schwan's Salmonella Litigation* settlement (*In Re: Salmonella Litigation*, Case No. 94-cv-016304 (D. Minn.)). Since then, he has:

- Developed and implemented notice campaigns ranging in size up to 45 million known class members (and 180 million unknown class members);
- Testified regarding legal notice in building products, civil rights, consumer products, environmental pollution, privacy, and securities litigation settlements;
- Managed claims processes for settlement funds ranging up to $1 billion in value.

As part of Analytics' ongoing class action notice consulting practice, Mr. Simmons:

- testified regarding the adequacy of notice procedures in direct notice cases (including the development of class member databases);
- testified regarding the adequacy of published notice plans;
- has been appointed as a Distribution Fund Administrator by the Securities and Exchange Commission tasked with developing Distribution Plans for court approval;
- has been retained as an expert by the Federal Trade Commission to testify regarding the effectiveness of competing notice plans and procedures; and,
- acted as the primary author for the Duke Law Center's guidelines for best practices regarding the evaluation of class action notice campaigns.
- Assisted in developing the George Washington University Law School's forthcoming Class Action Best Practices Checklist.

In addition to his class action consulting work, Mr. Simmons has taught a college course in antitrust economics, was a guest lecturer at the University of Minnesota Law School on issues of statistical and economic analysis, was a charter member of the American Academy of Economic and Financial Experts and was a former referee for the Journal of Legal Economics (reviewing and critiquing peer reviewed articles on the application of economic and statistical analysis to legal issues). Mr. Simmons is a published author on the subject of damage analysis in Rule 10b-5 securities litigation.

Mr. Simmons graduated from St. Olaf College with a B.A. in Economics (with a year at University College, Dublin), pursued a PhD. in Agricultural and Applied Economics (with a concentration in

[1] In October 2013, Analytics Consulting LLC acquired Analytics Incorporated. I am the former President or Analytics Incorporated. References to Analytics herein include the prior legal entities.



industrial organization and consumer/behavioral economics) at the University of Minnesota[2], and has received formal media planning training from New York University.

## APPLICATION OF TECHNOLOGY TO CLASS ACTION SETTLEMENTS

Mr. Simmons has been a visionary in the application of the Internet to class action notice campaigns and the management of settlements:

- In 1995, Mr. Simmons was the first in the nation to support class action settlements with an online presence, that included the ability to check online, the status of their claims.
- In 2000, Mr. Simmons invented online claims submission in class action litigation, filing a patent application governing *"Method and system for assembling databases in multiple-party proceedings"* US20010034731 A1.
- In 2002, Mr. Simmons established an online clearinghouse for class action settlements that provided the public with information regarding class action settlements and provided them with the ability to register for notification of new settlements. This clearinghouse received national press attention as a resource for class action settlements.
- From 2003 through 2013, Analytics' incremental changes in Internet support included class member verification of eligibility, locater services that identified retail outlets that sold contaminated products, secure document repositories, and multi-language support.
- In 2014, Mr. Simmons was the first to utilize and testify regarding product-based targeting in an online legal notice campaign
- In 2014, Analytics, under Mr. Simmons' leadership, released the first-class action settlement support site developed under e-commerce best practices.

## SPEAKER/EXPERT PANELIST/PRESENTER

Mr. Simmons has presented to panels of judges and lawyers on issues regarding class notice, claims processing, and disbursement:

- Mr. Simmons served as a panelist for the Francis McGovern Conferences on "Distribution of Securities Litigation Settlements: Improving the Process", at which regulators, judges, custodians, academics, practitioners and claims administrators participated.
- In 2011, Mr. Simmons was a panelist at the Federal Judicial Center's workshop/meetings regarding class action notice and settlement administration.
- In 2014, Mr. Simmons was invited to be interviewed by the Consumer Financial Protection Bureau as an expert on notice and claims administration in class action litigation as part of their study on arbitration and consumer class litigation waivers
- In 2016, Mr. Simmons presented results of research regarding the impact of forms of notice on fund participation rates to the Federal Trade Commission.

[2] Mr. Simmons suspended work on his dissertation to acquire and manage Analytics.



- In 2019, Mr. Simmons was the only claims administration expert invited to be a panelist to the Federal Trade Commission's Workshop on Consumers and Class Action Notices, where he spoke regarding the impact of different forms of notice on settlement participation rates and improving response rates to class action notices.

Mr. Simmons' speaking engagements regarding class notice include:

- *Risks and Regulations: Best Practices that Protect Class Member Confidentiality* presented at the HB Litigation Conference on Class Action Mastery in New York City (2018)
- *Recent Developments in Class Action Notice and Claims Administration* presented at Practising Law Institute in New York City (2017)
- *The Beginning and the End of Class Action Lawsuits* presented at Perrin Class Action Litigation Conference in Chicago (2017);
- C*lass Action Administration: Data and Technology* presented at Harris Martin Target Data Breach Conference in San Diego (2014);
- *Developments in Legal Notice*, accredited CLE Program, presented at Susman Godfrey in Dallas (2014)
- *Developments in Legal Notice*, accredited CLE Program, presented at Shook Hardy & Bacon, LLP in Kansas City (2013),
- *Developments in Legal Notice*, accredited CLE Program, presented at Halunen & Associates in Minneapolis (2013),
- *Class Actions 101: Best Practices and Potential Pitfalls in Providing Class Notice*, CLE Program, presented by Brian Christensen and Richard Simmons, to the Kansas Bar Association (March 2009).

Mr. Simmons' writings regarding class notice include:

- Crafting Digital Class Notices That Actually Provide Notice - Law360.com, New York (March 10, 2016).

JUDICIAL COMMENTS AND LEGAL NOTICE CASES

In evaluating the adequacy and effectiveness of Mr. Simmons' notice campaigns, courts have repeatedly recognized Mr. Simmons' work. The following excerpts provide recent examples of such judicial approval in matters where the primary issue was the provision of class notice.

Honorable Stephen J. Murphy III, *Doe 1 v. Deja vu Servs., Inc.*, No. 2:16-cv-10877, ECF No. 77 (E.D. Mich. June 19, 2017):

> *Also, the Plaintiffs certified that notice had been provided in accordance with the Court's preliminary approval order. The notices stated—in clear and easily understandable terms—the key information class members needed to make an informed decision: the nature of the action, the class claims, the definition of the class, the general outline of*



> *the settlement, how to elect for a cash payment, how to opt out of the class, how to object to the settlement, the right of class members to secure counsel, and the binding nature of the settlement on class members who do not to opt out.*
>
> * * *
>
> *In addition, the parties took additional steps to provide notice to class members, including through targeted advertisements on social media. The Court finds that the parties have provided the "best notice that is practicable under the circumstances," and complied with the requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, and due process.*[3]

Associate Justice Edward P. Leibensberger, *Geanacopoulos v. Philip Morris USA, Inc.*, No. 9884CV06002, Dkt. No. 230 (Mass. Super. Ct. Sept. 30, 2016):

> *The Court finds that the plan of Notice as described in paragraphs 12 through 20 of the Settlement Agreement, including the use of email, mail, publication and internet notice, constituted the best notice practicable under the circumstances and constituted due and sufficient notice to the Class.*

Honorable Edward J. Davila, *In re: Google Referrer Header Privacy Litig.*, No. 5:10-cv-04809, ECF No. 85 (N.D. Cal. Mar. 31, 2015):

> *On the issue of appropriate notice, the court previously recognized the uniqueness of the class asserted in this case, since it could potentially cover most internet users in the United States. On that ground, the court approved the proposed notice plan involving four media channels: (1) internet-based notice using paid banner ads targeted at potential class members (in English and in Spanish on Spanish-language websites); (2) notice via "earned media" or, in other words, through articles in the press; (3) a website decided solely to the settlement (in English and Spanish versions); and (4) a toll-free telephone number where class members can obtain additional information and request a class notice. In addition, the court approved the content and appearance of the class notice and related forms as consistent with Rule 23(c)(2)(B).*
>
> *The court again finds that the notice plan and class notices are consistent with Rule 23, and that the plan has been fully and properly implemented by the parties and the class administrator.*

---

3 Unless otherwise indicated, citations are omitted and emphasis is added.



Honorable Terrence F. McVerry, *Kobylanski. v. Motorola Mobility, Inc.*, No. 2:13-cv-01181, ECF No. 43 (W.D. Pa. Oct. 9, 2014):

> *The Court finds that the distribution of the Notice to Settlement Class Members Re: Pendency of Class Action, as provided for in the Order Granting Preliminary Approval for the Settlement, constituted the best notice practicable under the circumstances to all Persons within the definition of the Class and fully met the requirements of due process under the United States Constitution.*

Honorable Thomas N. O'Neill, Jr., *In re: CertainTeed Fiber Cement Siding Litig.*, No. 2:11-md-02270, ECF No. 119 (E.D. Pa. Mar. 20, 2014):

> *Settlement class members were provided with notice of the settlement in the manner and form set forth in the settlement agreement. Notice was also provided to pertinent state and federal officials. The notice plan was reasonably calculated to give actual notice to settlement class members of their right to receive benefits from the settlement or to be excluded from the settlement or object to the settlement. The notice plan met the requirements of Rule 23 and due process.*

Honorable Robert W. Gettleman, *In re Aftermarket Filters Antitrust Litig.*, No. 1:08-cv-04883, ECF No. 1031 (N.D. Ill. Oct. 25, 2012):

> *Due and adequate notice of the Settlement was provided to the Class. . . . The manner of giving notice provided in this case fully satisfies the requirements of Federal Rule of Civil Procedure 23 and due process, constitutes the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons entitled thereto. A full and fair opportunity was provided to the members of the Class to be heard regarding the Settlements.*

Honorable Marco A. Roldan, *Plubell v. Merck & Co., Inc.*, NO. 04CV235817-01, Final Judgment and Order (Mo. Cir. Ct. Mar. 15, 2013):

> *Under the circumstances, the notice of this Settlement provided to Class Members in accordance with the Notice Order was the best notice practicable of the proceedings and matters set forth therein, including the proposed Settlement, to all Persons entitled to such notice, and said notice fully satisfied the requirements due process and Missouri law.*

Honorable James P. Kleinberg, *Skold v. Intel Corp.*, No. 2005-CV-039231, Order on Motion for Approval (Cal. Super. Ct. Mar. 14, 2013):

> *The Court finds that Plaintiff's proposed Notice plan has a reasonable chance of reaching a substantial percentage of class members.*



Honorable J. Phil Gilbert, *Greenville IL v. Syngenta Crop Prot., Inc.*, No 3:10-cv-00188, ECF No. 325 (S.D. Ill. Oct. 23, 2012):

> *The Notice provided to the Class fully complied with Rule 23, was the best notice practicable, satisfied all constitutional due process requirements, and provides the Court with jurisdiction over the Class Members.*

ANALYTICS

Analytics Consulting LLC
Partial List of Legal Notice and Class Action Consulting Experience

4/16/2021

| Practice Area | *Engagement* | Citation |
|---|---|---|
| Antitrust | *All Star Carts and Vehicles, Inc., et al. v. BFI Canada Income Fund, et al.* | 08-CV-1816 (E.D.N.Y.) |
| | *In Re: Aftermarket Filters Antitrust Litigation* | No. 1:08-cv-4883, MDL No. 1957 (N.D. Ill.) |
| | *In Re: Aluminum Phosphide Antitrust Litigation* | Case No. 93-cv-2452 (D. Kan.) |
| | *In Re: Beef Antitrust Litigation* | MDL No. 248 (N.D. Tex.) |
| | *In Re: Bromine Antitrust Litigation* | MDL No. 1310 (S.D. Ind.) |
| | *In Re: Corrugated Container Antitrust Litigation* | MDL. No 310 (S.D. Tex.) |
| | *In Re: Industrial Silicon Antitrust Litigation* | Case No. 95-cv-2104 (W.D. Pa.) |
| | *In Re: Multidistrict Civil Antitrust Actions Involving Antibiotic Drugs* | MDL No. 10 (S.D.N.Y.) |
| | *In Re: Workers Compensation Insurance Antitrust Litigation* | Case No. 4:85-cv-1166 (D. Minn.) |
| | *Red Eagle Resources Corporation, Inc., et al. v. Baker Hughes Inc., et al.* | Case No. 91-cv-627 (S.D. Tex.) |
| | *Rob'n I, Inc., et al. v. Uniform Code Counsel, Inc.* | Case No. 03-cv-203796-1 (Spokane County, Wash.) |
| | *Sarah F. Hall d/b/a Travel Specialist, et al. v. United Airlines, Inc., et al.,* | Case No. 7:00-cv-123-BR(1) (E.D. S.C.) |
| Asset Forfeiture | *U.S. v. $1,802,651.56 in Funds Seized from e-Bullion, et al. ("Goldfinger")* | No. CV 09-1731 (C.D. Cal.) |
| | *U.S. v. $1,802,651.56 in Funds Seized from e-Bullion, et al. ("Kum Ventures")* | No. CV 09-1731 (C.D. Cal.) |
| | *U.S. v. David Merrick* | 6:10-cr-109-Orl-35DAB |
| | *U.S. v. Sixty-Four 68.5 lbs (Approx.) Silver Bars, et al.* | (E.D. Fla) |
| | *United States of America v. $1,802,651.56 in Funds Seized from E-Bullion, et al.* | Case No. 09-cv-01731 (C.D. Cal.) |
| | *United States of America v. Alfredo Susi, et al.* | 3:07-cr-119 (W.D.N.Y.) |
| | *United States of America v. David Merrick* | 6:10-cr-109-Orl-35DAB |
| | *United States of America v. Elite Designs, Inc.* | Case No. 05-cv-058 (D.R.I.) |
| | *United States of America v. Evolution Marketing Group* | Case No. 6:09-cv-1852 (S.D. Fla.) |
| | *United States of America v. George David Gordon* | Case No. 4:09-cr-00013-JHP-1 (N.D. Okla.) |
| | *United States of America v. Regenesis Marketing Corporation* | No. C09-1770RSM (W.D. Wash.) |
| | *United States of America v. Sixty-Four 68.5 lbs (Approx.) Silver Bars, et al.* | (E.D. FL) |
| | *United States of America v. Zev Saltsman* | Case No. 04-cv-641 (E.D.N.Y.) |
| Biometric Privacy | *Alric Howell v Lakes Venture dba Fresh Thyme Farmers Market* | 1:20-cv-02213 (N.D. IL) |
| | *Andrea Jones et al. v Rosebud Restaurants, Inc.* | 2019CH12910 (Cook County, IL) |
| | *Anton Tucker et al. v Momence Packing Co.* | Case No. 2019-L-000098 (Kankakee County, IL) |
| | *Charles Thurman et al. v NorthShore University HealthSystem* | Case No. 2018-CH-3544 (Cook County, IL) |
| | *Christopher Crosby et al. v Courier Express One, Inc.* | 2019-CH-03391 (Cook County, IL) |
| | *Danielle Parker v Dabecca Natural Foods, Inc.* | 2019 CH 1845 (Cook County, IL) |
| | *Dearlo Terry v Griffith Foods* | 2019CH12910 (Cook County, IL) |
| | *Drape et al. v S.F. Express Corporation* | 20-L-001094 (DuPage County, IL) |
| | *Francesca Graziano et al. v Royal Die and Stamping LLC dba Royal Power Solutions, LLC* | 2019-L-00169 (DuPage County, IL) |
| | *Heard, et al. v. THC – Northshore, Inc.* | Case No. 2017-CH-16918 (Cook County, IL) |
| | *Jeremy Webb et al. v Plochman, Inc.* | Case No. 2020-L-15 (Kankakee County, IL) |
| | *Jerrod Lane et al. v Schenker, Inc.* | 3:19-cv-00507 NJR-MAB (S.D. IL) |

| Practice Area | *Engagement* | Citation |
|---|---|---|
| | *Katherine Martinez et al. v Nando's Restaurant Group, Inc.* | 1:19-cv-07012 (N.D. IL) |
| | *Leen Abusalem et al. v The Standard Market, LLC* | 2019L000517 (Dupage County, IL) |
| | *Neisha Torres et al. v Eataly Chicago, LLC* | 2020 CH 6417 (Cook County, IL) |
| | *Otilia Garcia et al. v Club Colors Buyers LLC* | Case No. 2020 L 001330 (Dupage County, IL) |
| | *Roach v. Walmart Inc.* | Case No. 2019-CH-01107 (Cook County, IL) |
| | *Sykes v. Clearstaff, Inc.* | Case No. 19-CH-03390 (Cook Co. IL) |
| | *Trayes v Midcon Hospitality Group, LLC et al.* | Case No. 19-CH-11117 (Cook County, IL) |
| | *Tyronne L. Helm et al. v Marigold, Inc.* | 2020-CH-003971 (Cook County, IL) |
| Business | *American Golf Schools, LLC, et al. v. EFS National Bank, et al.* | Case No. 00-cv-005208 (D. Tenn.) |
| | *AVR, Inc. and Amidon Graphics v. Churchill Truck Lines* | Case No. 4:96-cv-401 (D. Minn.) |
| | *Buchanan v. Discovery Health Records Solutions* | Case No. 13-015968-CA 25 (Miami Dade County) |
| | *Do Right's Plant Growers, et al. v. RSM EquiCo, Inc., et al.* | Case No. 06-CC-00137 (Orange County, Cal.) |
| | *F.T.C. v. Ameritel Payphone Distributors* | Case No. 00-cv-514 (S.D. Fla.) |
| | *F.T.C. v. Cephalon* | Case No. 08-cv-2141 (E.D. Pa.) |
| | *F.T.C. v. Datacom Marketing, Inc.* | Case No. 06-cv-2574 (N.D. Ill.) |
| | *F.T.C. v. Davison & Associates, Inc.* | Case No. 97-cv-01278 (W.D. Pa.) |
| | *F.T.C. v. Fidelity ATM, Inc.* | Case No. 06-cv-81101 (S.D. Fla.) |
| | *F.T.C. v. Financial Resources Unlimited, Inc.* | Case No. 03-cv-8864 (N.D. Ill.) |
| | *F.T.C. v. First American Payment Processing Inc.* | Case No. 04-cv-0074 (D. Ariz.) |
| | *F.T.C. v. Group C Marketing, Inc.* | Case No. 06-cv-6019 (C.D. Cal.) |
| | *F.T.C. v. Jordan Ashley, Inc.* | Case No. 09-cv-23507 (S.D. Fla.) |
| | *F.T.C. v. Medical Billers Network, Inc.* | Case No. 05-cv-2014 (S.D.N.Y.) |
| | *F.T.C. v. Minuteman Press Int'l* | Case No. 93-cv-2496 (E.D.N.Y.) |
| | *F.T.C. v. Netfran Development Corp* | Case No. 05-cv-22223 (S.D. Fla.) |
| | *F.T.C. v. USA Beverages, Inc.* | Case No. 05-cv-61682 (S.D. Fla.) |
| | *Garcia, et al. v. Allergan, Inc.* | 11-CV-9811 (C.D. Cal.) |
| | *Gerald Young et al. v. HealthPort Technologies, LLC, et al.* | Case No. LACL130175 (Polk County, IA) |
| | *Goldberg et al. v. HealthPort Inc. et al.* | Case No L-1421-14 (Essex County, NJ) |
| | *In Re Google AdWords Litigation* | No. 5:08-cv-03369-EJD (N.D. Cal.) |
| | *In re Syngenta Ag Mir 162 Corn Litigation* | Case No 2:14-md-2591-JWL-JPO (D. Kan.) |
| | *Law Offices of Henry E. Gare, P.A., et al. v. Healthport Technologies, LLC* | No. 16-2011-CA-010202 (Duval County, FL) |
| | *Melby et al. v. America's MHT, Inc., et al.* | Case No. 3:17-CV-155-M (N.D. Texas) |
| | *Number Queen, Ltd. et al. v. Redgear Technologies, Inc. et al.* | Case No. 14-0064 (W.D. Mo.) |
| | *Physicians of Winter Haven LLC v. STERIS Corp.* | Case No. 1:10-cv-00264 (N.D. Ohio) |
| | *Richard P. Console, JR., P.C. v. Medical Records Online Inc.* | Docket No. CAM-L-2133-18 (Camden County, NJ) |
| | *Sue Ramirez et al. v. Smart Professional Photocopy Corporation* | No. 01-L-385 (Peoria County, IL) |
| | *Todd Tompkins, Doug Daug and Timothy Nelson v. BASF Corporation, et al.* | Case No. 96-cv-59 (D.N.D.) |

| Practice Area | *Engagement* | Citation |
|---|---|---|
| | *Waxler Transportation Company, Inc. v. Trinity Marine Products, Inc., et al.* | Case No. 08-cv-01363 (E.D. La.) |
| Civil Rights | *Bentley v. Sheriff of Essex County* | Case No. 11-01907 (Essex County, MA) |
| | *Cazenave, et al. v. Sheriff Charles C. Foti, Jr., et al.* | Case No. 00-cv-1246 (E.D. La.) |
| | *Garcia, et al v. Metro Gang Strike Force, et al.* | Case No. 09-cv-01996 (D. Minn.) |
| | *Gregory Garvey, Sr., et al. v. Frederick B. MacDonald & Forbes Byron* | 3:07-cv-30049 (S.D. Mass.) |
| | *McCain, et al. v. Bloomberg, et al.* | Case No. 41023/83 (New York) |
| | *Minich, et al. v Spencer, et al.* | Civil Action No. 1584cv00278 (Suffolk Superior Court, Mass.) |
| | *Nancy Zamarron, et al. v. City of Siloam Springs, et al.* | Case No. 08-cv-5166 (W.D. Ark.) |
| | *Nathan Tyler, et al. v. Suffolk County, et al.* | Case No. 1:06-cv-11354 (S.D. Mass.) |
| | *Nilsen v. York County* | Case No. 02-cv-212 (D. Me.) |
| | *Richard S. Souza et al. v. Sheriff Thomas M. Hodgson* | 2002-0870 BRCV (Superior Ct., Mass.) |
| | *Taha v. County of Bucks* | Case No. 12-6867 (E.D. Pa.) |
| | *Travis Brecher, et al. v. St. Croix County, Wisconsin, et al.* | Case No. 02-cv-0450-C (W.D. Wisc.) |
| | *Tyrone Johnson et al. v CoreCivic et al.* | 2:20-cv-01309 RFB-NJK (D. NV) |
| Consumer | *Adam Berkson, et al. v. Gogo LLC and Gogo Inc.,* | Case No. 1:14-cv-01199-JBW-LB (S.D.N.Y.) |
| | *Andrew J. Hudak, et al. v. United Companies Lending Corporation* | Case No. 334659 (Cuyahoga County, Ohio) |
| | *Angela Doss, et al. v. Glenn Daniels Corporation* | Case No. 02-cv-0787 (E.D. Ill.) |
| | *Angell v. Skechers Canada* | 8562-12 (Montreal, Quebec) |
| | *Ann McCracken et al. v Verisma Systems, Inc.* | 6:14-cv-06248 (W.D. N.Y.) |
| | *Anthony Talalai, et al. v. Cooper Tire & Rubber Company* | Case No. L-008830-00-MT (Middlesex County, NJ) |
| | *Arnett v. Bank of America, N.A.* | No. 3:11-CV-01372-SI (D. OR) |
| | *Ballard, et al. v. A A Check Cashiers, Inc., et al.* | Case No. 01-cv-351 (Washingotn County, Ark.) |
| | *Belinda Peterson, et al. v. H & R Block Tax Services, Inc.* | Case No. 95-CH-2389 (Cook County, Ill.) |
| | *Boland v. Consolidated Multiple Listing Service, Inc.* | Case No. 3:19-cv-01335-SB (D.S.C.) |
| | *Braulio M. Cuesta, et al. v. Ford Motor Company, Inc., and Williams Controls, Inc.* | CIV-06-61-S (E.D. Okla.) |
| | *Caprarola, et al. v. Helxberg Diamond Shops, Inc.* | Case No. 13-06493 (N.D. Ill.) |
| | *Carideo et al. v. Dell, Inc.* | Case No. 06-cv-1772 (W.D. Wash.) |
| | *Carnegie v. Household International, Inc.* | No. 98-C-2178 (N.D. Ill.) |
| | *Che Clark v. JPMorgan Chase Bank, N.A.. et al.* | Case No. 0:17-cv-01069 (D. Minn.) |
| | *Christine Gambino et al. v CIOX Health, LLC* | 2015-CA-006038-B (District of Columbia) |
| | *Clair Loewy v. Live Nation Worldwide Inc.* | Case No. 11-cv-04872 (N.D. Ill.) |
| | *Clements, et al. v. JPMorgan Chase Bank, N.A., et al.* | No. 3:12-cv-02179-JCS (N.D. Cal.) |
| | *Conradie v. Caliber Home Loans* | Case No. 4:14-cv-00430 (S.D. Iowa) |
| | *Consumer Financial Protection Bureau v. Corinthian Colleges, Inc.* | Case No. 1:14-cv-07194 (N.D. Ill.) |
| | *Consumer Financial Protection Bureau v. Park View Law* | Case No. 2:17-cv-04721 (N.D. Cal.) |
| | *Consumer Financial Protection Bureau v. Prime Credit, L.L.C., et al.* | Case No. 2:17-cv-04720 (N.D. Cal.) |
| | *Consumer Financial Protection Bureau v. Prime Marketing Holdings* | Case No. 2:16-cv-07111 (C.D. Cal.) |

| Practice Area | Engagement | Citation |
|---|---|---|
| | *Consumer Financial Protection Bureau v. Prime Marketing Holdings* | 1:15-cv-23070-MGC (S.D. Fl) |
| | *Consumer Financial Protection Bureau v. Security National Automotive Acceptance* | Civil Action No. 1 :15-cv-401 (S.D. Ohio) |
| | *Covey, et al. v. American Safety Council, Inc.* | 2010-CA-009781-0 (Orange County, FL) |
| | *Cummins, et al. v. H&R Block, et al.* | Case No. 03-C-134 (Kanawha County, W.V.) |
| | *David and Laurie Seeger, et al. v. Global Fitness Holdings, LLC* | No. 09-CI-3094, (Boone Circuit Court, Boone County, Ky.) |
| | *Don C. Lundell, et al. v. Dell, Inc.* | Case No. 05-cv-03970 (N.D. Cal.) |
| | *Duffy v. Security Pacific Autmotive Financial Services Corp., et al.* | Case No. 3:93-cv-00729 (S.D. Cal.) |
| | *Edward Hawley, et al. v. American Pioneer Title Insurance Company* | No. CA CE 03-016234 (Broward County, Fla.) |
| | *Evans, et al. v. Linden Research, Inc., et al.* | Case No. 4:11-cv-1078-DMR (N.D. Cal.) |
| | *F.T.C. and The People of the State of New York v. UrbanQ* | Case No. 03-cv-33147 (E.D.N.Y.) |
| | *F.T.C. v A1 DocPrep Inc. et.al.* | Case No. 2:17-cv-07044 SJO-JC (C.D. CA) |
| | *F.T.C. v First Universal Lending, LLC et al.* | Case No. 9:09-cv-82322 ZLOCH (S.D. FL) |
| | *F.T.C. v Student Debt Doctor, LLC et al.* | Case No. 17-cv-61937 WPD (S.D. FL) |
| | *F.T.C. v. 1st Beneficial Credit Services LLC* | Case No. 02-cv-1591 (N.D. Ohio) |
| | *F.T.C. v. 9094-5114 Quebec, Inc.* | Case No. 03-cv-7486 (N.D. Ill.) |
| | *F.T.C. v. Ace Group, Inc.* | Case No. 08-cv-61686 (S.D. Fla.) |
| | *F.T.C. v. Affordable Media LLC* | Case No. 98-cv-669 (D. Nev.) |
| | *F.T.C. v. AmeraPress, Inc.* | Case No. 98-cv-0143 (N.D. Tex.) |
| | *F.T.C. v. American Bartending Institute, Inc., et al.* | Case No. 05-cv-5261 (C.D. Cal.) |
| | *F.T.C. v. American International Travel Services Inc.* | Case No. 99-cv-6943 (S.D. Fla.) |
| | *F.T.C. v. Asset & Capital Management Group* | Case No. 8:13-cv-1107 (C.D. Cal.) |
| | *F.T.C. v. Bigsmart.com, L.L.C., et al.* | Case No. 01-cv-466 (D. Ariz.) |
| | *F.T.C. v. Broadway Global Master Inc* | Case No. 2-cv-00855 (E.D. Cal.) |
| | *F.T.C. v. Call Center Express Corp.* | Case No. 04-cv-22289 (S.D. Fla.) |
| | *F.T.C. v. Capital Acquistions and Management Corp.* | Case No. 04-cv-50147 (N.D. Ill.) |
| | *F.T.C. v. Capital City Mortgage Corp.* | Case No. 98-cv-00237 (D.D.C.) |
| | *F.T.C. v. Centro Natural Corp* | Case No. 14:23879 (S.D. Fla.) |
| | *F.T.C. v. Certified Merchant Services, Ltd., et al.* | Case No. 4:02-cv-44 (E.D. Tex.) |
| | *F.T.C. v. Check Inforcement* | Case No. 03-cv-2115 (D.N.J.) |
| | *F.T.C. v. Chierico et al.* | Case No. 96-cv-1754 (S.D. Fla.) |
| | *F.T.C. v. Clickformail.com, Inc.* | Case No. 03-cv-3033 (N.D. Ill.) |
| | *F.T.C. v. Consumer Credit Services* | Case No. 96-cv-1990 (S.D. N.Y.) |
| | *F.T.C. v. Consumer Direct Enterprises, LLC.* | Case No. 07-cv-479 (D. Nev.) |
| | *F.T.C. v. Debt Management Foundation Services, Inc.* | Case No. 04-cv-1674 (M.D. Fla.) |
| | *F.T.C. v. Delaware Solutions* | Case No. 1:15-cv-00875-RJA (W.D.N.Y) |
| | *F.T.C. v. DeVry Education Group Inc.* | Case No. 2:16-cv-579 (C.D. Cal.) |
| | *F.T.C. v. Digital Enterprises, Inc.* | Case No. 06-cv-4923 (C.D. Cal.) |

| Practice Area | *Engagement* | Citation |
|---|---|---|
| | *F.T.C. v. Dillon Sherif* | Case No. 02-cv-00294 (W.D. Wash.) |
| | *F.T.C. v. Discovery Rental, Inc., et al.* | Case No: 6:00-cv-1057 (M.D. of Fla.) |
| | *F.T.C. v. EdebitPay, LLC.* | Case No. 07-cv-4880 (C.D. Cal.) |
| | *F.T.C. v. Electronic Financial Group, Inc.* | Case No. 03-cv-211 (W.D. Tex.) |
| | *F.T.C. v. Eureka Solutions* | Case No. 97-cv-1280 (W.D. Pa.) |
| | *F.T.C. v. Federal Data Services, Inc., et al.* | Case No. 00-cv-6462 (S.D. Fla.) |
| | *F.T.C. v. Financial Advisors & Associates, Inc.* | Case No. 08-cv-00907 (M.D. Fla.) |
| | *F.T.C. v. First Alliance Mortgage Co.* | Case No. 00-cv-964 (C.D. Cal.) |
| | *F.T.C. v. First Capital Consumer Membership Services Inc., et al.* | Case No. 1:00-cv-00905 (W.D.N.Y.) |
| | *F.T.C. v. First Capital Consumers Group, et al.* | Case No. 02-cv-7456 (N.D. Ill.) |
| | *F.T.C. v. Franklin Credit Services, Inc.* | Case No. 98-cv-7375 (S.D. Fla.) |
| | *F.T.C. v. Global Web Solutions, Inc., d/b/a USA Immigration Services, et al.* | Case No. 03-cv-023031 (D. D.C.) |
| | *F.T.C. v. Granite Mortgage, LLC* | Case No. 99-cv-289 (E.D. Ky.) |
| | *F.T.C. v. Herbalife International of America* | Case No. 2:16-cv-05217 (C.D. Cal.) |
| | *F.T.C. v. ICR Services, Inc.* | Case No. 03-cv-5532 (N.D. Ill.) |
| | *F.T.C. v. iMall, Inc. et al.* | Case No. 99-cv-03650 (C.D. Cal.) |
| | *F.T.C. v. Inbound Call Experts, LLC* | Case No. 9:14-cv-81395-KAM (S.D. Fla.) |
| | *F.T.C. v. Information Management Forum, Inc.* | Case No. 2-cv-00986 (M.D. Fla.) |
| | *F.T.C. v. Ira Smolev, et al.* | Case No. 01-cv-8922 (S.D. Fla.) |
| | *F.T.C. v. Jeffrey L. Landers* | Case No. 00-cv-1582 (N.D. Ga.) |
| | *F.T.C. v. Jewelway International, Inc.* | Case No. 97-cv-383 (D. Ariz.) |
| | *F.T.C. v. Kevin Trudeau* | Case No. 98-cv-0168 (N.D. Ill.) |
| | *F.T.C. v. Komaco International, Inc., et al.* | Case No. 02-cv-04566 (C.D. Cal.) |
| | *F.T.C. v. LAP Financial Services, Inc.* | Case No. 3:99-cv-496 (W.D. Ky.) |
| | *F.T.C. v. Lumos Labs, Inc.* | Case No. 3:16-cv-00001 (N.D. Cal.) |
| | *F.T.C. v. Marketing & Vending, Inc. Concepts, L.L.C., et al.* | Case No. 00-cv-1131 (S.D.N.Y.) |
| | *F.T.C. v. Mercantile Mortgage* | Case No. 02-cv-5078 (N.D. Ill.) |
| | *F.T.C. v. Merchant Services Direct, LLC* | Case No. 2:13-cv-00279 (E. D. Wa.) |
| | *F.T.C. v. Meridian Capital Management* | Case No. 96-cv-63 (D. Nev.) |
| | *F.T.C. v. NAGG Secured Investments* | Case No. 00-cv-02080 (W.D. Wash.) |
| | *F.T.C. v. National Consumer Counsil, Inc., et al.* | Case No. 04-cv-0474 (C.D. Cal.) |
| | *F.T.C. v. National Credit Management Group* | Case No. 98-cv-936 (D.N.J.) |
| | *F.T.C. v. National Supply & Data Distribution Services* | Case No. 99-cv-128-28 (C.D. Cal.) |
| | *F.T.C. v. Nationwide Information Services, Inc.* | Case No. 00-cv-06505 (C.D. Cal.) |
| | *F.T.C. v. NBTY, Inc.* | No. 05-4793 (E.D.N.Y.) |
| | *F.T.C. v. NetSpend* | Case No. 1:16-cv-04203-AT (N.D. Ga.) |
| | *F.T.C. v. NutriMost LLC* | Case No. 2:17-cv-00509-NBF (W.D. Pa.) |

ANALYTICS

| Practice Area | *Engagement* | Citation |
|---|---|---|
| | *F.T.C. v. One Technologies, LP* | Case No. 3:14-cv-05066 (N.D. Cal.) |
| | *F.T.C. v. Oro Marketing* | Case No. 2:13-CV-08843 (C.D. Cal.) |
| | *F.T.C. v. Pace Corporation* | Case No. 94-cv-3625 (N.D. Ill.) |
| | *F.T.C. v. Paradise Palms Vacation Club* | Case No. 81-1160D (W.D. Wash.) |
| | *F.T.C. v. Patrick Cella, et al.* | Case No. 03-cv-3202 (C.D. Cal.) |
| | *F.T.C. v. Platinum Universal, LLC* | Case No. 03-cv-61987 (S. D. Fla.) |
| | *F.T.C. v. Raymond Urso* | Case No. 97-cv-2680 (S.D. Fla.) |
| | *F.T.C. v. Rincon Management Services, LLC* | Case No. 5:11-cv-01623-VAP-SP (C.D. Cal.) |
| | *F.T.C. v. Robert S. Dolgin* | Case No. 97-cv-0833 (N.D. Cal.) |
| | *F.T.C. v. Southern Maintenance Supplies* | Case No. 99-cv-0975 (N.D. Ill.) |
| | *F.T.C. v. Star Publishing Group, Inc.* | Case No. 00-cv-023D (D. Wy.) |
| | *F.T.C. v. Stratford Career Institute* | Case No. 1:16-cv-00371 (N.D. Ohio) |
| | *F.T.C. v. Stuffingforcash.com Corp.* | Case No. 02-cv-5022 (N.D. Ill.) |
| | *F.T.C. v. Target Vending Systems, L.L.C., et al.* | Case No. 00-cv-0955 (S.D.N.Y.) |
| | *F.T.C. v. The College Advantage, Inc.* | Case No. 03-cv-179 (E.D. Tex.) |
| | *F.T.C. v. The Crescent Publishing Group, Inc., et al.* | Case No. 00-cv-6315 (S.D.N.Y.) |
| | *F.T.C. v. The Tax Club* | Case No. 13-cv-210 (JMF) (S.D.N.Y.) |
| | *F.T.C. v. The Tungsten Group, Inc.* | Case No. 01-cv-773 (E.D. Va.) |
| | *F.T.C. v. Think Achievement Corp.* | Case No. 2:98-cv-12 (N.D. Ind.) |
| | *F.T.C. v. Think All Publishing* | Case No. 07-cv-11 (E.D. Tex.) |
| | *F.T.C. v. Tracfone* | Case No. 3:15-cv-00392 (N.D. Cal.) |
| | *F.T.C. v. Trustsoft, Inc.* | Case No. 05-cv-1905 (S.D. Tex.) |
| | *F.T.C. v. Unicyber Gilboard, Inc.* | Case No. 04-cv-1569 (C.D. Cal.) |
| | *F.T.C. v. US Grant Resources, LLC.* | Case No. 04-cv-0596 (E.D. La.) |
| | *F.T.C. v. Verity International, Ltd., et al.* | Case No. 00-cv-7422-LAK (S.D.N.Y.) |
| | *F.T.C. v. Wellquest International, Inc.* | Case No. 2:03-cv-05002 (C.D. Cal.) |
| | *F.T.C. v. Wolf Group* | Case No. 94-cv-8119 (S.D. Fla.) |
| | *Fernando N. Lopez and Mallory Lopez, et al. v. City Of Weston* | Case No. 99-8958 CACE 07 (FL 17th Jud Dist) |
| | *Fiori, et al. v. Dell Inc., et al.* | Case No. 09-cv-01518 (N.D. Cal.) |
| | *FMS, Inc. v. Dell, Inc. et al.,* | Case No. 03-2-23781-7SEA (King County, Wash.) |
| | *FTC v Elite IT Partners, Inc.* | 2:19-cv-00125 (D. UT) |
| | *FTC v Fat Giraffe Marketing Group LLC* | 2:19-cv-00063 CW (C.D. Utah) |
| | *FTC v Grand Teton Professionals, LLC et al.* | 3:19-cv-00933 VAB (D. CT) |
| | *FTC v Manhattan Beach Venture LLC* | Case No. 2:19cv7849 (C.D. CA) |
| | *FTC v Physician's Technology, LLC* | 2:20-cv-11694 NGE-RSW (E.D. MI) |
| | *FTC v Renaissance Health Publishing, LLC dba Renown Health Products* | 9:20-cv-80640 DMM (S.D. FL) |
| | *FTC v Slac, Inc.* | 5:20-cv-00470 (C.D. CA) |

| Practice Area | ***Engagement*** | **Citation** |
|---|---|---|
| | *FTC v Zycal Bioceuticals Healthcare Company, Inc.* | 1:20-cv-10249 (D. MA) |
| | *Galatis, et al. v. Psak, Graziano Piasecki & Whitelaw, et. al.* | No. L-005900-04 (Middlesex County, NJ) |
| | *Garcia v. Allergan* | 11-cv-9811 (C.D. Cal.) |
| | *Gloria Lopez et al. v Progressive County Mutual Insurance Company* | 5:19-cv-00380 FB-ESC (W.D. TX) |
| | *Grabowski v. Skechers U.S.A., Inc.* | No. 3:12-cv-00204 (W.D. Ky.) |
| | *Greg Benney, et al. v. Sprint International Communications Corp. et al.* | Case No. 02-cv-1422 (Wyandotte County, KS) |
| | *Griffin v. Dell Canada Inc* | Case No. 07-cv-325223D2 (Ontario, Superio Court of Justice) |
| | *Haas and Shahbazi vs. Navient Solutions and Navient Credit Finance Corporation* | Case No. 15-35586 (DRJ) (S.D. Texas) |
| | *Harris, et al. v. Roto-Rooter Services Company* | Case No. 00-L-525 (Madison County, IL) |
| | *Harrison, et al. v. Pacific Bay Properties* | No. BC285320 (Los Angeles County, CA) |
| | *Henderson, et al . V. Volvo Cars of North America, LLC, et al.* | 09-04146 (D.N.J.) |
| | *In re H&R Block IRS Form 8863 Litigation* | Case No. 4:13-MD-02474-FJG. (W.D. MO) |
| | *In Re: Bancomer Transfer Services Mexico Money Transfer Litigation* | BC238061, BC239611(Los Angeles County, CA) |
| | *In Re: Certainteed Fiber Cement Siding Litigation* | MDL 2270 (E.D. PA) |
| | *In Re: H&R Block Express IRA Marketing Litigation* | Case No. 06-md-01786 (W.D. Mo.) |
| | *In Re: High Carbon Concrete Litigation* | Case No. 97-cv-20657 (D. Minn.) |
| | *In Re: High Sulfur Content Gasoline Products Liability Litigation* | MDL No. 1632 (E.D. La.) |
| | *In Re: Ria Telecommunications and Afex Mexico Money Transfer Litigation* | Case No. 99-cv-0759 (San Louis Obispo, Cal.) |
| | *In Re: Salmonella Litigation* | Case No. 94-cv-016304 (D. Minn.) |
| | *Janet Figueroa, et al. v. Fidelity National Title Insurance Company* | Case No. 04-cv-0898 (Miami Dade County, Fla.) |
| | *Jerome H. Schlink v. Edina Realty Title* | Case No. 02-cv-18380 (D. Minn.) |
| | *Jerome Walls, et al. v. JP Morgan Chase Bank, N.A., et al.* | Case No. 11-00673 (W.D. KY) |
| | *Joel E. Zawikowski, et al. v. Beneficial National Bank, et al.* | Case No. 98-cv-2178 (N.D. Ill.) |
| | *John Babb, et al. v. Wilsonart International, Inc.* | Case No. CT-001818-04 (Memphis, Tenn.) |
| | *John Colin Suttles, et al. v. Specialty Graphics, Inc.,* | Case No. 14-505 (W.D. TX) |
| | *Kenneth Toner, et al. v. Cadet Manufacturing Company* | Case No. 98-2-10876-2SEA (King County, Wash.) |
| | *Kiefer, et al. v. Ceridian Corporation, et al.* | Case No. 3:95-cv-818 (D. Minn.) |
| | *Kobylanski et al. v. Motorola Mobility, Inc. et al.* | No. 13-CV-1181 (W.D. Pa.) |
| | *Lisa Ranieri et al.v AdvoCare International, L.P.* | Case No. 3:17-cv-00691 B (N.D. TX) |
| | *Long et al v. Americredit Financial Services, Inc.* | 0:2011-02752 (Hennepin County, MN) |
| | *Louis Thula, et al. v. Lawyers Title Insurance Corporation* | Case No. 0405324-11 (Broward County, Fla.) |
| | *Lynn Henderson, et al. v. Volvo Cars of North America, LLC, et al.* | No. 2:09-cv-04146-CCC-JAD (D.N.J.) |
| | *Lynnette Lijewski, et al. v. Regional Transit Board, et al.* | Case No. 4:93-cv-1108 (D. Minn.) |
| | *Mark Laughman, et al. v. Wells Fargo Leasing Corp. et al.* | Case No. 96-cv-0925 (N.D. Ill.) |
| | *Mark Parisot et al v. US Title Guaranty Company* | Case No. 0822-cc-09381 (St. Louis Circuit Court, Mo.) |
| | *Mark R. Lund v. Universal Title Company* | Case No. 05-cv-00411 (D. Minn.) |
| | *Marks, et al. v. The Realty Associates Fund X, et al.* | CA No. SUCV2018-00056-BLS1 (Suffolk County, MA) |

| Practice Area | *Engagement* | Citation |
|---|---|---|
| | *Melissa Castille Dodge, et al. v. Phillips College of New Orleans, Inc., et al.* | Case No. 95-cv-2302 (E.D. La.) |
| | *Michael Drogin, et al. v. General Electric Capital Auto Financial Services, Inc.* | Case No. 95-cv-112141 (S.D.N.Y.) |
| | *Michael Sutton v. DCH Auto Group, et al.* | (Essex County, NJ) |
| | *Michael T. Pierce et al. v. General Electric Capital Auto Lease* | CV 93-0529101 S |
| | *Mitchem, et al v. Illinois Collection Service, Inc.* | Case No. 09-cv-7274 (N.D. Ill.) |
| | *Northcoast Financial Services v. Marcia Webster* | 2004 CVF 18651 (Cuyahoga County, OH) |
| | *Oubre v. Louisiana Citizens Fair Plan* | No. 625-567 (Jefferson Parish, LA) |
| | *Patricia Faircloth, et a. v. Certified Finance, Inc., et al.* | Case No. 99-cv-3097 (E.D. La.) |
| | *Pistilli v. Life Time Fitness, Inc.* | Case No. 07-cv-2300 (D. Minn.) |
| | *Rawlis Leslie, et al. v. The St. Joe Paper Company* | Case No. 03-368CA (Gulf County, Fla.) |
| | *Regayla Loveless, et al. v. National Cash, Inc, et al.* | Case No. 2001-cv-892-2 (Benton County, Ark.) |
| | *Ricci, et al., v. Ameriquest Mortgage Co.* | Case No. 27-cv-05-2546 (D. Minn.) |
| | *Ronnie Haese, et al. v. H&R Block, et al.* | Case No. 96-cv-423 (Kleberg County, Tex.) |
| | *Sandra Arnt, et al. v. Bank of America, N.A.* | No. 27-cv-12-12279 (Hennepin County, MN) |
| | *Sara Khaliki, et al. v. Helzberg Diamond Shops, Inc.* | 4:11-cv-00010 (W.D. Mo.) |
| | *Shepherd, et al. v. Volvo Finance North America, Inc., et al.* | Case No. 1:93-cv-971 (D. Ga.) |
| | *Skusenas v. Linebarger, Goggan, Blair & Sampson, LLC.* | Case No. 1:10-cv-8119 (N.D. Ill.) |
| | *Smith v. NRT Settlement Services of Missouri, LLC* | Case No. 06-cv-004039 (St. Louis County, MO) |
| | *Terrell Ervin v. Nokia Inc. et al.* | Case No. 01-L-150 (St. Clair County, Ill.) |
| | *The People of the State of California v. Rainbow Light Nutritional Systems, LLC, et al.* | Case No. 19STCV28214 (Los Angeles County, CA) |
| | *Theresa Boschee v. Burnet Title, Inc.* | Case No. 03-cv-016986 (D. Minn.) |
| | *Thomas Geanacopoulos v. Philip Morris USA, Inc.* | Civil Action No. 98-6002-BLS1 (MA Superior Court) |
| | *Thomas Losgar, et al. v. Freehold Chevrolet, Inc., et al.* | Case No. L-3145-02 (Monmouth County, NJ) |
| | *Tiffany Ellis, et al. v. General Motors LLC* | Case No. 2:16-cv-11747 (E.D. Mich.) |
| | *Tom Lundberg, et al. v. Sprint Corporation, et al.* | Case No. 02-cv-4551 (Wyandotte County, Kan.) |
| | *Truc-way, Inc., et al. v. General Electric Credit Auto Leasing* | Case No. 92-CH-08962 (Cook County, Ill.) |
| | *Trudy Latman, et al. vs. Costa Cruise Lines, N.V., et al* | Case No. 96-cv-8076 (Dade County, Fla.) |
| | *U.S. v. $1,802,651.56 in Funds Seized from e-Bullion, et al. ("Goldfinger")* | No. CV 09-1731 (C.D. Cal.) |
| | *U.S. v. $1,802,651.56 in Funds Seized from e-Bullion, et al. ("Kum Ventures")* | No. CV 09-1731 (C.D. Cal.) |
| | *U.S. v. David Merrick* | 6:10-cr-109-Orl-35DAB |
| | *U.S. v. Sixty-Four 68.5 lbs (Approx.) Silver Bars, et al.* | (E.D. Fla) |
| | *United States of America v. Alfredo Susi, et al.* | 3:07-cr-119 (W.D.N.Y.) |
| | *United States of America v. David Merrick* | 6:10-cr-109-Orl-35DAB |
| | *United States of America v. Elite Designs, Inc.* | Case No. 05-cv-058 (D. R.I.) |
| | *United States of America v. Evolution Marketing Group* | Case No. 6:09-cv-1852 (S.D. Fla.) |
| | *United States of America v. Regenesis Marketing Corporation* | No. C09-1770RSM (W.D. Wash.) |
| | *United States of America v. Sixty-Four 68.5 lbs (Approx.) Silver Bars, et al.* | (E.D. Fla.) |

| Practice Area | *Engagement* | Citation |
|---|---|---|
| | *Vicente Arriaga, et al. v. Columbia Mortgage & Funding Corp, et al.* | Case No. 01-cv-2509 (N.D. Ill.) |
| | *William R. Richardson, et al., v. Credit Depot Corporation of Ohio, et al.* | Case No. 315343 (Cuyahoga County, Ohio) |
| | *Zyburo v. NCSPlus Inc.* | Case No. 12-cv-06677 (S.D.N.Y.) |
| CryptoCurrency | *U.S. v. $1,802,651.56 in Funds Seized from e-Bullion, et al. ("Goldfinger")* | No. CV 09-1731 (C.D. Cal.) |
| | *U.S. v. $1,802,651.56 in Funds Seized from e-Bullion, et al. ("Kum Ventures")* | No. CV 09-1731 (C.D. Cal.) |
| | *United States of America v. $1,802,651.56 in Funds Seized from E-Bullion, et al.* | Case No. 09-cv-01731 (C.D. Cal.) |
| Data Breach | *F.T.C. v. Choicepoint* | Case No. 06-cv-0198 (N.D. Ga.) |
| | *First Choice Federal Credit Union v. The Wendy's Company* | Case No. 2:16-cv-00506-NBF-MPK (W.D. Pa.) |
| | *In Re Equifax, Inc. Customer Data Security Breach Litigation* | 1:17-md-2800 TWT (N.D. GA) |
| | *Sterling et al. v. Strategic Forecasting, Inc. et al.* | No. 2:12-cv-00297-DRH-ARL (E.D.N.Y.) |
| | *Veridian Credit Union v. Eddie Bauer LLC* | No. 2:17-cv-00356 (W.D. Wash.) |
| | *Village Bank et al. v Caribou Coffee Company, Inc.* | 0:19-cv-01640 (D. MN) |
| Data Breach/Privacy | *Anderson, et al. v. United Retail Group, Inc., et al.* | Case No. 37-cv-89685 (San Diego County, Cal.) |
| | *F.T.C. v. CEO Group, Inc.* | Case No. 06-cv-60602 (S.D. Fla.) |
| | *In Re: U.S. Bank National Association Litigation* | Case No. 99-cv-891 (D. Minn.) |
| Employment | *Aaron Riffle et al. v Cristy's Pizza, Inc.* | 2:19-cv-04750 GCS-CMV (S.D. OH) |
| | *Adam P. Kelly, et al v. Bank of America, N.A., et al.* | No. 10-CV-5332 (E.D. Ill.) |
| | *Alequin, et al. v. Darden Restaurants, Inc. et al.* | Case No.: 12-61742-CIV (S.D. Fla.) |
| | *Alice Williams, et a. v. H&R Block Enterprises* | RG 08366506, (County of Alameda, CA) |
| | *Alicia Ousley v CG Consulting d/b/a Scores Columbus* | Case No. 2:19-cv-01744 SDM-KAJ (S.D. OH) |
| | *Alma Anguiano v. First United Bank and Trust Co.* | Case No. CIV-12-1096 (D. Okla.) |
| | *Andrew R. Rondomanski, et al. v. Midwest Division, Inc.* | No. 11-cv-00887 (W.D. Mo.) |
| | *Antwaun Jones et al. v United American Security LLC* | Case No. 1:20cv00440 JG (N.D. OH) |
| | *Arturo Reyes et al. v Ivary Management Co. dba Renaissance Stone Care and Waterproofing* | 19CV340357 (Santa Clara, CA) |
| | *Balandran, et al. v. Labor Ready, et al.* | BC 278551 (Losa Angeles County, Cal.) |
| | *Ballard, et al. v. CoreCivic of Tennessee, LLC* | Case No. 3:20cv418 (M.D. Tenn.) |
| | *Ballard, et al., v. Fogo de Chao, LLC* | Case No. 09-cv-7621 (D. Minn.) |
| | *Barbara Jane Freck et al. v Cerner Corporation* | 4:20-cv-00043 BCW (W.D. MO) |
| | *Batiste v. TopGolf International Inc. and TopGolf USA Spring Holdings, LLC* | Civil Action 4:20-cv-00655 (S.D. Tx.) |
| | *Beasley, et al. v. GC Services LP* | Case No. 09-cv-01748 (E.D. Mo.) |
| | *Berry v. Farmers Bank & Trust, N.A.* | Case No. 13-02020 |
| | *Berte v. WIS Holdings Corporation* | 07-cv-1932 (S.D. Cal.) |
| | *Bishop et al. v. AT&T Corp.* | Case No. 08-cv-00468 (W.D. Pa.) |
| | *Bobbi Hardisky et al. v Gateway Health LLC* | Case No. 2:20-cv-01483 MPK (W.D. PA) |
| | *Bobbie Jarrett v. GGNSC Holdings, LLC* | Case No.: 12-CV-4105-BP (W.D. Mo.) |
| | *Bobbi-Jo Smiley et al. v E.I. Dupont De Nemours and Company* | 3:12-cv-02380 (M.D. PA) |
| | *Brenda Wickens, et al. v Thyssenkrupp Crankshaft Co. LLC* | Case No. 1:19-cv-06100 (S.D. IL) |

| Practice Area | *Engagement* | Citation |
|---|---|---|
| | *Brian Smith et al. v Kellogg Company* | 1:18-cv-01341 PLM-RSK (D. NV) |
| | *Brittanee Tupitza et al. v Texas Roadhouse Management Corporation* | Case No. 1:20-cv-00002 (W.D. PA) |
| | *Cara Nasisi et al.v Comprehensive Health Management, Inc.* | Case No. 1:19-cv-4132 KPF (S.D. N.Y.) |
| | *Carlos Calderas, et al. v AK Tube, LLC* | Case No. 3:19-cv-02431 JZ (W.D. OH) |
| | *Carolyn Bledsoe at al. v LHC Group, Inc.* | 2:18-cv-02863 (D. AZ) |
| | *Carolyn M. Nicholson et al. v IOC-Boonville, Inc. dba Isle of Capri Casino Hotel, Boonville* | 2:19-cv-04084 (W.D. MO) |
| | *Chandler Glover and Dean Albrecht, et al., v. John E. Potter* | EEOC No. 320-A2-8011X; Agency No. CC-801-0015-99 |
| | *Chantel Headspeth et al. v TPUSA, Inc. dba Teleperformance USA* | 2:19-cv-02062 ALM-CMV (S.D. OH) |
| | *Charles Fravel, et al. v General Mills Operations, LLC* | Case No. 2:20-cv-01094 EAS-CMV (S.D. OH) |
| | *Cheyenne Seiber at al.vManagement and Training Corporation* | 3:19-cv-02983 (N.D. OH) |
| | *Christopher Evins v. Glow Networks, Inc.* | Case No. 14-cv-00544 (W.D. Mo.) |
| | *Christopher Rawlings ae al. v BMW Financial Services NA, LLC* | 2:20-cv-02289 EAS-KAJ (S.D. OH) |
| | *Claudine Wilfong, et al. v. Rent-A-Center, Inc.* | Case No. 00-cv-680 (S.D. Ill.) |
| | *Coltogirone, et al. v. Gateway Health, LLC* | Case No. 2:20-cv-00605-MJH (W.D. Pa.) |
| | *Copher v. Motor City Auto Transport, Inc.* | 15-2500-CK (Macomb County, MI) |
| | *Creed, et al. v. Benco Dental Supply Co.* | 3:12-CV-1571 (E.D. Pa.) |
| | *Dania Pruess, et al. v Presbyterian Health Plan, Inc.* | Case No. 1:19-cv-629 KG-JFR (D. New Mexico) |
| | *Darrin Dickerson et al. v Zayo Group, LLC* | 1:20-cv-02490 (D. CO) |
| | *Dawn Bellan, et al. v Capital Blue Cross* | Case No. 1:20-cv-00744 YK (M.D. PA) |
| | *Day, et al. v. KASA Delivery LLC.* | Case No. 01-17-0000-2142 (AAA) |
| | *De La Torre v. Colburn Electric Company* | Civil Action No. 4:20-cv-00127-JED-JFJ (N.D. Okla.) |
| | *Doe, et al. v. Cin-Lan, Inc, et al.* | Case No. 4:08-cv-12719 (E.D. Mich.) |
| | *Doe, et al. v. Déjà Vu Services, Inc., et al.,* | No. 2:16-cv-10877 (E.D. Mich.) |
| | *Don Brooks et al. v C.H. Robinson International, Inc. et al.* | 4:16-cv-00939 (W.D. MO) |
| | *Donna Disselkamp at al. v Norton Healthcare, Inc.* | 3:18-cv-00048 CRS (W.D. KY) |
| | *Donna Marcum v Lakes Venture LLC dba Fresh Thyme Farmers Market LLC* | 3:19-cv-00231 DJH (W.D. KY) |
| | *DuBeau et al v. Sterling Savings Bank et al.* | No. 12-cv-1602 (D. Or.) |
| | *Dzianis Huziankou et al. v NY Sweet Spot Café Inc. dba Sweetspot Café* | 1:18-cv-05715 (E.D. N.Y.) |
| | *Ebony Jones at al. v CBC Restaurant Corp. dba Corner Bakery Cafe* | 1:19-cv-06736 (N.D. IL) |
| | *Edward Watson at al. v Tennant Company, a Minnesota Corporation* | 2:18-cv-02462 WBS-DB (E.D. CA) |
| | *EEOC v Oceanic Time Warner Cable LLC, et al.* | Case No. CV -18-00357 DKW-KJM (D. Hawaii) |
| | *Elizabeth Border et al. v Alternate Solutions Health Network LLC* | Case No. 2:20-cv-01273 ALM-KAJ (S.D. OH) |
| | *Elvia Boyzo et al. v United Service Companies, Inc.* | 1:18-cv-6854 (N.D. IL) |
| | *Equal Employment Opportunity Commission (EEOC) v. Star Tribune Company* | Case No. 08-cv-5297(D. Minn.) |
| | *Equal Employment Opportunity Commission v Faribault Foods, Inc.* | Case No. 07-cv-3976 (D. Minn.) |
| | *Feiertag v. DDP Holdings, LLC d/b/a Apollo Retail Specialists, LLC,* | Case No. 2:14-cv-2643 (S.D. Ohio) |
| | *Felina Robinson v The Buffalo News, Inc.* | Case No. 801427/2019 (Erie County, NY) |

| Practice Area | ***Engagement*** | **Citation** |
|---|---|---|
| | *Ferreras, et. al v. American Airlines, Inc.* | 16-cv-2427 (D.N.J.) |
| | *Fisher, et al. v. Michigan Bell Telephone Company* | Case No. 09-cv-10802 (E.D. Mich.) |
| | *Frank De La Paz v. Accurate Courier NCA LLC* | Case No. 16CV00555 (County of Santa Cruz, CA) |
| | *Frank, Peasley, Waters, and Wilhelm, v Gold'n Plump Poultry, Inc.* | Case No. 04-cv-1018 (D. Minn.) |
| | *French v. Midwest Health Management, Inc.* | Case No.: 2:14-cv-2625 |
| | *Geelan, et al. v. The Mark Travel Coporation* | Case No. 03-cv-6322 (D. Minn.) |
| | *Gipson, et al. v. Southwestern Bell Telephone Company* | Case No. 08-cv-2017 (D. Kan.) |
| | *Greene, et al. v. Shift Operations LLC, et al.* | Case No. CGC 16-552307 (County of San Francisco, CA) |
| | *Gregory Hernandez v. The Children's Place* | No. CGC 04-4300989 (San Francisco, CA) |
| | *Gretchen Valencia et al. v Armada Skilled Home Care of NM LLC* | 1:18-cv-01071 KG-JFR (D. NM) |
| | *Hawkins v. JPMorgan Chase Bank, N.A.* | Case No. 8:19-cv-02174 (M.D. Fla.) |
| | *Heather Betts et. al. v Central Ohio Gaming Ventures, LLC* | 2:16-cv-00373 EAS-EPD (S. D. OH) |
| | *Helen Bernstein, et al. v. M.G. Waldbaum* | Case No. 08-cv-0363 (D. Minn.) |
| | *Helen Hamlin v Gorant Chocolatier, LLC* | 4:20-cv-00117 (N.D. OH) |
| | *Holt v. Living Social* | 1:2012cv00745 (D.D.C.) |
| | *Jacob Bartakovits et al. v Wind Creek Bethlehem LLC dba Wind Creek Bethlehem* | 5:20-cv-01602 (E.D. PA) |
| | *James Meyers et al. v Boomerang Rubber, Inc.* | 3:19-cv-00070 WHR (S.D. OH) |
| | *James Oakley et al. v The Ohio State University Wexner Medical Ctr.* | 2017-00845 (Oh state Court of Claims) |
| | *James Smith et al. v Oakley Transport, Inc.* | 3:19-cv-05854 EMC (N.D. CA) |
| | *Jamise Collins et al. v Goodwill Industries of Greater Cleveland & East Central Ohio* | 1:19-cv-01433 (N.D. OH) |
| | *Jason Adams et al. v Wenco Ashland, Inc.* | 1:19-cv-1544 CEH (N.D. OH) |
| | *Javier Garza et al. v Wood Group USA, Inc.* | 4:20-cv-00253 (S.D. TX) |
| | *Jennifer Dennis et al. v Greatland Home Health Services, Inc.* | 1:19-cv-05427 (N.D. IL) |
| | *Jennifer Hardy et al. v DuPage Medical Group, LTD* | 1:19-cv-02265 (N.D. IL) |
| | *Jennifer Hayes, et al. v Thor Motor Coach Inc.* | Case No. 3:19-cv-375 DRL-MGG (N.D. IN) |
| | *Jeremiah Smith et al. v PPG Industries, Inc.* | 1:19-cv-01518 (N.D. OH) |
| | *Jessica Owens et al. v Hearthside Food Solutions, LLC* | 3:19-cv-02479 (N.D. OH) |
| | *Jimmy West v. PSS World Medical, Inc.* | Case No. 4:13-cv-00574 (E.D. Mo.) |
| | *John Alba, et al. v. Papa John's USA, Inc.* | Case No. 05-cv-7487 (W.D. Cal.) |
| | *John Lewis et al. v Sentry Electrical Group, Inc.* | 1:19-cv-00178 WOB (S.D. OH) |
| | *Johnson, et al v. General Mills, Inc.* | Case No. 10-cv-1104 (W.D. Mo.) |
| | *Joseph Gallant et al. v Arrow Consultation Services, Inc.* | 1:19-cv-00925 (S.D. IN) |
| | *Justice v. Associated Materials, LLC* | Case No. 5:20-cv-00410-SL (N.D. Ohio) |
| | *Karyn Petersen, et al. v EmblemHealth, Inc. et al.* | Case No. 1:20-cv-2568 CBA-RLM (E.D.N.Y.) |
| | *Kelly Marie Camp, et al. v. The Progressive Corporation, et al.* | Case No. 01-cv-2680 (E.D. La.) |
| | *Kelly, et al v. Bank of America, N.A. et al.* | No. 10-5332 (N.D. Ill.) |
| | *Kevin Moitoso et al. v FMR LLC* | 1:18-cv-12122 WGY (D. MA) |

| Practice Area | *Engagement* | Citation |
|---|---|---|
| | *Kulauzovic et al. v. Citibank, N.A.* | Index No. 507538/2018 (County of Kings, NY) |
| | *Kusinski v. MacNeil Automotive Products Limited* | Case No. 17-cv-3618 (N.D. Ill.) |
| | *Lang, et al v DirecTV, Inc., et al.* | No. 10-1085 (E.D. La.) |
| | *Latanya Miles et al. v Variety Wholesalers, Inc.* | 1:19-cv-01714 PAB (N.D. OH) |
| | *Lavar Martin et al. v Summit County* | 5:19-cv-02641 JRA (N.D. OH) |
| | *Lee and Campion v. The City of Philadelphia* | NO. 001125 (Court of Common Pleas, Philadelphia County) |
| | *Linda J. Calhoun et al. v Aon Hewitt Health Insurance Solution, Inc.* | Case No. 1:19-cv-01810 (N.D. IL) |
| | *Lynn Lietz, et al. v. Illinois Bell Telephone Company, et al.* | No. 1:11-cv-0108 (N.D. Ill.) |
| | *Mallory v. Aclara Smart Grid Solutions, LLC* | Case No. 2:20-cv-0240 (S.D. Ohio) |
| | *Mark Satterly et al. v Airstream, Inc.* | 3:19-cv-00032 WHR (S.D. OH) |
| | *Mary Hutkai, et al. v. Penn National Gaming, Inc., et al.* | Case No. 4:16-cv-00906 (W.D. Mo.) |
| | *Mary Walburn et al. v Lend-A-Hand Services, LLC* | 2:19-cv-00711 ALM-CMV (S.D. OH) |
| | *Michael A. Rivota et al. v Bank of America Corporation* | 1:18-cv-03843 (N. D. IL) |
| | *Michael Fisher et al. v Dura-Line Corporation* | 1:19-cv-00286 (N. D. OH) |
| | *Michael Levine, et al. v Vitamin Cottage Natural Food Markets, Inc.* | Case No. 1:20-cv-00261 STV (D. CO) |
| | *Michelle Jackson, et al. v. Jamba Juice Company* | Case No. 8:02-cv-00381 (C.D. Cal.) |
| | *Monica Brunty et al. v Optima Health Plan* | 2:19-cv-00255 (E.D. VA) |
| | *Nicholas O'Neil et al. v Miller Pipeline LLC* | Case No. 2:20-cv-04034 MHW-CMV (E.D. OH) |
| | *Norma Marquez et al. v RCKC Corporation et al.* | 1:18-cv-07977 (N.D. IL) |
| | *OFCCP v. B&H Foto & Electronics Corp.* | Case No. 2016-OFC-0004 (Department of Labor) |
| | *Owen, et al. v. Punch Bowl Minneapolis, LLC* | Case No. 19-cv-0955 (D. Minn) |
| | *Pamela Adams, et al., v. MedPlans Partners, Inc* | Case No. 3:07-cv-259 (W.D. Ky.) |
| | *Parnell, et al. v. Academy Mortgage Corporation* | Case No. 01-17-0004-5311 (AAA) |
| | *Pedro Rodriguez Martinez v Alpha Technologies Services, Inc.* | 5:17-cv-628 (E.D. NC) |
| | *Phillip Busler, et al. v. Enersys Energy Products Inc., et al.* | Case No. 09-cv-0159 (W.D. Mo.) |
| | *Powell v. The Kroger Company and Dillon Companies, LLC* | Case No. 1:20-cv-01983 (D. Colo.) |
| | *Prentis Walton et al. v Oldcastle Building Envelope, Inc.* | 3:18-cv-02936 (N. D. OH) |
| | *Ray Cruz-Perez v Penn National Gaming, Inc.* | 1:20-cv-02577 (N.D. IL) |
| | *Robert Eddings v. General Aluminum Manufacturing Company* | Case No. 1:17-CV-00362 (N.D. Ohio) |
| | *Robert Stock et al. v Xerox Corporation* | Case No. 6:16-cv-06256 EAW (W.D. N.Y.) |
| | *Rocher, et al. v. Sav-on Drugs, et al.* | Case No. BC 227551 (Los Angeles County, Cal.) |
| | *Russell Cain v JB Hunt Transport, Inc.* | Case No. D-202-CV-2019-00710 (Bernalillo County, NM) |
| | *Russell, et al. v. Illinois Bell Telephone Company* | Case No. 08-cv-1871 (N.D. Ill.) |
| | *Ryan Ransom et al. v Burrows Paper Corporation* | Case No. 2:20-cv-03824 MHW-CMV (S.D. OH) |
| | *Sakinah Kelly at al. v Evolent Health LLC* | 1:19-cv-00500 (N. D. IL) |
| | *Salamon v. Bayview Loan Servicing, LLC* | No. 01-17-0002-1424 (AAA) |
| | *Scott Snider et at. V Quantum Health, Inc.* | 2:20-cv-02296 CMV (E.D. OH) |

| Practice Area | *Engagement* | Citation |
|---|---|---|
| | *Sequoia Moss-Clark, et al. v. New Way Services, Inc., et al.* | Case No. C12-1391 (Contra Costa County, CA) |
| | *Sergio Moreno et al. v Silvertip Completion Services Operating LLC* | Case No. 7:19-cv-00240 (W.D. TX) |
| | *Shannon Wheeler v. Cobalt Mortgage, Inc. et al.* | Case No. 2:14-cv-B1847-JCC (W.D. WA) |
| | *Sherman Wright et al. v The Kroger Co.* | 1:19-cv-00761 MRB (S.D. OH) |
| | *Smallwood, et al. v. Illinois Bell Telephone Company,* | Case No. 09-cv-4072 (N.D. Ill.) |
| | *Smith v. Family Video* | No. 11-cv-01773 (N.D. Ill.) |
| | *Smith v. Pizza Hut, Inc.* | No. 09--cv-01632-CMA-BNB (D. Colo.) |
| | *Speraneo v. BJC Health Systems, Inc. d/b/a BJC HealthCare* | Case No. 1322-CC09701 (St. Louis County, MO) |
| | *Stephanie Sanz, et al. v. Johny Utah 51, LLC* | Case No. 14-cv-4380 (S.D.N.Y.) |
| | *Stephen DiGiorgio et al. v EOS Holdings, Inc.* | 1:16-cv-11069 (D. MA) |
| | *Steven Belt v P.F. Chang's China Bistro, Inc.* | 2:18-cv-03831 AB (E.D. PA) |
| | *Teeter v. NCR Corporation* | Case No. 08-cv-00297 (C.D. Cal.) |
| | *Terri Powell et al. v IKEA Industry Danville, LLC* | 4:18-cv-00058 (W.D. VA) |
| | *Terrie Gammon et al. v Marietta OPCO, LLC dba Arbors at Marietta* | 2:19-cv-05140 JLG-EPD (S.D. OH) |
| | *The Fortune Society, Inc. et al. v. Macy's, Inc. et al.* | No. 19 Civ. 5961 (S.D.N.Y.) |
| | *Thomas Cramer et al. v. Bank of America, N.A. et al.* | Case No. 12-08681 (N.D. Ill.) |
| | *Thomas Dege, et al., v. Hutchinson Technology, Inc.* | Case No. 06-cv-3754 (D. Minn.) |
| | *Thomas v. Kellogg Company et al.* | Case No. 3:13 Civ. 05136 (W.D. Wash.) |
| | *Thompson v. Qwest Corporation, et al.* | Civil Action No.: 1:17-cv-1745 (D. Colo.) |
| | *Todd Coleman v Trophy Nut Co.* | 3:19-cv-00374 TMR (S.D. OH) |
| | *Tracie Ford et al. v Cardinal Innovations Healthcare Solutions* | Case No. 1:20-cv-00736 (M.D. NC) |
| | *Tracy Mattison et al. v Trubridge, Inc.* | 5:19-cv-01618 JRA (N.D. OH) |
| | *Trista L.Freeman, et al. v Crossroads Hospice of Northeast Ohio LLC* | Case No. 5:20-cv-01579 BYP (E.D. OH) |
| | *Twohill, et al. v. First Acceptance Corporation* | Case No. 3:17–cv–00284 (M.D. Tenn.) |
| | *Wallace Pitts at al. v. G4s Secure Solutions (USA), Inc.* | 2:19-cv-02650 MHW-CMV (E.D. OH) |
| | *Watkins, et al. v. I.G. Incorporated, etl a.* | Case No. 27-13-15361 (Hennepin County, MN) |
| | *Weeks v. Matrix Absence Management, Inc.* | Case No. 2:20-cv-884 (D. Arizona) |
| | *White et al. v. Edward Jones Co., L.P. dba Edward Jones* | No. 17 Civ. 02004 (N.D. Ohio) |
| | *Wilkinson, et al. v. NCR Corporation* | Case No. 1:08-cv-5578 (N.D. Ill.) |
| | *William Perrin, et al. v. Papa John's International* | No. 4:09-CV-01335 (E.D. Mo.) |
| | *William Whitlock, et. al v. FSH Management, LLC, et. al.* | 3:10-cv-00562-M |
| | *Williams v. DH Pace* | Case No. 4:14-cv-00161 (W.D. Mo.) |
| | *Williams, et al. v. Dollar Financial Group, et al.* | Case No. RG03099375 (Alameda County, CA) |
| | *Williams, et al. v. G4S Secure Solutions (USA) Inc.* | Civil Action No. 1:17-CV-00051 (M.D.N.C) |
| | *Williams, et al. v. H&R Block Enterprises, Inc.* | No. RG 08366506 (Alameda County, CA) |
| | *Wittemann, et al. v. Wisconsin Bell, Inc.* | Case No. 09-cv-440 (W.D. Wisc.) |
| | *Wlotkowski, et al. v. Michigan Bell* | Case No. 09-cv-11898 (E.D. Mich.) |

| Practice Area | ***Engagement*** | Citation |
|---|---|---|
| Environmental | *Bernice Samples, et al. v. Conoco, Inc., et al.* | Case No. 01-0631-CA-01 (Escambia Country, Fla.) |
| | *Billieson, et al. v. City of New Orleans, et al.* | No. 94-19231 (Orleans Parish, LA) |
| | *City of Greenville, et al., v. Syngenta Crop Protection, Inc., and Syngenta AG* | No. 3:10-cv-00188-JPG-PMF (S. D. Ill.) |
| | *In Re: Duluth Superior Chemical Spill Litigation* | Case No. 92-cv-503 (W.D. Wis.) |
| | *Keltner, et al., v. SunCokeEnergy, Inc., et al.* | Case No.: 2014-L-1540 (Madison County, IL) |
| | *Latta, et al. v. Hannibal Board of Public Works, et al.* | Case No. 16SL-CC01881 (St. Louis, MO) |
| | *McGruder, et al. v. DPC Enterprises* | No. CV2003-022677 (Maricopa County, AZ) |
| | *Mehl v. Canadian Pacific Railway, Limited* | Case No. 02-cv-009 (D.N.D.) |
| | *Michelle Marshall, et al. v. Air Liquide -- Big Three, Inc. et al.* | No. 2005-08706 (Orleans Parish, LA) |
| | *Perrine, et al. v. E.I. Dupont De Nemours and Company, et al.* | 01-0631-CA-01 (Harrison C., WV) |
| ERISA | *In Re: Broadwing Inc ERISA Litigation* | Case No. 02-cv-00857 (S.D. Ohio) |
| | *Quince Rankin v. Charles C. Conway (Kmart ERISA Litigation)* | Case No. 02-cv-71045 (E.D. Mich.) |
| ERISA - 401k/403b Fee | *André Clark, et al., v. Oasis Outsourcing Holdings, Inc., et al.* | Case No. 9:18-cv-81101- RLR (S.D. Fla.) |
| | *Anthony Abbott, et al. v. Lockheed Martin Corp., et al.* | Case No. 06-701 (S.D. Ill.) |
| | *Bacon, et al., v. Board of Pensions of the Evangelical Lutheran Church in America* | Case No. 27-CV-15-3425 (Hennepin County, MN) |
| | *Beach, et al.v JPMorgan Chase Bank, N.A., et al.* | Case No. 17-00563-JMF (S.D.N.Y.) |
| | *Bhatia, et al. v. McKinsey & Company, Inc., et al.* | Case No. 1:19-cv-01466-GHW-SN (S.D.N.Y.) |
| | *Brotherston, et al. v. Putnam Investments, LLC, et al.* | Civil Action No. 15-13825-WGY (D. Mass.) |
| | *Clifton Marshall, et al. v. Northrop Grumman Corp., et al.* | Case No. 16-6794 (C.D. Cal.) |
| | *Cunningham, et al., v. Cornell University, et al.* | Case No. 16-cv-6525 (S.D.N.Y.) |
| | *David Clark, et al, v. Duke University, et al.* | Case No. 1:16-CV-01044-CCE-LPA (M.D.N.C.) |
| | *Dennis Gordan, et al. v. Massachusetts Mutual Life Insurance Co., et al.* | Case No. 13-cv-30184-MAP (D. Mas.) |
| | *Diego Cervantes v. Invesco Holding Company (US), Inc., et al.* | Civil Action No. 1:18 cv-02551-AT (N.D. Ga.) |
| | *Freck, et al. v. Cerner Corporation, et al.* | Civil Action No. 4:20-cv-00043-BCW (W.D. Mo.) |
| | *Henderson et al. v. Emory University et al.* | Case No. 16-cv-2920 (N.D. Ga.) |
| | *In re GE ERISA Litigation* | Master File No. 1:17-cv-12123-IT (D. Mass) |
| | *In re M&T Bank Corporation ERISA Litigation* | Case No. 1:16-cv-375 (W.D.N.Y.) |
| | *In re Northrop Grumman Corporation ERISA Litigation* | Case. No. 06-CV-6213 AB (JCx) (C.D. Cal.) |
| | *Intravaia, et al. v. National Rural Electric Cooperative Association, et al.* | Case No. 1:19-cv-00973-LO-IDD (E.D. Va.) |
| | *Johnson, et al v. Fujitsu Technology and Business of America, Inc. et al.* | Case No.: 5:16-cv-03698 NC (N.D. Cal.) |
| | *Karolyn Kruger, et al. v. Novant Health Inc., et al.* | Case No. 14-208 (M.D.N.C.) |
| | *Karpik, et al. v. Huntington Bancshares Incorporated, et al.* | Case No. 2:17-cv-01153-MHW-KAJ (S.D. Ohio) |
| | *Kirk, et al. v. Retirement Committee of CHS/Community Health Systems, Inc., et al.* | Civil Action No. 3:19-cv-00689 (M.D. Tenn.) |
| | *Lauren Bence, et al. v. Presence Health Network, et al.* | Case No. 1:17-cv-08315 (N.D. Ill.) |
| | *Loren L. Cassell, et al. v. Vanderbilt University, et al.* | Case No. 3:16-CV-02086 (M.D. Tenn.) |
| | *Main, et al. v. American Airlines, Inc. et al.* | Civil Action No.: 4:16-cv-00473-O (N.D. Texas) |
| | *Moitoso, et al. v. FMR LLC, et al.* | Civil Action No. 1:18-cv-12122-WGY (D. Mass.) |

| Practice Area | *Engagement* | Citation |
|---|---|---|
| | *Pat Beesley, et al v. International Paper Co. et al.* | Case No. 06-703-DRH (S.D. Ill.) |
| | *Paul Andrus, et al. v. New York Life Insurance Company, et al.* | Case. No. 1:16-cv-05698 (KPF) (S.D.N.Y.) |
| | *Pledger, et al. v. Reliance Trust, et al.* | Case No. 1:15-cv-4444-MHC (N.D. Ga.) |
| | *Price v. Eaton Vance Corp., et al.* | Civil Action No. 18-12098-WGY (D. Mass.) |
| | *Ramos et al. v. Banner Health et al.* | Case No. 1:15-cv-02556 (D. Colo.) |
| | *Reetz v. Lowe's Companies, Inc. et al.* | No. 5:18-cv-075-RJC-DCK (W.D.N.C.) |
| | *Robert Sims, et al, v. BB&T Corporation, et al.* | Case No. 1:15-cv-732-CCE-JEP (M.D.N.C.) |
| | *Ronald Tussey, et al. v. ABB Inc., at al.* | Case No. 2:06-cv-4305-NKL (W.D. Mo.) |
| | *Smith et al. v. OSF Healthcare System, et al.* | Case No. 3:16-cv-00467-SMY-RJD (S.D. Ill.) |
| | *Stacy Schapker v. Waddell & Reed Financial, Inc., et al.* | Case No. 17-cv-2365 (D. Kan.) |
| | *Stevens v. SEI Investments Company, et al.* | Case No. 2:18-CV-09936 (E.D. Pa.) |
| | *Todd Ramsey, et al., v. Philips North America LLC* | Case No. 3:18-cv-01099-NJR-RJD (S.D. Ill.) |
| | *Toomey, et al. v. Demoulas Super Markets, Inc., et al.* | Case No. 1:19-CV-11633-LTS (D. Mass.) |
| | *Tracey, et al. v. Massachusetts Institute of Technology, et al.* | Case No. 1:16-cv-11620 (D. Mass.) |
| | *Troudt et al v. Oracle Corporation et al.* | Case No. 16-cv-00175 (D. Colo.) |
| | *Velazquez, et al. v. Massachusetts Financial Services Company* | Case No. 1:17-CV-11249 (D. Mass.) |
| FACTA | *Albright v. Metrolink* | No. 4:11-CV-01691AGF (E.D. Mo.) |
| | *Ebert, et al. v. Warner's Stellian* | No. 11-cv-02325 JRT/ SER (D. Minn.) |
| | *Fouks, et al. v. Red Wing Hotel Corporation* | Case No. 12-cv-02160 (D. Minn.) |
| | *Jones v. Dickinson* | No. 11 CV 02472 (D. Mo.) |
| | *Linda Todd, et al. v. Medieval Times* | Case No. 1:10-cv-00120 (D. N.J.) |
| | *Masters v. Lowe's Home Centers, Inc.* | Case No. 3:09-cv--255 (S.D. Ill.) |
| | *Seppanen et al. v. Krist Oil Company* | Case No. 2:09-cv-195 (W.D. Mich.) |
| | *Waldman v. Hess Corporation* | Case No. 07-cv-2221 (D. N.J.) |
| FCRA | *Michael Stoner, et al. v. CBA Information Services* | Case No. 04-cv-519 (E.D. Pa.) |
| Insurance | *Ann Castello v. Allianz Life Insurance Company* | Case No. 03-cv-20405 (D. Minn.) |
| | *Boyd Demmer, et al. v. Illinois Farmers Insurance Company* | Case No. MC 00-017872 (Hennepin County, Minn.) |
| | *Chultem v. Ticor Title Insur. Co., et al.* | Case No. 2006-CH-09488 (Circuit Court of Cook County, Ill.) |
| | *Colella v. Chicago Title Insur. Co., et al.* | Case No. 2006-CH-09489 (Circuit Court of Cook County, Ill.) |
| | *Daluge, et. al., v. Continental Casualty Company* | No. 3:15-cv-00297 (W.D. Wis.) |
| | *Deborah Hillgamyer, et al. v. Reliastar Life Insurance Company, et al.* | No. 11-cv-729 (W.D. Wis.) |
| | *Doan v. State Farm* | 108CV129264 (Santa Clara Co, CA) |
| | *Dorothea Pavlov v. Continental Casualty Company* | Case No. 07-cv-2580 (N.D. Ohio) |
| | *Frank Rose, et al. v. United Equitable Insurance Company, et al.* | Case No. 00-cv-02248 (Cass County, ND) |
| | *Froeber v. Liberty Mutual Fire Insurance Company* | Case No. 00C15234 (Marion County, OR) |
| | *Garrison, et al., v. Auto-Owners Insurance Company* | Case No. 02-cv-324076 (Cole County, Mo.) |
| | *Harold Hanson, et al. v. Acceleration Life Insurance Company, et al.* | Case No. 3:97-cv-152 (D.N.D.) |

| Practice Area | *Engagement* | Citation |
|---|---|---|
| | *Hofstetter, et al. v. Chase Home Finance, LLC., et al.* | Case No. 10-cv-1313 (N.D. Cal.) |
| | *In Re: Lutheran Brotherhood Variable Insurance Products Co. Sales Practices Litigation* | Case No. 99-md-1309 (D. Minn.) |
| | *Irene Milkman, et al. v. American Travellers Life Insurance Company, et al.* | No. 03775 (Philadelphia Court of Common Pleas, Pa.) |
| | *Jacobs v. State Farm General Insurance Company* | No. CJ-96-406 (Sequoyah County, Okla.) |
| | *James M. Wallace, III, et al. v. American Agrisurance, Inc., et al.* | Case No. 99-cv-669 (E.D. Ark.) |
| | *James Ralston, et al. v. Chrysler Credit Corporation, et al.* | Case No. 90-cv-3433 (Lucas County, Ohio) |
| | *Michael T. McNellis, et al. v. Pioneer Life Insurance Company, et al.* | CV 990759 (County of San Luis Obispo, Cal.) |
| | *Morris v. Liberty Mutual Fire Insurance Company* | CJ-03-714 (Pottawatomie County, OK) |
| | *Paul Curtis, et al v. Northern Life Insurance Company* | Case No. 01-2-18578 (King County, Wash.) |
| | *Ralph Shaffer v. Continental Casualty Company and CNA Financial Corp* | Case No. 06-cv-2253 (C.D. Cal.) |
| | *Raymond Arent, et al. v. State Farm Mutual Insurance Company* | Case No. 00-mc-16521 (D. Minn.) |
| | *Roy Whitworth, et al. v. Nationwide Mutual Insurance Company, et al.* | Case No. 00CVH-08-6980 (Franklin County, Ohio) |
| | *Sonia Gonzalez, et al. v. Rooms to Go, Inc., et al.* | Case No. 97-cv-3146 (S.D. Fla.) |
| | *Tow Distributing, Inc., et al. v. BCBSM, Inc., d/b/a Blue Cross and Blue Shield of Minnesota* | Case No. 02-cv-9317 (D. Minn.) |
| Legal Notice | *Anderson et al. v. Canada (Attorney General)* | 2011 NLCA 82 |
| | *Angell v. Skechers Canada* | 8562-12 (Montreal, Quebec) |
| | *Billieson, et al. v. City of New Orleans, et al.* | No. 94-19231 (Orleans Parish, LA) |
| | *Carnegie v. Household International, Inc.* | No. 98-C-2178 (N.D. Ill.) |
| | *Cazenave, et al. v. Sheriff Charles C. Foti, Jr., et al.* | Case No. 00-cv-1246 (E.D. La.) |
| | *Cazenave, et al. v. Sheriff Charles C. Foti, Jr., et al.* | Case No. 00-cv-1246 (E.D. La.) |
| | *City of Greenville, et al., v. Syngenta Crop Protection, Inc., and Syngenta AG* | No. 3:10-cv-00188-JPG-PMF (S. D. Ill.) |
| | *Evans, et al. v. Linden Research, Inc., et al.* | Case No. 4:11-cv-1078-DMR (N.D. CA) |
| | *F.T.C. v. NBTY, Inc.* | No. 05-4793 (E.D.N.Y.) |
| | *George Williams, et al. v. BestComp, Inc., et al.* | No. 09-C-5242-A (Parish of St. Landry, LA) |
| | *Griffin v. Dell Canada Inc* | Case No. 07-cv-325223D2 (Ontario, Superio Court of Justice) |
| | *In Re: Aftermarket Filters Antitrust Litigation* | No. 1:08-cv-4883, MDL No. 1957 (N.D. Ill.) |
| | *In Re: Asia Pulp & Paper Securities Litigation* | Case No. 01-cv-7351 (S.D.N.Y.) |
| | *In Re: Certainteed Fiber Cement Siding Litigation* | MDL 2270 (E.D. PA) |
| | *In Re: Duluth Superior Chemical Spill Litigation* | Case No. 92-cv-503 (W.D. Wis.) |
| | *In Re: Google Referrer Header Privacy Litigation* | No. 10-04809 (N.D. Cal.) |
| | *In Re: Salmonella Litigation* | Case No. 94-cv-016304 (D. Minn.) |
| | *Jerome H. Schlink v. Edina Realty Title* | Case No. 02-cv-18380 (D. Minn.) |
| | *Joel E. Zawikowski, et al. v. Beneficial National Bank, et al.* | Case No. 98-cv-2178 (N.D. Ill.) |
| | *Joshua Wasser, et al. v. All Market, Inc.,* | Case No. 1:16-CV-21238 (S.D. Fla.) |
| | *Kobylanski et al. v. Motorola Mobility, Inc. et al.* | No. 13-CV-1181 (W.D. Pa.) |
| | *Mary Plubell, et al. v. Merck and Co., Inc.* | Case No. 04-cv-235817 (Jackson County, MO) |
| | *McGruder, et al. v. DPC Enterprises* | No. CV2003-022677 (Maricopa County, AZ) |

| Practice Area | *Engagement* | Citation |
|---|---|---|
| | *Mehl v. Canadian Pacific Railway, Limited* | Case No. 02-cv-009 (D.N.D.) |
| | *Michelle Marshall, et al. v. Air Liquide -- Big Three, Inc. et al.* | No. 2005-08706 (Orleans Parish, LA) |
| | *Pat Beesley, et al v. International Paper Co. et al.* | Case No. 06-703-DRH (S.D. Ill.) |
| | *Perrine, et al. v. E.I. Dupont De Nemours and Company, et al.* | 01-0631-CA-01 (Harrison C., WV) |
| | *Red Eagle Resources Corporation, Inc., et al. v. Baker Hughes Inc., et al.* | Case No. 91-cv-627 (S.D. Tex.) |
| | *Skold, et al. v Intel Corporation, et al.* | Case No. 1-05-cv-039231 (County of Santa Clara, CA) |
| | *The People of the State of California v. Rainbow Light Nutritional Systems, LLC, et al.* | Case No. 19STCV28214 (Los Angeles County, CA) |
| | *Thomas Geanacopoulos v. Philip Morris USA, Inc.* | Civil Action No. 98-6002-BLS1 (MA Superior Court) |
| Medical/Drug | *F.T.C. v. CHK Trading Corp.* | Case No. 04-cv-8686 (S.D.N.Y.) |
| | *F.T.C. v. Christopher Enterprises, Inc.* | Case No. 2:01-cv-0505 (D. Utah) |
| | *F.T.C. v. Conversion Marketing, Inc.* | Case No. 04-cv-1264 (C.D. Cal.) |
| | *F.T.C. v. Enforma Natural Products, Inc.* | Case No. 00-cv-04376 (C.D. Cal.) |
| | *F.T.C. v. Goen Technologies* | FTC File No. 042 3127 |
| | *F.T.C. v. Great American Products* | Case No. 05-cv-00170 (N.D. Fla.) |
| | *F.T.C. v. Kevin Trudeau, et al.* | Case No. 03-cv-3904 (N.D. Ill.) |
| | *F.T.C. v. Latin Hut, Inc.* | Case No. 04-cv-0830 (S.D. Cal.) |
| | *F.T.C. v. QT, Inc.* | Case No. 03-cv-3578 (N.D. Ill.) |
| | *F.T.C. v. Seasilver USA, Inc.* | Case No. 03-cv-0676 (D. Nev.) |
| | *F.T.C. v. Smart Inventions, Inc.* | Case No. 04-cv-4431 (C.D. Cal.) |
| | *F.T.C. v. Sunny Health Nutrition Technology & Products, Inc.* | Case No. 06-cv-2193 (M.D. Fla.) |
| | *F.T.C. v. United Fitness of America, LLC* | Case No. 02-cv-0648 (D. Nev.) |
| | *In Re: Guidant Corp Implantable Defibrillators Products Liability Litigation* | Case No. 05-cv-1708 (D. Minn.) |
| | *In re: Nuvaring Products Liability Litigation* | 08-MDL-1964 |
| | *Karen Wright, et al. v. Milan Jeckle* | Case No. 98-2-07410-2 (Spokane County, Wash.) |
| | *Mary Plubell, et al. v. Merck and Co., Inc.* | Case No. 04-cv-235817 (Jackson County, MO) |
| Privacy | *In Re Hudson's Bay Company Data Security Incident Consumer Litigation* | Case No. 1:18-cv-08472 PKC (S.D. N.Y.) |
| Privacy/FCRA | *St. Clair, et al. v MRB, et al.* | Case No. 12-cv-1572 (D. Minn.) |
| Securities | *Adam C. Kassab , et al. v. Francis D. John, et al.* | Case No. 2:16-cv-00613-AJS (W.D. Pa.) |
| | *Alan Freberg, et al. v. Merrill Corporation, et al.* | Case No. 99-cv-010063 (D. Minn.) |
| | *Anderson v. Investors Diversified Services* | Case No. 4:79-cv-266 (D. Minn.) |
| | *Arkansas Teacher Retirement System, et al. v. Insulet Corp., et al.* | Civil Action No. 15-12345-MLW (D. Mass) |
| | *Bottlebrush Investments, LP, et al. v. The Lambveth Company, et al.* | Case No BC 407967 (County of Los Angeles, CA) |
| | *Charter Township Of Clinton v. OSI Restaurants* | Case No. 06-CA-010348 (Hillsborough County, Fla.) |
| | *Christopher Carmona, et al. v. Henry I. Bryant, et al. (Albertson's Securities Litigation)* | Case No. 06-cv-01251 (Ada County, Idaho) |
| | *Daryl L. Cooper, et al. v. Miller Johnson Steichen Kinnard, Inc.* | Case No. 02-cv-1236 (D. Minn.) |
| | *Dutton v. Harris Stratex Networks, Inc. et al* | 08-cv-00755-LPS (D. Del.) |
| | *Edith Gottlieb v. Xcel Energy, Inc., et al.* | Case No. 02-cv-2931 (D. Minn.) |

| Practice Area | ***Engagement*** | **Citation** |
|---|---|---|
| | *Family Medicine Specialsts, et al. v. Abatix Corp., et al.* | Case No. 3:04-cv-872B (N.D. Tex.) |
| | *Fisk, et al. v. H&R Block Inc., et al.* | 1216-CV20418 (Jackson County, MO) |
| | *Friedman, et al. v. Penson Worldwide, Inc.* | 11-cv-02098 (N.D. Tex.) |
| | *In re FX Energy Stockholders Litigation* | Case No. A-15-726409-B (Clark County, NV) |
| | *In Re Regulus Therapeutics Inc. Securities Litigation* | 3:17-cv-00182 BTM-RBB (S.D. CA) |
| | *In Re: American Adjustable Rate Term Trust Securities Litigation* | Case No. 4:95-cv-666 and 4:95-cv-667 (D. Minn.) |
| | *In Re: Ancor Communications, Inc Securities Litigation* | Case No. 97-cv-1696 (D. Minn.) |
| | *In Re: Asia Pulp & Paper Securities Litigation* | Case No. 01-cv-7351 (S.D.N.Y.) |
| | *In Re: Bayer AG Secuirites* | Case No. 03-cv-1546 (S.D.N.Y.) |
| | *In Re: Bio-One Securities Litigation* | Case No. 05-cv-1859 (M.D. Fla.) |
| | *In Re: Bioplasty Securities Litigation* | Case No. 4:91-cv-689 (D. Minn.) |
| | *In Re: Citi-Equity Group, Inc. Securities Litigation* | Case No. 94-cv-012194 (D. Minn.) |
| | *In Re: Citi-Equity Group, Inc., Limited Partnerships Securities Litigation* | MDL No. 1082 (C.D. Cal.) |
| | *In Re: Control Data Corporation Securities Litigation* | Case No. 3:85-cv-1341 (D. Minn.) |
| | *In Re: Cray Research Securities Litigation* | Case No. 3:89-cv-508 (D. Minn.) |
| | *In Re: Cybex International Securities Litigation* | No. 653794/2012 (County of New York, NY) |
| | *In Re: E.W. Blanch Holdings, Inc. Securities Litigation* | Case No. 01-cv-258 (D. Minn.) |
| | *In Re: Encore Computer Corporation Shareholder Litigation* | Case No. 16044 (New Castle County, Del.) |
| | *In Re: EVCI Career Colleges Holding Corp Securities Litigation* | Case No. 05-cv-10240 (S.D.N.Y.) |
| | *In Re: Flight Transportation* | MDL No. 517 (D. Minn.) |
| | *In Re: Frontier Oil Corporation* | Case No. 2011-11451 (Harris County, Tex.) |
| | *In Re: HeartWare International, Inc. Securities Litigation* | No. 1:16-cv-00520-RA (S.D.N.Y.) |
| | *In Re: Hennepin County 1986 Recycling Bond Litigation* | Case No. 92-cv-22272 (D. Minn.) |
| | *In Re: McCleodUSA Incorporated Securities Litigation* | Case No. 02-cv-0001 (N.D. Iowa) |
| | *In Re: McKesson HBOC, Inc. Securities Litigation* | Case No. 99-cv-20743 (N.D. Cal.) |
| | *In Re: Merrill Lynch & Co., Inc. Securities Derivative and ERISA Litigation* | 07-cv-9633 (S.D.N.Y.) |
| | *In Re: Merrill Lynch Research Reports Securities Litigation* | Case No. 02-md-1484 (S.D.N.Y.) |
| | *In Re: Micro Component Technology, Inc. Securities Litigation* | Case No. 4:94-cv-346 (D. Minn.) |
| | *In Re: National City Corp. Securities, Derivative and Erisa Litig.* | MDL No. 2003 (N.D. Ohio) |
| | *In Re: New Century* | No. 07-CV-0931 (C.D. Cal.) |
| | *In Re: Novastar Financial, Inc. Securities Litigation* | Case No. 04-cv-0330 (W.D. Mo.) |
| | *In Re: OCA, Inc. Securities and Derivative Litigation* | Case No. 05-cv-2165 (E.D. La.) |
| | *In Re: Raytheon Company Securities Litigation* | Case No. 99-cv-12142 (D. Mass.) |
| | *In Re: Reliance Group Holdings, Inc. Securities Litigation* | Case No. 00-cv-4653 (S.D.N.Y.) |
| | *In Re: Retek Inc Securities Litigation* | Case No. 02-cv-4209 (D. Minn.) |
| | *In Re: Salomon Analyst Metromedia Litigation* | Case No. 02-cv-7966 (S.D.N.Y.) |
| | *In re: Sauer-Danfoss, Inc. Stockholder Litigation* | C.A. No. 8396-VCL (Court of Chancery of the State of Delaware) |

| Practice Area | *Engagement* | Citation |
|---|---|---|
| | *In Re: Scimed Life Systems, Inc. Shareholders Litigation* | Case No. 94-mc-17640 (D. Minn.) |
| | *In Re: Sourcecorp Securities Litigation* | Case No. 04-cv-02351 (N.D. Tex.) |
| | *In re: Spectrum Pharmaceuticals Securities Litigation* | Case No. 2:13-cv-00433-LDG (D. Nev.) |
| | *In Re: SS&C Technologies, Inc. Shareholders Litigation* | Case No. 05-cv-1525 (D. Del.) |
| | *In re: SunEdison, Inc. Securities Litigation* | Case No. 1:16-md-2742-PKC (S.D.N.Y) |
| | *In Re: Tellium Inc Securities Litigation* | Case No. 02-cv-5878 (D. N.J.) |
| | *In Re: The Sportsman's Guide, Inc. Litigation* | Case No. 06-cv-7903 (D. Minn.) |
| | *In Re: Tonka Corporation Securities Litigation* | Case No. 4:90-cv-002 (D. Minn.) |
| | *In Re: Tonka II Securities Litigation* | Case No. 3:90-cv-318 (D. Minn.) |
| | *In Re: Tricord Systems, Inc. Securities Litigation* | Case No. 3:94-cv-746 (D. Minn.) |
| | *In Re: VistaCare, Inc. Securities Litigation* | Case No. 04-cv-1661 (D. Ariz.) |
| | *In Re: Williams Securities Litigation* | Case No. 02-cv-72(N.D. Okla.) |
| | *In Re: Xcel Energy, Inc. Securities Litigation* | Case No. 02-cv-2677 (D. Minn.) |
| | *In Re: Xcelera.Com Securities Litigation* | Case No. 00-cv-11649 (D. Mass.) |
| | *In Re: Xybernaut Corp. Securities MDL Litigation* | Case No. 05-mdl-1705 (E.D. Va.) |
| | *In the Matter of BKS Advisors, LLC* | SEC Admin. Proc. File No. 3-18648 |
| | *In the Matter of deVere USA, Inc.* | SEC Admin. Proc. File No. 3-18527 |
| | *In the Matter of Focus Media Holding Limited, et al.* | SEC Admin. Proc. File No. 3-16852 |
| | *In the Matter of James Goodland and Securus Wealth Management, LLC* | SEC Admin. Proc. File No. 3-16878 |
| | *In the Matter of JL Capital Management* | SEC Admin. Proc. File No. 3-18171 |
| | *In the Matter of Ross, Sinclaire & Associates, LLC, et al.* | SEC Admin. Proc. File No. 3-17315 |
| | *Ivy Shipp, et al. v. Nationsbank Corp.* | 19,002 (TX 12th Jud Dist) |
| | *Karl E. Brogen and Paul R. Havig, et al. v. Carl Pohlad, et al.* | Case No. 3:93-cv-714 (D. Minn.) |
| | *Kevin D. Mayer et al. v United Microelectronics Corporation* | 19-cv-02304 (S.D. N.Y.) |
| | *Lori Miller, et al. v. Titan Value Equities Group Inc., et al.* | Case No. 94-mc-106432 (D. Minn.) |
| | *Makor Issues & Rights, Ltd., et al. v. Tellabs, Inc., et al.* | 02-C-4356 (N.D. Ill.) |
| | *Montoya, et al. v. Mamma.com, Inc., et al.* | Case No. 1:05-cv-02313 (S.D.N.Y.) |
| | *Partridge v GreenStar Agricultural Corporation, et al.* | Ontario Superior Court of Justice (Toronto Region) |
| | *Paskowitz v James J. Hill* | Case No. 715541/2018 (Queens County, NY) |
| | *Resendes, et al.; Maher, et al.; Hawkins, et al.; Schooley, et al. v. Thorp, et al.* | Case No. 84-cv-03457, 84-cv-11251, 85-cv-6074, 86-cv-1916L (D. Minn.) |
| | *Richard Donal Rink, et al. v. College Retirement Equities Fund* | No. 07-CI-10761, (Jefferson County, KY) |
| | *Robert Trimble, et al. v. Holmes Harbor Sewer District, et al.* | Case No. 01-2-00751-8 (Island County, Wash.) |
| | *Sandi Roper, et al. v. SITO Mobile, Ktd., et al.* | NO. 2:17-CV-01106-ES-MAH (D.N.J.) |
| | *Securities and Exchange Commission v Al-Raya Investment Company, et. al.* | No. 109-CV-6533 |
| | *Securities and Exchange Commission v. AIMSI Technologies, Inc., et al.* | 05 CV 4724 (LLS) (S.D.N.Y.) |
| | *Securities and Exchange Commission v. Alderson et al.* | No. 18-04930 (S.D.N.Y.) |
| | *Securities and Exchange Commission v. Broadwind Energy, Inc. et al.* | Civ. Act. No. 1:15-cv-01142 (N.D. Ill.) |

| Practice Area | *Engagement* | Citation |
|---|---|---|
| | *Securities and Exchange Commission v. CKB168 Holdings Ltd., et al.* | Civil Action No. 1:13-cv-5584 (E.D.N.Y.) |
| | *Securities and Exchange Commission v. Harrison Katzen* | Case No. 16-cv-06606 (E.D.N.Y.) |
| | *Securities and Exchange Commission v. Intercontinental Regional Center Trust of Chicago, LLC* | Civil Action No. 13-cv-982 (N.D. Ill.) |
| | *Securities and Exchange Commission v. Myron Weiner* | 11-CV-05731 (E.D.N.Y.) |
| | *Securities and Exchange Commission v. Rockford Funding Group, LLC, et al.* | 09-10047 (S.D.N.Y.) |
| | *Securities and Exchange Commission v. United American Ventures, LLC, et al.* | Case No. 10-cv-00568-JCH-LFG (D.N.M.) |
| | *Superior Partners, et al. v. Rajesh K. Soin, et al.* | Case No. 08-cv-0872 (Montgomery County, Ohio) |
| | *Svenningsen, et al. v. Piper Jaffray & Hopwood, et al.* | Case No. 3:85-cv-921 (D. Minn.) |
| | *Three Bridges Investment Group, et al. v. Honeywell, et al.* | Case No. 88-cv-22302 (D. Minn.) |
| | *United States of America v. George David Gordon* | Case No. 4:09-cr-00013-JHP-1 (N.D. Okla.) |
| | *United States of America v. Zev Saltsman* | Case No. 04-cv-641 (E.D.N.Y.) |
| | *William Steiner, et al. v. Honeywell, Inc. et al.* | Case No. 4:88-cv-1102 (D. Minn.) |
| Test Score | *David Andino, et al. v. The Psychological Corporation, et al.* | Case No. A457725 (Clark County, Nev.) |

# EXHIBIT 35



Alison M. Bernal

Partner
T (805) 963-2345
F (805) 284-9590
E alison@nshmlaw.com

August 23, 2021

**VIA E-MAIL**
David Raizman, Esq.
david.raizman@ogletree.com
Amber Roller, Esq.
amber.roller@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, California 90071

Re: *Vargas et al. v. Quest, et al.*

Dear David,

We are writing pursuant to LR 7-3 to meet and confer on Plaintiff's anticipated motion for class certification. Specifically, Plaintiff Julian Vargas anticipates moving for an order (1) certifying this case as a nationwide class action pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure; (2) certifying Plaintiff Vargas as class representative of the Plaintiff class; and (3) certifying Plaintiffs' counsel as class counsel.

First, Plaintiff will move for an order certifying the following nationwide class and California subclass. Plaintiff Vargas defines the proposed nationwide class as follows:

> All legally blind individuals in the United States who visited a Quest patient service center in the United States and were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to Quest's failure to offer e-check-in kiosks that are independently accessible to legally blind individuals.

Plaintiff Vargas defines the proposed California class as follows:

> All legally blind individuals in California who visited a Quest patient service center in California and were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to Quest's failure to offer e-check-in kiosks that are independently accessible to legally blind individuals.

Second, Plaintiff will move for an order appointing Plaintiff Julian Vargas as the class representative for both the nationwide class and the California subclass defined above.

Third, Plaintiff will move for an order appointing the law firms of Nye, Stirling, Hale & Miller, LLP, and Handley, Farah & Anderson, PLLC, as class counsel; and setting such further proceedings regarding notice to the class and subclass as necessary.

The proposed class meets each requirement for Rule 23(a), 23(b)(2) and 23(b)(3):

1. Numerosity: 9th circuit cases allow census bureau analysis and further that Quest's own records, of complaints showing blind users were unable to utilize the kiosks, establish numerosity meeting the standard in the 9th circuit for both the nationwide class and the California subclass.

2. Commonality: There are myriad common issues of fact and law applicable to the class, including, *inter alia*, whether the e-check-in kiosk is a good or service and whether Quest provided appropriate aids and auxiliary services.

3. Typicality: Plaintiff's claims are typical of the class, in that they are reasonably coextensive with absent class members, per the Rule 23 requirement.

4. Adequacy: Plaintiff Vargas is an adequate representative because, *inter alia*, he has demonstrated expansive knowledge of the facts, has supervised counsel and the litigation effectively, seeks the same relief as absent class members, and does not have conflicts which might impact his adequacy. Similarly, proposed lead counsel has ample experience in class action litigation generally and has successfully litigated numerous disability rights class action cases.

5. Rule 23(b)(2): Quest acted or refused to act on grounds applicable to the class.

6. Rule 23(b)(3): Because Plaintiff has sufficiently established that a class action is the superior means to adjudicate class members' claims and because common issues predominate, Rule 23(b)(3)'s requirements are satisfied.

It should be noted the arguments set forth above are not an exhaustive list of all points Plaintiff may raise in his motion for class certification. Rather, it is an outline of arguments Plaintiff reasonably anticipates based on the initial review of the case. Plaintiff reserves his right to add or augment additional arguments as appropriate.

We look forward to discussing these issues with you. To that end, please let us know your availability this week for a telephonic or Zoom meet and confer conference.

Very truly yours,

NYE, STIRLING, HALE & MILLER, LLP

ALISON M. BERNAL

# EXHIBIT 36

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

______________________________

JULIAN VARGAS, ANNE WEST, and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Case No.: 19CV01953

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,

Defendants.

CASE NO.: 2:19-cv-8108
______________________________

REPORTER'S TELEPHONIC TRANSCRIPT OF PROCEEDINGS
MEET AND CONFER
Thursday, August 26, 2021

Reported by:
JOANNA BROADWELL
CSR No. 10959
Job No. 4780142
PAGES 1 - 41

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

JULIAN VARGAS, ANNE WEST, and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,

Defendants.

CASE NO.: 2:19-cv-8108

Case No.: 19CV01953

Reporter's telephonic Transcript of Proceedings taken remotely beginning at 10:02 a.m. and ending at 11:04 a.m. on Thursday, August 26, 2021, before JOANNA BROADWELL, Certified Shorthand Reporter No. 10959.

APPEARANCES:

For Plaintiffs:

OGLETREE DEAKINS NASH SMOAK & STEWART PC
David Raizman, Esq.
400 S. Hope St, Suite 1200,
Los Angeles, CA 90071
(213) 239-9800
david.raizman@ogletree.com

For the Defendants:

NYE STIRLING HALE & MILLER LLP
Alison Bernal, Esq.
33 West Mission Street Suite 201
Santa Barbara, CA 93101
(805) 963-2345
alison@nshmlaw.com

Thursday, August 26, 2021

10:02 a.m.

REPORTER'S TRANSCRIPT OF TELEPHONIC PROCEEDINGS

MR. RAIZMAN: I guess one of my motions is dependent on your guy's willingness -- it's somewhat besides the meet and confer but it is important, I think for the meet and confer -- is whether you guys are willing to come up with a new briefing schedule on class certification that would have that motion decided earlier.

You probably have a view on that. I just would like to hear that. Then we'll know.

MR. PORTER: I think what we want to do, David -- and Madam Court Reporter, this is Jordan Porter -- is I think we should align our hearing dates for the motion for class cert with the summary judgment motion.

MR. RAIZMAN: So just have them all heard at the same time and schedule?

MR. PORTER: That's right. And that is also based in part on the judge's comments when we modified the briefing schedule the last time and kind of where we wound up here.

MR. RAIZMAN: Yeah. So take me through that, Jordan. When would the motion be -- you guys would make the motion, then, on September the 3rd; is that right?

MR. PORTER: We would make the motion on September 10th. We just need to have the hearing dates align. That is all.

MR. RAIZMAN: Well, the last date for hearing summary judgment is October.

MS. BERNAL: 8th, probably.

MR. RAIZMAN: 8th.

MS. BERNAL: That is correct. I know they are one week apart here.

MR. RAIZMAN: Yeah. So, I mean, you guys, I am just going to state the obvious. You guys have written this motion before with Labcor. You have been working on it, I am sure. I don't know why you can't try to make that motion on September 3rd and we could have some semblance of not having crossing motions. And our oppositions, we'd each be working on something instead of working on two briefs if we were on the same schedule.

If you could move it up to September 3rd; otherwise we're going back to the Court and asking for a different briefing schedule which I think might work. Let me hear your proposal, Jordan. What were you guys thinking? You want them on the same day. I don't have a problem with that in theory or practice, but what would those -- what would the briefing schedule look

like?

MR. PORTER: Just bear with me for a second, David, while I pull up -- when I get to the last briefing schedule that actually has all of your dates in it as well.

MS. BERNAL: I think it is Document 62, right?

MR. PORTER: Is that the one?

MS. BERNAL: Yeah. The last have the class cert dates.

MR. PORTER: Last date for hearing. I think we would because at the last date for the class cert motion hearing date is the 29th, right?

MR. RAIZMAN: Right.

MR. PORTER: Wouldn't we try to find a date somewhere between those dates and per the stipulation presented to the Court have it all there at once, tracked together?

MR. RAIZMAN: So that is certainly something that -- you know, I think it's -- it is certainly something I can talk about with my client. So I think it makes sense. But what date were you thinking of, like the 15th?

MR. PORTER: I was thinking -- let's see here. What are the Judge's hearing dates, actually? Let's see here.

MR. RAIZMAN: Good question. I think since we've been all focused on Fridays we just assumed. But it is worth checking to make sure it is correct.

MR. PORTER: Fridays at 9:30. Let's see if she is dark at all on any of these. Looks like her closed motion dates are the 26th, 24th -- the days before and after holidays.

MR. RAIZMAN: Right. Okay. So I think it makes sense for all of us to have these hearings on the same day on a sort of parallel briefing track. Our motion, your motion, and then we do -- you oppose ours, we're opposing yours at the same time, and then we switch to replies. I would like to coordinate that. I would also like this decided as soon as possible. I mean, I know my client's strong interest and one of the attractions in having a summary judgment heard on October 8th was to have those issues decided.

And as you will hear, we're moving in alternative. I am not sure if that was clear from my earliest request for the motion, but I am pretty sure I put in there that we would be moving for partial summary judgment in the alternative. Just to have issues narrowed is also critically important in a case of this magnitude and scope. So I thought -- I mean, tell me whether you guys can live with October 15th or whether

you will need to go back and check that with your people. I know I will need to check anything different with my people, but I am certainly willing to do that.

MR. PORTER: Let's check both the 15th and the 22nd, David. There are some calendar issues that I think I need to have a better understanding of how that may affect that. So I am not prepared to actually say the 15th or the 22nd. I am trying to figure out what is going on and where we will be on those as I work backwards from those dates. I can have that resolved by tomorrow.

MR. RAIZMAN: Okay. Just keep this in mind, Jordan. I don't know how my client is going to react. He likes the idea of having the summary judgment motion heard first, and he would like it decided sooner. So the farther back we get from October 8th the less likely we're going to be able to coordinate these things.

MR. PORTER: Understood.

MR. RAIZMAN: So I hope that you guys can make this happen on the 15th, because I think that is going to make it more likely to get an agreement.

MS. BERNAL: So that I understand, I am just trying to take notes because some of this requires us to go back and really look at our calendars better, with the proposal for the 15th hearing date, what is the

briefing schedule you had proposed for that?

MR. RAIZMAN: We don't have any choice on our motion. It's got to be due September 3rd because there is a cutoff, right? I guess we could try to modify that and see if the judge would go for that. But I --

MR. PORTER: I don't know that I would try that, actually.

MR. RAIZMAN: Right and I don't know if I can sit here and wait for it, right? Because I am writing a motion, as you guys probably are, for a week later. I feel like we should both try to file on the 3rd and give ourselves extra time. These are important issues. To some degree they are novel issues. I would like to, you know, allow the briefing to happen, especially on the opposition side so that each side gets, you know, a fair opportunity and not be squeezed by the ordinary motion calendar. So that is helped by us both moving on the 3rd if that's possible. And that also allows --

MR. PORTER: Yeah. We're not going to be -- we're not going to be in the position to do it on the 3rd.

MR. RAIZMAN: All right. That is good to know. The problem with that, of course, is that -- as I work this out in my head, if we move on the 3rd, which we're going to assume we have to do unless the Court gives us

relief -- the math problem, right -- if we move on the 3rd you would have until -- under the current circumstances you would have until the 17th.

So you would be trying to oppose my motion for summary judgment while you are trying to finish your class cert. You would file your class cert on the 10th. I don't know. You would give me two weeks, until the 24th, I assume, to do it, to do my opposition which is my proposal, and then you would have your reply on the 1st. And then we would have the 15th would be the hearing date. I think that is what makes the most sense.

And that would require, you know, you giving us two weeks on the opposition and one week on the reply on your motion, and we'll have given you two weeks on the opposition and one week on the reply for ours.

MR. PORTER: Okay.

MR. RAIZMAN: You will be writing a motion and doing an opposition, and then I'll be doing an opposition and doing a reply as well. So that's the problem with it. But, you know, that's the way to get these on for the same date and get them on for the 15th, which I think is probably the only way my client is going to work.

And just going back to what you said, you know,

the Court gave us a stern warning about the 29th. I am not sure the 22nd won't just -- you know, seven more days -- save us, right? And I know my client is concerned about that. And somewhere in the back of this there is a mediation cutoff date of some kind, right? That mediation is never going to be successful without some resolution of these two motions, or let's just say it is less likely to be successful.

And so I think it really behooves us -- and I know you can't commit to this on this call -- you already said that -- but I don't think the 22nd changes the equation enough from the Judge's warning to really help.

And that's why I wrote back in July to you guys and said, hey, let's move this -- let's move the briefing schedule up because we're no longer in trial. And that trial had sort of driven the calendaring that we did to these later dates.

MR. PORTER: Yeah. David, I appreciate it is a dynamic situation and we have the same dynamics working in the other direction in the interim. As you know, the state courts have reopened and created new pressures. Yeah. So settlement conference completion date is November 8th.

MR. RAIZMAN: Right. So a week. Yeah.

MR. PORTER: Alison, maybe you can jump in here. But the scheduling proposal, I think we agree, there is something happening for somebody every week between the 3rd and the 15th.

MS. BERNAL: So this is the -- and I understand this is the kind of the warning we got in the last request to the Court, but if we phrase this as we don't want the Court working us up twice on the same fact pattern, obviously a different request, either summary judgment or class cert, but it is really the same underlying facts. We don't want the Court having to look at this twice.

So if we can get a stipulated briefing schedule with the hearing on the same date, and you know, whether that summary judgment being filed at the same time as the class cert following the class cert briefing schedule or what, I think the Court would appreciate that in spite of the earlier comments. I don't know that, and maybe there is not enough time to make that request, but it is just a thought.

MR. RAIZMAN: Yeah. Alison, I am in favor of trying that. And if you are suggesting we both move on a parallel track so we move on September 10th --

MS. BERNAL: Basically the class cert dates.

MR. RAIZMAN: Yes. Well, the class cert dates

based on an earlier hearing date, though.

MS. BERNAL: If we can, yeah. We just have to be mindful that the Court won't want that reply filed any closer to the hearing date normally.

MR. RAIZMAN: Right, especially if it's got two major motions to decide. That may be a disincentive for the Court here that we need to be sensitive to.

MS. BERNAL: Yeah.

MR. RAIZMAN: So maybe it makes sense to keep on this dual track having them heard on the same day, but I am all in favor of trying to track it, but we would obviously need -- we would need something quickly from the Court on that.

MS. BERNAL: Yeah.

MR. RAIZMAN: But whatever. We're moving ahead as if we have to file next Friday, and that's just the way it is. But if there is a way to get a ruling in the meantime, hopefully soon, then I think we should try to get something to the Court sooner than later.

MS. BERNAL: Maybe if we move forward, I mean, you are drafting your motion, but get something on file, and we can talk about which dates work best. So, you know, you are protecting your client's interest by getting it on file, and then if you get a ruling from the Court in the interim then great, you don't have to

file so quickly. Ideally that really would come from the Court as to the hearing date soon in the next week or two.

MR. RAIZMAN: Right. Well, ideally the ruling would come before that, but, yeah. I guess what I ask is that you guys look hard to see if you could do 15th, because I think without that we might not have a stipulation on all of these things that we otherwise agree on. Because I just don't think it moves the ball enough to change the Court's view of this.

And you notice the one thing I am not doing is asking the Court to move any other dates which is the other option here. Because part of what is creating this crunch is her not giving us leeway on the pretrial conference and all that.

MS. BERNAL: Yeah. I think that would not be met very well based on her prior orders.

MR. RAIZMAN: I think that is probably true, but at least this tees that up for her implicitly without her even asking about it. But that is probably right. So I would ask us to look at the 15th, get back to me, and then either propose a briefing schedule for the two motions or not. But I am good if we can agree on the 15th.

And so -- by the way, I mean, that is the last to

be heard, but we can agree between us today that you are going to file on the 10th, we'll oppose it on the 24th, and you will do your reply on the 1st. We had a longer briefing schedule before.

MS. BERNAL: We did. I was just looking at that and see if that was the way to --

MR. RAIZMAN: I have taken a week away from each of our oppo's and our replies, is what I've done. And that allows us to move the hearing date up by two weeks. So if you guys are agreeable to the briefing schedule we don't need her permission to have your motion heard on the 15th.

MS. BERNAL: No.

MR. RAIZMAN: And that would be a favorable result. But we have an agreement, and I will stick to it, to do it otherwise. But if we do it otherwise we're going to make our motion for decertification and try to have it heard first. I don't -- trust me, I am not like dying to do that, but I can't not try to knock out the damages class or not have a ruling on knocking out the damages class and going to a mediation that is going to be meaningful in any way. I would think you guys would feel the same, but I don't know.

It just doesn't make logical sense to -- you know, once we're all staring at the results of these two

rulings the case is probably going to look different. It is either going to look really good for you or really good for us or it is going to be some mix. But it is going to be different.

MS. BERNAL: Okay. So I think we have got the proposal here. We will look hard at what we can do as far as that proposal. And you know, 9-10, 9-24, 10-1 for briefing on class cert, which is a good time to set it for the 10-15 hearing. So we'll look at that part.

And do you want to get to the substance here of the meet and confer?

MR. RAIZMAN: Sure. So on our summary judgment motion, I think we have a basic disagreement on what the statute regulations require. And I think it's a disagreement that is going to have to be resolved by the Court. But here we are. We're meeting and conferring.

So I think, you know, point one through three -- I am going to leave primary consideration aside for the moment, and let's just deal with the ADA claim and the Unruh Act's incorporation of the ADA claim. So we just have a different view than you about what is required. And our view is that what is required is effective communication and that it need not be a prescribed path. And that is sort of one basic difference that we have and that we also challenge this notion of absolute

equality of the communication.

So we think communication can be made through alternative means for -- so that just because we develop a technology doesn't mean that that technology needs to be accessible. It's what that technology is designed to deliver just needs to go accessible and in an effective way.

So that's the fundamental difference. And I don't know that we -- I know that we don't bridge that gap, but it is a legal question that we would like the Court to address because it will dictate, I think, sort of the result, because I actually think in many ways there is not a tremendous amount of factual difference as to, you know, what the device can or can't do and what a blind or visually-impaired patient needs to do when they come.

So that's -- we think, these issues that are identified in one through three of my email yesterday are really the crux of understanding whether we're fulfilling the obligation or not. When it comes to primary consideration, I believe I understand your argument. It wasn't in the complaint. So I don't know that it's ever been fully or articulated in the way I am sure you will in your opposition.

But as I understand it, it is based on the Rehab

act. The Rehab Act regulations of course have no such regulation. We don't think you can regulate by website. We don't think primary consideration is directed to circumstances like these where you are developing a technology for literally hundreds of thousands of people.

We don't think you can give primary consideration to every request when you have hundreds of thousands of people who might each request something and theoretically be entitled as a primary consideration. We don't think primary consideration, putting aside the fact that it is not in the regulations so it is extra-regulatory is even consistent with the Rehab Act obligation of program access.

So we think if the DOJ did issue such a regulation we think it is contrary to the program -- it is directly contrary to the notion of program access which was actually intended to be a much more liberal compliance standard viewing in its entirety accessibility of goods and services.

So whatever primary consideration means we think we meet well the Rehabilitation Act standard that's been in place for -- don't make me do the math -- 38 years before primary consideration came up. Everyone understood what the Rehab Act meant and how it was

different from Title III, for example, the permit program access. And we think that the primary consideration regulations, to the extent it is out there, is directly inconsistent with all of that law and all of the ways in which the Rehab Act has been interpreted.

Finally on primary consideration we believe that we gave that primary consideration. There is a long record of our engaging in discussions with ACB. And there is -- it's documented. And we met with focus groups, three different focus groups. Focus group is not always the right word, but I am using that as a shorthand -- three different groups of individuals with blindness. So we did give consideration to the blind community when we came up with the three-finger swipe. So that is that argument.

The standing arguments are twofold. We argue that there has to be an injury. In fact, there is case law in similar context that, you know, having to wait a little bit longer to be helped is not injury, in fact. We also think that there is no imminent threat of future harm in part because of the three-finger swipe, and the fact that once it is used people will know how to use it. So the next time, whether they had to wait, for example, for Quest to tell them, they won't have to wait

the second time because they will understand how to check in.

And then finally on the Unruh Act claim, if the ADA Act fails, which of course does not rely on primary consideration, then the -- you are going to need to prove intentional discrimination. And I don't think that that can be done under the circumstances.

MR. PORTER: Okay. So just to clarify then, your motion is not going to be moving on mootness grounds; is that correct, David?

MR. RAIZMAN: Well, no, that is not correct. That is the imminent threat of future harm, no imminent threat of future harm. I think mootness -- I mean, mootness is also a standing principle. And it is closely related here. We might sort of cite to some of the mootness case law as well as an alternative.

So I think that, Jordan, is an argument that we're looking at developing. But there is still this imminent threat requirement whether or not something is moot or not. But you could, I think, as a factual matter sort of see them in the same light.

MR. PORTER: And I guess the problem with that, know, that argument, as we set forth the other day in our supplemental disclosures is the three-finger swipe isn't university rolled out. Quest T.V. has not

universally rolled it out despite testimony to the contrary.

MR. RAIZMAN: I know that is the evidence that you guys have, and I obviously got this yesterday, effectively. So I don't have an ability to really speak to that as a factual matter because that is news to me.

MR. PORTER: Okay. And one of the concerns that it, of course, raises for us is before some of the Quest executives testified about that to the extent of this rollout under oath I think at least three times. What sort of investigation did they do to determine if it is actually rolled out. It appears that it is not rolled out in many, many, many locations, certainly nowhere near 2200 locations.

MR. RAIZMAN: And that is based on Mr. Derry's going to 29 locations?

MR. PORTER: Well, it is also based on the ACB members' subsequent experience there. So, yeah, that is right, I mean the subsequent experience there.

MR. RAIZMAN: Yeah. Again, I am not in a position to address it. The actions were taken to roll it out in all locations. And, Jordan, I got this -- I think it was sent to me after midnight yesterday or yesterday morning after midnight. So I didn't have a chance to look at it until yesterday afternoon. And so

needless to say I don't have a response back on the factual part of that.

But that may impact our moving on that particular basis. And I understand what you are saying, is that you are going to try to generate a factual issue on that, right. So that may be enough of a factual dispute for us to not move on that basis.

But obviously we need to look at that, and we're going to look at whether the steps were taken. You know, isolated instances, which might be what is being experienced with a system this large is we don't think a violation of the ADA. And there is a regulation to that effect. And so I can't really speak to, you know, how we may approach that issue, depending on what our own review of facts looks like.

MR. PORTER: Okay.

MS. BERNAL: David, just kind of going back to the earlier argument, I think we have a different view of what the ADA requires, but, you know, that would be for the judge to decide here. And then on the remainder we're going to agree to disagree as to whether the primary consideration regs are applicable and whether Quest complied with those.

Is there anything left on the MSJ to meet and confer on?

MR. RAIZMAN: I don't think so, Alison. I think those are our primary arguments that you guys stated in your motion. There are sub-arguments. I have tried to reference as many of them as possible in talking about them, but they all fall under these categories.

MS. BERNAL: Yes. Okay. Do you want to meet and confer on the class cert?

MR. RAIZMAN: Go ahead.

MS. BERNAL: So we laid this out in our letter, and I am sure you are well-versed in the Ninth Circuit law on it, but for purposes of the meet and confer I am just going to go through it. And then you can let me know. I am guessing we'll agree to disagree on these as well.

But we would move both for the nationwide and the California damages sub-class for numerosity. We would argue that Quest's own records in their interrogatory responses as well Mr. Grant's deposition testimony, would provide the factual basis to argue that there is a class so numerous that joinder of all class members is impracticable for the Rule 23(a) requirement.

Generally you just have to show greater than 41, which there is complaints from at least that many people as well as the survey responses from ACB members and their testimony.

I believe in the interrogatory responses as well as the deposition testimony from Mr. Grant you provided the annual number of visits both nationally and in California over the relevant class period. And then in the Ninth Circuit you can use statistical evidence so that a numerosity expert would provide that statistical analysis based on census data. So that's what we would contend would meet the numerosity requirements.

Did you want to go on each element, or you want me to just roll through all of our elements, David?

MR. RAIZMAN: What is your preference, Alison?

MS. BERNAL: Why don't I just go through it. Is that okay with you?

MR. RAIZMAN: Sure.

MS. BERNAL: For adequacy, Rule 23(a)(4), the representative party would have to fairly and adequately protect the interest of the class which is for both the named plaintiffs and their counsel, whether there is conflicts of interest with other class members and whether the named plaintiff and the counsel can prosecute the action vigorously on behalf of the class.

On this Mr. Vargas testified at his deposition regarding the steps he has taken to be a good class rep including supervising the litigation, responding to document requests, consulting with counsel dozens of

times, approving filings, preparing and sitting for his deposition. He has knowledge of the key facts including the jurisdiction, the judge, and the causes of action. And I think this would meet the fairly low threshold that is required in the Ninth Circuit and the Central District to be a class rep.

And then we would further submit declarations on behalf of our firm and our co-counsel, Mr. Handley's firm setting forth the class counsel's adequacy of representation which I think would also meet the 23(a)(4) requirements.

For typicalities, the claims just have to be typical of the class. So if they arise in the same course of events and they make similar legal arguments to prove the defendant's liability, so this again would look to Mr. Vargas's testimony regarding his visits to Quest and the fact that he encountered a kiosk that was not independently accessible. This is consistent with the sworn testimony from ACB members as well.

On typicality, Mr. Vargas testified that he is seeking the minimum statutory damages, not compensatory damages, so this goes to show typicality would be met if he is not an individual seeking compensatory damages that would otherwise be available under Unruh, and that further ensures his claims are not atypical from the

class as a whole.

Commonality, 23(a)(2), members of the class may sue or be sued as representative parties on behalf of all members if there are common questions of law or fact to that class. So here we have the witnesses admitting the kiosks are not accessible. I think this would kind of tie in to what you had earlier said more of the undisputed facts of summary judgment, you know, the common questions of facts are the accessible of the kiosks, whether legally-blind individuals may use those kiosks.

We would guess here those kiosks were rolled out across the 2200 PSC network. There wasn't training on how to assist blind individuals with use of the kiosk. I think that is Yarrison, Reilly and Carr who testified as to that. And then for the commonality as well, just -- sorry. I lost my train of thought completely. I got an email that completely distracted me. So that's what we would get to on commonality.

Now I think where more of the cite maybe is a 23(b)(2) requirement. I am sorry, the 23(b)(2) would be for the nationwide class. So that is whether Quest has acted or refused to act on grounds generally applicable to the class. Here we would cite to the admission, again, that the kiosks were not independently accessible

throughout the class period for blind individuals across the nationwide network, the testimony of the 48 ACB members and Mr. Vargas, that they were identically harmed by the lack of an independently accessible kiosk.

And then for 23(b)(3), that we need to show the predominance over individual questions, and so here we have the common interest that predominates because all legally blind individuals were injured in exactly the same way. The kiosk was rolled out the same across every PSC in California. That is the Yarrison and Carr depositions. None of the kiosks were accessible for blind patients, which is Yarrison's deposition.

The individual issues that California and sub-class members would have do not predominate, and again, this is because Mr. Vargas testified clearly, and the complaint is clear that it is seeking minimum statutory damages which do not require individual proof of intent. I think that is the Target.com case that clarifies intentional discrimination is not required for an Unruh Act claim predicated on an ADA claim.

So with that in mind we just need to prove through statistical census data that the number -- show the number of visits by each claimant during the class period, which is information Quest itself has within its custody and control so it would be capable of easy

calculation and then some verifiable proof of legal blindness.

This can be accomplished, as other courts have allowed, through a variety of means, SSDI registration based on legally-blind status, government issued I.D. cards identifying the claimant's blindness, note from a physician diagnosing blindness. There is a variety of ways that courts have allowed this. And this is something that a claims administrator is fully capable of accepting or rejecting claims that are submitted to them, so it is not a barrier to calculation.

So I think those would be our main arguments there. I mean, I don't want to go into every case cite or anything like that. But do you have any specific questions on that? Oh, I think I missed superiority. Apologies for that.

So additionally, under 23(b)(3) we would argue that the class action is a superior method to resolving this than individual adjudication. This is because -- hold on one second. Sorry about that. So for superiority under 23(b)(3) there is no indication anywhere in the records that class members have an interest in individually controlling their own cases. The cost of litigating individual matters is prohibitive. There haven't been any corollary lawsuits

against Quest for this. There is really no unique difficulties in managing this class action. It is really the most efficient way to address the legal and factual issues to determine if these class members are entitled to relief. So those would be our arguments on class certification.

MR. RAIZMAN: Okay. I think we have broad differences of opinion that I know we are not going to bridge in this call, but let me just ask a couple of questions. You said you have numbers for the annual number of visits. I think you are talking about the annual number of total visits, right, not class member or putative class member visits?

MS. BERNAL: Correct. So from that -- and I believe these are both -- and I don't have the exact numbers. I think Mr. Grant testified something like 250,000 patients a day visit Quest nationwide. And then in the interrogatory responses there is the annual number of visits in California and nationwide. So through that it would then be a statistical analysis which the Ninth Circuit has allowed.

MR. RAIZMAN: That's what I thought. I just wanted to know whether you had -- were claiming something about class members' numbers.

MS. BERNAL: No. Individual class numbers I

think you can get above 41 for at least the nationwide one based on the complaint and the ACB members' testimony.

MR. RAIZMAN: So on the adequacy, how does it work between ACB and Mr. Vargas with respect to determining what is best for the class?

MS. BERNAL: So the class -- and I will double-check on this, but my understanding is we are moving for certification on behalf of Mr. Vargas. And he would be the class representative.

MR. RAIZMAN: Okay. So ACB is playing no role in that?

MS. BERNAL: Yeah.

MR. RAIZMAN: Are its members members of the class?

MS. BERNAL: Well, they would be putative class members. They are not representative class members.

MR. RAIZMAN: Right. So they are represented by ACB and by Mr. Vargas?

MS. BERNAL: I don't think the associational representation is the same as the representation for purposes of adequacy. They are members of ACB, and they agreed to testify as they had made complaints in declarations, but there is a difference there as far as -- you know, there is not really two levels of

representation for purposes of this class certification.

And, David, I do just want to clarify. I am double-checking, but I believe that class cert will be brought on behalf of Mr. Vargas as the class representative. I want to double-check that.

MR. RAIZMAN: That's always been the allegation. I didn't think that -- I think Matt has probably said elsewhere that ACB is not the class rep.

MS. BERNAL: Yeah. I don't think that is proper to bring them as a class rep either on some of these claims.

MR. RAIZMAN: Okay. We're clearly going to disagree on typicality. I think everybody has experience, but I don't -- you know, I don't what to say about that. So you went through these factors as they related to the first kiosk. My question is do they also relate to the experiences with the current kiosk, the one that has the three-finger swipe in it?

MS. BERNAL: Most of the factual evidence that we have is based on the, you know, pre-complaint kiosk that did not have the three-finger swipe. And as the investigation showed and the individuals' experiences showed, they did not all get to encounter that three-finger swipe on subsequent visits. So I believe the factual -- you know, both through discovery and

depositions and everything, that, you know, we get through this case was based on the prior kiosk.

MR. RAIZMAN: So are you challenging the current kiosk in any of the claims, or are you just saying that in response to an argument that we'll make that it is moot?

MS. BERNAL: Well, it would --

MR. RAIZMAN: Sorry. Go ahead.

MS. BERNAL: Sorry. I completely cut you off there if you wanted to finish. I thought you were finished.

MR. RAIZMAN: I think you probably understood my question. So I am okay.

MS. BERNAL: Yeah. So we would use that to both challenge a mootness argument on the three-finger swipe, so that's, you know, to the extent I don't know if mootness would come up in the class cert, but certainly in responding to the MSJ that would be the main purpose of that, you know, saying that this fix is not actually the fix that is needed.

I don't -- and I think through that argument it would necessarily probably tie back into the class cert because to the extent, you know, our class period goes into the time after the three-finger swipe, we would have to show that even with the three-finger swipe it is

still accessible to the blind individual. And I think there is that testimony and that evidence through the investigation.

MR. RAIZMAN: You just preliminary sort of answered one of my questions. It is what is the class period.

MS. BERNAL: So we don't have it -- let me check my notes on this, David, to make sure I am not speaking out of turn. Bear with me for one second. You know, David, I don't have the exact class period right now. I am going to write in that my notes to get that back to you. That is not something we decided on finally yet.

MR. RAIZMAN: Okay. I think that is relevant to a lot of what we might oppose. And what is your -- I think you suggested it. So you would not have individual adjudication of people's damages claims? They would just submit that they visited and that they are probably of status to be a member of the class. And that's the way you would attempt to prove entitlement to damages?

MS. BERNAL: Yeah. And I think that is something that not necessarily has to be decided on class cert, but that is something that if a class is certified the claims administrator is capable of undertaking questions to determine whether that person visited Quest, and then

that person can certify through a variety of means, through government, medical, note or something that they are legally blind. It is something that the claims administrator could decide and doesn't have a barrier, doesn't make the class unmanageable.

So, yes, statutory, statutory damages only, so they are not submitting proof of, you know, their general damages. It would just be a statutory analysis.

MR. RAIZMAN: And no analysis of what happened to them on their visit?

MS. BERNAL: Just that they had visited that Quest location during the class period and they are legally bland, yes.

MR. RAIZMAN: No analysis, for example, that they walked in and got served right away because a phlebotomist greeted them when they walked in right away and they got helped right away, served right away, that you would still allow a claim under that circumstance?

MS. BERNAL: I don't think it needs an individual inquiry on that, no, when it is a universal across the board implementation of the kiosk. Because there is still a service that PSC has that was inaccessible to the class member who visited it.

MR. RAIZMAN: Right. This is why you don't have a lot of damages, Unruh Act damages to point to, at

least not since Dukes? Because we don't think that is right at all. We do think we're entitled to defend each claim. You don't just -- you don't just cha-ching an Unruh Act claim. You have got to prove up.

I also strongly challenge the idea that this is superior or that the cost prohibitiveness of bringing individual claims is some factor here, because I think we all understand just how prevalent these are. And Judge Gee will know, any judge that is sitting in the Central District will know that the idea that these class members are somehow unwilling to bring claims simply doesn't hold water. And so I don't quite understand how you can assert with a straight face that the cost of litigating individual lawsuits is prohibitive.

So I think we have strong differences on superiority and what is required in managing the claims. But I am interested to hear that you are not -- you are not proposing any actual adjudication of the -- you know, before a court or jury, for that matter, of the Unruh Acts damages.

MS. BERNAL: Correct in that we're just seeking the minimum statutory not compensatory.

MR. RAIZMAN: Do you guys know offhand -- I don't remember whether you had a jury trial demand.

MS. BERNAL: I would think we did, but I think it would also depend on what claims are left at the end of obviously injunctive relief when we get there. Let me get back to the pleadings.

MR. RAIZMAN: That is okay. You either did or you didn't. I guess that is the part that I assumed you did, and I have been operating under the assumption that you did.

MS. BERNAL: I assume as well. Let me check. Yeah, jury trial demanded, yeah.

MR. RAIZMAN: You are obviously seeking to adjudicate these claims without a jury.

MS. BERNAL: No. I don't think that is correct. I mean, if we get -- if we get the certified -- and then it is for the jury to decide whether there were violations of the law, and they can do the math on it.

MR. RAIZMAN: Wait a minute. I thought you said you were going to manage this by having people submit their government-issued I.D. card or their SSDI status and the number of visits they had.

MS. BERNAL: Yes. So that would be, though, at the end. So a jury would determine the liability, and then in order to get the damages administered to the class, that's how they would go.

MR. RAIZMAN: The jury would determine liability

as a class. The amount of damages or entitled to damages is sort of a yes, no, the $4,000? It is sort of in the claims administrator's hands?

MS. BERNAL: Do you have anything further on the class certification motion?

MR. RAIZMAN: That is a question.

MS. BERNAL: That was a question?

MR. RAIZMAN: Yes.

MS. BERNAL: Oh, sorry. I thought that was a --

MR. RAIZMAN: I want to understand. You are proposing a way to adjudicate these damages claims, right, the (b)(c) part. And my question for you is it seems to be unfolding in front of me, no fault of yours. We're trying to do this as efficiently as possible. I just want to understand. You are proposing that a jury will decide liability as to the entire class, and then a class administrator of some sort will then give a determination, yes, no, as to $4,000 only based on whether someone can prove they're legally blind or sufficiently blind and then that they, in fact, visited. Is that how you are proposing to adjudicate the damages claim?

MS. BERNAL: You know, I haven't thought through the trial strategy at this point. I was focusing just more on the predominant factors for class certification.

But I think for purposes of class certification, setting out the claims administrator is more than capable of handling this, whether it is after trial or after a class action settlement, it is sufficient to meet the predominance.

MR. RAIZMAN: I am talking about superiority. I am talking about, in your own words, unique issues in managing the class. And I am talking about the (b)(3) class. You don't have a proposal at this time for how that is going to happen?

MS. BERNAL: For the 23(b)(3) superiority? I'm sorry. I thought you were talking about predominance. So I don't think that really impacts superiority. Are you talking about the difficulties in managing the class action?

MR. RAIZMAN: Yeah. What is your plan for how that is going to happen?

MS. BERNAL: Yeah. So if there is liability, whether that is decided by the Court or a jury, there will then -- with a liability determination, you can create a pool for class members to submit to. They would submit that to a claims administrator, get through the process we set forth above, and that would say either you are entitled to that or you are not entitled to that. I think that presents no greater difficulties

than any other sort of class action. And it is, in fact, easier than a lot of consumer-type class actions in managing it.

MR. RAIZMAN: Okay. All right. So if I can suggest that our most urgent task is to try to reach agreement on these two briefing schedules. Will you try to get back to me as soon as possible, sort of first in concept on the 15th, and then working back from there we can talk about briefing schedule?

MS. BERNAL: Yes.

MR. PORTER: Yes. We will have that to you no later than tomorrow morning, probably this afternoon.

MR. RAIZMAN: Yes. I mean, I think we really need to know that. I understand, and I have to talk to my client too. So I am not saying for you to do what you can't do. But whatever you can do will certainly answer our ability to brief it.

MR. PORTER: Right. I would say I will get back to you this afternoon, but I don't know that I could be. I will get back to you tomorrow morning. If we get there this afternoon we'll certainly let you know right away. I am sensitive to the issues.

MR. RAIZMAN: Okay. Awesome. I am running late for another call. I appreciate your time this morning, and hopefully we'll be in touch had afternoon.

(TIME NOTED: 11:04 a.m.)

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were administered an oath; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [ ] was [ ] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or any party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: August 30, 2021

JOANNA BROADWELL

CSR No. 10959