1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345

Benjamin J. Sweet
(*Admitted Pro Hac Vice*)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

Attorneys for Plaintiffs Julian Vargas,
American Council of the Blind, and the Proposed Class

*Additional counsel for Plaintiff listed on signature page*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | |
|---|---|
| JULIAN VARGAS and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,<br><br><br><br>        Defendants. | Case No.: 2:19-cv-08108-DMG<br>***REDACTED***<br>**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>*[CONCURRENTLY FILED WITH OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND SUPPORTING DOCUMENTS]*<br><br>**Hearing Date:  October 8, 2021**<br>**Time:         2:00 p.m.**<br>**Courtroom:  8C**<br><br>Complaint Filed: September 18, 2019<br>Trial Date: January 11, 2022 |

1

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

Plaintiffs Julian Vargas and American Council of the Blind ("Plaintiffs") hereby submit this Statement of Genuine Issues of Material Fact and Additional Material Facts in Opposition to Quest's Motion for Summary Judgment, or in the alternative, Partial Summary Judgment, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-2.

In this statement, Plaintiffs respond to each of the "undisputed material facts" identified in Defendants' Quest Diagnostics Clinical Laboratories, Inc., Quest Diagnostics Holdings, Inc., and Quest Diagnostics Incorporated ("Defendants") Separate Statement of Uncontroverted Facts and Conclusions of Law in support of its Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment.

## DISPUTED MATERIAL FACTS

| | Defendants' Uncontroverted Facts and Supporting Evidence | Plaintiffs' Disputed Facts and Supporting Evidence |
|---|---|---|
| 1. | Quest is in the business of providing diagnostic information, which includes collecting blood and urine specimens that it then tests in accordance with physician orders.<br><br>Appendix of Evidence ("App.") 4 ¶ 2. | Undisputed this represents a portion of Quest's business. |
| 2. | Quest receives the specimens for testing from hospitals and medical practices, but also collects specimens for testing through approximately 2,100 patient service centers ("PSCs") located throughout the United States.<br><br>App. 4 ¶ 5; First Amended Complaint ¶ 42. | Undisputed. |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| 3. | Before the events of which Plaintiffs complain here, visitors to Quest PSCs would indicate their arrival at Quest PSCs, or check in, by entering their names on a sign-in sheet maintained in the waiting room. The phlebotomists staffing the PSCs would depart from the "draw rooms" where they drew blood, enter the waiting room, review the sign-in sheet and call the next patient back for specimen collection.<br><br>App. 4 ⁋⁋ 4, 5; App. 3 ⁋ 4. | Undisputed. |
|---|---|---|
| 4. | A cornerstone of Quest's phlebotomist training had been – and remains -- to teach PSC employees to scan the waiting room each time they entered to find any individuals who may need assistance, including those who were blind or had other disabilities.<br><br>App. 3 ⁋⁋ 3-4, 6-19; App. 8, 10-15, 27. | Disputed.<br><br>The record facts demonstrate that Quest did not provide adequate training to its phlebotomists in dealing with legally blind customers.  In addition, In addition, after ECSS was rolled out nationwide, there was no Quest personnel available to help customers at the vast majority of PSCs.<br><br>*Compare*, Ex. 31, at PA0858-875 [Derry dec.]; Ex. 10, at PA0369:2-370:23 [Vargas dep.]; Ex. 4, at ¶ 3 at PA0018 [Vargas dec.]; Ex. 21, at PA0680:24-682:5; PA0684:2-688:7 [Magana dep.]; Ex. 8, at PA0113:11-114:19; PA0115:18-117:23; PA0118-231 [Reilly dep.]; Ex. 22, at PA0699:18-700:16 [Stanley dep.]; *Against* Ex. 5, at PA0026:9-22 [Yarrison dep.]; Ex. 9, at PA0238:25-239:7, PA0244:22-245:7 [Grant dep.]. |

NYE, STIRLING, HALE & MILLER<br>33 WEST MISSION STREET, SUITE 201<br>SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | |
|---|---|---|
| | | *See also*, the following citations, also included in the evidentiary objections, which directly contradict Defendants' "fact": Ex. 36 at PA1017:13-19, PA1018:9-PA1019:1, PA1020:12-20, PA1021:24-1022:14, PA1023:3-20, PA1030:4-20. [Reilly dep.]. |
| 5. | Despite the longstanding use of the paper sign-in process at Quest PSCs, and the process being completely inaccessible without phlebotomist assistance to at least the totally blind, neither Plaintiff nor ACB is aware of even a single complaint under the ADA or analogous laws about the inaccessibility of this process.<br><br>App. 16 at 2-3 (Responses to RFAs Nos. 1 and 2); App. 17 at 115:20-116:5. | Disputed in part. Disputed insomuch as the cited evidence does not support the purported fact. For instance, the cited deposition from Mr. Rachfal's testimony relates to when Quest had a full-time receptionist to help all customers, something they no longer have. (App. 17 at 115:20-116:5). And, the RFA responses state Plaintiff ACB cannot admit or deny the request because it lacks sufficient information, something that does not support Defendants' "fact." (App. 16 at 2-3.)<br><br>*See also, Objections to Evidence* (The accessibility of a prior check-in system that was not in use at any Quest PSC during the Class Period is irrelevant to the resolution of this action).<br><br>*See,* Ex. 20 at PA0640:18-641:1 [Walsh dep.]; Ex. 5, at PA0027:8-13, PA0028:1-8 [Yarrison dep.]; Ex. 19, at PA0623:19-25 [Aronson dep.] (Quest implemented the ECSS kiosk check in at all 2,152 PSCs nationwide beginning in 2016). |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| 6. | Plaintiffs have not offered any evidence that Vargas, any ACB member, or any other Quest patient, had ever requested a sign-in process that was independently accessible to the blind without phlebotomist assistance.<br><br>App. 16 at 2-3 (Responses to RFAs Nos. 1 and 2); App. 17 at 115:20-116:5. | Disputed in part. Disputed insomuch as the cited evidence does not support the purported fact. For instance, the cited testimony from Mr. Rachfal's deposition relates to when Quest employed full-time receptionists to help all customers, something it no longer has at most of its locations. (App. 17 at 115:20-116:5). In addition, in its RFA response Plaintiff ACB states that it cannot admit or deny the request because it lacks sufficient information. It therefore cannot support Defendants' purported "fact." (App. 16 at 2-3.)<br><br>*See also, Objections to Evidence* (The accessibility of a prior check-in system that was not in use at any Quest PSC during the Class Period is irrelevant to the resolution of this action).<br><br>*See,* Ex. 20 at PA0640:18-641:1 [Walsh dep.]; Ex. 5, at PA0027:8-13, PA0028:1-8 [Yarrison dep.]; Ex. 19, at PA0623:19-25 [Aronson dep.] (Quest implemented ECSS at all 2,152 PSCs nationwide beginning in 2016). |
| 7. | In 2015, to improve the experience of patients and employees at PSCs through digitization, Quest began to explore ways to modify its PSC check-in practices, along with other aspects of its patient interaction – from making appointments and pre-registration | Disputed.<br><br>Disputed that the purpose of the ECSS kiosk was to improve patient experience. In fact, in the internal Quest ███████████████ |

5

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

|   |   |   |
|---|---|---|
|   | for the visits to how one checks in.<br><br>App. 4 ¶ 6; App. 18 at 29:10-30:8, 31:2-12, 37:20-39:17. | ▮▮▮▮▮▮▮▮▮<br><br>*See,* Ex. 20, at PA0636:10-24, PA0669:25-670:10, PA0668:15-25, PA0676 [Walsh dep. and exhibit].<br><br>*See also,* the following citations, also included in the evidentiary objections, which directly contradict Defendants' purported "fact": Ex. 34 at PA0948:8-14, PA0949:10-17. [Yarrison dep.] |
| 8. | None of these modifications eliminated or reduced available employee assistance to any patient facing challenges with the technology or who simply prefers human interaction.<br><br>App. 4 ¶ 10. | Disputed.<br><br>The entire rationale of ECSS was to save Quest tens of millions of dollars in costs by reducing employee interaction with patients, thereby allowing the company to see greater numbers of patients per day. By its very design, then, ECSS resulted in less employee interaction with patients.<br><br>*See,* Ex. 20, at PA0638:24-640:3 (Walsh dep.: ECSS "help" button inaccessible to blind individuals), PA0636:10-24, PA0669:25-670:10, PA0668:15-25, PA0676 [Walsh dep. and exhibit establishing ▮▮▮▮▮ ▮▮▮▮▮▮▮ Ex. 5, at PA0031:20-38:20, and PA0049-57 [Yarrison dep. and exhibit]; Ex. 9, at PA0247:18-24 [Grant dep.]; Ex. 6, at PA0092:25-96:25 [Carr dep.] ▮▮▮▮▮▮▮▮ |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | | Ex. 31, at PA0858-875 [Derry dec.] (relating to no employees in waiting rooms to help patients); *See* Ex. 27, at PA0749 [QUEST-VARGAS 000042029; QUEST-VARGAS 000039512-39653] ███████████████ |
|---|---|---|---|
| | | | *See also*, the following citations, also included in the evidentiary objections, which directly contradict Defendants' purported "fact":  Ex. 34 at PA0944:1-PA0945:10, PA0950:18-PA0951:3, PA0952:19-25, PA0945:11-PA0946:7, PA0956:4-10, PA0959:6-12, PA0960:6-9, PA0953:5-18, PA0947:1-8, PA0957:10-24, PA0954:14-PA0955:10, PA0948:8-14, PA0949:10-17, PA0944:1-PA0945:10, PA0961-PA0969. [Yarrison dep., Exhibit #6 to Yarrison dep.] |
| 9. | After considering a wide variety of options, in April 2016, Quest chose to install, over a two and-a-half year rollout, one or more electronic, touchscreen tablets to allow patients to check in at each of its PSCs. The tablets, when placed in plastic casings and mounted on posts, were known as "Kiosks." A Kiosk user would be prompted to check in by entering a first and last name, birthday and phone number. Once they had done so, the Kiosk would automatically check them in and | | Disputed in part. Specifically, Plaintiffs dispute the last sentence as the record indicates that patients were not "free to…us[e] employee assistance available to blind and sighted persons to check in." Plaintiffs further dispute any implication that ECSS only allowed a person to check in; in fact, ECSS offered several additional services beyond check in. Finally, Plaintiffs also dispute that the ECSS rollout occurred over the course of a full "two and-a-half" year period, as deposition testimony indicates it took at most two years. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

place them in queue to be served. The queue, with estimated wait times, would also be displayed on one or more of the "Quest TV" monitors present at each PSC. Patients were free to use or forego the Kiosk, using employee assistance available to blind and sighted persons to check in.

App. 4 ¶¶ 7-8, 10.

*See also, Evidentiary Objections (compound).*

For Dispute 1 (re: no employee available to help check-in): *See,* Ex. 6, at PA0092:25-94:5 [Carr dep.];

█████████████████████████ Ex. 31, at PA0858-75 [Derry dec.: finding that a phlebotomist swept the waiting area at only 1 of 24 investigated locations].); Ex. 10 at PA0346:3-5, PA0362:5-6, PA0365:9-14, PA0368:15-19; PA0369:2-6; PA0369:7-22; PA0369:23-370:2; PA0370:3-23; Ex. 12, at PA0520:23-521:5, PA0522:10-17, PA0523:4-524:16 [Bazyn dep.]; Ex. 11, at PA0507:4-510:19, PA0511:16-512:5, PA0513:15-514:19 [Black dep.]; Ex. 17, at PA0566:10-568:7, PA0569:6-571:2, PA0571:16-19, PA0574:1-21, PA0575:4-576:5 [Brink dep.]; Ex. 15, at PA0548:21-549:8, PA0550:22-552:4 [Grahmann dep.]; Ex. 14, at PA0537:10-540:9, PA0541:8-542:9, PA0543:9-544:1 [N. Haroyan dep.]; Ex. 13, at PA0529:3-530:23, PA0531:3-532:2 [M. Haroyan dep.]; Ex. 16, at PA0559:15-560:13, PA0561:14-21, PA0562:15-21 [Lyons dep.]; Ex. 22, at PA0695:8-24, PA0696:23-698:1, PA0701:16-21 [Stanley dep.]

For Dispute 2 (re: ECSS kiosk's benefits and services): *See,* Ex. 32, at PA0876-900, ¶¶ 10-51 [Montgomery dec.]; Ex. 20, at PA0659:1-24, PA0660:23-62:14, OA0667:1-8

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

8

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

| | | |
|---|---|---|
| | | [Walsh dep.]; Ex. 6, at PA0086:11-87:24 [Carr dep.]; Ex. 9, at PA0242:14-243:13 [Grant dep.]. For Dispute 3 (re: timing of rollout): *See,* Ex. 20, at PA0640:18-641:1 [Walsh de[.]; Ex. 5, at PA0027:8-13, PA0028:1-8 [Yarrison dep.]; Ex. 19, at PA0623:19-25 [Aronson dep.]. *See also*, the following citations, also included in the evidentiary objections, which directly contradict Defendants' "fact":  Ex. 34 at PA0944:1-PA0945:10, PA0950:18-PA0951:3, PA0952:19-25, PA0945:11-PA0946:7, PA0956:4-10, PA0959:6-12, PA0960:6-9, PA0953:5-18, PA0947:1-8, PA0957:10-24, PA0954:14-PA0955:10, PA0948:8-14, PA0949:10-17, PA0944:1-PA0945:10, PA0961-PA0969. [Yarrison dep., Exhibit #6 to Yarrison dep.] |
| 10. | Quest took care to ensure that it satisfied the explicit design standards applicable to the Kiosks in ADA Standards for Accessible Design (36 C.F.R. Pt. 1191, App. B & D, "ADAS"), including that all of the operable parts of the Kiosk were within "reach range" of someone using a wheelchair (ADAS 308, 309) and that the freestanding Kiosks were detectable by blind cane users (ADAS 307). App. 4 ¶ 9. | Disputed in part. Undisputed that Quest considered ADA standards related to wheelchair users. Disputed that Quest considered accessibility needs of its blind customers, as Quest's own executives repeatedly testified that blind users were never considered. *See,* Ex. 20, at PA0652:2-654:9, PA0674:4-675:20 [Walsh dep.]; Ex. 5, at PA0045:4-47:3, PA0049-64 [Yarrison dep. and Exhibits from Yarrison dep.]; Ex. 19, at PA0627:12-16, PA628:20-629:6 [Aronson dep.] |

9

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| 11. | In designing the Kiosk, Quest could not anticipate or predict the future requests for "auxiliary aids and services" (42 U.S.C. § 12182(b)(2)(a)(iii)) or for "reasonable modification of policies, practices and procedures" (42 U.S.C. § 12182(b)(2)(a)(ii)) that the ADA requires be considered when made.<br><br>App. 4 ¶ 10. | Disputed. Defendants' IT development team was aware of ADA accessibility problems with the kiosks prior to Quest's nationwide rollout of ECSS.  The IT team elevated these issues to project management yet Quest nonetheless elected to proceed with the rollout of a cheaper, totally inaccessible kiosk.<br><br>*See,* Ex. 20, at PA0645:10-646:21, PA0649:24-654:9, PA0655:5-25, PA0656:25-657:19, PA0658:1-19, PA0674:4-675:20 [Walsh dep.]; Ex. 6, at PA0072:2-75:12, PA0081:4-84:5 [Carr dep.]; Ex. 5, at PA0041:21-42:3, PA0042:24-44:33, PA0049-64 [Yarrison dep. and exhibits from dep.]; Ex. 19, at PA0622:16-20, PA0627:12-16, PA0628:20-629:6 [Aronson dep.]<br><br>*See also,* the following citations, also included in the evidentiary objections, which directly contradict Defendants' "fact":  Ex. 34 at PA0944:1-PA0945:10, PA0950:18-PA0951:3, PA0952:19-25, PA0945:11-PA0946:7, PA0956:4-10, PA0959:6-12, PA0960:6-9, PA0953:5-18, PA0947:1-8, PA0957:10-24, PA0954:14-PA0955:10, PA0948:8-14, PA0949:10-17, PA0944:1-PA0945:10, PA0961-PA0969. [Yarrison dep., Exhibit #6 to Yarrison dep.] |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| 12. | In implementing the Kiosks, Quest was replacing an existing system of signing in on a paper sheet, which had worked successfully for years for its blind patients, with another, digital system of checking in that was accessible with the assistance of Quest phlebotomists. As it had for years, Quest was relying on its business model, approach to patient service, policies and phlebotomists' training to assist any and all patients, including its disabled patients, with whatever needs they may have.<br><br>App. 4 ¶ 10; App. 3 ¶¶ 3-4. | Disputed.<br><br>The record demonstrates that after ECSS was rolled out nationwide, there was no Quest personnel available to help customers at the vast majority of PSCs. In addition, Quest personnel did not receive adequate training on assisting blind customers, according to multiple Quest employees. Finally, in moving to the ECSS system, Quest's business motive was cost savings, not helping patients.<br><br>*See,* Ex. 6, at PA0092:25-94:5 [Carr dep.]; ██████████████; Ex. 31, at PA0858-75 [Derry dec.: finding that a phlebotomist swept the waiting area at only 1 of 24 investigated locations].);<br>Ex. 10 at PA0346:3-5, PA0362:5-6, PA0365:9-14, PA0368:15-19; PA0369:2-6; PA0369:7-22; PA0369:23-370:2; PA0370:3-23 [Vargas dep.]; Ex. 20, at PA0669:25-670:10, PA0668:15-25, PA0676 [Walsh dep. and exhibit ██████ ██████████████<br><br>*See also,* the following citations, also included in the evidentiary objections, which directly contradict Defendants' "fact": Ex. 36 at PA1017:13-19, PA1018:9-PA1019:1, PA1020:12-20, PA1021:24-1022:14, PA1023:3-20, PA1030:4-20. [Reilly dep.]. |

11

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | Ex. 34 at PA0944:1-PA0945:10, PA0950:18-PA0951:3, PA0952:19-25, PA0945:11-PA0946:7, PA0956:4-10, PA0959:6-12, PA0960:6-9, PA0953:5-18, PA0947:1-8, PA0957:10-24, PA0954:14-PA0955:10, PA0948:8-14, PA0949:10-17, PA0944:1-PA0945:10, PA0961-PA0969. [Yarrison dep., Exhibit #6 to Yarrison dep.] |
|---|---|---|---|
| 13. | | Quest's plan and business case for the Kiosk rollout did not include a plan to reduce then existing PSC staffing or to replace PSC staff with Kiosks. Because electronic check-in and other improvements were expected to reduce transaction time for each patient by approximately one minute, Quest expected that phlebotomists would have additional time, among other things, to continue to address the needs of persons requiring assistance, including persons with disabilities. App. 4 ¶ 11. | Disputed. The entire purpose behind adopting ECSS was to reduce Quest phlebotomists' interactions with customers, thereby allowing the company to see more patients per day, increasing its efficiency and reducing its costs. While this may have resulted in an average reduction in wait time for sighted customers, Quest admits that it conducted no analysis of whether it reduced wait times for its legally blind customers. The record demonstrates that after ECSS was rolled out nationwide, there was no Quest personnel available to help customers at the vast majority of PSCs. *See,* Ex. 6, at PA0092:25-94:5 [Carr dep.]; ; Ex. 31, at PA0858-75 [Derry dec.: finding that a phlebotomist swept the waiting area at only 1 of 24 investigated locations].); Ex. 10 at PA0346:3-5, PA0362:5-6, PA0365:9-14, |

12

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | | |
|---|---|---|---|
| | | | PA0368:15-19; PA0369:2-6; PA0369:7-22; PA0369:23-370:2; PA0370:3-23 [Vargas dep.]; Ex. 20, at PA0669:25-670:10, PA0668:15-25, PA0676 [Walsh dep. and exhibit ███████ ████████████████████████████ See also, the following citations, also included in the evidentiary objections, which directly contradict Defendants' "fact": Ex. 34 at PA0948:8-14, PA0949:10-17, PA0944:1-PA0946:10. [Yarrison dep.] |
| 14. | Quest also planned to identify problems that any of its patients may be experiencing with the Kiosk through its extensive methods for soliciting and receiving patient complaints and feedback and engaging in the "iterative" process that is an inherent part of the rollout of any electronic or other technology. App. 4 ¶¶ 12-13; App. 3 ¶¶ 19-20. | | Disputed. The record evidence establishes ████████████████████████ ███████████████████████ ███████████████████████ ███████████████████ See, Ex. 20, at PA0638:24-640:3, 674:4-17 [Walsh dep.] ██████████████████████ ██████████████████████ ██████████████████████ █████; Ex. 5, at PA0031:20-38:20, PA0049-64 [Yarrison dep. and exhibits]; Ex. 6, at PA0092:25-96:25 [Carr dep.]; Ex. 10, at PA0381:16-382:23 [Vargas dep., offering to provide suggestions for how to make kiosk accessible]; Ex. 4, at ¶¶ 2-4 at PA0018 [Vargas dec. re: kiosk still not accessible]; Ex. 24, at PA0709-715 [ACB discovery responses identifying members who experienced access issues]; Ex. 18, at PA0583:18- |

13

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | | |
|---|---|---|---|
| | | | 598:1; PA0608 [Rachfal dep. re: letter requesting primary consideration for screen readers, which Quest ignored].

Irrelevant (immaterial), Fed. R. Evid. 401 and 402. Purportedly applicable policies, trainings, standards, or procedures not produced in discovery in violation of Rule 26 should have no bearing on the analysis.

*See also*, the following citations, also included in the evidentiary objections, which directly contradict Defendants' purported "fact": Ex. 34 at PA0953:5-18, PA947:1-8, PA0954:14-PA0955:10, PA0957:10-24, PA0961-PA0969. [Yarrison dep., Exhibit #6 to Yarrison dep.] |
| 15. | Quest always contemplated Kiosk implementation to be an "iterative" process. Namely, Quest knew that it would continue to study the actual experience of Kiosk users. and address any problems through future changes, modifications and alterations (i.e., iterations) to the Kiosk or the processes associated with the Kiosks' usage.

App. 4 ¶ 13. | | Disputed.

███████████████
███████████████
███████████████
███████████████

*See,* Ex. 20, at PA0638:24-640:3, 674:4-17 [Walsh dep.
███████████████
███████████████
███████████████       Ex. 5, at PA0031:20-38:20, PA0049-64 [Yarrison dep. and exhibits]; Ex. 6, at PA0092:25-96:25 [Carr dep.]; Ex. 10, at PA0381:16-382:23 [Vargas dep., offering to provide suggestions for how to make kiosk accessible]; Ex. 4, at ¶¶ 2-4  at PA0018 [Vargas dec. re: kiosk still |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | | |
|---|---|---|---|
| | | | not accessible]; Ex. 24, at PA0709-715 [ACB discovery responses identifying members who experienced access issues]; Ex. 18, at PA0583:18-598:1; PA0608 [Rachfal dep. re: letter requesting primary consideration for screen readers, which Quest ignored].<br><br>*See also*, the following citations, also included in the evidentiary objections, which directly contradict Defendants' purported "fact": Ex. 34 at PA0953:5-18, PA947:1-8, PA0954:14-PA0955:10, PA0957:10-24, PA0961-PA0969. [Yarrison dep., Exhibit #6 to Yarrison dep.] |
| 16. | Quest expected to gather information about Kiosk user experience by, among other things, (1) studying usage at some early rollout PSCs, (2) monitoring patient feedback, including feedback provide to patient service representatives at the PSCs and through the surveys it routinely takes of PSC visitors, and (3) its ongoing system of receiving and responding to patient concerns and complaints.<br><br>App. 4 ¶ 13; App. 3 ¶¶ 20-21; App. 9. | | Disputed.<br><br>[redacted]<br><br>*See also, Evidentiary Objections (re: sham affidavit conflicting with deposition testimony).*<br><br>*See,* Ex. 20, at PA0638:24-640:3, 674:4-17 [Walsh dep.]<br><br>[redacted] Ex. 5, at PA0031:20-38:20, PA0049-64 [Yarrison dep. and exhibits]; Ex. 6, at PA0092:25-96:25 [Carr dep.]; Ex. 10, at PA0381:16-382:23 [Vargas dep., offering to provide suggestions for how to make kiosk accessible]; Ex. 4, at ¶¶ 2-4 at |

15

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | |
|---|---|---|---|
| | | | PA0018 [Vargas dec. re: kiosk still not accessible]; Ex. 24, at PA0709-715 [ACB discovery responses identifying members who experienced access issues]; Ex. 18, at PA0583:18-598:1; PA0608 [Rachfal dep. re: letter requesting primary consideration for screen readers, which Quest ignored]. ; Ex. 21, at PA0683-88, 67:2-71:7, 53:19-24, 71:3-7 [Magana dep. re: no idea what primary consideration is and no memory of every providing an accommodation for a blind patient]. *See also*, the following citations, also included in the evidentiary objections, which directly contradict Defendants' "fact": Ex. 36 at PA1017:13-19, PA1018:9-PA1019:1, PA1020:12-20, PA1021:24-1022:14, PA1023:3-20, PA1030:4-20. [Reilly dep.]. |
| 17. | Between 2016 and 2020, Patient Advocacy received feedback from forty-five (45) patients (or their advocates) about either the inaccessibility of the Kiosks or inadequate staffing at the PSCs. App. 3 ¶ 21; App. 9. | | Undisputed this is what Defendant's produced ███████████████████████████████████████████ *See, e.g., complaints from Vargas and ACB members*: Ex. 24, at PA0709-715 [ACB discovery responses]; Ex. 10, at PA0381:16-382:4, PA0382:13-23 [Vargas dep.]. *See also*, the following citations, also included in the evidentiary objections, which directly contradict Defendants' "fact": Ex. 36 at PA1017:13-19, |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | |
|---|---|---|---|
| | | | PA1018:9-PA1019:1, PA1020:12-20, PA1021:24-1022:14, PA1023:3-20, PA1030:4-20. [Reilly dep.]. |
| 18. | In December 2018, ACB's Executive Director, Eric Bridges, sent near-identical letters about the Kiosks to Quest's General Counsel and its CEO on behalf of unidentified members of ACB.<br><br>App. 19 at 17:8-22, 127:24-128:4, 132:4-15, 186:14-25; App. 20. | | Undisputed Mr. Bridges sent the cited letters.<br><br>Disputed as cited evidence does not support contention of "near-identical" letters.<br><br>*See,* App. 19 at 17:8-22, 127:24-128:4, 132:4-15, 186:14-25; App. 20 [nothing stating letters are near-identical]. |
| 19. | Quest responded to the letters on January 2, 2019, and its then-Director of National Patient Services, Chris Grant, and an in-house Quest lawyer had two discussions with ACB (January 25, and April 12, 2019) and exchanged multiple emails.<br><br>App. 19 at 137:7-138:17, 141:22-142:8, 142:24-143:2, 149:3-13, 152:7-153:1; App. 21; App. 29; App. 7; App. 2 ¶ 3. | | Undisputed. |
| 20. | By July 2019, ACB had retained counsel Matthew Handley, who continued to correspond with Quest's representatives.<br><br>App. 19 at 158:4-11, 211:14-214:5; App. 7. | | Undisputed. |
| 21. | While discussions between Quest and ACB continued, on September 18, 2019, Quest was sued without notice in this action by Vargas and former plaintiff | | Undisputed Plaintiffs sued Quest on September 18, 2019.<br><br>Disputed that Quest did not have notice of its inaccessible kiosk, as it |

17

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | Anne West. At the January 10, 2020 Scheduling Conference, Vargas, West and Quest agreed to an early mediation of this dispute, which occurred on March 12, 2020. Eventually, in April 2020, ACB sought to join this action.<br><br>ECF Nos. 1, 33, 34, 40. | knew of its inaccessibility, knew of low-cost accessible option ███████<br><br>█████████<br><br>*See also, Evidentiary Objections (re: immaterial fact).*<br><br>*See,* Ex. 10, at PA0381:16-382:4, PA0382:13-23 [Vargas dep.]; Ex. 20, at PA0638:24-640:3, 674:4-17 [Walsh dep.] ███████<br><br>████ x. 5, at PA0031:20-38:20, PA0049-64 [Yarrison dep. and exhibits]; Ex. 6, at PA0092:25-96:25 [Carr dep.]. |
| 22. | West dismissed her claims with prejudice on May 27, 2021.<br><br>ECF No. 78. | Undisputed. |
| 23. | While ACB occasionally referred to making the Kiosks "independently accessible" to its blind members, at no point during these discussions did ACB demand a specific method or technology to replace or supplement the existing Kiosks.<br><br>App. 2 Decl. ¶¶ 3, 5; App. 17 at 188:22-191:15, 192:8-194:8; App. 29; App. 21; App. 7. | Disputed.<br><br>*See also, Evidentiary Objections (re: immaterial fact)*<br><br>ACB made clear that it wanted Quest to provide an ECSS kiosk that is independently accessible to its legally blind customers.<br><br>*See,* Ex. 40, at PA1063:15-PA1064:21, PA1065:22-PA1061:14. [Additional Stanley dep.]; Ex. 18, at PA0599:7-608 [Rachfal dep.]. and Ex. 38 at PA1045:9-PA1056:9. [Additional Rachfal dep.]. |

18

| | | |
|---|---|---|
| | | *See also*, the following citations, also included in the evidentiary objections, which directly contradict Defendants' "fact": Ex. 37 at PA1037:16-24, PA1040:18-25, PA1041:6-16, PA1042:22-PA1043:5, PA1036:20-23, PA1038:5-17. [Grant dep.] |
| 24. | ACB first identified a member on whose behalf it was speaking to Quest in a December 10, 2019 letter.<br><br>App. 7. | Undisputed. |
| 25. | ACB's initial letters explicitly referenced a concern that certain PSCs did not have sufficient Quest phlebotomists in the PSC waiting rooms to assist patients with check-in.<br><br>App. 20. | Undisputed that this concern was raised in the letter.  Disputed that this was the only concern raised in the letter.<br><br>*See also, Evidentiary Objections (re: immaterial fact).*<br><br>*See,*  Ex. 40, at PA1063:15-PA1064:21, PA1065:22-PA1061:14. [Additional Stanley dep.]; Ex. 18, at PA0599:7-607:8; 608 [Rachfal dep.] and  Ex. 38 at PA1045:9-PA1056:9. [Additional Rachfal dep.]. |
| 26. | In response to the discussions with ACB and the impending mediation, Quest undertook an extensive, months-long exploration of methods it could use to enhance the Kiosk | Disputed that Quest took this action in response to ACB's requests.  When asked whether Quest gave ACB's request primary consideration, Quest asserted privilege and instructed the witnesses not to answer.  To date, Quest has not produced any evidence that it gave primary consideration to |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

19

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | |
|---|---|
| check-in process so that blind users could independently check in.<br><br>App. 2 ¶ 4; App. 1 ¶¶ 3-4. | ACB's requests.  Quest's purported solution – "three finger swipe" – has not been rolled out across Quest's PSC network and is rife with accessibility issues in its own rite.<br><br>Ex. 35, at PA0999:13-16, PA1000:2-PA1003:23, PA1004:6-12, PA1005:22-1008:21, PA1012:2-PA1014:20. [Carr dep.]<br>Ex. 18, at PA0599:7-607:8; 608 [Rachfal dep.]; Ex. 10, at PA0382-83 [Vargas dep.] at 133:17-135:24;<br>Ex. 31, at PA0858-875 [Derry dec. re: TFS issues in PSCs]<br>Ex. 32 [Montgomery dec.] at PA0876-900;<br>Ex. 36 at PA1017:13-19, PA1018:9-PA1019:1, PA1020:12-20, PA1021:24-1022:14, PA1023:3-20. [Reilly dep.].<br>Ex. 21, at PA0683, 688 [Magana dep.] at 53:7-18, 71:3-7;<br>Ex. 39, at PA1058:8-21, PA1059:16-19, PA1060:6-11, PA1061:22-24. [Additional Magana dep.].<br><br>Ex. 35, at PA0975:11-7, PA0981:4-17, PA0984:13-16, PA0986:15-22, PA0987:9-19, PA0982:1-8, PA0991:3-18, PA0992:15-25, PA0993:2-10, PA0993:24-PA0994:8, PA0994:13-24, PA0995:1-7, PA1007:3-13, PA1012:2-PA1014:20, PA1009:12-PA1011:3. [Carr dep.]<br><br>*See also*, the following citations, also included in the evidentiary objections, which directly contradict Defendants' |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

| | | |
|---|---|---|
| | | "fact": Ex. 35, at PA0975:11-7, PA0981:4-17, PA0984:13-16, PA0986:15-22, PA0987:9-19, PA0982:1-8, PA0991:3-18, PA0992:15-25, PA0993:2-10, PA0993:24-PA0994:8, PA0994:13-24, PA0995:1-7, PA1007:3-13, PA1012:2-PA1014:20, PA1009:12-PA1011:3. [Carr dep.] <br> Ex. 37 at PA1037:16-24, PA1040:18-25, PA1041:6-16, PA1042:22-PA1043:5, PA1036:20-23, PA1038:5-17. [Grant dep.] |
| 27. | Quest solicited feedback from three different groups (including focus groups) of blind individuals or individuals who worked with accommodating the blind to understand what blind consumers wanted when interacting with electronic technology. <br><br> App. 1 ¶¶ 3-6. | Disputed that there is admissible record evidence that Quest solicited feedback from three different groups, as this evidence was not produced during discovery. It was produced for the first time in support of this Motion well after the close of fact discovery. In addition, the Quest Rule 30(b)(6) witness designated to testify on three-finger swipe Taylor Carr was repeatedly instructed by Quest's counsel not to answer questions related to three-finger swipe or whether they gave ACB's requests primary consideration on the basis of privilege. <br><br> Ex. 35, at PA0999:13-16, PA1000:2-PA1003:23, PA1004:6-12, PA1005:22-1008:21, PA1012:2-PA1014:20. [Carr dep.] <br> Ex. 18, at PA0599:7-607:8; 608 [Rachfal dep.]. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | |
|---|---|---|
| | | Ex. 10, at PA0382-83 [Vargas dep.] at 133:17-135:24;<br>Ex. 31, at PA0858-875 [Derry dec. re: TFS issues in PSCs]<br>Ex. 32 [Montgomery dec.] at PA0876-900;<br>Ex. 36 at PA1017:13-19, PA1018:9-PA1019:1, PA1020:12-20, PA1021:24-1022:14, PA1023:3-20. [Reilly dep.].<br>Ex. 21, at PA0683, 688 [Magana dep.] at 53:7-18, 71:3-7;<br>Ex. 39, at PA1058:8-21, PA1059:16-19, PA1060:6-11, PA1061:22-24. [Additional Magana dep.].<br><br>*See also*, the following citations, also included in the evidentiary objections, which directly contradict Defendants' "fact": Ex. 35, at PA0975:11-7, PA0981:4-17, PA0984:13-16, PA0986:15-22, PA0987:9-19, PA0982:1-8, PA0991:3-18, PA0992:15-25, PA0993:2-10, PA0993:24-PA0994:8, PA0994:13-24, PA0995:1-7, PA1007:3-13, PA1012:2-PA1014:20, PA1009:12-PA1011:3. [Carr dep.] |
| 28. | Based on that exploration and interaction with three different groups of blind consumers and their advocates, Quest developed a proposal in advance of the March 2020 mediation that has come to be known as the "Three Finger Swipe" ("TFS") enhancement. Employee assistance with the check-in process, whether through TFS or | Disputed that these actions were taken in response to ACB's inquiries in 2018.  The actions were taken in response to the initial lawsuit in this action filed on September 18, 2019. Even then, ACB was never consulted.<br><br>Ex. 35, at PA0999:13-16, PA1000:2-PA1003:23, PA1004:6-12, PA1005:22-1008:21, PA1012:2-PA1014:20. [Carr dep.] |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | |
|---|---|---|---|
| | another mode, remained available.<br><br>App. 1 ¶ 6. | Ex. 18, at PA0599:7-607:8; 608 [Rachfal dep.].<br>Ex. 10, at PA0382-83 [Vargas dep.] at 133:17-135:24;<br>Ex. 31, at PA0858-875 [Derry dec. re: TFS issues in PSCs]<br>Ex. 32 [Montgomery dec.] at PA0876-900;<br>Ex. 36 at PA1017:13-19, PA1018:9-PA1019:1, PA1020:12-20, PA1021:24-1022:14, PA1023:3-20. [Reilly dep.].<br>Ex. 21, at PA0683, 688 [Magana dep.] at 53:7-18, 71:3-7;<br>Ex. 39, at PA1058:8-21, PA1059:16-19, PA1060:6-11, PA1061:22-24. [Additional Magana dep.].<br><br>*See also*, the following citations, also included in the evidentiary objections, which directly contradict Defendants' "fact": Ex. 35, at PA0985:17-23, PA0988:8-PA0989:5, PA0990:1-8, PA1007:5-13, PA1012:2-PA1014:20, PA1009:12-PA1011:3. [Carr dep.] |
| 29. | Following the mediation, Quest's then-Director of National Patient Services approved moving forward with implementing the TFS solution, which consists of three complementary steps to permit independent check-in at the Kiosks: (1) Enabling the Kiosks to automatically check in patients who swiped three fingers on the Kiosk screen in any direction, which then provides an audio message that tells the patient that they have been | Disputed.  At deposition, Christopher Grant claimed to know nothing about three finger swipe, testifying "you're asking me questions about the functionality of the device and I really—I can't give you an answer to it. I really can't. I don't know what all went into it, how does it all work . . . I'm just an engineer. I don't understand that stuff." [Grant depo. at 260:22-261:5.].  As such, Grant's Declaration should be stricken under the sham affidavit doctrine.  In addition, three finger swipe has not |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

checked in and assigned a generic patient ID number, and that this number would be called when it was their turn to be seen, and further providing notification to Quest phlebotomists at the PSC that an individual with visual impairments had checked in; (2) Programming Quest TVs at the PSCs to play, on continuous loop, an audio message that instructs patients who are blind or who have visual impairments on how to check in at the Kiosk with the TFS; and (3) Developing and assigning updated ADA training for PSC employees on the TFS and how to assist the blind and other patients with disabilities to access Quest's services.

App. 2 ⁋ 6; App. 1 ⁋ 6.

been rolled out across the Quest PSC network and suffers from several serious accessibility issues in its own rite.  Finally, Quest does not provide its employees training in how to deal with legally blind customers or in how to give their requested accommodations primary consideration.

Ex. 35, at PA0999:13-16, PA1000:2-PA1003:23, PA1004:6-12, PA1005:22-1008:21, PA1012:2-PA1014:20. [Carr dep.]
Ex. 18, at PA0599:7-607:8; 608 [Rachfal dep.].
Ex. 10, at PA0382-83 [Vargas dep.] at 133:17-135:24;
Ex. 31, at PA0858-875 [Derry dec. re: TFS issues in PSCs]
Ex. 32 [Montgomery dec.] at PA0876-900;
Ex. 36 at PA1017:13-19, PA1018:9-PA1019:1, PA1020:12-20, PA1021:24-1022:14, PA1023:3-20. [Reilly dep.].
Ex. 21, at PA0683, 688 [Magana dep.] at 53:7-18, 71:3-7;
Ex. 39, at PA1058:8-21, PA1059:16-19, PA1060:6-11, PA1061:22-24. [Additional Magana dep.].

*See also*, the following citations, also included in the evidentiary objections, which directly contradict Defendants' "fact": Ex. 35, at PA0985:17-23, PA0988:8-PA0989:5, PA0990:1-8, PA1007:5-13, PA1012:2-PA1014:20, PA1009:12-PA1011:3. [Carr dep.]

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | |
|---|---|---|---|
| | | | Ex. 37 at PA1040:18-25, PA1042:22-PA1043:5, PA1041:6-16, PA1036:20-23, PA1032:8-16, PA1038:22-PA1039:17, PA1035:7-15, PA1034:12-17, PA1038:5-17. [Grant dep.] |
| 30. | | The TFS capability was installed in all PSCs in August 2020. The audio message on the Quest TVs at the PSCs was activated in January 2021, and the enhanced training of PSC employees was rolled out and assigned in March 2021.<br><br>App. 1 ¶ 7. | Disputed. The investigation of experienced accessibility investigator Mark Derry demonstrated that three finger swipe was not rolled out across the Quest PSC network effectively and suffers from many accessibility issues in its own rite.   In addition, Quest does not provide its employees training in how to deal with legally blind customers or in how to give their requested accommodations primary consideration.<br><br>*See,* Ex. 4, ¶¶ 3-4 [Vargas Dec]; Ex. 31 at PA0858-75 [Derry dec.]; Ex. 32 at PA0876-900 [Montgomery dec.]; Ex. 15 at PA0550:24-552:2, PA0553:21-554:8 [Grahmann dep.].<br><br>*See also*, the following citations, also included in the evidentiary objections, which directly contradict Defendants' "fact": Ex. 35, at PA0987:9-19, PA0982:1-8, PA0988:8-PA0989:5, PA0990:1-8. [Carr dep.] [Carr depo. at 179:9-19; 159:1-8; 196:8-197:5; 203:1-8.] |
| 31. | | With TFS' implementation, blind patients (or any other patients) at the PSCs can be checked in to | Disputed that three finger swipe allows legally blind patients to independently access ECSS.   The |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

receive services simply by applying three fingers to the face of the Kiosk tablet and swiping in any direction. Blind patients are intimately familiar through use of their smartphones with the operation of touchscreens through the application of unique finger gestures on their screens. The TFS uses one of these familiar guestures [sic].

App. 17 at 86:9-16, 88:4-89:4, 94:3-11; App. 22 at 143:21-24; App. 19 at 97:15-98:15, 99:2-100:20, 102:4-10.

investigation of experienced accessibility investigator Mark Derry demonstrated that three finger swipe was not rolled out across the Quest PSC network effectively and suffers from many accessibility issues in its own rite.

Ex. 4, ¶ 2-4 at PA0018 [Vargas dec.]; Ex. 10, at PAPA0392:21-394:18, 0406:8-407:3 [Vargas dep. re: three-finger swipe not associated normally with the action it represents on the ECSS kiosk and does not allow blind users access to all services of kiosk]; Ex. 31, at PA0858-75 [Derry dec.]; Ex. 10 at PA0346:3-5, PA0362:5-6, PA0365:9-14, PA0368:15-19; PA0369:2-6; PA0369:7-22; PA0369:23-370:2; PA0370:3-23; Ex. 12, at PA0520:23-521:5, PA0522:10-17, PA0523:4-524:16 [Bazyn dep.]; Ex. 11, at PA0507:4-510:19, PA0511:16-512:5, PA0513:15-514:19 [Black dep.]; Ex. 17, at PA0566:10-568:7, PA0569:6-571:2, PA0571:16-19, PA0574:1-21, PA0575:4-576:5 [Brink dep.]; Ex. 15, at PA0548:21-549:8, PA0550:22-552:4 [Grahmann dep.]; Ex. 14, at PA0537:10-540:9, PA0541:8-542:9, PA0543:9-544:1 [N. Haroyan dep.]; Ex. 13, at PA0529:3-530:23, PA0531:3-532:2 [M. Haroyan dep.]; Ex. 16, at PA0559:15-560:13, PA0561:14-21, PA0562:15-21 [Lyons dep.]; Ex. 22, at PA0695:8-24, PA0696:23-698:1, PA0701:16-21 [Stanley dep.]; Ex. 32, at PA0876-900 [Montgomery dec.].

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| 32. | The alternative of phlebotomist assistance remains available.<br><br>App. 3 ¶ 7; App. 10. | Disputed. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See,* Ex. 27, at PA0749 [QUEST-VARGAS 000042029; QUEST-VARGAS000039512-39653] At these locations, there is no one at all to greet legally blind patients. In addition, Quest's claim that employees "sweep" the waiting area to assist blind customers is simply not true, as the Mark Derry investigation found only one of the 24 investigated locations had a Quest employee present in the waiting room.<br><br>Ex. 4, ¶ 2-4 at PA0018 [Vargas dec.]; Ex. 10, at PA0406:8-407:3 [Vargas dep.]; Ex. 31, at PA0858-75 [Derry dec.]; Ex. 10 at PA0346:3-5, PA0362:5-6, PA0365:9-14, PA0368:15-19; PA0369:2-6; PA0369:7-22; PA0369:23-370:2; PA0370:3-23; Ex. 12, at PA0520:23-521:5, PA0522:10-17, PA0523:4-524:16 [Bazyn dep.]; Ex. 11, at PA0507:4-510:19, PA0511:16-512:5, PA0513:15-514:19 [Black dep.]; Ex. 17, at PA0566:10-568:7, PA0569:6-571:2, PA0571:16-19, PA0574:1-21, PA0575:4-576:5 [Brink dep.]; Ex. 15, at PA0548:21-549:8, PA0550:22-552:4 [Grahmann dep.]; Ex. 14, at PA0537:10-540:9, PA0541:8-542:9, PA0543:9-544:1 [N. Haroyan dep.]; Ex. 13, at PA0529:3-530:23, PA0531:3-532:2 [M. Haroyan dep.]; Ex. 16, at PA0559:15-560:13, PA0561:14-21, PA0562:15-21 [Lyons |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | | dep.]; Ex. 22, at PA0695:8-24, PA0696:23-698:1, PA0701:16-21 [Stanley dep.]<br><br>Ex. 37 at PA1034:12-17.<br><br>*See also*, the following citations, also included in the evidentiary objections, which directly contradict Defendants' "fact": Ex. 36 at PA1017:13-19, PA1018:9-PA1019:1, PA1020:12-20, PA1021:24-1022:14, PA1023:3-20. [Reilly dep.]. |
| 33. | Quest gave primary consideration to ACB's request for an "independently accessible technology when it developed the TFS solution, which utilized smartphone "gestures" familiar to the blind.<br><br>App. 2 ¶¶ 3, 5; App. 17 at 91:2-9, 94-3:1; App. 29; App. 21. | Disputed. When asked whether Quest gave ACB's request primary consideration, Quest repeatedly asserted privilege and instructed its witnesses not to answer.  To date, Quest has not produced any evidence that it gave primary consideration to ACB's requests.  Quest's purported solution – "three finger swipe" – has not been rolled out across Quest's PSC network and is rife with accessibility issues in its own rite, as detailed in the Derry Investigation and Montgomery Declaration.<br><br>*See,* Ex. 18, at PA0583:18-598:1; PA0608 [Rachfal dep. re: letter requesting primary consideration for screen readers, which Quest ignored]; Ex. 10, at PAPA0392:21-394:18, 0406:8-407:3 [Vargas dep. re: three-finger swipe not associated normally with the action it represents on the ECSS kiosk and does not allow blind users access to all services of kiosk]; |

28

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | Ex. 22, at PA0699:18-700:16 [Stanley dep.]<br><br>*See also*, the following citations, also included in the evidentiary objections, which directly contradict Defendants' "fact": Ex. 37 at PA1037:16-24, PA1040:18-25, PA1041:6-16, PA1042:22-PA1043:5, PA1036:20-23, PA1038:5-17. [Grant dep.] |
|---|---|---|---|
| | 34. | While some putative class members admit to being helped immediately, Vargas and some ACB members claim wait times at the PSCs ranging from one to 90 minutes (most on the short end of this range) before they were assisted.<br><br>App. 5 ¶¶ 12-13; App. 26-27. | Disputed. Multiple legally blind Quest customers testified that they were made to wait for excessive periods of time due to ECSS's inaccessibility. Even when these customers could finally be checked in, they required the assistance of a friend, loved one or unrelated third party.<br><br>*See,* Ex. 4, at ¶¶2-4 at PA0018 [Vargas dec., re: post-TFS rollout wait and access issues]; Ex. 31, at PA0858-875 [Derry dec. re: TFS issues in PSCs]; Ex. 12, at PA0518-A:7-12 [Bazyn dep.: husband checked her in]; Ex. 17, at PA0570:24-571:12 [Brink dep.: Quest employee asked for Brink's daughter to help]; Ex. 15, at PA0547A:20-548:1 [Grahmann dep.: relied on another patient, a stranger, to check her in]; Ex. 13, at PA0531:3-532:2, PA0532A:3-532C:15 [M. Haroyan dep.: relied on other patients – strangers – to sign her in twice before, and her father once]; Ex. 14, at PA0543:9-544:1, PA0542A:11-542B:8 [N. Haroyan dep.: relied on |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | | |
|---|---|---|---|
| | | | another patient, a stranger, to sign her in, as well as her father on other occasions]; Ex. 16, at PA0561:22-561A:5, PA0560:18-21 [Lyons dep.: relied on another patient, a stranger, to check her in, and now has to bring different people to help her check in]; Ex. 23, at PA0705:14-706:3 [Rehder dep.: relied on another patient, a stranger, to check her in]. |
| 35. | None of the deposed patients or others identified by Plaintiffs in discovery claims an inability to access, or denial of, diagnostic testing services.<br><br>App. 5 ¶¶ 12-13; App. 26-27. | Disputed. Plaintiff and each deposed ACB member testified they were denied services Defendants offer.<br><br>*See,* Ex. 10, at PA0368:15-376:14, PA0467:222-468:17 [Vargas dep. describing his experience]; Ex. 12, at PA0518-A:7-12, PA0520:23-521:5, PA0522:10-17, PA0523:4-524:16 [Bazyn dep.: husband checked her in]; Ex. 17, at PA0566:10-568:7, PA0569:6-571:2, PA0571:16-19, PA0574:1-21, PA0575:4-576:5, PA0570:24-571:12 [Brink dep.: Quest employee asked for Brink's daughter to help]; Ex. 15, at PA0547A:20-548:1, PA0548:21-549:8, PA0550:22-552:4 [Grahmann dep.: relied on another patient, a stranger, to check her in]; Ex. 13, at PA0529:3-530:23, PA0531:3-532:2, PA0531:3-532:2, PA0532A:3-532C:15 [M. Haroyan dep.: relied on other patients – strangers – to sign her in twice before, and her father once]; Ex. 14, at PA0537:10-540:9, PA0541:8-542:9, PA0543:9-544:1, PA0543:9-544:1, PA0542A:11-542B:8 [N. Haroyan dep.: relied on another patient, a | |

30

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | | stranger, to sign her in, as well as her father on other occasions]; Ex. 16, at PA0559:15-560:13, PA0561:14-21, PA0562:15-21, PA0561:22-561A:5, PA0560:18-21 [Lyons dep.: relied on another patient, a stranger, to check her in, and now has to bring different people to help her check in]; Ex. 23, at PA0705:14-706:3 [Rehder dep.: relied on another patient, a stranger, to check her in]; Ex. 11, at PA0507:4-510:19, PA0511:16-512:5, PA0513:15-514:19 [Black dep. describing experience]. |
| 36. | The sheer variety of experiences claimed by the testifying blind deponents demonstrate that their claim of unequal treatment at future visits is purely conjectural or hypothetical.<br><br>App. 5 ¶¶ 12-13; App. 26; App. 27. | Disputed. Plaintiff and each deposed ACB member testified they encountered the same inaccessible kiosk at every PSC.<br><br>*See,* Ex. 10, at PA0368:15-376:14, PA0467:222-468:17 [Vargas dep. describing his experience]; Ex. 12, at PA0518-A:7-12, PA0520:23-521:5, PA0522:10-17, PA0523:4-524:16 [Bazyn dep.: husband checked her in]; Ex. 17, at PA0566:10-568:7, PA0569:6-571:2, PA0571:16-19, PA0574:1-21, PA0575:4-576:5, PA0570:24-571:12 [Brink dep.: Quest employee asked for Brink's daughter to help]; Ex. 15, at PA0547A:20-548:1, PA0548:21-549:8, PA0550:22-552:4 [Grahmann dep.: relied on another patient, a stranger, to check her in]; Ex. 13, at PA0529:3-530:23, PA0531:3-532:2, PA0531:3-532:2, PA0532A:3-532C:15 [M. Haroyan dep.: relied on other patients – strangers – to sign her in twice |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | |
|---|---|---|
| | | before, and her father once]; Ex. 14, at PA0537:10-540:9, PA0541:8-542:9, PA0543:9-544:1, PA0543:9-544:1, PA0542A:11-542B:8 [N. Haroyan dep.: relied on another patient, a stranger, to sign her in, as well as her father on other occasions]; Ex. 16, at PA0559:15-560:13, PA0561:14-21, PA0562:15-21, PA0561:22-561A:5, PA0560:18-21 [Lyons dep.: relied on another patient, a stranger, to check her in, and now has to bring different people to help her check in]; Ex. 23, at PA0705:14-706:3 [Rehder dep.: relied on another patient, a stranger, to check her in]; Ex. 11, at PA0507:4-510:19, PA0511:16-512:5, PA0513:15-514:19 [Black dep. describing experience]. |
| 37. | Once a blind patient uses the TFS, she will be able to check in independently on the next visit without needing to hear the Quest TV message.

App. 17 at 86:9-16, 88:4-89:4, 94:3-11; App. 22 at 143:21-24; App. 19 at 97:15-98:15, 99:2-100:20, 102:4-10. | Disputed. Disputed that three finger swipe allows legally blind patients to independently access ECSS. The investigation of experienced accessibility investigator Mark Derry, for example, demonstrated that three finger swipe was not rolled out across the Quest PSC network effectively and suffers from many accessibility issues in its own rite.

*See,* Ex. 4, ¶¶ 3-4 at PA0018 [Vargas Dec.]; Ex. 31 at PA0858-75 [Derry dec.]; Ex. 32 [Montgomery dec.] at PA0876-900; Ex. 15, at PA0550:24-552:2, PA0553:21-554:8 [Grahmann dep.]. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

**PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS**

| | Plaintiffs' Additional Facts and Supporting Evidence | Defendants' Response to Cited Fact and Supporting Evidence |
|---|---|---|
| 1. | Quest operates 2,152 PSCs nationwide and 419 PSCs in California where patients can obtain many diagnostic services.<br><br>*See,* Ex. 30, at PA0811-812 [Quest discovery responses]. | |
| 2. | Approximately 250,000 people come through Quest PSCs daily.<br><br>*See,* Ex. 9, at PA0248:10-14 [Grant dep.]. | |
| 3. | Quest maintains contact information including email addresses and phone numbers and can match a patient's particular encounter to the PSC he or she visited on a particular date through its internal data service called Quanum.<br><br>*See,* Ex. 20, at PA0664:13-665:7 [Walsh dep.]. | |
| 4. | Beginning in 2014, Quest looked for ways to reduce phlebotomists' contacts with patients, which would allow for more patient visits per day at its PSCs, thereby increasing Quest's profitability.<br><br>*See,* Ex. 20, at PA0636:10-24 [Walsh dep.] | |
| 5. | Quest considered several innovations before ultimately landing on ECSS. | |

NYE, STIRLING, HALE & MILLER<br>33 WEST MISSION STREET, SUITE 201<br>SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | |
|---|---|
| | *See,* Ex. 20, at PA0637:5-15 [Walsh dep.]; Ex. 6, at PA0070:2-5 [Carr dep.]. |
| 6. | ECSS offers patients several important features including, for example, (1) an automated check in process for any diagnostic services performed at the PSC, (2) the ability to wait safely outside and receive a text message when the patient's turn has arrived (a feature added during the Covid-19 pandemic), (3) specimen drop off and pick up, and (4) knowledge about where a patient stands in the service queue. ████████████████████ *See,* Ex. 27, at PA0749 [QUEST-VARGAS 000035245 – eCheckin CapEx tab - Summarized Project Description]; Ex. 9, at PA0240:7-241:3 [Grant dep.]. |
| 7. | Since 2016 ██████████████████████ ██████████████████████ ██████████████████████ ██████████████████████ ██████████████████████ *See,* Ex. 19, at PA0624:12-626:25 [Aronson dep.].) Ex. 20, at PA0660:23-661:1 [Walsh dep.]. |
| 8. | Quest never performed any analysis of what it would cost to provide its legally blind customers with access to ECSS. |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

34

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

|   |   |   |
|---|---|---|
|   | *See,* Ex. 6, at PA0081:4-84:5 [Carr dep.]; Ex. 20, at PA0658:1-19 [Walsh dep.]; Ex. 5, at PA0043:11-44:3 [Yarrison dep.]. |   |
| 9. | The goal of ECSS was ████████████<br><br>*See,* Ex. 20, at PA0669:25-670:10, PA0668:15-25, PA0676 [Walsh dep. and exhibit]. |   |
| 10. | The ECSS goal ████████████<br><br>*See,* Ex. 20, at PA0669:25-670:10, PA0668:15-25, PA0676 [Walsh dep. and exhibit]. |   |
| 11. | ████████████<br><br>*See,* Ex. 20, at PA0641:17-642:1 [Walsh dep.] |   |
| 12. | Quest considered several tablet and enclosure vendors for ECSS. One vendor, Habey, asked Quest if it needed audio for the kiosk. |   |

35

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | *See,* Ex. 20, at PA0649:24-651:25 [Walsh dep.]. | |
| 13. | Habey's question led Quest's IT team to question whether Quest should add audio to "service patients with impaired vision," and whether they needed to bring the kiosk into compliance with the ADA to service visually-impaired patients.<br><br>*See,* Ex. 20, at PA0652:2-654:9 [Walsh dep.] | |
| 14. | Rather than follow through on these questions, Quest ultimately chose a kiosk that was not independently accessible for its legally blind patients.<br><br>*See,* Ex. 20, at PA0655:5-25 [Walsh dep.]; Ex. 5, at PA0039:6-40:12, PA0045:3-46:18 [Yarrison dep.]. | |
| 15. | Quest contracted with Lilitab to provide the iPad tablet and enclosure for ECSS. Lilitab offered (and offers) kiosks with accessible features and could have provided the same to Quest if so desired.<br><br>*See,* Ex. 19, at PA0613:12-19, PA0630:4-18, PA0614:10-615:17, PA0619:10-620:8 [Aronson dep.].) | |
| 16. | The accessible features include a headphone jack placed in a Lilitab enclosure to allow a blind user access to audio from the tablet, and | |

36

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | specifically, to access the iPad's built-in voiceover technology. *See,* Ex. 19, at PA0614:10-615:17, PA0619:10-620:8 [Aronson dep.] | |
| 17. | This accessible headphone jack cost just $30 per kiosk. *See,* Ex. 19, PA0616, at 31:9-22 [Aronson dep.] | |
| 18. | Lilitab also offered (and offers) the option of a tactile keyboard for accessibility for just $95 per enclosure. *See,* Ex. 19, at PA0617:14-618:15, PA0621:11-25 [Aronson dep.] | |
| 19. | Quest could have purchased an AudioNav keypad for iOS which costs just $309.75 per kiosk. *See* Ex. 32, ¶ 48 at PA0885-886 [Montgomery dec.]. | |
| 20. | Accordingly, using Quest's own internal cost saving projections, the Company could have provided at least one independently accessible kiosk option at its 2,152 PSCs for just $935,582 – ███████████ ███████████ ███████. *See,* Ex. 20, at PA0669:25-670:10, PA0668:15-25, PA0676 [Walsh dep. and exhibit]; Ex. 32, ¶ 48 at PA0885-886 [Montgomery dec.]. | |

37

| | | |
|---|---|---|
| | ; Ex. 19, at PA0617:14-618:15, PA0621:11-25 [Aronson dep.] | |
| 21. | Quest never inquired about the possibility of having an accessible kiosk for blind customers, despite him expressly informing Quest that Lilitab could outfit the kiosk with an inexpensive headphone jack for accessibility.<br><br>*See,* Ex. 19, at PA0627:12-16, PA628:20-629:6 [Aronson dep.]. | |
| 22. | Quest's focus was instead on getting a "low cost" kiosk.<br><br>*See,* Ex. 19 at PA0622:16-20 [Aronson dep.] | |
| 23. | The Quest IT team recommended an iPad tablet for the ECSS kiosk with the Lilitab enclosure.<br><br>*See,* Ex. 20, at PA0645:10-646:21 [Walsh dep.]. | |
| 24. | The IT team was aware the iPad had accessibility features within its iOS suite yet undertook no analysis of whether the ECSS kiosk could utilize the built-in accessibility features.<br><br>*See,* Ex. 20, at PA0656:25-657:19 [Walsh dep.]; Ex. 6, at PA0072:2-75:12 [Carr dep.]; Ex. 5, at PA0041:21-42:3 [Yarrison dep.]. | |
| 25. | ███████████████████ | |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

*See,* Ex. 20, at PA0674:4-17 [Walsh dep.]; Ex. 5, at PA0049-64 [Exhibits from Yarrison dep.]

| 26. | The IT team also noted ADA-compliant kiosk options, but Quest never followed up on them despite their posing no undue financial burden to the Company.<br><br>*See,* Ex. 20, at PA0674:19-675:20 [Walsh dep.]; Ex. 5, at PA0042:24-43:88, PA0045:4-47:3 [Yarrison dep.] | |
| --- | --- | --- |
| 27. | The working prototype kiosk Quest's IT team developed, which Quest ultimately implemented, had a base, a mount or post, enclosure, and the iPad itself.<br><br>*See,* Ex. 7, at PA0106:13-21 [O'Campo dep.] | |
| 28. | While the kiosk contained a touchscreen help swipe button a sighted customer could use if he or she was having difficulty with the kiosk, the help button had no audio or other functionality that would allow a blind user to use it independently.<br><br>*See,* Ex. 20, at PA0638:24-640:3 [Walsh dep.] | |
| 29. | At no time during the IT development did Quest delegate anyone to address | |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

|  |  |  |
|---|---|---|
|  | ADA accessibility issues related to ECSS.<br><br>*See,* Ex. 20, at PA0643:14-644:23, PA0647:24-648:5 [Walsh dep.]; Ex. 6, at PA0076:9-80:3 [Carr dep.] |  |
| 30. | Quest admits that during the Class Period, ECSS contained no features that would make it independently usable by legally blind people.<br><br>*See,* Ex. 5, at PA0029:17-24 [Yarrison dep.]. |  |
| 31. | Once the IT team developed the working prototype, it sent the prototype to Quest's national patient services team for implementation.<br><br>*See,* Ex. 20, at PA0637A:6-16 [Walsh dep.]. |  |
| 32. | Quest implemented the ECSS kiosk at all 2,152 PSCs nationwide beginning in 2016.<br><br>*See,* Ex. 20, at PA0640:18-641:1 [Walsh dep.]; Ex. 5, at PA0027:8-13, PA0028:1-8 [Yarrison dep.]; Ex. 19, at PA0623:19-25 [Aronson dep.]. |  |
| 33. | When a sighted patient checks in at the kiosk, Quest places that patient in line by time of check in with a video monitor in the PSC displaying the patient's wait time and place in queue.<br><br>*See,* Ex. 20, at PA0666:12-19, PA0671:9-672:225 [Walsh dep.] |  |

40

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | |
|---|---|---|---|
| 34. | The ECSS kiosk communicates to the phlebotomist's screen in the back of the PSC when a patient checks in.<br><br>*See,* Ex. 20, at PA0663:9-20 [Walsh dep.] | |
| 35. | ECSS's implementation has reduced patient wait time for sighted patients, allowing Quest to enjoy increased productivity.<br><br>*See,* Ex. 20, at PA0673:5-8 [Walsh dep.] | |
| 36. | After the initial rollout, ████████<br>████████████████████████<br>████████████████████████<br>████████████████████████<br>████████████████████████<br>████████████████████<br><br>*See,* Ex. 20, at PA0659:1-24 [Walsh dep.] | |
| 37. | ████████████████████████<br>████████████████████████<br>████████████████████████<br><br>*See,* Ex. 20, at PA0660:23-662:14 [Walsh dep.] | |
| 38. | In addition, during the Covid-19 pandemic Quest rolled out a "wait where you want" feature that allows sighted patients to input their phone number into the kiosk and wait outside to avoid close contact with other | |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ



customers. This is not available to blind users.

*See,* Ex. 20, at PA0667:1-8 [Walsh dep.]; Ex. 6, at PA0086:11-87:24 [Carr dep.]; Ex. 9, at PA0242:14-243:13 [Grant dep.]

39.

*See,* Ex. 5, at PA0031:20-38:20, and PA0049-57 [Yarrison dep. and exhibit]; Ex. 9, at PA0247:18-24 [Grant dep.]

40.

*See,* Ex. 6, at PA0092:25-94:5 [Carr dep.]

41.

*See,* Ex. 6, at PA0094:16-95:19 [Carr dep.]

42.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | |
|---|---|---|
| | *See,* Ex. 6, at PA0095:20-96:25 [Carr dep.] | |
| 43. | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br><br> *See,* Ex. 5, at PA0031:20-38:20, and PA0049-57 [Yarrison dep. and exhibit] | |
| 44. | Well after Plaintiffs initiated this lawsuit, and in an attempt to moot Plaintiffs' claims in this litigation, Quest began to roll out the TFS feature at its PSCs. TFS purportedly would allow legally blind customers to use a 3-finger gesture at the kiosk to enter the queue for service. <br><br> *See,* Ex. 6, at PA0087:25-88:1, PA0097:20-98:7 [Carr dep.] | |
| 45. | Quest's executives claimed under oath that TFS has been rolled out throughout its PSC network by August 2020. <br><br> *See,* Ex. 6, at PA0089:2-8, PA099:17-19 [Carr dep]; Ex. 5, at PA0030:10-14 [Yarrison dep.]; Ex. 9, at PA0249:20-23 [Grant dep.] | |
| 46. | Quest also claims it implemented an audio loop on a video screen which directs patients to check in at the kiosk and that the audio loop repeats every seven to ten minutes. <br><br> *See,* Ex. 6, at PA0090:8-24, PA0091:8-14 [Carr dep.] | |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| 47. | TFS does not provide independent and private access to all kiosk services (e.g., "wait where you want," specimen drop-off, appointment check-in versus walk-in).<br><br>*See,* Ex. 32, at PA0876-900, ¶¶ 10-51 [Montgomery dec.] | |
| 48. | Even the service of receiving a patient number for the queue is not accessible because a blind patient would have no accessible instruction for how to do it, with no Braille instruction option or tactile keyboard.<br><br>*See,* Ex. 32, at PA0876-900, ¶¶ 10-51 [Montgomery dec.] | |
| 49. | In addition, the audio volume of the LCD monitors in the PSC waiting areas regularly interferes with the audio of the kiosk itself.<br><br>*See,* Ex. 32, at PA0876-900, ¶¶ 10-51 [Montgomery dec.] | |
| 50. | The service of knowing where you are in the queue – an important feature according to Quest's own documents – is also inaccessible because the only place it appears is in the LCD monitor, which a blind customer cannot see.<br><br>*See,* Ex. 32, at PA0876-900, ¶¶ 10-51 [Montgomery dec.] | |
| 51. | TFS does not allow blind customers to make use of the kiosk's features, | |

44

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | including the "wait where you want" option available to Quest's sighted customers. *See,* Ex. 6, at PA0086:11-87:24. [Carr dep.]. | |
| 52. | TFS is itself inaccessible to the legally blind and provides an unequal and lesser experience for legally blind customers. *See,* Ex. 4, ¶¶3-4 at PA0018 [Vargas dec.], Ex. 15, at PA0550:24-552:2, PA0553:21-554:8 [Grahmann dep.] | |
| 53. | Not only does TFS fail to provide blind individuals with an opportunity to independently access the ECSS kiosk service, but, contrary to the Company's sworn testimony, it is not even available throughout the Quest PSC network. *Compare,* Quest's MSJ (Dkt. 95-1, at 16:9-10, *against* Ex. 31, at ¶ 7, PA0859 [Derry dec.] | |
| 54. | In response to Quest's repeated claims under oath that Quest implemented TFS across the Company's PSC network, Plaintiff's accessibility investigator, Mark Derry, investigated 24 Quest PSC locations and discovered Quest's purported "solution" is riddled with glaring deficiencies at every single one, barring any argument of mootness. *See* Ex. 6, at PA0089:2-8 [Carr dep.]; Ex. 5, at PA0030:10-14 [Yarrison | |

45

| | | |
|---|---|---|
| | dep.]; Ex. 9, at PA0249:20-23 [Grant dep.]; Dkt. 95-1, at 16:9-10; Ex. 31, at PA0858-875 [Derry dec.] | |
| 55. | At many Quest locations, Derry found there is no way for blind patients to know TFS even exists.<br><br>*See,* Ex. 31, at PA0858-875 [Derry dec.] | |
| 56. | To inform blind patients of TFS, Quest relies on a voice message which is supposed play on a loop from an LCD monitor located in the patient service centers.<br><br>*See,* Ex. 6, at PA0090:8-24 [Carr dep.]; Ex. 5, at PA0048:12-19 [Yarrison dep.]; Ex. 9, at PA0246:7-15 [Grant dep.] | |
| 57. | Quest executive Taylor Carr falsely testified this audio loop is present at all locations.<br><br>*See,* Ex. 6, at PA0100:5-7 [Carr dep.] | |
| 58. | Derry's investigation showed Quest only plays this "content loop" message every 15 to 20 minutes – if it is played at all.<br><br>*See,* Ex. 31, at PA0858-875 [Derry dec.] | |
| 59. | There was no audio loop at 14 of 24 investigated locations.<br><br>*See,* Ex. 31, at PA0858-875 [Derry dec.] | |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

46

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| 60. | At those 14 locations, blind patients have no way of even knowing TFS is an option for them.<br><br>*See,* Ex. 31, at PA0858-875 [Derry dec.] | |
| 61. | Quest's claim that employees "sweep" the waiting area to assist blind customers is simply not true, as the investigation found only one of the 24 investigated locations had a Quest employee present in the waiting room.<br><br>*See,* Ex. 31, at PA0858-875 [Derry dec.]; Ex. 5, at PA0026:9-22 [Yarrison dep.]; Ex. 9, at PA0238:25-239:7, PA0244:22-245:7 [Grant dep.] | |
| 62. | ████████████████████<br><br>*See,* Ex. 27, at PA0749 [QUEST-VARGAS 000042029; QUEST-VARGAS000039512-39653] | |
| 63. | For blind customers of these locations, there was no independent access to Quest's services at all during the Class Period unless the one employee on duty – a phlebotomist who is busy taking specimens – happened to sweep the waiting area.<br><br>*See,* Ex. 6, at PA0085:6-17, PA0071:6-12 [Carr dep.] | |
| 64. | But as the investigation and the experiences of Plaintiff Vargas and | |

47

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | several ACB members make clear, employees do not regularly sweep the waiting room.<br><br>*See,* Ex. 31, at PA0858-75 [Derry dec.: finding that a phlebotomist swept the waiting area at only 1 of 24 investigated locations] | |
| 65. | TFS is only available at select kiosks within the investigated PSCs: only 13 of the 24 investigated locations had all kiosks outfitted with TFS.<br><br>*See,* Ex. 31, at PA0858-75 [Derry dec.] | |
| 66. | Only 13 of the 24 investigated locations had an audio message confirming the blind customer had successfully checked in and entered the queue, though the audio is often not loud enough to be heard.<br><br>*See,* Ex. 31, at PA0858-75 [Derry dec.]; *see also,* Ex. 12, at PA0519:22-25 [Bazyn dep.]; Ex. 17, at PA0572:5-6 [Brink dep.]. | |
| 67. | Julian Vargas lives in Van Nuys, California.<br><br>*See,* Ex. 10, at PA0265:23-25 [Vargas dep.] | |
| 68. | He is legally blind and uses a screen reader as an auxiliary aid that allows him to understand the information displayed on a screen. | |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | |
|---|---|---|
| | *See,* Ex. 10, at PA0299:13-300:24, PA0460:10-14 [Vargas dep.] | |
| 69. | Mr. Vargas works as a consultant providing training and support to individuals on the use of assistance technology.<br><br>*See,* Ex. 10, at PA0273:15-276:24 [Vargas dep.] | |
| 70. | On June 25, 2019, Mr. Vargas took paratransit to a Quest PSC close to his house to obtain lab work.<br><br>*See,* Ex. 10, at PA0346:3-5, PA0362:5-6, PA0365:9-14, PA0368:15-19 [Vargas dep.] | |
| 71. | There was no greeter when Mr. Vargas arrived at the PSC.<br><br>*See,* Ex. 10, at PA0369:2-6 [Vargas dep.] | |
| 72. | Mr. Vargas took several minutes to locate a check-in window.<br><br>*See,* Ex. 10, at PA0369:7-22 [Vargas dep.] | |
| 73. | Once at the window, Mr. Vargas said "hello" several times without any employee coming out to help.<br><br>*See,* Ex. 10, at PA0369:23-370:2 [Vargas dep.] | |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | |
|---|---|---|
| 74. | After about 10 to 15 minutes of waiting, a phlebotomist came out to call another patient in for lab work. *See,* Ex. 10, at PA0370:3-23 [Vargas dep.] | |
| 75. | A sighted individual would not have had to wait, as he or she could have independently used the kiosk to check in. *See,* Ex. 10, at PA0461:7-21 [Vargas dep.] | |
| 76. | The phlebotomist asked Mr. Vargas if he needed help, and Mr. Vargas said he needed to get blood work his doctor ordered. *See,* Ex. 10, at PA0372:3-15 [Vargas dep.] | |
| 77. | The phlebotomist directed Mr. Vargas to the kiosk and told him, "This is where you check in." *See,* Ex. 10, at PA0372:3-15 [Vargas dep.] | |
| 78. | Mr. Vargas checked the kiosk for tactile markings, a headphone jack, or a tactile keypad that would allow him to use the kiosk. *See,* Ex. 10, at PA0372:25-373:14 [Vargas dep.] | |
| 79. | After not finding any accessibility options, Mr. Vargas told the | |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

50

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

|  |  |  |
|---|---|---|
|  | phlebotomist the kiosk was not accessible to blind people so he would need help signing in.<br><br>*See,* Ex. 10, *at* PA0373:15-22 [Vargas dep.] |  |
| 80. | The phlebotomist took the other patient back for lab work, then came back out approximately five minutes later to help Mr. Vargas.<br><br>*See,* Ex. 10, at PA0374:3-22 [Vargas dep.] |  |
| 81. | The phlebotomist asked Mr. Vargas for several pieces of personal information.<br><br>*See,* Ex. 10, at PA0375:9-376:14 [Vargas dep.] |  |
| 82. | Mr. Vargas suggested that the phlebotomist talk to whoever she needed to in order to ensure the kiosk was accessible to blind people. He further offered to provide his feedback to Quest.<br><br>*See,* Ex. 10, at PA0381:16-382:4, PA0382:13-23 [Vargas dep.] |  |
| 83. | The phlebotomist agreed and said she would speak with her supervisors.<br><br>*See,* Ex. 10, at PA0381:16-382:4, PA0382:13-23 [Vargas dep.] |  |
| 84. | To date, however, no one from Quest has ever followed up with Mr. Vargas. |  |

51

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

|  |  |  |
|---|---|---|
|  | *See,* Ex. 10, at PA0381:16-382:4, PA0382:13-23 [Vargas dep.] |  |
| 85. | The experience left Mr. Vargas feeling embarrassed, humiliated, and like a "third-class citizen of some kind that anybody else can walk in there and not have to undergo the same amount of hassle and waiting."<br><br>*See,* Ex. 10, at PA0467:22-468:17 [Vargas dep.] |  |
| 86. | After being deposed in this action and informed by Quest's counsel of the purportedly accessible TFS option, Mr. Vargas returned to a Quest PSC on June 10, 2021.<br><br>*See,* Ex. 4, ¶ 2 [Vargas dec.]; Ex. 10, at PA0406:8-407:3 [Vargas dep.] |  |
| 87. | As he entered the PSC on June 10, 2021, Mr. Vargas heard the tail end of the portion of the audio content loop directed toward blind patients.<br><br>*See,* Ex. 4, ¶ 2 at PA0018 [Vargas dec.] |  |
| 88. | The volume was not adequate for Mr. Vargas to hear the message from his vantage point. While waiting for the content loop to replay, information was given on the "wait where you want" option, available to those who could use the kiosk independently.<br><br>*See,* Ex. 4, ¶ 2 at PA0018 [Vargas dec.] |  |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | |
|---|---|---|
| 89. | After approximately 8 to 10 minutes, the message directed Mr. Vargas to perform a three-finger swipe at the kiosk.  *See,* Ex. 4, ¶ 3 at PA0018 [Vargas dec.] | |
| 90. | The message did not give directions as to where the kiosk itself was located, so Mr. Vargas had to fumble around to find it.  *See,* Ex. 4, ¶ 3 at PA0018 [Vargas dec.] | |
| 91. | The content loop simply said patients should ask a staff member to assist if they had trouble locating the kiosk.  *See,* Ex. 4, ¶ 3 at PA0018 [Vargas dec.] | |
| 92. | However, at no time during the content loop did any Quest staff member enter the waiting area.  *See,* Ex. 4, ¶ 3 at PA0018 [Vargas dec.] | |
| 93. | After locating the kiosk, Mr. Vargas confirmed there was still no headphone jack or tactile keypad.  *See,* Ex. 4, ¶ 3 [Vargas dec.] | |
| 94. | After Mr. Vargas performed the TFS, an audio message played which stated he was patient "001" and that he would be serviced in three minutes (but he waited 17 minutes).  *See,* Ex. 4, ¶ 4 at PA0018 [Vargas dec.] | |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

53

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| 95. | When the phlebotomist greeted him, Mr. Vargas explained he was there to test the accessibility of the TFS system and asked whether the "wait where you want" option was available to him as a blind user.<br><br>*See,* Ex. 4, ¶ 4 at PA0018 [Vargas dec.] | |
| 96. | The phlebotomist told him the "wait where you want" option is only for those who make appointments online and can independently use the kiosk to scan a QR code.<br><br>*See,* Ex. 4, ¶ 4 [Vargas dec.] | |
| 97. | Mr. Vargas is serving as a class representative to help remove access barriers to allow himself and other blind people to live as independently as possible, especially in the medical field.<br><br>*See,* Ex. 10, at PA0442:16-443:9, PA0469:14-471:7 [Vargas dep.] | |
| 98. | ACB is a national membership organization of thousands of blind and visually impaired persons which seeks to increase the independence, security, equality of opportunity, and quality of life for all legally blind people.<br><br>*See,* Ex. 18, at PA0580:9-14, PA0581:5-20, PA0582:17-21 [Rachfal dep.] | |
| 99. | Nine ACB members testified that they were not able to independently access | |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | | |
|---|---|---|---|
| | | ECSS, they waited for extended periods for a phlebotomist to come help them, and they felt a loss of dignity and privacy in having to check in with the phlebotomist instead of the service Quest offers everyone else.<br><br>*See,* Ex. 12, at PA0520:23-521:5, PA0522:10-17, PA0523:4-524:16 [Bazyn dep.]; Ex. 11, at PA0507:4-510:19, PA0511:16-512:5, PA0513:15-514:19 [Black dep.]; Ex. 17, at PA0566:10-568:7, PA0569:6-571:2, PA0571:16-19, PA0574:1-21, PA0575:4-576:5 [Brink dep.]; Ex. 15, at PA0548:21-549:8, PA0550:22-552:4 [Grahmann dep.]; Ex. 14, at PA0537:10-540:9, PA0541:8-542:9, PA0543:9-544:1 [N. Haroyan dep.]; Ex. 13, at PA0529:3-530:23, PA0531:3-532:2 [M. Haroyan dep.]; Ex. 16, at PA0559:15-560:13, PA0561:14-21, PA0562:15-21 [Lyons dep.]; Ex. 22, at PA0695:8-24, PA0696:23-698:1, PA0701:16-21 [Stanley dep.] | |
| 100. | | Not one ACB member testified that he or she was able to independently access ECSS, and instead had to wait for either an attendant to come to the window (putting sighted individuals ahead of them in line) or rely on a third party to aid their check-in at the kiosk.<br><br>*See,* Ex. 12, at PA0518-A:7-12 [Bazyn dep.: husband checked her in]; Ex. 17, at PA0570:24-571:12 [Brink dep.: Quest employee asked for Brink's daughter to help]; Ex. 15, at | |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

55

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | PA0547A:20-548:1 [Grahmann dep.: relied on another patient, a stranger, to check her in]; Ex. 13, at PA0531:3-532:2, PA0532A:3-532C:15 [M. Haroyan dep.: relied on other patients – strangers – to sign her in twice before, and her father once]; Ex. 14, at PA0543:9-544:1, PA0542A:11-542B:8 [N. Haroyan dep.: relied on another patient, a stranger, to sign her in, as well as her father on other occasions]; Ex. 16, at PA0561:22-561A:5, PA0560:18-21 [Lyons dep.: relied on another patient, a stranger, to check her in, and now has to bring different people to help her check in]; Ex. 23, at PA0705:14-706:3 [Rehder dep.: relied on another patient, a stranger, to check her in] | |
| 101. | At least 29 ACB members confirmed they could also not access ECSS independently.<br><br>*See,* Ex. 24, at PA0709-715 [ACB discovery responses]. | |
| 102. | Quest has both deficient policies and training materials, both of which fail to ensure Quest gives primary consideration to the requested accommodations of its legally blind patients, as required by the Rehabilitation Act and its implementing regulations. Jody Reilly, Quest's 30(b)(6) designee on topics involving training, testified Quest did not provide any training to its patient service representatives on giving primary consideration to the requests of disabled individuals or to training | |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | employees on documenting in writing the reasons it cannot give primary consideration.<br><br>*See,* Ex. 8, at PA0113:11-114:19 [Reilly dep.] | |
| 103. | ███████████████████████<br>███████████████████████<br><br>*See,* Ex. 8, at PA0113:11-114:19; PA0115:18-117:23; PA0118-231 [Reilly dep.] | |
| 104. | The phlebotomist who assisted Mr. Vargas testified she could not remember any occasion where she documented that she could not provide an accommodation to an individual with disabilities who was making an accommodation request, and the reasons why she could not make the requested accommodation.<br><br>*See,* Ex. 21, at PA0688:3-7 [Magana dep.] | |
| 105. | Ms. Stanley requested help signing in, and a Quest employee instead responded by leading her into the back.<br><br>*See,* Ex. 22, at PA0699:18-700:16 [Stanley dep.] | |
| 106. | Ms. Stanley was not able to use a Quest kiosk or access any of the service features offered by the kiosk.<br><br>*See,* Ex. 22, at PA0701:16-23 [Stanley dep.] | |
| 107. | ACB raised its members' concerns about the inaccessible kiosk directly to Quest. In December 2018, ACB sent a | |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | letter to Quest outlining concerns about the inaccessible kiosk and requesting a meeting.<br><br>*See,* Ex. 18, at PA0583:18-598:1; PA0608 [Rachfal dep. re: letter requesting primary consideration for screen readers, which Quest ignored]. | |
| 108. | The letter requested primary consideration for screen readers (i.e., audio output) and screen magnification.<br><br>*See,* Ex. 18, at PA0599:7-607:8; 608 [Rachfal dep.]. | |
| 109. | Quest neither into account this request for primary consideration nor did Quest document its reasons for denying the requested accommodation in writing as required by the Rehabilitation Act.<br><br>*See,* Ex. 18, at PA0599:7-607:8; 608 [Rachfal dep.]. | |
| 110. | The Quest phlebotomist who eventually helped Mr. Vargas check in has no memory of Mr. Vargas.<br><br>*See,* Ex. 21, at PA0680:24-681:5 [Magana dep.] | |
| 111. | While the phlebotomist who eventually helped Mr. Vargas thought Quest may have provided training on primary consideration, she could not articulate what primary consideration meant at could not remember any instance where she provided primary | |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | consideration to an individual with disabilities' accommodation request. *See,* Ex. 21, at PA0684:2-688:7 [Magana dep.] | |
|---|---|---|---|
| | 112. | Despite the utter lack of training, Quest informs its phlebotomist the kiosk was inaccessible. *See,* Ex. 21, at PA0683:19-24 [Magana dep.] | |
| | 113. | Quest itself recognizes that ECSS is an "essential aspect of Defendant's business model and of Defendant's ability to provide a positive, efficient and simple patient experience." *See,* Ex. 22 at PA0793 [Quest's responses to Plaintiff Anne West's first set of interrogatories, Response No. 10] | |
| | 114. | Plaintiff's counsel provided Mr. Derry's report to Defendants well in advance of this briefing and asked whether Defendant would continue to argue mootness. In a meet and confer, when asked about the factual basis of Quest's mootness defense, defense counsel stated, "so I don't really have an ability to speak to that as a factual matter because that is news to me." *See,* Ex. 36, at PA01054:5-6. | |
| | 115. | Quest's senior employees unequivocally testified that in implementing ECSS, improving experience was the "ultimate objective" and that "[t]he primary focus was the patient experience." | |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | *See* Ex. 35, at PA0977:13-18, PA0973:1-PA0974:8, PA0979:23-PA0980-3, PA0996:13-PA0997:3. | |
| 116. | Mr. Carr testified about the patient experience as follows, "when I say 'the experience,' it's customers coming to Quest were checking in is an element of that experience."<br><br>*See* Ex. 35, at PA0983:1-7 [Carr dep.]. | |
| 117. | Quest's management explicitly testified that the very purpose of the implementation of ECSS was to improve the customer experience.<br><br>*See* Ex. 34 at PA0943:3-7, PA0958:19-25; Ex. 35, at PA0977:13-18 [Carr dep.] | |
| 118. | Quest implemented the option of twenty-six (26) different languages on ECSS.<br><br>*See* Ex. 41 at PA1093-1109 | |
| 119. | Quest stated that the "[t]he intent via the experience was to meet a broad audience of primary language they preferred to use."<br><br>*See* Ex. 35, at PA0998:18-23 [Carr dep.]. | |
| 120. | <br>*See* Ex. 42 at PA1110-PA1113 | |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| 121. | There is no dispute that Quest is a recipient of Medicare funding and thus subject to the Rehabilitation Act.<br><br>*See* Ex. 36 at PA1016:7-12. [Reilly dep.]. | |
| 122. | Plaintiff Vargas is seeking only statutory minimum damages and injunctive relief with respect to his Unruh claim.<br><br>*See,* Ex. 10 at PA0447:7-14 [Vargas dep.] | |
| 123. | ███████████████████<br>███████████████████<br>███████████████████<br><br>*See*, Ex. 34 at PA0960-A:19-PA0960-C:1 [Yarrison dep.]; Ex. 37 at PA1034-A:2-PA1034-B:13; PA1034-C:14-PA1034D:13[Grant dep.]; Ex. 44 at PA1118:9-13; PA1119:2-PA1124:19; PA1125:18-PA1126:6. [Walsh dep.] | |

///

///

///

///

///

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

61

Dated: September 17, 2021                    Respectfully submitted,

                                             By:   */s/ Jonathan D. Miller*
                                                   Jonathan D. Miller (SBN 220848)
                                                   jonathan@nshmlaw.com
                                                   Alison M. Bernal (SBN 264629)
                                                   alison@nshmlaw.com
                                                   NYE, STIRLING, HALE
                                                   & MILLER, LLP
                                                   33 West Mission Street, Suite 201
                                                   Santa Barbara, CA 93101

                                                   Benjamin J. Sweet
                                                   (Admitted *Pro Hac Vice*)
                                                   ben@nshmlaw.com
                                                   NYE, STIRLING, HALE
                                                   & MILLER, LLP
                                                   1145 Bower Hill Road, Suite 104
                                                   Pittsburgh, PA 15243
                                                   Telephone: (412) 857-5350

                                                   Matthew K. Handley
                                                   (Admitted *Pro Hac Vice*)
                                                   mhandley@hfajustice.com
                                                   HANDLEY FARAH &
                                                   ANDERSON PLLC
                                                   777 6th Street NW
                                                   Washington, DC 20001
                                                   Telephone: (202) 559-2411

                                                   *Attorneys for Plaintiffs JULIAN VARGAS,*
                                                   *AMERICAN COUNCIL OF THE BLIND,*
                                                   *AND THE PROPOSED CLASS*

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ