Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345

Benjamin J. Sweet
(*Admitted Pro Hac Vice*)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

Attorneys for Plaintiffs Julian Vargas, American Council of the Blind, and the Proposed Class

*Additional counsel for Plaintiff listed on signature page*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JULIAN VARGAS and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:19-cv-08108-DMG<br><br>**PLAINTIFFS' OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF PLAINTIFFS' OPPOSITION TO QUEST'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>[*Filed concurrently with Opposition to MSJ; Statement of Genuine Disputes of Facts; Evidentiary Appendix; Declaration of Jonathan D. Miller*]<br><br>**Hearing Date:   October 8, 2021**<br>**Time:            2:00 p.m.**<br>**Courtroom:       8C**<br><br>Complaint Filed: September 18, 2019<br>Discovery Cutoff: August 27, 2021<br>Pretrial Conf: December 7, 2021<br>Trial Date: January 11, 2022<br>District Judge: Hon. Dolly M. Gee<br>Magistrate: Hon. Michael R. Wilner |

Pursuant to Federal Rules of Civil Procedure Rule 56 *et seq.* and Local Rule 56 *et seq.*, Plaintiffs Julian Vargas and American Council of the Blind ("Plaintiffs") object to evidence and declarations of Taylor Carr, Christopher Grant, Jody Reilly, and Marc Yarrison submitted by Defendants Quest Diagnostics Clinical Laboratories, Inc., Quest Diagnostics Holdings, Inc., and Quest Diagnostics Incorporated ("Quest" or "Defendants") in opposition to Quest's Motion for Summary Judgment, or Alternatively, Partial Summary Judgment, in large part on the grounds they are sham declarations.

A party cannot establish an undisputed material fact through a declaration contradicting their own deposition testimony. *See Cleveland v. Policy Mgmt. Systems Corp.*, 526 U.S. 795, 806 (1999); *also Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012); *United States v. TRW Rifle 7.2x51mm Caliber*, 447 F.3d 686 692, n.10 (9th Cir. 2006); *Hennighan v. Insphere Insurance Solutions, Inc.*, No. 13-cv-00638, 2014 WL 1600034, *7; *Mann v. West Contra Cost Unified School District*, No. C 99- 2833, 2001 WL 764481, *2 (N.D. Cal. June 18, 2001) (same).]

The Grant, Carr, Yarrison, and Reilly declarations submitted in support of Defendants' summary judgment motion impermissibly contradicts their sworn deposition testimony.  Additionally, testimonial evidence must be based on personal knowledge of the witness offering the evidence.  Fed. R. Evid. 602.  Hearsay evidence is inadmissible unless it has been defined as non-hearsay or the proponent establishes eligibility for one or more exceptions under the Rules.  Fed. R. Evid. 801-804. The Grant, Carr, Reilly, and Yarrison declarations fail to meet one or more of these criteria as specified below:

### **OBJECTIONS TO THE DECLARATION OF TAYLOR CARR**

Mr. Carr testified as the Defendants' Rule 30(b)(6) person most knowledgeable about the three-finger swipe. Ex. 35 at PA0971:21-PA0972:13. [Carr depo.] He was deposed on April 21 and July 30, 2021.

| | | EVIDENCE OBJECTED TO: | GROUNDS FOR OBJECTION: |
|---|---|---|---|
| | 1. | Declaration of Taylor Carr ("Carr Decl."), App. 1, ¶ 3.<br><br>In late 2019 and early 2020,1 helped oversee an extensive, months-long exploration at Quest of methods it could use to make its check-in processes at PSCs independently accessible to the blind, even in the absence of assistance by Quest phlebotomists who staff the PSCs. These methods were intended to supplement the then-existing policies, standards, procedures, and training under which Quest phlebotomists and staff at the PSCs provide assistance and accommodations to PSC patients with disabilities to meet their needs, including assistance with using the Kiosks to check in to the PSCs. | Sham Declaration.  Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Mr. Carr's declaration submitted in opposition to Defendant's summary judgment motion impermissibly contradicts his sworn deposition testimony as follows:<br><br>Mr. Carr did not work on the e-Check-in project in 2019 and became re-involved in the e-check-in project when COVID-19 rose to prominence. Ex. 35 at PA0975:11-PA0976:7 [Carr depo.]<br><br>Mr. Carr did not know whose idea it was to implement the three-finger swipe and that he did not come up with the three-finger swipe as an option. Ex. 35 at PA0981:4-17 [Carr depo.]<br><br>Mr. Carr did not know if, prior to the decision to implement the three-finger swipe, Quest ever went back and surveyed visually impaired Quest patients who had difficulty accessing the e-check-in service to see what their experiences were like. Ex. 35 at PA0986:15-22 [Carr depo.]<br><br>Mr. Carr wasn't involved in the next steps in implementing the three-finger swipe after he obtained feedback from the Las Vegas 2020 focus group and that he didn't have any participation in the three-finger swipe after the |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

3

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | |
|---|---|---|---|
| | | | focus group. Ex. 35 at PA0987:9-19 [Carr depo.]<br><br>Mr. Carr did not know if he assisted in any manner in coming up with the audio messaging that would be relayed to blind patients using the three-finger swipe. Ex. 35 at PA0982:1-8 [Carr depo.] |
| 2. | Carr Decl., App. 1, ¶ 4.<br><br>Among other things. Quest solicited feedback from three different groups (including a focus group) of blind individuals or individuals who worked with accommodating the blind to understand what these blind consumers wanted when interacting with electronic technology. Attached as Exhibit 6 to the Appendix accompanying this Declaration are true and correct copies of notes taken at, or reflecting our interaction with these, three different groups of blind consumers or their advocates. Quest used this feedback in developing the Three Finger Swipe enhancement. | | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Mr. Carr's declaration submitted in opposition to Defendant's summary judgment motion impermissibly contradicts his deposition testimony as follows:<br><br>Mr. Carr was instructed not to answer what specifically were the takeaways that you had from this [Las Vegas 2020] focus group on grounds of privilege. Ex. 35 at PA0984:13-16 [Carr depo.]<br><br>Mr. Carr was instructed not to answer whether Quest gave "any consideration on whether it could implement speech output at the e-check-in kiosk that would allow a blind user to independently navigate through the kiosk workflow and check in themselves," on grounds of privilege. Ex. 35 at PA0991:3-18. [Carr depo.]<br><br>Mr. Carr was instructed multiple times not to answer questions whether |

4

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

Quest considered anything "as part of the three-finger swipe process" other than in connection with the Las Vegas 2020 focus group. Ex. 35 at PA0992:8-PA994:24. [Carr depo.]

Once Quest made the decision to implement the three-finger swipe, Mr. Carr was not involved in nor was aware of any further effort to obtain feedback from visually impaired individuals as to whether it was an effective means of checking in. Ex. 35 at PA0985-A:9-16. [Carr depo.]

Mr. Carr did not know if, in settling on the three-finger swipe options, Quest took into consideration the complaints of plaintiffs in this litigation. Ex. 35 at PA0995:1-7. [Carr depo.]

Mr. Carrdid not know whether Quest considered any information gathered from "Wright State" when implementing three-finger swipe. Ex. 35 at PA1007:5-13. [Carr depo.] (Wright State was one of the focus groups from whom Quest purportedly obtained feedback).

Mr. Carr was instructed not to answer when asked whether Quest considered the feedback of the focus group as it related to screen-reader technology and voiceover capabilities. Ex. 35 at PA1012:2-1014:20. [Carr depo.]

Mr. Carr did not recall tactile strips being implemented on the floors of

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

5

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | |
|---|---|---|---|
| | | | their PSCs after receiving feedback from the focus group. Ex. 35 at PA1009:12-PA1011:3. [Carr depo.] |
| | 3. | Carr Decl., App. 1, ¶ 5.<br><br>For example, the Three Finger Swipe enhancement utilized finger swiping "gestures" that we had learned from these meetings were familiar to the blind from their use of iPhones and other smartphones and similar touchscreen technology. | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Mr. Carr's declaration submitted in opposition to Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br><br><br>Mr. Carr then testified that there was no other feedback he learned from the focus group in 2020 other than already testified to. Ex. 35 at PA0985-A:9-16. [Carr depo.] Mr. Carr said nothing about the familiarity of finger-swiping gestures despite being directly asked about what was learned from the focus group.<br><br>Mr. Carr did not know whether Quest considered any information gathered from "Wright State" when implementing three-finger swipe. Ex. 35 at PA1007:5-13. [Carr depo.] (Wright State was one of the focus groups from whom Quest purportedly |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | | obtained feedback). |
| | | Mr. Carr was instructed not to answer when asked whether Quest considered the feedback of the focus group as it related to screen-reader technology and voiceover capabilities. Ex. 35 at PA1012:2-1014:20. [Carr depo.] |
| | | Mr. Carr did not recall tactile strips being implemented on the floors of their PSCs after receiving feedback from the focus group. Ex. 35 at PA1009:12-PA1011:3. [Carr depo.] |
| 4. | Carr Decl., App. 1, ¶ 6. Based on feedback from these different groups of blind consumers and their advocates, the Three Finger Swipe enhancement was designed to be independently accessible to blind patients at PSCs, with or without the assistance of Quest phlebotomists. In summary, the Three Finger Swipe enhancement consisted of three components: (1) enabling the Kiosks to automatically check in patients who swiped three fingers on the screen of the Kiosk in any direction and, upon administration of the three-finger swipe, providing an audio message to the patient that they had been checked in, assigning them a generic patient ID number, and advising that this | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804). Mr. Carr's declaration submitted in opposition to Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows: When asked what he learned from the focus group participants, Mr. Carr testified "there was four key elements, and preparation was everything for the visually impaired. Structure is key, use audio, and have employees that are trained to be highly helpful and sensitive to ADA needs." Ex. 35 at PA0985:17-23. [Carr depo.] Mr. Carr then testified that there was no other feedback he learned from the focus group in 2020 other than already testified to. Ex. 35 at PA0985-A:9-16. [Carr depo.] |

7

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | |
|---|---|
| number would be called when it was their turn to be seen—and further providing an electronic notification to Quest phlebotomists at the PSC that an individual with visual impairments had checked in at the PSC: (2) an audio message playing on loop on the Quest TVs in the PSC waiting rooms that instructed patients who are blind or have visual impairments on how to apply the Three Finger Swipe to the Kiosks to check in and informing them that if they need assistance with locating, using, or checking in at the Kiosk, Quest team members are available and happy to assist; and (3) enhanced training of PSC phlebotomists to train them on the Three Finger Swipe methodology and procedure and to reinforce longstanding training on assisting patients with disabilities who need assistance at PSCs, including assisting patients who are blind or visually impaired with the check-in process. | Mr. Carr said nothing about the familiarity of finger-swiping gestures despite being directly asked about what was learned from the focus group.

Mr. Carr did not know if the audio loop differed from PSC to PSC in terms of its length, or whether the audio loop differed in terms of its length or content, or whether there were locations where audio loop can take as long as 30 minutes before it is repeated. Ex. 35 at PA0988:8-PA0989:5. [Carr depo.]

Mr. Carr did not know whether, when a customer walks in the waiting room, if the first audio instruction they hear is from the audio loop on the LCD monitor. Ex. 35 at PA0990:1-8. [Carr depo.]

Mr. Carr did not know whether Quest considered any information gathered from "Wright State" when implementing three-finger swipe. Ex. 35 at PA1007:5-13. [Carr depo.] (Wright State was one of the focus groups from whom Quest purportedly obtained feedback).

Mr. Carr was instructed not to answer when asked whether Quest considered the feedback of the focus group as it related to screen-reader technology and voiceover capabilities. Ex. 35 at PA1012:2-1014:20. [Carr depo.] |

8

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | | Mr. Carr did not recall tactile strips being implemented on the floors of their PSCs after receiving feedback from the focus group. Ex. 35 at PA1009:12-PA1011:3. [Carr depo.] |
|---|---|---|---|
| | 5. | Carr Decl., App. 1, ¶ 7.<br><br>The Three Finger Swipe capability was installed on all PSC Kiosks as of August 2020. The audio message on the Quest TVs at PSCs was activated in January 2021, and the enhanced training for PSC employees was rolled out and assigned in March 2021. | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Mr. Carr's declaration submitted in opposition to Defendant's summary judgment motion impermissibly contradicts his deposition testimony as follows:Mr. Carr wasn't involved in the next steps in implementing the three-finger swipe after he obtained feedback from the Las Vegas 2020 focus group and that he didn't have any participation in the three-finger swipe after the focus group. Ex. 35 at PA0987:9-19 [Carr depo.]<br><br>Mr. Carr did not know if he assisted in any manner in coming up with the audio messaging that would be relayed to blind patients using the three-finger swipe. Ex. 35 at PA0982:1-8 [Carr depo.]<br><br>Mr. Carr did not know if the audio loop differed from PSC to PSC in terms of its length, or whether the audio loop differed in terms of its length or content, or whether there were locations where audio loop can take as long as 30 minutes before it is repeated. Ex. 35 at PA0988:8-PA0989:5. [Carr depo.]<br><br>Mr. Carr did not know whether, when |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

9

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | a customer walks in the waiting room, if the first audio instruction they hear is from the audio loop on the LCD monitor. Ex. 35 at PA0990:1-8. [Carr depo.] |

## OBJECTIONS TO THE DECLARATION OF CHRISTOPHER GRANT

Mr. Grant testified only in his individual capacity, and was deposed on April 20, 2021.

| | EVIDENCE OBJECTED TO: | GROUNDS FOR OBJECTION: |
|---|---|---|
| 6. | Declaration of Christopher Grant ("Grant Decl."), App. 2, ¶ 3.<br><br>Starting in December 2018, representatives of the American Council of the Blind ("ACB") and Quest engaged in discussions regarding the check-in experience of PSC patients with visual impairments. Attached as Exhibit 7 to the Appendix is the full set of written correspondence engaged in between Quest and ACB (and its legal representatives) regarding these matters. I personally participated in two conversations with ACB representatives in the first half of 2019. While ACB occasionally referred to making the Kiosks at PSCs "independently accessible" to its blind members, at no point during these discussions did ACB demand a specific method or technology to replace or supplement the existing Kiosks. | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Mr. Grant's declaration submitted in opposition to Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>Mr. Grant could not recall any specific conversations about the fact that the kiosk did not have accessible features that would make it independently usable for the blind. Ex. 37 at PA1037:16-24. [Grant depo.] |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| 7. | Grant Decl., App. 2, ¶ 4.<br><br>In late 2019 and early 2020, in response to the ongoing discussions with ACB and in preparation for making a proposal at the impending mediation between the parties to this action, Quest undertook an extensive, months-long exploration of methods it could use to make its check-in process independently accessible to the blind, even in the absence of assistance by Quest phlebotomists at PSCs. These methods were intended to supplement the existing policies, standards, procedures, and training under which Quest phlebotomists provide assistance and accommodations to PSC patients with disabilities to meet their needs, including assistance with using the Kiosks to check in to the PSCs. | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Mr. Grant's declaration submitted in opposition to Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>Mr. Grant could not recall any specific conversations about the fact that the kiosk did not have accessible features that would make it independently usable for the blind. Ex. 37 at PA1037:16-24. [Grant depo.]<br><br><br><br>Mr. Grant does not know how three-finger swipe works.<br>(Q: Okay, can you explain to me how it works?<br>A: No.<br>Q: You don't know how it works?<br>A: I don't. No, I don't know how it works. Ex. 37 at PA1040:18-25. [Grant depo.]<br><br>About three-finger swipe, Mr. Grant testified, "you're asking me questions |
|---|---|---|

11

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | |
|---|---|---|---|
| | | | about the functionality of the device and I really—I can't give you an answer to it. I really can't. I don't know what all went into it, how does it all work . . . I'm just an engineer. I don't understand that stuff." Ex. 37 at PA1042:22-PA1043:5. [Grant depo.]<br><br>Mr. Grant did not recall from whom he first heard about three-finger swipe or who had authorship of that idea. Ex. 37 at PA1041:6-16. [Grant depo.]<br><br>Mr. Grant could not recall conversations about the three finger swipe because it had been two years since he had those conversations. Ex. 37 at PA1041:6-16. [Grant depo.]<br><br>Mr. Grant did not recall from whom he first heard about three-finger swipe or who had authorship of that idea. Ex. 37 at PA1040:18-25. [Grant depo.] |
| 8. | Grant Decl., App. 2, ¶ 5.<br><br>Although ACB never identified the specific technology or methodology that it was requesting, Quest did give consideration to and honor ACB's request for an "independently accessible" technology for blind patients to check in at PSCs when Quest developed the Three Finger Swipe enhancement. Quest did not stop with ACB's input; it also sought out the advice from | | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Mr. Grant's declaration submitted in opposition to Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>Mr. Grant could not recall conversations about the three finger swipe because it had been two years since he had those conversations. Ex. 37 at PA1041:6-16. [Grant depo.] |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

additional groups of blind individuals and their advocates. All these efforts and feedback led to the Three Finger Swipe enhancement that Quest conceived of in advance of the March 2020 mediation in this matter.

Mr. Grant does not know how three-finger swipe works.
(Q: Okay, can you explain to me how it works?
A: No.
Q: You don't know how it works?
A: I don't. No, I don't know how it works. Ex. 37 at PA1040:18-25. [Grant depo.])

About three-finger swipe, Mr. Grant testified, "you're asking me questions about the functionality of the device and I really—I can't give you an answer to it. I really can't. I don't know what all went into it, how does it all work . . . I'm just an engineer. I don't understand that stuff." Ex. 37 at PA1042:22-PA1043:5. [Grant depo.]

Mr. Grant did not recall from whom he first heard about three-finger swipe or who had authorship of that idea. Ex. 37 at PA1040:18-25. [Grant depo.]

Mr. Grant could not recall if he ever gave any specific direction to his team on accessibility. Ex. 37 at PA1036:20-23 [Grant depo.]

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

13

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | |
|---|---|---|
| 9. | Grant Decl., App. 2, ¶ 6.<br><br>After the mediation concluded, Quest chose to implement the Three Finger Swipe enhancement, which was designed to be independently accessible to the blind without the assistance of Quest phlebotomists, just as ACB had suggested in its correspondence to Quest. In summary, the Three Finger Swipe enhancement consisted of three components: (1) enabling the Kiosks to automatically check in patients who swiped three fingers on the screen of the Kiosk in any direction and, upon administration of the three-finger swipe, providing an audio message to the patient that they had been checked in, assigning them a generic patient ID number and advising that this number would be called when it was their turn to be seen—and further providing an electronic notification to Quest phlebotomists at the PSC that an individual with visual impairments had checked in at the PSC: (2) an audio message playing on loop on the Quest TVs in the PSC waiting rooms that instructed patients who are blind or have visual impairments on how to apply the Three Finger | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Mr. Grant's declaration submitted in opposition to Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>Mr. Grant could not recall conversations about the three finger swipe because it had been two years since he had those conversations. Ex. 37 at PA1041:6-16. [Grant depo.]<br><br>Mr. Grant did not recall from whom he first heard about three-finger swipe or who had authorship of that idea. Ex. 37 at PA1040:18-25. [Grant depo.]<br><br>Mr. Grant couldn't recall if he ever gave any specific direction to his team on accessibility. Ex. 37 at PA1036:20-23 [Grant depo.]<br><br>Mr. Grant does not know how three- |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | Swipe to the Kiosks to check in and informing them that they if they need assistance with locating, using, or checking in at the Kiosk, team members are available and happy to assist; and (3) enhanced training of PSC phlebotomists to train them on the Three Finger Swipe methodology and procedure and to reinforce longstanding training on assisting patients with disabilities who need assistance at PSCs, including assisting patients who are blind or visually impaired with the check-in process. | finger swipe works. (Q: Okay, can you explain to me how it works? A: No. Q: You don't know how it works? A: I don't. No, I don't know how it works. Ex. 37 at PA1040:18-25. [Grant depo.]

Mr. Grant did not know how the three-finger swipe functioned. ("You're asking me questions about the functionality of the device and I really—I can't give you an answer to it. I really can't. I don't know what all went into it, how does it all work . . . I'm just an engineer. I don't understand that stuff.") Ex. 37 at PA1042:22-PA1043:5. [Grant depo.]

Mr. Grant didn't recall receiving training on the Americans with Disabilities Act ("ADA"). Ex. 37 at PA1032:8-16 [Grant depo.]

Mr. Grant had never received training on the interactive process under section 1557 of the Affordable Care Act, or Rehabilitation Act. Ex. 37 at PA1038:22-PA1039:17 [Grant depo.]

Mr. Grant did not know what a qualified reader was and did not know if Quest personnel were ever trained to be qualified readers from 2016 to 2019. Ex. 37 at PA1035:7-15 [Grant depo.]

Mr. Grant did not recall if he consulted with any accessibility |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

|  |  | experts prior to developing accessibility training. Ex. 37 at PA1034:12-17 [Grant depo.] |

## OBJECTIONS TO THE DECLARATION OF JODY REILLY

Ms. Reilly testified as the Defendants' Rule 30(b)(6) person most knowledgeable on the following topics:

- **Topic 12**: [Quest's] maintenance, management, and/or administration policies, practices and/or procedures at [Quest's] PATIENT SERVICE CENTERS. Ex. 36 at 1028A-1028Q.

- **Topic 13**: The maintenance, management, and/or administration policies, practices and/or procedures of the E-CHECK-IN KIOSKS. Ex. 36 at 1028A-1028Q.

- **Topic 19**: All policies or procedures maintain by [Quest] that address compliance with the ADA at YOUR PATIENT SERVICE CENTERS. Ex. 36 at 1028A-1028Q.

- **Topic 20**: All policies or procedures maintain by [Quest] that address compliance with the REHAB ACT at [Quest's] PATIENT SERVICE CENTERS. Ex. 36 at 1028A-1028Q.

- **Topic 21**: All policies or procedures maintained by [Quest] to ensure compliance with providing aids and auxiliary services, as defined in 28 C.F.R. 36.303 at PATIENT SERVICE CENTERS from January 1, 2016, to present. Ex. 36 at 1028A-1028Q.

- **Topic 22**: All policies or procedures maintained by [Quest] that demonstrate each way in which [Quest] ensured effective communication, as defined in 28 C.F.R. 36.303(c),with visually impaired PERSONS during the E-CHECK-IN KIOSK check-in process, at [Quest's] PATIENT SERVICE CENTERS from January 1, 2016, to present. Ex. 36 at 1028A-1028Q.

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

- **Topic 23**: The training [Quest] provide to [Quest's] employees and independent contractors RELATING to how to communicate effectively with visually impaired PERSONS during the check-in process at [Quest's] PATIENT SERVICE CENTERS. Ex. 36 at 1028A-1028Q.

- **Topic 24**: All complaints [Quest] have received from January 1, 2016, to the present from many individual [Quest] know to be legally blind alleging difficulty accessing the E-CHECK-IN at [Quest's] PATIENT SERVICE CENTERS. Ex. 36 at 1028A-1028Q.

- **Topic 30**: [Quest's] claim, in your Sixth Affirmative Defense, that Plaintiffs failed to request a reasonable modification of policies, practices or procedures and/or Plaintiffs failed to request an auxiliary aid or service.  Ex. 36 at 1028A-1028Q.

Ms. Reilly was deposed on April 20, 2021.

| | EVIDENCE OBJECTED TO: | GROUNDS FOR OBJECTION: |
|---|---|---|
| 10. | Declaration of Jody Reilly ("Reilly Decl.") (App. 3) ¶ 3.<br><br>A cornerstone of Quest's training, policies, guidelines, standards, and procedures for PSCs has been to teach, train, and require PSC employees and staff to provide assistance to patients, including assistance and accommodations to persons with disabilities to ensure they can access Quest's services. This includes training and requiring PSC employees and staff to scan the waiting room each time they enter to find any individuals (whether patients with disabilities or otherwise) who | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Jody Reilly's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts her deposition testimony, as follows:<br><br>Prior to "Managing Patient Needs" training, there was no reference to the ADA, nor how to comply with the ADA. Ex. 36 at PA1029:7-PA1030:20. [Reilly depo.]<br><br>Ms. Reilly did not recall whether the annual compliance training covered the ADA. Ex. 36 at PA1017:13-19. |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | may need assistance, including assistance with the check-in process. Attached as Exhibit 8 to the accompanying Appendix are true and correct copies of relevant, representative Quest training materials, standards, standard operating procedures and policies. | [Reilly depo.]<br><br>Ms. Reilly does not know whether all employees have completed the training. Ex. 36 at PA1018:9-PA1019:1, PA1020:12-20. [Reilly depo.]<br><br>Ms. Reilly was unaware of any written policy from Quest regarding the ADA. Ex. 36 at PA1021:24-PA1022:14. [Reilly depo.]<br><br>Ms. Reilly does not know what sections of the ADA apply to Quest. Ex. 36 at PA1023:3-20. [Reilly depo.] |
| 11. | Reilly Decl. (App. 3) ¶ 4.<br><br>Prior to the deployment of the Kiosks as a method to check in at the PSCs, Quest used a paper sign-in sheet for patient check in at PSCs. Phlebotomists at the PSCs were trained and required to assist patients in the waiting room with the check-in process, including assisting patients with disabilities. | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Jody Reilly's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts her deposition testimony, as follows:<br><br>Prior to "Managing Patient Needs" training, there was no reference to the ADA, nor how to comply with the ADA. Ex. 36 at PA1029:7- |

18

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | |
|---|---|---|---|
| | | | PA1030:20. [Reilly depo.] |
| | | | Ms. Reilly did not recall whether the annual compliance training covered the ADA. [Reilly depo. at 39:13-19.] |
| | | | Ms. Reilly does not know whether all employees have completed the training. Ex. 36 at PA1018:9-PA1019:1, PA1020:12-20. [Reilly depo.] |
| | | | Ms. Reilly was unaware of any written policy from Quest regarding the ADA. Ex. 36 at PA1021:24-PA1022:14. [Reilly depo.] |
| | | | Ms. Reilly does not know what sections of the ADA apply to Quest. Ex. 36 at PA1023:3-20. [Reilly depo.] |
| 12. | Reilly Decl. (App. 3) ¶ 7. Beginning in approximately 2010, Quest launched "Managing Every Patient's Needs" training modules and/or videos, which were specifically designed to train phlebotomists on their obligation to provide assistance and accommodations to PSC | | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804). Jody Reilly's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts her deposition testimony, as follows: |

19

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

patients with disabilities, a true and correct copy of which is attached as Exhibit 10 to the accompanying Appendix. The current, attached version was updated and rolled out for training to PSC employees in March 2021. The training instructs phlebotomists among other things that the "The ADA entitles patients with special needs certain rights when using public spaces such as our PSCs, including access to facilities, the right to have service animals accompany them, the right to reasonable modifications of policies, practices, and procedures, and the right to auxiliary aids and services, such as the use of specialized equipment that ensures their safety and facilitates their ability to move about." The training also instructs Quest phlebotomists "When going to the waiting room to call back a patient, pay attention to other patients and their needs and behaviors, so you can identify any patients with visual impairments who may need assistance" and "Make yourself available to assist such patients as necessary, including assisting with navigating the waiting room and locating and using the kiosk to check in." The training also provides instruction to Quest phlebotomists about an enhancement to the Kiosks at

Ms. Reilly did not recall whether the annual compliance training covered the ADA. Ex. 36 at PA1017:13-19. [Reilly depo.]

Ms. Reilly does not know whether all employees have completed the training. Ex. 36 at PA1018:9-PA1019:1, PA1020:12-20. [Reilly depo.]

Ms. Reilly is unaware of any written policy from Quest regarding the ADA. Ex. 36 at PA1021:24-PA1022:14. [Reilly depo.]

Ms. Reilly does not know what sections of the ADA apply to Quest. Ex. 36 at PA1023:3-20. [Reilly depo.]



PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

| | | |
|---|---|---|
| | PSCs that enables blind patients to automatically check in on the kiosks using a three-finger swipe gesture, without any assistance from a Quest phlebotomist. Quest did not replace or reduce PSC employees and staff in connection with enabling the Three Finger Swipe functionality and continues to preserve the longstanding policy and practice of requiring its Quest phlebotomists and staff at PSCs to assist patients with the check-in process. PSC employees are required to complete this training as part of new-hire training; they are also required to complete this training on an annual basis as a refresher training. | |
| 13. | Reilly Decl. (App. 3) ⁋ 10.<br><br>Beginning in 2015, Quest replaced the Patient Care Gold Standards for its Quest phlebotomists at PSCs with Everyday Excellence standards which, among other things, emphasized the importance of "respectfully assist[ing] patients when they need help with the sign-in and patient registration process and keep[ing] them informed of what will happen next." Attached as Exhibit 13 is a copy of those Everyday Excellence Standards. | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Jody Reilly's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts her deposition testimony, as follows:<br><br>███████████████████████████ |

21

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| 14. | Reilly Decl. (App. 3) ¶ 12.<br><br>In June 2015, Quest launched another video training entitled "I Connect with Patients" for its Quest phlebotomists at PSCs. Among other things, the training instructed Quest phlebotomists at PSCs "When you come to the waiting area, make eye contact, smile, and greet waiting patients. Ask patients if they've had a chance to sign in. And tell them you'll be with them shortly. Make sure patients know you see them and that you respect their decision to come to Quest." | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Jody Reilly's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts her deposition testimony, as follows:<br><br>Ms. Reilly did not recall whether the annual compliance training covered the ADA. Ex. 36 at PA1017:13-19. [Reilly depo.]<br><br>Ms. Reilly does not know whether all employees have completed the training. Ex. 36 at PA1018:9-PA1019:1, PA1020:12-20. [Reilly depo.]<br><br>Ms. Reilly is unaware of any written policy from Quest regarding the ADA. Ex. 36 at PA1021:24-PA1022:14. [Reilly depo.]<br><br>Ms. Reilly does not know what sections of the ADA apply to Quest. Ex. 36 at PA1023:3-20. [Reilly depo.] |
| 15. | Reilly Decl. (App. 3) ¶ 13. | Sham declaration. Lack of Personal |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

As early as at least 2018, Day 1 of the new-hire training for Quest phlebotomists instructed phlebotomists that—with respect to the eCheck-in process—they should "help confused patients", "scan the waiting room", "be present when you call a new patient back for service", and "identify patients who were not able to check in." The training further provides that when a Quest phlebotomist invites a patient for service, they should "make eye contact with other waiting patients" and "ask waiting patients if everyone has had a chance to sign in." The training also highlights patients with communication needs (including those with visual or hearing impairments) and instructs Quest phlebotomists that such patients "may need extra help or interpretive services." The training also reminds Quest phlebotomists that the implementation of "new technologies will you allow you to spend more time focusing on the patient interaction." The Leader Guide for the training also provided "When you call a new patient back for service, ask the waiting room if everyone has had a chance to sign in. Talking to waiting patients is a HUGE part of their experience and they clearly tell us when they feel

Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).

Jody Reilly's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts her deposition testimony, as follows:

Ms. Reilly did not recall whether the annual compliance training covered the ADA. Ex. 36 at PA1017:13-19. [Reilly depo.]

Ms. Reilly does not know whether all employees have completed the training. Ex. 36 at PA1018:9-PA1019:1, PA1020:12-20. [Reilly depo.]

Ms. Reilly is unaware of any written policy from Quest regarding the ADA. Ex. 36 at PA1021:24-PA1022:14. [Reilly depo.]

Ms. Reilly does not know what sections of the ADA apply to Quest. Ex. 36 at PA1023:3-20. [Reilly depo.]

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | |
|---|---|---|---|
| | | they have been ignored. The patient experience doesn't begin when you take the patient to the draw room." Attached as Exhibit 14 is a copy of the Day 1 New Hire Training and the Leader Guide for the Day 1 New Hire Training. | |
| 16. | | Reilly Decl. (App. 3) ¶ 21. The Patient Advocacy team received feedback on the rollout and use of the Kiosks from many patients. Between 2016 and 2020, Patient Advocacy received feedback from forty-five (45) patients with visual impairments (or their advocates) about their experience with the check-in process at PSCs. Attached as Exhibit 9 is a true and correct copy of the data maintained by Patient Advocacy of this feedback it received about the Kiosks from any patient who identified himself or herself as having a visual impairment, with identifying information redacted in order to protect the privacy of the patients. | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804). Jody Reilly's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts her deposition testimony, as follows: |
| 17. | | Reilly Decl. (App. 3) ¶ 19. The above trainings, policies, standards, and procedures are only representative examples of | Lack of personal knowledge, speculation (F.R.E. 602). Irrelevant (immaterial), Fed. R. Evid. 401 and 402. Purportedly applicable |

24

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | |
|---|---|---|
| | trainings, standards, policies, and procedures that require Quest phlebotomists at PSCs to provide assistance to patients, including providing assistance and accommodations to persons with disabilities with the check-in process at PSCs. | policies, trainings, standards, or procedures not produced in discovery in violation of Rule 26 should have no bearing on the analysis. |

## OBJECTIONS TO THE DECLARATION OF MARC YARRISON

Mr. Yarrison testified as the Defendants' Rule 30(b)(6) person most knowledgeable on the following topics:

- ***Topic 1***: "[Quest's] decision to outfit [Quest's] PATIENT SERVICE CENTERS with E-CHECK-IN KIOSKS." Ex. 34 at PA0942A:8-PA0942B:9. [Yarrison depo.].

- ***Topic 2***: "The reasons why [Quest] decided to outfit [Quest's] PATIENT SERVICECENTERS with E-CHECK-IN KIOSKS." Ex. 34 at PA0942A:8-PA0942B:9. [Yarrison depo.].

- ***Topic 3***: "The amount of business operating costs [Quest] saved by switching [Quest's] PATIENT SERVICE CENTERS to E-CHECK-IN KIOSKS from live-person check-in procedures." Ex. 34 at PA0942A:8-PA0942B:9. [Yarrison depo.].

- ***Topic 17***: "All actions taken by [Quest] to ensure the E-CHECK-IN KIOSKS at [Quest's] PATIENT SERVICE CENTERS are compliant with the ADA." Ex. 34 at PA0942A:8-PA0942B:9. [Yarrison depo.].

- ***Topic 18***: "All actions taken by [Quest] to ensure the E-CHECK-IN KIOSKS at [Quest's] PATIENT SERVICE CENTERS are compliant with the REHAB ACT." Ex. 34 at PA0942A:8-PA0942B:9. [Yarrison depo.].

- ***Topic 28*** (partial testimony): "All efforts [Quest] made between January 1, 2016, to the present, to make the E-CHECK-IN KIOSKS accessible and

25

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

1  independently usable by visually impaired PERSONS." Ex. 34 at

2  PA0942A:8-PA0942B:9. [Yarrison depo.].

3  • **_Topic 40_**: "How patient data is recorded by [Quest]." Ex. 34 at PA0942A:8-

4  PA0942B:9. [Yarrison depo.].

5  Mr. Yarrison was deposed on April 8, 2021.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

| | EVIDENCE OBJECTED TO: | GROUNDS FOR OBJECTION: |
|---|---|---|
| 18. | Yarrison Decl. (App. 4) ¶ 6.<br><br>In 2015, to improve the experience of patients and employees at PSCs through digitization, Quest began to explore ways to modify its PSC check-in practices, along with other aspects of its patient interaction – from making appointments and pre-registration for the visits to how one checks in. | Sham declaration.<br><br>Marc Yarrison's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>One of the benefits of is cost avoidance. Ex. 34 at PA0948:8-14. [Yarrison depo.]. ██████<br><br>████████████████████████████████ |
| 19. | Yarrison Decl. (App. 4) ¶ 7.<br><br>After considering a wide variety of options, in April 2016, Quest chose to install, over a two and-a-half year rollout, one or more electronic, touchscreen tablets to allow patients to check in at each of its PSCs. The tablets, when placed in plastic casings and mounted on posts, were known as " Kiosks." | Sham declaration.<br><br>Marc Yarrison's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>████████████████████████████████ |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| 20. | Yarrison Decl. (App. 4) ¶ 8. | Sham declaration. |
| | | Marc Yarrison's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows: |
| | A Kiosk user would be prompted to check in by entering a first and last name, birthday, and phone number. Once the patient had checked in, the Kiosk would place them in queue to be served by a Quest phlebotomist. The queue, with estimated wait times, would also be displayed on one or more of the "Quest TV" monitors present at PSCs. | |
| 21. | Yarrison Decl. (App. 4) ¶ 10. | Sham declaration. |
| | | Marc Yarrison's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows: |
| | In designing the Kiosk, Quest could not anticipate or predict the future requests by persons with disabilities for "auxiliary aids and services" (42 U.S.C. § 12182(b)(2)(a)(iii)) or for "reasonable modification of policies, practices and procedures" (42 U.S.C. § 12182(b)(2)(a)(ii)) that the ADA requires to be considered when made. Quest was replacing an existing system of signing in on a paper sheet at a PSC, which blind patients had successfully used for years (sometimes with the assistance of Quest | |

27

phlebotomists) with another, digital system of signing in that was similarly accessible with the assistance of Quest phlebotomists. As it had for years, Quest was relying on its business model, approach to patient service, and policies, standards, procedures and training that, collectively, require Quest phlebotomists at PSCs to assist patients at PSCs, including providing assistance to persons with disabilities to ensure they had access to Quest's services. Quest's plan and business case for the Kiosk rollout did not include a plan to reduce then existing PSC staffing or to replace PSC staff with Kiosks.

Quest did not work with anyone with specialized knowledge of disabilities. Ex. 34 at PA0945:11-PA0946:7 [Yarrison depo.].

Quest took no action to ensure that they were independently accessible for blind individuals. Ex. 34 at PA0956:4-10 [Yarrison depo.].

Mr. Yarrison does not know whether the team evaluated whether the tablet had accessible features. Ex. 34 at PA0959:6-12, PA0960:6-9 [Yarrison depo.].

No action was taken to make the kiosk accessible. Ex. 34 at PA0954:14-PA0955:10 [Yarrison depo.].

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | | Marc Yarrison testifies that "one of the benefits of is cost avoidance." Ex. 34 at PA0948:8-14. [Yarrison depo.].<br><br>███████████████ |
| 22. | Yarrison Decl. (App. 4) ¶ 11.<br><br>Moreover, because check-in and other improvements were expected to reduce transaction time for each patient, it was expected that Quest phlebotomists would have additional time, among other things, to continue to address the needs of persons requiring assistance, including persons with disabilities. | Sham declaration.<br><br>Marc Yarrison's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>Marc Yarrison testifies that "one of the benefits of is cost avoidance." Ex. 34 at PA0948:8-14. [Yarrison depo.].<br><br>███████████████ |
| 23. | Yarrison Decl. (App. 4) ¶ 12.<br><br>But, instead of simply relying on these assumptions about how the Kiosks would work once rolled out, Quest also planned to identify problems that any of its patients may be experiencing with the Kiosk through its | Sham declaration.<br><br>Marc Yarrison's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>███████████████ |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14 | | extensive methods for soliciting and receiving patient feedback and complaints and the "iterative" process that is an inherent part of the rollout of any electronic or other technology. | No action was taken to make the kiosk accessible. Ex. 34 at PA0954:14-PA0955:10 [Yarrison depo.]. |
| 15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27 | 24. | Yarrison Decl. (App. 4) ⁋ 13.<br><br>As with the rollout of almost any technology on this large a scale, the implementation of the Kiosk was always contemplated to be an "iterative" process. Namely, Quest knew that it would continue to study the actual experience of Kiosk users and address any needs, challenges, or problems through future changes, modifications and alterations (i.e., iterations) to the Kiosk or the processes associated with the Kiosks' usage. | Sham declaration.<br><br>Marc Yarrison's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>Mr. Yarrison received a complaint on January 5, 2017, about the kiosks being inaccessible to the blind and an ADA violation, Ex. 34 at PA0953:5-18 [Yarrison depo.], |

NYE, STIRLING, HALE & MILLER<br>33 WEST MISSION STREET, SUITE 201<br>SANTA BARBARA, CALIFORNIA 93101

28

30

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

No action was taken to make the kiosk accessible. Ex. 34 at PA0954:14-PA0955:10 [Yarrison depo.].

Dated: September 17, 2021        Respectfully submitted,

By:    /s/ Jonathan D. Miller

        Jonathan D. Miller (SBN 220848)
        jonathan@nshmlaw.com
        Alison M. Bernal (SBN 264629)
        alison@nshmlaw.com
        NYE, STIRLING, HALE
        & MILLER, LLP
        33 West Mission Street, Suite 201
        Santa Barbara, CA 93101

        Benjamin J. Sweet
        (Admitted *Pro Hac Vice*)
        ben@nshmlaw.com
        NYE, STIRLING, HALE
        & MILLER, LLP
        1145 Bower Hill Road, Suite 104
        Pittsburgh, PA 15243
        Telephone: (412) 857-5350

        Matthew K. Handley
        (Admitted *Pro Hac Vice*)
        mhandley@hfajustice.com
        HANDLEY FARAH &
        ANDERSON PLLC
        777 6th Street NW
        Washington, DC 20001

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

31

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ

Telephone: (202) 559-2411

*Attorneys for Plaintiffs JULIAN VARGAS,*
*AMERICAN COUNCIL OF THE BLIND,*
*AND THE PROPOSED CLASS*

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT
AND ADDITIONAL MATERIAL FACTS IN OPPOSITION TO QUEST'S MSJ