OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
DAVID RAIZMAN, CA Bar No. 129407
david.raizman@ogletree.com
AMBER L. ROLLER, CA Bar No. 273354
amber.roller@ogletree.com
J. NICHOLAS MARFORI, CA Bar No. 311765
nicholas.marfori@ogletree.com
400 South Hope Street, Suite 1200
Los Angeles, California 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL
LABORATORIES, INC.; QUEST
DIAGNOSTICS HOLDINGS, INC. and
QUEST DIAGNOSTICS INCORPORATED

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JULIAN VARGAS, ANNE WEST and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:19-cv-08108 DMG (MRWx)<br><br>**DECLARATION OF OF JOSEPH A. KROCK, Ph.D.**<br><br>Date: October 8, 2021<br>Time: 2:00 p.m.<br>Courtroom: 8C<br><br>Complaint Filed: September 18, 2019<br>Pretrial Conference: December 7, 2021<br>Trial Date: January 11, 2022<br>District Judge: Hon. Dolly M. Gee<br>Magistrate: Hon. Michael M. Wilner |

I, Joseph A. Krock, hereby declare:

I. **INTRODUCTION**

1. My name is Joseph A. Krock, Ph.D. I reside in Los Angeles County, California. I am an economist and Managing Director of The Claro Group, LLC

1  ("Claro"), a multi-disciplinary consulting firm with offices in Austin, Chicago, Houston, Los Angeles, and Washington, D.C. My office is located in Los Angeles, California.

2.  I earned Master of Arts and Doctorate Degrees in Economics from the University of Chicago, and Bachelor of Arts Degree in Economics-Mathematics from the University of California, Santa Barbara. I have extensive training in statistical and econometric methods at both the undergraduate and graduate level. I have served as a lecturer in Economic Theory at the University of Chicago, and I regularly speak before professional groups regarding, among other topics, the use of sampling and statistics in litigation, database management and analysis, and damages calculation.

3.  I lead the Economic Consulting Practice at Claro, and I have been retained in connection with various types of litigation including wage and hour class and collective actions, consumer class actions, as well as antitrust, intellectual property, and breach of contract matters. I have testified in numerous cases in which class certification and economic damages were at issue. Prior to joining Claro, I worked for Micronomics, Inc. and Deloitte & Touche, LLC, performing similar duties as I am for Claro.

4.  My experience with class and collective actions extends over 19 years. I have been retained by numerous clients to provide testimony regarding suitability and feasibility of calculating liability and damages on a class-wide basis for both wage and hour class actions and consumer class actions. I regularly review complex databases and provide opinions as to the relevance of those databases in facilitating the class process. I also have been retained to review and perform statistical surveys and to opine on statistical opinions based on survey research. My opinions and support work have been used in class certification disputes. Broadly speaking, my industry experience includes, among others, consumer products, building products,

commercial and residential services, financial services, agriculture, oil and gas, and transportation.

5. I have been designated as an expert witness and testified at trial and in depositions as an expert witness in several cases in state and federal district courts in California, Florida, Illinois, Louisiana, Minnesota, Nevada, New Jersey, and Oregon, including Federal Multi-District Litigation ("MDL") matters. I have been retained as an expert in more than 100 cases in state and federal courts in California, Florida, Illinois, Louisiana, Minnesota, Nevada, New Jersey, New York, Oregon, and Wisconsin.

6. My curriculum vitae, including a list of all publications I authored in the previous ten years and a list of all other cases in which I have testified as an expert at trial or by deposition in the last four years, is attached at Exhibit A. Claro is being compensated for my time at a rate of $595 per hour. I have been assisted by members of my staff whose rates may range from $150 to $600 per hour. My compensation is not dependent on the outcome of this litigation.

7. I also rely upon my training and experience as an economist, statistician, and expert witness. I have been involved in class action litigation matters for more than 20 years. My experience in these matters involves pre-trial exposure calculations, class certification analysis, review of trial plans and methods related to statistical sampling and surveys, the execution of surveys and interpretation of results, damages and liability calculations, and post-trial claims-made processes.

## II. ASSIGNMENT

8. I have been retained by Ogletree Deakins, counsel for Quest Diagnostics, Incorporated (herein, "Quest" or "Defendant"), to review the *Declaration of Mark Derry in Support of Plaintiff's Motion for Class Certification,* which includes an "Outline of Issues for Mark Derry to Investigate," and to provide my opinion as to the adequacy of Mr. Derry's investigation as it relates to standard statistical and survey research standards.

Vargas - FINAL
Krock

Case No. 2:19-cv-08108 DMG (MRWx)
3
DECLARATION OF JOSEPH A. KROCK, Ph.D.

## III. SUMMARY OF CONCLUSIONS

9. I have reviewed Mr. Derry's declaration and attached investigation report and have reached the following conclusions:

- Mr. Derry's sample of 24 Quest Patient Service Center ("PSC") locations from a limited geography within three states is inadequate to draw any statistical conclusions that could be generalized to the entire population of approximately 2,100 PSC locations operated by Quest and its subsidiaries across the United States;

- Mr. Derry's sample appears to be chosen in a non-random manner such that, if his survey was valid, which it is not for scientific or statistical purposes, his results cannot be generalized to the entire population of approximately 2,100 Quest PSC locations across the United States;

- Mr. Derry's "investigation" does not provide any scientific or rigorous information because it only included single observations of limited duration at a handful of Quest PSC locations across three states;

- The conclusions reached by Mr. Derry do not provide useful information because they include indefinite and unclear terms such as "almost never," "usually two to three," and "sometimes."

10. Mr. Derry's "investigation" is nothing more than a series of anecdotes and point in time observations that do not have scientific or statistical meaning. It would be inappropriate and invalid to generalize these results to the rest of the approximately 2,100 Quest PSC locations in the United States.

## IV. DISCUSSION

### A. Mr. Derry's Sample Size Is Inadequate

11. Mr. Derry states that he personally visited 24 Quest PSC locations from which he derives his "conclusions" regarding the accessibility of the eCheck-in kiosk. These 24 locations were divided across three states, nine from the Los

Angeles area of California, ten from the Buffalo area of New York, and five from the Stratford/Bridgeport area of Connecticut.

12. From a statistical perspective, Mr. Derry's sample size of 24 is inadequate to draw any meaningful statistical conclusions. When considering the choice of an appropriate sample size, the researcher must define the research objective (the question that needs to be answered) and the degree of precision with which the answer is desired. Mr. Derry does neither.

13. For a truly representative sample of these approximately 2,100 locations, using standard margins of errors for proportional data (*i.e.,* answers that lie between zero and one), sample sizes in my experience range from a minimum of 100 to approximately 400 if stratification is not an issue. In this case, representative samples may need to be drawn on a state-by-state basis or rural-urban basis. Any addition of strata would increase the sample sizes proportionately.

14. From my experience, it is clear that Mr. Derry's sample size of 24, along with a failure to define his research objective clearly, ensures that the information provided can only be considered anecdotal information that contains nothing that can be generalized to any other Quest PSC locations beyond the 24 visited by Mr. Derry.

### B. Mr. Derry's Sample Is Not A Random Sample

15. Mr. Derry does not explain how he selected the 24 Quest PSC locations he visited. A simple mapping of the Quest PSC locations indicates that Mr. Derry selected only Quest PSC locations in a limited geographic region. Some Quest PSC locations he selected were less than 600 feet from other Quest PSC locations. It appears that Mr. Derry selected these locations for convenience.

16. It is generally accepted in statistical science that a sample that is selected at random, given a sufficient sample size, will be representative of the population. The random selection is key to employing statistics to draw inferences from a sample to apply to a population as a whole. Here, Mr. Derry has not generated

a random sample. Aside from the inadequate sample size, Mr. Derry's sample is not and cannot be representative of the population of approximately 2,100 other Quest PSC locations.

### C. Mr. Derry's "Investigation" Is Of Limited Usefulness

17. Mr. Derry's "report" does not indicate the time of day or the duration of his observation of that location. Given that Mr. Derry observed (or attempted to observe) between five and eight locations per day on most of his site visit days, the amount of time he spent was necessarily limited. Furthermore, he only observed each store for a single visit on a single date.

18. In general, observational studies would require longer observation periods and multiple visits across a variety of times (both in the day and throughout the year). Any conclusions based on a single observation may reflect anomalous circumstances that are not reflective of the general operations. As these observations occurred during a relatively heavy COVID-19 period, operations at these Quest PSC locations could have been severely affected by local conditions for which Mr. Derry has not accounted.

19. At best, Mr. Derry's "investigation" only reflects the operations of those 24 Quest PSC locations at the single instant that he observed each. There is no scientific or statistical method that allows him to draw inferences across the remaining approximately 2,100 Quest PSC locations based upon such limited data collection.

### D. Mr. Derry's Observations Are Not Scientifically or Statistically Reliable

20. Finally, Mr. Derry's conclusions do not follow standard scientific and statistical standards in reporting his results. Mr. Derry uses vague, undefined and equivocal terms to describe his limited experiences at these locations.

21. For example, Mr. Derry states, "very few locations had an entrance bell…" It is impossible to draw scientific or statistical conclusions based off a term

"very few." Typically, observations like this would be represented numerically, rather couched in vague terms.

22. Other terms that Mr. Derry uses that are equivocal, unquantifiable or undefined are: "may sometimes," "usually," "not all," "many times," "inconsistently," "with few exceptions," "at some locations," "if," "but only," "varies," "almost never," and "usually two to three." None of these terms is generally used in scientific or statistical reporting of results. If the terms are referenced, the researcher will usually follow the statement with a quantification of results. Mr. Derry leaves significant room for interpretation of what these terms mean. Mr. Derry's conclusions contain zero scientific or statistical meaning.

## V. **CONCLUSION**

23. Mr. Derry's vague language, limited scope of observation, and limited, non-random sample make it impossible to draw scientific or statistical conclusions for the approximately 2,100 Quest PSCs. At best, his "investigation" is an anecdotal summary of only the instant that he observed the 24 Quest PSC locations, which is not helpful to a court or jury in evaluating or drawing conclusions regarding Quest's company-wide practices across its PSCs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 24th day of September, 2021, in Los Angeles, California.

Dated: September 24, 2021

Joseph. A. Krock, Ph. D., Declarant

48685190.1

Vargas - FINAL Krock

7

Case No. 2:19-cv-08108 DMG (MRWx)
DECLARATION OF JOSEPH A. KROCK, Ph.D.