# EXHIBIT 4

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
DAVID RAIZMAN, CA Bar No. 129407
david.raizman@ogletree.com
AMBER L. ROLLER, CA Bar No. 273354
amber.roller@ogletree.com
J. NICHOLAS MARFORI, CA Bar No. 311765
nicholas.marfori@ogletree.com
400 South Hope Street, Suite 1200
Los Angeles, California 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL
LABORATORIES, INC.; QUEST
DIAGNOSTICS HOLDINGS, INC. and
QUEST DIAGNOSTICS INCORPORATED

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN VARGAS, ANNE WEST and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:19-cv-08108 DMG (MRWx)<br><br>**DECLARATION OF MARC YARRISON IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: October 8, 2021<br>Time: 2:00 p.m.<br>Place: Courtroom 8C<br><br>Complaint Filed: September 18, 2019<br>Trial Date: January 11, 2022<br>District Judge: Hon. Dolly M. Gee<br>Courtroom 8C, First St.<br>Magistrate Judge: Hon. Michael R. Wilner<br>Courtroom 550, Roybal |

48447400_1.docx

Case No. 2:19-cv-08108 DMG (MRWx)
DECLARATION OF MARC YARRISON IN SUPPORT OF DEFS.' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

EXHIBIT 4 QA 24

# DECLARATION OF MARC YARRISON

I, Marc Yarrison, declare and state as follows:

1. I make this declaration in support of the Motion for Summary Judgment, Or, In The Alternative, For Partial Summary Judgment of defendants Quest Diagnostics Clinical Laboratories, Inc., Quest Diagnostics Holdings, Inc., and Quest Diagnostics Incorporated (collectively, "Quest"). As such, I have personal knowledge of all the facts set forth below. If called upon to testify to these facts, I could do so competently.

2. Quest is a leading provider of diagnostic information services, which includes collecting blood and urine specimens at Patient Service Centers ("PSCs") nationwide that Quest then tests in accordance with orders placed by physicians and other authorized providers.

3. I am the Director, National Patient Services, Technology, and Support at Quest and have been for the past eight years. As such, I lead a team that supports Quest's various business regions in their day-to-day PSC operations. I also supervise project managers that work with Quest's healthcare and information technology department on technology projects for National Patient Services and for the business regions. In addition, I supervise a small team supporting Quest's regions.

4. Before the events of which Plaintiffs complain in this action, patients at Quest PSCs would indicate their arrival at Quest PSCs, or check in, by entering their name on a paper sign-in sheet maintained in the waiting room.

5. PSCs are staffed by Quest Patient Service Representatives, often referred to as Quest phlebotomists (who are trained to collect blood and other specimens from patients) and other staff. Quest phlebotomists at the PSCs would enter the PSC waiting room, review the sign-in sheet and call the next patient back for specimen collection, bring that patient back to the draw room where blood and other specimens were collected, and then return to the waiting room to call the next patient.

1     Case No. 2:19-cv-08108 DMG (MRWx)
DECLARATION OF MARC YARRISON IN SUPPORT OF DEFS.' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

48447400_1.docx

EXHIBIT 4 QA 25

6. In 2015, to improve the experience of its patients and employees at PSCs through digitization, Quest began to explore ways to modify its check-in practices at its PSCs, along with other aspects of its patient service – from making appointments, to pre-registration for PSC visits, to how one checked in when arriving at Quest PSCs.

7. After considering a wide variety of options, in April 2016, Quest chose to install, over a two-and-a-half year rollout, one or more electronic, touchscreen tablets that patients could use to check in at each of its PSCs. The tablets, when placed in plastic casings and mounted on posts, came to be known as "Kiosks."

8. A Kiosk user would be prompted to check in by entering a first and last name, birthday, and phone number. Once the patient had checked in, the Kiosk would place them in queue to be served by a Quest phlebotomist. The queue, with estimated wait times, would also be displayed on one or more of the "Quest TV" monitors present at PSCs.

9. In deploying the Kiosks, Quest and its vendors undertook to ensure that Quest satisfied the explicit design standards applicable to the Kiosks in the ADA Standards for Accessible Design (36 C.F.R. Pt. 1191, App. B & D, "ADAS"), including design standards that all of the operable parts of the Kiosk were within "reach range" of someone using a wheelchair (ADAS 308, 309) and that the freestanding Kiosks were detectable by blind cane users (ADAS 307).

10. In designing the Kiosk, Quest could not anticipate or predict the future requests by persons with disabilities for "auxiliary aids and services" (42 U.S.C. § 12182(b)(2)(a)(iii)) or for "reasonable modification of policies, practices and procedures" (42 U.S.C. § 12182(b)(2)(a)(ii)) that the ADA requires to be considered when made. Quest was replacing an existing system of signing in on a paper sheet at a PSC, which blind patients had successfully used for years (sometimes with the assistance of Quest phlebotomists) with another, digital system of signing in that was similarly accessible with the assistance of Quest phlebotomists. As it had for years,

Quest was relying on its business model, approach to patient service, and policies, standards, procedures and training that, collectively, require Quest phlebotomists at PSCs to assist patients at PSCs, including providing assistance to persons with disabilities to ensure they had access to Quest's services. Quest's plan and business case for the Kiosk rollout did <u>not</u> include a plan to reduce then-existing PSC staffing or to replace PSC staff with Kiosks.

11. Moreover, because electronic check-in and other improvements were expected to reduce transaction time for each patient, it was expected that Quest phlebotomists would have additional time, among other things, to continue to address the needs of persons requiring assistance, including persons with disabilities.

12. But, instead of simply relying on these assumptions about how the Kiosks would work once rolled out, Quest also planned to identify problems that *any* of its patients may be experiencing with the Kiosk through its extensive methods for soliciting and receiving patient feedback and complaints and the "iterative" process that is an inherent part of the rollout of any electronic or other technology.

13. As with the rollout of almost any technology on this large a scale, the implementation of the Kiosk was always contemplated to be an "iterative" process. Namely, Quest knew that it would continue to study the actual experience of Kiosk users and address any needs, challenges, or problems through future changes, modifications and alterations (*i.e.*, iterations) to the Kiosk or the processes associated with the Kiosks' usage.

14. Quest expected to gather information about Kiosk user experience by among other things (1) studying usage at some early rollout PSCs, (2) monitoring patient feedback, including feedback provided to Quest phlebotomists and staff at PSCs and through the surveys it routinely conducts from PSC visitors, and (3) its ongoing system of receiving and responding to patient concerns and complaints, including through its Patient Advocacy team.

48447400_1.docx

3    Case No. 2:19-cv-08108 DMG (MRWx)
DECLARATION OF MARC YARRISON IN SUPPORT OF DEFS.' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

EXHIBIT 4 QA 27

I declare under penalty of perjury under the laws of the Commonwealth of Pennsylvania and the United States that the facts stated above are true and correct. Executed on September 3, 2021, at Schwenksville, Pennsylvania.

_____

Marc Yarrison

48447400.1

48447400_1.docx

4     Case No. 2:19-cv-08108 DMG (MRWx)
DECLARATION OF MARC YARRISON IN SUPPORT OF DEFS.' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT

EXHIBIT 4 QA 28