Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345

Benjamin J. Sweet
(*Admitted Pro Hac Vice*)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

Attorneys for Plaintiffs Julian Vargas,
American Council of the Blind, and the Proposed Class

*Additional counsel for Plaintiff listed on signature page*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

REDACTED

JULIAN VARGAS, ANNE WEST, and
AMERICAN COUNCIL OF THE
BLIND, individually on behalf of
themselves and all others similarly
situated,

                Plaintiffs,

        v.

QUEST DIAGNOSTICS CLINICAL
LABORATORIES, INC., QUEST
DIAGNOSTICS HOLDINGS, INC.,
QUEST DIAGNOSTICS
INCORPORATED; and DOES 1-10,
inclusive,

                Defendants.

Case No.: 2:19-cv-08108-DMG

**PLAINTIFF'S REPLY TO
DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION**

*{Filed Concurrently With Objections
to Defendants' Evidence, Declaration
of Benjamin J. Sweet and Rebuttal
Appendix of Exhibits}*

**Hearing Date: October 29, 2021
Time: 10:00 am
Courtroom: 8C**

Complaint Filed: September 18, 2019
Discovery Cutoff: August 27, 2021
Pretrial Conf: December 7, 2021
Trial Date: January 11, 2022
District Judge: Hon. Dolly M. Gee
Magistrate: Hon. Michael M. Wilner

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................6

II.   QUEST'S OPPOSITION MISSTATES OR DISTORTS KEY FACTS WHICH BEAR ON THE CLASS CERTIFICATION ANALYSIS ...............................................................................9

    A.    Quest Misstates Important Facts About Its Own Complaint Process Which May Bear on Numerosity ...........................9

    B.    Quest Misstates The Facts About TFS................................11

    C.    The Actual Experiences of Mr. Vargas and the ACB Members with TFS .....................................................12

    D.    Quest's "Facts" Regarding Its Prior Paper Check In System Are Irrelevant to Whether ECSS Denies The Class "Effective Communication" .............................................13

III.  PLAINTIFF AND THE PUTUATVE CLASS HAVE STANDING AND MEET THE REQUIREMENTS OF RULE 23(a)................................15

    A.    Because TFS Is Still Itself Inaccessible, Plaintiff Vargas Has Article III Standing and The Class Claims Are Not Mooted ......15

    B.    Plaintiff And the Putative Class Meet All Rule 23(a) Standards........16

        1. Numerosity is Established.................................16

        2. Commonality is Established...............................18

        3. Typicality is Satisfied.....................................19

        4. Mr. Vargas is an Adequate Class Representative ...........20

IV.   FOLLOWING BRISENO v. CON AGRA, THE UNRUH ACT §51 DAMAGES CLASS EASILY SATISFIES RULE 23(B)(3)'S PREDOMINANCE AND SUPERIORITY REQUIREMENTS .................21

    A.    The Unruh Act Is Coextensive With the ADA ..................21

    B.    Common Issues Predominate Here .....................................23

    C.    Superiority is Easily Established........................................29

V.    CONCLUSION ................................................................................30

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

2

# **TABLE OF AUTHORITIES**

*A.A. v. Cty. of Riverside*, No. EDCV142556VAPSPX, 2017 WL 5624296, at *4 (C.D. Cal. Nov. 7, 2017). ..........................................................................17

*Aichele v. City of Los Angeles*, 314 F.R.D. 478, 495 (C.D. Cal. 2013) .................30

*Antoninetti v. Chipotle Mexican Grill, Inc.*, 2012 WL 3762440 (S.D. Cal. Aug. 28, 2012)......................................................................................................28

*Baughman v. Walk Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012)..................15

*Berlowitz v. Nob Hill Masonic Mgmt.*, No. C-96-01241 MHP, 1996 WL 724776 at *5 (N.D. Cal. Dec. 6, 1996)........................................................................23

*Bor Pha v. Yia Yang*, No. 2:12-cv-01580-TLN-DAD, 2014 WL 654559 at *5 (E.D. Cal. Feb. 19, 2014) ....................................................................23, 24

*Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000) ...........................28

*Castaneda v. Burger King Corp.*, 264 F.R.D. 557 (N.D. Cal. 2009) .....................29

*Elkies v. Johnson and Johnson Servs., Inc.*, No. CV 17-7320-GW(JEMx), 2018 WL 11223465 (C.D. Cal. Oct. 18, 2018) ......................................................29

*Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153 (9th Cir. 2011)..............................................................................................................16

*Fernandez v. Orange Walker LLC*, No. CV 21-1061-RSWL-Ex, 2021 WL 4458949 at *3 (C.D. Cal. Sept. 28, 2021) ......................................................7

*Fortyune v. Am. Multi–Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004)....................15

*Galvan v. Walt Disney Parks and Resorts, U.S., Inc*., SACV1801721ABFFMX, 2019 WL 8017810, at *1 (C.D. Cal. Nov. 27, 2019) .....................................24

*Greater Los Angeles Agency on Deafness, Inc. v. Reel Services Mgmt. LLC*, 2014 WL 12551074 (C.D. Cal. May 6, 2014)............................................6,19

*Gray v. Golden Gate Nat'l Rec. Area*, 279 F.R.D. 501, 515 (N.D. Cal. 2011).......19

*Grutman v. Regents of Univ. of Cal.,* 807 F. Supp.2d 861, 865 (N.D.Cal.2011)....22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)...........................18

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

3

*In re Korean Ramen Antitrust Litig.*, 2017 WL 235052, at *21 (N.D. Cal. Jan. 19, 2017)..................................................................................................25

*In re Yahoo Mail Litig.*, 308 F.R.D. 577, 595 (N.D. Cal. 2015) ............................20

*Isbister v. Boys' Club of Santa Cruz, Inc.,* 40 Cal.3d 72, 76, 219 Cal.Rptr. 150, 707 P.2d 212 (1985). .........................................................................................22

*Jones v. Wells Fargo Bank, N.A.*, 2015 WL 661757 at *15 (Cal. App. Feb. 17, 2015)..................................................................................................................23

*Kalani v. Starbucks Coffee Co.*, 698 Fed. App'x 883 (9th Cir. 2017) ...................16

*Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at *7 (N.D. Cal. July 15, 2016)..................................................................................................................25

*Lane v. Kitzhaber,* 283 F.R.D. 587, 598 (D. Or. 2012) ..........................................6

*Lentini v. California Center for the Arts, Escondido*, 370 F3d 837, 847 (9th Cir. 2004) ..................................................................................................................22

*Limon v. John Anthony Enterprises,* No. 19-2012 (DMG), 2019 WL 5538204 (C.D. Cal. Oct. 25, 2019) ..................................................................................7

*Littlefield v. NutriBullet, L.L.C.*, CV 16-6894 MWF (SSX), 2017 WL 10439791, at *7 (C.D. Cal. Nov. 3, 2017) ....................................................12

*McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Tr.*, 268 F.R.D. 670, 674 (W.D. Wash. 2010)..................................................17

*Mier v. CVS Pharmacy, Inc.*, No. SA CV 20-1979-DOC-(ADSx), 2021 WL 3468951 (C.D. Cal. April 29, 2021)................................................................29

*Moeller v. Taco Bell Corp.,* 220 F.R.D. 604, 608 n. 8 (N.D.Cal.2004). ................17

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007)...............................22

*Morgan v. United States Soccer Fed'n, Inc.*, No. 2:19-cv-01717-RGK-AGR, 2019 WL 7166978, at *7 (C.D. Cal. Nov. 8, 2019) ...............................18, 19

*Mundy v. Pro-Thro Enters.*, 192 Cal. App. 4th Supp. 1 (2011) .............................28

*National Federation of Blind Californian v. Uber Technologies, Inc.,* No. 14-cv-04086, 2016 WL 9000699, at *6 (N.D. Cal. 2016)...................................6

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

4

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

*Nevarez v. Forty Niners Football Company, LLC,* 326 F.R.D. 562 (N.D. Cal. 2018) ............................................................................................passim

*Postpichal v. Cricket Wireless, LLC*, No. C 19-07270 WHA, 2021 WL 3403146, at *9 (N.D. Cal. Aug. 4, 2021) ...............................................19, 20

*Reycraft v. Lee,* 177 Cal. App. 4th 1211 (2009) .......................................27

*Robles v. Dominos*, 913 F.3d 989 (9th Cir. 2019) .....................................15

*Sevilla v. Aaron's, Inc.,* No. 2019 WL 2879874 (C.D. Cal. Mar. 19, 2019)...........23

*Shields v. Walt Disney Park and Resorts US, Inc.,* 279 F.R.D. 529 (C.D. Cal. 2011) ..............................................................................................6

*Snapp v. United Transp. Union*, 889 F.3d 1088, 1103 (9th Cir. 2018). .................12

*Sueoka v. U.S.*, 101 Fed. App'x 649, 653 (9th Cir. 2004) .......................17

*Todd v. Tempur-Sealy Int'l, Inc.,* 2016 WL 5746364, at *5 (N.D. Cal. Sept. 30, 2016) ...................................................................................20, 21

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 (2021) ....................16

*Urhausen v. Longs Drug Stores, California, Inc.*, 155 Cal. App. 4th 254 (2007) ..............................................................................................28

*Van Asdale v. Int'l Game Tech.,* 577 F.3d 989, 998 (9th Cir. 2009) .......................24

*Vondersaar v. Starbucks Corp.*, 2015 WL 629437, at *4 (C.D. Cal. Feb. 12, 2015)....................................................................................28

*Walker v. Life Ins. Co. of the Southwest,* 953 F.3d 624, 632 (9th Cir. 2020)...passim

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011)....................19

*Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).......................24

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## MEMORANDUM OF POINTS AND AUTHORTIIES

## I.   INTRODUCTION

Defendants' Opposition to Plaintiff's Memorandum in Support of  Motion for Class Certification (the "Opposition" or "Opp.") rests upon two key—and false—assertions. First, it claims that any lawsuit brought under the ADA on an "effective communication" theory (such as this Action) is *ab initio* ill-suited for class treatment. This is, of course, demonstrably untrue; courts in the Ninth Circuit routinely certify ADA classes brought on an effective communication theory (*see, e.g., Greater Los Angeles Agency on Deafness, Inc. v. Reel Services Mgmt. LLC,* 2014 WL 12551074 (C.D. Cal. May 6, 2014) (certifying class of deaf moviegoers); *National Federation of Blind Californian v. Uber Technologies, Inc.,* No. 14-cv-04086, 2016 WL 9000699, at *6 (N.D. Cal. 2016); *Lane v. Kitzhaber,* 283 F.R.D. 587, 598 (D. Or. 2012), a fact Quest's counsel should be well aware of given that in 2011 this very Court certified a national class brought, in part, on an effective communication theory against his client Walt Disney Parks and Resorts. *See Shields v. Walt Disney Park and Resorts US, Inc.,* 279 F.R.D. 529 (C.D. Cal. 2011) (certifying ADA class based in part on an effective communication theory).

Second, after conceding that this Action is about "effective communication"[1] (Opp. at 1, 13-14), the Opposition misdirects this Court to a section of the Unruh Act governing violations of *construction-related barriers—*Cal. Civ. Code §§55.56(b)-(d)—as well as the inapposite cases interpreting them—which arguably impose pleading requirements more stringent than Section 51's the notice pleading standard under which Plaintiff plainly seeks relief. *See* Opp. at 21; *but see* Dkt. 41 at ¶¶ 71-77.

---

[1] In fact, Plaintiff, this Court, Quest and the Department of Justice all agree that this action involves an "effective communication" theory of liability. Dkt 41 at ¶¶ 52-70, Dkt 133 at 1. "The "effective communication" regulation on which this lawsuit is premised . . .", Dkt. 118 at 11:25-12:8.

The reason for this sleight of hand is obvious; by improperly applying the more-stringent Section 55.56 pleading standard, Quest hopes individualized issues will predominate sufficient to defeat certification under Rule 23(b)(3). *See Limon v. John Anthony Enterprises,* No. 19-2012 (DMG), 2019 WL 5538204 (C.D. Cal. Oct. 25, 2019) (slip op.) (Gee, J.) (recognizing that "[i]n 2012" California legislature adopted a "stricter pleading standard" for "construction-access claims" brought under the Unruh Act);[2] *see also Fernandez v. Orange Walker LLC*, No. CV 21-1061-RSWL-Ex, 2021 WL 4458949 at *3 (C.D. Cal. Sept. 28, 2021) ("These heightened pleading requirements apply to actions alleging a 'construction-related accessibility claim.'"); *Cota v. Porven, Ltd*, No. 20-cv-01806-BAS-RBB, 2021 WL 4267410 at *5 (S.D. Cal. Sept. 20, 2021). Respectfully, this Court should decline Quest's invitation to "move the goalposts" on Plaintiff, the Court, and the Class. This effective communication action must be analyzed under Section 51, a provision which does not require any showing of individualized proof—much less one which could prevent Plaintiff from meeting his predominance burden under Rule 23(b)(3).

Finally, Plaintiff respectfully urges this Court to appreciate that this case is not cabined to the issue of unduly lengthy blind customer wait times. Rather, it involves systemic and wide-ranging effective communication failures of much greater magnitude which persist to this day in Quest's E-Check In ("ECSS") kiosk service– a service Quest itself describes as "essential." Ex. 29, at PA0793 [Quest discovery responses]. The record establishes beyond dispute that even in locations where the Company's purported "solution" three finger swipe ("TFS") actually exists, the impact is that blind customers are denied *any* independent and private access whatsoever to the vast majority of ECSS's services, including: (1) the ability to check

---

[2] For the reasons set forth at Section V.B., even if Section 55.56 does apply to this Action (it does not), predominance is still easily satisfied here.

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1  in at the kiosk and not be treated as a "walk-in" who is placed at the back of the service

2  queue; (2) the ability to wait safely outside during covid; (3) the ability to drop off or

3  pick up specimens; (4) the ability to update one's demographic information or to book

4  an appointment independently; and (5) the ability to scan your ID independently—all

5  services currently available to Quest's sighted customers. *See* ███████████████

6  ████████████████████████████████████████████████████████████

7  ███████████  Ex. 9, at PA0240:7-241:3 [Grant dep.]; Ex. 20, at PA0660:23-661:1

8  [Walsh dep.]; Ex. 32 [Montgomery dec. at 38]. Today, at each of Quest's 2,152 PSC

9  locations, blind customers must endure the indignity of not even being able to ask for

10  help because the ECSS kiosk lacks a simple tactile help button or audio output—and

11  Quest's renewed focus on efficiency ensures that its phlebotemists are almost always

12  in the draw rooms taking samples and thus unavailable to offer assistance. Ex. 20, at

13  PA0638:24-640:3 [Walsh dep.]; Ex. 40, at PA1148:4-9; PA1150:16-19 [Grant dep.];

14  Ex. 38, at PA1108:18-PA1109:13. [Carr dep.]; Ex. 31, at PA0858-75 [Derry dec.]

15  (demonstrating a Quest employee was available to assist at only 1 of 24 investigated

16  locations).[3]

17  What is more, prior to the introduction of TFS (which has **not** even been rolled

18  out across Quest's PSC network), the effective communication failures with ECSS

19  were even more pronounced, as blind Quest customers—many of whom count on

20  para-transport to get to and from their visits to Quest—were never made aware of the

21  presence of a kiosk in the waiting area, had no idea where it was located and had no

22  idea where they stood in the service queue—causing widespread confusion,

23  embarrassment, and anxiety. Ex. 4 [Vargas dec.]. Put simply, Quest implemented

24  ECSS in part to prevent feelings of confusion and anxiety for its sighted patients in

---

[3] Nor is there any accessible way for blind customers to even complain about this indignity. See Section II.A, *infra*.

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

the check-in process ███████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████ To analogize ECSS to a restaurant, sighted customers are presented with a full array of dining options while blind customers can only enjoy a small fraction of the menu's options—and must wait at the back of the queue to even enjoy those. This is the very essence of disability discrimination and federal law entitles Quest's blind customers to a solution that is at least as comprehensive as the communication failures which continue to deny them access to Quest's services.

For the reasons set forth in its opening brief, and those set forth below, Plaintiff carries his burden on each and every element required for Rule 23(b)(2) and 23(b)(3) certification. Accordingly, Plaintiff respectfully requests that his Motion for Class Certification be granted in its entirety.

## II. QUEST'S OPPOSITION MISSTATES OR DISTORTS KEY FACTS WHICH BEAR ON THE CLASS CERTIFICATION ANALYSIS

As explained in Plaintiff's Objections filed herewith, Quest's Opposition is full of misrepresentations, half-truths, and reliance on sham affidavits that are inconsistent with the witnesses' sworn deposition testimony and which bear on several aspects of the class certification analysis. Plaintiff incorporates those Objections by reference here, accordingly, and addresses the distortions of the factual record which most distract from an effective Rule 23 analysis.

### A. Quest Misstates Important Facts About Its Own Complaint Process Which May Bear on Numerosity

Conveniently absent from Quest's numerosity argument is any mention that its internal complaint process is totally inaccessible according to its own Rule 30(b)(6) witness on the topic. Ex. 39, at PA1139:9-PA1140:6. [Reilly dep.]. The factual record

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

is undisputed that there is no accessible process at Quest for a blind customer to lodge a complaint. *Id*. Not only does ECSS lack any accessible features (Ex. 5, at PA0029:17-24 [Yarrison dep.]), but as explained above, it also lacks an accessible help button. Ex. 20, at PA0638:24-640:3 [Walsh dep.]; Ex. 40, at PA1148:4-9; PA1150:16-19 [Grant dep.]; Ex. 38, at PA1108:18-PA1109:13. [Carr dep.]. It is therefore no surprise that many of the complaints that Quest does receive regarding the accessibility of ECSS for blind customers ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████ Other blind Quest customers ██████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████

In fact, the anti-discrimination sign posted in Quest's PSCs (Ex. 39, at PA1139:9-PA1140:6 [Reilly dep.]) is not itself in an accessible format. Ex. 8, at PA0117:4-9 [Reilly dep.]. Indeed, the only way a blind customer can complain is to a live Quest employee. Ex. 41, at PA1159:2-5 [Magana dep.]. Yet given that the investigation of Mark Derry demonstrated an employee was available at only 1 of the 24 Quest locations he investigated—the odds of finding a live employee to complain to are slim. Ex. 31, at PA0858-75 [Derry dec.]. Even if a blind customer is able to reach a live Quest representative to make a complaint, Quest provides no training to its employees on how to process or resolve blind customers complaints. Ex. 41, at PA1160:10-18 [Magana dep.].

Mr. Vargas's experience with the complaint process provides an apt case study. When he made a complaint about ECSS's inaccessibility, the Company never followed up on it. Ex. 10, at PA0481:24-PA0482:2 [Vargas dep.] Nor is there any

10

record of Mr. Vargas's complaint about ECSS in Quest's document production–suggesting that Quest does not keep accurate records of verbal complaints. Ex. 41, at PA1159-A:11-15 [Magana dep.]. Since there is no accessible way for a blind customer to make a written complaint and because the undisputed record evidence establishes the verbal complaints made by blind customers are never recorded by Quest, Quest should not be permitted to now use the results of its own woefully deficient (and inaccessible) complaint process in its own defense. Its attempt to do so here amounts to classic victim blaming.

### B.     Quest Misstates The Facts About TFS

The record in this action establishes indisputably that despite Quest's repeated false claims to the contrary[4]—which it repeats once again in the Opposition—TFS has not been rolled out across the network. Opp. at 4. In response to Quest's claims regarding TFS, Plaintiff deployed accessibility investigator Mark Derry to 24 Quest PSC locations. Dkt. 95-1, at 16:9-10; Ex. 31 [Derry dec.]. Derry found TFS was available at only 13 of the 24 investigated locations. Ex. 31, at PA0858-75 [Derry dec.]. And, further, where it did exist, it was riddled with deficiencies.[5] This Court should not credit Quest's claims about TFS (which are the product of sham affidavits and must be disregarded).

Even if TFS had been rolled out across the network, however, ECSS remains inaccessible for blind customers because TFS continues to deny blind individuals an

---

[4] Mr. Yarrison, Mr. Carr, and Mr. Grant, respectively, all falsely testified under oath that TFS was available across the PSC network. Ex. 6, at PA0089:2-8 [Carr dep.]; Ex. 5, at PA0030:10-14 [Yarrison dep.]; Ex. 9, at PA0249:20-23 [Grant dep.]. Quest's counsel again made this false assertion to Plaintiff Julian Vargas on April 22, 2021. Ex. 10, at PA0392:13-19 [Vargas dep.]. This claim remains demonstrably false.

[5] To date, Quest has failed to provide Plaintiff with **any** factual substantiation of its TFS mootness argument. *See*, Ex. 36, at PA01054:5-6.

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

array of additional services that are available to sighted customers, including: (1) the ability to check in without being treated as a "walk in" who is placed at the back of the service queue, as the record establishes that all users of TFS are; (2) the ability to wait safely outside during COVID; (3) the ability to drop off or pick up specimens; (4) the ability to update one's demographic information or to book an appointment independently; and (5) the ability to scan your ID. (Ex. 32 [Montgomery dec. at 38.].)

Similarly, Quest's assertion that it has no records of blind patients is directly contradicted by the testimony of its Rule 30(b)(6) witness—which binds the Company on this issue. *Littlefield v. NutriBullet, L.L.C.*, CV 16-6894 MWF (SSX), 2017 WL 10439791, at *7 (C.D. Cal. Nov. 3, 2017). "[A] corporation generally cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1103 (9th Cir. 2018) (citing 7 James Wm. Moore et al., Moore's Federal Practice § 30.25[3] (3d ed. 2016)). Quest executive Taylor Carr testified that Quest maintains records of which patients utilized TFS, including that those patients are visually impaired. Ex. 38, at PA1116:7-16 [Carr dep.]. In fact, Mr. Carr testified that he would be able to access that data should he need to do so. *Id.* at PA1116:24-1117:2. Quest further memorialized its three-finger swipe data in its Supplemental Responses and Objections to Plaintiff's Amended Rule 30(b)(6) Deposition Notice on March 8, 2021. Ex. 30, at PA833, PA846.

## C. The Actual Experiences of Mr. Vargas and the ACB Members with TFS

Despite Quest's speculation, the facts regarding Mr. Vargas's interaction with TFS are straightforward and undisputed. Mr. Vargas testified that he waited 8-10 minutes for the content loop to direct him to use ECSS to check in when he arrived at Quest. Ex. 4, ¶¶ 2-3 [Vargas dec.]. Because the audio message contained no instructions of where the kiosk is and no Quest employee was present from which to

seek help, he fumbled around the PSC until he found the kiosk. *Id*. at ¶ 3. Mr. Vargas then performed the TFS gesture and was told he would be served in three minutes. *Id*. at ¶ 4. Mr. Vargas waited for 17 additional minutes. *Id*. When Mr. Vargas was finally served, he was told that the wait by text option was not available to blind users. *Id*. [6]

With regard to the experiences of ACB members, Quest does not dispute—because it cannot dispute—that **not one** of them testified that he or she was able to independently access ECSS.  Nor can it dispute that nine (9) ACB members testified that they experienced wait times for longer than sighted patients and that this caused each of them to feel a loss of dignity and privacy in having to check in with a phlebotomist instead of at the "self-service" kiosk.  (Dkt. 107-1, Plaintiff's Mtn. for Class Cert., at 17:22-18:16.)

**D.     Quest's "Facts" Regarding Its Prior Paper Check In System Are Irrelevant to Whether ECSS Denies The Class "Effective Communication"**

The details of Quest's prior paper and pen sign-in sheet system (*see* Opp. at 3:12-16) are irrelevant to the instant dispute, as the accessibility, or lack thereof, of an outdated service has no bearing on whether a new service (*i.e.,* ECSS) is accessible to blind customers. Nor does Quest's purported compliance with *architectural* kiosk design standards absolve it from liability for its *effective communication* failures here. Opp. at 3. As Quest itself acknowledges, this case is about "effective communication" not architectural barriers. *Id*. at 1. Accordingly, the question is whether ECSS provides "effective communication," either as a stand-alone service (*see* Plaintiff's

---

[6] Quest offers unfounded speculation in regard to Mr. Vargas's recent visit to Quest. Opp. at 5. Mr. Vargas is obviously unable to "observe" whether any patients arrived while he waited because he is blind. Accordingly, Defendants' hypothetical is idle speculation. What is known—and undisputed—is that Mr. Vargas waited for 20 minutes and was denied use of the wait outside option—making clear that important services are wholly unavailable to Quest's blind customers even today.

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Opposition to Quest's Motion for Summary Judgement at 14-17, incorporated here by reference) or in connecting patients to a service. *Id.* at 20-22.

The United States Justice Department—the federal agency who propounded the ADA's regulations and which took the extraordinary step of filing a Statement of Interest ("SOI") in this Action—disagrees with Quest's view of what is required for "effective communication" under the ADA. Dkt. 118 at 11:25-12:8. As the SOI notes correctly, "[u]nder any ordinary definition of the term, Quest provides patients access to a "service" through its self-service kiosks.  Quest's kiosks provide a way for patients to schedule or check in for their appointment, input personal information, and choose where to wait until they can be seen by Quest's phlebotomists." *Id.* The DOJ is not alone in its interpretation of the effective communication regulation.

Guidance from the Health and Human Services Department is also in accord with DOJ's view. In its 2016 "Guidance and Resources for Electronic Information Technology: Ensuring Equal Access to All Health Services and Benefits Provided Through Electronic Means,"[7] the U.S. Department of Health and Human Services, Office for Civil Rights ("OCR") stated that "[a]s medical technology, such as kiosks and websites, is rapidly becoming an integral component of the healthcare system, it is vital to ensure that this technology is accessible to all individuals, including people with disabilities." The OCR further states that "covered entities may not provide individuals with disabilities with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." Even accepting Quest's theory that its "self-service" kiosk is not a service (it is), the kiosks undoubtedly offer users privilege or advantages within the meaning of 42 U.S.C. §

_____

[7]https://www.hhs.gov/sites/default/files/ocr-guidance-electronic-information-technology.pdf?language=es

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

12182(a). Importantly, then, both the DOJ and OCR agree that medical technology, such as kiosks, may not provide advantages to the non-disabled and then fail to provide those same advantages to the disabled.

## III.    PLAINTIFF AND THE PUTUATVE CLASS HAVE STANDING AND MEET THE REQUIREMENTS OF RULE 23(a)

### A.    Because TFS Is Still Itself Inaccessible, Plaintiff Vargas Has Article III Standing and The Class Claims Are Not Mooted

Quest continues to falsely claim that TFS is available throughout its PSC network. Opp. at 4. For the reasons set forth in Plaintiff's opening brief, including Mark Derry's investigation of 24 Quest locations, this assertion is simply untrue. Opening Brief at 13-15. Even if TFS had been successfully rolled out across the PSC network (it has not), ECSS continues to be inaccessible because it continues to deny blind individuals access to a wide array of services which are readily available to sighted customers. *See supra* at 4, listing additional services of ECSS.

All of these undisputed record facts are important to the question of whether Plaintiff Vargas (and other members of the Class) have Article III standing on their injunctive relief claims, which requires a concrete and particularized injury. Plaintiff Vargas returned to a Quest PSC in recent months and attempted to use TFS. Ex. 4, ¶ 2 [Vargas dec.]. At the time of his recent visit, Mr. Vargas was flatly told by the Quest phlebotomist that the service which would allow to him to wait outside safely during COVID until his turn had come was not available to blind customers. (*Id.* at ¶ 2.) This experience demonstrates the concrete and particularized injury that all blind customers will face in the future at Quest, namely a lesser, unequal experience with fewer services than those offered to sighted customers. *See Robles v. Dominos*, 913 F.3d 989 (9th Cir. 2019) (finding an injury where the Plaintiff could not access the Website, which was a way to access its service); *Baughman v. Walk Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012) (finding an injury where Plaintiff did not get a

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

likened experience the "Disney experience"); *Fortyune v. Am. Multi–Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004) (finding an injury where the Plaintiff did not get to have a likened experience as her there was no seat next to the disability seat—holding that watching a movie with someone is part of the experience); *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153 (9th Cir. 2011) (finding that being able to access the materials independently was a vital part of the service); *Kalani v. Starbucks Coffee Co.*, 698 Fed. App'x 883 (9th Cir. 2017) (finding that inaccessible seating deprived its wheelchair-bound customers of the opportunity to participate in the "full and rewarding coffeehouse experience").[8]

## B.   Plaintiff And the Putative Class Meet All Rule 23(a) Standards

### 1.   Numerosity Is Established

Plaintiff presents overwhelming evidence on numerosity which Quest cannot refute. Rather, their argument on this element begins with an outright contradiction: Quest claims hearsay and non-hearsay over its recorded blind customer complaints **in the same filing**. *Compare* Dkt. 133 P.6 footnote 1, where Quest claims hearsay over the complaints *with* Ex. 31, QA 1559-1561 ¶ 4 (Dec. of Jody Reilly) ("The underlying database [of the complaints] is regularly maintained by Quest in the ordinary course of its business."). To make matters worse, Quest previously admitted that these complaints are business records—and thus admissible—in Defendant's response to

_____

[8] Quest's contention that "many of the putative class members will be unable to establish standing as required by *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 (2021) is further inapposite in light of TFS's failure to moot Plaintiff's claims. Opp. at 9:9-11. Plaintiffs in *TransUnion LLC* "did not demonstrate that the risk of future harm materialized." 141 S. Ct. at 2211. Here, because TFS does not moot Plaintiff's claims, and based on the recent personal experience of Plaintiff Vargas, the putative class members still face imminent future injury, every time they visit a PSC because they are wholly denied access to services offered to sighted customers. Accordingly, *TransUnion* is easily distinguishable.

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Plaintiff Julian Vargas' First Set of Requests for Admission. Ex. 28, at PA0750-PA0781. Thus, it concedes the admissibility of the ██ blind customer complaints who could not access the kiosk. Dkt. 95-1, at 14:4-6. Plaintiff himself complained to Quest about the kiosk's inaccessibility (Ex. 10, at PA0381:16-382:4, PA0382:13-23 [Vargas dep.]), and 29 legally blind ACB members reported similar inability to access the ECSS kiosk. (Ex. 24, at PA0709-715 [ACB discovery responses].) This evidence of at least ██ class members easily satisfy the Ninth Circuit threshold for numerosity. *McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Tr.*, 268 F.R.D. 670, 674 (W.D. Wash. 2010).[9]

In addition, Plaintiff offers the Declaration of Jed Greene, CPA (Ex. 33, at PA0901-993) on the question of numerosity. As this Court has noted, "courts routinely rely on census data and statistics to determine numerosity." *Shields*, 279 F.R.D. at 544; *see also Target*, 582 F.Supp.2d at 1199; *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 608 n. 8 (N.D.Cal.2004). Mr. Greene opines that a minimum of 31,863 blind customers visited Quest's PSCs during the Class Period. Ex. 33, at PA0901-PA0993 [Greene dec.].

In criticizing Mr. Greene's report, Quest resorts to incorrectly assuming that individualized proof is required to prove each violation of Section 51. *See* Opp. at 11:24-12:10. This is legally incorrect. *Target*, 582 F.Supp.2d at 1199. Mr. Greene's assumptions are based on data provided by Quest itself regarding the use of ECSS in California and nationwide—all of whom visited a PSC with an admittedly-inaccessible, identical kiosk—and cannot now be questioned by Quest. Ex. 28, at PA0750-PA0781.[10] Thus, numerosity is easily satisfied.

---

[9] In any event, the law is clear that "[a] motion for class certification . . . need not be supported by admissible evidence." *A.A. v. Cty. of Riverside*, No. EDCV142556VAPSPX, 2017 WL 5624296, at *4 (C.D. Cal. Nov. 7, 2017).

[10] Finally, as to the national injunctive class, "where 'only injunctive or declaratory

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

### 2.    Commonality Is Established

"In the Ninth Circuit, the commonality requirement is 'construed permissively' and "the requirements for finding commonality are minimal." *Morgan v. United States Soccer Fed'n, Inc.*, No. 2:19-cv-01717-RGK-AGR, 2019 WL 7166978, at *7 (C.D. Cal. Nov. 8, 2019) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). Defendants' arguments against commonality all flow from its threshold— and incorrect—assertion that "effective communication" cases are inapt for class treatment (Opp. at 13) or that individualized proof is require. These arguments, which are addressed in Section IV below, are not persuasive. Simply put, commonality abounds here. In fact, it is hard to conceive of a case better suited for class treatment than this Action because it involves one admittedly inaccessible kiosk that was uniformly deployed to 2,152 Quest locations nationwide. Ex. 20, at PA0640:18-641:1 [Walsh dep.]; Ex. 5, at PA0027:8-13, PA0028:1-8 [Yarrison dep.]; Ex. 19, at PA0623:19-25 [Aronson dep.]. Defendants do not even attempt to refute the record fact that the kiosk present at its PSCs during the Class Period was identically inaccessible. Ex. 5, at PA0029:17-24 [Yarrison dep.].[11] Nor do Defendants even attempt to address the myriad common questions which are presented by this litigation. *See* Opening Brief at 21) (setting forth numerous common questions). Nor do they address the fact that the many common questions are susceptible to a common answer (*i.e.,* a fully accessible kiosk), or that this answer poses no undue burden to Quest. *See* Ex. 32, ¶¶ 45-51 [Montgomery dec.]; *Dukes*, 564 U.S. 338 at 350.[12]

---

relief is sought, some courts have held that the numerosity requirement is relaxed so that even speculative or conclusory allegations regarding numerosity are sufficient to permit class certification.'" *Sueoka v. U.S.*, 101 Fed. App'x 649, 653 (9th Cir. 2004) (citing 5 Moore's Federal Practice § 23.22[3][b] (3d ed.2003).

[11] For this same reason, Quest's arguments against certification of the (b)(2) class fail. Opp. at 18-19.

[12] Defendants' repeated refrain (*see, e.g.,* Opp. at 20:8-24) that Plaintiff is attempting

18

Instead, Defendants attempt to shift the focus to the characteristics of the plaintiff class, arguing that minor differences in their levels of impairment should somehow defeat commonality. Opp. at 13. But this argument has been raised and rejected repeatedly, and should be rejected again here. *See, e.g., Greater Los Angeles Agency on Deafness, Inc. v. Reel Services Mgmt. LLC*, No. CV 13-7172 PSG (ASx), 2014 WL 12561074 at *9 (C.D. Cal. May 6, 2014); *see also Gray v. Golden Gate Nat'l Rec. Area*, 279 F.R.D. 501, 515 (N.D. Cal. 2011) (collecting cases).").[13] Commonality is easily satisfied.

### 3.    Typicality is Satisfied

As with its commonality argument, Quest's Opposition again argues that there is too much "variation in putative class members' abilities, preferences and experiences to say that Vargas' claims are typical of the class he seeks to represent." Opp. at 16:16-19. However, Vargas' claims are typical of the purported class because all claims arise from the same identically-inaccessible, ubiquitous kiosk and share a common theory of liability. *Morgan v. United States Soccer Fed'n, Inc.*, No. 2:19-cv-

---

to "pick his fix" by suggesting that a fully-accessible and cost-effective kiosk can be deployed to Quest's PSCs misses the point. Plaintiff offers the fact that fully-accessible kiosks can be purchased cost effectively simply to answer the question— first posed in *Dukes*—of whether the common questions presented here are apt to a common answer (they are)—not to assert that this solution is the one and only fix that Quest must implement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

[13] Defendants' argument regarding staffing at its PSCs fares no better. Opp. at 15, fn. 4. Regardless of the precise staffing levels at Quest's PSCs at any given time, the record is clear that the entire rationale behind introducing ECSS was to achieve ███████ ██████████████████████████████████████████████. Ex. 20, at PA0669:25-670:10, PA0668:15-25, PA0676 [Walsh dep. and exhibit]. This lack of any patient interaction by Quest employees was further confirmed—emphatically—by the investigation of Mark Derry, which demonstrated that **a Quest employee was present in the waiting area at only 1 of 24 investigated locations.** Ex. 31, [Derry dec.].

19

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

01717-RGK-AGR, 2019 WL 7166978, at *7 (C.D. Cal. Nov. 8, 2019); *Postpichal v. Cricket Wireless, LLC*, No. C 19-07270 WHA, 2021 WL 3403146, at *9 (N.D. Cal. Aug. 4, 2021) (finding typicality "even if [plaintiff's] situation presents some differences from some other class members" because defendant's "conduct stands in the same relation to [plaintiff] as it does to all other class members."). Here, Mr. Vargas is plainly typical because he experienced ECSS's effective communication failures in the same way as every other class member—after all, Quest implemented the same, identically-inaccessible kiosk across its network. Putting aside minor differences in individual blind patient experiences, blind patients were indisputably still denied (and continue to be denied) access to the services provided by and through the kiosks, thus establishing common injury. *Postpichal*, 2021 WL 3403146, at *8 (N.D. Cal. Aug. 4, 2021).  Typicality is therefore satisfied.

### 4. Mr. Vargas is an Adequate Class Representative

Defendants claim that speculative "conflicts" render Mr. Vargas an inadequate class representative. Opp. at 16:20-18:8. Specifically, Quest claims that because Mr. Vargas seeks minimum statutory damages only for California residents, he is somehow inadequate because he does not seek "actual damages, treble damages and damages for multiple visits." Opp. at 17:16. This same argument has been raised and rejected time and again by courts in this Circuit. *See, e.g., Todd v. Tempur-Sealy Int'l, Inc.*, 2016 WL 5746364, at *5 (N.D. Cal. Sept. 30, 2016)); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 595 (N.D. Cal. 2015) (rejecting argument that class representatives were inadequate merely because they "made the strategic decision to seek certification only under Rule 23(b)(2)" instead of pursuing a Rule 23(b)(3) damages class). *Nevarez v. Forty Niners Football Company, LLC,* 326 F.R.D. 562 (N.D. Cal. 2018), is instructive on this point:

> Defendants contend Plaintiffs betrayed class members' interests by limiting them to statutory damages instead of pursuing a potentially

20

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

larger award of actual damages. This is unpersuasive. Plaintiffs' decision to limit class members (and themselves) to statutory damages relieves them of any obligation to prove actual damages. That allows Plaintiffs and class members to sidestep the difficulties in proving damages that can frequently preclude certification of a Rule 23(b)(3) class.

*Id.* at 582 (internal citations omitted). Thus, "[a] strategic decision to pursue those claims a plaintiff believes to be most viable does not render her inadequate as a class representative." *Id.* (quoting *Todd*). This reasoning is especially potent for the actual damages-for-statutory damages tradeoff that Plaintiff has made in this case: "[C]ourts generally allow the class representative to pursue only statutory damage claims, and to deliberately eschew actual damage claims, without jeopardizing a finding of adequacy even if pursuing actual damage claims might be to the advantage of some class members." William B. Rubenstein, 1 Newberg on Class Actions § 3:59 (5th ed.). Because no actual conflict exists, Mr. Vargas's adequacy is established.[14]

## IV.   FOLLOWING *BRISENO v. CON AGRA*, THE UNRUH ACT §51 DAMAGES CLASS EASILY SATISFIES RULE 23(B)(3)'S PREDOMINANCE AND SUPERIORITY REQUIREMENTS

### A.   The Unruh Act Is Coextensive With the ADA

Plaintiff's Amended Complaint seeks relief under Section 51 of the California Unruh Act. Dkt. 41 at ¶¶ 71-77. The Unruh Civil Rights Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their ... disability, [or] medical condition ... are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). Section 52(a) of

---

[14] Quest offers no argument against the adequacy of proposed class counsel. For the reasons set forth in its opening brief, proposed class counsel are adequate. Dkt. 107-1 at 22:23-23:11.

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

the California Civil Code provides that a violation of the Act can give rise to damages and that each violation of the Act entitles an aggrieved party to $4,000 in minimum statutory damages. Cal. Civ. Code § 52(a).

In 1992, the California legislature amended the Unruh Act to provide that a violation of the right of any individual under the ADA also constituted a violation of the Unruh Act. *Id.* § 51(f); *see also* Dkt. 41, ¶ 76 ("California Civil Code § 51(f) provides that a violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act."). No showing of intentional discrimination is required where, as here, an Unruh Act violation is "premised on an ADA violation." *Lentini v. California Center for the Arts, Escondido*, 370 F3d 837, 847 (9th Cir. 2004). Accordingly, "in the disability context, California's Unruh Civil Rights Act operates virtually identically to the ADA." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).[15]

Specifically as to physical, construction-related accessibility violations only, the California Legislature enacted Section 55.56 of the California Civil Code in 2008. *See Grutman v. Regents of Univ. of Cal.,* 807 F. Supp.2d 861, 865 (N.D.Cal.2011). Section 55.56 provides that statutory damages for construction-related violations are available under two circumstances: (1) if a plaintiff encountered the violation on a particular occasion and experienced "difficulty, discomfort or embarrassment" or (2) if a plaintiff was deterred from accessing a place of public accommodation on a particular occasion. Cal. Civ. Code § 55.56(b). Importantly, because this Action involves *effective communication*[16] and not physical construction barriers, the

---

[15] The California Supreme Court has held that the Unruh Act must be interpreted "in the broadest sense reasonably possible" in order to "banish [discriminatory] practices from California's community life." *Isbister v. Boys' Club of Santa Cruz, Inc.,* 40 Cal.3d 72, 76, 219 Cal.Rptr. 150, 707 P.2d 212 (1985).

[16] This fact is important to Plaintiff's arguments regarding the Rule 23(b)(3)

22

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Amended Complaint does not reference or invoke Section 55.56, a fact which Defendants readily concede. *See* Dkt. 41 ¶¶71-76; Opp. at 1, 13-14 (confirming that this Action is concerned with "effective communication" not construction-related violations).[17] It is against this statutory and factual backdrop that Defendants' arguments against Rule 23(b)(3) predominance must be considered.

**B.      Common Issues Predominate Here**

As this Court noted recently, "[t]he predominance inquiry requires the Court to undertake a two-step analysis: first, determine whether common questions exist, and, second, determine whether those issues predominate in a given claim. *Sevilla v. Aaron's, Inc.,* No. 2019 WL 2879874 (C.D. Cal. Mar. 19, 2019) (Gee, J.) (internal citations omitted). First, as explained in detail above, common questions abound here. *See* Section III.B.2, *supra*. Second, Quest's claims that this action presents a "multitude of individualized questions" is based upon an improper application of Section 55.56's *construction-related access barriers* to this "effective communication" cause of action. Opp. at 20:8. Quest does not even attempt to argue— nor could it—that there is any even potentially individualized inquiry required under Section 51 of the Act—the provision under which Plaintiff seeks relief. *See, e.g.*, *Jones v. Wells Fargo Bank, N.A.*, 2015 WL 661757 at *15 (Cal. App. Feb. 17, 2015)

---

predominance factor at Sections V.A–B, *infra*.

[17] For this same reason, Quest's arguments that individualized inquiries at any trial of the various absent class members mean that a class action is not a superior method of adjudication of this dispute (*see* Opp. at 24-25)—which is premised on the incorrect assumption that Section 55.56's pleading standard applies to this Action—fall under their own weight. Individualized proof is not required to establish minimum statutory damages under Section 51. *Bor Pha v. Yia Yang*, No. 2:12-cv-01580-TLN-DAD, 2014 WL 654559 at *5 (E.D. Cal. Feb. 19, 2014) ("While the amount by which Dealer Defendants overcharged interest may vary slightly from one consumer to the next, this distinction does not preclude certification of the class.")

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION

(affirming certification of Unruh Act Section 51 class); *Berlowitz v. Nob Hill Masonic Mgmt.*, No. C-96-01241 MHP, 1996 WL 724776 at *5 (N.D. Cal. Dec. 6, 1996) (same); *Bor Pha v. Yia Yang*, No. 2:12-cv-01580-TLN-DAD, 2014 WL 654559 at *6 (E.D. Cal. Feb. 19, 2014) (same). Third, a review of recent Ninth Circuit authority clarifies that, even if Section 55.56 does somehow apply to this communication barrier action (it should not), predominance is still easily satisfied. Facts matter and here the factual record is undisputed that Quest maintains records of every single patient visit to a California PSC during the Class Period, including each patient's email address, that would render any notice and claims process easily manageable. Ex. 20, at PA0664:13-665:7 [Walsh dep.]. Fourth, Quest's Rule 30(b)(6) witness on TFS (Ex. 38, at PA1096:21-PA1097:13 [Carr dep.]), Taylor Carr,[18] bound Quest with his testimony at deposition that the Company maintains (a) a record of every customer who checked in using TFS in California during the Class Period and (b) information regarding those patients' visual impairment. Ex. 38, at PA1116:7-16. [Carr dep.].[19]

---

[18] Mr. Yarrison acknowledges that he is not the witness designated to testify to TFS. Ex. 37, at PA1085:22-1086:1. [Yarrison dep.]. In fact, Counsel for Quest objected to any questioning of Mr. Yarrison at his deposition over TFS as being beyond the scope. *Id.*, at PA1094:8-14. Yet Mr. Yarrison now submits a sham declaration which advances a position that is in direct opposition to Quest's Rule 30(b)(6) witness on this topic. Ex. 38, at PA1096:21-PA1097:13; PA1116:7-16. [Carr dep.]. He must not be permitted to do so. *Galvan v. Walt Disney Parks and Resorts, U.S., Inc.*, SACV1801721ABFFMX, 2019 WL 8017810, at *1 (C.D. Cal. Nov. 27, 2019); *see also Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012); *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009).

[19] Q. And am I correct in understanding that with the three-finger swipe it actually tracks whether somebody has checked in as an either low vision -- a visually impaired or blind individual -- that's part of how it's tracked with the three-finger swipe internally? A. The data indicates visually impaired. Q. And that's data that -- that Quest currently keeps in its possession, correct?  A. Yes. *See,* Ex. 38, at PA1116:7-16. [Carr dep.].

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

24

Mr. Carr further testified that he would be able to access that data should he need to. *Id.*, at PA1116:24-1117:2. Fifth, Quest memorialized its three-finger swipe data in its Supplemental Responses and Objections to Plaintiff's Amended Rule 30(b)(6) Deposition Notice on March 8, 2021. Ex. 30, at PA833, PA846. This data provides yet another reliable method to identify and contact potential class members. *Id.* Finally, to the extent the Court harbors any even hypothetical concern regarding manageability of a claims process or identification of class members, Plaintiff offers the Declaration of Richard Simmons, President of Analytics Consulting LLC, which states emphatically that no *bona fide* manageability or plaintiff identification concerns are presented by this case. *See* Ex. 34, at ¶¶ 14-25 [Simmons dec]. The Simmons Declaration stands completely unrebutted in the factual record.

These record facts are particularly helpful to this Court's predominance analysis in light of the Ninth Circuit's 2017 decisions in *Briseno v. ConAgra* and *Melgar v. CSK Auto, Inc.,* as well as its 2020 decision in *Walker v. Life Ins. Co. of the Southwest,* 953 F.3d 624, 632 (9th Cir. 2020)—all conspicuously absent from Defendants' Opposition—where the Circuit Court first held (and subsequently clarified and then reaffirmed) that a defendant is "**foreclose[ed]" from even arguing** that predominance can be defeated based solely on plaintiff identification concerns. *Id.* (emphasis added). It is therefore no surprise that courts in this Circuit since *Briseno*, *Melgar,* and *Walker* have certified even "self-identifying" classes under Rule 23(b)(3). *See, e.g.*, *In re Korean Ramen Antitrust Litig.*, 2017 WL 235052, at *21 (N.D. Cal. Jan. 19, 2017) ("Post-judgment claims forms and other tools can be used to allow defendants to test an absent class member's purported entitlement to damages and to appropriately apportion damages between class members."); *Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at *7 (N.D. Cal. July 15, 2016) ("Though it is unlikely that this class of consumers will be able to produce evidence of purchase such as receipts or store/club card data to verify a purchase, this is no impediment to

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

25

their offering evidence of purchase by affidavit on a claim form."). In contrast, Plaintiff is unaware of *any* Ninth Circuit authority since *Briseno*—and Defendants cite no such authority—which supports denial of a Rule 23(b)(3) class on plaintiff identification grounds alone.

*Nevarez*, an ADA and Unruh Act action that is both procedurally and factually analogous to the instant dispute, is particularly helpful to the Court's predominance analysis. 326 F.R.D. 562. *Nevarez* concerned the accessibility of Levi's Stadium for wheelchair users and was therefore appropriately subject to Unruh's construction-related accessibility provisions. 326 F.R.D. at 592. There, as here, the defendant maintained records of who used the accessible seating during the class period, rendering class notice and claims administration easily manageable. *Nevarez*, 326 F.R.D. at 576. The estimated size of the respective classes in *Nevarez* (3,400) and here (6,152) also compare favorably. *Id.* Faced with arguments identical to those Quest advances here, Judge Lucy Koh followed *Briseno, Melgar,* and *Walker* in holding that even where Section 55.56's more stringent pleading requirements apply, any manageability or plaintiff identification concern must not prevent certification of an Unruh Act class because it could easily be addressed later at the claims stage:

> The Court sees no reason not to adopt a similar approach in the instant case, especially given the "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno*, 844 F.3d at 1128. Class members can certify whether they were present at the Stadium and whether they encountered an actionable Unruh Act violation. *See* Cal. Civ. Code § 55.56 (noting statutory damages are available only if a plaintiff personally encountered a violation of construct related-accessibility standards or was deterred on a specific occasion). This approach is also significantly more viable here than in many of the other cases employing it, because Defendants already have records of accessible seat purchasers that include names and contact information. … **Thus, self-identification will simply complement the records that the Stadium Defendants already possess.**

*Id.* at 577 (emphasis added). Accordingly, even if this Court finds that Unruh's construction-related access barriers pleading requirements somehow apply here (they do not), no additional showing is required to establish the self-evident proposition that legally blind Quest customers who were denied use of an identically-inaccessible, ubiquitous kiosk service experienced "difficulty." Cal. Civ. Code § 55.56. *Nevarez* merely applies the Circuit Court's sound logic that requiring any such showing at the class certification stage is more than Rule 23 requires. *See Walker,* 953 F.3d at 633 (holding that "a freestanding administrability requirement would conflict with the plain language of Rule 23, because the rule sets forth exhaustive factors a district court must consider in deciding whether to certify a class—none of them a freestanding administrability requirement.").[20] Plaintiff respectfully submits that *Briseno, Melgar,* and *Walker* compel the same outcome here, an outcome fully consistent with both the well-settled proposition—reaffirmed in *Briseno*—that "courts should not refuse to certify a class merely on the basis of manageability concerns" (*Briseno,* 844 F.3d at 1128), and with the Supreme Court's admonition that at the class certification stage "[p]laintiffs are not required to show that each element of the underlying cause of action is susceptible to classwide proof." *Amgen*, 133 S.Ct. at 1196.[21]

------------------------

[20] This is not to suggest that after *Briseno*, every putative class action case will meet its predominance burden at the class certification stage, and Plaintiff acknowledges the predominance analysis is more expansive than the question of plaintiff identification alone. Yet Defendants here raise only manageability and individualized inquiry concerns. Opp. at 19-25.

[21] While Plaintiff addresses these important questions under "predominance" here, we note the Circuit Court's guidance that "[i]n light of the significant degree of variation in federal courts' approaches to member identification, we find wisdom in the Sixth Circuit's conclusion that a district court's class-certification analysis would have been 'equally sufficient, 'regardless of whether th[e] [member-identification] concern [was] properly articulated as part of ascertainability, Rule 23(b)(3) predominance, or Rule 23(b)(3) superiority.'" *Walker,* 953 F.3d at 632.

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Notably, **all** of the authority Quest cites on predominance pre-dates *Briseno* and therefore offers little to this Court's analysis. *Reycraft v. Lee,* 177 Cal. App. 4th 1211 (2009); *Urhausen v. Longs Drug Stores, California, Inc.*, 155 Cal. App. 4th 254 (2007); *Antoninetti v. Chipotle Mexican Grill, Inc.*, 2012 WL 3762440 (S.D. Cal. Aug. 28, 2012); *Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000); *Mundy v. Pro-Thro Enters.*, 192 Cal. App. 4th Supp. 1 (2011); *Vondersaar v. Starbucks Corp.*, 2015 WL 629437, at *4 (C.D. Cal. Feb. 12, 2015). In addition, **all** of Quest's predominance authority involves *construction-related* access barriers—not the communication barriers at issue here—and therefore was subject to Section 55.56's pleading standard. *Id.* Moreover, though the Opposition never acknowledges it, *Reycraft*, *Urhausen,* and *Mundy* all are stand-alone Unruh Act cases (*i.e.*, no ADA predicate cause of action) which are subject to an "intentional discrimination" pleading standard, further diminishing their import here.

The remainder of Quest's authority is factually and procedurally distinguishable and/or supports Plaintiff. In *Antoninetti v. Chipotle Mexican Grill, Inc.*, 2012 WL 3762440 (S.D. Cal. Aug. 28, 2012), an ADA and Unruh case concerning impermissibly high food counters, the class certification decision was issued *after* the defendant's liability was adjudicated—thereby dispensing with all common questions. *Id.* at *2. The same is true of *Moeller v. Taco Bell Corp.,* 816 F.Supp.2d 831, 841 (N.D. Cal. 2011), which is also factually distinguishable because—importantly—there the defendant did not maintain records of class member visits or email addresses as Quest does here. *Id.* Finally, in *Vondersaar v. Starbucks Corp.,* No. CV 12-05027 DDP AJWX, 2015 WL 629437 (C.D. Cal. Feb. 12, 2015), the court declined to certify the class based in part on a finding that the *construction-related* barrier at issue—impermissibly high service counters—was not uniform across more than 200 California Starbucks locations and had, in any event, been fully remediated at the time of the decision. *Id.* at 3. Because there was no evidence of

28

*uniformity* or *ubiquity* in the various counter heights across the network prior to remediation, the court found that individual issues predominated. *Id.* at *3.

The *Vondersaar* Court itself, however, rejected the very arugment Quest advances here, stating "[t]his is not to suggest, as Defendant advocates, that Unruh Act claims are inherently incapable of class treatment. **An alleged barrier's ubiquity, severity, and uniformity of impact will, of course, vary from case to case.**" *Id.* at *4, fn. 4 (emphasis added). The instant case presents exactly that claim— it involves an identically-inaccessible kiosk which has been uniformly deployed to every one of Quest's 419 California locations. In this way, it is factually similar to both *Nevarez* and *Castaneda v. Burger King Corp.*, 264 F.R.D. 557 (N.D. Cal. 2009), where the district court certified a class of wheelchair users as to ten Burger King locations because class members "face[d] identical facilities and identical access barriers" and that "[t]heir common interest in assuring that all the features … are in compliance will predominate over any individual differences among them." *Id.* at 572. *Nevarez* and *Castaneda's* sound reasoning applies with equal force here. The instant case is therefore more akin to scores of false advertising or product liability class action cases, which are based upon a common, ubiquitous advertisement, and which are routinely certified in this District under Rule 23(b)(3). *See, e.g., Elkies v. Johnson and Johnson Servs., Inc.*, No. CV 17-7320-GW(JEMx), 2018 WL 11223465 (C.D. Cal. Oct. 18, 2018) (false advertising case); *Walker v. Life Ins. Co. of Southwest*, No. CV 10-09198-JVS (RNBx), 2018 WL 3816716 (C.D. Cal. July 31, 2018) (unlawful business practices case concerning marketing of life insurance policies); *Mier v. CVS Pharmacy, Inc.*, No. SA CV 20-1979-DOC-(ADSx), 2021 WL 3468951 (C.D. Cal. April 29, 2021) (false advertising case). Predominance is satisfied.

## C.   Superiority Is Easily Established

Quest does not dispute—because it cannot dispute—that there is no other pending suit regarding the accessibility of ECSS. Nor can it seriously dispute that

29

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Plaintiff will establish both liability and minimum statutory damages through common proof. Rather, Quest now claims that the considerable increase in Title III and Unruh Act *website* accessibility filings in California's state and federal courts in recent years proves that class certification in this *kiosk* accessibility case is somehow inappropriate. This argument is not only histrionic but illogical.

First—to state the obvious—the instant dispute is not a website accessibility case. Nor is Plaintiff[22] aware of any great number—much less a dramatic increase—of kiosk accessibility litigation in California's federal or state court system. Second, Quest's proffered prescription for what it views as excessive *website* accessibility litigation is…more *kiosk* accessibility litigation. Plaintiff fails to see what efficiency could possibly result from Quest's proposed "remedy" even if there was a glut of kiosk accessibility litigation—which there is not. Clearly, efficiently adjudicating every legally blind Quest customer's claim in *one* litigation is manifestly more efficient from a judicial economy standpoint. *Aichele v. City of Los Angeles*, 314 F.R.D. 478, 495 (C.D. Cal. 2013) ("[T]here is clear justification for handling the dispute on a representative rather than an individual basis if common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.") (internal citations and quotations omitted).

## V.   CONCLUSION

For these reasons, Plaintiff's Motion should be granted in its entirety.

Dated: October 15, 2021                    Respectfully submitted,

By:   */s/ Jonathan D. Miller*

---

[22] Defendants do not allege—because they cannot allege—Plaintiff or his counsel are responsible for the influx of Unruh Act website accessibility cases. Indeed, by Quest's own admission (Opp. at 24-25), rejecting class treatment of this meritorious nationwide kiosk accessibility class action here will only increase litigation.

30

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101

Benjamin J. Sweet
(Admitted *Pro Hac Vice*)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

Matthew K. Handley
(Admitted *Pro Hac Vice*)
mhandley@hfajustice.com
HANDLEY FARAH &
ANDERSON PLLC
777 6th Street NW
Washington, DC 20001
Telephone: (202) 559-2411

Attorneys for Plaintiff JULIAN VARGAS,
AMERICAN COUNCIL OF THE BLIND,
AND THE PROPOSED CLASS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

31

PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION