Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345

Benjamin J. Sweet
(*Admitted Pro Hac Vice*)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

Attorneys for Plaintiffs Julian Vargas,
American Council of the Blind, and the Proposed Class

*Additional counsel for Plaintiff listed on signature page*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

JULIAN VARGAS and AMERICAN
COUNCIL OF THE BLIND, individually
on behalf of themselves and all others
similarly situated,

Plaintiffs,

v.

QUEST DIAGNOSTICS CLINICAL
LABORATORIES, INC., QUEST
DIAGNOSTICS HOLDINGS, INC.,
QUEST DIAGNOSTICS
INCORPORATED; and DOES 1-10,
inclusive,

Defendants.

**REDACTED**

Case No.: 2:19-cv-08108-DMG

**PLAINTIFF'S OBJECTIONS TO DEFENDANT'S EVIDENCE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

*{Filed Concurrently With Reply to Opposition to Motion for Class Certification, Declaration of Benjamin J. Sweet and Rebuttal Appendix of Exhibits}*

**Hearing Date:     October 29, 2021**
**Time:                    10:00 a.m.**
**Courtroom:          8C**

Complaint Filed: September 18, 2019
Discovery Cutoff: August 27, 2021
Pretrial Conf: December 7, 2021
Trial Date: January 11, 2022
District Judge: Hon. Dolly M. Gee
Magistrate: Hon. Michael R. Wilner

1

Pursuant to Federal Rules of Civil Procedure Rule 56 *et seq.* and Local Rule 56 *et seq.*, Plaintiffs Julian Vargas and American Council of the Blind ("Plaintiffs") object to the evidence and declarations of Taylor Carr, Christopher Grant, Jody Reilly, and Marc Yarrison submitted by Defendants Quest Diagnostics Clinical Laboratories, Inc., Quest Diagnostics Holdings, Inc., and Quest Diagnostics Incorporated ("Quest" or "Defendants") in opposition to Plaintiff's Motion for Class Certification, in large part on the grounds they are sham declarations. Plaintiff further objects to the declaration of Joseph Krock, PhD as it is a declaration from an impermissible expert, or in the alternative, a rebuttal witness. Mr. Krock has not been previously disclosed by Defendants.

A party cannot rely on a declaration contradicting their own deposition testimony. *Galvan v. Walt Disney Parks and Resorts, U.S., Inc*., SACV1801721ABFFMX, 2019 WL 8017810, at *1 (C.D. Cal. Nov. 27, 2019); *see also Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012); *Van Asdale v. Int'l Game Tech*., 577 F.3d 989, 998 (9th Cir. 2009)).

The Grant, Carr, Yarrison, and Reilly declarations submitted in support of Defendants' Motion for Summary Judgment (and incorporated here for support of Defendants' Opposition to Plaintiff's Motion For Class Certification) and Yarrison's separate declaration in support of Defendants' Opposition to Plaintiff's Motion For Class Certification impermissibly contradict and are inherently inconsistent with their sworn deposition testimony. Additionally, testimonial evidence must be based on personal knowledge of the witness offering the evidence. Fed. R. Evid. 602. Hearsay evidence is inadmissible unless it has been defined as non-hearsay or the proponent establishes eligibility for one or more exceptions under the Rules.  Fed. R. Evid. 801-804. The Grant, Carr, Reilly, and Yarrison declarations fail to meet one or more of these criteria as specified below:

## **OBJECTIONS TO THE DECLARATION OF TAYLOR CARR**

Mr. Carr testified as the Defendants' Rule 30(b)(6) person most

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFF'S OBJECTIONS TO EVIDENCE

knowledgeable regarding the three-finger swipe. Ex. 38 at PA1096:21-PA1097:13.
[Carr dep.] He was deposed on April 21 and July 30, 2021.

| | | EVIDENCE OBJECTED TO: | GROUNDS FOR OBJECTION: |
|---|---|---|---|
| 1. | | Declaration of Taylor Carr ("Carr Decl."), [Ex. 1], QA 6-9, ¶ 3.

In late 2019 and early 2020,1 helped oversee an extensive, months-long exploration at Quest of methods it could use to make its check-in processes at PSCs independently accessible to the blind, even in the absence of assistance by Quest phlebotomists who staff the PSCs. These methods were intended to supplement the then-existing policies, standards, procedures, and training under which Quest phlebotomists and staff at the PSCs provide assistance and accommodations to PSC patients with disabilities to meet their needs, including assistance with using the Kiosks to check in to the PSCs. | Sham Declaration.  Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).

Mr. Carr's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his sworn deposition testimony as follows:

Mr. Carr did not work on the e-Check-in project in 2019 and became re-involved in the e-check-in project when COVID-19 rose to prominence. Ex. 38 at PA1098:11-PA1099:7 [Carr dep.]

Mr. Carr did not know whose idea it was to implement the three-finger swipe and that he did not come up with the three-finger swipe as an option. Ex. 38 at PA1100:4-17 [Carr dep.]

Mr. Carr did not know if, prior to the decision to implement the three-finger swipe, Quest ever went back and surveyed visually impaired Quest patients who had difficulty accessing the e-check-in service to see what their experiences were like. Ex. 38 at PA1104:15-22 [Carr dep.]

Mr. Carr wasn't involved in the next steps in implementing the three-finger swipe after he obtained feedback from the Las Vegas 2020 focus group and |

| | | | |
|---|---|---|---|
| | | | that he didn't have any participation in the three-finger swipe after the focus group. Ex. 38 at PA1105:9-19 [Carr dep.]<br><br>Mr. Carr did not know if he assisted in any manner in coming up with the audio messaging that would be relayed to blind patients using the three-finger swipe. Ex. 38 at PA1101:1-8 [Carr dep.] |
| 2. | Carr Decl., [Ex. 1], QA 6-9, ¶ 4.<br><br>Among other things. Quest solicited feedback from three different groups (including a focus group) of blind individuals or individuals who worked with accommodating the blind to understand what these blind consumers wanted when interacting with electronic technology. Attached as Exhibit 6 to the Appendix accompanying this Declaration are true and correct copies of notes taken at, or reflecting our interaction with these, three different groups of blind consumers or their advocates. Quest used this feedback in developing the Three Finger Swipe enhancement. | | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Mr. Carr's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his sworn deposition testimony as follows:<br><br>Mr. Carr was instructed not to answer "what specifically were the takeaways that you had from this [Las Vegas 2020] focus group" on grounds of privilege. Ex. 38 at PA1102:13-16 [Carr dep.]<br><br>Mr. Carr was instructed not to answer whether Quest gave "any consideration on whether it could implement speech output at the e-check-in kiosk that would allow a blind user to independently navigate through the kiosk workflow and check in themselves," on grounds of privilege. Ex. 38 at PA1111:3-18. [Carr dep.]<br><br>Mr. Carr was instructed multiple |

NYE, STIRLING, HALE & MILLER<br>33 WEST MISSION STREET, SUITE 201<br>SANTA BARBARA, CALIFORNIA 93101

PLAINTIFF'S OBJECTIONS TO EVIDENCE

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | | times not to answer questions whether Quest considered anything "as part of the three-finger swipe process" other than in connection with the Las Vegas 2020 focus group. Ex. 38 at PA1112:8-PA1114:24. [Carr dep.]

Once Quest made the decision to implement the three-finger swipe, Mr. Carr was not involved in nor was aware of any further effort to obtain feedback from visually impaired individuals as to whether it was an effective means of checking in. Ex. 38 at PA1103-A:9-16. [Carr dep.]

Mr. Carr did not know if, in settling on the three-finger swipe options, Quest took into consideration the complaints of Plaintiffs in this litigation. Ex. 38 at PA1115:1-7. [Carr dep.]

Mr. Carr did not know whether Quest considered any information gathered from "Wright State" when implementing three-finger swipe. Ex. 38 at PA1118:5-13. [Carr dep.] (Wright State was one of the focus groups from whom Quest purportedly obtained feedback).

Mr. Carr was instructed not to answer when asked whether Quest considered the feedback of the focus group as it related to screen-reader technology and voiceover capabilities. Ex. 38 at PA1122:2-1124:20. [Carr dep.]

Mr. Carr did not recall tactile strips being implemented on the floors of |

| | | | their PSCs after receiving feedback from the focus group. Ex. 38 at PA1119:12-PA1121:3. [Carr dep.] |
|---|---|---|---|
| 3. | Carr Decl., [Ex. 1], QA 6-9, ¶ 5.<br><br>For example, the Three Finger Swipe enhancement utilized finger swiping "gestures" that we had learned from these meetings were familiar to the blind from their use of iPhones and other smartphones and similar touchscreen technology. | | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Mr. Carr's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his sworn deposition testimony as follows:<br><br>When asked what he learned from the focus group participants, Mr. Carr testified "there was four key elements, and preparation was everything for the visually impaired. Structure is key, use audio, and have employees that are trained to be highly helpful and sensitive to ADA needs." Ex. 38 at PA1103:17-23. [Carr dep.]<br><br>Mr. Carr then testified that there was no other feedback he learned from the focus group in 2020 other than already testified to. Ex. 38 at PA1103-A:9-16. [Carr dep.]. Mr. Carr said nothing about the familiarity of finger-swiping gestures despite being directly asked about what was learned from the focus group.<br><br>Mr. Carr did not know whether Quest considered any information gathered from "Wright State" when implementing three-finger swipe. Ex. 38 at PA1118:5-13. [Carr dep.] (Wright State was one of the focus groups from whom Quest purportedly obtained feedback). |

PLAINTIFF'S OBJECTIONS TO EVIDENCE

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | |
|---|---|---|---|
| | | | Mr. Carr was instructed not to answer when asked whether Quest considered the feedback of the focus group as it related to screen-reader technology and voiceover capabilities. Ex. 38 at PA1122:2-1124:20. [Carr dep.]<br><br>Mr. Carr did not recall tactile strips being implemented on the floors of their PSCs after receiving feedback from the focus group. Ex. 38 at PA1119:12-PA1121:3. [Carr dep.] |
| | 4. | Carr Decl., [Ex. 1], QA 6-9, ¶ 6.<br><br>Based on feedback from these different groups of blind consumers and their advocates, the Three Finger Swipe enhancement was designed to be independently accessible to blind patients at PSCs, with or without the assistance of Quest phlebotomists. In summary, the Three Finger Swipe enhancement consisted of three components: (1) enabling the Kiosks to automatically check in patients who swiped three fingers on the screen of the Kiosk in any direction and, upon administration of the three-finger swipe, providing an audio message to the patient that they had been checked in, assigning them a generic patient ID number, and advising that this number would be called when it was their turn to be seen—and | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Mr. Carr's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his sworn deposition testimony as follows:<br><br>When asked what he learned from the focus group participants, Mr. Carr testified "there was four key elements, and preparation was everything for the visually impaired. Structure is key, use audio, and have employees that are trained to be highly helpful and sensitive to ADA needs." Ex. 38 at PA1103:17-23. [Carr dep.]<br><br>Mr. Carr then testified that there was no other feedback he learned from the focus group in 2020 other than already testified to. Ex. 38 at PA1103-A:9-16. [Carr dep.]. Mr. Carr said nothing about the familiarity of finger-swiping gestures despite being |

PLAINTIFF'S OBJECTIONS TO EVIDENCE

NYE, STIRLING, HALE & MILLER<br>33 WEST MISSION STREET, SUITE 201<br>SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | |
|---|---|
| further providing an electronic notification to Quest phlebotomists at the PSC that an individual with visual impairments had checked in at the PSC: (2) an audio message playing on loop on the Quest TVs in the PSC waiting rooms that instructed patients who are blind or have visual impairments on how to apply the Three Finger Swipe to the Kiosks to check in and informing them that if they need assistance with locating, using, or checking in at the Kiosk, Quest team members are available and happy to assist; and (3) enhanced training of PSC phlebotomists to train them on the Three Finger Swipe methodology and procedure and to reinforce longstanding training on assisting patients with disabilities who need assistance at PSCs, including assisting patients who are blind or visually impaired with the check-in process. | directly asked about what was learned from the focus group.<br><br>Mr. Carr did not know if the audio loop differed from PSC to PSC in terms of its length, or whether the audio loop differed in terms of its length or content, or whether there were locations where audio loop can take as long as 30 minutes before it is repeated. Ex. 38 at PA1106:8-PA1107:5. [Carr dep.]<br><br>Mr. Carr did not know whether, when a customer walks in the waiting room, if the first audio instruction they hear is from the audio loop on the LCD monitor. Ex. 38 at PA1110:1-8. [Carr dep.]<br><br>Mr. Carr did not know whether Quest considered any information gathered from "Wright State" when implementing three-finger swipe. Ex. 38 at PA1118:5-13. [Carr dep.] (Wright State was one of the focus groups from whom Quest purportedly obtained feedback).<br><br>Mr. Carr was instructed not to answer when asked whether Quest considered the feedback of the focus group as it related to screen-reader technology and voiceover capabilities. Ex. 38 at PA1122:2-1124:20. [Carr dep.]<br><br>Mr. Carr did not recall tactile strips being implemented on the floors of their PSCs after receiving feedback from the focus group. Ex. 38 at PA1119:12-PA1121:3. [Carr dep.] |

PLAINTIFF'S OBJECTIONS TO EVIDENCE

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | |
|---|---|---|---|
| 5. | Carr Decl., [Ex. 1], QA 6-9, ¶ 7.<br><br>The Three Finger Swipe capability was installed on all PSC Kiosks as of August 2020. The audio message on the Quest TVs at PSCs was activated in January 2021, and the enhanced training for PSC employees was rolled out and assigned in March 2021. | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Mr. Carr's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his sworn deposition testimony as follows:<br><br>Mr. Carr wasn't involved in the next steps in implementing the three-finger swipe after he obtained feedback from the Las Vegas 2020 focus group and that he didn't have any participation in the three-finger swipe after the focus group. Ex. 38 at PA1105:9-19 [Carr dep.]<br><br>Mr. Carr did not know if he assisted in any manner in coming up with the audio messaging that would be relayed to blind patients using the three-finger swipe. Ex. 38 at PA1101:1-8 [Carr dep.]<br><br>Mr. Carr did not know if the audio loop differed from PSC to PSC in terms of its length, or whether the audio loop differed in terms of its length or content, or whether there were locations where audio loop can take as long as 30 minutes before it is repeated. Ex. 38 at PA1106:8-PA1107:5. [Carr dep.]<br><br>Mr. Carr did not know whether, when a customer walks in the waiting room, if the first audio instruction they hear is from the audio loop on the LCD |

PLAINTIFF'S OBJECTIONS TO EVIDENCE

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

| | | | |
|---|---|---|---|
| | | | monitor. Ex. 38 at PA1110:1-8. [Carr dep.] |

## OBJECTIONS TO THE DECLARATION OF CHRISTOPHER GRANT

Mr. Grant testified only in his individual capacity, and was deposed on April 20, 2021.

| | | EVIDENCE OBJECTED TO: | GROUNDS FOR OBJECTION: |
|---|---|---|---|
| | 6. | Declaration of Christopher Grant ("Grant Decl."), [Ex. 2], QA 10-13, ¶ 3.<br><br>Starting in December 2018, representatives of the American Council of the Blind ("ACB") and Quest engaged in discussions regarding the check-in experience of PSC patients with visual impairments. Attached as Exhibit 7 to the Appendix is the full set of written correspondence engaged in between Quest and ACB (and its legal representatives) regarding these matters. I personally participated in two conversations with ACB representatives in the first half of 2019. While ACB occasionally referred to making the Kiosks at PSCs "independently accessible" to its blind members, at no point during these discussions did ACB demand a specific method or technology to replace or supplement the existing Kiosks. | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Mr. Grant's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>Mr. Grant could not recall any specific conversations about the fact that the kiosk did not have accessible features that would make it independently usable for the blind. Ex. 40 at PA1149:16-24. [Grant dep.] |
| | 7. | Grant Decl., [Ex. 2], QA 10-13, ¶ 4. | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804). |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | |
|---|---|
| In late 2019 and early 2020, in response to the ongoing discussions with ACB and in preparation for making a proposal at the impending mediation between the parties to this action, Quest undertook an extensive, months-long exploration of methods it could use to make its check-in process independently accessible to the blind, even in the absence of assistance by Quest phlebotomists at PSCs. These methods were intended to supplement the existing policies, standards, procedures, and training under which Quest phlebotomists provide assistance and accommodations to PSC patients with disabilities to meet their needs, including assistance with using the Kiosks to check in to the PSCs. | Mr. Grant's declaration submitted in opposition to Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>Mr. Grant could not recall any specific conversations about the fact that the kiosk did not have accessible features that would make it independently usable for the blind. Ex. 40 at PA1149:16-24. [Grant dep.]<br><br>Mr. Grant could not remember if Quest event developed any standard operating procedures for dealing with blind patients, or whether there were any specific instructions that are given to patient service representatives through the PSC network on how to deal with blind patients specifically. Ex. 40 at PA1151:5-17 [Grant dep.]<br><br>Mr. Grant does not know how three-finger swipe works.<br>(Q: Okay, can you explain to me how it works?<br>A: No.<br>Q: You don't know how it works?<br>A: I don't. No, I don't know how it works. Ex. 40 at PA1153:18-25. [Grant dep.]<br><br>About three-finger swipe, Mr. Grant testified, "you're asking me questions about the functionality of the device and I really—I can't give you an answer to it. I really can't. I don't know what all went into it, how does it all work . . . I'm just an engineer. I |

PLAINTIFF'S OBJECTIONS TO EVIDENCE

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | | don't understand that stuff." Ex. 40 at PA1155:22-PA1156:5. [Grant dep.]<br><br>Mr. Grant did not recall from whom he first heard about three-finger swipe or who had authorship of that idea. Ex. 40 at PA1154:6-16. [Grant dep.]<br><br>Mr. Grant could not recall conversations about the three finger swipe because it had been two years since he had those conversations. Ex. 40 at PA1154:6-16. [Grant dep.]<br><br>Mr. Grant did not recall from whom he first heard about three-finger swipe or who had authorship of that idea. Ex. 40 at PA1153:18-25. [Grant dep.] |
| 8. | Grant Decl., [Ex. 2], QA 10-13, ¶ 5.<br><br>Although ACB never identified the specific technology or methodology that it was requesting, Quest did give consideration to and honor ACB's request for an "independently accessible" technology for blind patients to check in at PSCs when Quest developed the Three Finger Swipe enhancement. Quest did not stop with ACB's input; it also sought out the advice from additional groups of blind individuals and their advocates. All these efforts and feedback led to the Three Finger Swipe enhancement that Quest conceived of in advance of the | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Mr. Grant's declaration submitted in support of  Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>Mr. Grant could not recall conversations about the three finger swipe because it had been two years since he had those conversations. Ex. 40 at PA1041:6-16. [Grant dep.].<br><br>Mr. Grant could not remember if Quest event developed any standard operating procedures for dealing with blind patients, or whether there were any specific instructions that are given to patient service representatives |

| | March 2020 mediation in this matter. | through the PSC network on how to deal with blind patients specifically. Ex. 40 at PA1151:5-17 [Grant dep.]<br><br>Mr. Grant does not know how three-finger swipe works.<br>(Q: Okay, can you explain to me how it works?<br>A: No.<br>Q: You don't know how it works?<br>A: I don't. No, I don't know how it works. Ex. 40 at PA1153:18-25. [Grant dep.]<br><br>About three-finger swipe, Mr. Grant testified, "you're asking me questions about the functionality of the device and I really—I can't give you an answer to it. I really can't. I don't know what all went into it, how does it all work . . . I'm just an engineer. I don't understand that stuff." Ex. 40 at PA1155:22-PA1156:5. [Grant dep.]<br><br>Mr. Grant did not recall from whom he first heard about three-finger swipe or who had authorship of that idea. Ex. 40 at PA1154:6-16. [Grant dep.]<br><br>Mr. Grant could not recall conversations about the three finger swipe because it had been two years since he had those conversations. Ex. 40 at PA1154:6-16. [Grant dep.]<br><br>Mr. Grant could not recall if he ever gave any specific direction to his team on accessibility. Ex. 40 at PA1147:20-23 [Grant dep.] |

PLAINTIFF'S OBJECTIONS TO EVIDENCE

| 9. | Grant Decl., [Ex. 2], QA 10-13, ¶ 6. | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804). |
|---|---|---|
| | After the mediation concluded, Quest chose to implement the Three Finger Swipe enhancement, which was designed to be independently accessible to the blind without the assistance of Quest phlebotomists, just as ACB had suggested in its correspondence to Quest. In summary, the Three Finger Swipe enhancement consisted of three components: (1) enabling the Kiosks to automatically check in patients who swiped three fingers on the screen of the Kiosk in any direction and, upon administration of the three-finger swipe, providing an audio message to the patient that they had been checked in, assigning them a generic patient ID number and advising that this number would be called when it was their turn to be seen—and further providing an electronic notification to Quest phlebotomists at the PSC that an individual with visual impairments had checked in at the PSC: (2) an audio message playing on loop on the Quest TVs in the PSC waiting rooms that instructed patients who are blind or have visual impairments on how to apply the Three Finger Swipe to the Kiosks to check in and informing them that they if | Mr. Grant's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>Mr. Grant could not recall conversations about the three finger swipe because it had been two years since he had those conversations. Ex. 40 at PA1154:6-16. [Grant dep.]<br><br>Mr. Grant did not recall from whom he first heard about three-finger swipe or who had authorship of that idea. Ex. 40 at PA1154:6-16. [Grant dep.]<br><br>Mr. Grant could not remember if Quest event developed any standard operating procedures for dealing with blind patients, or whether there were any specific instructions that are given to patient service representatives through the PSC network on how to deal with blind patients specifically. Ex. 40 at PA1151:5-17 [Grant dep.]<br><br>Mr. Grant could not recall if he ever gave any specific direction to his team on accessibility. Ex. 40 at PA1147:20-23 [Grant dep.]<br><br>Mr. Grant does not know how three-finger swipe works.<br>(Q: Okay, can you explain to me how it works?<br>A: No. |

PLAINTIFF'S OBJECTIONS TO EVIDENCE

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | |
|---|---|
| they need assistance with locating, using, or checking in at the Kiosk, team members are available and happy to assist; and (3) enhanced training of PSC phlebotomists to train them on the Three Finger Swipe methodology and procedure and to reinforce longstanding training on assisting patients with disabilities who need assistance at PSCs, including assisting patients who are blind or visually impaired with the check-in process. | Q: You don't know how it works? A: I don't. No, I don't know how it works. Ex. 40 at PA1153:18-25. [Grant dep.]<br><br>Mr. Grant did not know how the three-finger swipe functioned. ("You're asking me questions about the functionality of the device and I really—I can't give you an answer to it. I really can't. I don't know what all went into it, how does it all work . . . I'm just an engineer. I don't understand that stuff.") Ex. 40 at PA1155:22-PA1156:5. [Grant dep.]<br><br>Mr. Grant didn't recall receiving training on the Americans with Disabilities Act ("ADA"). Ex. 40 at PA1144:8-16 [Grant dep.]<br><br>Mr. Grant had never received training on the interactive process under section 1557 of the Affordable Care Act, or Rehabilitation Act. Ex. 40 at PA1151:22-PA1152:17 [Grant dep.]<br><br>Mr. Grant did not know what a qualified reader was and did not know if Quest personnel were ever trained to be qualified readers from 2016 to 2019. Ex. 40 at PA1146:7-15 [Grant dep.]<br><br>Mr. Grant did not recall if he consulted with any accessibility experts prior to developing accessibility training. Ex. 40 at PA1145:12-17 [Grant dep.] |

PLAINTIFF'S OBJECTIONS TO EVIDENCE

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**OBJECTIONS TO THE DECLARATION OF JODY REILLY**

Ms. Reilly testified as the Defendants' Rule 30(b)(6) person most knowledgeable on the following topics:

- ***Topic 12***: [Quest's] maintenance, management, and/or administration policies, practices and/or procedures at [Quest's] PATIENT SERVICE CENTERS. Ex. 39 at 1138-A-1138-Q [Reilly dep.].

- ***Topic 13***: The maintenance, management, and/or administration policies, practices and/or procedures of the E-CHECK-IN KIOSKS. Ex. 39 at 1138-A-1138-Q [Reilly dep.].

- ***Topic 19***: All policies or procedures maintain by [Quest] that address compliance with the ADA at YOUR PATIENT SERVICE CENTERS. Ex. 39 at 1138-A-1138-Q [Reilly dep.].

- ***Topic 20***: All policies or procedures maintain by [Quest] that address compliance with the REHAB ACT at [Quest's] PATIENT SERVICE CENTERS. Ex. 39 at 1138-A-1138-Q [Reilly dep.].

- ***Topic 21***: All policies or procedures maintained by [Quest] to ensure compliance with providing aids and auxiliary services, as defined in 28 C.F.R. 36.303 at PATIENT SERVICE CENTERS from January 1, 2016, to present. Ex. 39 at 1138-A-1138-Q [Reilly dep.].

- ***Topic 22***: All policies or procedures maintained by [Quest] that demonstrate each way in which [Quest] ensured effective communication, as defined in 28 C.F.R. 36.303(c),with visually impaired PERSONS during the E-CHECK-IN KIOSK check-in process, at [Quest's] PATIENT SERVICE CENTERS from January 1, 2016, to present. Ex. 39 at 1138-A-1138-Q [Reilly dep.].

- ***Topic 23***: The training [Quest] provide to [Quest's] employees and independent contractors RELATING to how to communicate effectively with visually impaired PERSONS during the check-in process at [Quest's] PATIENT SERVICE CENTERS. Ex. 39 at 1028A-1028Q.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

16

- **Topic 24**: All complaints [Quest] have received from January 1, 2016, to the present from many individual [Quest] know to be legally blind alleging difficulty accessing the E-CHECK-IN at [Quest's] PATIENT SERVICE CENTERS. Ex. 39 at 1138-A-1138-Q [Reilly dep.].

- **Topic 30**: [Quest's] claim, in your Sixth Affirmative Defense, that Plaintiffs failed to request a reasonable modification of policies, practices or procedures and/or Plaintiffs failed to request an auxiliary aid or service. Ex. 39 at 1138-A-1138-Q [Reilly dep.].

Ms. Reilly was deposed on April 20, 2021.

| | EVIDENCE OBJECTED TO: | GROUNDS FOR OBJECTION: |
|---|---|---|
| 10. | Declaration of Jody Reilly ("Reilly Decl.") [Ex. 3], QA 14-23, ¶ 3.<br><br>A cornerstone of Quest's training, policies, guidelines, standards, and procedures for PSCs has been to teach, train, and require PSC employees and staff to provide assistance to patients, including assistance and accommodations to persons with disabilities to ensure they can access Quest's services. This includes training and requiring PSC employees and staff to scan the waiting room each time they enter to find any individuals (whether patients with disabilities or otherwise) who may need assistance, including assistance with the check-in process. Attached as Exhibit 8 to the accompanying Appendix are true and correct copies of relevant, representative Quest | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Jody Reilly's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts her deposition testimony, as follows:<br><br>██████████████<br>████████████████<br>███████████████<br>█████████████<br>██████████<br><br>Ms. Reilly did not recall whether the annual compliance training covered the ADA. Ex. 39 at PA1128:13-19. [Reilly dep.]<br><br>Ms. Reilly does not know whether all employees have completed the training. Ex. 39 at PA1129:9-PA1130:1, PA1131:12-20. [Reilly dep.] |

PLAINTIFF'S OBJECTIONS TO EVIDENCE

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | |
|---|---|---|---|
| | training materials, standards, standard operating procedures and policies. | | Ms. Reilly was unaware of any written policy from Quest regarding the ADA. Ex. 39 at PA1132:24-PA1133:14. [Reilly dep.]<br><br>Ms. Reilly does not know what sections of the ADA apply to Quest. Ex. 39 at PA1134:3-20. [Reilly dep.]<br><br>Ms. Reilly does not know what primary consideration is and states that there is no training provided by Quest regarding primary consideration and the rehabilitation act. Ex. 39 at PA1134:11-PA1136:19. [Reilly dep.] |
| 11. | Reilly Decl. [Ex. 3], QA 14-23, ¶ 4.<br><br>Prior to the deployment of the Kiosks as a method to check in at the PSCs, Quest used a paper sign-in sheet for patient check in at PSCs. Phlebotomists at the PSCs were trained and required to assist patients in the waiting room with the check-in process, including assisting patients with disabilities. | | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Jody Reilly's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts her deposition testimony, as follows:<br><br>██████████████<br>███████████████<br>██████████████<br>███████████<br><br>Ms. Reilly did not recall whether the annual compliance training covered the ADA. Ex. 39 at PA1128:13-19. [Reilly dep.]<br><br>Ms. Reilly does not know whether all employees have completed the |

PLAINTIFF'S OBJECTIONS TO EVIDENCE

| | | | |
|---|---|---|---|
| | | | training. Ex. 39 at PA1129:9-PA1130:1, PA1131:12-20. [Reilly dep.]<br><br>Ms. Reilly was unaware of any written policy from Quest regarding the ADA. Ex. 39 at PA1132:24-PA1133:14. [Reilly dep.]<br><br>Ms. Reilly does not know what sections of the ADA apply to Quest. Ex. 39 at PA1134:3-20. [Reilly dep.]<br><br>Ms. Reilly does not know what primary consideration is and states that there is no training provided by Quest regarding primary consideration and the rehabilitation act. Ex. 39 at PA1134:11-PA1136:19. [Reilly dep.] |
| 12. | | Reilly Decl. [Ex. 3], QA 14-23, ¶ 7.<br><br>Beginning in approximately 2010, Quest launched "Managing Every Patient's Needs" training modules and/or videos, which were specifically designed to train phlebotomists on their obligation to provide assistance and accommodations to PSC patients with disabilities, a true and correct copy of which is attached as Exhibit 10 to the accompanying Appendix. The current, attached version was updated and rolled out for training to PSC employees in March 2021. The training instructs phlebotomists among | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Jody Reilly's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts her deposition testimony, as follows:<br><br>Ms. Reilly did not recall whether the annual compliance training covered the ADA. Ex. 39 at PA1128:13-19. [Reilly dep.]<br><br>Ms. Reilly does not know whether all employees have completed the training. Ex. 39 at PA1129:9-PA1130:1, PA1131:12-20. [Reilly dep.] |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

19

PLAINTIFF'S OBJECTIONS TO EVIDENCE

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | |
|---|---|
| other things that the "The ADA entitles patients with special needs certain rights when using public spaces such as our PSCs, including access to facilities, the right to have service animals accompany them, the right to reasonable modifications of policies, practices, and procedures, and the right to auxiliary aids and services, such as the use of specialized equipment that ensures their safety and facilitates their ability to move about." The training also instructs Quest phlebotomists "When going to the waiting room to call back a patient, pay attention to other patients and their needs and behaviors, so you can identify any patients with visual impairments who may need assistance" and "Make yourself available to assist such patients as necessary, including assisting with navigating the waiting room and locating and using the kiosk to check in." The training also provides instruction to Quest phlebotomists about an enhancement to the Kiosks at PSCs that enables blind patients to automatically check in on the kiosks using a three-finger swipe gesture, without any assistance from a Quest phlebotomist. Quest did not replace or reduce PSC employees and staff in connection with enabling the Three Finger Swipe functionality and continues to preserve the | Ms. Reilly was unaware of any written policy from Quest regarding the ADA. Ex. 39 at PA1132:24-PA1133:14. [Reilly dep.]

Ms. Reilly does not know what sections of the ADA apply to Quest. Ex. 39 at PA1134:3-20. [Reilly dep.]

Ms. Reilly does not know what primary consideration is and states that there is no training provided by Quest regarding primary consideration and the rehabilitation act. Ex. 39 at PA1134:11-PA1136:19. [Reilly dep.] |

PLAINTIFF'S OBJECTIONS TO EVIDENCE

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | |
|---|---|---|---|
| | | longstanding policy and practice of requiring its Quest phlebotomists and staff at PSCs to assist patients with the check-in process. PSC employees are required to complete this training as part of new-hire training; they are also required to complete this training on an annual basis as a refresher training. | |
| | 13. | Reilly Decl. [Ex. 3], QA 14-23, ⁋ 10.<br><br>Beginning in 2015, Quest replaced the Patient Care Gold Standards for its Quest phlebotomists at PSCs with Everyday Excellence standards which, among other things, emphasized the importance of "respectfully assist[ing] patients when they need help with the sign-in and patient registration process and keep[ing] them informed of what will happen next." Attached as Exhibit 13 is a copy of those Everyday Excellence Standards. | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Jody Reilly's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts her deposition testimony, as follows:<br><br>These standards do not specifically reference the ADA, nor how to comply with the ADA. Ex. 39 at PA1142:4-20. [Reilly dep.] |
| | 14. | Reilly Decl. [Ex. 3], QA 14-23, ⁋ 12.<br><br>In June 2015, Quest launched another video training entitled "I Connect with Patients" for its Quest phlebotomists at PSCs. Among other things, the training instructed Quest phlebotomists at PSCs "When you come to the | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Jody Reilly's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts her deposition testimony, as follows: |

PLAINTIFF'S OBJECTIONS TO EVIDENCE

| | | |
|---|---|---|
| | waiting area, make eye contact, smile, and greet waiting patients. Ask patients if they've had a chance to sign in. And tell them you'll be with them shortly. Make sure patients know you see them and that you respect their decision to come to Quest." | Ms. Reilly did not recall whether the annual compliance training covered the ADA. Ex. 39 at PA1128:13-19. [Reilly dep.]<br><br>Ms. Reilly does not know whether all employees have completed the training. Ex. 39 at PA1129:9-PA1130:1, PA1131:12-20. [Reilly dep.]<br><br>Ms. Reilly was unaware of any written policy from Quest regarding the ADA. Ex. 39 at PA1132:24-PA1133:14. [Reilly dep.]<br><br>Ms. Reilly does not know what sections of the ADA apply to Quest. Ex. 39 at PA1134:3-20. [Reilly dep.]<br><br>Ms. Reilly does not know what primary consideration is and states that there is no training provided by Quest regarding primary consideration and the rehabilitation act. Ex. 39 at PA1134:11-PA1136:19. [Reilly dep.] |
| 15. | Reilly Decl. [Ex. 3], QA 14-23, ¶ 13.<br><br>As early as at least 2018, Day 1 of the new-hire training for Quest phlebotomists instructed phlebotomists that—with respect to the eCheck-in process—they should "help confused patients", "scan the waiting room", "be present when you call a new patient back for service", and "identify patients who were not | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804).<br><br>Jody Reilly's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts her deposition testimony, as follows:<br><br>Ms. Reilly did not recall whether the annual compliance training covered the ADA. Ex. 39 at PA1128:13-19. |

PLAINTIFF'S OBJECTIONS TO EVIDENCE

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | able to check in." The training further provides that when a Quest phlebotomist invites a patient for service, they should "make eye contact with other waiting patients" and "ask waiting patients if everyone has had a chance to sign in." The training also highlights patients with communication needs (including those with visual or hearing impairments) and instructs Quest phlebotomists that such patients "may need extra help or interpretive services." The training also reminds Quest phlebotomists that the implementation of "new technologies will you allow you to spend more time focusing on the patient interaction." The Leader Guide for the training also provided "When you call a new patient back for service, ask the waiting room if everyone has had a chance to sign in. Talking to waiting patients is a HUGE part of their experience and they clearly tell us when they feel they have been ignored. The patient experience doesn't begin when you take the patient to the draw room." Attached as Exhibit 14 is a copy of the Day 1 New Hire Training and the Leader Guide for the Day 1 New Hire Training. | [Reilly dep.]<br><br>Ms. Reilly does not know whether all employees have completed the training. Ex. 39 at PA1129:9-PA1130:1, PA1131:12-20. [Reilly dep.]<br><br>Ms. Reilly was unaware of any written policy from Quest regarding the ADA. Ex. 39 at PA1132:24-PA1133:14. [Reilly dep.]<br><br>Ms. Reilly does not know what sections of the ADA apply to Quest. Ex. 39 at PA1134:3-20. [Reilly dep.]<br><br>Ms. Reilly does not know what primary consideration is and states that there is no training provided by Quest regarding primary consideration and the rehabilitation act. Ex. 39 at PA1134:11-PA1136:19. [Reilly dep.] |
| 16. | Reilly Decl. [Ex. 3], QA 14-23, ¶ 21. | Sham declaration. Lack of Personal Knowledge. (F.R.E. 602) Hearsay (F.R.E. 801-804). |

PLAINTIFF'S OBJECTIONS TO EVIDENCE

| | | | |
|---|---|---|---|
| | | The Patient Advocacy team received feedback on the rollout and use of the Kiosks from many patients. Between 2016 and 2020, Patient Advocacy received feedback from forty-five (45) patients with visual impairments (or their advocates) about their experience with the check-in process at PSCs. Attached as Exhibit 9 is a true and correct copy of the data maintained by Patient Advocacy of this feedback it received about the Kiosks from any patient who identified himself or herself as having a visual impairment, with identifying information redacted in order to protect the privacy of the patients. | Jody Reilly's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts her deposition testimony, as follows:<br><br>Ms. Reilly reviews customer complaints and updates the training accordingly. [Reilly dep. at 94:2-1.] She did not think that the training needed to be updated due to the complaints received about the inaccessibility of the kiosk because the existing training addressed all ADA compliance. Ex. 39 at PA1138:6-15 [Reilly dep.].<br><br>Only some of the feedback is put into the common portal for patient advocacy. Ex. 39 at PA1133-B:8-22 [Reilly dep.]. |
| | 17. | Reilly Decl. [Ex. 3], QA 14-23, ¶ 19.<br><br>The above trainings, policies, standards, and procedures are only representative examples of trainings, standards, policies, and procedures that require Quest phlebotomists at PSCs to provide assistance to patients, including providing assistance and accommodations to persons with disabilities with the check-in process at PSCs. | Lack of personal knowledge, speculation (F.R.E. 602).<br><br>Irrelevant (immaterial), Fed. R. Evid. 401 and 402. Purportedly applicable policies, trainings, standards, or procedures not produced in discovery in violation of Rule 26 should have no bearing on the analysis. |

///

PLAINTIFF'S OBJECTIONS TO EVIDENCE

## **OBJECTIONS TO THE DECLARATION OF MARC YARRISON**

Mr. Yarrison testified as the Defendants' Rule 30(b)(6) person most knowledgeable on the following topics:

- *Topic 1*: "[Quest's] decision to outfit [Quest's] PATIENT SERVICE CENTERS with E-CHECK-IN KIOSKS." Ex. 37 at PA1075-A:8-PA1075-B:9. [Yarrison dep.].

- *Topic 2*: "The reasons why [Quest] decided to outfit [Quest's] PATIENT SERVICECENTERS with E-CHECK-IN KIOSKS." Ex. 37 at PA1075-A:8-PA1075-B:9. [Yarrison dep.].

- *Topic 3*: "The amount of business operating costs [Quest] saved by switching [Quest's] PATIENT SERVICE CENTERS to E-CHECK-IN KIOSKS from live-person check-in procedures." Ex. 37 at PA1075-A:8-PA1075-B:9. [Yarrison dep.].

- *Topic 17*: "All actions taken by [Quest] to ensure the E-CHECK-IN KIOSKS at [Quest's] PATIENT SERVICE CENTERS are compliant with the ADA." Ex. 37 at PA1075-A:8-PA1075-B:9. [Yarrison dep.].

- *Topic 18*: "All actions taken by [Quest] to ensure the E-CHECK-IN KIOSKS at [Quest's] PATIENT SERVICE CENTERS are compliant with the REHAB ACT." Ex. 37 at PA1075-A:8-PA1075-B:9. [Yarrison dep.].

- *Topic 28* (partial testimony): "All efforts [Quest] made between January 1, 2016, to the present, to make the E-CHECK-IN KIOSKS accessible and independently usable by visually impaired PERSONS." Ex. 37 at PA1075-A:8-PA1075-B:9. [Yarrison dep.].

- *Topic 40*: "How patient data is recorded by [Quest]." Ex. 37 at PA1075-A:8-PA1075-B:9. [Yarrison dep.].

Mr. Yarrison was deposed on April 8, 2021.

///

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFF'S OBJECTIONS TO EVIDENCE

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | EVIDENCE OBJECTED TO: | GROUNDS FOR OBJECTION: |
|---|---|---|
| 18. | Yarrison Decl. [Ex. 4], QA 24-28, ⁋ 6.<br><br>In 2015, to improve the experience of patients and employees at PSCs through digitization, Quest began to explore ways to modify its PSC check-in practices, along with other aspects of its patient interaction – from making appointments and pre-registration for the visits to how one checks in. | Sham declaration.<br><br>Marc Yarrison's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>One of the benefits of is cost avoidance. Ex. 37 at PA1080:8-14. [Yarrison dep.]. It reduced transaction time by 55 seconds. Ex. 37 at PA1081:10-17. [Yarrison dep.]. The PSCs were able to operate more efficiently and not need to hire more staff. Ex. 37 at PA1076:1-PA1078:10. [Yarrison dep.]. |
| 19. | Yarrison Decl. [Ex. 4], QA 24-28, ⁋ 7.<br><br>After considering a wide variety of options, in April 2016, Quest chose to install, over a two and-a-half year rollout, one or more electronic, touchscreen tablets to allow patients to check in at each of its PSCs. The tablets, when placed in plastic casings and mounted on posts, were known as " Kiosks." | Sham declaration.<br><br>Marc Yarrison's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>The kiosk has additional services available to the customer, including the wait-by-text option, Ex. 37 at PA1082:18-PA1083:3 [Yarrison dep.], and appointment scheduler. Ex. 37 at PA1084:19-25 [Yarrison dep.] |
| 20. | Yarrison Decl. [Ex. 4], QA 24-28, ⁋ 8.<br><br>A Kiosk user would be prompted to check in by entering a first and last name, birthday, and phone number. Once the patient had | Sham declaration.<br><br>Marc Yarrison's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows: |

| | | | |
|---|---|---|---|
| | | checked in, the Kiosk would place them in queue to be served by a Quest phlebotomist. The queue, with estimated wait times, would also be displayed on one or more of the "Quest TV" monitors present at PSCs. | The kiosk has additional services available to the customer, including the wait-by-text option, Ex. 37 at PA1082:18-PA1083:3 [Yarrison dep.], and appointment scheduler. Ex. 37 at PA1084:19-25 [Yarrison dep.] |
| | 21. | Yarrison Decl. [Ex. 4], QA 24-28, ⁋ 10.<br><br>In designing the Kiosk, Quest could not anticipate or predict the future requests by persons with disabilities for "auxiliary aids and services" (42 U.S.C. § 12182(b)(2)(a)(iii)) or for "reasonable modification of policies, practices and procedures" (42 U.S.C. § 12182(b)(2)(a)(ii)) that the ADA requires to be considered when made. Quest was replacing an existing system of signing in on a paper sheet at a PSC, which blind patients had successfully used for years (sometimes with the assistance of Quest phlebotomists) with another, digital system of signing in that was similarly accessible with the assistance of Quest phlebotomists. As it had for years, Quest was relying on its business model, approach to patient service, and policies, standards, procedures and training that, collectively, require Quest phlebotomists at PSCs to assist patients at PSCs, including | Sham declaration.<br><br>Marc Yarrison's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>With the rollout of the e-check-in self-service kiosks, the PSCs were able to operate more efficiently and not need to hire more staff. Ex. 37 at PA1076:1-PA1078:10. [Yarrison dep.].<br><br>The kiosk has additional services available to the customer, including the wait-by-text option, Ex. 37 at PA1082:18-PA1083:3 [Yarrison dep.], and appointment scheduler. Ex. 37 at PA1084:19-25 [Yarrison dep.]<br><br>Quest did not work with anyone with specialized knowledge of disabilities. Ex. 37 at PA1077:11-PA1078:7 [Yarrison dep.].<br><br>Quest took no action to ensure that they were independently accessible for blind individuals. Ex. 37 at PA1090:4-10 [Yarrison dep.].<br><br>Mr. Yarrison does not know whether |

NYE, STIRLING, HALE & MILLER<br>33 WEST MISSION STREET, SUITE 201<br>SANTA BARBARA, CALIFORNIA 93101

PLAINTIFF'S OBJECTIONS TO EVIDENCE

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | |
|---|---|---|
| | providing assistance to persons with disabilities to ensure they had access to Quest's services. Quest's plan and business case for the Kiosk rollout did not include a plan to reduce then existing PSC staffing or to replace PSC staff with Kiosks. | the team evaluated whether the tablet had accessible features. Ex. 37 at PA1092:6-12, PA1093:6-9 [Yarrison dep.].<br><br>Mr. Yarrison received a complaint on January 5, 2017, about the kiosks being inaccessible to the blind and an ADA violation, Ex. 37 at PA1087:5-18 [Yarrison dep.],<br><br>Yet he oversaw the rollout of 800 inaccessible kiosks to PSCs in 2017 and the remaining PSCs in 2018. Ex. 37 at PA1079:1-8, PA1091:10-24 [Yarrison dep.].<br><br>This complaint was one of 27 that Quest received during this time. Ex. 5, at PA0049-57 [Exhibits from Yarrison dep.]<br><br>No action was taken to make the kiosk accessible. Ex. 37 at PA1088:14-PA1089:10 [Yarrison dep.].<br><br>Marc Yarrison testifies that "one of the benefits of is cost avoidance." Ex. 37 at PA1080:8-14. [Yarrison dep.].<br><br>It reduced transaction time by 55 seconds. Ex. 37 at PA1081:10-17. [Yarrison dep.]. |
| 22. | Yarrison Decl. [Ex. 4], QA 24-28, ⁋ 11.<br><br>Moreover, because check-in and other improvements were | Sham declaration.<br><br>Marc Yarrison's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his |

PLAINTIFF'S OBJECTIONS TO EVIDENCE

| | | |
|---|---|---|
| | expected to reduce transaction time for each patient, it was expected that Quest phlebotomists would have additional time, among other things, to continue to address the needs of persons requiring assistance, including persons with disabilities. | deposition testimony, as follows: Marc Yarrison testifies that "one of the benefits of is cost avoidance." Ex. 37 at PA1080:8-14. [Yarrison dep.]. It reduced transaction time by 55 seconds. Ex. 37 at PA1081:10-17. [Yarrison dep.]. The PSCs were able to operate more efficiently and not need to hire more staff. Ex. 37 at PA1076:1-PA1077:10. [Yarrison dep.]. |
| 23. | Yarrison Decl. [Ex. 4], QA 24-28, ⁋ 12.<br><br>But, instead of simply relying on these assumptions about how the Kiosks would work once rolled out, Quest also planned to identify problems that any of its patients may be experiencing with the Kiosk through its extensive methods for soliciting and receiving patient feedback and complaints and the "iterative" process that is an inherent part of the rollout of any electronic or other technology. | Sham declaration.<br><br>Marc Yarrison's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>Mr. Yarrison received a complaint on January 5, 2017, about the kiosks being inaccessible to the blind and an ADA violation, Ex. 37 at PA1087:5-18 [Yarrison dep.],<br><br>Yet he oversaw the rollout of 800 inaccessible kiosks to PSCs in 2017 and the remaining PSCs in 2018. Ex. 37 at PA1079:1-8, PA1091:10-24 [Yarrison dep.].<br><br>This complaint was one of 27 that Quest received during this time. Ex. 5, at PA0049-57 [Exhibits from Yarrison dep.]<br><br>No action was taken to make the |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFF'S OBJECTIONS TO EVIDENCE

| | | |
|---|---|---|
| | | kiosk accessible. Ex. 37 at PA1088:14-PA1089:10 [Yarrison dep.]. |
| 24. | Yarrison Decl. [Ex. 4], QA 24-28, ⁋ 13.<br><br>As with the rollout of almost any technology on this large a scale, the implementation of the Kiosk was always contemplated to be an "iterative" process. Namely, Quest knew that it would continue to study the actual experience of Kiosk users and address any needs, challenges, or problems through future changes, modifications and alterations (i.e., iterations) to the Kiosk or the processes associated with the Kiosks' usage. | Sham declaration.<br><br>Marc Yarrison's declaration submitted in support of Defendant's summary judgment motion impermissibly contradicts his deposition testimony, as follows:<br><br>Mr. Yarrison received a complaint on January 5, 2017, about the kiosks being inaccessible to the blind and an ADA violation, Ex. 37 at PA1087:5-18 [Yarrison dep.],<br><br>Yet he oversaw the rollout of 800 inaccessible kiosks to PSCs in 2017 and the remaining PSCs in 2018. Ex. 37 at PA1079:1-8, PA1091:10-24 [Yarrison dep.].<br><br>This complaint was one of 27 that Quest received during this time. Ex. 5, at PA0049-57 [Exhibits from Yarrison dep.]<br><br>No action was taken to make the kiosk accessible. Ex. 37 at PA1088:14-PA1089:10 [Yarrison dep.]. |

## OBJECTION TO THE DECLARATION OF JOSEPH KROCK, PH.D.

| | EVIDENCE OBJECTED TO: | GROUNDS FOR OBJECTION: |
|---|---|---|
| 25. | [Ex. 6] QA 29-55.<br><br>The document in its entirety. | Irrelevant, Fed. R. Evid. 401 and 402.<br><br>Impermissible expert witness. Quest |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | |
|---|---|---|---|
| | | | has not previously disclosed any expert witness to Plaintiff. Fed. R. Civ. P. 26(a)(2)(B)<br><br>Impermissible rebuttal witness. Quest is offering Joseph Krock, Ph.D. as a rebuttal expert to Mr. Derry's investigation. Fed. R. Civ. P. 26(a)(2)(B). However, Mr. Derry is a lay witness and is offering *no* expert testimony. F.R.E. 701. |

## OBJECTION TO THE DECLARATION OF MARC YARRISON IN SUPPORT OF DEFENDANT'S OPPOSITION

| | EVIDENCE OBJECTED TO: | GROUNDS FOR OBJECTION: |
|---|---|---|
| 26. | Yarrison Decl. [Ex. 30], QA 1557-1558, ¶ 3.<br><br>Quest maintains no information about the specific disabilities of those patients visiting the Patient Services Centers (PSCs) of Quest and its wholly owned subsidiaries, including no information about those patients who have visual impairments or the degree of their impairment. | Sham Declaration.<br><br>Marc Yarrison's declaration submitted in support of Defendant's opposition to Plaintiff's class certification motion impermissibly contradicts his deposition testimony, as follows:<br><br>█████████████████<br>█████████████████<br>█████████████████<br>█████████████████<br>█████████████████<br>████████████ Mr. Yarrison's testimony contradicts the 30(b)(6) witness' testimony regarding TFS:<br><br>Q. And am I correct in understanding that with the three-finger swipe it actually tracks whether somebody has checked in as an either low vision -- a |

NYE, STIRLING, HALE & MILLER<br>33 WEST MISSION STREET, SUITE 201<br>SANTA BARBARA, CALIFORNIA 93101

PLAINTIFF'S OBJECTIONS TO EVIDENCE

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | | |
|---|---|---|---|
| | | | visually impaired or blind individual -- that's part of how it's tracked with the three-finger swipe internally?<br>A. The data indicates visually impaired.<br>Q. And that's data that -- that Quest currently keeps in its possession, correct?<br>A. Yes.<br>Ex. 38 at PA1116:7-16. [Carr dep.]<br><br>Mr. Carr was the 30(b)(6) witness designated for TFS. Ex. 38 at PA1096:21-PA1097:13. [Carr dep.] Mr. Carr was deposed on April 21 and July 30, 2021. |
| 27. | Yarrison Decl. [Ex. 30], QA 1557-1558, ¶ 4.<br><br>While Quest maintains records of how many times the three-finger swipe (TFS) has been performed on the Kiosk, that information provides no indication of whether the swiping individual has a visual impairment for several reasons. First, everyone in the waiting room can hear the Quest TV message regarding the TFS, so anyone hearing the message or otherwise understanding how to do so can perform the TFS. Second, inadvertent touches of the face of the Kiosk, such as in the frequent process of cleaning the Kiosk during the Covid-19 pandemic, can result in an inadvertent TFS. | | Sham Declaration.<br><br>Marc Yarrison's declaration submitted in support of Defendant's opposition to Plaintiff's class certification motion impermissibly contradicts his deposition testimony, as follows:<br><br> Mr. Yarrison's testimony contradicts the 30(b)(6) witness' testimony regarding TFS:<br><br>Q. And am I correct in understanding that with the three-finger swipe it actually tracks whether somebody has checked in as an either low vision -- a |

32

PLAINTIFF'S OBJECTIONS TO EVIDENCE

| | | visually impaired or blind individual -- that's part of how it's tracked with the three-finger swipe internally?<br>A. The data indicates visually impaired.<br>Q. And that's data that -- that Quest currently keeps in its possession, correct?<br>A. Yes.<br>Ex. 38 at PA1116:7-16. [Carr dep.]<br><br>Mr. Carr was the 30(b)(6) witness designated for TFS. Ex. 38 at PA1096:21-PA1097:13. [Carr dep.] Mr. Carr was deposed on April 21 and July 30, 2021. |
|---|---|---|

Dated: October 15, 2021

Respectfully submitted,

By:  /s/ Jonathan D. Miller

Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101

Benjamin J. Sweet
(Admitted *Pro Hac Vice*)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

*Signatures continued below.*

PLAINTIFF'S OBJECTIONS TO EVIDENCE

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Matthew K. Handley
(Admitted *Pro Hac Vice*)
mhandley@hfajustice.com
HANDLEY FARAH &
ANDERSON PLLC
777 6th Street NW
Washington, DC 20001
Telephone: (202) 559-2411

Attorneys for Plaintiff JULIAN VARGAS,
AMERICAN COUNCIL OF THE BLIND,
AND THE PROPOSED CLASS

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFF'S OBJECTIONS TO EVIDENCE