UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 19-8108-DMG (MRWx) | Date | December 2, 2021 |
|---|---|---|---|

| Title | *Julian Vargas, et al. v. Quest Diagnostics Clinical Labs., Inc., et al.* | Page | 1 of 15 |
|---|---|---|---|

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [107]**

This matter is before the Court on Plaintiff Julian Vargas's Motion for Class Certification (the "Motion"). [Doc. # 107.] The Motion is fully briefed. [*See* Doc. ## 133, 147.] The Court held a hearing on the Motion on October 29, 2021. For the reasons set forth below, Vargas's Motion is **GRANTED in part** and **DENIED in part**.

## I.
## BACKGROUND

The Court described the factual and procedural background of this case at length in its Order denying Defendant Quest Diagnostics' Motion for Summary Judgment. [*See* Doc. # 144.] For purposes of the instant Motion for Class Certification, the relevant facts are as follows.

Quest provides diagnostic services at patient service centers around the country. Beginning in the spring of 2016, Quest began to install touchscreen electronic kiosks at its patient service centers to enable patients to check in for their appointments. Quest concedes that these kiosks, as originally rolled out, were inaccessible to legally blind patients. Instead, Quest asserts that—consistent with Quest's preexisting practice of using paper sign-in sheets—patients who could not or did not wish to check in using a kiosk could check in with a Quest phlebotomist. Quest phlebotomists, however, are primarily responsible for collecting patient specimens, not staffing the waiting room, so phlebotomists may only be available when they emerge from the back of a patient service center, which may or may not happen frequently enough to allow phlebotomists to attend to newly-arrived patients. Beginning in 2020, Quest began to roll out a change to its kiosks that allows visually-impaired patients to swipe the touchscreen using three fingers, which checks the patient in and alerts a phlebotomist that the patient has arrived.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-8108-DMG (MRWx)** | Date | December 2, 2021 |
| Title | *Julian Vargas, et al. v. Quest Diagnostics Clinical Labs., Inc., et al.* | Page | 2 of 15 |

Plaintiffs Julian Vargas, Anne West,[1] and the American Council for the Blind filed the operative First Amended Complaint ("FAC") in this Court on May 15, 2020. [Doc. # 41.] The FAC asserts claims for violations of (1) the Americans with Disabilities Act ("ADA"), 42 U.S.C. section 12101 *et seq.*, (2) California's Unruh Civil Rights Act, Cal. Civ. Code section 51 *et seq.*, (3) California's Disabled Persons Act, Cal. Civ. Code sections 54-54.3, and (4) section 504 of the Rehabilitation Act, 29 U.S.C. section 794. On October 15, 2021, the Court granted summary judgment in favor of Quest as to Plaintiffs' claim under the Rehabilitation Act and as to Plaintiffs' claims under the Unruh Act and the Disabled Persons Act to the extent Plaintiffs asserted claims under those statutes separate from their ADA claims. [*See* Doc. # 144.]

Pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, Vargas seeks to certify the following class:

> All legally blind individuals who visited a Quest patient service center in the United States between January 1, 2018, through December 31, 2019 (the "Class Period"), and were denied full and equal enjoyment of the services, facilities, privileges, advantages, or accommodations due to Quest's failure to make its e-check-in self-service kiosks independently accessible to legally blind individuals.

Not. of Mot. for Class Certification ("Not.") at 2. [Doc. # 107.] Vargas also seeks to certify the following California sub-class:

> All legally blind individuals who visited a Quest patient service center in California during the Class Period and were denied full and equal enjoyment of the services, facilities, privileges, advantages, or accommodations due to Quest's failure to make its e-check-in self-service kiosks independently accessible to legally blind individuals.

*Id.* Vargas asserts his ADA claim on behalf of the proposed nationwide class, and the Unruh Act and Disabled Persons Act claims only on behalf of the proposed California sub-class. Vargas also seeks appointment as class representative for both the nationwide class and the California sub-class, and for appointment of the law firms Nye, Stirling, Hale and Miller, LLP and Handley, Farah & Anderson, PLLC as class counsel. Not. at 2.

---

[1] On May 27, 2021, West voluntarily dismissed all her claims with prejudice. [Doc. # 78.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-8108-DMG (MRWx)** | Date | December 2, 2021 |
| Title | *Julian Vargas, et al. v. Quest Diagnostics Clinical Labs., Inc., et al.* | Page | 3 of 15 |

## II.
## REQUEST FOR JUDICIAL NOTICE

Quest requests that the Court take judicial notice of two documents published online. [Doc. # 135.] First, Quest seeks judicial notice of a report by the law firm Seyfarth Shaw counting claims brought under Title III of the ADA in various courts across different years. Second, Quest seeks judicial notice of a list of definitions published by the American Federation of the Blind. Because the Court does not rely on the documents for which Quest requests judicial notice, the Court **DENIES** Quest's request as moot.

## III.
## LEGAL STANDARD

Federal Rule of Civil Procedure 23 provides the standard for certification of a class action. Vargas must meet all of the requirements under Rule 23(a) and must also satisfy at least one of Rule 23(b)'s requirements.

Courts refer to the Rule 23(a) requirements by the following shorthand: "numerosity, commonality, typicality and adequacy of representation." *See Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012). The Ninth Circuit does not recognize an "ascertainability" requirement under Rule 23. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017) ("[Defendant] cites no other precedent to support the notion that our court has adopted an 'ascertainability' requirement. This is not surprising because we have not.").

If the four prerequisites of Rule 23(a) are satisfied, the Court also must find that Vargas can "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Vargas seeks class certification pursuant to Rule 23(b)(2) and Rule 23(b)(3). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Rule 23 is more than a pleading standard, and it requires the party seeking class certification to "affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-8108-DMG (MRWx)** | Date | December 2, 2021 |
| Title | *Julian Vargas, et al. v. Quest Diagnostics Clinical Labs., Inc., et al.* | Page | 4 of 15 |

*v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation omitted). Thus, a court must conduct a "rigorous" class certification analysis. *Id*. at 350-51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). Frequently, the analysis "will entail some overlap with the merits of the plaintiff's underlying claim," and "sometimes it may be necessary for the court to probe behind the pleadings . . . ." *Id*. at 351 (internal quotation omitted). The Supreme Court cautions, however, that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," and "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

**IV.**
**DISCUSSION**

**A.    Class Definition**

Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" in places of public accommodation. 42 U.S.C. § 12182(a). Discrimination includes a public accommodation's failure to take steps necessary to "ensure" that disabled individuals are not "excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." *Id*. at § 12182(b)(2)(A)(iii). Regulations promulgated by the Department of Justice further provide that a public accommodation must provide appropriate auxiliary aids and services necessary "to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c).

Title III "prohibits anything less than the full and equal enjoyment of places of public accommodation by individuals with disabilities." *Landis v. Washington State Major League Baseball Stadium Pub. Facilities Dist.*, 11 F.4th 1101 (9th Cir. 2021). "Public accommodations must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience." *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012).

Vargas draws his proposed class narrowly: all legally blind individuals who visited a Quest patient service center and were denied full and equal access *because of Quest's failure to make its e-check-in self-service kiosks independently accessible*. Vargas's framing assumes the ADA requires that Quest's kiosks be "independently accessible." Quest, on the other hand, argues that during the class period it ensured effective communication with its blind patients

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-8108-DMG (MRWx) | Date | December 2, 2021 |
| Title | *Julian Vargas, et al. v. Quest Diagnostics Clinical Labs., Inc., et al.* | Page | 5 of 15 |

because phlebotomists were available to assist blind patients, who Quest admits could not use the kiosks independently.

In its MSJ Order, the Court did not reach the question of whether the kiosks must be independently accessible, because Plaintiffs offered evidence that established a triable issue of fact as to whether phlebotomists were in fact available to assist blind patients. *See* MSJ Ord. at 13. ADA regulations are clear that a public accommodation may choose which auxiliary aids to provide in order to ensure effective communication, so long as the method chosen "results in effective communication." *See* 28 C.F.R. § 36.303(c)(1)(ii).

Vargas has defined the proposed class based on his theory of Quest's liability. This appears to be a so-called "fail-safe" class. *See Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017) ("*Melgar II*") ("A fail-safe class is commonly defined as limiting membership to plaintiffs described by their theory of liability in the class definition such that the definition presupposes success on the merits.") (citing William B. Rubenstein, 1 Newberg on Class Actions § 3:6 (5th ed.)).

In *Melgar II*, the Ninth Circuit "note[d], though [. . .did] not hold, that our circuit's caselaw appears to disapprove of the premise that a class can be fail-safe." 681 F. App'x at 607; *see also Vizcaino v. U.S. District Court for Western Dist. Of Washington*, 173 F.3d 713, 722 (9th Cir. 1999). District courts in this circuit have certified similar classes in the disability litigation context. *See Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 575 (N.D. Cal. 2018) (certifying three classes of "[. . .] persons with mobility disabilities who use wheelchairs, scooters, or other mobility aids who will attempt to purchase accessible seating for a public event [. . .] and who will be denied equal access to [a stadium's] facilities, services, accessible seating, parking, amenities, and privileges, including ticketing" and collecting cases). And Vargas's narrow class definition may ultimately benefit Quest: Vargas's class is so narrow that Plaintiffs must prevail on a specific theory of Quest's liability in order for the class to prevail against Quest. If Plaintiffs' legal theory fails or they prevail on a different theory, Quest will be potentially liable only to the individual plaintiff.

**B.     Rule 23(a) Requirements**

   **1.     Numerosity**

A putative class may be certified only if it "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-8108-DMG (MRWx)** | Date | December 2, 2021 |
|---|---|---|---|
| Title | *Julian Vargas, et al. v. Quest Diagnostics Clinical Labs., Inc., et al.* | Page | 6 of 15 |

*Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (quoting *Adver. Specialty Nat'l Ass'n v. FTC*, 238 F.2d 108, 119 (1st Cir. 1956)). The numerosity requirement imposes no absolute limitations; rather, it "requires examination of the specific facts of each case." *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980). Thus, while the Supreme Court has noted that putative classes of 15 are too small to meet the numerosity requirement, *id*. at 330 & n.14, district courts in this Circuit have found that classes with as few as 39 members met the numerosity requirement, *see Patrick v. Marshall*, 460 F. Supp. 23, 26 (N.D. Cal. 1978); *see also Jordan v. L.A. County*, 669 F.2d 1311, 1320 (9th Cir. 1982) (noting, in *dicta*, that the court "would be inclined to find the numerosity requirement . . . satisfied solely on the basis of [39] ascertained class members"), *vacated on other grounds*, 459 U.S. 810 (1982).

Vargas offers a declaration estimating the number of legally blind patients who may have checked into a Quest Patient Service Center in a given year, based on the average number of annual check-ins, the average number of visits per year by any given patient, and the percentage of legally blind individuals in the population as a whole. *See* Green Decl. at ¶¶ 21-23 [Doc. # 107-5, Ex. 33]. Vargas's expert, Jed Greene, estimates that between 6,152 and 8,472 legally blind individuals must have visited a Quest Patient Service Center in California, and between 31,863 and 45,500 nationwide. *Id*. at Table 3. Quest calls Green's estimate a "guesstimate," but even if Green's estimate is off by a large margin, there are clearly enough legally blind visitors to Quest patient service centers in any given year to render it impracticable to join them all in this case.

Vargas does not seek to certify a class of all legally blind patients who visited Quest patient service centers, however. Vargas seeks to certify a class of all legally blind patients who visited Quest patient service centers and were denied equal access to Quest's services because of the absence of effective communication through independently accessible self-service kiosks. Nevertheless, based on complaints received by Quest and by the American Council for the Blind, there appear to be a sufficiently sizeable number of visually-impaired individuals across Quest's network who identified access issues.[2]

Vargas counts up the feedback received by the American Council for the Blind (29) and Quest itself (45) regarding visually impaired individuals' use of the kiosks. Adding himself, he concludes that the proposed class consists of at least 75 class members. Mot. at 19-20. Quest argues that the feedback items it received were not all complaints regarding this particular issue, that some of the feedback indicates patients were promptly helped by phlebotomists, and that the

---

[2] The parties do not address how many of the visually-impaired individuals who identified access issues visited patient service centers in California. Because the Court declines to certify a California sub-class, however, the Court need not address whether there are enough patients who identified access issues in California.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-8108-DMG (MRWx)** | Date | December 2, 2021 |
| Title | *Julian Vargas, et al. v. Quest Diagnostics Clinical Labs., Inc., et al.* | Page | 7 of 15 |

feedback Vargas offers as evidence does not take into account the Three-Finger Swipe, which Quest argues moots Vargas's claims.³ Opp. at 10.

Quest is correct that not all feedback regarding the kiosks clearly reflects the unavailability of phlebotomist assistance for patients who could not use the kiosks. At least eight of the complaints received by Quest describe exactly this problem, however. [*See* Doc. # 94-3.] Likewise, at least eight ACB members described the same problem. [*See* Doc. # 107-5, Ex. 24.] Moreover, a number of other Quest feedback items indicate that visually-impaired patients asked other patients for help or otherwise were unable to use the kiosks in a way that clearly satisfies the ADA. Because not every patient will lodge a complaint (and, as Vargas points out, Quest's system for lodging complaints may also be inaccessible), it is highly unlikely that these complaints reflect every individual who encountered these problems. *Shields v. Walt Disney Parks & Resorts US, Inc.*, 279 F.R.D. 529, 545 (C.D. Cal. 2011). Vargas has therefore demonstrated that there are a sufficient number of potential class members during the class period to satisfy the numerosity requirement.

**2. Commonality**

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349-50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In determining that a common question of law exists, it is insufficient to find that all putative class members have suffered a violation of the same provision of law. *Id.* Rather, the putative class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Vargas has defined his proposed class in terms of the injury they have suffered. It is therefore virtually a foregone conclusion that the class members will share common questions or law or fact. Vargas identifies the following common questions of law or fact: (1) whether

---

³ Quest also objects that the customer feedback items are hearsay. Opp. at 11. The Ninth Circuit does not require that evidence submitted in connection with a class certification motion be admissible. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1651 (2019) ("Inadmissibility alone is not a proper basis to reject evidence submitted in support of class certification."). Since the Court's "consideration should not be limited to only admissible evidence" at the class certification stage, the Court need not decide whether any hearsay objections apply to the customer feedback. Quest's objections are **OVERRULED** to the extent they seek to exclude evidence solely under evidentiary rules governing admissibility.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-8108-DMG (MRWx)** | Date | December 2, 2021 |
| Title | *Julian Vargas, et al. v. Quest Diagnostics Clinical Labs., Inc., et al.* | Page | 8 of 15 |

Quest's ECSS kiosks are independently accessible to legally blind individuals; (2) whether Quest has implemented the inaccessible ECSS kiosks across its national network of 2,152 PSCs; (3) whether use of the kiosk is a service Quest offers its customers;  (4) whether Quest offers a qualified aid or auxiliary service to allow legally blind individuals to access the ECSS kiosk; and (5) whether Quest has remedied the inaccessible ECSS kiosk across its system.  Mot. at 21.

There is no real question that the kiosks, as implemented during the class period, were not independently accessible to blind customers.  Likewise, there is no real dispute that Quest had not implemented its kiosks across its network at the beginning of the class period.  And the Court has already determined that the use of the kiosks is part of the service Quest offers its customers.  MSJ Ord. at 10.  Posed slightly differently, however, Vargas's final two questions are common questions central to the validity of each proposed class-member's claim.[4]  Whether Quest during the class period offered an auxiliary aid or service that allows blind patients to access the services provided through the kiosks, and whether the three-finger swipe has remedied any access violations created by the kiosks, are questions common to the class members that remain outstanding.

Vargas has satisfied the commonality requirement.

**3.     Typicality**

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The purpose of this requirement "is to assure that the interest of the named representative aligns with the interests of the class."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Id*.  Typicality is a "permissive standard" and requires only that the representative's claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

---

[4] Quest notes that the *answer* to these questions may, in some cases, require individualized treatment.  The Court will address this concern *infra*.  Quest also points out that the "primary consideration" requirement imposed on Quest by the Rehabilitation Act and the Affordable Care Act is ill-suited to class consideration.  The Court shares Quest's concern, *see* MSJ Ord. at 18 n.11, but previously granted Quest's MSJ as to this claim, so need not address the issue here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 19-8108-DMG (MRWx) | Date | December 2, 2021 |
|---|---|---|---|

| Title | *Julian Vargas, et al. v. Quest Diagnostics Clinical Labs., Inc., et al.* | Page | 9 of 15 |
|---|---|---|---|

    There is no real dispute that, to the extent there are common questions shared by the class members, Vargas's experience with Quest's kiosks raises the same questions. Vargas, like other putative class members who filed complaints with Quest and with the American Council for the Blind, encountered an inaccessible kiosk and was not offered an auxiliary aid or service—even assistance from a Quest phlebotomist—to allow him equal access to Quest's services. Vargas has satisfied the typicality requirement.

**4.    Adequacy of Representation**

    The Rule 23(a)(4) adequacy determination turns on the answers to two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Similarly, Rule 23(g) requires courts to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P 23(g)(1)(A).

    The Court is not aware of, and Quest does not raise, any conflicts between Vargas's counsel and the proposed class. Likewise, Quest does not dispute that Vargas's counsel will prosecute the action vigorously on behalf of the class.

    Quest argues that Vargas's decision to seek damages under California law on behalf of a California sub-class in addition to injunctive relief on behalf of a nationwide class creates a conflict between Vargas and the class. According to Quest, a decision to seek *only* damages or *only* injunctive relief may render a class representative's representation inadequate under certain circumstances. *See, e.g.*, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985-86 (9th Cir. 2011) (noting that plaintiffs who lack standing to seek injunctive relief cannot adequately protect the interests of class members whose primary goal is to seek injunctive relief). Although the Court declines to certify a damages sub-class, Vargas may continue to seek both injunctive relief on behalf of the class and damages on his own behalf. Vargas and his counsel satisfy the adequacy requirement.

**C.    Rule 23(b)(2) Requirements**

    Classes may be certified pursuant to Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-8108-DMG (MRWx)** | Date | December 2, 2021 |
| Title | *Julian Vargas, et al. v. Quest Diagnostics Clinical Labs., Inc., et al.* | Page | 10 of 15 |

or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Class certification under Rule 23(b)(2) is possible only when declaratory or injunctive relief is sought. Rule 23(b)(2) certification is available for monetary relief, if at all, only when such relief is incidental to the injunctive or declaratory relief. *Dukes*, 564 at 360. Civil rights actions against parties charged with unlawful, class-based discrimination are "prime examples" of Rule 23(b)(2) cases. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *see also Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) (explaining that Rule 23(b)(2) "was adopted in order to permit the prosecution of civil rights actions").

In determining whether certification is appropriate under Rule 23(b)(2), a court must "look at whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010). "The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Id*. (citing *Walters*, 145 F.3d at 1047). Claims for individualized relief, in contrast, do not satisfy Rule 23(b)(2). This subsection "applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Dukes*, 564 U.S. at 360-61.

This is a civil rights action against a party charged with unlawful, class-based discrimination based on the use of a specific auxiliary aid or service, and is a prime candidate for 23(b)(2) certification. The only real questions are whether the three-finger swipe has resolved Plaintiffs' claims such that the ADA claim for injunctive relief will become moot and whether the kiosks must be independently accessible. The Court found in its MSJ Order that Plaintiffs' ADA claim is not moot because disputed issues of fact exist. MSJ Ord. at 20-21. Vargas's proposed nationwide class is therefore suitable for 23(b)(2) certification.

### D.     Rule 23(b)(3) Requirements

To satisfy Rule 23(b)(3), a plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Because the Court has found the nationwide class is suitable for 23(b)(2) certification, this section addresses only Vargas's proposed California sub-class.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-8108-DMG (MRWx)** | Date | December 2, 2021 |
| Title | *Julian Vargas, et al. v. Quest Diagnostics Clinical Labs., Inc., et al.* | Page | 11 of 15 |

### 1. Predominance

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal citations and quotations omitted). This requires "careful scrutiny" of "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (internal citations and quotations omitted). If "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.*

Vargas argues that the questions common to class members predominate over individual issues because each class member encountered the inaccessible kiosk in exactly the same way: it was not independently accessible, and therefore class members were all harmed by it in the same way. Quest correctly points out that this argument hangs on Plaintiffs' argument that the ADA requires independently accessible kiosks. Quest, on the other hand, argues that because phlebotomist assistance is an acceptable auxiliary aid, and because some class members would not want to use independently accessible kiosks even if they were available, individualized issues predominate over common ones.

The Court observed at summary judgment that the kiosks were designed in part to allow phlebotomists to be unavailable. *See* MSJ Ord. at 13. The Court also found at summary judgment that there remained a question whether Plaintiffs' evidence established inaccessibility across Quest's entire network. *See id.* at 13 n.9. Finally, the Court found that disputed factual issues remain as to whether the three-finger swipe had remedied any ADA violations created by the kiosks. *Id*. at 20-21. Vargas has defined the proposed class narrowly, and the class claim will turn on whether Vargas can establish that the ADA requires independently accessible kiosks. With this framing in mind, the questions of whether Quest provided an auxiliary aid or service that ensured effective communication with blind individuals during the class period, and whether the three-finger swipe has resolved that issue, predominate over individualized issues as to effective communication.

Quest also argues that, because the Unruh Act requires that a plaintiff prove he personally encountered a violation and experienced "difficulty, discomfort, or embarrassment because of the violation," *see* Cal. Civ. Code § 55.56(b)-(c), individualized issues predominate over common ones with respect to that class such that Vargas cannot maintain a class action under the Unruh Act.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-8108-DMG (MRWx) | Date | December 2, 2021 |
| Title | *Julian Vargas, et al. v. Quest Diagnostics Clinical Labs., Inc., et al.* | Page | 12 of 15 |

This section of the Unruh Act applies specifically to construction-related accessibility claims. *See* § 55.56(a); *Mundy v. Pro-Thro Enterprises*, 192 Cal. App. 4th Supp. 1, 5 (2011) ("The provisions in sections 55.51 through 55.57 apply only to a 'construction-related accessibility claim' [. . . .]"); *see also Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 677-78 (2009) (noting section 55.56 was enacted to protect businesses from abusive access litigation specifically with respect to construction-related access barriers). At the hearing on this matter, Quest argued that both federal and California courts have nevertheless articulated the same standard without reference to section 55.56.

Under California law, "[i]n general, a person suffers discrimination under the [Unruh] Act when the person presents himself or herself to a business with an intent to use its services but encounters an exclusionary policy or practice that prevents him or her from using those services." *White v. Square, Inc.*, 7 Cal. 5th 1019, 1023 (2019). A plaintiff will lack standing under the Act if he lacked intent to use a business's services. *See Thurston v. Omni Hotels Mgmt. Corp.*, 284 Cal. Rptr. 3d 341, 348 (Cal. App. 2021) (affirming requirement that an Unruh Act plaintiff have a "bona fide" intent to use defendant's services); *Reycraft v. Lee*, 177 Cal. App. 4th 1211, 1224 (2009) (finding standing to seek damages under the Disabled Persons Act requires a showing that a disabled plaintiff "actually presented himself or herself to a business or public place with the intent of purchasing its products or utilizing its services in the manner in which those products and/or services are typically offered to the public and was actually denied equal access on a particular occasion"); *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1177 (9th Cir. 2010) (affirming denial of statutory damages under the Disabled Persons Act for visits to Chipotle during which plaintiff was not actually seeking to purchase food or to have the "Chipotle experience").

Because Vargas proposes to identify members of the California sub-class using Quest's own records of patients who actually used Quest's services, there is no real question that the putative class members had a bona fide intent to use Quest's services. The issue of whether a putative class member actually presented himself or herself at a particular Quest location and encountered a barrier to access, however, poses a more difficult problem.

Quest cites three cases in which district courts in California have declined to certify Unruh Act classes because individualized issues predominated over common ones. The three cases cited by Quest have certain notable similarities: all three involved disabled plaintiffs who alleged that counter heights and other physical barriers to access in fast food establishments violated the ADA and the Unruh Act. For example, in *Vondersaar v. Starbucks Corp.*, the court denied certification of nationwide and California classes of disabled wheelchair and scooter users who had been adversely affected by high handoff counters in Starbucks stores constructed during

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-8108-DMG (MRWx)** | Date | December 2, 2021 |
| Title | *Julian Vargas, et al. v. Quest Diagnostics Clinical Labs., Inc., et al.* | Page | 13 of 15 |

a particular period. No. CV 12-05027-DDP (AJWx), 2015 WL 629437, at *1, 4 (C.D. Cal. Feb. 12, 2015), *aff'd*, 719 F. App'x 657 (9th Cir. 2018). In *Moeller v. Taco Bell Corp.*, the court decertified an Unruh Act class because individualized issues, such as which Taco Bell store a class member visited and what barriers he or she encountered, would predominate over common ones. No. CV 02-5849-PJH, 2012 WL 3070863, at *6 (N.D. Cal. July 26, 2012). In *Antoninetti*, the court denied certification of an Unruh Act class because the question of whether each putative class member actually encountered a barrier to access and was denied equal access on a particular occasion would require a fact-intensive inquiry regarding counter heights and whether a class member sat high enough in his or her wheelchair to actually see over the counter on a given visit to a particular Chipotle store. No. CV 06-2671-BTM (WMc), 2012 WL 3762440, at *6 (S.D. Cal. Aug. 28, 20212).

District courts in California have, however, certified Unruh Act classes even applying the pleading standard imposed by section 55.56. In *Nevarez v. Forty Niners Football Company, LLC*, 326 F.R.D. 562 (N.D. Cal. 2018), the court certified a damages class of individuals with mobility disabilities who "ha[d] purchased, attempted to purchase, or for whom third parties [had] purchased accessible seating" at a football stadium and "who ha[d] been denied equal access" to the stadium's facilities and services. *Id*. at 586. In its predominance analysis, the court distinguished the cases cited by Quest above. The court emphasized that although the football stadium was large, it was still only one building. *Id*. The court also found "perhaps most important" the fact that the defendants kept records of class members' purchase of accessible seating, including the purchasers' names and contact information. *Id*.

This case sits somewhere between *Nevarez* and the fast food cases cited by Quest. Unlike in the fast food cases, the record here is uncontroverted that Quest's kiosks were identical—and similarly inaccessible—across Quest's network of patient service centers. There are therefore fewer individualized issues regarding what barriers to access a putative class member encountered. Moreover, as the Court has noted elsewhere, individualized issues regarding whether a phlebotomist offered the class member assistance do not predominate because of the narrowness of the proposed class definition, and more importantly because the Court has already found that the kiosks were designed in part to allow phlebotomists to be unavailable.

The critical facts that allowed for class certification in *Nevarez*, however, are not present here. Unlike in *Nevarez*, this case does not involve one big building; it involves hundreds of small ones. *See* Green Decl., Ex. L (showing 77 patient service centers in Los Angeles County alone) [Doc. # 107-5]. Issues such as whether a patient service center had a fully operative kiosk on the date of a putative class member's visit will therefore require individualized inquiries.

Case 2:19-cv-08108-DMG-MRW Document 190 Filed 12/02/21 Page 14 of 15 Page ID #:12988

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-8108-DMG (MRWx)** | Date | December 2, 2021 |
|---|---|---|---|
| Title | ***Julian Vargas, et al. v. Quest Diagnostics Clinical Labs., Inc., et al.*** | Page | 14 of 15 |

Most importantly, although Quest maintains records of the patients who visit its patient service centers, Quest does not keep records regarding its patients' visual impairments. A patient's use of the three-finger swipe to check in for an appointment might serve as a useful proxy for determining whether a patient was visually impaired, but the three-finger swipe was not implemented until after the end of the class period and some patients may have had access to an auxiliary aid or service that ensured effective communication. Moreover, the kiosks were not rolled out uniformly across Quest's network throughout the class period.

Under Vargas's theory of the case each putative class member must show only (1) that he or she is legally blind and (2) that he or she visited a patient service center *with* a kiosk and *without* a staffed desk (3) during the class period. Under these circumstances, however, demonstrating these basic factual elements will still essentially require each putative class member to litigate her own individual Unruh Act case. Vargas's expert estimates that, at a minimum, nearly three million patients attempted to use a Quest kiosk each year of the class period. Green Decl. at ¶ 22; *id.* at Ex. E. Vargas's expert likewise estimates that fewer than .5% of these patients are putative class members. Without at least a proxy for determining class membership to narrow the scope of the individualized inquiry, the Court comes to the ineluctable conclusion that individualized issues will predominate over common ones with respect to the California sub-class.

### 2.     Superiority

The factors the Court considers in determining superiority of the class action device are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). When "each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001).

The prime issue under the superiority analysis is whether each class member should be required to litigate his or her own case. There is no indication that individual class members (other than Vargas) have filed individual claims seeking to adjudicate their own cases.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-8108-DMG (MRWx) | Date | December 2, 2021 |
| Title | *Julian Vargas, et al. v. Quest Diagnostics Clinical Labs., Inc., et al.* | Page | 15 of 15 |

Concentrating litigation in this forum is not particularly desirable, nor is it particularly undesirable—so this factor is neutral. As discussed *supra*, however, it is clear that given the circumstances, each class member would essentially need to litigate her own case even if the Unruh Act sub-class were certified. These individualized issues render a California sub-class unmanageable.

Moreover, the Unruh Act provides for $4,000 in minimum statutory damages for each violation. Although $4,000 is not such a large bounty that it is likely to drive all 6,000 potential California sub-class members to court, the statutory damages plus attorneys' fees available for prevailing plaintiffs renders individual actions a viable alternative to a class action. *See Antoninetti*, 2012 WL 3762440, at *7 (noting the Unruh Act's minimum statutory damages plus attorneys' fees provides individuals with a "significant monetary incentive to file individual lawsuits").

Under these circumstances, a class action is not superior to other available methods for adjudicating the Unruh Act claim. Vargas's motion to certify a damages sub-class is therefore **DENIED**.

## V.
## CONCLUSION

In light of the foregoing, Vargas's Motion for Class Certification is **GRANTED in part** and **DENIED in part**. The Court certifies the following class:

> All legally blind individuals who visited a Quest patient service center in the United States between January 1, 2018 through December 31, 2019 (the "Class Period"), and were denied full and equal enjoyment of the services, facilities, privileges, advantages, or accommodations due to Quest's failure to make its e-check-in self-service kiosks independently accessible to legally blind individuals.

The Court certifies Vargas as class representative, and appoints the law firms Nye, Stirling, Hale and Miller, LLP and Handley, Farah & Anderson, PLLC as co-class counsel.

**IT IS SO ORDERED**.