1  Jonathan D. Miller (SBN 220848)
   jonathan@nshmlaw.com
2  Alison M. Bernal (SBN 264629)
   alison@nshmlaw.com
3  NYE, STIRLING, HALE
4  & MILLER, LLP
   33 West Mission Street, Suite 201
5  Santa Barbara, CA 93101
6  Telephone: (805) 963-2345

Benjamin J. Sweet
(*Admitted Pro Hac Vice*)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

7

8  *Attorneys for Plaintiffs Julian Vargas,*
   *American Council of the Blind, and the Certified Class*
9

10 **Additional counsel for Plaintiff listed on signature page**

11                **UNITED STATES DISTRICT COURT**

12           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13 JULIAN VARGAS and AMERICAN          Case No.: 2:19-cv-08108-DMG-
   COUNCIL OF THE BLIND, individually  MRW
14 on behalf of themselves and all others
   similarly situated,                 **PLAINTIFFS' STATEMENT OF**
15                                      **UNCONTROVERTED FACTS**
                  Plaintiffs,           **AND CONCLUSIONS OF LAW**
16                                      **IN SUPPORT OF MOTION FOR**
         v.                             **SUMMARY JUDGMENT**
17
   QUEST DIAGNOSTICS CLINICAL           *[Filed Concurrently with Notice of*
18 LABORATORIES, INC., QUEST            *Motion, Memorandum of Points and*
   DIAGNOSTICS HOLDINGS, INC.,          *Authorities, Appendix of Exhibits,*
19 QUEST DIAGNOSTICS                     *And [Proposed] Order]*
   INCORPORATED; and DOES 1-10,
20 inclusive,                           **Date:    June 17, 2022**
                                        **Time:   2:00 p.m.**
21                                      **Crtrm: 8C**
22
                                        Complaint Filed: September 18, 2019
23                                      Discovery Cutoff: August 27, 2021
                  Defendants.           Pretrial Conf: October 4, 2022
24                                      Trial Date: November 1, 2022
25                                      District Judge: Hon. Dolly M. Gee
                                        Magistrate: Hon. Michael R. Wilner
26
27                                      ***REDACTED***
28
                                      1
   PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS
        OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiffs Julian Vargas, American Council of the Blind, and the Certified Class ("Plaintiffs") hereby submit the following Separate Statement of Uncontroverted Facts and Conclusions of Law in support of their Motion for Summary Judgment.

### <u>SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE</u>

| | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|
| 1. | Julian Vargas lives in Van Nuys, California.<br><br>Plaintiffs' Appendix of Evidence ("Ps' App.") Exhibit "Ex." 8 at PA0090:23-25 [Vargas dep.] | |
| 2. | Julian Vargas is legally blind and uses a screen reader as an auxiliary aid that allows him to understand the information displayed on a screen.<br><br>Ps' App. Ex. 8 at PA0091:13-PA0092:24, PA0103:10-14 [Vargas dep.] | |
| 3. | ACB is a national membership organization of thousands of blind and visually impaired persons which seeks to increase the independence, security, equality of opportunity, and quality of life for all legally blind people.<br><br>Ps' App. Ex. 17 at PA0195:9-14, PA0196:5-20, PA0197:17-21 [Rachfal dep.] | |
| 4. | Beginning in the spring of 2016, Quest began to install touchscreen electronic kiosks at its PSCs to enable patients to self-check in for their appointments. | |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|---|
| | | Ps' App. Ex. 4 at PA0021:8-13, PA0022:1-8 [Yarrison dep.]; Ex. 19 at PA0225:18-PA0226:1 [Walsh dep.]; Ex. 18 at PA0211:19-25 [Aronson dep.] | |
| | 5. | [redacted] Ps' App. Ex. 19 at PA0227:5-25 [Walsh dep.]; Ex. 4 at PA0023:17-24, PA0025:6-PA0026:12, PA0029:2-PA0030:18 [Yarrison dep.]; Ex. 4 at PA0042-PA0048 [Exhibits from Yarrison dep.]; Ex. 18 at PA0212:12-16, PA213:20-PA0214:6 [Aronson dep.] (inquiry into whether features were available). | |
| | 6. | The Court has already held, and Quest concedes, that the kiosk available during the Class Period did not provide effective communication. Ps' App. Ex. 4 at PA0023:17-24 [Yarrison dep.] | |
| | 7. | Quest concedes that Plaintiffs satisfy the first two elements of their ADA claim. Ps' App. Ex. 26 at 4:23-5:25 [Transcript of April 25, 2022 Meet and Confer] (stating it is Quest does not dispute certified Class Representative Vargas' disability and Quest is a place of public accommodation.) | |
| | 8. | The iteration of the kiosk during the class period was the means for patients to communicate to | |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS
OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|---|
| | | phlebotomist that they had arrived, placing the patient in queue for the phlebotomy service.<br><br>Ps' App. Ex. 19 at PA0234:9-20 [Walsh dep.]. | |
| | 9. | The ECSS kiosk communicates to the phlebotomist's screen in the back of the PSC when a patient checks in.<br><br>Ps' App. Ex. 19 at PA0234:9-20 [Walsh dep.]. | |
| | 10. | ███████████████<br>███████████████<br>███████████████<br><br>Ps' App. Ex. 19 at PA0231:23-PA0233:14 [Walsh dep.]. | |
| | 11. | The design of the e-check-in kiosk system was to have the phlebotomist remain in the back, servicing more patients, and not to be in the front helping patients with check-in.<br><br>See PA0277-PA0280 ("[t]here are no phlebotomists sitting at front desks available to help register patients.").<br><br>PA0283-PA0284 (the concern is "that the staff is servicing the patients and cannot always be in front of the "house" tending to folks that are struggling with registration. You can't have both at the same time.").<br><br>Ps' App. Ex. 19 at PA0222:10-24, PA0238:25-PA029:10, PA0244 [Walsh dep. and exhibit establishing the ECSS was projected to save over $40 million in costs through "efficiencies" | |

NYE, STIRLING, HALE & MILLER<br>33 WEST MISSION STREET, SUITE 201<br>SANTA BARBARA, CALIFORNIA  93101

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|---|
| | | earned by reducing phlebotomist contact with patients]). | |
| | 12. | Quest internal emails confirm that using the original iteration of the kiosks, phlebotomist assistance was not readily or reliably available.<br><br>*See* PA0277-PA0280 ("[t]here are no phlebotomists sitting at front desks available to help register patients.").<br><br>PA0283-PA0284 (the concern is "that the staff is servicing the patients and cannot always be in front of the "house" tending to folks that are struggling with registration. You can't have both at the same time."). | |
| | 13. | For a blind customer, this means that before they can even be placed in line for service, they must either (1) find a sighted person to help them with the kiosk; or (2) wait for a phlebotomist to come out to get another patient, and ask him or her for help.<br><br>*See* Ex. 24, at PA0294-PA0311[Derry dec.: finding that a phlebotomist swept the waiting area at only 1 of 24 investigated locations]<br><br>*See* Ps' App. Ex. 10 at PA0126:7-12 [Bazyn dep.: husband checked her in]; Ex. 15 at PA0180:24-PA0181:12 [Brink dep.: Quest employee asked Brink's daughter to help]; Ex. 13 at PA0159:20-PA0160:1 [Grahmann dep.]: relied on another patient, a stranger, to check her in]; Ex. 11 at PA0136:3-PA0137:2, PA0138:15-PA0139:3 [M. Haroyan dep.: relied on other patients – strangers – to sign her in twice before, | |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS
OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|---|
| | | and her father once]; Ex. 12 at PA0152:11-PA0154:1, PA0153 [ N. Haroyan dep.: relied on another patient, a stranger, to sign her in, as well as her father on other occasions]; Ex. 14 at PA0171:22-PA0172:5, PA0170:18-23 [Lyons dep.: relied on another patient, a stranger, to check her in, and now has to bring different people to help her check in]; Ex. 16 at PA0189:14-PA0190:3 [Rehder dep.: relied on another patient, a stranger, to check her in]. | |
| | 14. | On June 25, 2019, Mr. Vargas took paratransit to a Quest PSC close to his house to obtain lab work.<br><br>Ps' App. Ex. 8 at PA0093:5-6, PA0094:9-14 [Vargas dep.] | |
| | 15. | After 10 to 15 minutes, a phlebotomist came out to help another patient.<br><br>Ps' App. Ex. 8 at PA0095-3-23 [Vargas dep.] | |
| | 16. | The phlebotomist directed Mr. Vargas to the kiosk and told him, "this is where you check in."<br><br>Ps' App. Ex. 8 at PA0096:3-18. [Vargas dep.] | |
| | 17. | Mr. Vargas checked the kiosk for tactile markings, a headphone jack, or a tactile keypad that would allow him to use the kiosk.<br><br>Ps' App. Ex. 8 at PA0096:25-PA0097:14 [Vargas dep.] | |
| | 18. | After not finding any accessibility options, Mr. Vargas told the phlebotomist the kiosk was not | |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|
| | accessible to legally blind people so he would need help signing in.<br><br>Ps' App. Ex. 8 at PA0097:15-22 [Vargas dep.] | |
| 19. | The phlebotomist took the other patient back for lab work, then came back out approximately five minutes later to help Mr. Vargas.<br><br>Ps' App. Ex. 8 at PA0098:3-22. [Vargas dep.] | |
| 20. | The phlebotomist asked Mr. Vargas for several pieces of personal information.<br><br>Ps' App. Ex. 8 at PA0099:9-23. [Vargas dep.] | |
| 21. | Mr. Vargas suggested that the phlebotomist talk to whoever she needed to in order to ensure the kiosk was accessible to blind people. He further offered to provide his feedback to Quest.<br><br>Ps' App. Ex. 8 at PA100:16-PA101:4 [Vargas dep.] | |
| 22. | The phlebotomist agreed and said she would speak with her supervisors.<br><br>Ps' App. Ex. 8 at PA101:17-24 [Vargas dep.] | |
| 23. | To date, however, no one from Quest has ever followed up with Mr. Vargas.<br><br>Ps' App. Ex. 8 at PA101:23-24 [Vargas dep.] | |
| 24. | The experience left Mr. Vargas feeling | |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|---|
| | | embarrassed, humiliated, and like a "third-class citizen of some kind that anybody else can walk in there and not have to undergo the same amount of hassle and waiting." <br><br> Ps' App. Ex. 8 at PA0104:22-PA0105:17 [Vargas dep.] | |
| | 25. | Nine ACB members testified that they were not able to independently access ECSS, they waited for extended periods for a phlebotomist to come help them, and they felt a loss of dignity and privacy in having to check in with the phlebotomist instead of the service Quest offers everyone else. <br><br> *See* Ps' App. Ex. 10 at PA0127:23-PA0128:5, PA0123:10-17, PA0124:4-PA0125:16 [Bazyn dep.]; Ex. 9 at PA0110:4-PA0113:19, PA0114:16-PA0115:5, PA0116:15-PA0117:19 [Black dep.]; Ex. 15 at PA0178:10-PA0180:7, PA0179-PA0181:2, PA0181:16-19, PA182:1-PA0184:4 [Brink dep.]; Ex. 13 at PA0160:21-PA0162:8, PA0162:22-PA0164:4 [Grahmann dep.]; Ex. 12 at PA0146:10-PA0149:9, PA0150:8-PA0151:8, PA0153:9-PA0154:1 [N. Haroyan dep.]; Ex. 11 at PA0134:1-PA135:23, PA0136:3-PA0137:2 [M. Haroyan dep.]; Ex. 14 at PA0169:14-PA0170:13, PA0171:14-21, PA0173:15-21 [Lyons dep.]; Ex. 21 at PA0262:16-23 [Stanley dep.] | |
| | 26. | Not one ACB member testified that he or she was able to independently access ECSS, and instead had to wait for either an attendant to come to the window (putting sighted individuals | |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|
| | ahead of them in line) or rely on a third party to aid their check-in at the kiosk. *See* Ps' App. Ex. 10 at PA0126:7-12 [Bazyn dep.: husband checked her in]; Ex. 15 at PA0180:24-PA0181:12 [Brink dep.: Quest employee asked Brink's daughter to help]; Ex. 13 at PA0159:20-PA0160:1 [Grahmann dep.]: relied on another patient, a stranger, to check her in]; Ex. 11 at PA0136:3-PA0137:2, PA0138:15-PA0139:3 [M. Haroyan dep.: relied on other patients – strangers – to sign her in twice before, and her father once]; Ex. 12 at PA0152:11-PA0154:1, PA0153 [ N. Haroyan dep.: relied on another patient, a stranger, to sign her in, as well as her father on other occasions]; Ex. 14 at PA0171:22-PA0172:5, PA0170:18-23 [Lyons dep.: relied on another patient, a stranger, to check her in, and now has to bring different people to help her check in]; Ex. 16 at PA0189:14-PA0190:3 [Rehder dep.: relied on another patient, a stranger, to check her in]. | |
| 27. | To defend its discriminatory conduct, Quest identified a single phlebotomist in its Rule 26 disclosures—Prudencia Magana. Ms. Magana was the phlebotomist at the Quest location Mr. Vargas visited on June 25, 2019. Ps' App. Ex. 20 at PA049:2-4 [Magana dep.] INITIAL DISCLOSURES. | |
| 28. | Ms. Magana confirmed the kiosk was inaccessible during the Class Period. Ps' App. Ex. 20 at PA0250:19-24 [Magana dep.] | |

9

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|---|
| | 29. | In August 2020, in response to this litigation, Quest began outfitting the kiosks at some PSCs with TFS.<br><br>Ps' App. Ex. 5 at PA0049-J:2-8. [Carr dep.]; Ex. 4 at PA0024:10-14 [Yarrison dep.]; Ex. 7 at PA0084:20-23 [Grant dep.]<br><br>*See also* Dkt. 95-1, at 16:9-10, Dkt. 133, at 4 | |
| | 30. | While Quest has repeatedly and falsely claimed under oath that the Company implemented TFS across the Company's PSC network [ ] the record facts are undisputed that Quest has not effectively rolled out TFS across its network of over 2,100 PSCs.<br><br>Ps' App. Ex. 5 at PA0049-J:2-8. [Carr dep.]; Ex. 4 at PA0024:10-14 [Yarrison dep.]; Ex. 7 at PA0084:20-23 [Grant dep.]<br><br>Compare with<br>Ex. 24 at PA0294-PA0311 [Derry dec.].<br><br>*See also* Dkt. 95-1, at 16:9-10, Dkt. 133, at 4. | |
| | 31. | Quest's expert, Mr. Sawczyn, did not form an opinion on effective communication throughout Quest's network and is unaware of it three-finger-swipe has been rolled out.<br><br>Ps' App. Ex. 22 at PA0273:3-20 [Sawczyn dep.] | |
| | 32. | Quest's expert, Mr. Sawczyn, visited Quest locations outside of business hours on both occasions—the first of which, Mr. Sawczyn was left waiting outside, unable to enter the facility. | |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS
OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

|  | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|
|  | Ps' App. Ex. 22 at PA0268:4-PA0270:20 [Sawczyn dep.] |  |
| 33. | Quest hand-picked the time for its expert, Mr. Sawczyn, to visit the facility, so as to not "disrupt regular business." <br><br> Ps' App. Ex. 22 at PA0270:23-PA0272:25 [Sawczyn dep.] |  |
| 34. | Despite having hand-picked the time for Mr. Sawczyn to visit a Quest facility, the phlebotomist was not available to help check-in. <br><br> Ps' App. Ex. 22 at PA0272:4-16 [Sawczyn dep.] |  |
| 35. | Mr. Sawczyn admits that he is unable to independently access any of the features of the kiosk. <br><br> Ps' App. Ex. 22 at PA0274:14-PA0276:3 [Sawczyn dep.] |  |
| 36. | In stark contrast, Mr. Derry investigated 24 Quest PSC locations and discovered Quest's TFS "solution" featured significant deficiencies at every single location, barring any finding of mootness. <br><br> Ps' App. Ex. 24 at PA0294-PA0311 [Derry dec.]. |  |
| 37. | Even at the investigated locations where TFS was present in some form, Mr. Derry found that |  |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|
| | at 11 of 24 locations, TFS was not available on every kiosk.<br><br>Ps' App.  Ex. 24 at PA0294-PA0311 [Derry dec.]. | |
| 38. | Thus, the actual evidence demonstrates Quest has not rolled out TFS effectively across its network.<br><br>Ps' App.  Ex. 24 at PA0294-PA0311 [Derry dec.].<br><br>*See also*, MSJ Tr. – p 6. | |
| 39. | Without a comprehensive rollout of TFS at every PSC, Quest cannot establish that Plaintiffs' claims are mooted, even if TFS solved for all of the kiosk's communication failures, which it does not.<br><br>Ps' App.  Ex. 24 at PA0294-PA0311 [Derry dec.]. | |
| 40. | Quest has implemented multiple new services available at the kiosk, such as (1) the ability to wait safely outside and receive a text message when the patient's turn has arrived (a feature added during the COVID-19 pandemic); (2) specimen drop off and pick up; and (3) knowledge about where a patient stands in the service queue, a feature designed to reduce patient anxiety in the check-in process. none of which it offers to legally blind individuals. | |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|
| | Ps' App. Ex. 5 at PA0049-H:11- PA0049-I:24 [Carr dep.]; Ex. 7 at PA0079:7-PA0080:3 [Grant dep.]; Ex. 25 at ¶¶ 10-51 [Montgomery dec.]. Ex. 22 at PA0274:14-PA0276:3 [Sawczyn dep.] *See,* Ex. 23, at PA0292[QUEST-VARGAS 000035245 – eCheckin CapEx tab - Summarized Project Description]. | |
| 41. | Where it functions, TFS allows a legally blind user to access only one part of the service—to communicate he or she has arrived—but not to access any of the other parts of the service. Ps' App. Ex. 25 at ¶¶ 10-51 [Montgomery dec.]; Ex. 5 at PA0049-H:11- PA0049-I:24 [Carr dep.]; Ex. 7 at PA0079:7-PA0080:3 [Grant dep.]; Ex. 22 at PA0274:14-PA0276:3 [Sawczyn dep.] *See,* Ex. 23, at PA0292[QUEST-VARGAS 000035245 – eCheckin CapEx tab - Summarized Project Description]. | |
| 42. | TFS does not provide independent and private access to all kiosk services (e.g., "wait where you want," specimen drop-off, appointment check-in versus walk-in). Ps' App. Ex. 25 at ¶¶ 10-51 [Montgomery dec.]. | |
| 43. | Mr. Vargas returned to a Quest PSC on June 10, 2021. Ps' App. Ex. 3 at ¶ 2 [Vargas dec.]. | |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|
| | | |
| 44. | As he entered the location, he heard the end of the portion of the audio content loop directed toward blind patients, but the volume was not adequate for him to hear the content from his location.<br><br>Ps' App. Ex. 3 at ¶ 2 [Vargas dec.]. | |
| 45. | While waiting for the content loop to replay, information was given on the "wait where you want" option, available to those who could use the kiosk independently.<br><br>Ps' App. Ex. 3 at ¶ 2 [Vargas dec.]. | |
| 46. | After 8 to 10 minutes, the message directed Mr. Vargas to perform a three-finger swipe at the kiosk.<br><br>Ps' App. Ex. 3 at ¶ 3 [Vargas dec.]. | |
| 47. | The message did not give directions as to where the kiosk itself was located within the waiting room, so Mr. Vargas had to fumble around to find it.<br><br>Ps' App. Ex. 3 at ¶ 3 [Vargas dec.]. | |
| 48. | The content loop simply said patients should ask a staff member to assist if they had trouble locating the kiosk.<br><br>Ps' App. Ex. 3 at ¶ 3 [Vargas dec.]. | |
| 49. | However, there were no Quest staff members in the waiting room. | |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|
| | Ps' App. Ex. 3 at ¶ 3 [Vargas dec.]. | |
| 50. | After locating the kiosk, Mr. Vargas confirmed there was still no headphone jack or tactile keypad.<br><br>Ps' App. Ex. 3 at ¶ 3 [Vargas dec.]. | |
| 51. | Once Mr. Vargas performed the TFS, an audio message stated he was patient "001" and that he would be serviced in three minutes; in reality, he waited 17 minutes.<br><br>Ps' App. Ex. 3 at ¶ 4 [Vargas dec.]. | |
| 52. | When the phlebotomist greeted him, Mr. Vargas explained he was there to test the accessibility of the TFS system and asked whether the "wait where you want" option was available to him as a blind user.<br><br>Ps' App. Ex. 3 at ¶ 4 [Vargas dec.]. | |
| 53. | The phlebotomist told him the "wait where you want" option is only for those who make appointments online and can independently use the kiosk to scan a QR code.<br><br>Ps' App. Ex. 3 at ¶ 4 [Vargas dec.]. | |
| 54. | The factual record is undisputed that Quest failed to adequately train its employees on the ADA requirements on how to provide effective communication to its blind customers. | |

15

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS
OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|
| | Ps' App. Ex. 6 at PA0062:13-19, PA0070:11-PA0071:19 [Reilly dep.]; Ex. 20 at PA0251:3-7 [Magana dep.] | |
| 55. | Even after introducing a training program entitled "Managing Patient Needs," Quest's Rule 30(b)(6) witness was unable to confirm this training covered the ADA.<br><br>Ps' App. Ex. 6 at PA0063:12-PA0064:1, PA0065:12-20 [Reilly dep.]; | |
| 56. | Ms. Reilly could not confirm that all employees completed the "Managing Patient Needs" training.<br><br>Ps' App. Ex. 6 at PA0068:14-25 [Reilly dep.]; | |
| 57. | Ms. Reilly – the Company's Rule 30(b)(6) witness on the topic of training – was further unable to identify the existence of any written Quest ADA policy.<br><br>Ps' App. Ex. 6 at PA0066:23-PA0067:14 [Reilly dep.]; | |
| 58. | Nor could Ms. Reilly identify what portions of the ADA even apply to Quest.<br><br>Ps' App. Ex. 6 at PA0069:3-20 [Reilly dep.]; | |
| 59. | Indeed, of "Managing Patient's Needs" approximately 500 slides, only four reference the ADA, and none address the provision of effective communication to blind patients.<br><br>Ps' App. Ex. 6 at PA0071A:12-25 [Reilly dep.]; | |

| | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|
| | | |
| 60. | Ms. Magana unequivocally testified that she was never trained to "scan" the waiting room by Quest.<br><br>Ps' App. Ex. 20 at 90:22-24 [Magana dep.] | |
| 61. | Ms. Magana further confirmed that "Managing Patient Needs" was the only training employees received regarding the ADA and, as discussed above, this training does not include any information regarding the frequency of scanning the waiting room, nor how to provide effective communication.<br><br>Ps' App. Ex. 20 at PA0250:2-18 [Magana dep.] | |
| 62. | Further, Ms. Magana testified that Quest informed her the kiosk is not accessible to legally blind individuals.<br><br>Ps' App. Ex. 20 at PA0250:19-24 [Magana dep.] | |
| 63. | It is therefore no surprise that ACB members reported markedly similar experiences in that each encountered (1) an inaccessible kiosk, and (2) untrained staff.<br><br>*See* Ps' App. Ex. 10 at PA0126:7-12 [Bazyn dep.: husband checked her in]; Ex. 15 at PA0180:24-PA0181:12 [Brink dep.: Quest employee asked Brink's daughter to help]; Ex. 13 at PA0159:20-PA0160:1 [Grahmann dep.]: relied on another patient, a stranger, to check her in]; Ex. 11 at PA0136:3-PA0137:2, PA0138:15-PA0139:3 [M. Haroyan dep.: relied on other patients – strangers – to sign her in twice before, | |

NYE, STIRLING, HALE & MILLER<br>33 WEST MISSION STREET, SUITE 201<br>SANTA BARBARA, CALIFORNIA 93101

17

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

| | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|
| | and her father once]; Ex. 12 at PA0152:11-PA0154:1, PA0153 [ N. Haroyan dep.: relied on another patient, a stranger, to sign her in, as well as her father on other occasions]; Ex. 14 at PA0171:22-PA0172:5, PA0170:18-23 [Lyons dep.: relied on another patient, a stranger, to check her in, and now has to bring different people to help her check in]; Ex. 16 at PA0189:14-PA0190:3 [Rehder dep.: relied on another patient, a stranger, to check her in]. | |
| 64. | Indeed, internal Quest emails confirm that "[w]ith or without eCheck-in we know from patient feedback patients would like greeters. Most sites do not have greeters and there are no plans to introduce greeters as part of eCheck-in."<br><br>Ps' App. Ex. 23 at PA0281-0282. | |
| 65. | Quest has not offered any record facts to dispute the kiosks lack of any accessible features during the Class Period; to the contrary, the Court, Quest, and Plaintiffs all agree that the kiosk did not provide effective communication.<br><br>Ps' App. Ex. 25. [Montgomery dec.]; Ex. 24 at PA0294-PA0311 [Derry dec.]; Ex. 4 at PA0023:17-23 [Yarrison dep.]. | |
| 66. | There is no factual dispute that Quest's system was designed to keep phlebotomists in the back.<br><br>*See* PA0277-PA0280 ("[t]here are no phlebotomists sitting at front desks available to help register patients."). | |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS
OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|---|
| | | PA0283-PA0284 (the concern is "that the staff is servicing the patients and cannot always be in front of the "house" tending to folks that are struggling with registration. You can't have both at the same time."). Ps' App.  Ex. 19 at PA0222:10-24, PA0238:25-PA029:10, PA0244 [Walsh dep. and exhibit establishing the ECSS was projected to save over $40 million in costs through "efficiencies" earned by reducing phlebotomist contact with patients]); | |
| 67. | | Even following the TFS rollout, a sighted patient walks into a Quest PSC and immediately views either prominently located kiosks or signage which invite him to check in. Ps' App.  Ex. 24 at PA0294-PA0311 [Derry dec.]. | |
| 68. | | In response to Quest's repeated claims under oath that Quest implemented TFS across the Company's PSC network, Plaintiff's accessibility investigator, Mark Derry, investigated 24 Quest PSC locations and discovered Quest's purported "solution", TFS, was riddled with glaring deficiencies at every single location, barring any finding of mootness. Ps' App. Ex. 5 at PA0049-J:2-8 [Carr dep.]; Ex. 4 at PA0024:10-14 [Yarrison dep.]; Ex. 7 at PA0084:20-23 [Grant dep.]; Ex. 24 at X. | |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS
OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|---|
| | | Ps' App.  Ex. 24 at PA0294-PA0311 [Derry dec.].<br><br>*See also* Dkt. 95-1, at 16:9-10. | |
| | 69. | At many Quest locations, Mr. Derry found there is no way for legally blind patients to know TFS even exists.<br><br>Ps' App.  Ex. 24 at PA0294-PA0311 [Derry dec.]. | |
| | 70. | To inform blind patients of TFS, Quest relies on a voice message which is supposed play on a loop from an LCD monitor located in the patient service centers.<br><br>Ps' App.  Ex. 5 at PA0049-K:8-24 [Carr dep.]; Ex. 4 at PA0032:12-19 [Yarrison dep.]; Ex. 7 at PA0083:7-15 [Grant dep.] | |
| | 71. | Quest executive Taylor Carr falsely testified this audio loop is present at all locations.<br><br>Ps' App. Ex. 5 at PA0049-N:14-PA0049-O:12 [Carr dep.]; | |
| | 72. | Mr. Derry's investigation demonstrated that Quest only plays this "content loop" message every 15 to 20 minutes – where it is played at all.<br><br>Ps' App.  Ex. 24 at PA0294-PA0311 [Derry dec.]. | |
| | 73. | There was no audio loop at 14 of 24 investigated locations. | |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|
| | Ps' App. Ex. 24 at PA0294-PA0311 [Derry dec.]. | |
| 74. | At those 14 locations, legally blind patients have no way of even knowing TFS is an option for them.<br><br>Ps' App. Ex. 24 at PA0294-PA0311 [Derry dec.]. | |
| 75. | At the remaining ten (10) locations that did have the audio loop, it was often too faint to be heard in the crowded waiting room<br><br>Ps' App. Ex. 3 at ¶ 2 [Vargas dec.].<br><br>Ps' App. Ex. 24 at PA0294-PA0311 [Derry dec.]. | |
| 76. | In the subset of locations where the audio message could be heard audibly, it is often on a content loop that does not play for up to 30 minutes, and at best, every 7-10 minutes, according to the testimony of Quest executive Marc Yarrison and the Derry Report.<br><br>Ps' App. Ex. 24 at PA0294-PA0311 [Derry dec.]; Ex. 4 at PA0032:12-24 [Yarrison dep.]. | |
| 77. | Quest claims it implemented an audio loop on a video screen which directs patients to check in at the kiosk and that the audio loop repeats every seven to ten minutes.<br><br>Ps' App. Ex. 5 at PA0049-K:8-24, PA0049-L:8-14 [Carr dep.]. | |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|---|
| | | | |
| | 78. | Quest implemented the option of twenty-six (26) different languages on ECSS.<br><br>Ps' App. Ex. 23 at PA0292, PA0288-PA0291, PA0292 (40791);. | |
| | 79. | Regarding the different languages, Quest stated that the "[t]he intent via the experience was to meet a broad audience of primary language they preferred to use."<br><br>Ps' App. Ex. 5 at PA0049-M:18-23, [Carr dep.]. | |
| | 80. | Thus, as part of its alleged "iterative process," Quest received complaints about ECSS being inaccessible to those whose primary language is not English, made the necessary changes, and achieved an improved result that made ECSS accessible to primary speakers of twenty-six (26) languages.<br><br>Ps' App. Ex. 23 at PA0288-PA0291, PA0292 (40791); Ex. 5 at PA0049-M:18-23 [Carr dep.]. | |
| | 81. | The only way for a legally blind individual to seek help from a phlebotomist is through a wholly inaccessible "touchscreen button that was only useable for patients who could read the text on the screen." Dkt. 144 at 2:19-21<br><br>Ps' App. Ex. 19 at PA0223:24-PA225:3 [Walsh dep.]; | |
| | 82. | If a legally blind patient hears the audio loop message eventually and learns about the kiosk, he or she still must physically locate the kiosk; | |

NYE, STIRLING, HALE & MILLER<br>33 WEST MISSION STREET, SUITE 201<br>SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|---|
| | | this is itself a major challenge since the content loop provides no directions to where the kiosks are located.<br><br>Ps' App. Ex. 3 at ¶ 4 [Vargas dec.]; Ps' App. Ex. 24 at PA0294-PA0311 [Derry dec.]. | |
| | 83. | If a legally blind patient has (1) visited a PSC location that has both the audio loop and TFS, (2) waited up to 30 mins to hear the audio message, and (3) has physically located the kiosk, they cannot see the script asking them whether they have experienced COVID symptoms and should leave the PSC.<br><br>Ps' App.  Ex. 25 at  ¶ 38 [Montgomery dec.]; Ex. 7 at PA0079:7-PA0080:3 [Grant dep.]; Ex. 19 at PA0231:23-PA0232:1, PA0244 [Walsh dep. and Exhibit]. | |
| | 84. | As the Mr. Derry's report notes, in many locations Quest never communicates to a theoretical legally blind patient that he or she has entered the queue after having used TFS.<br><br>Ps' App.  Ex. 24 at PA0294-PA0311 [Derry dec.] (finding that in 3 of 13 locations with TFS installed, there is no confirmation message after use of TFS). | |
| | 85. | When a sighted patient checks in at the kiosk, Quest places that patient in line by time of check in with a video monitor in the PSC displaying the patient's wait time and place in queue.<br><br>Ps' App. Ex. 19 at PA0236:12-19, PA0240:9-PA0241:25 [Walsh dep.]. | |

NYE, STIRLING, HALE & MILLER<br>33 WEST MISSION STREET, SUITE 201<br>SANTA BARBARA, CALIFORNIA 93101

23

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|---|
| | | | |
| | 86. | In sharp contrast, Quest immediately communicates to sighted patients as to where they stand in the queue by displaying their name in lights on the TV monitor—a feature designed to reduce patients' anxiety as they wait, a key aim of the E-check-in according to Quest.<br><br>Ps' App. Ex. 19 at PA0236:12-19, PA0240:9-PA0241:25, PA0244 [Walsh dep. and exhibit]. | |
| | 87. | Quest phlebotomists have the ability to turn off the alert which notifies them that a TFS gesture has been performed.<br><br>Ps' App. Ex. 23 at PA0285-PA0287 ("Good feedback on the [check-in] doorbell below and have heard other positive feedback with users liking the doorbell. We expected some might hate it - and if so the phleb can simply turn it off with link that we highlighted with feature tip."")).<br><br>Ex. 20 at PA0252:4-PA0253:1, PA0253:7-9 [Magana dep.] | |
| | 88. | Prudencia Magana testified Quest does not have a bell for patients that enter the PSC, and "the first time that you're alerted to an individual's presence in the waiting room is when they sign in at the kiosk," but this bell can be turned off.<br><br>Ps' App. Ex. 20 at PA0252:4-PA0253:1, PA0253:7-9 [Magana dep.] | |
| | 89. | Even if a blind patient enters the queue successfully and the phlebotomist is alerted, the | |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|---|
| | | legally blind patient is not offered the option of waiting outside during COVID.<br><br>Ps' App. Ex. 25 at ¶ 38 [Montgomery dec.]; Ex. 7 at PA0079:7-PA0080:3 [Grant dep.]; Ex. 19 at PA0231:23-PA0232:1, PA0244 [Walsh dep. and Exhibit]; | |
| | 90. | A legally blind patient cannot scan his or her insurance card at the kiosk like a sighted patient—yet another disparate aspect of the communication<br><br>Ps' App.  Ex. 25 at ¶ 38 [Montgomery dec.]; Ex. 7 at PA0079:7-PA0080:3 [Grant dep.]; Ex. 19 at PA0231:23-PA0232:1, PA0244 [Walsh dep. and Exhibit]. | |
| | 91. | Mr. Derry's report concluded that at *none* of the 24 investigated PSC locations was effective communication provided to legally blind patients at each step of the process.<br><br>Ps' App.  Ex. 24 at PA0294-PA0311 [Derry dec.] | |
| | 92. | ████████████████████████<br>████████████████████<br>████████████████████<br>███████████████<br><br>Ps' App. Ex. 4 at PA0042-PA0048 [Exhibits to Yarrison dep.]; Ex. 19 at PA0242:4-PA0243:20 [Walsh dep.]; Ex. 4 at PA0029:3-PA0031:3 [Yarrison dep.] | |

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

| | | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|---|
| | 93. | Quest contracted with Lilitab to provide the iPad tablet and enclosure for ECSS. Lilitab offered (and offers) kiosks with accessible features and could have provided the same to Quest if so desired.<br><br>Ps' App. Ex. 18 at PA0202:12-19, PA0215:4-18, PA0203:10-PA0204:17, PA0208:10-PA0209:8 [Aronson dep.] | |
| | 94. | The accessible features include a headphone jack placed in a Lilitab enclosure to allow a blind user access to audio from the tablet, and specifically, to access the iPad's built-in voiceover technology.<br><br>Ps' App. Ex. 18 at PA0203:10-PA0204:17, PA0208:10-PA0209:8 [Aronson dep.] | |
| | 95. | This accessible headphone jack cost just $30 per kiosk.<br><br>Ps' App. Ex. 18 at PA0205:9-22 [Aronson dep.] | |
| | 96. | Lilitab also offered (and offers) the option of a tactile keyboard for accessibility for just $95 per enclosure.<br><br>Ps' App. Ex. 18 at PA0206:14-PA0207:15, PA0210:11-25 [Aronson dep.] | |
| | 97. | As explained in the declaration from Rachael Montgomery, "The iPad selected for these kiosks includes built in speech reader capabilities within its standard accessibility suite. This screen reader provides the speech output needed to interact with a kiosk application." | |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

| | | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|---|
| | | Ps' App.  Ex. 25 at ¶ 45 [Montgomery dec.]. | |
| | 98. | Ms. Montgomery's Declaration further describes how Lilitab provides an option to include a standard headphone jack for approximately $30.00 per kiosks, which "would allow Quest to maintain the functionality and utility of its kiosks, while increasing the accessibility for blind users." | |
| | | Ps' App.  Ex. 25 at ¶ 47 [Montgomery dec.]. | |
| | 99. | Quest could have purchased an AudioNav keypad for iOS which costs just $309.75 per kiosk. | |
| | | Ps' App.  Ex. 25 at ¶ 48 [Montgomery dec.]. | |
| | 100. | Accordingly, using Quest's own internal cost saving projections, the Company could have provided at least one independently accessible kiosk option at its 2,152 PSCs for just $935,582 – allowing it to still enjoy a massive cost savings from the ECSS rollout of $39,188,863. | |
| | | Ps' App. Ex. 19 at PA0238:25-PA0239:10, PA0237:15-25, PA0244 [Walsh dep. and exhibit]; Ex. 25 at ¶ 48 [Montgomery dec.]. | |
| | 101. | ██████████████████████████████████ | |

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|
| | Ps' App. Ex. 19 at PA0230:1-24 [Walsh dep.]; | |
| 102. | ██████████████████████████ ██████████████████████████ Ps' App. Ex. 19 at PA0231:23-PA0232:14 [Walsh dep.]; | |
| 103. | ██████████████████████ ██████████████████████████ ██████████████████████ ██████████████████████████ ██████████████████████ ██████████████ Ps' App. Ex. 19 at PA0235:1-8 [Walsh dep.]; Ex. 5 at PA0049-H:11- PA0049-I:24 [Carr dep.]; Ex. 7 at PA0081:14-PA0082:13 [Grant dep.] | |
| 104. | ██████████████████████████ ██████████████████████████ ████████████████████████ ████████ Ps' App. Ex. 5 at PA0049-H:11- PA0049-I:24 [Carr dep.]; | |
| 105. | The record facts, including the testimony of Quest executives Carr, Yarrison, Reilly, Walsh, and Grant, demonstrates that Quest did not perform an undue hardship analysis when deciding whether to make the kiosk accessible. Ps' App. Ex. 4 at PA0027:4-PA0028:9, PA0030:11-PA0031:3 [Yarrison dep.]; Ex. 19 at PA0228:20-PA0229:2 [Walsh dep.]; Ex. 5 at PA0054:2-PA0055:12 [Carr dep.]. | |

28

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS
OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

| | Plaintiffs' Uncontroverted Facts and Supporting Evidence | Defendants' Disputed Facts and Supported Evidence |
|---|---|---|
| | | |
| 106. | When Plaintiffs questioned Quest's Rule 30(b)(6) witnesses under oath not one witness could articulate why making the kiosk accessible created an undue burden to Quest.<br><br>Ps' App. Ex. 4 at PA0027:4-PA0028:9, PA0030:11-PA0031:3 [Yarrison dep.]; Ex. 19 at PA0228:20-PA0229:2 [Walsh dep.]; Ex. 5 at PA0054:2-PA0055:12 [Carr dep.]. | |

## CONCLUSIONS OF LAW

1.      Plaintiffs are entitled to summary judgment of their ADA claim [and Mr. Vargas is entitled to summary judgment of his individual Unruh Act claim] because the undisputed record facts establish: (1) Plaintiffs have a qualified disability; (2) Quest owns, leases or operates the patient service centers as a place of public accommodation; and (3) Quest failed to provide Plaintiffs with "effective communication" during the Class Period.   42 U.S.C. § 12182(a); 28 C.F.R. § 36.303(c).

2.      Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment" of the "services, facilities, privileges, advantages, or accommodations" in places of public accommodation. 42 U.S.C. § 12182(a).

3.      Title III "prohibits anything less than the full and equal enjoyment of places of public accommodation by individuals with disabilities." *Landis v. Washington State Major League Baseball Stadium Pub. Facilities Dist*., 11 F.4th 1101, 1102 (9th Cir. 2021).

4.      Title III requires public accommodations to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services,

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services. 42 U.S.C. § 12181(b)(2)(A)(iii). In weighing what aids or services to provide, "[a] public accommodation should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed." *Id.*

5.     The undisputed record facts, along with certified Class Representative Vargas' first-hand account of his post-TFS visit to Quest, Quest phlebotomist Prudencia Magana's testimony regarding the Company's lack of any accessibility training for its PSC staff, and Quest's introduction of new "complex, interactive communication[]" features at the kiosk that are completely inaccessible to the legally blind establish that Quest cannot carry the "heavy" burden to establish mootness. *Chafin v. Chafin*, 568 U.S. 165, 133 S.Ct. 1017, 1023 (2013); *see also Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc*., 528 U.S. 167, 170 (2000) ("a defendant claiming that its voluntary compliance moots a case bears a formidable burden.").

6.     In the Title II context, a public entity bears the heavy burden to establish that a proposed injunction would pose "undue administrative burden." *K.M. ex rel. Bright v. Tustin Unified Sch. Dist*., 725 F.3d 1088, 1096 (9th Cir. 2013). Plaintiffs are unaware of any federal court in this Circuit that has denied summary judgment in a Title III action based upon a private company's "undue administrative burden" affirmative defense. *See, e.g., Fortyune v. American Multi-Cinema, Inc*., 364 F.3d 1075, 1084 (9th Cir. 2004) (granting summary judgment for Plaintiff against the defendant's claim of undue administrative burden).

7.     With respect to the denial of public accommodations, Plaintiffs need only show that Defendants provided them with less than the full and equal enjoyment of Defendants' places of public accommodation because Defendants did not provide auxiliary aids and services that resulted in effective communication as required by the

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

30

1    ADA. *See* 28 C.F.R. § 36.303(c)(1)(ii).

2         8.    Central to the "full and equal enjoyment" analysis is to what degree

3    disabled patrons are provided a like experience to that of non-disabled patrons.

4    *Baughman v. Walt Disney World Co*., 685 F.3d 1131, 1135 (9th Cir. 2012) ("Public

5    accommodations must start by considering how their facilities are used by non-

6    disabled guests and then take reasonable steps to provide disabled guests with a like

7    experience.")

8         9.    The Department of Justice's ("DOJ") administrative guidance on ADA

9    compliance is entitled to deference. *See Bragdon v. Abbott*, 524 U.S. 624, 646 (1998).

10        10.    Unlike the instant case, other cases denying summary judgment based,

11   in part, upon the fact-intensive nature of the effective communication analysis have

12   involved the non-moving party pointing to record facts which at least arguably

13   contradicted the evidence cited by the moving party. *Poway Unified Sch. Dist. v. K.C.

14   ex rel. Cheng*, No. 10CV897-GPC (DHB), 2014 WL 129086 at *2, *7 (S.D. Cal. Jan.

15   14, 2014) (The School District proffered *facts* about several individualized education

16   program ("IEP") meetings to discuss K.C.'s transition to a high school educational

17   curriculum.); *Kerr v. Heather Gardens Association*, No. 09-cv-00409-MSK-MJW,

18   2010 WL 3791484, at *2 (D. Colo. Sept. 22, 2010) (The Association proffered facts

19   that it purchased a portable amplification system and occasionally provided an

20   interpreter.); *Nix v. Advanced Urology Institute of Georgia, P.C.*, No. 1:18-cv-04656-

21   SDG, 2020 WL 7352559, at *4-5 (N.D. Ga. Dec. 14, 2020) (The Institute proffered

22   facts that one of its employees' abilities to do basic sign language and an exchange of

23   handwritten notes with medical providers was enough to demonstrative effective

24   communication.).

25        11.    As in *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 904-06 (9th Cir.

26   2019), Quest has impeded Plaintiffs' access and thus failed to meet its obligations

27   under the ADA because the ADA's mandate to provide auxiliary aids and services to

28

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

31

make visual materials available to individuals who are blind applies to Quest's kiosks, just as it applied to Domino's Pizza's website and app, because the kiosks are the primary and heavily advertised means of accessing Quest's services.

12. "A violation of the ADA is, by statutory definition, a violation of both the Unruh Act and the DPA [Disabled Persons Act]. Cal. Civ. Code §§ 51(f), 54.1(d)." *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1023 (N.D. Cal. 2012).

13. A party asserting mootness bears a "formidable burden" to establish the Court can provide no effective relief. *Friends of the Earth,* 528 U.S. at 170; *see also, Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (quoting *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006)).

14. Quest has not come close to meeting this burden. Specifically, to demonstrate mootness in a voluntary cessation context, the defendant must establish "there is no reasonable expectation that the wrong will be repeated," which is a "heavy" burden. *United States v. W.T. Grant Co*., 345 U.S. 629, 633 (1953); *see also Friends of the Earth,* 528 U.S. at 189 ("a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur"); *see also United States v. Brandau*, 578 F.3d 1064, 1068 (9th Cir. 2009).

15. If a course of action is mostly completed but "changes can still be made to help alleviate any adverse effects," the case is not moot. *Tyler v. Cuomo*, 236 F.3d 1124, 1137 (9th Cir. 2000). A case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin*, 133 S.Ct. at 1023 (internal citation omitted).

16. A mootness argument must fail where the party arguing mootness has not demonstrated that it would simply not revert to its prior policy once the threat of litigation has diminished. *Sengupta v. City of Monrovia*, No. CV 09-00795 ABC (SJHx), 2010 WL 11515299, at *5-6 (C.D. Cal., July 28, 2010); *See Sheely v. MRI*

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

32

1     *Radiology Network, P.A.*, 505 F.3d 1173, 1186 (11th Cir. 2007) (rejecting mootness

2     claim based on new policy adopted nine months after lawsuit filed); *see also Feldman*

3     *v. Pro Football, Inc.*, 579 F. Supp. 2d 697, 707 (D. Md. 2008) (finding the case was

4     not mooted when "Defendants can simply stop enabling closed captioning on the

5     concourse level video monitors or cease captioning on the LED ribbon boards;

6     nothing in the record indicates that Defendants actions have resulted in permanent

7     changes.")

8         17.     Providing a kiosk that provides blind individuals with effective

9     communication would not create an undue administrative burden. See 42 U.S.C. §

10    12182(b)(2)(A)(iii) ("An entity violates the ADA when it fails to provide a reasonable

11    accommodation unless the entity can demonstrate that such accommodation would

12    create an undue burden or fundamentally alter the nature of the service being

13    offered."); 28 C.F.R. § 36.104 (An "undue burden" is defined as "**significant**

14    difficulty or expense.") (emphasis added); *PGA Tour, Inc. v. Martin*, 532 U.S. 661,

15    688 (2001) ("The ADA requires that reasonable accommodations be provided and

16    paid for by the public accommodation unless providing them would be an undue

17    financial and administrative burden or a fundamental alteration of the program.").

18         18.     Quest cannot show it mooted Plaintiffs' initial claims related to the kiosk

19    as it existed at the time of the complaint filing (2019) because Quest has not presented

20    evidence it took all necessary steps to change its policies and procedures to ensure the

21    access barriers do not recur nor that their kiosks are in full compliance with the

22    requirements of the ADA. (FAC, ¶ 11(a)-(b); *Langer v. Pep Boys Manny Moe & Jack*

23    *of Cal.*, No. 20-cv-06015-DMR, 2021 WL 148237, at *4 (N.D. Cal. Jan. 15, 2021)

24    ("It is not clear that Pep Boys' attempts at compliance have been effective.").)

25         19.     A plaintiff seeking to remedy a denial of effective communication does

26    not need to encounter each access barrier in order to seek full redress. *Chapman v.*

27    *Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 952 (9th Cir. 2011).

28

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

20.     As the Ninth Circuit held in *Chapman,* the encountered access issue—here the inability to effectively communicate via the kiosk at the time of the lawsuit—allows the plaintiff to seek an injunction to correct the other, albeit unencountered communication failures that will subject a blind individual like Class Representative Vargas to future discrimination, provided the threat of such discrimination is real and immediate. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 952 (9th Cir. 2011).

21.     "An affirmative defense, under the meaning of Federal Rule of Civil Procedure 8(c), is a defense that does not negate the elements of the plaintiff's claim, but instead precludes liability even if all of the elements of the plaintiff's claim are proven." *Roberge v. Hannah Marine Corp.,* No. 96–1691, 1997 WL 468330, at *3 (6th Cir.1997). It is a defense on which the defendant has the burden of proof. *See, e.g., Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489, 492 n. 4 (9th Cir.1988).

Dated: May 6, 2022                    Respectfully submitted,

By:   */s/ Jonathan D. Miller*

Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101

Benjamin J. Sweet
(Admitted *Pro Hac Vice*)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Matthew K. Handley
(Admitted *Pro Hac Vice*)
mhandley@hfajustice.com
HANDLEY FARAH &
ANDERSON PLLC
777 6th Street NW
Washington, DC 20001
Telephone: (202) 559-2411

*Attorneys for Plaintiffs Julian Vargas,
American Council of the Blind, and the
Certified Class*

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS
OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT