OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
DAVID RAIZMAN, CA Bar No. 129407
david.raizman@ogletree.com
AMBER L. ROLLER, CA Bar No. 273354
amber.roller@ogletree.com
J. NICHOLAS MARFORI, CA Bar No. 311765
nicholas.marfori@ogletree.com
400 South Hope Street, Suite 1200
Los Angeles, California  90071
Telephone:   213-239-9800
Facsimile:    213-239-9045

Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL
LABORATORIES, INC.; QUEST
DIAGNOSTICS HOLDINGS, INC. and
QUEST DIAGNOSTICS INCORPORATED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN VARGAS, ANNE WEST and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:19-cv-08108 DMG (MRWx)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR LEAVE TO FILE A MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Submitted with *Ex Parte* Application; Declaration of David Raizman; and [Proposed] Order]<br><br>Complaint Filed:  September 18, 2019<br>Trial Date:         November 1, 2022<br>District Judge:     Hon. Dolly M. Gee<br>                          Courtroom 8C, First St.<br>Magistrate Judge: Hon. Michael R. Wilner<br>                          Courtroom 550, Roybal |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................. 1

II.   FACTUAL AND PROCEDURAL HISTORY .......................... 5

    A.    Relevant Factual Background ........................................ 5

    B.    The Allegations of the Complaints.................................. 5

    C.    Quest's September 3, 2021 Motion for Summary Judgment....................................................................... 7

    D.    Plaintiffs' Motion for Class Certification ........................ 9

    E.    The December 7, 2021 Pre-Trial Conference and Hearing on the Parties' Pre-Trial Motions *in Limine*.................. 11

    F.    Adjournment of the Trial Date and Plaintiff's Belated Plan to File a Motion for Summary Judgment ........................ 14

III.  ARGUMENT............................................................... 15

    A.    Legal Standard....................................................... 15

    B.    Good Cause Exists To Grant Quest's Application for Leave to File Its Proposed Motion For Summary Judgment as to the Certified Class Claims.................................. 16

IV.   CONCLUSION............................................................ 18

i                     Case No. 2:19-cv-08108 DMG (MRWx)

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' *EX PARTE* APPLICATION FOR
LEAVE TO FILE A MOTION FOR PARTIAL SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Carnegie Mellon Univ. v. Hoffmann-La Roche, Inc.*,
    148 F. Supp. 2d 1004 (N.D. Cal. 2001)..........................................................15

*Feltzs v. Cox Communications Cal., LLC*,
    No. SACV 19-2002JVS (JDEx), 2021 WL 5050259 (C.D. Cal. Oct.
    27, 2021) .................................................................................................15, 17

*Hoffman v. Tonnemacher*,
    593 F.3d 908 (9th Cir. 2010) ...........................................................4, 15, 17

*Kovacevich v. Kent State Univ.*,
    224 F.3d 806 (6th Cir. 2000) ...............................................................15

*Supreme Foodservice GmbH v. Fluor Intercontinental, Inc.*,
    No. 2:11-cv-08803-SVW-FEM, 2013 WL 12122579 (C.D. Cal. Jan.
    15, 2013) .................................................................................................15, 16

*Whitford v. Boglino*,
    63 F.3d 527 (7th Cir. 1995) .................................................................15, 16

**Other Authorities**

36 C.F.R. pt. 1191, Appendix B, D ...............................................................8

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' *EX PARTE* APPLICATION FOR
LEAVE TO FILE A MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.   INTRODUCTION

Defendants Quest Diagnostics Clinical Laboratories, Inc., Quest Diagnostics Holding, Inc., and Quest Diagnostics Incorporated (collectively, "Quest"), hereby apply *ex parte* for an order granting Quest leave to file a motion for partial summary judgment as to the Class Plaintiffs' claims for injunctive relief under the ADA (the "Certified Class Claims") notwithstanding the limit imposed of one summary judgment motion per side in this Court's Initial Standing Order.  (ECF 13 at 6.) Good cause exists for the Court to grant leave to file a further motion for summary judgment because, *after* Quest filed its initial summary judgment motion, Plaintiff Vargas chose to eschew multiple theories of liability for his proposed class claims and instead defined his proposed class narrowly along a single, specific theory of liability, *i.e.*, that the ADA requires that Quest's Kiosk's be "independently accessible," which definition the Court materially adopted. (*See* ECF 144, 190.)  As a result of Vargas's choice to define a fail-safe class in that manner, the Certified Class Claims now exclusively "turn on whether Vargas can establish that the ADA requires independently accessible kiosks."  (Order Re Plaintiff's Mot. for Class Cert. ["Class Cert. Order" − ECF 190] at 11.)  That liability theory, the sole theory upon which the Class Plaintiffs may prevail, presents a pure question of law that is now dispositive of the Certified Class Claims and will obviate the need for a trial of those claims altogether.

For context, after the Court decided Quest's motion for summary judgment, it certified a nationwide Rule 23(b)(2) injunctive relief class defined by Plaintiffs to include legally blind individuals who visited a Quest patient service center ("PSC") between January 1, 2018 and December 31, 2019, and were denied full and equal enjoyment of Quest's services "*because of Quest's failure to make its e-check-in self-service kiosks [the "Kiosks"] independently accessible.*"  (Class Cert. Order at 4.)  The Court noted that the certified class is premised on a narrow liability theory that "assumes the ADA requires that Quest's kiosks be 'independently accessible.'"

(*Id.*)  "Vargas's class is so narrow that Plaintiffs must prevail on [this] specific legal theory of Quest's liability in order for the class to prevail against Quest.  If Plaintiffs' legal theory fails *or* they prevail on a different theory, Quest will be potentially liable only to the individual plaintiff."  (*Id.* at 5 (emphasis added).)  Quest submits that the legal theory underpinning the Certified Class Claims is not only specific and narrow, it presents a pure legal question that requires no additional findings of fact to decide and is ripe for determination on summary judgment as a matter of law.  Quest's anticipated motion for partial summary judgment as to the Certified Class Claims will argue that, as a matter of law, the ADA does not require that Quest's Kiosks be independently accessible and that Quest is, therefore, entitled to summary judgment dismissing the Certified Class Claims.

Quest raised this argument at the December 7, 2021 Pre-Trial Conference in December 2021 and requested that the Court order briefing on it.  Quest's consistent contention in this litigation has been that it provided the effective communication required under the ADA by making Quest's phlebotomists available to assist blind individuals with its PSC check-in process.  Plaintiffs contend that Quest's phlebotomists were not reliably available and the Class Plaintiffs contend that as a consequence, Quest was *required* to make its Kiosks independently accessible.  Quest's counsel explained at the Pretrial Conference that the Class Plaintiffs' argument sets up a false choice where either the auxiliary aid and service Quest chose to utilize, *i.e.*, phlebotomist assistance, "provide[d] effective communication or [Quest had] to have an independently accessible device."  (Raizman Decl., Ex. A (Dec. 7, 2021 Transcript ("Tr.") at 15:15-16:4); *see id.* at 17:18-20:10.)  But, under the ADA and its supporting regulations, "[t]he cure for not providing effective communication through auxiliary aids and services is to provide auxiliary aids and services that provide effective communication.  The result is not like a toggle switch," where the failure to provide effective communication through auxiliary services means that a public accommodation must provide an independently

accessible device.  (*Id.* at 15:21-23.)  Thus, whether Quest failed to provide auxiliary services by allegedly failing to make its phlebotomists reliably available to assist blind individuals presents an entirely different legal question, and raises an entirely different theory of ADA liability, than whether the Kiosks are required to be independently accessible.  The question of whether the Kiosks are required to be independently accessible is "a purely legal question."  (*Id.* at 19:14-21.)

Hearing this argument at the Pre-Trial Conference, the Court indicated that it would contemplate Quest's argument and its request for further briefing, and directed the parties to contemplate it as well.  (*See id.* at 20:5-10.)

Quest has further contemplated the issue,[1] and maintains that the question of whether Quest's kiosks must be "independently accessible" is a pure question of law that is dispositive of the Certified Class Claims in this case and is appropriately resolved on summary judgment as a matter of law.  The Court's resolution of this question will obviate the need for a trial of the Certified Class Claims and will streamline the remaining individual issues that must be tried.  (*See id.* at 19:18-20:4.)

Moreover, though Quest previously moved for summary judgment, it did so before the Court had certified a class and, indeed, before Plaintiff Vargas had even filed a motion for class certification in which he first defined his proposed class along this narrow legal theory.  Prior to the Court's Class Certification Order, a holding that the ADA does not require the Kiosks to be independently accessible, while useful, was not necessarily dispositive of any of Plaintiffs' claims.  Rather, Plaintiffs could have pursued the legal theory that Quest's provision of phlebotomist assistance (or its alleged inadequacy) did not satisfy the effective communication requirement of the ADA.  Given the way that Plaintiff Vargas chose to frame the class in this case, however, the Class Plaintiffs cannot pursue that theory of ADA

---

[1] As discussed below, Plaintiffs apparently have also contemplated the issue, resulting in a recent radical shift in their litigation strategy regarding the scope of the Certified Class Claims.

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' *EX PARTE* APPLICATION FOR
LEAVE TO FILE A MOTION FOR PARTIAL SUMMARY JUDGMENT

liability.  Thus, while Quest anticipated that Plaintiffs might argue it was required to have independently accessible kiosks, and Quest asked the Court in its prior MSJ to preemptively reject Plaintiffs' request for this *relief* (*see* ECF 120-2 at 11-13), Quest did not have the opportunity to fully and directly address this issue *as it relates to the actual class definition* in its initial motion for summary judgment.  (*See* Tr. at 18:4-9.)

Finally, this application is particularly appropriate in light of the present procedural circumstances.  Long after the Court decided Quest's initial motion for summary judgment, it extended the dispositive motion cut-off date to May 6, 2022, and extended the trial date from January 2022 to November 1, 2022.  Quest filed its initial summary judgment motion by the original motion cut-off date of September 3, 2021, as it was initially required to do — and before Plaintiff Vargas filed his motion for class certification with its narrowly-defined class.  Plaintiffs, however, signaled at the April 25 meet and confer that they now intend to move for summary judgment on the Certified Class Claims on the same factual record that existed when Quest filed its motion, but on a different legal theory that seeks to sidestep the narrow class definition they asked for, were granted and, now, must proceed under.  In these circumstances, Quest should be given the opportunity to effectively present the counter-argument that the class definition precludes recovery under this theory as a matter of law.

For these reasons, Quest submits that good cause now exists for the Court to permit it to file a further motion for summary judgment.  Indeed, Quest's proposed motion will almost certainly promote the just, speedy and inexpensive resolution of this suit, as it may "save all concerned the far greater expenses of a trial," or, at a minimum, narrow and sharpen any issues remaining for trial.  *Hoffman v. Tonnemacher*, 593 F.3d 908, 911-12 (9th Cir. 2010) (citing Fed. R. Civ. P. 1).

4

Case No. 2:19-cv-08108 DMG (MRWx)
MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' *EX PARTE* APPLICATION FOR
LEAVE TO FILE A MOTION FOR PARTIAL SUMMARY JUDGMENT

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   Relevant Factual Background[2]

Quest is a leading provider of diagnostic information services, which includes operating PSCs where blood, urine and other patient specimens are collected for testing (the "services").  During a two-and-a-half-year period starting in mid-2016, Quest replaced paper sign-in sheets for PSC check-in with an electronic means of checking in through touch screen tablets or "kiosks" that were eventually deployed at approximately 2,100 PSCs.  Quest also preserved the option of live employee assistance for those patients who needed or desired it.  In late 2018, Quest embarked on a program, complete by 2021, to offer an additional option for kiosk check-in at the PSC by adding a three-finger swipe ("TFS") solution that permits visually-impaired patients to automatically check-in by swiping three fingers on the face of the kiosks, without having to input any information.  Quest did not replace or reduce staff in connection with enabling TFS and continued to preserve the longstanding option of using employee assistance to check in.  Thus, all patients arriving at Quest, including those with visual impairments, had multiple options for checking in – which included utilizing the employee assistance that has always been available since the paper sign-in sheets were used, using the interactive touchscreen of the Kiosk or simply swiping three fingers in any direction.

### B.   The Allegations of the Complaints

On September 18, 2019, Plaintiff Julian Vargas and (former plaintiff) Anne West[3] filed a Class Action Complaint alleging that Quest violated Title III of the Americans with Disabilities Act (the "ADA") and corresponding California laws by failing to provide auxiliary aids and services that Plaintiffs claim are necessary to

---

[2] The facts underlying this action are detailed in prior filings and presumed to be known to the Court. The operative facts necessary to decide this application are summarized here.

[3] Plaintiff West voluntarily dismissed her claims on May 27, 2021.  (ECF 78.)

provide them and other visually impaired individuals an "equal opportunity to participate in and benefit from [Quest's] health care services."  (ECF 1 ¶ 2.)

On May 15, 2020, Plaintiffs Vargas and West, and additional plaintiff American Council of the Blind ("ACB"), filed a First Amended Class Action Complaint ("FAC").  (ECF 41.)  In addition to adding ACB, the FAC added a claim for relief under Section 504 of the Rehabilitation Act.  (ECF 41.) The FAC alleges that the individual Plaintiffs and members of ACB, who are blind or visually impaired individuals, "were denied full and equal access" to Quest's diagnostic services "as a result of [Quest's] inaccessible Check-in System, which includes e-Check-in touchscreen kiosks for self-service check-in."  (ECF 41 ¶ 4.)  While the FAC broadly complains about Quest's allegedly "inaccessible *Check-in System*" (*id.* (emphasis added)), Plaintiffs' principal contention is that Quest violated the ADA and other applicable laws because its check-in Kiosks allegedly:

> do not contain the necessary technology that would enable a person with a visual impairment to a) enter any personal information necessary to process a transaction in a manner that ensures the same degree of personal privacy afforded to those without visual impairments; or b) use the device independently and without the assistance of others in the same manner afforded to those without visual impairments.

(*Id.* ¶ 5 at 3.)

Plaintiffs' ADA claim seeks a mandatory injunction requiring Quest to take steps to make its check-in kiosks "independently accessible" to visually impaired individuals, that is:

> fully accessible to, and independently usable by individuals with disabilities, through the implementation of necessary technology that would enable persons with a visual impairment to enter any personal information necessary to process a transaction in a manner that

ensures the same degree of personal privacy afforded to those without visual impairments and use the device independently and without the assistance of others….

(*Id.* ¶ 11a at 5.)

Plaintiffs' FAC, however, defined their Nationwide ADA injunctive relief class as "all legally blind individuals who visited a Quest Diagnostics patient service center in the United States and were denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations due to Quest Diagnostics' failure to comply with the ADA's and Rehabilitation Act's auxiliary aids and services requirements during the Class Period."  (ECF 41 ¶ 45 at 14-15 (emphasis added).)  Plaintiffs would later narrow this broad class definition to the one certified by the Court in December 2021.

**C.     Quest's September 3, 2021 Motion for Summary Judgment**

On September 3, 2021, Quest filed a motion for summary judgment or, in the alternative, for partial summary judgment, seeking dismissal or partial dismissal of Plaintiffs' ADA claim, Rehabilitation Act claim and California law claims.  (*See* ECF 95 *et seq.*) Plaintiffs did not move for summary judgment by what had been the September 3, 2021 dispositive motion deadline.

In its summary judgment papers, Quest recounted that "Plaintiffs' Complaints are premised on the putative requirement of an 'independently accessible' Kiosk that can be used without any support whatsoever from Quest phlebotomists.  Starting with the Introduction to their Opposition brief, Plaintiffs continue to embrace this as the premise for this case."  (ECF 120-2 at 11 [citing ECF 109-13 at 4-5].)  Quest argued that, contrary to Plaintiffs' contentions, there simply is no legal requirement that Quest's Kiosks be "'independently accessible,' without any assistance of Quest phlebotomists at a PSC."  (ECF 120-2 at 11.)  And Quest demonstrated that Plaintiffs' attempt to infer such a requirement by analogizing Quest's Kiosks to ATMs is fatally flawed because "the ADA design standards contain explicit

requirements to make ATMs and fare machines accessible," but the Department of Justice "explicitly declined to" apply these standards to other types of devices. (*Compare id.* at 11-12 (citing ADA Standards for Accessible Design ("ADAS") 220, 707 & 707 Advisory (codified at 36 C.F.R. pt. 1191, App. B, D)) *with* ECF 109-13 at 15.)  Rather, as Quest contended in its motion, the ADA requires only that public accommodations employ auxiliary aids and services as necessary to ensure "effective communication" with visually impaired patients, and Quest may satisfy the "effective communication" requirement by making phlebotomists available to assist visually impaired patients with the check-in process.  (*See* ECF 95-1 at 11-15; ECF 120-2 at 11-13.)  Quest argued in its motion that phlebotomists were available to assist blind patients with the original iteration of the kiosks (even before the TFS was implemented) and, therefore, it satisfied the ADA's effective communication requirement.  (*See* ECF 95-1 at 14-15; ECF 120-2 at 7.)[4]

The Court issued its Order Regarding Defendants' Motion for Summary Judgment on October 15, 2021, in which it denied the motion, except granted it as to the Rehabilitation Act claim, Vargas's intentional discrimination claim under the Unruh Act, and as to any non-ADA-based claim under the Disabled Persons Act. (ECF 144 ["MSJ Order"] at 21.)  In its MSJ Order, the Court recognized that "[t]he primary issue here is whether Quest has provided auxiliary aids and services that ensure 'effective communication' with disabled patients as required by the ADA." (*Id.* at 10.)  Significantly, the Court also noted that "ADA regulations provide that a public accommodation may choose which auxiliary aids to provide in order to ensure effective communication, so long as the method chosen 'results in effective

---

[4] With Vargas's class certification motion in hand when Quest filed its reply in support of its summary judgment motion, Quest did invite the Court to rule under Rule 56(g) on the same question Quest would now like addressed.  (ECF 120-2 at 11, n.5 ("If it declines to fully grant Quest's motion, the Court may still grant partial summary judgment holding, for example, that independently accessible devices and primary consideration are not required under the legal theories in this action.").)

8

Case No. 2:19-cv-08108 DMG (MRWx)

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' *EX PARTE* APPLICATION FOR LEAVE TO FILE A MOTION FOR PARTIAL SUMMARY JUDGMENT

communication.'"  *Id.* (quoting 28 C.F.R. § 36.303(c)(1)(ii)).

Analyzing the parties' respective arguments concerning "independent accessibility," the Court determined that Plaintiffs' analogy to ATMs was "not persuasive because the ADA Standards for Accessible Design specify that the requirements that apply to ATMs do not apply to other 'interactive transaction machines.'"  (*Id.* at 12 (citing 2010 ADA, Advisory § 707.)  Arguably, the Court implicitly recognized that the ADA does not contain a *per se* requirement that Quest's Kiosks be independently accessible.

However, without the class definition later sought by Plaintiffs, the Court held that "the real issue here is not whether phlebotomist assistance was adequate under the ADA."  (*Id.* at 12.)  Rather, the question is whether, under the original iteration of the Kiosk system (prior to the TFS), phlebotomists were readily or reliably available to assist visually impaired persons with the check-in process.  (*Id.* at 12-13.)  For this reason, unburdened by the class definition, the Court denied Quest's motion on Plaintiffs' ADA Title III claim, finding that Plaintiffs had "established a triable issue as to whether phlebotomist assistance was available as a means of effective communication" and Quest had, therefore "fail[ed] to show that there is no material issue of fact as to Plaintiffs' *prima facie* case that the original iteration of the kiosks violated the ADA."  (*Id.* at 13.)[5]

### D.  Plaintiffs' Motion for Class Certification

After Quest had filed its motion for summary judgment, Plaintiff Vargas filed a motion for class certification, which sought to certify, among other classes, a Nationwide injunctive relief class for violation of the ADA, consisting of:

> All legally blind individuals who visited a Quest patient service center in
> the United States between January 1, 2018 through December 31, 2019

---

[5] Quest maintains that this either-or/"toggle switch" option between phlebotomist availability and an independently accessible kiosk presents a false dichotomy unsupported by law and contrary to the legislative and regulatory intent.

(the "Class Period"), and were denied full and equal enjoyment of the services, facilities, privileges, advantages, or accommodations **due to Quest's failure to make its e-check-in self-service kiosks independently accessible to legally blind individuals**.

(ECF 107 at 2 (emphasis added).)

Thus, Vargas chose to define the class based upon Plaintiffs' theory that the ADA *required* independently accessible kiosks.  (*Id.*)  The class definition hinged on a singular, specific theory of liability, that Quest violated the ADA *because of* its alleged "*failure to make its e-check-in self-service kiosks independently accessible to legally blind individuals*."  (*Id.*)  As such, Vargas's proposed class definition was not based on one of the theories present in the FAC, namely, that class members were denied full and equal enjoyment of Quest's services *due to Quest's alleged "failure to comply with the ADA's . . .  auxiliary aids and services requirements. . . ."* (ECF 41 ¶ 45 at 14-15 (emphasis added)).  This shift was not accidental, and the Court took notice of it.

In its December 2, 2021 Class Cert. Order, the Court explained that "Vargas draws his proposed class narrowly."  (ECF 190 at 4.)  Since the class is limited to those who were denied full and equal access *because of Quest's failure to make its e-check-in self-service kiosks independently accessible,* "Vargas's framing assumes the ADA requires that Quest's kiosks be 'independently accessible.'"  (*Id.* at 4 (emphasis in original).)[6]  Indeed, in its Class Cert. Order, the Court made numerous references to the narrowness of the certified class and that the class was based upon the liability theory that the kiosks must be independently accessible.  (*See, e.g., id.* at

_____

[6] The Court explained that "[i]n its MSJ Order, the Court did not reach the question of whether the kiosks must be independently accessible, because Plaintiffs offered evidence that established a triable issue of fact as to whether phlebotomists were in fact available to assist blind patients."  (*Id.* at 5 (citing MSJ Ord. at 13).)  But, as argued below, since the certified class is now inextricably tied to the class' liability theory that the ADA required kiosks to be independently accessible, that legal issue is now ripe for consideration.

5 ("Vargas's narrow class definition may ultimately benefit Quest: Vargas's class is *so narrow that Plaintiffs must prevail on a specific theory of Quest's liability* in order for the class to prevail against Quest.") (emphasis added); *id.* at 4 ("Vargas's framing assumes the ADA requires that Quest's kiosks be "independently accessible."); *id.* at 10 ("The only real questions are whether the three-finger swipe has resolved Plaintiffs' claims such that the ADA claim for injunctive relief will become moot and whether the kiosks must be independently accessible."); *id.* at 11 ("Quest correctly points out that this argument — [that all class members were harmed because the kiosks were not independently accessible] — hangs on Plaintiffs' argument that the ADA requires independently accessible kiosks."); *id.* at 11 ("Vargas has defined the proposed class narrowly, and the class claim will turn on whether Vargas can establish that the ADA requires independently accessible kiosks."); *id.* at 13 ("individualized issues regarding whether a phlebotomist offered the class member assistance do not predominate because of the narrowness of the proposed class definition").)

Thus, this Court has already noted that the certified class is premised upon a "specific theory" that Quest violated the ADA "*because*" it failed to provide independently accessible Kiosks.  (*Id.* at 4-5.)  If the Court finds, as Quest maintains it must in its proposed motion for summary judgment, that the ADA does not require independently accessible kiosks, there is no need for a class- wide trial as this is purely a question of law that is now dispositive of the Certified Class Claims and may be resolved on summary judgment.  The question of whether Quest provided effective communication through auxiliary aids and services by having phlebotomists available to assist blind patients – a different theory − would only be relevant to individual claims, not class claims.

**E.      The December 7, 2021 Pre-Trial Conference and Hearing on the Parties' Pre-Trial Motions *in Limine***

At the December 7 Pre-Trial Conference, Quest directly raised this issue, and

requested that the Court direct briefing on whether the ADA requires the Kiosks to be independently accessible as a matter of law and whether the issue itself is susceptible to a legal determination without a trial. (*See* Tr. (Ex. A to Raizman Decl.) at 13:22-20:10.) Quest's counsel initially explained its position as follows:

> There is this misconception, I believe, that is operating here that plaintiffs had perpetuated. [The misconception is that] you have two choices: Either the auxiliary aids and services provide effective communication or you have to have an independently accessible device. I would challenge anyone to find any legal principle that supports that idea.
>
> The cure for not providing effective communication through auxiliary aids and services is to provide auxiliary aids and services that provide effective communication. The result is not like a toggle switch [where not providing effective communication through auxiliary aids and services means] then you must have an independently accessible device. And that appears to be the dichotomy, which I would suggest is a false one, Your Honor, that is operating in this case and is going to trickle through all of the evidence and frankly what needs to be tried in this case.
>
> ….
>
> So I would ask Your Honor, just as a threshold matter, to adhere to its class certification order and put to the parties, perhaps, to brief the legal issue, just from the outset, about whether the device itself needs to be independently accessible. That's … in a nutshell the threshold issue I would like the Court to address.

(*Id.* at 15:15-17:17.)

The Court initially responded, noting that it had addressed this issue in its MSJ Order:

MEMORANDUM OF POINTS AND AUTHORITIES ISO DEFENDANTS' *EX PARTE* APPLICATION FOR LEAVE TO FILE A MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Well, I think that part of the reason why -- I mean, obviously, I would

2    be more than happy to decide the legal issue if it was purely

3    susceptible to a motion for summary judgment type of situation,

4    which you obviously tried.

5    But I found that there were triable issues that affected that particular

6    legal issue.  And so I don't think that it's worthwhile to have you try

7    that again and have me only to reach that same conclusion again.

8  (*Id.* at 17:18-17:25.)

9    Quest's counsel replied:

10    [W]e appear to disagree with the Court that there is this toggle

11    switch between whether the auxiliary aids and services provide

12    effective communication, and if they don't, then you have to have an

13    independently accessible legal device.  That doesn't exist.  We

14    didn't have the opportunity to brief that, Your Honor[.]

15  (*Id.* at 18:1-19:11.)

16    Upon hearing Quest's view of the issue, the Court then asked Quest's counsel,

17  "How do you envision this to be subject to a legal determination?  How would you

18  set that up?"  (*Id.* at 19:12-13.)  Quest's counsel responded:

19    I believe it's a purely legal question. . . . [I]t's a legal determination

20    about whether the device needs to be independently accessible.  And

21    to us, I think, the answer is clear.  We say it's clear that it does not

22    have to be.

23    I think Your Honor's ruling on that alone would be helpful however

24    the trial proceeds.  But in any event, we think it disposes of the need

25    for trial because of the way the class has been defined.  It disposes of

26    the need for trial unless Your Honor says, 'You need to have an

27    independently [accessible] legal device.'  If your Honor ruled that

28    way, we would attempt to prove that the three-finger swipe does

provide an independently accessible device.

(*Id.* at 19:14-20:4.)

After hearing Quest's arguments, the Court stated:  "All right.  I am going to have to contemplate that. . . . You're going to have a chance to contemplate that, too, because, as you will see, you're not going to trial next month."  (*Id.* at 20:5-10.)[7] The Court has not yet decided the parties' *in limine* motions, nor has it issued any order explicitly addressing Quest's request for further briefing on this potentially dispositive legal issue (though it did subsequently order that dispositive motions could be filed through May 6, 2022). (ECF 195-1.)

### F.    Adjournment of the Trial Date and Plaintiff's Belated Plan to File a Motion for Summary Judgment

After the pretrial conference, the Court issued an Order setting a new trial date of November 1, 2022.  (ECF Nos. 195-1, 196.)  The Court also set a new dispositive motion cut-off date of May 6, 2022.  (ECF 195-1.) As noted above, after hearing extensive argument form Quest's counsel on the susceptibility of Plaintiffs' class claims to dismissal as a matter of law based on the class definition, the Court indicated that it and all parties should contemplate the issue further.  Quest clearly has.

Apparently, so have the Plaintiffs. Although they had not filed any summary judgment motion by the original motion cut-off date, on April 18, 2022, Plaintiffs advised Quest of their intent to file a motion for summary judgment on a theory of liability that is not encompassed within the narrow definition of the class as certified by this Court.  (Ex. B to Raizman Decl.)  Instead, they intend to argue that Quest purportedly "has not provided effective communication to … the certified Class members[.]"  (*Id.* at 1.)  Tellingly, Plaintiffs' letter fails to even mention the very

---

[7] The trial was previously scheduled to commence on January 11, 2022.  (*See* ECF 62.)

lynchpin of their chosen class definition, *i.e.*, that Quest violated the ADA because its Kiosks were not "independently accessible."  Quest responded on April 20, 2022, and also requested to confer regarding Quest's anticipated motion for leave to file a dispositive motion for judgment dismissing the Certified Class Claims on the grounds that there is no requirement, as a matter of law, that the Kiosks be independently accessible.  (Ex. C to Raizman Decl.)  Plaintiffs have not consented to Quest's request, so Quest proceeds with this application for leave to file a further motion for summary judgment pertaining solely to the Certified Class Claims. (Raizman Decl. ¶ 5.)

## III.   ARGUMENT

### A.   Legal Standard

"[D]istrict courts have discretion to entertain successive motions for summary judgment[.]"  *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010).  Indeed, "allowing a party to file a second motion for summary judgment is logical, and it fosters the 'just, speedy, and inexpensive' resolution of suits" as it "can save all concerned the far greater expenses of a trial."  *Id.* at 911-12 (citing Fed. R. Civ. P. 1); *see Feltz v. Cox Communications Cal., LLC*, No. SACV 19-2002 JVS (JDEx), 2021 WL 5050259, at *6 (C.D. Cal. Oct. 27, 2021); *Supreme Foodservice GmbH v. Fluor Intercontinental, Inc.*, No. 2:11-cv-08803-SVW-FEM, 2013 WL 12122579, at *3 (C.D. Cal. Jan. 15, 2013).  Similarly, "[a] moving party may renew a motion for summary judgment notwithstanding denial of an earlier motion by showing a different set of facts or some other reason justifying renewal of the motion.'"  *Carnegie Mellon Univ. v. Hoffmann-La Roche, Inc.*, 148 F. Supp. 2d 1004, 1010 n.4 (N.D. Cal. 2001) (quoting *Advanced Semiconductor Materials Am., Inc. v. Applied Materials, Inc.*, 922 F. Supp. 1439, 1442 (N.D. Cal. 1996)).  Thus, a "district court may, in its discretion, allow a party to renew a previously denied summary judgment motion or file successive motions, particularly if good reasons exist."  *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995); *see Kovacevich v. Kent State Univ.*, 224 F.3d 806, 835 (6th

Cir. 2000) (concurring in part, Gilman, J.).

A renewed or successive summary judgment motion is especially appropriate if there is an "'(1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; [or] (3) need to correct a clear error or prevent manifest injustice.'"  *Whitford*, 63 F.3d at 530 (quoting *Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F. Supp. 656, 665 (E.D. Cal. 1986)).  However, a district court also may permit a renewed or successive summary judgment motion in order to address a new or different legal argument.  *See id.*; *see also Supreme Foodservice*, 2013 WL 12122579, at *3.

### B.    Good Cause Exists To Grant Quest's Application for Leave to File Its Proposed Motion For Summary Judgment as to the Certified Class Claims.

Good cause clearly exists here to permit Quest to file a further motion for summary judgment directed to the Certified Class Claims.  *Initially*, Plaintiff Vargas did not move for class certification under his narrow class definition until *after* Quest had filed its motion for summary judgment.  Thus, although Quest touched upon the legal issue concerning independent accessibility in its summary judgment papers (*see* ECF 95-1 at 10-15; ECF 120-2 at 11-13), it did so in a far more limited context where Plaintiffs sought independently accessible Kiosks as a proposed *remedy* for their claims, but where the purported requirement of independent accessibility was only one of multiple potential theories of ADA liability that Plaintiffs might have sought to pursue at trial.  And, more importantly, at that juncture, the Court had not ruled on the legal question of whether the ADA requires independently accessible Kiosks.  It was only after the Court accepted Vargas's request to certify a class along the very specific legal theory that "assumes the ADA requires that Quest's kiosks be 'independently accessible,'" that the question of whether the ADA requires independently accessible Kiosks came to the forefront as a dispositive issue—at least as to the Certified Class Claims.  (ECF 190 at 4.)  Quest, therefore, never had the opportunity to fully brief this

legal issue in its current, highly relevant context.  The Court can and should allow that opportunity now.   *See Feltzs*, 2012 WL 5050259, at *2, 6 (court exercised its discretion to consider defendants' motion for summary judgment of certified class claims even though the court had denied defendant's "prior motion for summary judgment based on similar legal arguments and facts").

Moreover, permitting Quest to file a summary judgment motion as to the Certified Class Claims will promote the "just, speedy and inexpensive resolution" of this lawsuit.  *See Hoffman*, 593 F.3d at 911-12 (citing Fed. R. Civ. P. 1).  Should the Court agree that, as a matter of law, the ADA does not require Quest to have independently accessible Kiosks, then the need for a trial on the Certified Class Claims will be obviated entirely. (S*ee* Tr. at 19:14-20:1); *see Hoffman*, 593 F.3d at 911-12 (citing Fed. R. Civ. P. 1).  Quest maintains, and will seek to demonstrate in its proposed motion, that the choice between whether the ADA requires an independently accessible kiosk or auxiliary aids and services through phlebotomist assistance presents a false dichotomy. (*See* Tr. at 15:15-16:4.)  If Quest's phlebotomist assistance was unavailable or insufficient to ensure that visually impaired individuals were granted equal access to Quest's PSC services, then Quest arguably violated the ADA *because* the auxiliary aid it chose to employ – phlebotomist assistance – failed to meet the "effective communication" requirement of the ADA.   That does not mean, however, that *the ADA requires* Quest to have "independently accessible" Kiosks or that Quest violated the ADA "because of Quest's failure to make its [Kiosks] independently accessible." (ECF 190 at 4.)  Quest submits that alleged phlebotomist unavailability and alleged inaccessibility of kiosks present *two separate* theories of liability.  And the latter theory—that Quest violated the ADA by failing to make its Kiosks independently accessible—hinges entirely on the purely legal question of whether *the ADA requires* Quest's Kiosks to be independently accessible. (*See id.* at 4.)  Quest will argue in its proposed motion that the answer to that question is clearly "no," and that the Court implicitly recognized that—both in its MSJ Order (ECF 144

at 12 (further citation omitted)), and in its Class Certification Order (ECF 190 at 5 (citing 28 C.F.R. § 36.303(c)(1)(ii)).  Should the Court agree with Quest, judgment must be entered on the Certified Class Claims.

*Finally*, Quest's motion for leave to file a further summary judgment motion is also particularly appropriate in light of the fact that the Class Plaintiffs have signaled that they now intend to file a summary judgment motion seeking liability for Quest's alleged failure to provide effective communication through auxiliary aids and services generally, rather than its alleged failure to make the kiosks independently accessible. Given the Class Plaintiffs' intent to eschew the narrow legal theory on which their class was certified, Quest should be granted the opportunity to properly focus the Court on the Class Plaintiffs' certified claims and demonstrate that their sole theory of liability—that Quest violated the ADA because it failed to provide independently accessible kiosks—fails as a matter of law.

## IV.  CONCLUSION

For the reasons stated above, Quest respectfully submits that good cause exists for the Court to exercise its discretion to grant Quest's application for leave to file a further motion for summary judgment on Plaintiffs' Certified Class Claims, addressed to the issue of whether the ADA requires Quest to make its Kiosks independently accessible.

Respectfully submitted,

DATED: May 6, 2022              OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:  /s/ David Raizman
     David Raizman
     Amber L. Roller
     J. Nicholas Marfori

Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.; QUEST DIAGNOSTICS HOLDINGS, INC. and QUEST DIAGNOSTICS INCORPORATED

51420336.v1-OGLETREE