OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
DAVID RAIZMAN, CA Bar No. 129407
david.raizman@ogletree.com
AMBER L. ROLLER, CA Bar No. 273354
amber.roller@ogletree.com
J. NICHOLAS MARFORI, CA Bar No. 311765
nicholas.marfori@ogletree.com
400 South Hope Street, Suite 1200
Los Angeles, California 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL
LABORATORIES, INC.; QUEST
DIAGNOSTICS HOLDINGS, INC. and
QUEST DIAGNOSTICS INCORPORATED

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN VARGAS, ANNE WEST and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,<br><br>        Defendants. | Case No. 2:19-cv-08108 DMG (MRWx)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Filed concurrently with Notice of Motion and Motion; Statement of Uncontroverted Facts and Conclusions of Law; Declaration of David Raizman, Request For Judicial Notice, and [Proposed] Order]<br><br>Date: June 17, 2022<br>Time: 9:30 a.m.<br>Place: Courtroom 8C<br><br>Complaint Filed: September 18, 2019<br>Trial Date: November 1, 2022<br>District Judge: Hon. Dolly M. Gee<br>    Courtroom 8C, First St.<br>Magistrate Judge: Hon. Michael R. Wilner<br>    Courtroom 550, Roybal |

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................... 1

II.     PROCEDURAL BACKGROUND ............................................. 2

III.    LEGAL ARGUMENT............................................................... 6

      A.    Summary Judgment Standard.......................................... 6

      B.    As A Matter Of Law, There Is No Legal Requirement To Provide An Independently Accessible Device .............................. 7

           1.   The ADA Standards For Accessible Design Are The Final Arbiter Of Any Device Design Requirement And Expressly Disclaim Any Obligation To Provide An Independently Accessible Device. ............................................. 7

           2.   The Underlying Obligation In This Action Is For Quest To Provide "Auxiliary Aids or Services" That Result In "Effective Communication" With Its Patients. ........................................... 11

           3.   The Auxiliary Aids and Services (and Subsidiary Effective Communication) Obligations Are Flexible And Within The Purview Of The Place Of Public Accommodation. ............................................. 11

           4.   "Effective Communication" Requires Only "Like" Services, Not Identical Services. ....................... 12

           5.   The Absence Of Adequate Effective Communication Does Not Create An Obligation To Provide An Independently Accessible Device.................. 13

      C.    The Court Should Decide This Question On Summary Judgment Now, Rather Than Leave It For Determination At Trial .................................................................. 16

IV.    CONCLUSION........................................................................ 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................ 6, 7

*Camarillo v. Carrols Corp.*,
    518 F.3d 153 (2d Cir. 2008) ........................................................ 15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................... 7

*Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*,
    765 F.3d 1205 (10th Cir. 2014) ...................................................... 7

*DiCarlo v. Walgreens Boots Alliance Inc.*,
    2016 WL 482982 (S.D.N.Y 2016) ................................................... 9

*Dobard v. San Francisco Bay Area Rapid Transit Dist.*,
    1993 WL 372256 (N.D. Cal. Sept. 7, 1993) ...................................... 13

*Durand v. Fairview Health Servs.*,
    902 F.3d 836 (8th Cir. 2018) ....................................................... 14

*Kennedy v. U.S. Citizenship & Immigration Servs.*,
    871 F. Supp. 2d 996 (N.D. Cal. 2012) .............................................. 7

*Kohler v. Bed, Bath & Beyond of Cali., LLC*,
    778 F.3d 827 (9th Cir. 2015) ......................................................... 7

*McCullum v. Orlando Reg'l Healthcare Sys.*,
    768 F.3d 1135 (11th Cir. 2014) .................................................... 14

*McNeil v. Time Ins. Co.*,
    205 F.3d 179 (5th Cir. 2000) ....................................................... 13

*Nat'l Fed'n of the Blind v. United Airlines Inc.*,
    813 F.3d 718 (9th Cir. 2016) ......................................................... 9

*National Federation of the Blind, Inc. v. Wal-Mart Associates, Inc.*,
    __ F. Supp. 3d __, 2021 WL 4750521 (D. Md. October 12, 2021) ........... 9, 10, 16

*Nidds v. Schindler Elevator Corp.*,
    113 F.3d 912 (9th Cir. 1996) ........................................................................ 7

*Sullivan v. Doctor's Assocs. LLC*,
    No.1:19-cv-719-GHW, 2020 WL 2319295 (S.D.N.Y. May 8, 2020) ................. 15

*West v. Moe's Franchisor, LLC*,
    No. 15-cv-2846, 2015 WL 8484567 (S.D.N.Y. Dec. 9, 2015) .............. 7, 9, 14, 16

*Williams v. McDonald's Corporation*,
    2022 WL 329557 (E.D. Cal. Feb. 3, 2022) ................................................. 9, 10, 16

*Wright v. Renzenberger, Inc.*,
    656 F. App'x 835 (9th Cir. 2016) ........................................................................ 5, 17

**Federal Statutes**

42 U.S.C.
    § 12181(b)(2)(A)(iii) .......................................................................................... 11
    § 12183 ................................................................................................................. 10

Fed. R. Civ. P. 56(a) ...................................................................................................... 6

**Other Authorities**

14 C.F.R. § 382.57 ......................................................................................................... 9

App. B to 28 C.F.R., pt. 36, § 36.201(a) (1991) ......................................................... 12

28 C.F.R. § 36.303 ........................................................................................... 8, 11, 12, 14

ADA Standards for Accessible Design 220, 36 C.F.R. pt. 1191,
    Appendix B, D ...................................................................................................... 8

ADA Standards for Accessible Design 707, 36 C.F.R. pt. 1191,
    Appendix B, D ...................................................................................................... 8

ADA Standards for Accessible Design Advisory 707, 36 C.F.R. pt.
    1191, Appendix B, D ............................................................................................ 8

DOJ, "Effective Communication" (2014),
    https://www.ada.gov/effective-comm.pdf, Appendix 23 ................................. 15

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Julian Vargas's motion for class certification defined the proposed class based on a singular, specific theory of liability, that defendants Quest Diagnostics Incorporated, Quest Diagnostics Clinical Laboratories, Inc. and Quest Diagnostics Holdings, Inc. ("Quest") violated the ADA "*due to* [its alleged] *failure to make its e-check-in self-service kiosks independently accessible to legally blind individuals*."  (ECF 107 at 2.)  This proposed class definition embraced the "inaccessible device" theory of liability stated in the First Amended Complaint, but abandoned the broader theory that Quest violated the ADA *because of* its alleged "*failure to comply with the ADA's . . . auxiliary aids and services requirements....*" (ECF 41 ¶ 45 at 14-15 (emphasis added).)

In its December 2, 2021 Order granting a Rule 23(b)(2) injunctive relief ("fail safe") class, the Court explained that "Vargas draws his proposed class narrowly . . . Vargas's framing assumes the ADA requires that Quest's kiosks be 'independently accessible.'"  (ECF 190) at 4.)  Indeed, in certifying this class, the Court explained that, other than mootness, the only "real question[]" is "whether the kiosks must be independently accessible."  (*Id.* at 10.)  That question, now inextricably linked with the class definition and the class' ADA claim, is a purely legal one that can and should be decided on this motion for summary judgment.

The Class Plaintiffs have thus chosen to pursue *class* liability on the theory that Quest violated the ADA when it installed self-service kiosks in its patient services centers ("PSCs") that were not independently accessible to legally blind individuals.  Quest has consistently maintained there is no such requirement to provide independently accessible kiosks. Lying in the balance between these two conflicting positions on a purely legal question is nothing less than the final adjudication of this action *in favor of or against* the class' ADA claim, an adjudication that Quest maintains should be made in its favor.  This is a purely legal

1  question that deserves the Court's attention and clarification.

2       Turning to the merits of the question, Quest maintains that the law is beyond

3  dispute that it was never required to provide an "independently accessible" Kiosk,

4  that such a requirement was expressly considered and rejected by the Department of

5  Justice, and that the class' claim therefore fails as a matter of law.  Quest relies not

6  only on the Department of Justice's ("DOJ's") express rejection of a design standard

7  for such an independently accessible device, but also on the highly flexible nature of

8  the "auxiliary aids and service" obligation and its subsidiary "effective

9  communication" obligation and Quest's ability to choose from among a variety of

10  methods of "effective communication" that never had to (or have to) include an

11  independently accessible Kiosk.

12       For these reasons, explained more fully below, Quest respectfully requests that

13  the Court grant this motion for partial summary judgment and dismiss the class claim

14  for violation of the Americans with Disabilities Act.

15  **II.    PROCEDURAL BACKGROUND[1]**

16       The gravamen of Plaintiffs' two Complaints in this action is that Quest

17  violated the ADA when it designed, developed and rolled out a Kiosk that was not

18  independently accessible.  (ECF 1, 41.)  The FAC alleged that the individual

19  Plaintiffs and members of plaintiff American Council of the Blind "were denied full

20  and equal access" to Quest's diagnostic services "as a result of [Quest's] inaccessible

21  Check-in System, which includes e-Check-in touchscreen kiosks for self-service

22  check-in."  (ECF 41 ¶ 4 at 3.)  While the FAC broadly complains about Quest's

23  allegedly "inaccessible *Check-in System*" (*id.* (emphasis added)), Plaintiffs' principal

24  contention is that Quest violated the ADA and other applicable laws because its

25  check-in Kiosks allegedly:

26  
27  ───────────────────
   [1]     Quest's accompanying *Ex Parte* Application contains an exhaustive and
   lengthy account of the relevant procedural background leading to this motion.  Quest
28  presents an abbreviated version here to spare duplication.

do not contain the necessary technology that would enable a person with

a visual impairment to a) enter any personal information necessary to

process a transaction in a manner that ensures the same degree of

personal privacy afforded to those without visual impairments; or b) use

the device independently and without the assistance of others in the

same manner afforded to those without visual impairments.

(*Id.* ¶ 5 at 3.)  No surprise then that Plaintiffs' ADA claim seeks a mandatory injunction requiring Quest to take steps to make its check-in kiosks "independently accessible" to visually impaired individuals.  (*Id.* ¶ 11a at 5; Prayer for Relief ¶ b at 26-27.)

Regardless of Plaintiffs' likely contention that their First Amended Complaint challenges the check-in *system* (and not simply the Kiosk), that contention is irrelevant to the class claim and to this motion for summary judgment because Plaintiffs knowingly and intentionally asked the Court to define their nationwide ADA injunctive relief class as those legally blind individuals denied full and equal enjoyment of Quest services "***due to Quest's failure to make its e-check-in self-service kiosks independently accessible*** to legally blind individuals."  (ECF 107 at 2 (emphasis added).)[2]  In fact, Plaintiffs' class certification motion expressly identified the lack of an independently accessible Kiosk as one of the common questions justifying class certification.  (ECF 107-1 at 21.)  In short, there is no doubt that Plaintiffs have premised the class claim on the absence of an independently accessible device.

---

[2]   Vargas's use of the term "independently accessible" in the class definition was not accidental.  Not only did it mark a departure from one of the two theories of liability articulated in the FAC, the class definition is substantively identical to the two class definitions sought by Vargas and Class Counsel in their parallel action in this Court against Quest competitor, Lab Corp, **except** for the use here of the word "independently" to describe the kiosks. (*See* Ex. A to accompanying Request For Judicial Notice at 2.)  Vargas and Class Counsel knew what they were doing when they hinged the class definition on "independent accessibility," and cannot now change course.

More importantly, the Court has accepted Plaintiffs' requested framing of the question.  (ECF 190 at 4 ("Vargas's framing assumes the ADA requires that Quest's kiosks be 'independently accessible.'").)  Indeed, in its Class Certification Order, the Court made numerous references to the narrowness of the certified class and that the class was based upon the liability theory that the kiosks must be independently accessible.  (*See*, *e.g.*, *id.* at 5 ("Vargas's narrow class definition may ultimately benefit Quest: Vargas's class is so narrow that Plaintiffs must prevail on a specific theory of Quest's liability in order for the class to prevail against Quest."); *id.* at 4 ("Vargas's framing assumes the ADA requires that Quest's kiosks be "independently accessible."); *id.* at 10 ("The only real questions are whether the three-finger swipe has resolved Plaintiffs' claims such that the ADA claim for injunctive relief will become moot and whether the kiosks must be independently accessible."); *id.* at 11 ("Quest correctly points out that this argument — [that all class members were harmed because kiosks were not independently accessible] — hangs on Plaintiffs' argument that the ADA requires independently accessible kiosks."); *id.* at 11 ("Vargas has defined the proposed class narrowly, and the class claim will turn on whether Vargas can establish that the ADA requires independently accessible kiosks."); *id.* at 13 ("individualized issues regarding whether a phlebotomist offered the class member assistance do not predominate because of the narrowness of the proposed class definition").)

Before deciding Plaintiffs' motion for class certification, the Court decided Quest's motion for summary judgment, or, in the alternative, for partial summary judgment, which asked the Court to decide that, among other things, "the obligation to provide 'effective communication' under Title III of the ADA permits a place of public accommodation to provide the auxiliary aid or service of its choosing provided that the aid or service provides 'effective communication' within the meaning of the ADA and its regulations."  (ECF 95 at 2.)  In ruling on the motion on October 15, 2021, the Court found a decision on that issue unnecessary because it

Case No. 2:19-cv-08108 DMG (MRWx)
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

found a question of fact as to another of Quest's summary judgment arguments, namely, that it had indeed provided effective communication through appropriate auxiliary aids and services.  (ECF 144 at 12-13; *see also* ECF 190 at 5 (this Court noting that "[i]n its MSJ Order, the Court did not reach the question of whether the kiosks must be independently accessible…").)  However, now that its December 2, 2021 class certification ruling has placed the "independent accessibility" issue at the very center of the class' claim, a determination is not only warranted, but essential to the continued litigation of this matter.

Not only was the Court's certification of the class expressly premised on the denial of access "*because of Quest's failure to makes its … kiosks independently accessible*" (ECF 190 at 4 (original emphasis)), the Court also made clear that "If Plaintiffs' legal theory fails, or they prevail on a different theory, Quest will be potentially liable only to the individual plaintiff.."  (*Id.* at 5.)  For the reasons articulated here, the Court's class certification ruling and class definition makes critical the determination of that threshold legal issue of whether an independently accessible device is required because if Plaintiffs were deprived of access because of the lack of any auxiliary aids and services other than an independently accessible device, the defined class has failed to make the showing required.[3]

On November 16, 2021, when the pre-trial conference papers were due in this action, the parties still awaited the Court's ruling on class certification.  Therefore, it was impossible for Quest fully to account for this construction of the class in its pre-

---

[3] Of course, had Plaintiffs sought (or received) a different class definition at certification, such a threshold ruling may be less significant.  But, had they done so, the same individualized issues about the experiences of thousands of putative class members and the availability to them of auxiliary aids and services and effective communication at 2,100 different PSCs would have abounded and class certification would have been denied.  *See*, *e.g.*, *Wright v. Renzenberger, Inc.*, 656 F. App'x 835, 838 (9th Cir. 2016) (individualized determinations predominate where policies were legally compliant). In fact, many of the same individualized issues that doomed the damages sub-class would also similarly befall the injunctive relief class.

trial papers.[4]  But, it did bring an anticipatory motion *in limine* to exclude evidence of the individualized, anecdotal experiences of class members in visiting the PSCs as such experiences would be irrelevant to the question of whether they were denied services because of the absence of an independently accessible device.  (ECF 169.)  Any alleged service denial would have been because of the alleged inadequacy of Quest's auxiliary aids and services.  After hearing argument on that motion at the pre-trial conference, the Court acknowledged:  "All right.  I am going to have to contemplate that. . . . You're going to have a chance to contemplate that, too, because, as you will see, you're not going to trial next month."  (Transcript of Dec. 7, 2021 Pre-Trial Conference [Ex. A to accompanying Declaration of David Raizman] at 20:5-10.)

Meanwhile, on December 16, 2021, Plaintiffs sought permission under Rule 23(f) from the Ninth Circuit to appeal this Court's ruling on the denial of class certification to the damages sub-class.  (9th Cir. App. No. 21-80128, ECF 1.)  On February 24, 2022, the Ninth Circuit denied permission to bring that appeal, leaving the parties and the Court with only the injunctive relief class. (9th Cir. ECF 8.)  That brings us, once again, to this critical threshold, legal question.

## III.   LEGAL ARGUMENT

### A.   Summary Judgment Standard

Courts must grant summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Rule 56 also allows a court to grant summary judgment on a part of a claim or defense. *See* Fed. R. Civ. P. 56(a). The standard applied to Quest's alternative motion for partial summary judgment is identical to the

---

[4]     Likewise, it could not have brought this motion for summary judgment at that time as the parties were on the verge of a January 11, 2022 trial.  (ECF 62 at 3 (prior Scheduling Order).)

standard for a motion seeking summary judgment. *See*, *e.g.*, *Kennedy v. U.S. Citizenship & Immigration Servs.*, 871 F. Supp. 2d 996, 1006 (N.D. Cal. 2012).

While Quest bears the initial burden of showing the district court "that there is an absence of evidence to support [Plaintiff's] case" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)), once making such a showing, Quest is entitled to summary judgment unless Plaintiffs establish, with concrete evidence, that there remains a genuine issue of material fact: "facts that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 247-48, 256. The "substantive law" determines which facts are material. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1996). To create a "genuine" issue about such a material fact, Plaintiffs must produce a "sufficient" "quantum of evidence" that a "reasonable jury" could return a verdict in her favor; evidence that is "merely colorable, or is not significantly probative," is insufficient. *Id.*

**B.   As A Matter Of Law, There Is No Legal Requirement To Provide An Independently Accessible Device**

**1.   The ADA Standards For Accessible Design Are The Final Arbiter Of Any Device Design Requirement And Expressly Disclaim Any Obligation To Provide An Independently Accessible Device.**

The Ninth Circuit has established that the ADA Standards for Accessible Design contain the final word on any design requirement.  *Kohler v. Bed, Bath & Beyond of Cali., LLC*, 778 F.3d 827, 832-33 (9th Cir. 2015); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1221 (10th Cir. 2014) (same) ("[O]therwise, an entity's decision to follow the standard and build an 'accessible' facility would have little meaning.").  *See also West v. Moe's Franchisor, LLC*, No. 15-cv-2846, 2015 WL 8484567, at *4 (S.D.N.Y. Dec. 9, 2015) ("[G]iven the labyrinth of city, state, and federal regulations, it is not appropriate for this Court to announce new ones.").

Throughout this litigation, Plaintiffs have been unable to cite to any authority requiring an "independently accessible" device because there is no such authority. Instead, Plaintiffs have cited to a variety of other readily distinguishable authority to prop up this invalid proposition.  Plaintiffs have pointed to ATM cases to argue that Quest's Kiosks should be made independently accessible in the same manner as the ATMs.  (ECF 111 at 15.)  But the fundamental flaw of this argument is that the ADA design standards contain explicit requirements to make ATMs and fare machines independently accessible, but contain none for any other type of transactional device. *See* ADA Standards for Accessible Design ("ADAS") 220, 707 (codified at 36 C.F.R. pt. 1191, App. B, D.  Among other things, ATMs must have the audio output, headphone jack and tactile keypad that Plaintiffs seek here.  ADAS 707.  Indeed, the DOJ considered applying these same design standards to a broader category of devices, but explicitly declined to do so.  *See* ADAS 707 Advisory ("Interactive transaction machines (ITMs), other than ATMs, are not covered by Section 707."); *see also* ECF 144 at 12 (this Court finding that "Plaintiffs' analogy is not persuasive because the ADA Standards for Accessible Design specify that the requirements that apply to ATMs do not apply to other 'interactive transaction machines'").

Moreover, the notion that "effective communication" requires an independently accessible device is undermined by the "effective communication" regulation itself, which lists multiple "services" that can be rendered to achieve lawful communication.  *See* 28 C.F.R. § 36.303(c)(1), (2) ("auxiliary aids and services" include these services − interpreters, notetakers, qualified readers).  If these types of "services" can provide "effective communication," then, by definition, the devices themselves do not need to be independently accessible.  But the analysis does not need to end there.  The DOJ's Statement of Interest filed in this action (ECF 118 – the "SOI") nowhere contains or repeats or even alludes to Plaintiffs' novel contention for an "independently accessible" device.  Instead, it states "[t]o be clear, the United States does not contend that Quest must provide a particular auxiliary aid

or service."  (SOI at 10.)

All of Plaintiffs' authority and their attempts to distinguish Quest's authority on this issue are unavailing.  First, all of Plaintiffs' cases cited in their Opposition to summary judgment (ECF 111 at 14-17) are either ATM cases or an airport kiosk case, making them readily distinguishable because ADA 707 has explicit requirements for ATMs (excluding ITMs, like the Kiosk) and because the Air Carrier Access Act regulations have explicit accessibility requirements for airport kiosks.  14 C.F.R. § 382.57; *Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 722–23, n.2 (9th Cir. 2016).  Second, Plaintiffs' attempts to distinguish the Freestyle soda machine cases (*West v. Moe's Franchisor*, 2015 WL 8484567 (S.D.N.Y. 2015) and *DiCarlo v. Walgreens Boots Alliance Inc.*, 2016 WL 482982 at *2 (S.D.N.Y 2016)) as inapposite (because, they say, those cases were decided on motions to dismiss, not for summary judgment), is ironic because those courts rejected the necessity of independently accessible devices *as a matter of law*, without the need to explore a factual record.

Finally, the recent decisions in *National Federation of the Blind, Inc. v. Wal-Mart Associates, Inc.*, __ F. Supp. 3d __, 2021 WL 4750521 (D. Md. October 12, 2021) and *Williams v. McDonald's Corporation*, 2022 WL 329557 (E.D. Cal. Feb. 3, 2022), are directly on point in dismissing claims that touchscreen kiosks provided to all customers discriminated against the blind. In *NFB v. Wal-Mart*, the court granted summary judgment in favor of Wal-Mart whose self-service, check-out kiosks were admittedly inaccessible to the blind, holding "Staff assistance is sufficient to provide effective communication in a retail transaction." *Id.* at *11.

Addressing an argument that design standards applicable to ATMs could be applied to the Wal-Mart kiosk, the court first found dispositive that Advisory 707 to the 2010 ADA Standards exempted interactive transaction machines from the requirements in Section 707, holding that "the absence of an applicable Design Standard demonstrates that Defendant is in full compliance with 42 U.S.C. § 12183,

and forecloses an accessible design claim under this provision."  *Id.* at *10.[5]

Turning next to the "auxiliary aids and services" requirement on which Plaintiffs

here rely, the *NFB v. Wal-Mart* court cited much of the law recited above to the

effect that auxiliary aids and services do not need "'to take a particular form,' as long

as they provide effective communication."  *Id.* at *10, quoting *Feldman v. Pro

Football, Inc.*, 419 F. App'x 381, 391 (4th Cir. 2011).  The court therefore endorsed

Wal-Mart's use of "qualified readers" as an auxiliary aid or service and rejected the

need to create an independently accessible device, citing the Freestyle soda machine

cases for support.  *NFB v. Wal-Mart*, at *12.  Finally, addressing the argument that

the absence of an independently accessible device denies NFB "full and equal

enjoyment," the court cited to the well-established DOJ guidance cited above, and

adopted in *Feldman*, that full and equal enjoyment "does not mean that an individual

with a disability must achieve an identical result or level of achievement as persons

without a disability."  *Id.* at 14.  It is thus clear, as a matter of law, that a public

accommodation can fulfill its obligations under Title III without providing an

independently accessible Kiosk.  *See also Williams v. McDonald's Corporation*, at

*3 (granting motion to dismiss claim that absence of an independently accessible

ordering device in the drive-thru lane violated the ADA).

In sum, it is beyond dispute and established as a matter of law that there is no

requirement for an "independently accessible" Kiosk.[6]

---

[5] The fact that *Wal-Mart* was not styled as a class action is irrelevant for purposes of
the legal analysis of whether non-ADA 707 kiosks must be independently accessible.
The *Wal-Mart* court addressed this issue directly and dispositively in a factual
scenario virtually identical to that in this case.  In fact, like the Plaintiffs in this case,
Wal-Mart had submitted expert testimony to argue that the ADA 707 kiosk standards
should apply to non-airport or ATM kiosks to render them independently accessible.
The court summarily and soundly rejected this argument, finding no legal
requirement that such kiosks be independently accessible. *See Wal-Mart* at *9-10.

[6] Of course, if this Court does rule, against all authority, that the Kiosk must be
"independently accessible," Quest maintains that its Three Finger Swipe solution
moots out Plaintiffs' claims.

**2.      The Underlying Obligation In This Action Is For Quest To Provide "Auxiliary Aids or Services" That Result In "Effective Communication" With Its Patients.**

The fact that the design standards do not require an independently accessible Kiosk, and expressly discredit such a requirement, should surprise no one.  Indeed, this is fully supported by the statutory and regulatory requirements on which this action is based.  The provision of Title III of the ADA on which Plaintiffs (and the class) rely requires public accommodations to "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services."  42 U.S.C. § 12181(b)(2)(A)(iii) (emphasis added).  Relevant to this claim, the DOJ explained this "auxiliary aids and services" obligation in 28 C.F.R. § 36.303 ("Section 36.303"), which provides that public accommodations must "furnish appropriate auxiliary aids and services where necessary to ensure *effective communication* with individuals with disabilities." Section 36.303(c) (emphasis added). Further reflection on that obligation and the broader "auxiliary aids and services" obligation that subsumes it is appropriate.

**3.      The Auxiliary Aids and Services (and Subsidiary Effective Communication) Obligations Are Flexible And Within The Purview Of The Place Of Public Accommodation.**

As the DOJ explained shortly after the ADA's passage:

The auxiliary aid requirement is a flexible one. A public accommodation can choose among various alternatives as long as the result is effective communication. . . . Similarly, a clothing boutique would not be required to have Brailled price tags if sales personnel provide price information orally upon request.

App. B to 28 C.F.R. pt. 36, § 36.303.  As emphasized in the regulation itself, "the ultimate decision as to what measures to take rests with the public accommodation,

11                    Case No. 2:19-cv-08108 DMG (MRWx)

1  provided that the method chosen results in effective communication." 28 C.F.R. §
2  36.303(c)(1)(ii).

3      The DOJ's reference to "Brailled price tags" in a clothing shop is instructive
4  here because we understand the DOJ to tell us that just because some further, or
5  arguably better, means of "effective communication" is available does not mean that
6  it is required.  Modernizing the DOJ's example from Brailled price tags to a voiced
7  QR Code reader yields the same result.  Better communication, or even a disabled
8  customer's preferred communication is not required; all that is required is effective
9  communication.  What this passage tells us here is the claimed availability and
10  viability of a voice-capable Kiosk with tactile keyboard does not mean that anything
11  legally requires *that form* of effective communication.

12      Moreover, the type of effective communication used hinges on the nature,
13  length and complexity of the communication in question. 28 C.F.R. 36.303(c)(1)(ii)
14  ("The type of auxiliary aid or service necessary to ensure effective communication
15  will vary in accordance with the method of communication used by the
16  individual; the nature, length, and complexity of the communication involved; and
17  the context in which the communication is taking place.").

18      **4.   "Effective Communication" Requires Only "Like" Services,**
19      **Not Identical Services.**

20      The DOJ made clear at the time of the ADA's passage that:
21       Full and equal enjoyment [under Title III of the Americans with
22       Disabilities Act ("ADA")] does not mean that an individual with a
23       disability must achieve an identical result or level of achievement as
24       persons without a disability.

25      DOJ, "Guidance on ADA Regulations," App. C to 28 C.F.R., Part 36, §
26  36.201(a) (1991).  The DOJ's SOI (ECF 118) does not disclaim that pronouncement,
27  nor could it.  As the DOJ acknowledges in that submission, absolute equality of
28  access to every discrete feature available to all guests is not required; a Title III

12    Case No. 2:19-cv-08108 DMG (MRWx)

entity must "tak[e] reasonable steps to afford individuals with disabilities a 'like experience.'"  (SOI at 8 (quoting *Baughmann v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012).)  Holding otherwise would actually chill the ability of Quest and other public accommodations to offer new products and services to guests unless they could be made *identically accessible* to persons with all manners and degree of disabilities.  That was not the DOJ's interpretation in 1991 in the immediate wake of the ADA's passage, and the statute has not changed. Reconciling the jurisprudential and metaphysical challenge of legislatively-mandated "equality," the Fifth Circuit explained that, while "it is literally possible, though strained, to construe 'full and equal enjoyment' to suggest that the disabled must be able to enjoy every good and service offered to the same and identical extent as those who are not disabled ... such a reading is plainly unrealistic, and surely unintended, because it makes an unattainable demand." *See McNeil v. Time Ins. Co.*, 205 F.3d 179, 187 (5th Cir. 2000); *see also Dobard v. San Francisco Bay Area Rapid Transit Dist.*, 1993 WL 372256, at *3 (N.D. Cal. Sept. 7, 1993).

> **5.** **The Absence Of Adequate Effective Communication Does Not Create An Obligation To Provide An Independently Accessible Device.**

The unassailable principle established above that "independently accessible" Kiosks are not required as a matter of law, when married with the Court's definition of the certified class as those denied equal access to services as a result of the lack of such a Kiosk, ought to result in the dismissal of Plaintiffs' class claims.  As the Court noted, "[i]f Plaintiffs' legal theory fails, or they prevail on a different theory, Quest will be potentially liable only to the Plaintiff."  (ECF 190 at 5.)

And as argued by Quest at the pre-trial hearing, the Court need not base its decision on the legal issue of whether Plaintiff Class can even pursue a claim of harm solely from the lack of an independently accessible kiosk on any evaluation of whether Quest provided effective communication through auxiliary aids and

13

services.  Those are two entirely separate issues and they do not present, as Plaintiffs imply, an interrelated, "if not one, then the other" choice.  Simply put, the failure of a public accommodation's chosen "auxiliary aids or services" to deliver effective communication does not somehow translate to a requirement for an "independently accessible" Kiosk that is nowhere required (and explicitly **not** required).  The failure of the chosen methodology would mean simply that the public accommodation would be required to select another methodology, not an automatic switch to an explicitly-rejected methodology, an independently accessible Kiosk.  In short, because the law is clear that Plaintiffs cannot force Quest to provide, or this Court to impose, an independently accessible kiosk as the means of effective communication, Plaintiffs' Class, as defined, must fail.

Plaintiffs have not cited to any authority – because none exists – requiring this extraordinary result.  Nearly all of the authority cited above and the DOJ's own words are instructive here:

> The auxiliary aid requirement is ***a flexible one***.  A public accommodation can choose among various alternatives as long as the result is effective communication.

App. B. to 28 C.F.R. pt. 36, § 36.303 (emphasis added).  Accordingly, it is well-settled that Title III of the ADA does not require a covered entity to provide the specific type of auxiliary aid demanded by a plaintiff.  *McCullum v. Orlando Reg'l Healthcare Sys.*, 768 F.3d 1135, 1147 (11th Cir. 2014) (holding that regulations do not require all demanded auxiliary aids and services, explaining that "construing the regulations in this manner would effectively substitute 'demanded' auxiliary aid for 'necessary' auxiliary aid") (citing and quoting *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 343 (11th Cir. 2012)); *Durand v. Fairview Health Servs.*, 902 F.3d 836, 842 (8th Cir. 2018); *West v. Moe's Franchisor, LLC*, No. 15CV2846, 2015 WL 8484567, at *3 (S.D.N.Y. Dec. 9, 2015) (holding that ADA does not require alteration of the touchscreen soda machines and noting: "Plaintiffs may be correct

that technological additions to the Freestyle machines are both feasible and preferable.  However, under the ADA, effective assistance from Moe's employees acting as "qualified readers" is sufficient.").

The analogy to the DOJ guidance's reference to restaurant menus is instructive.  Like the Kiosk, a menu is a means of access to a restaurant's food and beverages and is plainly inaccessible to the blind without a restaurant employee's assistance.  A restaurant could surely provide an audible or Braille version of its menu for its blind diners, but the DOJ guidance on "effective communication" is clear that "[i]n a lunchroom or restaurant, reading the menu to a person who is blind allows that person to decide what dish to order."  DOJ, "Effective Communication" (2014), https://www.ada.gov/effective-comm.pdf, App. 23.  *See also Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008) ("While restaurants are not necessarily required to have on hand large print menus that [the plaintiff] would be able to read, they are required to ensure that their menu options are effectively communicated to individuals who, like [the plaintiff], are legally blind.").

Extending the analogy to Plaintiff's demand for an independently accessible device, this very demand has likewise been soundly rejected:  "The law is crystal clear that the ADA does not require DAL to force its franchisees to *adopt a specific technological solution*, so long as the franchisees can ensure that their employees can communicate effectively with [disabled] individuals."  *Sullivan v. Doctor's Assocs. LLC*, No.1:19-cv-719-GHW, 2020 WL 2319295 at *5 (S.D.N.Y. May 8, 2020) (emphasis added).  The DOJ's own assertion in the SOI filed in this action also addressed this question:  "To be clear, the United States does not contend that Quest must provide a particular auxiliary aid or service."  (SOI at 10.)

Taken together, this authority defeats any assertion by Plaintiffs that the absence of adequate effective communication magically equates with any requirement for an independently accessible Kiosk, especially where, as here, the ADA Standards expressly reject such a device.  For this reason, the Certified Class

of "legally blind individuals who visited a Quest patient service center between January 1, 2018 and December 31, 2019, and were denied full and equal enjoyment of Quest's services because of Quest's failure to make its e-check-in self-service kiosks [the "Kiosks"] independently accessible" – is based on a faulty legal premise that is fatal to the class claims.  It would be no different if the plaintiffs in *Moes*, *Wal-Mart* (had it been a class action), or *Williams* had framed their certified class as one denied services "because the [soda machine/checkout/drive-through window] kiosks were not independently accessible."  Each of these decisions makes clear that such a styled class would fail as a matter of law.  *Moe's Franchisor*, No. 15CV2846, 2015 WL 8484567, at *3; *Wal-Mart Associates, Inc.*, __ F. Supp. 3d ___, 2021 WL 4750521 at *10-11; *Williams*, 2022 WL 329557 at *3. The Certified Class claims here must also fail.

### C.   The Court Should Decide This Question On Summary Judgment Now, Rather Than Leave It For Determination At Trial

The Court may question the prudence of deciding this question now when it can reserve this question for resolution at trial, or partially resolve it through determination of Quest's motion *in limine* No. 5 (ECF 169).  Quest maintains that the Court's class certification decision, recently upheld by the Ninth Circuit, makes this question ripe for adjudication and that the interests in swift and efficient justice compel its resolution.

First, if the Court agrees with Quest's assertion, adjudication of this issue now will also dispose of the class claim as a matter of law, converting this action into a much smaller, more manageable and far less complex one addressing the individualized experiences of Mr. Vargas (and possibly certain ACB members) on a limited number of occasions.

Second, as the Class is currently framed as hinged on the requirement for an independently accessible device, there is literally no evidence or facts to be introduced at trial with respect to the original Kiosk.  For example, if the Court were

to decide that an independently accessible device was required as a matter of law, that would also obviate the need for further adjudication because there is no dispute that the original iteration of the Kiosk, and the one in use during the defined Class Period, was not independently accessible to those members of the class who had no vision.  Or, if the Court disagrees with Quest, as a matter of law, and rules that an independently accessible Kiosk may have been required if Quest failed to deliver effective communication, and/or that an independently accessible Kiosk is required for some other reason, that understanding will permit the parties to frame their proof accordingly and will also identify an issue for eventual resolution at the Court of Appeal.[7]

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

---

[7] Furthermore, if this case becomes about the adequacy of Quest's effective communication among various members of the class, while acknowledging that an independently accessible device was not required, the Court may choose to reconsider its certification of the class because each visit, by each class member, to each PSC, creates endless individualized questions inappropriate for class determination. *See*, *e.g.*, *Wright v. Renzenberger, Inc.*, 656 F. App'x 835, 838 (9th Cir. 2016) (individualized determinations predominate where policies were legally compliant).

# IV.     **<u>CONCLUSION</u>**

For all of the reasons stated above, Quest respectfully requests that the Court grant its motion for partial summary judgment and dismiss the class' ADA claim with prejudice.

Respectfully submitted,

DATED: May 6, 2022                       OGLETREE, DEAKINS, NASH, SMOAK &
                                         STEWART, P.C.


By:  /s/ David Raizman
     David Raizman
     Amber L. Roller
     J. Nicholas Marfori

Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL
LABORATORIES, INC.; QUEST
DIAGNOSTICS HOLDINGS, INC. and
QUEST DIAGNOSTICS INCORPORATED