OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
DAVID RAIZMAN, CA Bar No. 129407
david.raizman@ogletree.com
AMBER L. ROLLER, CA Bar No. 273354
amber.roller@ogletree.com
J. NICHOLAS MARFORI, CA Bar No. 311765
nicholas.marfori@ogletree.com
400 South Hope Street, Suite 1200
Los Angeles, California 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL
LABORATORIES, INC.; QUEST
DIAGNOSTICS HOLDINGS, INC. and
QUEST DIAGNOSTICS INCORPORATED

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN VARGAS, ANNE WEST and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:19-cv-08108 DMG (MRWx)<br><br>**DECLARATION OF DAVID RAIZMAN IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Filed Concurrently with Notice of Motion and Motion; Memorandum of Points and Authorities; Statement of Uncontroverted Facts and Conclusions of Law; [Proposed] Order; and Request For Judicial Notice]<br><br>Date: June 17, 2022<br>Time: 9:30 a.m.<br>Place: Courtroom 8C<br><br>Complaint Filed: September 18, 2019<br>Trial Date: November 1, 2022<br>District Judge: Hon. Dolly M. Gee<br>Courtroom 8C, First St.<br>Magistrate Judge: Hon. Michael R. Wilner<br>Courtroom 550, Roybal |

## <u>DECLARATION OF DAVID RAIZMAN</u>

I, David Raizman, declare and state as follows:

1.      I am an attorney licensed to practice law before all courts of the State of California and all federal courts in the State.  I am an attorney and shareholder at the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., counsel of record for defendants Quest Diagnostics Clinical Laboratories, Inc., Quest Diagnostics Holdings, Inc., and Quest Diagnostics Incorporated (collectively, "Quest").  I make this declaration in support of Quest's Motion for Partial Summary Judgment (the "Motion").  I have personal knowledge of all the facts set forth below.  If called upon to testify to these facts, I could and would do so competently.

2.      On December 7, 2021, the Court conducted a Pre-Trial Conference in this action.  On April 8, 2022, I requested that the court reporter for that Conference prepare a transcript of that Conference (ECF 204), which she later provided. Attached as **Exhibit A** to this declaration is a true and correct copy of the transcript prepared by the court reporter.

3.      On April 25, 2022, I met and conferred with Alison Bernal and Benjamin Sweet, counsel for plaintiffs, on Quest's anticipated (a) *Ex Parte* Application for leave to file a dispositive motion, and (b) the Motion.

I declare under penalty of perjury under the laws of the State of California and the United States that the facts stated above are true and correct.

Executed on May 6, 2022, at Phoenix, Arizona.


/s/ David Raizman
David Raizman

DECLARATION OF DAVID RAIZMAN IN SUPPORT OF DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

# EXHIBIT A

1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3           WESTERN DIVISION

4              -oOo-

5    HONORABLE DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

6

7    JULIAN VARGAS, ANNE WEST, and
     AMERICAN COUNCIL OF THE BLIND,
8    individually on behalf of
     themselves and all others
9    similarly situated,

10              Plaintiffs,

11      v.                           No. 2:19-cv-08108-DMG

12   QUEST DIAGNOSTICS CLINICAL
     LABORATORIES, INC., QUEST
13   DIAGNOSTICS HOLDINGS, INC.,
     QUEST DIAGNOSTICS INCORPORATED;
14   and DOES 1-10, inclusive,

15              Defendants.

16

17      REPORTER'S TRANSCRIPT OF MOTION HEARING

18          LOS ANGELES, CALIFORNIA

19            DECEMBER 7, 2021

20   _____

21

22          SUZANNE M. MCKENNON, CRR, RMR
            UNITED STATES COURT REPORTER

23          UNITED STATES COURTHOUSE
            350 W 1st STREET, ROOM 3411
24          LOS ANGELES, CALIFORNIA 90012
                 (213) 894-3913
25            suzanne@ears2hands.com

1    APPEARANCES:

2    On Behalf of the Plaintiffs:

3         JONATHAN D. MILLER, Attorney at Law
          ALISON M. BERNAL, Attorney at Law
4              Nye, Stirling, Hale & Miller, LLP
               33 W Mission Street, Suite 201
5              Santa Barbara, California 93101

6

7    On Behalf of the Defendants:

8         DAVID H. RAIZMAN, Attorney at Law
               Ogletree Deakins Nash Smoak and Stewart PC
9              400 S Hope Street, Suite 1200
               Los Angeles, California 90071

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              (Proceedings commencing at 4:34 p.m.)
2         THE COURTROOM DEPUTY:  Please remain seated and come
3    to order.  Calling Item Number 4, CV 19-8108-DMG, Julian
4    Vargas, et al., versus Quest Diagnostics Clinical Laboratories,
5    Inc., et al.
6       Appearances for plaintiffs first.
7         MR. MILLER:  Yes.  Good afternoon, Your Honor.
8    Jonathan Miller for the plaintiffs.
9         MS. BERNAL:  And good afternoon, Your Honor, Alison
10   Bernal for the plaintiffs.
11        MR. RAIZMAN:  Good afternoon.  David Raizman for the
12   defendants.
13        THE COURT:  Good afternoon, Counsel.
14      I assume you've had a chance to review the Court's
15   tentative on the motions in limine.
16        MR. MILLER:  We have, Your Honor.  Thank you.
17        THE COURT:  Would anyone like to address the
18   tentative?
19        MR. MILLER:  From the plaintiffs' side, Your Honor.
20   I'm sorry.
21        THE COURTROOM DEPUTY:  Please take the lectern.
22        MR. MILLER:  Thank you very much, Your Honor.  From
23   the plaintiffs' side, we seek only clarification on motion in
24   limine number 4 from Quest.  Specifically it appears that the
25   Court is inclined not to allow any other evidence that features
```

1    may have been introduced after the class period.  And, again,

2    it says that that evidence, however, could become relevant if

3    Quest's asserts a mootness defense if they took subsequent

4    action after the class period to moot the claims.

5         You know, it is plaintiffs' position that there are new

6    features available on the kiosk, for example, the wait by text

7    during COVID, the inquiry about whether you're experiencing

8    COVID symptoms, and several other similar type of inquiries

9    that -- again, we're not in the class period.  But if Quest

10   contends that they've taken action to effectively allow

11   communication so that, when you walk into a Quest and you say,

12   "I would like to wait outside," or "I'm experiencing COVID

13   symptoms," we believe those type of things would become

14   relevant if Quest says that they are now offering effective

15   communication and blind people still can't identify whether

16   they're experiencing COVID symptoms or have the ability to wait

17   outside by text.

18        We just want to be clear that we would have that ability

19   to introduce that type of evidence if Quest indeed asserts a

20   subsequent mootness defense after the class period.

21             THE COURT:  Yes.  Why don't we ask Mr. Raizman now?

22             MR. RAIZMAN:  Your Honor, if the question is whether

23   Quest intends to assert a mootness defense, the answer is

24   absolutely.

25             THE COURT:  Based on those changes that were made

1    after the class period?

2              MR. RAIZMAN:  Correct, Your Honor.

3              THE COURT:  Okay.  Then that means that you will be

4    able to introduce the evidence.

5              MR. RAIZMAN:  Your Honor, respectfully, I don't think

6    it equates with that, if I could be heard on that point.

7              THE COURT:  All right.  You may be heard.

8              MR. RAIZMAN:  Your Honor, the mootness defense is as

9    to the claims made by the plaintiff in their First Amended

10   Complaint and specifically, in this case, with respect to the

11   class definition, with respect to the conditions that were in

12   existence during the class period.

13        So Quest's assertion of the mootness defense isn't that it

14   moots everything that may ever happen with respect to the

15   claims or with respect to the kiosk but what happened during

16   that period that is put at issue by the First Amended Complaint

17   and/or by the defined class period that plaintiffs themselves

18   selected.

19        If we don't do that, Your Honor, we will have a

20   never-ending moving target as to whatever mootness would mean

21   as well as anything that Quest would ever do with respect to

22   the kiosk.  I wouldn't expect Your Honor's injunction, for

23   example, in this case -- is that Quest -- whatever Quest ever

24   does with the kiosk has to be independently accessible, for

25   example, or has to meet some other accessibility standard.

1      The Court respectfully must set -- must draw a line around
2   plaintiffs' claims so that the defendants can attack those
3   claims and defend against them.  We think the plaintiffs have
4   made clear repeatedly throughout this case that their claims
5   are about the independent accessibility of the kiosk.
6      They have secondarily defined the class period as 2016
7   through 2018.  So using either of those, Your Honor, we think
8   we have two standards by which we should be able to exclude any
9   new developments that come up or might come up after that class
10  period or, frankly, that don't involve the independent
11  accessibility of the check-in process.
12     But I understand Your Honor may have a different view on
13  the latter part.
14          THE COURT:  I guess I'm not -- I'm confused.  You
15  asked for a categorical exclusion of some of these features
16  that were added after the class period.
17     Are there any of these features that were added that
18  wouldn't be relevant to the question of effective
19  communication?
20          MR. RAIZMAN:  Your Honor, I'm sorry if I appear to be
21  evading your question.  I just --
22          THE COURT:  I guess what I'm saying is, if you are
23  going to raise a defense that these new features, or whatever
24  they may be, moot the claim, why wouldn't they be able to meet
25  that?

1          MR. RAIZMAN:  They can, Your Honor.  But the claim
2    has to be defined.  And that's all we're asking.  The claim has
3    been defined about the independent ability to check in.  If you
4    take another view, which is broader -- we don't accept it, but
5    for purpose of compromise, I'd suggest that it is another way
6    to look at it.  They've defined the class period as 2016 to
7    2018.
8          If Quest were to rollout on January 1 some new trial thing
9    and one or two different PSCs, would that then become an issue
10   in the case and question the mootness?
11         THE COURT:  Only if you raise it.
12         MR. RAIZMAN:  Well, your Honor, all we're raising is
13   that we've mooted plaintiffs' claims.  And plaintiffs' claims
14   are defined, and they're fixed first by the First Amended
15   Complaint and then the joint pretrial conference order.  But
16   also plaintiffs have said that they're fixing their claims with
17   respect to the period 2016 to 2018.
18         THE COURT:  Okay.  What other -- maybe this is for
19   plaintiff to answer, but what other aspect of this case is
20   there other than independent accessibility?  In other words,
21   why do you need to exclude this information?  Is there some
22   other aspect of this claim that I don't know about that is
23   lurking out there.
24         MR. RAIZMAN:  No, Your Honor.  I think each of our
25   motions in limine were designed to save this Court and the

Exhibit A Page010

1  parties significant time litigating issues that we do not

2  believe exist in this case and certainly not after the Court

3  has certified the class with the class definition that exists.

4          THE COURT:  And I appreciate that.  But I guess I'm

5  just not understanding what other issues are there besides

6  independent accessibility and effective communication?

7          MR. RAIZMAN:  Well, Your Honor, if you define the

8  issue as independent accessibility, that would allow -- every

9  new feature, no matter how broadly used or if it's used in one

10 particular patient service center out of 2,100, would all of a

11 sudden become a challenge to mootness.

12     This is a class claim, Your Honor, as the Court has

13 defined it.  We are looking on a systemic basis as to whether

14 the three-finger swipe moots the claims that the class made,

15 the class, those individuals who were there between 2016 and

16 2018.

17     They cannot have complained, for example, about the

18 wait-outside feature.  And they -- because the wait-outside

19 feature was instituted in 2020 during COVID.

20     More things may come up as the COVID pandemic continues to

21 roll on.  Any number of different features may be added or

22 changed to the kiosk as time goes on.  Where does it stop?

23     Our motion attempts to draw a line.  We've offered two

24 places -- accessible check-in and the class period.  The class

25 period gives us a really clear idea and definition, and I

1    propose that that be used as a compromise here so that we at

2    least know what issues may come up.

3            THE COURT:  Well, let me hear from Mr. Miller then.

4    What other than accessible check-in are you talking about such

5    that you would need to introduce this information?

6            MR. MILLER:  Thank you very much, Your Honor.  This

7    Court noted in its summary judgment ruling that this case is

8    about effective communication and the ability to communicate

9    with the phlebotomist who is behind the close the door.

10        And what -- the issues with the kiosk is partially around

11   the check-in process, but the kiosk also now subsequently

12   allows the individual to communicate with the phlebotomist who

13   is behind the closed doors to whether they're experiencing

14   COVID symptoms and whether they want to wait outside and be

15   notified by text.

16        And to the extent that Quest is saying, "Well, hey, look,

17   we've introduced this three-finger swipe, and you get to

18   communicate now about one small feature and that should be

19   enough to moot the claim," they've introduced these other

20   features that are all about effective communication with the

21   phlebotomist behind the door.  The same theory plaintiff

22   asserts, to talk to them about whether you have COVID symptoms

23   and whether you want to wait outside so you don't have to be

24   exposed to potential --

25           THE COURT:  Well, how do you respond to Mr. Raizman's

1   point that this is a moving target if we have every new feature

2   becoming the subject of the dispute?

3       MR. MILLER:  I respond with the Supreme Court's

4   holding in Friends of the Earth, which examined the issue of

5   the mootness doctrine.  And it said very clearly that, where

6   you have additional things that get introduced -- additional

7   potential harms capable of abating review, you're introducing

8   new components to the very same device you are contending now

9   offers effective communication.

10      These are new.  Same issues in the same effective

11  communication piece, and you're introducing new pieces to this,

12  and you are now trying to narrow it down to just this one

13  feature that was in the class period.  You are doing exactly

14  what the Supreme Court rejected in Friends of the Earth that

15  you're -- there's new harms that are being imposed on the

16  plaintiffs that they can't effectively communicate about.  They

17  can't use the kiosk, so they can't tell the phlebotomist if

18  they have COVID symptoms.  They can't ask the phlebotomist to

19  wait outside.

20      And so you are allowing Quest to create new harms that

21  evade review, and that is exactly what the Supreme Court

22  rejected in Friends of the Earth.

23      THE COURT:  Well, I guess I'm -- I misunderstood this

24  motion, because I thought that it was basically addressing the

25  issue of new features that are being introduced by Quest that

1    would moot your claims, meaning that they are features that

2    would improve the situation so that you don't need injunctive

3    relief anymore.

4         What you are talking about seems to be that there are

5    other features that are harmful to your class that need to be

6    litigated?

7              MR. MILLER:  What I am suggesting, Your Honor, we're

8    comfortable with the class period.  But what Quest is

9    contending is that, in the class period, check-in was one of

10   the issues at the kiosk that you couldn't effectively

11   communicate to the phlebotomist in the back around check-in,

12   one of the items, through the communication system.

13        And they are saying they fixed that by subsequent conduct

14   that allows now a three-finger swipe at that device.  And what

15   we're saying is "Yes, however, among other things, that has not

16   been ruled out properly, and it doesn't work at all the

17   locations, as Mr. Derry had indicated.  You also have added

18   additional features that the three-finger swipe does not allow

19   you to access, i.e., announcing you have COVID symptoms or

20   wanting to wait outside by text.

21        And so they have not only implemented a new feature of

22   three-finger swipe but they added additional pieces around that

23   the three-finger does not address.  It creates new harms, i.e.,

24   relative all to the same theory of effective communication yet

25   evading review if that evidence is not permitted in

1    contravention of the Supreme Court's holding.

2              THE COURT:  I see.  All right.

3              MR. RAIZMAN:  Your Honor, may I be heard on that?

4              THE COURT:  Yes.

5              MR. RAIZMAN:  Thank you very much, Your Honor.  I'm

6    glad he mentioned the capable -- capable of repetition yet

7    evading review standard, because it has no application here,

8    and that's clear.

9        I'd invite the Court's attention to

10   Protectmarriage.com/Yes on 8 versus Bowen, 752 F.3d 827, at

11   page 836.  It's a Ninth Circuit decision in 2014.  It talks

12   exactly about the evading review standard, Your Honor.

13       And it is quite clear that it does not apply here and does

14   not apply to any new features or functionality that Quest

15   develops over time.  In fact, in the Court's language, it

16   applies only in exceptional situations justifying the rules of

17   application.  Because even if a particular controversy evades

18   review, there is no risk that future repetitions of the

19   controversy will necessarily evade review as well.  And that is

20   at 837 of the opinion.

21       The Court points out there is two critical factors that

22   have to be present to apply this in these exceptional

23   circumstances that the Court requires.  First, the challenged

24   action is in its duration too short to be fully litigated prior

25   to cessation or expiration; and, two, there is a reasonable

1   expectation that the same complaining party would be subject to

2   the same action again.

3       So with respect to that first factor -- and that is why we

4   have the traditional case of pregnancy.  Pregnancy is of a

5   duration of nine months, approximately you know what its length

6   is.  And it's not possible to litigate a matter in that

7   nine-month period.

8       We have no such bar here.  The plaintiffs, or class

9   members, are free to challenge a new harm, as Mr. Miller called

10  it, that might develop, a new injury.  And just because it

11  falls under this umbrella, what is evading review here is what

12  is at issue here in this case.  And we would suggest that it

13  requires some cabining so we understand and are not made to

14  respond to a moving target.

15      The mootness defense applies to plaintiffs' claims here.

16  And a convenient standard may be the class period, if

17  Mr. Miller is indeed willing to use that period.  So any

18  features that were developed or unfolded either at the initial

19  rollout or during the class period but nothing afterwards.

20          THE COURT:  All right.  I understand better now.  I

21  am going to take that particular ruling under submission.

22      Anything else?

23          MR. RAIZMAN:  Anything else more broadly, Your Honor?

24          THE COURT:  Yes.  The other parts of the tentative.

25          MR. RAIZMAN:  Yes.  Your Honor, I'd suggest that

1   Quest has a very different view of the impact of Your Honor's

2   order on class certification and how it affects what is

3   relevant in this case.  And that sort of trails through a lot

4   of the other rulings that the Court has made here.  I don't

5   want to impose my thoughts or my opinions on the Court's agenda

6   at this pretrial conference, so I would respectfully ask for an

7   opportunity to address that issue as a threshold matter.

8           THE COURT:  Why don't you give me a hint of what

9   you're thinking about?

10          MR. RAIZMAN:  Well, Your Honor, if the class is

11  defined as it's defined, where the Court, you know, ruled --

12  and I found seven different times in Your Honor's order --

13  sorry, six different times in Your Honor's order where the

14  Court said something like the issues here were the mootness and

15  whether the kiosk must be independently accessible or define

16  the class.

17      Vargas seeks to certify a class which was denied equal

18  access to Quest's services because of the absence of

19  independently accessible self-service kiosks.  And the Court

20  emphasized in its order, Your Honor, that that is the very

21  definition that was picked by the plaintiffs, and they're so

22  limited by that.

23      In the companion case against Lab Corp, Your Honor, it's

24  very interesting that their class definition -- and that is the

25  case of 2:20-CV-893-FMO-KS.  And I am looking at the joint

1    motion that Judge Olguin requires on his motions.  Document
2    66-1 at page 30 contains plaintiffs' iteration of what the
3    class definition is.
4         It's functionally identical to the definition here except
5    it leaves out the word "independently accessible" -- I'm sorry,
6    it leaves out the word "independently."  So it just says, "Due
7    to Lab Corp's failure to make its eCheck-in kiosk accessible to
8    legally blind individuals."
9         This was not a mistake.  This is how plaintiffs themselves
10   had defined this case in terms of independently accessible.
11   Your Honor has recognized it, but I'm afraid is abandoning it
12   in permitting the evidence that is allowed here because the
13   Court should decide that issue and decide it first about
14   whether the kiosks need to be independently accessible.
15        There is this misconception, I believe, that is operating
16   here that plaintiffs had perpetuated.  But you have two
17   choices:  Either the auxiliary aids and services provide
18   effective communication or you have to have an independently
19   accessible device.  I would challenge anyone to find any legal
20   principle that supports that idea.
21        The cure for not providing effective communication through
22   auxiliary aids and services is to provide auxiliary aids and
23   services that provide effective communication.  The result is
24   not like a toggle switch.  Oh, then you must have an
25   independently accessible device.  And that appears to be the

Exhibit A Page018

1    dichotomy, which I would suggest is a false one, Your Honor,

2    that is operating in this case and is going to trickle through

3    all of the evidence and frankly what needs to be tried in this

4    case.

5         Plaintiffs can't have it both ways.  They've defined the

6    class.  They've defined it quite intentionally with respect to

7    independent accessibility and that notion is not an accident.

8    It was in their First Amended Complaint, and it's throughout

9    their papers.  Your Honor has recognized it.  And that notion

10   is what allows the class to be certified because, otherwise, we

11   have a variety of circumstances with respect to class members

12   experiencing different auxiliary aids and services at 2,100

13   different PSCs that are differently staffed, have different

14   levels of congestion and popularity with patients, and so on

15   and so forth.

16        So we're just getting ourselves back into the problem of a

17   lot of independent evidence.  One of the things that comes up

18   in the Derry context is we're going to have a bunch of

19   anecdotes from ACB members, from Mr. Vargas and, I suppose,

20   from Mr. Derry if your Honor upholds the tentative on that

21   motion, that is going to show that a very statistically

22   insignificant number of individuals on a very statistically

23   insignificant number of occasions had trouble at Quest.  And

24   that is not going to prove anything systemically with respect

25   to whether Quest's auxiliary aids and services work.

Exhibit A Page019

1      So I would ask Your Honor, just as a threshold matter, to
2  adhere to its class certification order and put to the parties,
3  perhaps, to brief the legal issue, just from the outset, about
4  whether the device itself needs to be independently accessible.
5  That's -- I apologize -- that's in a nutshell the threshold
6  issue I would like the Court to address.
7          THE COURT:  All right.  Well, it would have been
8  helpful if you had directed me to which motion in limine you
9  were addressing.  I thought you were talking about the ones
10  that had to do with the damages subclass.  You are talking
11  about the Derry report.
12          MR. RAIZMAN:  The Derry report.  Number 5 --
13  number -- you know, number 5 is on the experiences that people
14  had at Quest which goes directly to the notion of are those
15  experiences such as they may be relevant if the class is
16  defined as a class that was denied services because of the
17  absence of an independently accessible device.
18          THE COURT:  Well, I think that part of the reason
19  why -- I mean, obviously, I would be more than happy to decide
20  the legal issue if it was purely susceptible to a motion for
21  summary judgment type of situation, which you obviously tried.
22      But I found that there were triable issues that affected
23  that particular legal issue.  And so I don't think that it's
24  worthwhile to have you try that again and have me only to reach
25  that same conclusion again.

1          MR. RAIZMAN:  Well, Your Honor, there is this gap
2     here, and Your Honor can obviously -- your disagreement is
3     going to be a profound one for how this case gets tried.
4          But in my view we appear to disagree with the Court that
5     there is this toggle switch between whether the auxiliary aids
6     and services provide effective communication, and if they
7     don't, then you have to have an independently accessible legal
8     device.  That doesn't exist.  We didn't have the opportunity to
9     brief that, Your Honor --
10          THE COURT:  I don't think I've ever said that you
11     have to have an independent device.  I think the whole reason
12     that arose is because, if you did have an independently
13     accessible device, then that would resolve the question of
14     whether the auxiliary services are necessary.
15          MR. RAIZMAN:  It would, Your Honor.  And we think the
16     three-finger swipe does that and moots those questions.
17          But they still have to prove their case in chief first
18     before we get to our mootness defense.  And as they've defined
19     the class and as Your Honor has entered and certified that
20     class definition, it's based on individuals who have been
21     deprived legal services because of the absence --
22          THE COURT:  You mean lab services?
23          MR. RAIZMAN:  Been denied -- I'm sorry.
24          THE COURT:  You said, "Legal services."
25          MR. RAIZMAN:  I meant services.  I am not sure.

1  Okay.

2          THE COURT:  I don't think this case is about legal

3  services.

4          MR. RAIZMAN:  It is not, Your Honor.  I apologize.

5          THE COURT:  That is one thing I will cabin.

6          MR. RAIZMAN:  We can all agree on that, Your Honor.

7    The denial services because of the absence of an

8  independently accessible device.  And, again, that is not a

9  mistake in wording.  They didn't drop that word independently

10  in there by accident.  They knew what they were doing, and

11  that's the way the class has been certified.

12          THE COURT:  How do you envision this to be subject to

13  a legal determination?  How would you set that up?

14          MR. RAIZMAN:  Well, Your Honor, I believe it's a

15  purely legal question.  Plaintiffs can disagree with me.  They

16  can disagree with my assertion that there is no toggle switch

17  here.

18    But to me it's a legal determination about whether the

19  device needs to be independently accessible.  And to us, I

20  think, the answer is clear.  We say it's clear that it does not

21  have to be.

22    I think Your Honor's ruling on that alone would be helpful

23  however the trial proceeds.  But in any event, we think it

24  disposes of the need for trial because of the way the class has

25  been defined.  It disposes of the need for trial unless Your

1   Honor says, "You need to have an independently legal device."
2   If your Honor ruled that way, we would attempt to prove that
3   the three-finger swipe does provide an independently accessible
4   device.
5          THE COURT:  All right.  I am going to have to
6   contemplate that.
7          MR. RAIZMAN:  Understood, Your Honor.
8          THE COURT:  You're going to have a chance to
9   contemplate that, too, because, as you will see, you're not
10  going to trial next month.
11     Is there anything else about the tentative ruling that
12  anyone wants to address?
13         MR. MILLER:  Your Honor, I would say, if you're
14  inclined to contemplate it, I would at least like to be heard.
15         THE COURT:  Yes, please.
16         MR. RAIZMAN:  And there are a few more smaller items
17  on the motions in limine we would like to address, Your Honor.
18         MR. MILLER:  Just very briefly, Your Honor.  This
19  Court correctly, in ruling on summary judgment, recognized that
20  this is an effective communication case.  That is at the
21  fundamental heart of plaintiffs' theory.  It always has been
22  since we put this forth, and the class definition doesn't
23  modify it.  That is just an effort to relitigate the class
24  issues again.
25     But having other witnesses testify to support what we

Exhibit A Page023

1    believe is the evidence here and for the class about how did

2    Quest communicate to a blind individual, when they walked into

3    a patient service center during the class period, how to

4    check-in?  How did Quest -- this is now -- there is now a

5    kiosk.  How did they communicate how to ask for help if they

6    were having difficulty and couldn't access that kiosk?

7        These are common issues.  They're right there, all

8    ineffective communication.  And Mr. Raizman's attempting to

9    just singularly focus it and say, "You have to rule as a matter

10   of law.  It has to be independent."

11       The Court got this correct.  It's looked at this case as

12   an effective communication case such that under Robles we look

13   at whether the kiosk and the implementation of keeping

14   phlebotomists in the back is an impediment to access to be able

15   to communicate to that person behind the door, and that is the

16   issue.  It's whether that provided effective communication.

17       And so I agree with the Court's analysis.  I disagree with

18   Mr. Raizman about the toggle switch.  Somehow some way they had

19   to do this, and we think we can prove that they put an

20   impediment into place that affected everyone.  And the class

21   members' testimony on those issues is going to be truncated,

22   several by deposition but a few in person, and it's going to

23   illuminate that there were these common issues; that they all

24   had those same experiences.

25       There was no communication when you walked in about how

Exhibit A Page024

1  you checked in.  There was no communication about how you

2  requested help.  Those were only available to sighted people

3  who could see and use the kiosk and communicate with that

4  phlebotomist behind the door.

5       So I just wanted to be heard on that point.  I think the

6  safer path, as we've articulated on these issues and any others

7  that the Court is looking at, you know, citing the Coppi versus

8  City of Dana Point case, which is page 7 of our opposition to

9  motion number 4, it's a bench trial.  There is no prejudice

10 here.  We're not dealing with a jury.  We think that the

11 evidence should come in.  It's going to be short in nature and

12 duration, and then you can decide what weight to give it on the

13 mootness issues or on any of the other issues.  This is not

14 going to involve a multitude of additional witnesses or time

15 savings.

16      These are going to be the same witnesses.  If they get up

17 and say they did a three-finger swipe, we're going to ask them

18 the same questions about "Does that allow you to do this?  Does

19 that allow you to do that on the kiosk?  Does that moot the

20 issue sufficiently?"

21      And so I think that you just hearing the evidence and

22 deciding what weight to give it at the end is the right

23 approach here.  Thank you, Your Honor.

24           THE COURT:  All right.  What other small issues did

25 you want to raise, Mr. Raizman?

1          MR. RAIZMAN:  Thank you, Your Honor.  I'll try to do

2     this quickly, because again the Court has clearly given thought

3     to these issues in its tentative, or as reflected in its

4     tentative.

5          With respect to Dr. Montgomery, Your Honor, this is

6     really -- there is simply nothing in her report that suggests

7     she's doing anything other than offering legal opinions based

8     on legal standards that don't apply here to fatal wrongs here.

9     The Court seems to recognize that in a couple of different

10    places.

11         But with respect particularly as to fundamental

12    alteration, while she uses the word in one place in her

13    opinion, she never offers any opinion whatsoever with respect

14    to fundamental alteration.  Your Honor, we recognize, of

15    course, that this is a bench trial, but Daubert still applies

16    in bench trials.  And with respect to her testimony she has

17    clearly failed to meet the Daubert standard of relying on

18    anything.

19         In her testimony at deposition at pages 134 to 136, she

20    goes on extended -- I'll only read a part of it.  They haven't

21    gone -- she's talking about the kiosk standards that she's

22    advocating.  They haven't gone through the peer review process

23    that a set of standards or legal standards have gone through.

24         She says later, in the standard creation process, it

25    consolidates a lot of different best practices.  It

consolidates a great deal of research from across industry,

often worldwide, and then it brings solutions to a table where

people reach consensus about what an acceptable solution is.

     She's taking a group of standards that actually say they

don't apply here and is trying to apply it here even though she

says they haven't gone through the standard review process.

That respectfully suggests, when you apply Daubert to that, it

fails by her own deposition testimony.

          THE COURT:  Well, Daubert can be applied in many

different ways under different circumstances.  This is not

necessarily a case about lasers or anything.  It's the use of

an analogy.

     I am not going to find that the ATM standards are binding,

but if they want to draw some sort of analogy on some examples

of how these technologies are used in other ways, that would be

permissible.  And it is a Court trial, so I think I can make

the distinction between what is a legal conclusion and what is

merely factual inferences.

          MR. RAIZMAN:  Yes, Your Honor.  And, again,

permitting the testimony, it will take the Court time and the

parties time.  And I don't think, if you look at the entirety

of her report, she's offered anything but legal opinions based

on incorrect legal standards.  And the one area where she just

offers a legal opinion is nowhere supported, the fundamental

alteration.  So I will rest with that.

1      THE COURT:  I think you will make an objection at an

2  appropriate time when she makes a legal conclusion, and I will

3  probably sustain that objection.

4      MR. RAIZMAN:  All right.  Thank you, Your Honor, for

5  allowing me to be heard on that.

6      With respect to Greene, there are numerous problems with

7  his testimony that have been pointed out.  Your Honor appears

8  to recognize or say that Quest asserts -- or Quest's only

9  argument that is relevant to this issue is that it has an

10  unacceptably large error rate.

11      That's not the only one.  There are several referenced in

12  our motion.  We think this -- it appears that the Court just

13  wants to consider this with respect to numerosity.  But that's

14  the very place where it completely lacks any science, as

15  pointed out by Dr. Krock in his testimony, that we tried to

16  summarize in our motion.

17      THE COURT:  Well, that goes to weight, not

18  admissibility.

19      THE COURT:  Well, Your Honor, I would say again that,

20  particularly when focused on numerosity, this lacks the

21  necessary scientific basis; that it's a standard that's

22  recognized in a statistical world that you have to have an

23  error rate.  And he simply doesn't create one.

24      THE COURT:  I can't even believe that there is an

25  argument about numerosity in this case.  Do you know how often

1   numerosity ever becomes an issue in a class certification

2   motion?  Nil.  It mean, this minimum to have numerosity in this

3   circuit is 39, I think.  You don't think that they make that

4   below threshold?

5            MR. RAIZMAN:  Is Your Honor suggesting, if we

6   conceded numerosity, that Mr. Greene would not be a witness in

7   this case?

8            THE COURT:  Probably, yeah.

9            MR. RAIZMAN:  And that would probably save us

10  Dr. Krock from having to testify to attack that.

11           THE COURT:  Yes.

12           MR. RAIZMAN:  Your Honor, we will definitely consider

13  that pending the Court's ruling.

14      With respect to number 3, Your Honor, I think the issue

15  here with respect to the finances, I think Your Honor has

16  recognized it.  And the idea of the motivations, I just would

17  like it to be clear that the motivations are precisely what's

18  attempting to being proven here.

19      And all of this financial information is irrelevant

20  because Quest has committed, in the joint pretrial conference

21  order, in its memo of contentions, and I'm doing it here again

22  today, to never argue that finances came into consideration

23  with respect to any action or omission it undertook up until

24  this date.  So we think that anything with respect to the

25  finances should be completely excluded.  And we think it's

1  clear.  And the Court has recognized that there -- that what

2  plaintiffs are attempting to do here.  And the problem, Your

3  Honor --

4        THE COURT:  I thought you won that one.

5        MR. RAIZMAN:  Well, it's denied in part.

6        THE COURT:  It's denied in part only for the limited

7  purpose if they seek to use it for that purpose that that is

8  some kind of reasonable inference that saving money was part of

9  the reason why they wanted to keep the phlebotomists behind the

10  scenes and not have them sitting at the front desk.

11        MR. RAIZMAN:  You're saying, Your Honor, that it's

12  denied if they try to prove that?

13     Well, Your Honor, that is the exact thing that is

14  completely irrelevant.  And the problem is it's false.  The

15  assertion -- and Your Honor has adopted it in different

16  places -- it couldn't be more wrong.  Quest did not do anything

17  to change staffing whatsoever with respect to the rollout of

18  the kiosk.

19        THE COURT:  Well, that is the assertion.  Obviously

20  that is a disputed issue of fact, and you will be able to meet

21  that presumably.

22        MR. RAIZMAN:  Your Honor, we will spend time and a

23  significant amount of time on that question, if we have to, and

24  that's the problem because it's also irrelevant.  In an

25  effective communication case, in fact, in nearly every

1    Title III case I can imagine -- but I should limit because I

2    can't imagine them all right here as I'm standing --

3    motivations, how you got there, why you got there, completely

4    irrelevant.  It's whether you got there.

5              THE COURT:  I'm not saying that is a motivation

6    issue.  I am saying that could be some evidence that the whole

7    point of the exercise was to keep the costs down by having

8    phlebotomists not have to sit at the front desk all the time.

9         If that doesn't happen to be the case, why then I think

10   that should be an easy issue to meet.

11             MR. RAIZMAN:  I don't see why that's relevant to a

12   Title III case, but in any event you are going to have to spend

13   a lot of time on that, because that is completely false.

14        That is all I have, Your Honor.

15             THE COURT:  All right.

16             MR. RAIZMAN:  I should just say on number 5, number 5

17   raises the threshold issue that I tried to identify before we

18   got into the specific motions.  It talks about all of that

19   experiential evidence and its admissibility, because of our

20   view of how the class definition impacts proof in this case.

21             THE COURT:  All right.  Let's move to the final

22   pretrial conference quickly.  My staff has been in trial all

23   day so I want to try to get them to be able to get home.

24        Let me just first confirm that you both believe that this

25   will be a Court trial and not a jury trial.

1      MR. MILLER:  We do agree from the plaintiffs, Your

2   Honor.  Thank you.

3      THE COURT:  And both sides waive jury trial on the

4   record?

5      MR. RAIZMAN:  We do, Your Honor.

6      THE COURT:  Because jury trial was invoked at the

7   beginning, and I issued a case management order for jury trial.

8      MR. MILLER:  We believe, based on the way the Court

9   ruled in summary judgment, we don't get an opportunity to

10  waive.  We just think it results in a bench trial, the way that

11  the Court has ruled.

12     THE COURT:  All right.  So that means I will have to

13  issue a new case management order for Court trial.  It is my

14  practice not to have direct testimony that is live.  It will be

15  by declaration or deposition, and it will only be

16  Cross-examination and Redirect that will be live.  And that

17  will be spelled out in the case management order that I will

18  issue for Court trial.

19     Let me just say that your -- as I intimated, your

20  January 18, 2022, trial date is going to be preempted by a

21  criminal jury trial that I have to do on that date.  And so

22  you're going to have to meet and confer and see if you can come

23  up with a new proposed trial date and run it by my Court Clerk

24  to see if that date is reasonably available, although I have to

25  tell you that, because of the pandemic, our Court has been very

1   backlogged with criminal jury trials.  And as you may know,
2   criminal jury trials always take precedence over the civil
3   trials because of the Speedy Trial Act.
4        And so the only solution, if you want to really have a
5   firm date, is to consent to a magistrate judge to conduct the
6   Court trial because magistrate judges do not have to do
7   criminal jury trials, and they don't have the constraints of
8   time that district judges usually do.
9        I will usually impose a very strict time line for the
10  trial as well as time limits for both sides, and magistrate
11  judges don't tend to have to have such strict limits.  So there
12  are some great advantages to having a magistrate judge try the
13  case.
14       We have a deep bench of magistrate judges who are very
15  knowledgeable and well-qualified.  And there is a list of them
16  who are willing to do trials on the website.  So I will provide
17  that to you, and you can meet and confer and see if you can
18  agree to have the case tried by a magistrate judge.
19       If you don't, then I will just tell you that, whatever
20  date you choose, that this can happen again, as it has to a
21  number of civil cases that I've had.  And it doesn't make me
22  feel about good about it, but unfortunately that is the nature
23  of the beast.  We have a lot of criminal trials that we have to
24  go forward on.
25       So in order not to waste this particular hearing in case

1    you decide not to go to a magistrate judge, let me just go over

2    a few things that are pertinent to cases before me, and that

3    is -- and I think I mentioned already that you're going to be

4    filing declarations for the direct testimony of each of your

5    witnesses.

6         Can you tell me what your estimate for the length of the

7    trial is considering that it is now streamlined somewhat?

8              MR. MILLER:  From the plaintiffs, Your Honor, the

9    estimate was originally seven days.  My expectation is we can

10   certainly take a day off of that estimate from the plaintiffs'

11   perspective and do this in six days, maybe less, particularly

12   if we're going to submit some of the testimony via deposition

13   and declaration.

14             THE COURT:  Mr. Raizman, what is your estimate?

15             MR. RAIZMAN:  Well, Your Honor, if the Court

16   adopts --

17             THE COURT:  Can you move the microphone closer to

18   you, please?

19             MR. RAIZMAN:  Yes, I will.

20        If the Court adopts my suggestion on that threshold issue,

21   there does not need to be a trial in this case.  If it doesn't,

22   I think five days would probably be adequate, but I wouldn't

23   violently disagree with six.  I think we're mostly going to be

24   hearing plaintiffs' witnesses in this case.  So if Mr. Miller

25   believes six days is necessary, we don't disagree too strongly

1   with that.

2           THE COURT:  All right.  Well, for a case of this

3   nature, especially given that I have already seen a lot of the

4   evidence through the motions for summary judgment, I am going

5   to allocate four days and six hours per side.

6       And have the parties already exhausted their mediation

7   efforts in this case?

8           MR. MILLER:  Your Honor, for the plaintiffs, we had

9   gone to Judge Wagner.  We're open to Judge LaMothe and went to

10  Mr. Herman at Quest's request, and we remain in discussions

11  with him and remain open to other options as well.

12      Thank you, Your Honor.

13          THE COURT:  All right.  Well, under the

14  circumstances, I would suggest that you have plenty of time to

15  try to make that happen since I won't be able to go to trial on

16  your case anytime soon.

17      Do you have an estimate as to how much time you would need

18  for opening statements?

19          MR. MILLER:  Thirty minutes maximum, Your Honor, from

20  the plaintiffs' side.

21          THE COURT:  Mr. Raizman?

22          MR. RAIZMAN:  Same, Your Honor.

23          THE COURT:  All right.  Each side will have up to

24  thirty minutes.

25      And I haven't had a chance to review your pretrial exhibit

1   stipulation.  But given the time limits that I would impose, I

2   would suggest that you try to agree on as many exhibits as

3   possible and to have as few arguments about authentication

4   issues and other admissibility issues as possible because that

5   will all eat into your time.  Your time limits apply to both

6   Direct and Cross-examination.  It does not apply to opening or

7   closing arguments.

8        Please cooperate with each other in the presentation of

9   witnesses, try to avoid any gaps in calling them so that we

10  don't have to wait around for witnesses to appear.  If there

11  are professionals or other people who are witnesses who need to

12  have accommodations, I would expect that both sides will work

13  to accommodate their schedules, take witnesses out of order if

14  necessary.

15       And the Court trial time is usually from 9:30 to

16  4:00 o'clock.

17       And if you haven't had a trial in this courthouse since

18  we've been here, I would highly recommend that you contact our

19  IT department and ask them to give you a demonstration of how

20  the equipment works and I would ask that both sides make an

21  appointment to have that demonstration at the same time so that

22  the IT department doesn't have to do more than one presentation

23  for this case.

24       Are there any questions?

25            MR. MILLER:  Very briefly from the plaintiffs' side,

1   Your Honor.  Thank you for your advisements.  We'll consider

2   your thoughts on the magistrate as well.

3       To the extent that we would have to pick another date with

4   you and recognizing that you have quite a few trials and

5   criminal trials, is there a time frame we realistically could

6   target as part of the meet and confer effort that would at

7   least be an initially acceptable time frame to look out for the

8   Court or how far out we should look.

9           THE COURT:  I would suggest at the end of the --

10  towards the end of the year, next year.

11          MR. MILLER:  Thank you, Your Honor.

12          THE COURT:  This trial that I am in right now is a

13  three-month trial.  So keep in mind that, when I have -- when I

14  say I have a criminal trial, it doesn't necessarily mean it

15  will be over quickly.

16      All right.  Any other questions?

17          MR. RAIZMAN:  No, Your Honor.

18          MR. MILLER:  No, Your Honor.  Thank you very much.

19          THE COURT:  All right.  Well, I had hoped that, with

20  my last ruling, that it would give the parties a basis to find

21  some way to resolve this matter.  It's basically injunctive

22  relief that is left.  So I hope that you will, both sides,

23  consider the wisdom of trying to resolve this so that you can

24  have a remedy that both sides can live with rather than having

25  a decision imposed either by me or some other judge that

1   doesn't recognize the nuances of this business.  So I leave you

2   with that.

3          MR. MILLER:  Thank you very much, Your Honor.

4          MS. BERNAL:  Thank you, Your Honor.

5          MR. RAIZMAN:  Thank you, Your Honor.

6          THE COURT:  We are adjourned.

7       (Adjourned at 5:22 p.m.)

8                              -oOo-

9

10

11

12

13

14

15                      REPORTER'S CERTIFICATE

16

17

18       I certify that the foregoing is a correct transcript of

19   proceedings in the above-entitled matter.

20

21   /s/ Suzanne M. McKennon, CSR, CRR, RMR
                                         Date:  01/18/2022
22   _____
     United States Court Reporter

23

24

25

Exhibit A Page038