Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345

Benjamin J. Sweet
(*Admitted Pro Hac Vice*)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

Attorneys for Plaintiffs Julian Vargas,
American Council of the Blind, and the Certified Class

*Additional counsel for Plaintiff listed on signature page*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN VARGAS, ANNE WEST, and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:19-cv-08108-DMG<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS'** ***EX PARTE*** **APPLICATION TO STAY MOTIONS FOR SUMMARY JUDGMENT**<br><br>Complaint Filed: September 18, 2019<br>Discovery Cutoff: August 27, 2021<br>Pretrial Conf: October 4, 2022<br>Trial Date: November 1, 2022<br>District Judge: Hon. Dolly M. Gee<br>Magistrate: Hon. Michael M. Wilner |

Plaintiffs respectfully submit this opposition to Defendants' *ex parte* application to stay the parties' motions for summary judgment.

1

PLAINTIFFS' OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO STAY MOTIONS FOR SUMMARY JUDGMENT

## I.     INTRODUCTION

From its inception, this case has been about obtaining full and equal access to Quest's diagnostic services for legally blind patients. After nearly three years of litigation and despite significant delays occasioned by (1) Quest's prior requests for a stay (*see* Dkt. 125), (2) discovery abuses (*see* Dkt. 101 (ordering discovery sanction of Quest)), (3) unilateral unwillingness to have this case tried by *any* of this District's federal Magistrate Judges (*see* Dkt. 194), – Quest now seeks to delay these proceedings further through another *ex parte* application. Quest's application asks this Court to put off a determination of the parties' summary judgment motions and re-litigate Class certification. Quest's application plainly seeks further relief from the very relief it received just eight days ago - when it sought and was permitted to file a second summary judgment motion ("MSJ") after Plaintiffs filed their initial MSJ. (*See* Dkt. 209 and 2011.) This Court should see Quest's latest *ex parte* for what it is: an attempt to stave off this Court's consideration of Plaintiffs' initial MSJ - the determination of which may significantly resolve the case, while prejudicing Plaintiffs by calling into question the nature of their response to Defendants' second MSJ due May 24th. Very respectfully, the certified Class has waited patiently for full and equal access to Quest's services. Because there is no true exigency that prevented Quest from previously making its request, its *ex parte* application should be denied.

Contrary to Quest's assertions, Plaintiffs' MSJ is not directed at any class-related issues. (*See* Dkt 215, P.4:7-21.) Rather, Plaintiffs' MSJ focuses on Quest's undisputed and ongoing violation of its legal obligation to provide certified Class members effective communication. (*See* Dkt. 207, P.2:8-10.) Quest has now filed not one but two Motions for Summary Judgment – and now seeks a second bite at the entirety of class certification (not the very limited class *definition* issue the Court has asked the parties to address in light of *Olean*) – all before Plaintiffs have had

their *first* Motion for Summary Judgment heard. Quest's *ex parte* application seeks to expand the quite limited class definition issue the Court has asked the parties to brief in light of *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods, LLC*, 31 F. 4th 651 (9th Cir. 2022), while further delaying this Court's review of *Plaintiffs'* MSJ. Had Quest truly desired an opportunity to re-litigate and move to decertify the Class in this Action, it could have sought such relief through a timely motion and/or with its prior *ex parte* application. It did not do so.

Further, though couched in polite language, Quest's *ex parte* application is carefully timed to sow confusion as to the substance of the Opposition brief Plaintiffs will file next Tuesday, May 24, 2022. Based on this Court's order granting Defendants' prior *ex parte* application, Plaintiffs were asked to both oppose Defendants' second MSJ, and address the class definition in light of the Ninth Circuit's holding in *Olean*. Plaintiffs have been focused on complying with this Court's order since its issuance. Quest, however, now seeks to stay the pending MSJs, while having another full round of briefing on class certification. The timing of Quest's request seeks to have Plaintiffs file an opposition that divides arguments between Quest's MSJ and the holding in *Olean*, while permitting Quest to have a reply to its MSJ that would only have to address its MSJ motion because the Court would have already resolved the *Olean* issues in another round of full class certification briefing. Indeed, Quest delayed *eight days* from the date of this Court's order on its last *ex parte* application - until 3:00 p.m. PST on May 19, 2022, to file its latest *ex parte*. This timing is not accidental. Quest well understood Plaintiffs would not be able to offer a response until the afternoon of Friday, May 20, 2022. Quest's carefully-chosen timing ensures that this Court will not have an opportunity to review the parties' submissions until Monday, May 23, 2022, at the very earliest – just one day before Plaintiffs' Opposition to Quest's second Summary Judgment Motion is due. Accordingly, granting Quest's application will unquestionably

3
PLAINTIFFS' OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO STAY MOTIONS FOR SUMMARY JUDGMENT

prejudice Plaintiffs and Quest's gamesmanship of the *ex parte* process is apparent.

For these and the additional procedural and substantive reasons set forth herein, Plaintiffs respectfully oppose the *ex parte* application.

## II. LEGAL STANDARD

"*Ex parte* motions are rarely justified ...." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). "To justify *ex parte* relief, the moving party must, at a minimum, show: (1) its "cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id*. at 492." *Ellsworth v. Schneider Natl. Carriers, Inc.*, 520CV01699SBSPX, 2021 WL 4620913, at *1 (C.D. Cal. June 30, 2021) (citing *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995)). Such applications should be the exception, not the rule, however. *Mirtaheri v. Sprouts Farmers Mkt., Inc.*, CV2005351SBRAOX, 2022 WL 423394, at *1 (C.D. Cal. Jan. 14, 2022) (*citing Guilfoyle v. Beutner*, 2021 WL 6102512, at *2 (C.D. Cal. Aug. 16, 2021) ("Both the Federal Rules of Civil Procedure and the Local Rules of this Court 'contemplate that noticed motions should be the rule[.[ ]' ") (citation omitted).)

## II. THE COURT SHOULD DENY THE *EX PARTE* APPLICATION

### A. Defendants Seek Relief From Their Own Ex Parte Eight Days Ago

First, Defendants are seeking relief from the result of the *ex parte* application they themselves filed less than two weeks ago, which allowed them to belatedly file their *second* motion for summary judgment. (*See* Dkt. 209.) Importantly, Quest's second Motion for Summary Judgment was only made in response to Plaintiffs' First Motion for Summary Judgment and after more than six months of delay.

In response to that *ex parte* application, this Court allowed Defendants leave to file a second motion for summary judgment but simultaneously requested that in

so doing, the parties address the recent Ninth Circuit decision in *Olean*. (*See* Dkt. 211.) Now, having received the extraordinary relief they requested, Defendants are still not satisfied. They now seek relief from *that* relief – by requesting that this Court stay disposition of Plaintiffs' *first* Motion for Summary Judgment – which they falsely claim is directed at Class issues. (*See* Dkt. 215 P.4:7-21.) It manifestly is not. (*See* Dkt. 206-4.) Quest should not be permitted to further mold this Court's calendar to fit its litigation objectives. Nor can it manufacture any compelling reason why a further delay from the very extraordinary relief it requested and received is warranted here. Accordingly, Quest's complaint about the known consequences of the very relief it sought fewer than two weeks ago should not be countenanced.

### B. The Court's Order Allows Each Party An Opportunity to be Heard on This Issue Without Need for Unnecessarily Staying The Proceedings Indefinitely

The Court has already ordered that the parties address in their respective moving and opposing papers the very limited issue of the class definition of the certified Class in light of *Olean* and the Court's decision to certify only a Rule 23(b)(2) class. (*See* Dkt. 211.) The Court has thus provided each party (1) notice and (2) an opportunity to be heard on this issue, and has set forth the mechanism by which the Court wishes them to do so.

Once the Court hears the parties' arguments on the limited class definition issue and summary judgment, it is free to decide those issues, however, in the order and manner it – not Quest or Plaintiffs – deems appropriate. Very clearly, the Court did not ask the parties to engage in a second round of class certification briefing. Had this Court believed a different briefing schedule was appropriate, it would have made that order. It did not. Rather, the Court has ordered the parties to proceed in a very specific manner in resolving the above-referenced issues and Plaintiffs do not believe it is appropriate to deviate from the Court's Order.

### C. The Timing of Quest's Latest Ex Parte Application is Highly Suspect and Designed to Prejudice Plaintiffs

The timing of Quest's *ex parte* application prejudices Plaintiffs. Quest delayed *eight days* from the date of this Court's Order on its last *ex parte* application - until 3pm PST on May 19, 2022, to file its latest *ex parte*. This timing is not accidental. Given that Plaintiffs will not be able to offer a response until the afternoon of Friday, May 20, 2022, Quest's carefully-chosen timing ensures that this Court will not have an opportunity to review the parties' submissions until Monday, May 23, 2022, at the very earliest – just one day before Plaintiffs' Opposition to Quest's second Motion for Summary Judgment is currently due.

Moreover, Plaintiffs must now prepare both for the possibility that its filing on May 24, 2022, will be directed at summary judgment (as is currently the case) and for the possibility, however remote, that the Court may grant Quest's latest attempt to re-shuffle the calendar to suit its litigation objectives through extraordinary *ex parte* relief. Such a situation plainly prejudices Plaintiffs and Quest's conduct in strategically delaying its latest *ex parte* application constitutes both an abuse of the *ex parte* process and a violation of this Court's Standing Order. "Sanctions may be imposed for misuse of ex parte applications. *See* Court's Standing Order at Dkt 13 (Initial Standing Order at P10:13-15, *citing Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F. Supp. 488 (C.D. Cal. 1995)).

### D. Quest's Failure to Follow The Local Rules Is An Independent Basis to Deny Its Latest Ex Parte Application

In requesting this most-recent *ex parte* relief, Defendants again violated this Court's standing order. The Court's standing order requires, "The moving party shall … notify the opposing party that any opposition must be filed not later than 24 hours after the service of the application." As with its last *ex parte* application, Quest again failed to inform Plaintiffs they have 24 hours in which to respond to this *ex parte*

6

application. Courts routinely deny *ex parte* applications for failure to comply with Local Rule 7-19. *See Duenas v. Amaro*, 2:18-08079 CJC ADS, 2021 WL 4786672, at *3 (C.D. Cal. May 20, 2021)(denying the ex parte application because "Plaintiff fails to comply with the Local Rules."); *Hollywood v. Carrows California Fam. Restaurants*, CV 18-2098-JGB (GJS), 2018 WL 7461691, at *1 (C.D. Cal. Sept. 24, 2018) (holding that ""strict compliance" with Local Rules 7-19 and 7-19.1 is required" and the plaintiffs failed to comply, so "[f]or this reason alone, the Application must be denied."); *Mirtaheri v. Sprouts Farmers Mkt., Inc.*, CV2005351SBRAOX, 2022 WL 423394, at *2 (C.D. Cal. Jan. 14, 2022) (holding that "Defendant's ex parte application is DENIED as procedurally improper."). In fact, this Court expressly stated this in the Initial Standing Order of this case (*See* Dkt. 13.), which states "***[e]x parte applications that fail to conform to Local Rule 7-19 and 7-19.1, including a statement of opposing counsel's position, will not be considered except on a specific showing of good cause***" (emphasis added). The Order further states that *"Ex parte* applications are solely for extraordinary relief and should be used with discretion." *Id.*

In addition, the Local Rules require "the attorney so applying [ex parte] (a) to make reasonable, good faith efforts orally to advise counsel for all other parties, if known, of the date and substance of the proposed ex parte application." L.R.7-19.1. Counsel's single email is therefore insufficient under this rule. *Singh v. Giles*, EDCV1901487VBFAGR, 2019 WL 4736239, at *3 (C.D. Cal. Sept. 27, 2019) (finding that an email was insufficient under Local Rule 7-19 and therefore denied the ex parte). *See also Financial Industry Regulatory Authority, Inc. v. Training Consultants, LLC*, 2012 WL 13020027, *1 (C.D. Cal. Aug. 28, 2012) (Andrew Guilford, J.) (Denying ex parte motion on both procedural and substantive grounds, stating, "The local rules require oral notice .... But here, FINRA only states that they emailed Defendants.").

### E. Defendants Have Not Demonstrated Exigent Circumstances Warranting Ex Parte Relief, As The Class Was Certified Nearly Seven Months Ago

Quest does not demonstrate any "temporal urgency such that immediate and irreparable harm will occur" to justify its application. *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). Indeed, Defendants did not serve this application "immediately" as outlined in this Court's procedures, but rather waited over six months after the Court ruled on class certification (*See* Dkt. 190).

The Court certified the Class on December 2, 2021. Quest has thus had nearly six months to seek decertification. It never has. Rather, it sought – and received – leave to file a second summary judgment motion. Its most recent *ex parte* therefore seeks not only a second summary judgment motion but now a full-fledged motion for decertification as well – all before Plaintiffs' first Motion for Summary Judgment has been heard. This is plainly not what this Court has ordered.

There are no exigent circumstances warranting this extraordinary relief which Quest could have sought months ago or, at the very least, in its last *ex parte* application of fewer than two weeks ago. It failed to do so.[1] Nevertheless, as Quest intends to now argue for decertification despite the Court's clear instruction to limit its briefing to the issue of class definition in light of *Olean* (as its *ex parte* makes clear is now its intent (*See* Dkt. 215, at 4)), the Court has already provided it an opportunity to do so through its Order on Quest's last *ex parte* eight days ago (*See* Dkt. 211). No further extraordinary accommodation for Quest is warranted or

---

[1] Quest argues it is bringing this *ex parte* application in the interest of "judicial economy" (*See* Dkt. 215 at 5), yet this is Quest's second *ex parte* application in 8 days, all on issues it could have argued and briefed months ago. There is nothing economical about the multiple applications.

necessary.

### F. The Court's Request for Briefing on Refinement of the Class Definition in Light of the Changed Law Has No Bearing on the Merits Determination on Plaintiffs' Motion For Summary Judgment

Contrary to Quest's unsupported assertions otherwise (*See* Dkt. 215, at 4), the Court's Order in Docket Entry 211 has no bearing on Plaintiffs' nor Quest's pending motions for summary judgment. As such, there is no compelling reason to further delay and prejudice the certified Class and individual Plaintiffs at this juncture in having their motion resolved. Because Quest has failed to meet its burden of showing irreparable harm, or any basis for the emergency relief required of an *ex parte* application, its application should be denied.

## III. CONCLUSION

For all of the foregoing reasons, Quest's *ex parte* application should be denied.

Dated: May 20, 2022

Respectfully submitted,

By:    */s/ Jonathan D. Miller*
Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101

Benjamin J. Sweet
(Admitted *Pro Hac Vice*)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

PLAINTIFFS' OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION TO STAY MOTIONS FOR SUMMARY JUDGMENT

Matthew K. Handley
(Admitted *Pro Hac Vice*)
mhandley@hfajustice.com
HANDLEY FARAH &
ANDERSON PLLC
777 6th Street NW
Washington, DC 20001
Telephone: (202) 559-2411

Attorneys for Plaintiffs Julian Vargas, American Council of the Blind, and the Certified Class