Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345

Benjamin J. Sweet
(*Admitted Pro Hac Vice*)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

Attorneys for Plaintiffs Julian Vargas,
American Council of the Blind, and the Certified Class

*Additional counsel for Plaintiff listed on signature page*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

JULIAN VARGAS and AMERICAN
COUNCIL OF THE BLIND, individually
on behalf of themselves and all others
similarly situated,

        Plaintiffs,

    v.

QUEST DIAGNOSTICS CLINICAL
LABORATORIES, INC., QUEST
DIAGNOSTICS HOLDINGS, INC.,
QUEST DIAGNOSTICS
INCORPORATED; and DOES 1-10,
inclusive,

        Defendants.

Case No.: 2:19-cv-08108-DMG

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS CERTIFICATION**

**Hearing Date:** **June 17, 2022**
**Time:** **2:00 p.m.**
**Courtroom:** **8C**

Complaint Filed: September 18, 2019
Discovery Cutoff: August 27, 2021
Pretrial Conf: October 4, 2022
Trial Date: November 1, 2022
District Judge: Hon. Dolly M. Gee
Magistrate: Hon. Michael R. Wilner

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## **TABLE OF CONTENTS**

I.      SUMMARY OF ARGUMENT ........................................................................5

II.     PROCEDURAL HISTORY ..........................................................................11

III.    LEGAL ARGUMENT ..................................................................................12

        A.      *Olean* Compels A Review of Certain Aspects of Class
                Certification in this Action ..................................................................12

                1.  Plaintiffs Need Not Establish Article III Standing For
                    Each Class Member ....................................................................13

                2. "Fail-Safe" Class Definitions Are Prohibited For
                    Rule 23(b)(3) Classes ..................................................................14

                3.  Refinement – Not Decertification – Is The Appropriate
                    Remedy For An Infirm Class Definition.......................................15

                4.   Individualized Damages Questions Must Not Preclude
                    A Finding of Rule 23(b)(3) Predominance ..................................19

        B.      Decertification Or Dismissal Of The Class Claims
                Will Not Narrow The Issues For Trial ..................................................23

        C.      This Court Has Already Heard And Rejected Quest's Argument
                As To "Independent Accessibility" Class On Three Prior
                Occasions ..........................................................................................25

IV.     CONCLUSION ..........................................................................................26

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS CERTIFICATION

**TABLE OF AUTHORITIES**

*Aichele v. City of Los Angeles, 314 F.R.D. 478, 485 (C.D. Cal. 2013)* ..................15

*Bhd. of Maint. of Way Emps. Div. of Int'l Bhd. of Teamsters v. Ind. Harbor Belt R.R. Co., 20 F. Supp. 3d 686, 691 (N.D. Ind. 2014)* ...............................24,25

*Briseno, Leyva v. Medline Indus. Inc., 716 F.3d 510, 514 (9th Cir. 2013)*..........8,21

*Carlos v. Easter Seals S. California Inc., No. SACV1401685JVSRNBX, 2014 WL 12966422, at \*11 (C.D. Cal. Dec. 23, 2014)*..........................................15

*Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)* .........................................10

*Davis v. Laboratory Corporation of America*

    *Case No. 2:20-cv-00893-FMO-KS (Dkt. 97, May 23, 2022* ..................5,8,16

*Dunn v. Dunn, 219 F. Supp. 3d 1163, 1166 (M.D. Ala. 2016)*...........................7,24

*Estrada v. Bashas' Inc., CV-02-00591-PHX-RCB*

    *2014 WL 1319189 (D. Ariz. Apr. 1, 2014)* ......................................................7

*Garcia v. City of L.A., 2020 U.S. Dist. LEXIS 212976*

    *\*18-19 (C.D. Cal. Sept. 15, 2020)* ...................................................................7

*Geary v. Green Tree Servicing, LLC, 2:14-CV-00522*

    *2017 WL 2608691, at \*11 (S.D. Ohio June 16, 2017)* ..................................15

*Gulino v. Board of Educ. of City School Dist. of City of New York*

    *907 F.Supp.2d 492, 504 (S.D.N.Y. 2012)* .......................................................6

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock, 477 U.S. 274, 289, 106 S. Ct. 2523, 91 L. Ed. 2d 228 (1986)* .............7

*In re Hulu Privacy Litigation, No. C 11–03764 LB*

    *2014 WL 2758598, at \*14 (N.D. Cal. June 17, 2014)*...................................15

*Keegan v. Am. Honda Motor Co., Inc., 284 F.R.D. 504, 521 (C.D.Cal.2012)* .......22

*Laurent v. PricewaterhouseCoopers LLP, No. 06-CV-2280 (JPO)*

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

3

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

*2021 WL 4482147, at \*2 (S.D.N.Y. Sept. 30, 2021)* ........................................6

*Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 514 (9th Cir. 2013) ..........................21

*Mazza v. Am. Honda Motor Co.,* 666 F.3d 581 (9th Cir. 2012) ....................passim

*Messner v. Northshore U. HealthSystem,* 669 F.3d 802, 825 (7th Cir. 2012) ........12

*Mullins v. Direct Digital, LLC,* 795 F.3d 654, 660–61 (7th Cir. 2015)..................14

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods, LLC*

  *31 F.4th 651 (9th Cir. 2022)* ................................................................passim

*Otto v. Abbott Laboratories Inc.,* 2015 WL 9698992(C.D. Cal. Sept. 29, 2015)....22

*Parra v. Bashas', Inc.,* 291 F.R.D. 360, 372 (D. Ariz. 2013......................................7

*Petersen v. Costco Wholesale Co.,* 312 F.R.D. 565, 574 (C.D. Cal. 2016) ............15

*Pulaski & Middleman, LLC v. Google, Inc.,* 802 F.3d 979, 989 (9th Cir. 2015.....21

*Robles vs. Dominos Pizza, LLC,* 913 F.3d 898, 904-06 (9th Cir. 2019).................25

*Rodriguez v. City of Los Angeles,* No. CV1101135DMGJEMX

  *2014 WL 12515334, at \*3 (C.D. Cal. Nov. 21, 2014)*...............................8,16

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.,* 593 F.3d 802, 809-10 (9th Cir. 2010) ....................................................................7,11

*Walters v. Reno*145 F.3d 1032, 1047 (9th Cir. 1998) .......................................13,14

*Wang , v. Chinese Daily News, Inc.,* 737 F.3d 538, 543 (9th Cir. 2013).................7

*Westways World Travel, Inc. v. AMR Corp.,* 218 F.R.D. 223 (C.D. Cal. 2003).....13

*Wolin v. Jaguar Land Rover N. Am.,* 617 F.3d 1168, 1172 (9th Cir. 2010)..........22

*Zakaria v. Gerber Products Co.,* No. LA CV15-00200 JAK (Ex), 2015 WL 4379743, at \*1-2 (C.D. Cal. July 14, 2015)..................................................17

*Rule 23(b)(2)*................................................................................................passim

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS CERTIFICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   SUMMARY OF ARGUMENT

Plaintiffs Julian Vargas, American Council of the Blind, and the Certified Class (collectively "Plaintiffs") submit the following brief in response to the Court's May 11 and 23 orders (Dkts. 211, 217) requesting further briefing on the class definition in light of the Ninth Circuit's *en banc* opinion in *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods, LLC,* 31 F.4th 651 (9th Cir. 2022) ("*Olean*"). As set forth below, Plaintiffs can easily refine the injunctive relief class definition to meet the Ninth Circuit's newly announced prohibition against failsafe classes. In doing so, Plaintiffs further respectfully request the Court take a renewed look at its class certification order on the Rule 23(b)(3) California class, as *Olean* squarely addresses the concerns this Court raised in its December 2, 2021, interlocutory order on certification (Dkt. 190) in favor of certifying the Rule 23(b)(3) class, as recently analyzed by Judge Olguin. *Davis v. Laboratory Corporation of America,* Case No. 2:20-cv-00893-FMO-KS (Dkt. 97, May 23, 2022).

The Ninth Circuit's recent opinion in *Olean*, which involved the Circuit Court's affirmance of certification for three Rule 23(b)(3) classes, is helpful to class plaintiffs generally and to the certified Class here. Specifically, there are four key takeaways from *Olean* which directly impact the contours of class certification in this case: (1) its new prohibition on "fail-safe" class definitions for Rule 23(b)(3) classes, (2) its instruction that refinement of a class definition—not decertification or dismissal—is the appropriate remedy where a class definition is found to be potentially infirm but the elements necessary for class certification are otherwise established (as here), (3) its clarification that, contrary to the *dicta* first articulated in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), Rule 23(b)(2) injunctive relief class plaintiffs in the Ninth Circuit need not establish Article III standing for each member of a Rule 23(b)(2) class (such as the Class at issue here), and (4) perhaps most importantly, its holding that damages or eligibility questions of individual class

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1  members must not prevent a finding that common questions predominate over

2  individual questions. *Olean*, 31 F.4th at 669 (holding that predominance is satisfied

3  "even if plaintiffs may have to prove individualized damages at trial, **a conclusion**

4  **implicitly based on the determination that such individualized issues do not**

5  **predominate over common ones**") (internal citations omitted) (emphasis added).

6       Thus, at the same time *Olean* sets forth a new Ninth Circuit prohibition against

7  "fail-safe" class definitions in Rule 23(b)(3) class cases, it simultaneously instructs

8  that the remedy for infirm class definitions (including "fail-safe" definitions) is simply

9  to "refine" them. *Olean*, 31 F. 4th at 669, fn. 14 (infirmities in a class definition "can

10  and often should be solved by refining the class definition rather than by flatly

11  denying class certification on that basis") (internal citations omitted). In effect, *Olean*

12  holds that refinement of a class definition – where, as here, the elements for

13  certification are satisfied – is little more than a housekeeping matter. *Id. Olean* further

14  instructs that a Rule 23(b)(2) class definition can (and likely should) now be drawn

15  more broadly than was previously allowed when *Mazza*'s Article III-based

16  admonition was the law of this Circuit (and when the Class definition at issue here

17  was first proposed). Indeed, Plaintiffs are not aware of (and Quest has not cited) any

18  court ordering the "draconian" remedy of decertification where, as here, there was (1)

19  a strictly Rule 23(b)(2) class, (2) no change whatsoever in the material facts, and (3)

20  the defendant made ***no factual showing*** on any of the Rule 23(a) or Rule 23(b)(2)

21  factors. *Laurent v. PricewaterhouseCoopers LLP*, No. 06-CV-2280 (JPO), 2021 WL

22  4482147, at *2 (S.D.N.Y. Sept. 30, 2021) (describing decertification as a "draconian"

23  remedy); *Gulino v. Board of Educ. of City School Dist. of City of New York,* 907

24  F.Supp.2d 492, 504 (S.D.N.Y. 2012) (same).

25       Further, because decertification will result in a trial of certified Class

26  Representative Julian Vargas's and Plaintiff ACB's individual claims, that trial will

27  be far more complex than a trial of the certified Class claim. Specifically, Plaintiff

28  ACB's claims are premised on its associational standing to sue on behalf of its

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS CERTIFICATION

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

members, which the Supreme Court and courts in this Circuit have made clear is subject to a different standard than a Rule 23 class action. *See, e.g.*, *Garcia v. City of L.A.*, 2020 U.S. Dist. LEXIS 212976, *18-19 (C.D. Cal. Sept. 15, 2020) (quoting *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 289, 106 S. Ct. 2523, 91 L. Ed. 2d 228 (1986) (recognizing "the special features, advantageous both to the individuals represented and to the judicial system as a whole, that distinguish suits by associations on behalf of their members from class actions"); *Dunn v. Dunn*, 219 F. Supp. 3d 1163, 1166 (M.D. Ala. 2016) ("'[C]lass certification under Rule 23 and associational standing are evaluated on two different rubrics,' and an organization may well have associational standing even if the requirements of Rule 23 could not be met." (Internal citations omitted). Decertification of the Class would therefore render the trial necessarily more complex, as the trial would need to additionally focus on the testimony of ACB and review of records maintained by ACB's leadership to adequately determine the scope of the injunctive relief sought by ACB on behalf of its members.

As this Court's *ex parte* orders suggest, a change in intervening law is grounds upon which to revisit class certification[1] as class certification orders are interlocutory in nature.[2] Accordingly, in light of *Olean*'s new instructions and the May 23, 2022,

---

[1] *See Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 543 (9th Cir. 2013) (considering "new arguments [regarding commonality] on appeal if the issue arises because of an intervening change in law."); *Parra v. Bashas', Inc*, 291 F.R.D. 360, 372 (D. Ariz. 2013), amended in part sub nom. *Estrada v. Bashas' Inc.*, CV-02-00591-PHX-RCB, 2014 WL 1319189 (D. Ariz. Apr. 1, 2014) (revisiting the elements of class certification because of the change in intervening law).

[2] Class certification orders are interlocutory in nature and this Court is vested with broad discretion to refine the wording of the Class definition to fit the contours of the facts established in discovery and of the newly announced change in law by the Circuit Court should it elect to do so. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 809-10 (9th Cir. 2010) ("Federal Rule of Civil Procedure 23

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

ruling (issued just two hours after this Court's May 23, 2022 *ex parte* order) from another court of this District in a strikingly similar class action suit, *Davis et al. v. Laboratory Corp. of America Holdings*, Case No. 2:20-cv-00893-FMO-KS (Dkt. 97, May 23, 2022), Plaintiffs join with Quest in urging this Court to re-examine its prior decision in regard to class certification and, more specifically, its decision not to certify a Rule 23(b)(3) California damages class. A true and correct copy of Judge Fernando Olguin's Order in *Davis* is attached hereto as **Exhibit A**.

Indeed*, Olean*'s holding regarding the predominance prong of Rule 23(b)(3) is also highly relevant to this Court's pre-*Olean* decision to certify only a Rule 23(b)(2) class in this action. In its pre-*Olean* class certification order, this Court held that Plaintiffs had failed to satisfy the predominance prong of Rule 23(b)(3) because "individualized" damages questions predominated over common issues. (Dkt. 190, at 12-14.) The law has changed; *Olean* clarifies that Rule 23(b)(3) certification is appropriate "even if plaintiffs may have to prove individualized damages at trial, **a conclusion implicitly based on the determination that such individualized issues do not predominate over common ones**." *Id.* at 669 (internal citations omitted) (emphasis added). Accordingly, Plaintiffs respectfully request this Court revisit its predominance analysis in light of *Olean* or, at a minimum, allow the parties additional briefing and expert testimony to address its impact on the facts of this case.[3]

---

provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court."); *see also Rodriguez v. City of Los Angeles,* No. CV1101135DMGJEMX, 2014 WL 12515334, at *3 (C.D. Cal. Nov. 21, 2014) (Gee, J.) (same).

[3] Based largely on the Ninth Circuit's holding in *Briseno v. ConAgra Foods, Inc.,* that administrative feasibility is not grounds to deny Rule 23(b)(3) certification (844 F.3d 1121, 1126 9th Cir. 2017), Plaintiffs previously declined to provide the Court with the specifics of a proposed claims administration plan. Plaintiffs request the opportunity to demonstrate through a detailed expert declaration how a claims process could reliably and efficiently be structured here. Plaintiffs did not have adequate time to procure such an expert declaration, including a detailed claims administration plan,

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS CERTIFICATION

Moreover, throughout this case, Quest has claimed that for Plaintiffs to prevail this Court must opine as a matter of law that the ADA imposes a free-standing requirement for Quest to make its e-check-in kiosks independently accessible, rather than find that Quest simply failed to provide effective communication by its choice of communication as required by statute. (Dkt. 212-1. at 7-10; *but see* 28 C.F.R. § 36.303(c)(1)(ii).)

As the Court has already found on multiple prior occasions, however, Plaintiffs' theory of recovery is not at all dependent on any such determination. (Transcript of the Hearing on MSJ at 9:1-5: "I think I have already stated now, the third time, I don't think there is necessarily a requirement for independent access.") Rather, it is based on the unassailable legal principle that Quest must provide certified Class members effective communication and that, throughout the Class Period, the record facts indisputably demonstrate that it failed to do so. (*See* Dkt. 144 at 12-13 (explaining that in addition to the inaccessible kiosk, phlebotomist availability was part of Quest's plan), Dkt. 206 at 14-17 (same), Pretrial Conference Tr., at 9-11 (detailing Plaintiff's position that Quest must provide Plaintiffs effective communication), Dkt. 118, Department of Justice *Statement of Interest*, at 10.) Put another way, if the Court held that the ADA does *not* have a regulation that requires independent access of the kiosks, this finding would have no impact on the fate of Plaintiffs' case. That is because the Court can simultaneously find Quest violated the ADA's effective communication regulation and – because Quest chose to communicate with its patients through the e-check-in kiosk – require its kiosks be made accessible in fashioning an injunction. After all, in the face of Plaintiffs' undisputed facts establishing the historical and ongoing ADA violation, Quest still must establish it provided certified Class members effective communication during

_____

in the short time window of three business days afforded by the Court's May 23, 2022, *ex parte* order for the filing of this supplemental brief.

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS CERTIFICATION

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

the Class Period—and it has indisputably failed to do so. In any event, the certified Class is the master of its own case. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Quest is not permitted to reframe for the Class or this Court a self-serving version of Plaintiffs' "effective communication" case in order to then try and defeat it.

In the final analysis, nothing should divert this Court's attention from the overwhelming body of admissible evidence which confirms that throughout the Class Period—and continuing up to the present date—Quest systematically discriminated against legally blind customers by failing to provide them with effective communication. Quest chose to communicate with its patients via an e-check-in system the certified Class undisputedly cannot use. Quest chose to keep its phlebotomists in the back, unavailable to assist with check-in, and then chose to "double down" on the e-check-in system after Plaintiffs filed this lawsuit by rolling out TFS and other new features in a way that was (and is) inaccessible to certified Class members. Because Quest and Quest alone chose to communicate through a kiosk as its only form of communication in the PSCs, it must ensure that its chosen communication system provides effective communication to certified Class members. The Court previously analyzed all these facts submitted in favor of and in opposition to class certification and determined Plaintiffs met all requirements for a Rule 23(b)(2) class. None of the facts have changed – discovery has long since closed – only the law allowing for a broader reading of predominance and a rule against fail safe classes. These are cured by class definition refinement and re-analysis of the predominance prong as it applies to this action.

For all of these reasons, as well as those set forth herein, the certified Class definition should at most be refined if the Court determines it is "fail-safe" in nature and this Court should certify Plaintiffs' requested Rule 23(b)(3) California damages class.

///

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS CERTIFICATION

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## II. PROCEDURAL HISTORY

On May 11, 2022, through an *ex parte* order, this Court ordered the parties to provide supplemental briefing on issues relevant to both summary judgment and class certification. Specifically, this Court stated:

> Quest seeks leave to file a second MSJ in order to brief the issue of whether the ADA requires Quest's kiosks to be "independently accessible." Because the Court concludes this briefing would be useful in narrowing the issues for trial, the Court GRANTS Quest's EPA and deems the MSJ attached to Quest's EPA timely filed.
>
> The Court also notes that the Ninth Circuit recently stated in an *en banc* decision that district courts should not define classes to include only those who were injured by allegedly unlawful conduct. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,* 31 F.4th 651, 669 n.14 (9th Cir. 2022) …the parties shall address whether the Court should decertify or redefine the class in light of the *Olean* decision and this Court's decision to certify only a Rule 23(b)(2) class.

(Dkt. 211.) Quest then moved again for *ex parte* relief on May 19, 2022, seeking to stay all briefing related to the motions for summary judgment. (Dkt. 215.) On May 23, 2022, the Court granted Quest's second *ex parte* application, ordering all briefing on the summary judgment issues stayed "pending the Court's decision on the class definition issues raised in the May 11, 2022, Order." (Dkt. 217.) Accordingly, Plaintiffs limit their briefing here to issues related to class certification with a special emphasis on the question of refinement of the current Class definition.

In addition, because (1) the Court has ordered this supplemental briefing of the class certification issues *sua sponte*, thereby obviating the need for Plaintiffs to make their own motion, and (2) class certification orders are interlocutory (*United Steel, Paper & Forestry,* 593 F.3d at 809-10), Plaintiffs hereby request this Court also re-examine the propriety of Rule 23(b)(3) certification in light of *Olean*'s holdings. In the alternative, to the extent the Court wishes that Plaintiffs instead seek leave to move to extend the case management order under Rule 16(b) so that they can make a second motion for class certification of the Rule 23(b)(3) class in light of *Olean*, Plaintiffs now make that request.

///

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS CERTIFICATION

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

## III.   LEGAL ARGUMENT

### A.   *Olean* Compels A Review of Certain Aspects of Class Certification in this Action

The Court, in its May 11, 2022, *Ex Parte* order, asked the parties to "address whether the Court should decertify or redefine the class in light of the *Olean* decision and this Court's decision to certify only a Rule 23(b)(2) class." (Dkt. 215 at 2.) Plaintiffs respectfully submit that *Olean* (and every other Circuit court to address the question[4]) instructs that the appropriate remedy where, as here, all elements necessary for certification are satisfied but the Court is concerned with the class definition – is refinement of that class definition—not decertification.

In *Olean*, an *en banc* panel of the Ninth Circuit reviewed the lower court's certification of three Rule 23(b)(3) classes of direct and indirect purchasers of commercial tuna in a price fixing action. *Id*. at 661. Four of *Olean*'s holdings may impact the instant case: first, the Circuit Court's rejection of the *dicta* in *Mazza* which had created confusion regarding the rules governing class definitions for strictly injunctive relief classes under Rule 23(b)(2) (like the instant case); second, the Court's newly-announced prohibition on so-called "fail-safe" class definitions; third, its holding that class definition refinement—not dismissal or decertification—is the appropriate remedy in the event of an infirm class definition (*id*. (*citing Messner v. Northshore U. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) ("[e]ither problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis")); and, fourth (and perhaps most importantly), that damages questions of individual class members must not prevent a

---

[4] 3 *Newberg on Class Actions* § 7:27 (5th ed.) ("Critically, none of the foregoing concerns inevitably dooms class certification for the simple reason that, **as courts in every circuit have held**, when a class definition is *not* acceptable, judicial discretion can be utilized to save the lawsuit from dismissal.") (Emphasis added).

finding that common questions predominate over individual questions. *Olean*, 31 F.4th at 669 (holding that predominance is satisfied "even if plaintiffs may have to prove individualized damages at trial, **a conclusion implicitly based on the determination that such individualized issues do not predominate over common ones**.") (Internal citations omitted) (emphasis added).

### 1. Plaintiffs Need Not Establish Article III Standing For Each Class Member

First, *Olean* obviated class plaintiffs' potential need to prove Article III standing for each class member (first mentioned in *Mazza*), and underscores the previously well-settled rule that, in a strictly Rule 23(b)(2) class action like this one, classes which are defined to be quite broad are fully acceptable because Rule 23(b)(2) classes are necessarily overbroad by their very design. *See* Fed. R. Civ. P. 23 advisory committee note (1966 Amendments), *reprinted in* App. A; Newberg & Conte, *Newberg On Class Actions* (3d ed. 1992) note 18, § 4.11; *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 230 (C.D. Cal. 2003) (finding "Rule 23(b)(2) requires that 'the party opposing the class has acted or refused to act on grounds generally applicable to the class,' thereby making broad injunctive and/or declaratory relief appropriate to the class as a whole. Rule 23(b)(2).").

As this Court noted in its class certification order, in the context of a strictly Rule 23(b)(2) class, "[t]he fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." Dkt. 190, at 10 (*citing Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)). This is precisely because Rule 23(b)(2)'s less stringent requirement for class definitions is ***expressly designed*** for injunctive relief civil rights actions like this one. *See* 2 *Newberg on Class Actions* § 4:28 (5th ed.) ("Courts have followed the Advisory Committee's approach, finding that certification of a Rule 23(b)(2) class is proper despite the fact that not all class members may have suffered the injury posed by the class representatives so long as the challenged policy

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

13

or practice was generally applicable to the class as a whole."); *Walters,* 145 F.3d at 1047 ("Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate."); *see also* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1775 (2d ed. 1986) ("All the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for some of them to seek relief under Rule 23(b)(2)."). Thus, in a strictly Rule 23(b)(2) class action like the one this Court certified, the Ninth Circuit has now given its full blessing to these classes being defined broadly, directly overruling its prior statement in *Mazza.* Accordingly, this holding instructs that, should the Court be inclined to refine the Class definition here to better encompass the unlawful conduct established in discovery, defining it broadly is now advisable.

## 2. "Fail-Safe" Class Definitions Are Prohibited For Rule 23(b)(3) Classes

Second, *Olean*'s newly announced rule against so-called "fail-safe" class definitions in Rule 23(b)(3) class cases also may bear on this action. A "fail-safe" class is "defined to include only those individuals who were injured by the allegedly unlawful conduct," which the Court stated is "improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Olean*, 31 F.4th at 669, fn. 14 (quoting *Messner,* 669 F.3d at 825). Importantly, prior to *Olean*, as this Court noted in its class certification Order, "the Ninth Circuit 'note[d], though [. . . did] not hold, that our circuit's caselaw appears to disapprove of the premise that a class can be fail-safe." (Dkt. 190 at 5.) Accordingly, Plaintiffs' original Class definition, in adherence with the law of this Circuit at the time it was proposed, included a definition that is arguably "fail-safe."[5]

---

[5] Alternatively, courts have defined a "fail-safe" class as one that is not capable of objective determination. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660–61 (7th Cir. 2015) (finding the class definition is not fail safe when "[i]t identifies a particular group of individuals [ ] harmed in a particular way [ ] during a specific

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

### 3.  Refinement – Not Decertification – Is The Appropriate Remedy For An Infirm Class Definition

*Olean*'s third holding—that "refinement" and not dismissal or decertification is the appropriate remedy for an infirm class definition – also has bearing here. The Circuit Court held that where, as here, all the elements necessary for certification are established, potential infirmities in the wording of the class definition "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Olean*, 31 F. 4th at 669, fn. 14.[6] Indeed, "many courts have recognized that class definitions are fluid, even at the certification stage." *See, e.g.*, *In re Hulu Privacy Litigation*, No. C 11–03764 LB, 2014 WL 2758598, at *14 (N.D. Cal. June 17, 2014) (finding "definitional flaws 'can and often should be resolved by refining the class definition rather than flatly denying class certification on that basis'") (quoting *Messner*, 669 F.3d at, 825);  *Petersen v. Costco Wholesale Co.*, 312 F.R.D. 565, 574 (C.D. Cal. 2016); *see also Carlos v. Easter Seals S. California Inc., No*. SACV1401685JVSRNBX, 2014 WL 12966422, at *11 (C.D. Cal. Dec. 23,

period in particular areas."); *see also Geary v. Green Tree Servicing, LLC*, 2:14-CV-00522, 2017 WL 2608691, at *11 (S.D. Ohio June 16, 2017) (holding the proposed class, which included individuals who received debt collection letters from Green Tree, during a specified period of time, did not constitute an impermissible fail safe, because the class could be ascertained by reference to "objective factors"). Under that standard, the existing certified Class definition is capable of objective determination because it includes only (1) legally blind individuals, (2) in the United States (3) who visited a Quest PSC during the Class Period and (4) could not utilized the e-check in kiosk because it lacked accessible features which would allow it to be utilized independently. Dkt. 190, at 15. Nonetheless, if the Court has concerns regarding the Class definition, Plaintiffs have no objection to definition refinement.

[6] *Olean*'s instruction to refine an infirm class definition in lieu of decertification is consistent with this Court's statement in *Aichele v. City of Los Angeles*, 314 F.R.D. 478, 485 (C.D. Cal. 2013) that "[a] court's order granting or denying class certification may be altered or amended at any time before final judgment. Fed. Civ. P. 23(c)(1)(C). The rule evinces a policy to allow modification of a class throughout litigation as is necessary to enhance the usefulness of the class-action device."

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

2014); 3 *Newberg on Class Actions* § 7:27 (5th ed.).[7]

Moreover, the soundness of refinement as the appropriate remedy for an arguably-infirm class definition in a strictly Rule 23(b)(2) civil rights class action like this one is underscored by the fact that ***none*** of the potential due process notice concerns[8] which might fairly be raised in a Rule 23(b)(3) class action – where class notice at the class certification stage is mandatory and re-notice may therefore be necessary in the case of definition modification – are presented.[9]

Accordingly, if the Court finds the current class definition is "fail-safe" in nature, *Olean* instructs the appropriate remedy is to refine the definition – not to decertify the certified Class or to dismiss the Class claim entirely – unless and until Quest can demonstrate good cause why the certified Class somehow suddenly fails to meet the requirements for Rule 23(b)(2) certification. *See also Rodriguez,* 2014 WL 12515334, at *3 (J. Gee) (declining to decertify a Rule 23(b)(2) class and stating that "[o]nce a class is certified, the parties can be expected to rely on it, conduct discovery, prepare for trial, and engage in settlement discussion on the assumption that it will not be altered except for good cause.").

Quest does not even attempt to make any such showing here. (Dkt. 212.) Nor could it. As this Court found in its class certification Order, Plaintiffs have satisfied each of the Rule 23(a) factors of numerosity, commonality, typicality, and adequacy

---

[7] Courts in this District have *sua sponte* refined class definitions where, like here, the Plaintiffs have met all requirements. *See, Davis v. Laboratory Corporation of America,* Case No. 2:20-cv-00893-FMO-KS, at fn. 16 (Dkt. 97, May 23, 2022) (Judge Olguin *sua sponte* refined the class definition at the certification stage in a similar fact pattern).

[8] The fact that class notice has not been ordered here also means that re-examining whether Rule 23(b)(3) certification is both efficient and will not cause any prejudice to Defendants.

[9] This Court did not exercise its discretion to order notice of this strictly Rule 23(b)(2) class at the certification stage. Dkt. 190 and Rule 23(c)(2)(A).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS CERTIFICATION

(Dkt. 190 at 5-9), as well as the additional Rule 23(b)(2) factors. Dkt. 190, at 10. In this Court's words, "[t]his is a civil rights action against a party charged with unlawful, class-based discrimination based on the use of a specific auxiliary aid or service, ***and is a prime candidate for 23(b)(2) certification***." Dkt. 190, at 10 (emphasis added). Nothing has changed since this Court issued its class certification order – nor does Quest even suggest it has.

Further, it bears mentioning that (1) the current Class definition was proposed before *Olean* was decided[10] and (2) Plaintiffs originally sought to certify ***both*** Rule 23(b)(3) and Rule 23(b)(2) classes. Dkt. 107 at 18. A Rule 23(b)(3) class definition must be particularly narrowly tailored to pass muster in part due to the heightened due process concerns at issue, including issues surrounding class notice. *See* 3 *Newberg on Class Actions* § 7:27 (5th ed.) ("the class definition must be clear and precise. Definitions that are difficult to follow or understand will leave absent class members unsure of their standing in regard to the litigation.").[11]

_____

[10] Because this is true, principles of fundamental fairness suggest that Plaintiffs should be afforded the opportunity to propose a refined Class definition. *In re. Infineon Tech. AG Sec. Litig.*, No. C 04-04156 JW, 2010 WL 11587076, at *2 (N.D. Cal. Oct. 27, 2010) ("Amendment to the pleadings is freely granted, especially where there is an intervening change of law."); *Zakaria v. Gerber Products Co.*, No. LA CV15-00200 JAK (Ex), 2015 WL 4379743, at *1-2 (C.D. Cal. July 14, 2015); *Wang*, 737 F.3d at 542 ("[W]e may consider new arguments on appeal if the issue arises because of an intervening change in law.").

[11] It bears noting that a core concern underlying the "fail-safe" rule—*i.e.*, "that courts hold that such liability-begging definitions are administratively infeasible, as the inquiry into class membership would require holding countless hearings resembling 'mini-trials.'" (*see* § 3:6. 1 *Newberg on Class Actions* § 3:6 (5th ed.), does not appear to be implicated by strictly Rule 23(b)(2) classes like this one where precision in terms of class membership is not a requirement and, in any event, there is never a need for a district court to conduct mini-trials regarding class membership. *See* Fed. R. Civ. P. 23(b)(2) advisory committee's notes (stating that "[a]ction or inaction is directed to a class within the meaning of this subdivision ***even if it has taken effect or is threatened only as to one or a few members of the class***, provided it is based on grounds which

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

17

To be sure, "[d]efining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. *Messner*, 669 F.3d at 825. Here, Plaintiffs' (and this Court's) task has been made more challenging by the Circuit Court's new instructions after the class certification Order was issued. Accordingly, while Plaintiffs believe the existing pre-*Olean* Class definition was well-crafted at the time of certification, they have no objection to a reasonable modification to it should the Court wish to better align it with *Olean*'s new instructions. As it is Plaintiffs' duty to propose (and the Court's duty to order) the Class definition (*see* Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class action must define the class and the class claims, issues, or defenses . . . ."), in the event the Court finds that definition refinement is appropriate here, Plaintiffs respectfully propose the following refined Class definition:

> All legally blind individuals in the United States who visited a Quest patient service center during the Class Period and were not assisted with check in by a Quest employee.[12]

This proposed definition is subject to objective determination and, further, is broad enough to encompass all legally blind individuals in the United States who were denied effective communication by Quest during the Class Period.[13] As the law has

---

have general application to the class.") (Emphasis added). Indeed, all the cases cited by the *Olean* Court in support of the Circuit Court's new "fail-safe" prohibition involved Rule 23(b)(3) classes. *See Olean*, 31 F. 4th at 669 fn. 14 (relying on *Messner*, 669 F.3d at 825, *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 (9th Cir. 2016), *Mazza*, 666 F.3d at 596, and *In re Asacol Antitrust Litig.,* 907 F.3d 42, 55 (1st Cir. 2018)). This raises the question of whether the Ninth Circuit even intended its prohibition to apply to strictly Rule 23(b)(2) class actions like this one.

[12] Should the Court wish to revisit certification of the California Rule 23(b)(3) class in light of *Olean*, Plaintiffs propose the following definition for the California Class:

> All legally blind individuals in California who visited a Quest patient service center during the Class Period and were not assisted with check in by a Quest employee.

[13] The proposed refined Class definition should not be read as an abandonment of any

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1 | recently shifted on this issue and continues to be in flux, Plaintiffs do not claim that
2 | there is only one way to properly define the Class, and remain open to any further
3 | refinement of this proposed Class definition the Court may deem appropriate under
4 | the circumstances. *See Aichele,* 314 F.R.D. at 493 (refining the class definition).

### 4. Individualized Damages Questions Must Not Preclude A Finding of Rule 23(b)(3) Predominance

7 | Finally, in its pre-*Olean* class certification order, this Court held that Plaintiffs
8 | had failed to satisfy the predominance prong of Rule 23(b)(3) because
9 | "individualized" damages questions predominated over common issues. Dkt. 190, at
10 | 13-14. But *Olean* now clarifies that Rule 23(b)(3) certification is appropriate "even if
11 | plaintiffs may have to prove individualized damages at trial, *a conclusion implicitly*
12 | *based on the determination that such individualized issues do not predominate over*
13 | *common ones.*" *Id.* at 669 (internal citations omitted) (emphasis added).

14 | Judge Olguin's May 23, 2022, order on class certification in *Davis et al. v.*
15 | *LabCorp* – issued in the wake of *Olean* – is highly instructive in this regard. *Davis v.*
16 | *Laboratory Corporation of America,* Case No. 2:20-cv-00893-FMO-KS (Dkt. 97,
17 | May 23, 2022) ("*Davis* Op."). There, the Court certified both a Rule 23(b)(2)
18 | nationwide injunctive relief class of legally blind individuals under the ADA, *and* a
19 | Rule 23(b)(3) California damages class of legally blind individuals under the Unruh
20 | Act. *Id.* Directly addressing the impact of *Olean*, Judge Olguin held that individual
21 | damages questions must not prevent a finding of predominance because "the court
22 | can bifurcate the case into a liability and damages phase and, assuming there is a
23 | liability determination, create a claims process by which to validate individualized

24 | _____

25 | part of Plaintiffs' theory of recovery (*i.e.,* effective communication). To the contrary,
26 | in proposing this refined Class definition, Plaintiffs' sole intent is to remove any even
27 | potentially "fail-safe" language in response to *Olean* but not to otherwise alter the
    | substance of the definition. Any Class definition which accomplishes that task is
28 | acceptable to Plaintiffs.

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS CERTIFICATION

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

claim determinations." *Id.,* at pp. 17-18. Importantly, in making this determination, Judge Olguin relied heavily on the Ninth Circuit's opinion in *Briseno,* which held that "[t]he language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification [.]"). *Id.*, at 16, fn. 10.

Here, in addressing predominance pre-*Olean* this Court stated there are individual questions which are not susceptible to common proof or objective determination, including (1) Quest did not roll the kiosk out at the same time throughout California, and (2) Quest does not maintain records of its customers' legal blindness during the Class Period. While Plaintiffs continue to believe these findings are incorrect factually – the import of *Olean* is that such findings are premature and therefore ***not germane to the predominance inquiry***.[14] Specifically, in this Court's pre-*Olean* analysis of predominance under Rule 23(b)(3), it found that common questions did not predominate because "Quest does not keep records regarding its patients' visual impairments" and that, as a result, a claims administration process would require individual proof of eligibility. Dkt. 190, at 14.

The *Davis* Court – post-*Olean* – faced a similar question. *Davis* Op. at 16 ("LabCorp's argument boils down to determining whether each class member used or was exposed to a kiosk at one of the LabCorp's PSCs."). But as the *Davis* Court made clear, after *Olean* "predominance is not concerned with determining who may be

_____

[14]  The District Court found Quest intended its phlebotomists to be unavailable to assist customers (Dkt. 144 at 11). Nonetheless, to the extent any showing is required as to whether a blind person was assisted by front desk personnel with kiosk check-in during a PSC visit, this too is susceptible to common proof. Quest maintained data that "identifies the number of Patient Service employees in the United States who were employed by defendant Quest Diagnostics Incorporated and/or its wholly-owned subsidiaries in 2019 and who held the job titles in the spreadsheet [Bates 42006], as well as the work location to which they were coded at that time." (Dkt. 107-5, Ex. 30, at Topics 9, 10, 11.) Moreover, there are at least 730 locations nationwide, and 109 locations in California, which have only one employee working during business hours. *Id*. According to Quest, this lone employee is a phlebotomist busy taking specimens in the back. (*See* Dkt. 107-3, Ex. 6, at PA0071:6-12; PA0085:6-17.)

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS CERTIFICATION

entitled to class membership" (*Davis* at 16) and can be established "even if plaintiffs may have to prove individualized damages at trial, a conclusion implicitly based on the determination that such individualized issues do not predominate over common ones." *Olean*, 31 F. 4th at 669. While *Olean* goes further than the Ninth Circuit's prior holdings (including, *inter alia*, *Briseno*, *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) and *Pulaski & Middleman, LLC v. Google, Inc.,* 802 F.3d 979, 989 (9th Cir. 2015)) it is entirely consistent with the thrust of those holdings – that predominance is still established where there are common questions but entitlement to statutory damages must be decided on an individual basis. Put simply, after *Olean*, such individual damages questions cannot be the basis for denying certification for want of predominance.[15] Further, critical to the *Davis* Court's predominance finding was the fact that "there should be minimal logistical difficulties to identifying class members given the uniformity of the kiosks, and the fact that LabCorp knows how many patients checked in, and has information on those patients from their provided ID and insurance." *Davis* at 22 (internal citations omitted). As in *Davis*, here Quest unquestionably has access to this very same patient information and knows where and when its kiosks were rolled out.[16] Accordingly, these garden-variety eligibility

_____

[15] The Court's class certification order acknowledged that "[u]nder Vargas's theory of the case each putative class member must show only (1) that he or she is legally blind (2) that he or she visited a patient service center *with* a kiosk and *without* a staffed desk (3) during the class period." Dkt. 190, at 14.

[16] Quest's kiosk rollout schedule establishes the fact of the encounter, with detailed records of the ECSS rollout schedule throughout its PSC network, including each PSC's date of ECSS implementation and date of first use. *See* Dkt. 107-5, Ex. 30, at Topic 6, 7 ("The data collected in the document labeled as Bates No. QUEST-VARGAS 00000039568-39608 …. is the best record that Defendants have of the first activation and first use of the Kiosks. activated at the particular Patient Service Centers identified in the document…"); Dkt. 163, Ex. 149, Quest's 2018 10-K (affirming all PSCs equipped with ECSS in 2018). Given this fact, whether a blind person encountered a kiosk is susceptible to common proof and does not require any individualized inquiry. Accordingly, a claims administrator can objectively determine

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

21

determinations based on objective criteria are not *bona fide* individualized inquiries which might require the weighing of evidence or of picking winners and losers. *See Otto v. Abbott Laboratories Inc.*, 2015 WL 9698992, at *2 (C.D. Cal. Sept. 29, 2015) (quoting *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 521 (C.D.Cal.2012)) (finding class ascertainable if it is "administratively feasible for the court to determine whether a particular individual is a member" using objective criteria).

Here, in light of *Olean* and the fact that the Court has already found that common questions abound (*see* Class Cert. Opinion at 7-8) (stating that commonality is established based on presence of at least five common questions), should the Court believe it to be helpful to its post-*Olean* predominance inquiry, Plaintiffs request the opportunity to demonstrate through expert testimony how an efficient claims process can and should be conducted during the damages phase to process individual Unruh Act damages claims.[17]

_____

whether a blind Quest customer who submits a claim encountered the ECSS kiosk.

[17] Because this Court's superiority analysis relied heavily on its predominance analysis (*see* Dkt. 190, at 15 (stating that "[a]s discussed *supra*, however, it is clear that given the circumstances, each class member would essentially need to litigate her own case even if the Unruh Act sub-class were certified.")), Plaintiffs respectfully request that superiority also be re-examined in light of *Davis*. As the *Davis* Court pointed out, "identifying class members here would not be difficult" because LabCorp "knows how many patients check in, and has information on those patients from their provided ID and insurance[.]". *Davis* at 24. The record here is clear that Quest has the very same basic patient information. In addition, as the *Davis* Court noted, the $4,000 minimum statutory damages amount is a minimal sum that "would be dwarfed by the cost of litigating on an individual basis," further supporting a finding of class action superiority. *Davis* Op. at 23 (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010); *see also Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("[i]f plaintiffs cannot proceed as a class, some – perhaps most – will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover").

Nye, Stirling, Hale & Miller
33 West Mission Street, Suite 201
Santa Barbara, California 93101

22

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

**B.   Decertification Or Dismissal Of The Class Claims Will Not Narrow The Issues For Trial**

Nor will decertification or dismissal of the Class claim help to narrow the issues for trial. Putting aside the fact that Quest has not even attempted to make any factual showing which might compel this Court to decertify the Class, or that no court has decertified a strictly Rule 23(b)(2) class where, as here, the facts have not changed – Quest mistakenly states that if the Court were to decertify, such decision would "convert[] this action into a much smaller, more manageable and far less complex one addressing the individualized experiences of Mr. Vargas (and possibly certain ACB members) on a limited number of occasions." Dkt. 212 at 16. This is demonstrably untrue; it drastically understates the complexity of issues that would be left for this Court to manage at trial should the Court decertify the Class.

In addition to Plaintiff Vargas's certified Class claims, Plaintiff ACB has separate claims on behalf of its members throughout the United States seeking the same injunctive relief sought by Plaintiff Vargas and the Class. The record is replete with dozens of ACB members' similar experiences at Quest PSCs across the country, many of whose experiences are contained in the evidence to be put on by the American Council of the Blind's leadership. *See* Dkt. 207 at 10:17-24; Plaintiffs' Undisputed Facts at 13, 25-26 (setting forth ACB members' experiences at Quest); Dkt. 163, Joint Exhibits 60 (ACB's Third Supplemental Responses to Interrogatories). Decertifying the class here would do nothing to limit or narrow these claims.

Moreover, Plaintiff ACB's claims are premised on its associational standing to sue on behalf of its members, which the Supreme Court and courts in this Circuit have made clear has different standards than a Rule 23 class action. *See, e.g.*, *Garcia*, LEXIS 212976, *18-19 (quoting *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 477 U.S. at 289 (recognizing "the special features, advantageous both to the individuals represented and to the judicial system as a whole,

that distinguish suits by associations on behalf of their members from class actions"). "'[C]lass certification under Rule 23 and associational standing are evaluated on two different rubrics,' and an organization may well have associational standing even if the requirements of Rule 23 could not be met." *See Dunn,* 219 F. Supp. 3d at 1166 (quoting *Bhd. of Maint. of Way Emps. Div. of Int'l Bhd. of Teamsters v. Ind. Harbor Belt R.R. Co*., 20 F. Supp. 3d 686, 691 (N.D. Ind. 2014)). Such differing standards will present obvious challenges in a Court trial.

The record is undisputed that ACB's members have experienced similar denials of effective communication at Quest's PSCs across the country to those experienced by certified Class Representative Vargas. *See, e.g.*, *See, e.g.*, Dkt. 207 at 10:17-24; Plaintiff's Undisputed Facts at 13, 25-26 (setting forth ACB members' experiences at Quest); Dkt. 163, Joint Exhibits 60 (ACB's Third Supplemental Responses to Interrogatories); 71 (results of ACB outreach to members). Plaintiffs have stated their intent, if necessary, to rely on testimony and records from ACB demonstrating these denials of effective communication. *See, e.g.*, Dkt. 172-1, at 10 (noting Plaintiffs' reliance on, *inter alia*, "[t]he testimony of Plaintiff American Council of the Blind's current and former representatives, Clark Rachfal and Claire Stanley.")

Most importantly, ACB seeks the same nationwide injunctive relief as the certified Class. *See* Joint Statement of the Case at 2 (Dkt. 172-1). Accordingly, even if the Class were decertified, the claims of ACB on behalf of its members throughout the United States would continue. Decertification of the Class would make the trial of this case necessarily much more complex, as the trial would increase its focus on the testimony of ACB and review of records maintained by ACB's leadership to determine the scope of the injunctive relief sought by ACB on behalf of its members. Such complexity will be avoided if the Class remains certified, as the trial would instead focus largely on the claims of the certified Class Representative (with evidence of ACB's members playing a lesser and supportive role) to determine the appropriate relief.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

24

**C.     This Court Has Already Heard And Rejected Quest's Argument As To "Independent Accessibility" Class On Three Prior Occasions**

Throughout this litigation, Quest has repeatedly attempted to replace the Class's theory of recovery based on the facts (*i.e.,* lack of effective communication) with its own self-serving (if irrelevant) theory as to independent accessibility. In fact, Quest raised this very same argument in support of its first summary judgment motion (Dkt. 95-1 at 20), its opposition to the motion for class certification (Dkt. 133 at 1), and again at the pre-trial conference. In each instance, this Court correctly found that it did not even need to reach the question of whether the ADA requires the kiosks to be independently accessible for the Class to prevail on its claims. (Dkt. 144 at 13; Dkt. 190 at 5.) Specifically, at page 13 of its order on Summary Judgment (Dkt. 144) and, later at page 5 of its class certification order (Dkt. 190), this Court noted that a free-standing requirement of independent accessibility was not essential to Plaintiffs' theory of recovery. *See* Dkt. 190, at 5 (stating that "in its MSJ Order, **the Court did not reach the question of whether the kiosks must be independently accessible, because Plaintiffs offered evidence that established a triable issue of fact as to whether phlebotomists were in fact available to assist blind patients**.") ADA regulations are clear that a public accommodation may choose which auxiliary aids to provide to ensure effective communication, so long as the method chosen "results in effective communication." *See* 28 C.F.R. § 36.303(c)(1)(ii).". Thus, the entire premise of Quest's argument against class definition—that Plaintiffs' theory rests on a free-standing requirement that the kiosk must be independently accessible—is fatally flawed.

This Court's summary judgment order makes clear that it understands both the theory upon which this action is based (*i.e.,* effective communication) and the Ninth Circuit precedent upon which it is based, *Robles vs. Dominos Pizza, LLC*, 913 F.3d 898, 904-06 (9th Cir. 2019). (Dkt. 144 at 12:14-21.)

Critically, no facts have changed since this Court issued these rulings—there

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

25

1  are no new facts and no new law which might compel a different result on this, Quest's

2  fourth try. Accordingly, this Court should reject Quest's argument yet again.

3  **IV.    CONCLUSION**

4       For all of the reasons set forth above, the Court should follow the relief outlined

5  in *Olean* and (1) refine the class definition as stated herein, and (2) certify the Rule

6  23(b)(3) class pursuant to the definition proposed herein.

7  Dated: May 27, 2022                    Respectfully submitted,

8                                    By:   */s/ Jonathan D. Miller*

9                                         Jonathan D. Miller (SBN 220848)
                                          jonathan@nshmlaw.com
10                                        Alison M. Bernal (SBN 264629)
                                          alison@nshmlaw.com
11                                        NYE, STIRLING, HALE
12                                        & MILLER, LLP
                                          33 West Mission Street, Suite 201
13                                        Santa Barbara, CA 93101
14
15                                        Benjamin Sweet (*Pro Hac Vice*)
                                          ben@nshmlaw.com
16                                        NYE, STIRLING, HALE
17                                        & MILLER, LLP
                                          1145 Bower Hill Road, Suite 104
18                                        Pittsburgh, PA 15243
19                                        Telephone: (412) 857-5350

20                                        Matthew K. Handley (*Pro Hac Vice*)
                                          mhandley@hfajustice.com
21                                        HANDLEY FARAH &
22                                        ANDERSON PLLC
                                          200 Massachusetts Ave., NW 7th Floor
23                                        Washington, DC 20001
24                                        Telephone: (202) 559-2411

25
                                          Attorneys for Plaintiffs JULIAN VARGAS,
26                                        AMERICAN COUNCIL OF THE BLIND,
                                          AND THE CERTIFIED CLASS
27

28

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA  93101

PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF CLASS CERTIFICATION