1 | OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2 | DAVID RAIZMAN, CA Bar No. 129407
david.raizman@ogletree.com
3 | AMBER L. ROLLER, CA Bar No. 273354
amber.roller@ogletree.com
4 | J. NICHOLAS MARFORI, CA Bar No. 311765
nicholas.marfori@ogletree.com
5 | 400 South Hope Street, Suite 1200
Los Angeles, California 90071
6 | Telephone: 213-239-9800
Facsimile: 213-239-9045
7 |

8 | Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL
9 | LABORATORIES, INC.; QUEST
DIAGNOSTICS HOLDINGS, INC. and
10 | QUEST DIAGNOSTICS INCORPORATED

11 | **UNITED STATES DISTRICT COURT**

12 | **CENTRAL DISTRICT OF CALIFORNIA**

13 | JULIAN VARGAS, ANNE WEST and   Case No. 2:19-cv-08108 DMG (MRWx)
AMERICAN COUNCIL OF THE
14 | BLIND, individually on behalf of    **BRIEF OF QUEST DEFENDANTS IN**
themselves and all others similarly    **RESPONSE TO MAY 11, 2022 AND**
15 | situated,                          **MAY 23, 2022 ORDERS REGARDING**
                                      **DECERTIFICATION (ECF 211, 217)**
16 |              Plaintiffs,

17 |       v.                          Complaint Filed: September 18, 2019
                                      Trial Date:      November 1, 2022
18 | QUEST DIAGNOSTICS CLINICAL        District Judge:  Hon. Dolly M. Gee
LABORATORIES, INC., QUEST                          Courtroom 8C, First St.
19 | DIAGNOSTICS HOLDINGS, INC.,       Magistrate Judge: Hon. Michael R. Wilner
QUEST DIAGNOSTICS                                 Courtroom 550, Roybal
20 | INCORPORATED; and DOES 1-10,
inclusive,
21 |
22 |              Defendants.

23 |

24 |

25 |

26 |

27 |

28 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION. ...................................................................... 1

II.     THE CERTIFIED CLASS IS "FAIL-SAFE" AND SHOULD
        BE DECERTIFIED. ............................................................... 3

        A.      As Plaintiffs Concede, "Fail-Safe" Classes Are Improper
                Under *Olean*. ................................................... 3

        B.      *Olean*'s Prohibition Of "Fail-Safe" Classes Is Not
                Limited To Rule 23(b)(3). ................................... 4

        C.      Decertification Is Entirely Appropriate Under *Olean*. ................... 5

III.    PLAINTIFFS DO NOT ATTEMPT TO, AND CANNOT,
        SATISFY THE REQUIREMENTS OF RULE 23 FOR THEIR
        PROPOSED REDEFINED CLASS. ...................................... 7

        A.      The Record Evidence Demonstrates Plaintiffs Do Not
                Seek Uniform Relief From A Practice Applicable To All
                Class Members. ..................................................... 8

        B.      A Rigorous Analysis Of Rule 23(b)(2) Requirements
                Shows That Plaintiffs' Proposed Redefined Class Cannot
                Be Certified. ..................................................... 11

                1.      Certification Of An Injunctive Relief Class Is
                        Inappropriate Where There Are Over 2,100 PSC
                        Locations. ............................................. 14

                2.      The Proposed Redefined Class Is Inconsistent With
                        The Narrow Injunctive Relief Sought In The
                        Amended Complaint. ........................... 16

        C.      A Rigorous Analysis Of The Requirements of Rule 23(a)
                Shows That The Proposed Redefined Class Cannot Be
                Certified. ............................................................. 16

i

IV.   PLAINTIFFS' REQUEST THAT THE COURT REVISIT THE DENIAL OF CERTIFICATION OF THE DAMAGES CLASS UNDER RULE 23(B)(3) IS WHOLLY INAPPROPRIATE AND MERITLESS. ........................................................................ 19

V.    CONCLUSION .......................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Bateman v. American Multi-Cinema, Inc*,
  623 F.3d 708 (9th Cir. 2010) ................................................................. 20

*Briseno v.ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ............................................................... 20

*Bustos v. Dignity Health*,
  2019 WL 3532158 (D. Ariz. Aug. 2, 2019) ........................................... 13

*Byrd v. Aaron's Inc.*,
  784 F.3d 154 (3d Cir. 2015) ..................................................................... 3

*C.R. Educ. & Enf't Ctr. v. Hosp. Properties Tr.*,
  317 F.R.D. 91 (N.D. Cal. 2016) .................................................. 13, 14, 15

*Carr v. Tadin, Inc.*,
  No. 12-CV-3040 JLS JMA, 2014 WL 7497152 (S.D. Cal. Apr. 18,
  2014), *amended in part*, No. 12-CV-3040 JLS JMA, 2014 WL
  7499453 (S.D. Cal. May 2, 2014) .......................................................... 12

*Castaneda v. Burger King Corp.*,
  264 F.R.D. 557 (N.D. Cal. 2009) ..................................................... 14, 15

*Cordoba v. DIRECTV, LLC*,
  942 F.3d 1259 (11th Cir. 2019) ............................................................... 4

*Davis v. Laboratory Corporation of America*,
  Case No. CV 20-0893 FMO, 2022 WL 1682416 (C.D. Cal. May 23,
  2022) ............................................................................................ 1, 17, 21

*EQT Prod. Co. v. Adair*,
  764 F.3d 347 (4th Cir. 2014) .................................................................... 4

*Futterman v. Kaiser Found. Health Plan, Inc.*,
  No. A155946, 2020 WL 3958259 (Cal. Ct. App. July 13, 2020) ........... 23

*Hooper v. City of St. Paul*,
  2019 WL 4015443 (D. Minn. Aug. 26, 2019) ........................................ 17

*Kamar v. RadioShack Corp.*,
  375 F. App'x 734 (9th Cir. 2010) .................................................... 3, 4, 6

*Kihn v. Bill Graham Archives LLC*,
  No. 20-17397, 2022 WL 18935 (9th Cir. Jan. 3, 2022) ............. 3, 11, 13, 15

*Kotev v. First Colony Life Ins. Co.*,
  927 F. Supp. 1316 (C.D. Cal. 1996) ...................................................... 21

iii

*Lautemann v. Bird Rides, Inc.*,
  No. CV1810049PARAOX, 2019 WL 3037934 (C.D. Cal. May 31,
  2019) ............................................................................................................... 11

*McCaster v. Darden Restaurants, Inc.*,
  845 F.3d 794 (7th Cir. 2017) .............................................................................. 4

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) .............................................................................. 3

*Mielo v. Bob Evans Farms, Inc.*,
  No. CIV.A. 14-1036, 2015 WL 1299815 (W.D. Pa. Mar. 23, 2015) .............. 15, 18

*National Federation of the Blind, Inc. v. Wal-Mart Associates, Inc.*,
  __ F. Supp. 3d __, 2021 WL 4750521 (D. Md. October 12, 2021) ...................... 3

*In re Nexium Antitrust Litig.*,
  777 F.3d 9 (1st Cir. 2015) ................................................................................... 3

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ....................................................................... *passim*

*Orduno v. Pietrzak*,
  932 F.3d 710 (8th Cir. 2019) .............................................................................. 4

*Quevedo v. Macy's, Inc.*,
  No. CV091522, 2011 WL 13124445 (C.D. Cal. Mar. 9, 2011) ........................... 4

*In re Rodriguez*,
  695 F.3d 360 (5th Cir. 2012) .............................................................................. 4

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) ........................................................................ 9, 11

*Ruiz Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ............................................................................ 3

*Ruiz v. Citibank, N.A.*,
  Nos. 10 Civ. 5950, 10 Civ. 7304, 2015 WL 4629444 (S.D.N.Y. Aug.
  4, 2015) ............................................................................................................... 4

*Sandoval v. Cty. of Sonoma*,
  912 F.3d 509 (9th Cir. 2018) ............................................................................ 18

*Sengupta v. City of Monrovia*,
  No. CV 09-00795 ABC, 2010 WL 11515299 (C.D. Cal. July 28,
  2010) ................................................................................................................. 13

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................... *passim*

*White v. Hilton Hotels Ret. Plan*,
  No. CV 16-856, 2022 WL 1050570 (D.D.C. Mar. 22, 2022) ......................... 4, 5

iv

*Wright v. Renzenberger, Inc.*,
    656 F. App'x 835 (9th Cir. 2016) ........................................................................ 17

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) ............................................................................. 4

**Other Authorities**

20 C.F.R. § 404.1581 ............................................................................................ 9

28 C.F.R. § 36.303(c) .............................................................................. 12, 13, 17

Erin L. Geller, *The Fail-Safe Class as an Independent Bar to Class*
    *Certification*, 81 Fordham L. Rev. 2769 (2013) ............................................... 4

## I.      **<u>INTRODUCTION</u>**

In responding to the Court's May 11 and 23 orders (ECF 211, 217), defendants Quest Diagnostics Clinical Laboratories, Inc., Quest Diagnostics Holdings, Inc., and Quest Diagnostics Incorporated (collectively, "Quest") respectfully submit that the Court should decertify, and decline to redefine, the class in light of the Ninth Circuit's *en banc* decision in *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022). Plaintiffs concede that their current class definition is an impermissible "fail-safe" class, and their proposed alternative class definition is unwieldy, overbroad and vague, and raises countless, highly-individualized issues that are inappropriate for resolution on a class-wide basis and are not susceptible to remediation by a single injunction.

Plaintiffs wait until page 18 of their brief to finally unveil their "refined Class definition[,]" which they propose as:

> All legally blind individuals in the United States who visited a Quest patient service center during the Class Period and were not assisted with check in by a Quest employee.

(ECF 220 at 18.)  As a preliminary matter, this definition so fundamentally alters the nature of their proposed class that even the class representative himself would no longer fit within the class definition, as Vargas indisputably was "assisted with [sic] check in by a Quest employee."  Even more significantly, though, Plaintiffs' proposed "refined" definition is so breathtakingly overbroad that Plaintiffs do not even *attempt* to demonstrate, and cannot, that their proposed alternative class definition satisfies the requirements of Rules 23(a) or (b)(2).

Plaintiffs' proposed new class definition hinges on alleged ineffective Quest *employee assistance* at check-in.  Liability itself therefore necessarily requires analysis of each encounter that each class member experienced on each visit to a patient service center ("PSC") during the class period, therefore raising innumerable, disparate factual scenarios, each raising highly-individualized inquiries and requiring countless mini-trials.  Unlike the class definition proposed in *Davis v. Laboratory Corporation of*

1

*America*, Case No. CV 20-0893 FMO (KSx), 2022 WL 1682416 (C.D. Cal. May 23, 2022) (ECF 220-1) ("*LabCorp*"), which relies on an alleged uniform policy mandating that all patients use kiosks to check in, Plaintiffs' proposed class definition does not concern any uniform Quest policy, but rather the implementation and effectiveness of its policies on countless occasions at each of its over 2,100 PSCs. In that regard, Plaintiffs do not even specify the injunctive relief they seek for their proposed "refined" (b)(2) class, nor do they explain how a single, indivisible injunction could be crafted that would address a purported sporadic failure of Quest employees to assist with check-in at some of its over 2,100 PSCs across the country.[1]  Indeed, any injunctive remedy would have to be individualized and tied to each individual PSC, and perhaps to each class member, to address the purported deficiencies that were found to exist there or the needs of the individual class member. This type of highly-individualized inquiry is entirely unsuited for class-wide determination and fails to satisfy both the commonality and typicality requirements of Rule 23(a) and the requirement of a single injunctive remedy under Rule 23(b)(2).

In fact, the facts of this case are so unsuited for class-wide determination that Plaintiffs all but abdicate responsibility for defining their own class, suggesting that the Court should redefine it for them. (*See* ECF 220 at 19.) Plaintiffs' empty-set answer is entirely insufficient to justify certification of a 23(b)(2) class—or any other class for that matter.[2]  For these reasons and those set forth more fully below, Quest

---

[1]     Indeed, the proposed class definition's reliance on "employee assistance" is completely inconsistent with Plaintiffs' prayer for relief in the operative Complaint for a "fully accessible and *independently usable*" Kiosk. (ECF 41 at 16 (emphasis added).)

[2]     Plaintiffs' request that "the Court take a renewed look at its class certification order on the Rule 23(b)(3) California class" is both procedurally improper and substantively baseless. As discussed below, Plaintiffs have not made a motion for reconsideration, nor did *Olean* change the law in any manner that could warrant reconsideration of the Court's denial of a (b)(3) class. In any event, Plaintiffs misrepresent the Court's findings in its Class Certification Order regarding Plaintiffs' originally-proposed (b)(3) class, and their "refined" class fails to satisfy the baseline requirements of Rule 23(a).

submits that decertification is the only appropriate course of action in light of *Olean*.[3]

## II.   THE CERTIFIED CLASS IS "FAIL-SAFE" AND SHOULD BE DECERTIFIED.

### A.   As Plaintiffs Concede, "Fail-Safe" Classes Are Improper Under *Olean*.

Historically, the Ninth Circuit has recognized that a fail-safe class is "one that is defined so narrowly as to preclude[] membership unless the liability of the defendant is established." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016) (internal quotation marks and citation omitted).  The Ninth Circuit has found such "fail-safe" classes to be "palpably unfair to the defendant, and … also unmanageable." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010); *see also Kihn v. Bill Graham Archives LLC*, No. 20-17397, 2022 WL 18935, at *2 (9th Cir. Jan. 3, 2022) (noting plaintiffs changed class definition "to avoid the fail-safe problem."); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012).

In *Olean*, the Ninth Circuit *en banc* expressly rejected "fail-safe" class definitions as "improper." 31 F.4th at 669 n.14. "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* (quoting *Messner*, 669 F.3d at 825). The Certified Class in this case is such an improper "fail-safe" class.  Plaintiffs nowhere contest in their submission, and thus concede, this point.  The Court should decertify the Certified Class under *Olean*.[4]

---

[3]     Quest respectfully submits that if this Court does not decertify the certified injunctive class, it must grant Quest's motion for summary judgment (ECF 212) on the ground that the ADA does not require that Quest make its Kiosks independently accessible.  *See, e.g., National Federation of the Blind, Inc. v. Wal-Mart Associates, Inc.*, ___ F. Supp. 3d ___, 2021 WL 4750521, at *12 (D. Md. October 12, 2021) (granting summary judgment on ADA claim premised on independently accessible kiosks, finding that "[a]lthough blind patrons may prefer an independently accessible kiosk, [the public accommodation] has the final authority to 'choose among various alternatives, as long as the result is effective communication.'").

[4]     The Ninth Circuit joins the majority of Circuits in rejecting fail-safe classes. *See, e.g., In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015); *Byrd v. Aaron's*

3

**B.**   ***Olean*'s Prohibition Of "Fail-Safe" Classes Is Not Limited To Rule 23(b)(3).**

Nothing in the *en banc* Court's decision suggested, as Plaintiffs now argue, that the Ninth Circuit's prohibition against fail-safe classes is limited to classes certified under Rule 23(b)(3). The rule against fail-safe classes is "rooted in compelling principles of fairness and common-sense." *White v. Hilton Hotels Ret. Plan*, No. CV 16-856, 2022 WL 1050570, at *6 (D.D.C. Mar. 22, 2022); *see also Kamar*, 375 F. App'x at 736 (fail-safe classes are "palpably unfair to the defendant"). Indeed, "[f]ail-safe classes are … inherently unfair to the defendant, who 'is forced to defend against the class, but if a plaintiff loses, she drops out and can subject the defendant to another round of litigation.'" *White*, 2022 WL 1050570 at *6 (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015)). In *Quevedo v. Macy's, Inc.*, this Court recognized the fail-safe problem in denying class certification, explaining that the proposed classes were "impermissible 'fail-safe' classes against which no adverse judgment could be entered." No. CV091522, 2011 WL 13124445, at *5 (C.D. Cal. Mar. 9, 2011) (internal quotations and citation omitted)); *see also Ruiz v. Citibank, N.A.*, Nos. 10 Civ. 5950, 10 Civ. 7304 , 2015 WL 4629444, at *7 (S.D.N.Y. Aug. 4, 2015) ("Such 'fail-safe classes' present myriad problems, including the risk that plaintiffs might effectively litigate their claims without the risk of an adverse judgment: either they 'win' and are in the class, which by definition cannot lose its claim, or they 'lose' and are outside the class, and thus are not bound by an adverse decision.").

---

*Inc.*, 784 F.3d 154, 167 (3d Cir. 2015); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 n.9 (4th Cir. 2014); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012); *McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794, 799 (7th Cir. 2017); *Orduno v. Pietrzak*, 932 F.3d 710, 716-17 (8th Cir. 2019); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1276-77 (11th Cir. 2019); *see also* Erin L. Geller, The Fail-Safe Class as an Independent Bar to Class Certification, 81 Fordham L. Rev. 2769 (2013). The Second and Tenth Circuits have been silent on the topic. Only the Fifth Circuit has rejected a rule against fail-safe classes, but before all but one of the Circuits had decided the issue. *See In re Rodriguez*, 695 F.3d 360, 370 (5th Cir. 2012).

4

In fact, the same compelling principles of fairness and common-sense that undergird *Olean*'s fail-safe prohibition—that is, a class "member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment," (*Olean*, 31 F.4th at 669 n.14)—applies equally to an injunctive relief class under Rule 23(b)(2). *See, e.g.*, *White*, 2022 WL 1050570, at *4 (denying certification of injunctive relief class under Rule 23(b)(2) because the proposed class was "impermissibly 'fail-safe,'" which "preclude[d] certification"). In this way, fail-safe classes also contravene the fundamental purpose of the class action mechanism—"[a] merits ruling against a fail-safe class does not resolve a class-wide dispute, but instead hollows out the fail-safe class at issue, leaving further litigation for a later date." *Id.* at *6.

So, for example, the Certified Class here seeks a "fully accessible and *independently usable*" Kiosk (ECF 41 at 16 (emphasis added)) through installation of a tactile keyboard, voice activation and an available headphone jack at every Kiosk. Should that fail-safe Class prevail and win its desired remedy, legally blind members who were excluded from the Certified Class could bring their own suit against Quest seeking an entirely different remedy – *e.g.*, anything ranging from a doorbell-type alert, or a Quest-provided set of headphones, to the Three-Finger Swipe or a staff member permanently stationed at the Kiosk. Quest would have no recourse but to defend potentially successive, entirely duplicative and overlapping claims because *res judicata* principles would not bar claims from non-class members. While the scope of the unfairness problem may worsen with a (b)(3) fail-safe class, the problem still exists in a very real way with an injunctive relief-only class.

## C. Decertification Is Entirely Appropriate Under *Olean*.

Here, Plaintiffs concede by their silence (ECF 220 at 14), as they must, that the class originally certified in this matter is an impermissible fail-safe[5] class. Yet,

---

[5]    The Certified Class is defined as "[a]ll legally blind individuals who visited a Quest patient service center in the United States . . . and *were denied full and equal enjoyment of the services*, . . . *due to Quest's failure to make its e-check-in self-service kiosks independently accessible* to legally blind individuals." (ECF 107 at 2

5

Plaintiffs belittle the important due process principles underlying the rule expressed in *Olean* by referring to it as a mere "housekeeping matter" and then making absolutely no showing that their proposed new class definition (ECF 220 at 18)  is not overly-inclusive, under-inclusive or that any of the requirements for certification under Rule 23 are established.   Therefore, the Certified Class must be decertified pursuant to *Olean*.

Plaintiffs' argument that decertification is not proper under *Olean* is erroneous. *Olean* nowhere suggests, as Plaintiffs argue, that "refinement" of a fail-safe class definition is the appropriate "remedy" and not decertification.   *Olean*, 31 F.4th at 668-69. (ECF 220 at 12.)   The pertinent issue in *Olean* was whether certification was proper where a putative class may contain more than a *de minimis* number of uninjured class members.   *Id*.   While rejecting a *per se* rule prohibiting certification of classes with uninjured members, the Court noted that "the possible presence of uninjured class members" may mean "that the class definition is fatally overbroad." *Id.* at 669 n.14. In those instances, namely, an overly broad class that may need to be narrowed, it may be possible to "redefine the overbroad class to include only those members who can rely on the same body of common evidence to establish the common issue."   *Id*. However, the Court explained that "ultimately, the problem of a potentially 'over-inclusive' class 'can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.'" *Id*. (emphasis added).

But this case presents the exact *opposite* situation from *Olean*, and Plaintiffs' suggested redefined class would create the very problem that *Olean* sought to solve.

---

(emphasis added).)   Only those who were denied full and equal enjoyment of Quest's services, as guaranteed by the ADA, would be class members.   By linking class membership to the Plaintiffs' narrow ADA liability theory, the class is defined to preclude membership unless this independently accessible kiosk liability theory is established (ECF 190 at 4), a framing that the Ninth Circuit has consistently found to be improper.   *See, e.g., Kamar*, 375 F. App'x at 736.   In fact, this Court noted numerous times both that Plaintiffs' class definition was likely a "fail-safe" class and that the definition is predicated on establishing a narrow ADA liability theory. (ECF 190 at 4-6, 10-11.)

The Certified Class is not overbroad; rather, it is exceedingly narrow. (*See* ECF 190 at 5.) It is a fail-safe class that is defined to "include only those individuals who were injured by the allegedly unlawful conduct." *Olean*, 31 F.4th at 669 n.14. Thus, *Olean's* suggested fix for an *overbroad* class is simply inapplicable here. Redefining their *narrow*, liability-based class, as Plaintiffs suggest, would create—rather than cure— an unwieldy, overbroad class. Therefore, decertification is entirely appropriate and required based upon *Olean*.

### III.   PLAINTIFFS DO NOT ATTEMPT TO, AND CANNOT, SATISFY THE REQUIREMENTS OF RULE 23 FOR THEIR PROPOSED REDEFINED CLASS.

Plaintiffs wait until page 18 of their brief to disclose how they propose to redefine the class definition to address the fail-safe problem:

> All legally blind individuals in the United States who visited a Quest patient service center during the Class Period and were not assisted with check in by a Quest employee.[6]

(ECF 220 at 18.) Though they insist this definition is "subject to objective determination" (*id.*), Plaintiffs fail to demonstrate that this is so, and it obviously is not. *Id.* Plaintiffs do not explain what "not *assisted* with check-in by a Quest employee" means, nor how an injunction could be crafted to provide uniform relief to a class of legally blind individuals who were not assisted with check-in by a Quest employee. What constitutes appropriate "assistance" so as to constitute effective communication under the ADA? What time lapse would be utilized to determine when anything less than immediate assistance becomes "no assistance?" What about putative class members who do not require assistance to use the kiosk? Indeed, a majority of members of the Certified Class who testified in the action—including

---

[6]    The shocking breadth and facial inappropriateness of this newly-proposed class is telling given the ample opportunity Plaintiffs have had to define the class without the fail-safe defect. Quest respectfully suggests, therefore, that the Court consider this Plaintiffs' best (and only) effort to redefine the class when considering Quest's argument that the Certified Class must be decertified and not refined as Plaintiffs suggest.

Vargas and multiple ACB representatives—were assisted with check-in by a Quest employee. (Ex. 1 to Declaration of David Raizman ("Raizman Decl.") [Bazyn 42:9-16; M. Haroyan 44:18-45:14; N. Haroyan 40:16-41:11; Stanley 76:9-77:13; 81:18-82:16; Black 28:11-16; Grahmann Vol. 2 97:18-98:18].)  And, in fact, Vargas could not be a member of the class he now proposes to represent because he admits he *was* assisted with check-in by a Quest employee, though he complained about the wait time.  (ECF 206-5 at Nos. 14-19; Ex. 1 to Raizman Decl. [Vargas Depo. at 103:19-104:3; 121:5-125:12]); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977) ("'[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'")).  Indeed, Vargas and six of the nine testifying ACB representatives were ultimately assisted by a Quest employee and had their blood drawn.  Therefore, none of them would fall within Plaintiffs' proposed class definition.  Finally, some ACB members who did not testify nonetheless responded to ACB survey questions by saying they were also assisted with check-in by Quest employees.  (*See*, *e.g.*, ECF 133-24 at QA 1346 (Debbie Downey).)

In short, despite this Court's very specific Order (ECF 211) requesting guidance on whether the fail-safe class could or should be redefined consistent with *Olean*, Plaintiffs' brief (1) concedes that the Certified Class is an impermissible fail-safe class and (2) suggests that the Court adopt a completely unworkable redefined class instead of decertifying the current class.  While Plaintiffs make no effort to show that this newly defined class could withstand Rule 23 scrutiny, it clearly cannot.

### A.     The Record Evidence Demonstrates Plaintiffs Do Not Seek Uniform Relief From A Practice Applicable To All Class Members.

"The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 360 (citation omitted). That is, "Rule 23(b)(2) applies only

8

when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.* (emphasis in original). "The rule does not require [the court] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them. *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010).

Quest operates over 2,100 PSCs located in different physical facilities, in multiple states, with disparate staffing needs and requirements. Each of the putative class members invariably had different experiences when visiting the PSCs, including many favorable experiences where the auxiliary aids and services offered by Quest patient service representatives provided immediate help to putative class members. Further, because "legal blindness" encompasses conditions that involve full-sightedness with a limited field of vision (20 C.F.R. § 404.1581), some putative class members would have possessed the vision to independently use the original Kiosks, while others (like children accompanied by guardians or anyone who prefers to use assistants) would not have themselves "encountered" a barrier to access when attempting to use the Kiosks. Although this Court reviewed a robust record on Plaintiffs' motion for certification, it is worthwhile reiterating the key factual circumstances that pertain to Quest's practices in its PSCs that affect the visually impaired and make class certification impracticable:

- Quest has over 2,100 separate PSCs located in different states, in disparate geographic regions serving diverse populations (ECF 41 ¶ 42; Ex. 2 to Raizman Decl.);
- The characteristics of the 2,100+ PSC locations are not uniform in staffing or patient volume (as evidenced by numbers of Kiosks at each PSC) (ECF 107-5 at PA0801-857 (differential staffing); Ex. 2 to Raizman Decl. [Grant Depo at 48:15-21; 50:4-6, 51:2-7 (different numbers of Kiosks)]);
- Kiosks were rolled-out to PSCs over a two-and-a-half year period that overlaps the Class Period, meaning that some PSCs visited by Class

9

Members during the Class Period did not have Kiosks (Yarrison Decl. (ECF 133-5) ¶ 7);

- The characteristics, needs and preferences of the patients being served at the 2,100+ PSC locations vary, impacting their individualized needs for auxiliary aids and services to enable effective communication through Kiosks or otherwise (ECF 132-5 at QA 744-745; ECF 132-1 at 18:3-9; ECF 133-24 at QA 1333:14-1334:2);

- Many patients are uncomfortable using technology, regardless of their physical ability (ECF 132-1 at 18:3-9; ECF 133-24 at QA 1333:14-1334:2);

- "Legally-blind" Class members have varying levels of visual impairment, have understandably different preferences for how Quest checks them in and otherwise communicates with them, and have had widely divergent experiences at the PSCs, including fully positive interactions (ECF 133-21 at QA 1287:1-7, 1292:2-14; ECF 133-24 at QA 1346 (Debby Downey, Ardis Bazyn); ECF 107-5 at PA0710:12-13, PA0873; ECF 133-22 at QA1307:6-14, 1308:24-1309:4, 1313:21-24, 1316:19-1317:1; ECF 133-21 at QA1253:16-20, 1254:11-1255:12; ECF 133-24 at QA 1346; ECF 107-5 at PA0711:25-712:15; ECF 122-7);

- Quest had longstanding policies, procedures, and training instructing its phlebotomists to sweep the waiting room to assist any patients needing help, training that successfully worked for years with paper sign-in sheets, without any complaint by Plaintiffs (ECF 132-2 *through* 132-10 at QA 56-1156; ECF 132-12 at 1371-1551; ECF 133-4 at QA 15-16 ¶¶ 3-6; ECF 133-24 at QA 1326:17-21);

- Some PSCs were staffed with "front-end employees whose primary function is to receive patients and assist with check-in" and some PSCs had "circulating phlebotomists to perform this function" (ECF 133-21 at QA 1287:1-7, 1292:2-14; ECF 133-24 at QA 1346 (Debby Downey, Ardis Bazyn));

- Some legally-blind patients have sufficient vision to allow them to use Kiosks in the same manner as a non-disabled person (ECF 133-24 at QA 1333:14-1334:2; ECF-17 at QA 1157; 20 C.F.R. § 404.1581); and

- Legally-blind patients may pre-schedule appointments either on-line or by phone, which renders irrelevant any queue created by the order of check-in at a Kiosk (Ex. 3 to Raizman Decl. **[**Grahmann at 36:9-22 (appointment by phone); Bazyn Vol. I at 26:10-23 (her husband made an appointment and checked in online), Vol. II at 13:3-8 (the last couple of years we had been making online appointments)].)

**B.      A Rigorous Analysis Of Rule 23(b)(2) Requirements Shows That Plaintiffs' Proposed Redefined Class Cannot Be Certified.**

As noted in the discussion in the preceding section, Rule 23(b)(2) requires that a single injunction would provide relief to each class member. *Dukes*, 564 U.S. at 360, *Rodriguez*, 591 F.3d at 1125 (requiring "uniform relief" for all class members). Thus, the inquiry into the existence of individualized issues should be unnecessary in the context of a Rule 23(b)(2) class, not because individual issues are permitted, but because it should be clear that no individual issues exist, in light of the appropriateness of a single, indivisible injunction. As the *Dukes* Court further explained:

> The procedural protections attending the (b)(3) class—predominance, superiority, mandatory notice, and the right to opt out—are missing from (b)(2) not because the Rule considers them unnecessary, but because it considers them unnecessary *to a (b)(2) class*. When a class seeks an indivisible injunction benefiting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute. ***Predominance and superiority are self-evident.***

564 U.S. at 362-63 (second emphasis added).

The Ninth Circuit recently recognized this in *Kihn v. Bill Graham Archives LLC*, No. 20-17397, 2022 WL 18935, at *3 (9th Cir. Jan. 3, 2022), where it reversed the certification of Rule 23(b)(2) and (b)(3) classes. With respect to the (b)(2) class, the court found that "'[a]n injunction requiring Defendants to stop infringing the intellectual property rights of Plaintiffs and the Class,' which could result in Defendants' removing all non-studio recordings from their website … [was] a plainly inappropriate class-wide remedy" because some putative class members consented to the defendants' distribution of their work. *Id.* The court explained:

> Rule 23(b)(2)'s inquiry into predominance is less searching not because it is less stringent, but because no inquiry should even be needed—predominance must be "self-evident." *Dukes*, 564 U.S. at 363. Here, there is an insufficient showing that common questions predominate, and Plaintiffs have not shown they are seeking an injunction "benefitting all [class] members at once." *Id.* at 362.

*Id.*[7]

Here, *Plaintiffs have not even attempted to establish that their proposed redefined class satisfies the requirements of Rule 23(b)(2)* (or 23(a)).  Plaintiffs simply seek to certify a class of legally blind individuals who "were not assisted with check-in by a Quest employee."  (ECR 220 at 18.)  Plaintiffs do not, because they cannot, specify the injunctive relief they seek, or even explain how a single, indivisible injunction could be crafted based on the unwieldy redefined class.  In fact, the injunctive relief sought in Plaintiffs' operative FAC seeks a "fully accessible and independently usable" check-in process that is completely at odds with a class definition grounded in Quest employee assistance with check-in.  (*Cf.* ECF 41 at 16.)

Moreover, the "effective communication" regulation on which this lawsuit is premised contains two requirements that make challenging the formulation of a single, indivisible injunction based on Plaintiffs' redefined class definition: (1) the requisite mode of auxiliary aid and service inevitably must "vary in accordance with the method of communications used by the individual [and other variables]"; and (2) "a public

---

[7]      Courts in this District have similarly emphasized the importance of an injunction that is "uniform" to each class member. *See, e.g.*, *Lautemann v. Bird Rides, Inc.*, No. CV1810049PARAOX, 2019 WL 3037934, at *7 (C.D. Cal. May 31, 2019) ("The Court agrees with Defendant that this is not a case where Defendant's conduct affects all class members similarly, making uniform injunctive relief appropriate.") (citing *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014)); *id.* (explaining that for "substantially the same reasons" that govern the court's analysis under the commonality inquiry under Rule 23(a)(2), "the unique circumstances of each class member's … claims" may "preclude satisfaction of Rule 23(b)(2)") (citing *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 480-81 (8th Cir. 2016) (explaining in nuisance action that "[t]he resolution of [the] question [of the defendant's liability] does not apply uniformly to the entire class, as in reality, the issue of liability and the relief sought by these homeowners is, at bottom, highly individualized" and that "[i]t is the disparate factual circumstances of class members that prevent the class from being cohesive and thus unable to be certified under Rule 23(b)(2)" (citing *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 269 (3d Cir. 2011))); *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 579 (S.D. Cal. 2013) ("Although Rule 23(b)(2) classes need not meet the predominance and superiority requirements, it is well established that the class claims must be cohesive.") (citations and internal quotation marks omitted)); *Carr v. Tadin, Inc.*, No. 12-CV-3040 JLS JMA, 2014 WL 7497152, at *4 (S.D. Cal. Apr. 18, 2014), *amended in part*, No. 12-CV-3040 JLS JMA, 2014 WL 7499453 (S.D. Cal. May 2, 2014) (same).

---

12

accommodation should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed." 28 C.F.R. § 36.303(c)(1)(ii).  As emphasized in the regulation itself, "[t]he type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(3)(ii). Thus, the determination of "effective communication" (or its absence) is inherently factual and circumstantial. *Sengupta v. City of Monrovia*, No. CV 09-00795 ABC (SJHx), 2010 WL 11515299 (C.D. Cal. July 28, 2010) (citing *Chisolm v. McManimon*, 275 F.3d 315, 327 (3d Cir. 2001) (citing*, inter alia*, *Duffy v. Riveland*, 98 F.3d 447, 454-55 (9th Cir. 1996))); *Bustos v. Dignity Health*, 2019 WL 3532158, at *3 (D. Ariz. Aug. 2, 2019).  Moreover, "the ultimate decision as to what measures to take rests with the public accommodation, provided that the method chosen results in effective communication." 28 C.F.R. § 36.303(c)(1)(ii).

Thus, if the Court accepts Plaintiffs' redefined class to include all legally blind individuals who visited the PSCs during the Class Period and were not assisted with check-in by a Quest employee, certification of such a nationwide injunction class would be improper because Quest has not acted uniformly against the class, and "a single injunction" would not "provide relief to each member of the class." *Dukes*, 546 U.S. at 360.  Notably, this Court already recognized that the disparate factual circumstances associated with Quest's efforts to provide effective communication through individually-tailored auxiliary aids and services rendered certification of a damages class inappropriate.   (*See* ECF 190 at 13-14.)  In the same way, under these circumstances, predominance and superiority are not "self-evident," as they should be, and, therefore, certification under Rule 23(b)(2) is improper. *Dukes*, 564 U.S. at 363; *see also Kihn*, 2022 WL 18935, at *3.

### 1. **Certification Of An Injunctive Relief Class Is Inappropriate Where There Are Over 2,100 PSC Locations.**

The numerous Quest PSC locations at issue in this case (another factor this Court recognized in denying class certification on Plaintiffs' 23(b)(3) claims) also precludes 23(b)(2) certification under a broader class definition. A Northern District of California court faced similar circumstances in *C.R. Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 317 F.R.D. 91, 105 (N.D. Cal. 2016) ("*CREEC*"), and denied certification of an injunctive relief class under Rule 23(b)(2). The Ninth Circuit affirmed the district court's decision. 867 F.3d 1093 (9th Cir. 2017). In *CREEC*, the plaintiffs sought certification of a class of mobility-impaired individuals alleging that the defendant, which owned "approximately 300 hotels across 38 states," violated the ADA by failing to provide "equivalent wheelchair-accessible shuttle services." 317 F.R.D. at 95-96. In support of the plaintiffs' motion to certify an injunctive relief class, the plaintiffs argued that defendant "refused to act on grounds that apply generally to the class because [defendant] has a practice of not providing equivalent accessible transportation services at hotels it owns." *Id.* at 105. The plaintiffs suggested that the court "issue an injunction requiring [defendant] to comply with the ADA at its properties." *Id.* The court rejected plaintiffs' argument, explaining that "the proposed injunction must be 'more specific than a bare injunction to follow the law.'" *Id.* (quoting *Parsons v. Ryan*, 754 F.3d 657, 689 n. 35 (9th Cir.2014)). Thus, the district court concluded, "that '[t]here can be no 'generally applicable' relief in this case as to patrons of all [142 hotels].'" *Id.* (quoting *Castaneda v. Burger King Corp.*, 264 F.R.D. 557, 569 (N.D. Cal. 2009)).

The Ninth Circuit affirmed the denial of class certification finding, in part, that the district court did not err in finding that the proposed class lacked commonality, or in "finding that the factual issues regarding alleged ADA violations are significantly different at the various hotels," since some hotels did not offer wheelchair-accessible transportation at all, while other hotels provided such transportation, but required

14

notice.  867 F.3d at 1104 n.4.  Thus, the Ninth Circuit concluded that "[t]here is no evidence of a single, 'general policy of discrimination' that could serve as a common issue." *Id.* at 1104 (citing *Dukes*, 564 U.S. at 352-53).  Accordingly, the court affirmed the denial of certification of the injunctive relief class.  *Id.* at 1106.  *See also Castaneda*, 264 F.R.D. at 566 (denying certification of injunctive relief class, concluding that "final injunctive relief under Rule 23(b)(2) is not appropriate for a 92-store class as a whole" because determining whether there was in fact an ADA violation at each location would "turn[] on highly individualized" facts and analysis, thereby requiring "individually fashioned" injunctive relief); *Mielo v. Bob Evans Farms, Inc.*, No. CIV.A. 14-1036, 2015 WL 1299815, at *12 (W.D. Pa. Mar. 23, 2015) (denying motion to certify injunctive relief class under Rule 23(b)(2), reasoning that "the differences and unique designs of each [of the 563 stores], and lack of commonality, makes it impossible to craft one injunction that remedies all injuries to the class in one stroke").

Here, similar to *CREEC*, *Castaneda* and *Mielo*, the determination of whether there is even an ADA violation at each location would require a "highly individualized" inquiry and require analysis of each PSC location across the country. *Castaneda*, 264 F.R.D. at 569; *see also Kihn*, 2022 WL 18935, at *2.  And, then, the Court would have to "individually fashion[]" an injunction for each location. *Castaneda*, 264 F.R.D. at 569.  Moreover, Plaintiffs brought this action "to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure Plaintiffs effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendants' services."  (ECF 41 ¶ 3.)  Under their new class definition, the only conceivable injunction would be that Quest provide auxiliary aids and services in the form of phlebotomist check-in assistance to blind patients. *This is nothing more than saying that Quest must comply with the effective communication requirements of the ADA*—exactly the type of "'bare injunction to follow the law'" prohibited by the Ninth

15

Circuit.  *CREEC*, 867 F.3d at 1103 (quoting *Parsons*, 754 F.3d 657, 689 n.35).

## 2. The Proposed Redefined Class Is Inconsistent With The Narrow Injunctive Relief Sought In The Amended Complaint.

As this Court noted, the Certified Class is inextricably tied to the premise that the ADA requires that Quest provide a kiosk that is independently accessible by the legally blind—a narrowly framed class tied to a narrow legal premise.  (ECF 190 at 5.)  And, the First Amended Complaint seeks a class-wide injunction specifically tailored to the class claim that the ADA mandated independently accessible kiosks. (FAC ¶¶ 11, 45.)  But, Plaintiffs' proposed redefined class, which broadens the class to include legally blind patients who allegedly were "not assisted" with check-in by a Quest employee, turns their entire case—and the relief they have sought from day-one—on its head.  Under their proposed class definition, the injunction sought by Plaintiffs compelling Quest to make its kiosks independently accessible to the legally blind bears no relationship to the redefined class.  As such, the redefined class is overly-inclusive according to Plaintiffs' own Amended Complaint.  Plaintiffs' thirteenth-hour change to the character of the injunctive relief sought in Plaintiffs' own operative First Amended Complaint may avoid a fatally-flawed "fail-safe" class, but it also so fundamentally redefines the alleged wrongs here, and the remedies for those wrongs, as to require vast amounts of new discovery, as well as new expert opinions. Thus, redefining the class would be improper for this reason as well.

## C. A Rigorous Analysis Of The Requirements of Rule 23(a) Shows That The Proposed Redefined Class Cannot Be Certified.

For all of the reasons discussed above, Plaintiffs' proposed, redefined class also fails to satisfy basic Rule 23(a) requirements of commonality and typicality.  Fatally, Plaintiffs do nothing to meet their heavy burden under *Dukes* to establish any of the Rule 23(a) factors.  *Dukes*, 564 U.S. at 345-46.  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law." *Id.*

16

at 349-50 (internal quotation marks and citation omitted).  Applying these principles, the *Dukes* court concluded that commonality was not established because the plaintiffs failed to offer "significant proof" that the defendant "operated under a general policy of discrimination."  *Id.* at 352, 357-59.

As a threshold matter and as discussed above, the legal requirement that Plaintiffs seek to enforce here—"effective communication"—itself requires individualized treatment. "A public accommodation should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication...." 28 C.F.R. § 36.303(c)(1)(ii). As Plaintiffs concede, every person with disabilities has a different level of impairment and different comfort level with technology. (ECF 133-24 at QA 1333:14-1334:2.)  With the proposed class definition hinged on Quest assistance at check-in, the treatment of each visiting patient, on each occasion of each visit, is subject to endless variation – the very antithesis of common or "typical" experiences.  Indeed, just the approximate two dozen reports of visits from ACB members (as well as visits by Plaintiffs' "investigator" Mark Derry) demonstrate the endless variability of experiences just in those visits.  (ECF 134-21 at QA 1229-1294; EFC 134-22 at QA 1295-1321; ECF 107-5 at PA0873.) Moreover, Plaintiffs' challenge to Quest's training is rooted in baseless criticisms of the training failing to mention the ADA or "effective communication" by name. *Hooper v. City of St. Paul*, 2019 WL 4015443, at *15, n.29 (D. Minn. Aug. 26, 2019) (no Title II violation to fail to include primary consideration training where entity "communicated to its officers in multiple ways that they had an obligation to ensure effective communication with deaf individuals.").[8] It is widely recognized that

---

[8]  Notably, Plaintiffs have failed to identify *any* discriminatory policy of Quest regarding the check-in process.  This is because there is none.  While a discriminatory policy could conceivably present common issues that could be remediated by a single injunction, *there is no such policy present in this case.  Compare LabCorp*, 2022 WL 1682416 at *4 (noting that a common question in the case was that "LabCorp trained its employees that use of the kiosks to check-in was mandatory").

class certification is inappropriate where, as here, general policies and practices are proper, and only their effectiveness in practice is in question. *See, e.g.*, *Wright v. Renzenberger, Inc*., 656 F. App'x 835, 838 (9th Cir. 2016) (individualized determinations predominate where policies were legally compliant).

Putting these threshold issues aside, the evidence also displays a lack of commonality in the class members' experiences. Plaintiffs' recitation of alleged evidence of putative class members being made to wait for service at a PSC because they could not use the Kiosk sits alongside evidence of prompt service from the same group (EFC 134-22 at QA 1295-1321), a classic basis for defeating commonality. Of course, the reasons for the wait will also vary, are subject to speculation and, importantly, can have nothing do with the Kiosks or the adherence to policies and procedures.[9]

Lastly, for many of the reasons Plaintiffs' claims fail to satisfy the commonality requirement, Plaintiffs' claims also fail to establish typicality. "The test for typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is *not unique to the named plaintiffs*, and whether other class members have been injured by the same course of conduct.'" *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 518 (9th Cir. 2018) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (emphasis added). And, when a single, indivisible injunction cannot be fashioned to remedy the alleged harm, typicality is not satisfied for certification of a Rule 23(b)(2) class. *See, e.g.*, *Mielo v. Steak 'n Shake Operations,*

---

[9]     Quest continues to contend that Plaintiffs' claim that the Kiosk project was designed to "keep phlebotomists in back" is both baseless and demonstrably flawed. The evidence they rely on for that proposition actually supports a conclusion that Quest expected phlebotomists to be in the waiting room *more frequently* as a result of the Kiosk project. In short, Plaintiffs rely on a *projection* by Quest Kiosk proponents that the Kiosks will shorten transaction time for each patient and thus permit each phlebotomist to see more patients. (ECF 220 at 10, ECF 207 at 9-10.) Plaintiffs take this projection and incorrectly assume that more patients means the phlebotomists will be in back additional time. But, if borne out, the Quest projection of additional patients would put the phlebotomists in the waiting rooms *more often*, not less, because a phlebotomist has to enter the waiting room to retrieve each patient.

*Inc.*, 897 F.3d 467, 490 (3d Cir. 2018) (reversing certification of class, reasoning that class failed to satisfy Rule 23(a) requirements, explaining that "class members' claims must 'depend upon a common contention' that 'is capable of classwide resolution ... in one stroke.' The wide variety of potential ADA violations captured in the broad class definition certified by the District Court does not lend itself to such a resolution.") (quoting *Dukes*, 564 U.S. at 350)); *see also Mielo,* 2015 WL 1299815, at *9-10 (finding that variations in class member experiences at Bob Evan's parking lots meant that plaintiff was not typical because some plaintiffs would not have the same claimed injury, and denying Rule 23(b)(2) certification where a common injunction would not resolve claims "in one stroke"). Indeed, here, as noted above, there is far too much variation in putative class members' abilities, preferences and experiences to say that Vargas' claims are typical of the class he seeks to represent.[10]

## IV. PLAINTIFFS' REQUEST THAT THE COURT REVISIT THE DENIAL OF CERTIFICATION OF THE DAMAGES CLASS UNDER RULE 23(B)(3) IS WHOLLY INAPPROPRIATE AND MERITLESS.

Despite the clear limitations in this Court's May 11 and 23 Orders, and Plaintiffs' own May 20 characterization of the responsive briefing as confined to the "very limited issue of the class definition" (ECF 216 at 5), Plaintiffs' brief argues far exceeds those limits, asking this Court to "re-examine the propriety of Rule 23(b)(3) certification in light of *Olean*'s holdings," based on the claim that *Olean* makes "new law" in this area.  (ECF 220 at 11.)  That contention is simply false.  Plaintiffs' request is an inappropriate and transparent attempt to leverage their favorable outcome in another matter (*Davis v. LabCorp*), based on different facts and procedural history, and, now, *an entirely different class definition.*  Their arguments regarding this Court's

---

[10]    Plaintiffs' suggestion that decertifying the Certified Class, or failing to refine it, will make trial more cumbersome by making relevant the testimony of organizational Plaintiff ACB's members is both inapt to class certification analysis and wrong. Nothing in class jurisprudence relaxes the strict scrutiny required of the Rule 23(a) and (b) factors in favor of perceived facility at trial.  *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 349-350 (2011).

carefully considered decision regarding the Rule 23(b)(3) class, upheld by the Ninth Circuit in response to Plaintiffs' Rule 23(f) Petition, should be rejected.

First, this Court already denied Plaintiffs' motion to certify a damages class under Rule 23(b)(3) on predominance and superiority grounds. Plaintiffs sought immediate interlocutory review pursuant to Rule 23(f), based on demonstrably false assertions that this Court "contradict[ed] Ninth Circuit predominance authority" and "failed to follow Ninth Circuit authority."[11] (Ex. 4 to Raizman Decl. at 18.) The Ninth Circuit promptly rejected these arguments and denied Plaintiffs' petition.

This is not a renewed motion for certification, or a motion for reconsideration. Instead, this Court has requested briefing on the specific fail-safe issue addressed in the May 11, 2022 Order, including whether redefinition of the class would be appropriate. Thus, Plaintiffs' brief is procedurally improper and to the extent it invites reconsideration of the previously defeated Rule 23(b)(3) damages class, which failed as well at the Rule 23(f) stage, this Court should decline Plaintiffs' invitation and reject their arguments summarily.

Second, Plaintiffs' Rule 23(b)(3) arguments misconstrue both *Olean* and this Court's class certification decision.[12] Contrary to Plaintiffs' contention, *Olean* did ***not***

---

[11]     In their failed Rule 23(f) Petition, Plaintiffs argued that this Court's order "directly violate[d]" (1) *Bateman v. American Multi-Cinema, Inc,* 623 F.3d 708 (9th Cir. 2010) by holding that "class actions are a per se inferior means of adjudicating claims for minimum statutory damages under the Unruh Act" and (2) *Briseno v.ConAgra Foods, Inc.,* 844 F.3d 1121 (9th Cir. 2017), by holding that questions of "class eligibility" or "ascertainability" created individual issues that destroyed predominance. (*See* Ex. 4 to Raizman Decl. at 5, 7-8, 15-16.) Despite the Circuit's rejection of their arguments, Plaintiffs attempt to reassert them again here in their improper attempt at "reconsideration."

[12]     Plaintiffs have once again misconstrued and mischaracterized this Court's class certification decision (ECF 190). Indeed, in Plaintiffs' Rule 23(f) petition for leave to appeal to the Ninth Circuit, Plaintiffs grossly mischaracterized this Court's superiority finding in that Order. The Rule 23(f) Petition asserted that this Court's "holding that class treatment for Unruh Act actions seeking minimum statutory damages are per se an inferior means of adjudication is in error." (Ex. 4 to Raizman Decl. at 15-18.) As this Court is aware, and as Quest argued in the Ninth Circuit, the Court made no such finding, but instead, properly found that the "individualized issues" rendered the class "unmanageable" and, therefore, concluded that "a class action is not superior." (ECF 190 at 15.)

change the law on certification under Rule 23(b)(3).  (ECF 220 at 8, quoting *Olean*, 31 F.4th at 669.)  In fact, in the same sentence Plaintiffs (repeatedly) rely on for the contention that the "law has changed," the *Olean* court cited six- and seven-year old Ninth Circuit precedent stating, "[i]n an analogous context, ***we have held*** that a district court is not precluded from certifying a class even if plaintiffs may have to prove individualized damages at trial …."  *Olean*, 31 F.4th at 668-69 (emphasis added) (citing *Vaquero v. Ashley Furniture Indus., Inc*., 824 F.3d 1150, 1155 (9th Cir. 2016) and *Pulaski & Middleman, LLC v. Google, Inc*., 802 F.3d 979, 988 (9th Cir. 2015)).  The proposition on which Plaintiffs hinge their (b)(3) argument is not new at all.

Most importantly, contrary to Plaintiffs' assertion in their brief, the calculation of *damages* or "proving individual *damages* at trial," was not the basis for this Court's decision to deny certification of the 23(b)(3) class.  Instead, this Court found that "individualized ***issues*** will predominate over common ones with respect to the California sub-class."  (ECF 190 at 14 (emphasis added).)  Indeed, the Court found that, "*[i]ssues* such as whether a patient service center had a fully operative kiosk on the date of a putative class member's visit will therefore require individualized inquiries" and that "demonstrating the[] basic factual elements will still essentially require each putative class member to litigate her own individual Unruh Act case." (*Id.* at 13-14 (emphasis added).)[13]   Thus, contrary to Plaintiffs' contention, individualized *damages* questions were not a factor in the Court's denial of certification.   Instead, Plaintiffs failed to satisfy the predominance requirement because individualized *issues* relating to the "basic factual elements" of class members' claims predominated over common *issues*.

Third, *Davis v. LabCorp*., 2022 WL 1682416 is unpersuasive, inapposite and

---

[13]   As noted, these individual issues would be even more prominent under Plaintiffs' proposed redefinition of the class.  Determining whether each class member encountered the absence of "assistance" with check-in clearly demands an individualized trial on each of their personal experiences at the PSC.

distinguishable and does nothing to help Plaintiffs' flawed proposed redefinition of the class. *LabCorp* does not address the Ninth Circuit's explicit rejection of fail-safe classes in *Olean*. In fact, the *LabCorp* decision does not mention the term "fail-safe" at all. Thus, the *LabCorp* decision, which creates no precedent,[14] offers no guidance on this issue, and certainly does not abrogate the Ninth Circuit's confirmation in *Olean* that fail-safe classes are impermissible.[15]

Moreover, insofar as *LabCorp* certified the plaintiffs' ADA and Unruh Act claims, the operative facts that the *LabCorp* court relied upon are materially different than those present in this case. As demonstrated above and in Quest's Motion for Partial Summary Judgment, in the event the class is not decertified here, Plaintiffs' Certified Class Claim fails as a matter of law because it is premised upon the erroneous legal premise that Quest's kiosks are required by the ADA to be *independently* accessible. (*See* ECF 212, ECF 190 at 2.) In contrast, the *LabCorp* plaintiffs did not base their claims upon the narrow legal theory that the ADA requires *independently* accessible kiosks, but rather on broader liability theories simply requiring the kiosks to be generally accessible to legally blind individuals. (*See* ECF 220-1 at 3-4 (seeking certification of a class of legally blind individuals who were denied full and equal enjoyment of LabCorp's services "due to LabCorp's failure to make its e-check-in kiosks accessible to legally blind individuals.").

*LabCorp* also fundamentally differs from this case in that the plaintiffs there contended that "LabCorp trained its employees that use of the kiosks to check-in was *mandatory*[.]" (*Id.* at 8, 17 (emphasis added).) Here, Quest has always contended that

---

[14]     This Court is not bound by the decision of another district court. *See, e.g.*, *Kotev v. First Colony Life Ins. Co.*, 927 F. Supp. 1316, 1321 (C.D. Cal. 1996).

[15]     Indeed, it is quite clear that the *LabCorp* court certified two fail-safe classes. Plaintiffs make no argument that the class definitions in *LabCorp* should be used in this case, likely for that reason. Instead, Plaintiffs propose a fatally overbroad and unworkable class definition for which the *LabCorp* holding has no applicability whatsoever, yet argue that this Court should revisit its prior determinations in light of *LabCorp*. The argument is disingenuous and unavailing.

patients who could not or did not want to check in using a kiosk could check in with a Quest phlebotomist instead, and that phlebotomist assistance is available to assist with check-in.  (*See* ECF 190 at 1; ECF 133-4 ¶¶3, 6, 7, 13, 17; ECF 132-5 at QA 744.) Thus, in *LabCorp*, unlike here, a uniform injunction might be available to address a facially discriminatory policy, but such a policy does not exist in this case.  (*Compare* Section III.A & III.C *with* ECF 220-1 at 7-8, 17.)

Lastly, the *LabCorp* decision is distinguishable and in many respects at odds with this Court's order on class certification (ECF 190).  For example, LabCorp did not dispute that it "acted or refused to act on grounds that apply generally to the class," (*see* ECF 220-1 at 11), while this is Quest's fundamental challenge.  (*See* Section III above.)  LabCorp relied upon inapt witness testimony to show that a single injunction would not provide relief to each member of the class, yet here there is a complete record before this Court demonstrating that a single injunction could not ensure that all class members received properly-tailored, auxiliary aids and services to ensure effective communication through the kiosks.  *Id.*  The *LabCorp* court appears to have failed to conduct a rigorous analysis of the requirements for class certification.  *Olean*, 31 F.4th at 664.  Further, as noted at length at oral argument here on class certification, and contrary to the *LabCorp* court's analysis, Section 55.56 of the Civil Code has in fact been applied in non-construction-related accessibility cases, and in many cases long before passage of that statute.  (*See*, Ex. 5 to Raizman Decl. at 7:8 – 12:17 (citing cases, including *Futterman v. Kaiser Found. Health Plan, Inc.,* No. A155946, 2020 WL 3958259, at *9–10 (Cal. Ct. App. July 13, 2020) (court in non-construction-related case denies class certification of damages class because each class member must prove Unruh Act standing), as modified on denial of reh'g (July 31, 2020).)

# V.   <u>CONCLUSION</u>

For the reasons stated above, Quest respectfully requests that this Court (1) decertify the Certified Class under Rule 23(b)(2), which is impermissibly fail-safe, in light of the Ninth Circuit's decision in *Olean*; (2) reject Plaintiffs' proposed

23

redefined class because it is fatally overbroad and fails to satisfy the requirements of Rule 23(a) and (b).

Respectfully submitted,

DATED: June 3, 2022                OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: /s/ David Raizman
    David Raizman
    Amber L. Roller
    J. Nicholas Marfori

Attorneys for Defendants
QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.; QUEST DIAGNOSTICS HOLDINGS, INC. and QUEST DIAGNOSTICS INCORPORATED

24