# EXHIBIT 4

No.: 21-

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

Julian Vargas,
on behalf of himself and all others similarly situated,
*Plaintiff-Petitioner*

v.

Quest Diagnostics Clinical Laboratories, Inc., Quest Diagnostics Holdings, Inc., Question Diagnostics Incorporated, and Does 1-10,
*Defendants-Respondents*.

Appeal from an Order of the United States District Court
for the Central District of California
No. 2:19-cv-08108-DMG-MRW
Hon. Dolly M. Gee

# PLAINTIFF-PETITIONER'S PETITION FOR LEAVE TO APPEAL PURSUANT TO FRCP, RULE 23(f)

Jonathan D. Miller
Alison M. Bernal
**NYE, STIRLING, HALE & MILLER, LLP**
33 West Mission Street, Suite 201
Santa Barbara, California 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590
alison@nshmlaw.com
jonathan@nshmlaw.com

Benjamin J. Sweet
**NYE, STIRLING, HALE & MILLER, LLP**
1145 Bower Hill Road, Suite 104
Pittsburgh, Pennsylvania 15243
Telephone: (412) 857-5352
ben@nshmlaw.com

Matthew K. Handley
**HANDLEY FARAH & ANDERSON PLLC**
200 Massachusetts Ave., NW 7th Fl.
Washington, DC 20001
Telephone: (202) 559-2411
mhandley@hfajustice.com

**Attorneys for Plaintiff-Petitioner Julian Vargas and the Certified Class**

# TABLE OF CONTENTS

INTRODUCTION. ....................................................................................5
STATEMENT OF FACTS ..........................................................................10
QUESTIONS PRESENTED........................................................................14
RELIEF SOUGHT.......................................................................................14
REASONS FOR GRANTING THIS PETITION.........................................14
A. The District Court's Holding That Class Treatment for Unruh Act Actions Seeking Minimum Statutory Damages Are Per Se An Inferior Means of Adjudication Is In Error..........................................................................15
B. The District Court's Order Contradicts Ninth Circuit Predominance Authority ..........................................................................18
CONCLUSION............................................................................................24
STATEMENT OF RELATED CASES.......................................................26
CERTIFICATE OF COMPLIANCE..........................................................27

**TABLE OF AUTHORITIES**

*Adams v. Bowen*
*872 F.2d 926, 929 (9th Cir. 1989)* ............................................................9,21
*Arroyo v. Rojas*
*No. 19-55974, at 19, n. 5 (9th Cir. Dec. 10, 2021)*..........................................18
*Bateman v. American Multi-Cinema, Inc.*
*623 F.3d 708, 711 (9th Cir. 2010)*...................................................... 5,8,16,17
*Bowerman v. Field Asset Servs., Inc.*
*2015 WL 5569061, at *4 (N.D. Cal. Sept. 21, 2015)*.......................................22
*Briseno v. ConAgra Foods, Inc.*
*844 F.3d 1121 (9th Cir. 2017)*.............................................................. 5,19,21
*Brown v. DirecTV, LLC*
*2021 WL 5755044, at *6 (C.D. Cal., Dec. 1, 2021).* ................................. 15,23
*Chamberlan v. Ford Motor Co.*
*402 F.3d 952, 958-59 (9th Cir. 2005).*..........................................................14
*Hanlon v. Chrysler Corp.*
*150 F.3d 1011, 1022 (9th Cir. 1998)*.............................................................19
*In re MGM Mirage Securities Litigation*
*708 Fed. App'x 894, 896 (9th Cir. 2017)*........................................................22
*In re Wells Fargo Home Mortg. Overtime Pay Litig.*
*571 F.3d 953, 957 (9th Cir. 2009).*...............................................................19
*Jabbari v. Farmer*
*813 F. App'x 259, 261 (9th Cir. 2020)* ..........................................................22
*Keegan v. Am. Honda Motor Co., Inc.*
*284 F.R.D. 504, 521 (C.D.Cal.2012)*..............................................................10
*Leyva v. Medline Indus.*
*716 F.3d 510, 513 (9th Cir. 2013).*................................................................18
*Melgar v. CSK Auto*
*681 Fed. App'x. 605, 607 (9th Cir. 2017)*.......................................................23

*Murray v. GMAC Mortgage Corp.*
*434 F.3d 948 (7th Cir. 2006)* ........................................................ 16,17
*Nevarez v. Forty Niners Football Co., LLC*
*326 F.R.D. 562, 589 (N.D. Cal. 2018)*..............................................................8
*Otto v. Abbott Laboratories Inc.*
*2015 WL 9698992, at *2 (C.D. Cal. Sept. 29, 2015)*.......................................10
*Robles v. Domino's Pizza, LLC*
*913 F.3d 898 (9th Cir. 2019)* .........................................................................6
*Schneider v. Chipotle Mexican Grill, Inc.*
*2019 WL 1512265, at *3 (N.D. Cal. Apr. 8, 2019)*..........................................22
*Steven Ades & Hart Woolery v. Omni Hotels Management Corp.*
*2014 WL 4627271, at *14-15 (C.D. Cal. Sept. 8, 2014)* .................................16
*Vallabhapurapu v. Burger King Corp.*
*C 11-00667 WHA, 2012 WL 2568183, at *5 (N.D. Cal. July 2, 2012)* ............17
*Walker v. Life Ins. Co. of the Southwest*
*953 F.3d 624, 632 (9th Cir. 2020).* ..................................................................9
*Wal-Mart Stores, Inc. v. Dukes*
*564 U.S. 338 (2011).* .......................................................................................19
*Wilcox v. Swapp*
*330 F.R.D. 584, 597 (E.D. Wash. 2019)*.........................................................17
*Williams v. Apple, Inc.*
*338 F.R.D. 629, 645-46 (N.D. Cal. May 28, 2021)* .........................................21
*Wolin v. Jaguar Land Rover N.A., LLC*
*617 F.3d 1168, 1175 (9th Cir. 2010)*...............................................................17

Statutes

42 U.S.C. § 416(i)(1) ..........................................................................................9
Cal. Civ. Code 54.6...............................................................................................9

Plaintiff-Petitioner, Julian Vargas ("Petitioner") respectfully requests permission to appeal the Order of the United States District Court, Central District of California denying Petitioner's motion to certify a minimum statutory damages Class under Rule 23(b)(3). Petitioner does not appeal the portion of the Order which certifies a nationwide Rule 23(b)(2) injunctive relief class under the Americans with Disabilities Act ("ADA").

## INTRODUCTION

This Petition requests the Court examine whether a District Court ruling denying certification of a Rule 23(b)(3) Unruh Act minimum statutory damages Class (the "Order") directly violates this Court's holdings in, *inter alia*, *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 711 (9th Cir. 2010), *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), and their progeny. Petitioner appeals only the District Court's holding denying certification of the Rule 23(b)(3) minimum statutory damages Class for failure to satisfy the predominance and superiority prongs of Rule 23(b)(3).

Petitioner, who is legally blind, initiated this litigation to address Quest Diagnostics' ("Quest") denial of effective communication by implementing an electronic check-in system ("ECSS") throughout its 2,152 nationwide patient service centers ("PSCs"). The business rationale for the ECSS rollout was to achieve "cost savings" by removing phlebotomists entirely from the check-in

process, allowing them to see more patients per day, resulting in greater profitability:

> Moreover, as the Court has noted elsewhere, individualized issues regarding whether a phlebotomist offered the class member assistance do not predominate because of the narrowness of the proposed class definition, and more importantly because the Court has already found that the kiosks were designed in part to allow phlebotomists to be unavailable.

(Order at 13 (Dkt. 190 at 13)).

ECSS includes the use of a self-service kiosk located in the waiting room of Quest's PSCs. ECSS allows sighted patients to communicate with phlebotomists so each patient can engage in self-check in, request help and customer service, and visually know where they are in the patient queue.[1] It is the direct line of communication between the patient in the waiting room and the phlebotomist in the back of the PSC performing diagnostic services. It is also the main mechanism by which patients can access diagnostic services.

As Quest concedes, and the District Court notes, ECSS was not available to blind patients, including Petitioner, during the Class Period. There was no way for blind patients to even know a kiosk was in the waiting room. Under this Court's rationale in *Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019), Quest's

[1] Presently, ECSS also permits patients, *inter alia*, to communicate if they are experiencing COVID-19 symptoms and to ask to wait outside and be notified by text when their appointment is called to reduce COVID-19 exposure. These features remain only available to sighted patients.

implementation of ECSS impedes access for blind patients to their services. *Id.* at 904-06. Based, in part, on Petitioner's experience at a Quest PSC, the District Court denied summary judgment and, on December 2, 2021, certified a nationwide injunctive relief class claiming violations of the ADA. Despite the ADA being a predicate violation of California's Unruh Act, the District Court denied certification for the California minimum statutory damages Class, finding the damages Class failed to satisfy both the predominance and superiority prongs of Rule 23(b)(3). Petitioner contends this portion of the District Court's ruling is in error.

The District Court erred in denying Petitioner's Motion for Class Certification of the Unruh Act minimum statutory damages Class in two key respects: first, in finding a class action brought pursuant to the Unruh Act for minimum statutory damages is *per se* inappropriate for class treatment because the $4,000 per claimant statutory penalty provides an economic incentive to plaintiffs sufficient to render thousands of individual actions superior to a single class action; and second, in finding purported "individual issues" predominated over the *five* overarching common questions of fact and law identified in the District Court's Order. Both findings violate the law of this Circuit.

The District Court's superiority finding is plainly in error. The basis for the District Court's order—that a $4,000 minimum statutory damages award is robust

enough to render thousands of individual actions superior to one class action—is not supported by any authority and is in fact contradicted by the law of this Circuit. *See, e.g.*, *Bateman*, 623 F.3d at 711; *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 589 (N.D. Cal. 2018) ("although class members are entitled to $4,000 in damages per Unruh Act violation that sum pales in comparison with the cost of pursuing litigation. Consequently, this factor points towards certification."); Section A, *infra*. The practical impact of the District Court's Order here is to push 6,000-plus legally blind Californians into the federal court system to individually litigate their entitlement to minimum statutory damages under the Unruh Act. This outcome not only runs afoul of this Court's prior holdings but also results in a destruction of judicial economy.

With regard to predominance, the District Court's Order is simply wrong on the facts. Quest maintains a complete record of precisely when each of its California PSC locations introduced the ECSS kiosk—a document Quest produced during discovery. *See* Section B, *infra*. Quest maintains a record of every single patient visit to its California PSCs during the Class Period. *Id.* Quest maintains records of emails, phone numbers, and addresses for its California customers. *Id.* These records, taken collectively, are the very proxy (or "common proof") by which a claims administrator will determine whether a legally blind customer visited a Quest location and encountered an inaccessible ECSS kiosk during the

Class Period.[2] The only eligibility question left for a claims administrator to determine is whether a customer is in fact legally blind—an entirely administrative eligibility determination that is routinely made against objective criteria by claims administrators at government agencies such as the Social Security Administration. *See* 42 U.S.C. § 416(i)(1) ("the term 'blindness' means central visual acuity of 20/200 or less in the better eye with the use of a correcting lens"); *see also*, Cal. Civ. Code 54.6; *Adams v. Bowen*, 872 F.2d 926, 929 (9th Cir. 1989) (with regard to legal blindness, "Congress chose a certain and exact rule; we are reluctant to engraft upon it a more flexible standard that is inherently more difficult to administer."). Nor is the fact that Quest implemented an identically-inaccessible kiosk in hundreds of its California PSCs relevant to predominance. The physical features of the California PSC "locations" are not at issue; only the identically inaccessible, ubiquitous ECSS kiosk is. And Quest—as well as the District Court (Dkt. 190 at 13)—*concedes* the kiosk was exactly the same in every California location throughout the Class Period.

---

[2] While Petitioner addresses these important questions under "predominance" here, we note the this Court's guidance that "[i]n light of the significant degree of variation in federal courts' approaches to member identification, we find wisdom in the Sixth Circuit's conclusion that a district court's class-certification analysis would have been 'equally sufficient, 'regardless of whether th[e] [member-identification] concern [was] properly articulated as part of ascertainability, Rule 23(b)(3) predominance, or Rule 23(b)(3) superiority.'" *Walker v. Life Ins. Co. of the Southwest*, 953 F.3d 624, 632 (9th Cir. 2020).

Accordingly, the District Court erred when it improperly conflated these garden-variety eligibility determinations based on objective criteria with *bona fide* individualized inquiries which might require the weighing of evidence or of picking winners and losers. *See Otto v. Abbott Laboratories Inc.*, 2015 WL 9698992, at *2 (C.D. Cal. Sept. 29, 2015) (quoting *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 521 (C.D.Cal.2012)) (finding class ascertainable if it is "administratively feasible for the court to determine whether a particular individual is a member" using objective criteria).

## STATEMENT OF FACTS

Petitioner Julian Vargas is legally blind. (Dkt. 41 at ¶ 1.) Both Petitioner and many members of Plaintiff American Council of the Blind ("ACB") encountered the ECSS at Quest locations which they, as legally blind individuals, could not access to effectively communicate with Quest. Petitioner filed a class action lawsuit seeking (1) a nationwide injunction requiring Quest to make reasonable modifications to allow legally blind individuals to effectively communicate at its PSCs and (2) statutory damages for those California class members who encountered the inaccessible kiosk, were not able to effectively communicate, and therefore are entitled to minimum statutory damages under the Unruh Act (Cal. Civ. Code, § 51, *et seq.*).

Quest's reason for implementing an electronic check-in and communication system was to improve efficiencies, saving the company tens of millions of dollars in costs. Quest admits—and the District Court held (Dkt. 190 at 13)—that for the entirety of the Class Period—January 1, 2018, through December 31, 2019—the kiosk did not have *any* features which would allow a legally blind individual to effectively communicate with Quest. The District Court further held Quest's system was "designed in part to allow phlebotomists to be unavailable" in the back, seeing more patients and improving efficiencies. *Id*. at 11. Blind individuals, like Petitioner and members of ACB, were forced to rely on third parties, including strangers in the waiting room, to communicate with Quest when they arrived. The cost to outfit Quest's ECSS nationwide with accessible features (including headphone jacks and tactile keyboards) is just $935,582, allowing the Company to still enjoy a massive cost savings from the ECSS rollout if it had properly included accessible features. Quest maintains records of every person who seeks diagnostic services at its PSCs, including email addresses, phone numbers and home addresses, and regularly communicates with its customers via email.

After Petitioner filed his lawsuit, Quest developed three-finger swipe ("TFS")—a gesture users can purportedly utilize to communicate with

phlebotomists in the PSCs.[3] Quest's primary defense at trial will be that TFS moots Petitioner's claims. Yet TFS does not moot the claims. Discovery demonstrated TFS is not available at many PSC locations and, even if it were, TFS does not allow a legally blind individual to effectively communicate with Quest in the myriad of ways a sighted individual can at the kiosk. TFS, if functioning, allows a legally blind individual only to alert Quest to their presence. The kiosk has multiple other functions beyond notifying a phlebotomist which a sighted user may use to communicate with Quest but a legally blind user cannot. Accordingly, the kiosks still do not have any of the accessibility options which would allow blind users full and effective communication.

Petitioner sought to certify two classes. At issue on this petition is the proposed California minimum statutory damages Class, defined as follows:

> All legally blind individuals who visited a Quest patient service center in California during the Class Period and were denied full and equal enjoyment of the services, facilities, privileges, advantages, or accommodations due to Quest's failure to make its e-check-in self-service kiosks independently accessible to legally blind individuals.

On October 29, 2021, the District Court heard argument on the class certification motion. The District Court issued a tentative opinion granting the

[3] Quest's Rule 30(b)(6) witness on the TFS testified Quest maintains records of the TFS-users' blindness. (Dkt. 146-3, Ex. 38, at PA1116:7-PA1117:2.)

motion in total and certifying both the nationwide class and California minimum statutory damages Class. (*See* Oct. 29, 2021, Transcript).

On December 2, 2021, the Court issued its Order re: Plaintiff's Motion for Class Certification. (Dkt. 190.) The Order granted Petitioner's motion to certify the nationwide class but denied the motion to certify the California minimum statutory damages Class. The Order found Petitioner failed to satisfy the predominance or superiority prongs of Rule 23(b)(3) without performing an analysis of *Briseno's* key holdings. In reaching this conclusion, the Court identified multiple common issues of proof, including: "(1) whether Quest's ECSS kiosks are independently accessible to legally blind individuals; (2) whether Quest has implemented the inaccessible ECSS kiosks across its national network of 2,152 PSCs; (3) whether use of the kiosk is a service Quest offers its customers; (4) whether Quest offers a qualified aid or auxiliary service to allow legally blind individuals to access the ECSS kiosk; and (5) whether Quest has remedied the inaccessible ECSS kiosk across its system." (Dkt. 190, at 7-8.) However, the District Court then identified two purportedly "individualized issues" which it held predominated over these myriad common issues: whether a PSC had an ECSS kiosk on the date of the putative class members' service and whether a putative class member was legally blind. As explained herein, neither of these eligibility determinations requires any individualized inquiry.

## QUESTIONS PRESENTED

1. In a Rule 23(b)(3) class action, do multiple common questions of law and fact predominate over two administrative issues of class member eligibility, each of which can be answered through common proof or objective criteria?

2. Is a class action brought under the Unruh Act seeking only minimum statutory damages *per se* inappropriate for class treatment because the $4,000 per claimant statutory penalty is a sufficient economic incentive to render thousands of individual actions superior to a single class action?

## RELIEF SOUGHT

Petitioner requests this Court grant his petition pursuant to Federal Rule of Civil Procedure 23(f). If the Court grants this relief, Petitioner will seek reversal of the District Court's Order denying certification of the California Unruh Act minimum statutory damages Class.

## REASONS FOR GRANTING THIS PETITION

Interlocutory review under Rule 23(f) allows the Court to "restore equilibrium when a doubtful class certification ruling would virtually compel a party to abandon a potentially meritorious claim or defense before trial." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 958-59 (9th Cir. 2005). Interlocutory review of a certification decision is appropriate when:

> (1) there is a death-knell situation . . .; (2) the certification decision presents an unsettled and fundamental issue of law relating to class

> actions, important to both the specific litigation and generally, that is likely to evade end-of-the-case review; or (3) the district court's class certification decision is manifestly erroneous.

*Id*. at 959.

Here, the second and third factors are present: the decision not to certify the Rule 23(b)(3) minimum statutory damages Class presents an unsettled and fundamental issue of law which is important both to this litigation and class actions generally and the decision is manifestly erroneous in light of this Court's jurisprudence.

### A. The District Court's Holding That Class Treatment for Unruh Act Actions Seeking Minimum Statutory Damages Are *Per Se* An Inferior Means of Adjudication Is In Error

In its Order, the District Court states in pertinent part:

> [T]he Unruh Act provides for $4,000 in minimum statutory damages for each violation. Although $4,000 is not such a large bounty that it is likely to drive all 6,000 potential California sub-class members to court, the statutory damages plus attorneys' fees available for prevailing plaintiffs renders individual actions a viable alternative to a class action.
>
> Under these circumstances, a class action is not superior to other available methods for adjudicating the Unruh Act claim.

(Dk. 190 at 15.) This finding is clear error. In the first instance, there is no authority to support the District Court's conclusion (and even the day before, the same District Court determined the class action was superior where the maximum recovery was $1,500 per claimant (*see Brown v. DirecTV, LLC*, 2021 WL 5755044, at *6 (C.D. Cal., Dec. 1, 2021).). Forcing more than 6,000 class members

to individually litigate cases in the hopes of obtaining $4,000 and attorneys' fees is neither feasible nor does it serve to advance principles of judicial economy.

There is no evidence to demonstrate that California class members would be inclined to prosecute their claims individually through trial. In *Bateman, supra,* this Court held the lower court abused its discretion by denying a motion for class certification on superiority grounds based in part on the enormity of potential damages. *Id.* at 710-711. Similarly, in *Steven Ades & Hart Woolery v. Omni Hotels Management Corp.*, 2014 WL 4627271, at *14-15 (C.D. Cal. Sept. 8, 2014) the District Court recognized that consideration of "excessive" statutory damages is an improper consideration for denying class certification stage on superiority grounds. *See also Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006) (consideration of statutory damages in superiority analysis improper). *Steven Ades* analyzed the *Bateman* decision, which "noted that Congress, despite being aware of the availability of the class action form, did not cap or otherwise limit damages that could be obtained in class actions, as it had for other statutes." 2014 WL 4627271, at *14 (citing *Bateman*, 623 F.3d at 718, 720). "The court reasoned Congress had decided the penalties it set served compensatory and deterrence functions and were proportionate to the prohibited conduct." *Id.* (citing *Bateman*, 623 F.3d at 719). This "proportionality does not change as more plaintiffs seek relief," and it was "not appropriate to use procedural devices to undermine laws of

which a judge disapproves." *Id.* (*citing Bateman*, 623 F.3d at 719, *Murray*, 434 F.3d at 954).

More recently, Judge Koh followed this same reasoning in addressing the superiority of a class brought under the Unruh Act, holding that "[a]lthough class members are entitled to $4,000 in damages per Unruh Act violation that sum pales in comparison with the cost of pursuing litigation. Consequently, this factor points towards certification." *Nevarez,* 326 F.R.D. at 589; *see also, Vallabhapurapu v. Burger King Corp.*, C 11-00667 WHA, 2012 WL 2568183, at *5 (N.D. Cal. July 2, 2012) ("[r]esolving [Unruh Act] damages claims through store-specific settlement classes will be far more efficient than resolving each class member's claims individually in separate lawsuits throughout California."); *Wilcox v. Swapp*, 330 F.R.D. 584, 597 (E.D. Wash. 2019) (finding "each class member's potential recovery [of the statutory minimum $2,500] would be "dwarfed" by the cost of litigating DPPA claims against Defendants individually") (quoting *Wolin v. Jaguar Land Rover N.A., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.")).

This litigation has been hard-fought, requiring millions of dollars of attorney time and hundreds of thousands of dollars in out-of-pocket costs in order to obtain the common proof of Quest's discriminatory practices. It is simply not credible to

suggest an individual litigant would have the ability or desire to fund such litigation when the maximum he or she might obtain is a $4,000 statutory award.

Nor would thousands of individual lawsuits promote judicial economy. Indeed, this Court very recently noted in *Arroyo v. Rojas*, No. 19-55974, at 19, n. 5 (9th Cir. Dec. 10, 2021) a sharp increase in Unruh Act claims in federal court after the state implied enhanced pleading requirements: increasing from 3% of the Central District's docket in 2013 to 24% of the docket in 2019. Under these circumstances, a single class action that will adjudicate more than 6,000 individual actions subject to several overarching common legal and factual questions (*see* Dkt. 190 at 11) is far superior to thousands of individual federal suits.

**B. The District Court's Order Contradicts Ninth Circuit Predominance Authority**

The District Court's decision whether to certify a class is discretionary, as long as it is based on sound legal principles and is not based on clearly erroneous or irrelevant findings of fact. *Leyva v. Medline Indus*., 716 F.3d 510, 513 (9th Cir. 2013). Here, the District Court failed to follow Ninth Circuit authority and made dispositive factual findings that were without support in the record, thereby abusing its discretion.

"Federal courts . . . lack authority to substitute for Rule 23's certification criteria a standard never adopted." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 622 (1997). In the context of the Rule 23(b)(3) predominance inquiry, the

Court asks, "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009). The focus is on whether "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication"; if so, "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotations omitted), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

In *Briseno*, this Court analyzed whether proponents of a Rule 23(b)(3) damages class were required to demonstrate there was an administratively feasible way to determine class membership, holding there is no independent administrative feasibility requirement and issues of class member eligibility criteria cannot be the basis for denying certification. 844 F.3d 1121 (9th Cir. 2017). Rather, they are issues regularly and properly left to a claims' administrator through the claims process. *Id.* at 1131. The District Court's Order stands in direct contravention of *Briseno's* holding.

Specifically, the District Court stated there are individual questions which are not susceptible to common proof or objective determination, including (1) Quest did not roll the kiosk out at the same time throughout California, and (2)

Quest does not maintain records of its customers' legal blindness during the Class Period. The first finding is simply wrong on the facts—Quest's kiosk rollout schedule establishes the fact of the encounter, with detailed records of the ECSS rollout schedule throughout its PSC network, including each PSC's date of ECSS implementation and date of first use.[4] Given this fact, whether a blind person encountered a kiosk is susceptible to common proof and does not require any individualized inquiry.[5] Accordingly, a claims administrator can objectively determine whether a blind Quest customer who submits a claim encountered the ECSS kiosk.

---

[4] *See* Dkt. 107-5, Ex. 30, at Topic 6, 7 ("The data collected in the document labeled as Bates No. QUEST-VARGAS 00000039568-39608 …. is the best record that Defendants have of the first activation and first use of the Kiosks. activated at the particular Patient Service Centers identified in the document…"); Dkt. 163, Ex. 149, Quest's 2018 10-K (affirming all PSCs equipped with ECSS in 2018).

[5] The District Court found Quest intended its phlebotomists to be unavailable to assist customers (Dkt. 144 at 11). Nonetheless, to the extent any showing is required as to whether a blind person was assisted by front desk personnel with kiosk check-in during a PSC visit, this too is susceptible to common proof. Quest maintained data that "identifies the number of Patient Service employees in the United States who were employed by defendant Quest Diagnostics Incorporated and/or its wholly-owned subsidiaries in 2019 and who held the job titles in the spreadsheet [Bates 42006], as well as the work location to which they were coded at that time." (Dkt. 107-5, Ex. 30, at Topics 9, 10, 11.) Moreover, there are at least 730 locations nationwide, and 109 locations in California, which have only one employee working during business hours. *Id*. According to Quest, this lone employee is a phlebotomist busy taking specimens in the back. (*See* Dkt. 107-3, Ex. 6, at PA0071:6-12; PA0085:6-17.)

The District Court's second finding—that proof of legally blind status for the entire class is required at the class certification stage—is also in error. Such determinations do not require *any* exercise of discretion and are easily determined against objective criteria developed by, for example, the federal Social Security Administration when it determines whether a person is legally blind for purposes of receiving federal benefits. *Adams*, 872 F.2d at 929. These are exactly the type of administrative tasks claims administrators regularly perform—as the *Briseno* court noted repeatedly. *Briseno*, 844 F.3d at 1131-32; *see also*, *Williams v. Apple, Inc.*, 338 F.R.D. 629, 645-46 (N.D. Cal. May 28, 2021) ("Yet as in *Briseno*, the administrative feasibility of identifying who paid for the product at issue—and thus could be a member of the Damages Class—is immaterial to class certification here.").

First, in making this finding the District Court improperly conflates the issue of class notice at the class certification stage with purported "individualized" inquiries in the post-settlement (or post-verdict) claims administration process. (*See* Dkt. 190 at 14 ("[A]t a minimum, nearly three million patients attempted to use a Quest kiosk each year…[and] fewer than .5% of these patients are putative class members. Without at least a proxy for determining class membership to narrow the scope of the individualized inquiry, the Court comes to the ineluctable conclusion that individualized issues will predominate over common ones with

respect to the California sub-class."). Second, the District Court's apparent concern about class notice is out of step with the law of this Circuit. *Briseno*, 844 F.3d at 1131-32; *Williams*, 338 F.R.D. at 645-46.

It is well-established that every successful class notice program "over-notices" its intended plaintiff class, as Petitioner discussed at oral argument. Oct. 29, 2021, Tr. at 26:10-28:21; *see also, Jabbari v. Farmer*, 813 F. App'x 259, 261 (9th Cir. 2020) ("[T]he Notice Plan included advertisements to the general public, messages to millions of current and former customers, messages to potential class members identified by an independent consultant, and social media campaigns. No notice plan is perfect, but perfection is not required."). After all, the law does not require that notice be made to every single class member but only that notice be the "best practicable notice under the circumstances." *In re MGM Mirage Securities Litigation*, 708 Fed. App'x 894, 896 (9th Cir. 2017)."[6]

[6] The only question Rule 23 asks for over-inclusive notice is "whether the list of [class members] would "indisputably" contain all known class members," with reasonable notice reaching at least 70% of the class. *Schneider v. Chipotle Mexican Grill, Inc.*, 2019 WL 1512265, at *3 (N.D. Cal. Apr. 8, 2019); *Fed. Jud. Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3* (2010), https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. Here, the plan would reach nearly 100% of class members. *Bowerman v. Field Asset Servs., Inc.*, 2015 WL 5569061, at *4 (N.D. Cal. Sept. 21, 2015) ("[T]he best notice practicable under the circumstances was notice to a group that was broader than the class definition but included the complete universe of class members. This was an acceptable and unremarkable method of delivering notice to the class.").

The District Court provides no authority for its apparent belief that "over-noticing" the class is somehow a basis for denying certification on predominance grounds—particularly where, as here, it is undisputed Quest keeps contact and identifying information for its entire customer base—including the entire class asserted here—rendering electronic and U.S. Mail notice to Quest's California customers both cost-effective and efficient.

In addition, the notion that this case involves "hundreds" of different PSC "locations" is irrelevant to the issues in this litigation. (Dkt. 190 at 13.) The "locations" are not at issue; only the kiosks are. And Quest concedes the kiosk is identically inaccessible in every California PSC location. (Dkt. 144 at 10.) Thus, that there are 419 different Quest locations which house the identically inaccessible kiosks is entirely irrelevant and cannot be a basis for denying certification.[7]

Finally, the District Court's Order on predominance is particularly puzzling in light of the class certification ruling it issued just one day prior in *Brown v. DirecTV, LLC*, *supra*. There, the same District Court held "under this Circuit's

---

[7] Since *Briseno*, this Court has reiterated that individual class member eligibility requirements (*e.g.*, proof of legal blindness) are not a basis for denying certification. *See Walker*, 953 F.3d at 632 ("Our cases do not additionally task district courts with analyzing, for predominance purposes, the logistical difficulties attendant to identifying plaintiffs who were exposed to misrepresentations and therefore may be entitled to class membership."); see also, *Melgar v. CSK Auto*, 681 Fed. App'x. 605, 607 (9th Cir. 2017) (rejecting due process argument that claimants will offer only a "self-serving affidavit" to qualify for class membership).

binding precedent, no matter how laborious or imperfect the process of identifying Class Members is, it does not present a predominance issue." 2021 WL 5755044, at *5. The District Court even recognized "a starting point for class notice (but not for class membership) may be overinclusive and imperfect, but notice often is," and even in a situation with a "self-serving affidavit" to claim class membership, "there is still no freestanding ascertainability requirement, and certification may still be appropriate as long as a class action is superior to individual litigation." *Id.* at *6. For the reasons discussed, *supra*, a class action is far superior to individual litigation. The District Court erred in finding Petitioner failed to satisfy predominance.

## CONCLUSION

For these reasons, Petitioner respectfully requests review of the Order.

Date: December 16, 2021

By: *s/ Alison M. Bernal*

**Alison Marie Bernal**
**Jonathan Dengler Miller**
NYE, STIRLING, HALE & MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Facsimile: (805) 364-4508
alison@nshmlaw.com
jonathan@nshmlaw.com

*Signatures Continued Below.*

By: s/ *Benjamin J. Sweet*

**Benjamin J. Sweet**
NYE, STIRLING, HALE & MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350
ben@nshmlaw.com

By: s/ *Matthew K. Handley*

**Matthew K. Handley**
HANDLEY FARAH &
ANDERSON PLLC
200 Massachusetts Avenue, NW, 7th Fl.
Washington, DC 20001
Telephone: (202) 559-2411
mhandley@hfajustice.com

*Attorneys for Plaintiff-Petitioner, Julian Vargas, and Plaintiffs American Council of the Blind, and the Class*

## STATEMENT OF RELATED CASES

Petitioner is not aware of any other cases related to the instant petition.

Date: December 16, 2021

By: s/ *Alison M. Bernal*
**Alison Marie Bernal**
**Jonathan Dengler Miller**
NYE, STIRLING, HALE & MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Facsimile: (805) 364-4508
alison@nshmlaw.com
jonathan@nshmlaw.com

By: s/ *Benjamin J. Sweet*
**Benjamin J. Sweet**
NYE, STIRLING, HALE & MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350
ben@nshmlaw.com

By: s/ *Matthew K. Handley*

**Matthew K. Handley**
HANDLEY FARAH &
ANDERSON PLLC
200 Massachusetts Avenue, NW, 7th Fl.
Washington, DC 20001
Telephone: (202) 559-2411
mhandley@hfajustice.com

*Attorneys for Plaintiff-Petitioner, Julian Vargas, and Plaintiffs American Council of the Blind, and the Class*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure, Rule 5(c), I certify that according to the word court on the computer program used to prepare the brief and excluding the information required by Rule 5(b)(1)(E) and Rule 32(f) contained herein, this Petition contains 4,751 words and is 20 pages.

Date: December 16, 2021

By: *s/ Alison M. Bernal*
**Alison M. Bernal**
**Jonathan D. Miller**
NYE, STIRLING, HALE & MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Facsimile: (805) 364-4508
alison@nshmlaw.com
jonathan@nshmlaw.com

By: *s/ Benjamin J. Sweet*
**Benjamin J. Sweet**
NYE, STIRLING, HALE & MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350
ben@nshmlaw.com

By: *s/ Matthew K. Handley*

**Matthew K. Handley**
HANDLEY FARAH &
ANDERSON PLLC
200 Massachusetts Avenue, NW, 7th Fl.
Washington, DC 20001
Telephone: (202) 559-2411
mhandley@hfajustice.com

*Attorneys for Plaintiff-Petitioner, Julian Vargas, and Plaintiffs American Council of the Blind, and the Class*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

**9th Cir. Case Number(s)** 21-________

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[X] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

| |
|---|
| |

**Description of Document(s)** *(required for all documents)*:

| PLAINTIFF-PETITIONER'S PETITION FOR LEAVE TO APPEAL PURSUANT TO FRCP, RULE 23(f) |
|---|

**Signature** *s/Alison Bernal* **Date** December 16, 2021