Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345

Benjamin J. Sweet
(*Admitted Pro Hac Vice*)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

*Attorneys for Plaintiffs Julian Vargas,*
*American Council of the Blind, and the Certified Class*

*Additional counsel for Plaintiff listed on signature page*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN VARGAS and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 2:19-cv-08108-DMG<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Declaration of Jonathan D. Miller, Response to Statement of Facts, Request for Judicial Notice and Objections to Quest's Evidence]*<br><br>**Date:   August 5, 2022**<br>**Time:   3:00 p.m.**<br>**Crtrm: 8C**<br><br>Complaint Filed: September 18, 2019<br>Pretrial Conf: October 4, 2022<br>Trial Date: November 1, 2022<br>District Judge: Hon. Dolly M. Gee<br>Magistrate: Hon. Michael R. Wilner |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................5

II.   STANDARD OF REVIEW ON SUMMARY JUDGMENT ...................................7

III.  ARGUMENT...........................................................................9

    A.   Quest Concedes Its Company-Wide Communication System Failed To
        Provide Effective Communication ................................................9

    B.   The Evidence Quest Cites Does Not Create A Trial Issue Of Fact On
        Its Affirmative Defenses of Mootness And Undue Burden .......................11

        1. Quest's sham affidavits cannot manufacture a genuine dispute of
        material fact .......................................................................11

        2. Plaintiffs Meet Their Initial Burden To Demonstrate The Lack Of
        Admissible Evidence To Raise A Genuine Issue of Material Fact On
        Mootness and Offered Affirmative Evidence To Defeat Mootness...........13

            a. Plaintiffs' opening brief highlights Quest's lack of admissible
        evidence to demonstrative mootness .........................................13

            b. Plaintiffs also presented affirmative evidence to defeat mootness......14

            c. Quest cannot identify any admissible evidence which might
        create a genuine issue of material fact on mootness...................20

        3. This Court's prior rulings refute Quest's claim of lack of common
        injury..............................................................................24

        4. Quest's improper attempt to create a triable issue on undue burden
        must be rejected .................................................................26

IV.   CONCLUSION........................................................................28

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT

1

## TABLE OF AUTHORITIES

2   *Arroyo v. Sun Rise Property LLC, 2020 WL 5260493 (C.D. Cal., May 15, 2020)* ............9

3   *Bhan v. NME Hospitals, 929 F.2d 1404, 1409 (9th Cir.1991)* .........................................8,9

4   *Bock v. Washington, 33 F.4th 1139, 1145 (9th Cir. 2022)* ................................................23

5   *Carlson Produce, LLC v. Clapper, 2021 WL 292031 (N.D. Cal. Jan. 28, 2021)* .............12

*Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).* .........................................................7

6   *Chafin v. Chafin, 568 U.S. 165, 133 S.Ct. 1017, 1023 (2013)* .....................................21,24

7   *Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939 (9th Cir. 2011)* ............................18

8   *Dolzhenico v. City of Los Angeles, Cal., No. CV 15–4581 AB (SSx)*

9       *2016 WL 10587935 (C.D. Cal. Oct. 28, 2016)* ........................................................12

10  *Doran v. 7-Eleven, Inc., 524 F.3d 1034 (9th Cir. 2008)* ................................................18

11  *Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 532 (9th Cir. 2000).* ...................8

12  *Farmers & Merchs. Bank v. Willemsen, No. EDCV 13-0609-JGB (SPx), 2014 WL 12465445, at \*5 (C.D. Cal. May 14, 2014)* ...........................................................................8

13  *Franco-Gonzales v. Holder, CV1002211DMGDTB*

14      *2010 WL 11643590, at \*4 (C.D. Cal. Oct. 18, 2010)* ........................................9,19

15  *Friends of the Earth, Inc. v. Laidlaw Env. Services (TOC), Inc.*

16      *528 U.S. 167, 189 (2000)* ....................................................................................passim

17  *Gaines v. Cal. Dep't of Corr., No. 1:15-cv-00587-LJO-SAB (PC), 2019 WL 4243230, at \*5–6 (E.D. Cal. Sept. 6, 2019)* ................................................................................12

18  *In re Brazier Forest Prods., Inc., 921 F.2d 221, 223 (9th Cir. 1990)* ................................8

19  *Juech v. Children's Hospital & Health Sys., Inc.*

20      *353 F.Supp.3d 772 (E.D. Wis. 2018)* ........................................................................21

21  *Kerr v. Heather Gardens Association, No. 09-cv-00409-MSK-MJW, 2010 WL 3791484, at \*2 (D. Colo. Sept. 22, 2010)* ...............................................................14

22  *Kirola v. City & Cty. Of San Francisco, 860 F.3d 1164 (9th Cir. 2017)* .........................25

23  *Lanard Toys Ltd. v. Anker Play Prod., LLC, No. CV 19-4350-RSWL-AFMX, 2020 WL 6873647, at \*21 (C.D. Cal. Nov. 12, 2020).* ...........................................................8

24

*Langer v. Kaimana LLC, CV167452DMGAFMX, 2016 WL 7029151*

25      *at \*2 (C.D. Cal. Dec. 1, 2016)* ................................................................................28

26  *Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 532 (9th Cir. 2011)* .............................17

27  *Medina v. Multaler, Inc., CV0600107MMMAJWX, 2007 WL 5124009*

28      *at \*8 (C.D. Cal. Feb. 7, 2007)* ................................................................................13

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT

1

*Merch. v. Corizon Health, Inc.*, 993 F.3d 733, 736 (9th Cir. 2021).................................22

*Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). .............7

*New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808
    149 L.Ed.2d 968 (2001) ......................................................................23

*Nix v. Advanced Urology Institute of Georgia, P.C.*, No. 1:18-cv-04656-SDG
    2020 WL 7352559, at \*4-5 (N.D. Ga. Dec. 14, 2020)............................................14

*Paulick v. Starwood Hotels & Resorts Worldwide, Inc.*
    2012 WL 2990760 (N.D. Cal. July 20, 2012) ........................................................19

*Poway v. Unified Sch. Dists. v. K.C. ex rel. Cheng*, No. 10CV897-GPC (DHB), 2014
    WL 129086 at \*7 (S.D. Cal. Jan. 14, 2014)...........................................................14

*Rosemere Neighborhood Assoc. v. U.S. EPA*, 581 F.3d 1169, 1173 (9th Cir. 2009). ........9

*S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003)...........................7

*School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*
    5 F.3d 1255, 1261 (9th Cir.1993) .......................................................................13

*Sengupta v. City of Monrovia*, 2010 WL 11515299 (C.D. Cal. July 28, 2010)............19,21

*Tinoqui-Chalola Council v. U.S. Dept. of Energy*, 232 F.3d 1300 (9th Cir. 2000). ...........8

*Vargas v. Quest Diagnostics Clinical Laboratories, Inc.*, Appeal No. 22-80060 ..............5

*Whelan v. Potter*, No. CIV S-09-3606 KJM-KJN, 2012 WL 3535869
    at \*7 (E.D. Cal. Aug. 15, 2012). .......................................................................12

*Whitaker v. Alo, LLC*, 2020 WL 1972578 (C.D. Cal., Mar. 17, 2020)................................9

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir. 2001). .....12,13,26

Statutes

Fed. Prac. & Proc. Civ. § 2738 ................................................................................6

Fed. Rules Civ. Proc. § 26 & 37 ..........................................................................5,12

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Quest's Opposition to Plaintiffs' Motion for Summary Judgment constitutes its latest effort to continue denying legally blind customers access to its services. In the face of this Court's repeated admonitions to seek a common-sense resolution of this dispute (*see, e.g.,* Quest's First MSJ Hearing Tr. at 18:23-24, Pre-Trial Conference Tr. at 34:19-35:2, and Class Definition Hearing Tr. at 18:11-19)[1], the Opposition along with Quest's other recent filings in this Court and elsewhere (Dkt. 233; *Vargas v. Quest Diagnostics Clinical Laboratories, Inc.*, Appeal No. 22-80060 (July 1, 2022)) can only be viewed as another[2] attempt to force Plaintiffs and this Court to wade through a blizzard of improperly-filed paper in the hope this Court will simply throw up its hands in frustration, deny Plaintiffs' motion, and propel this litigation forward.

However, as Plaintiffs' Objections to Evidence, filed concurrently herewith, explain in detail, the evidence Quest relies on in opposing Plaintiffs' Motion: (1) lacks foundation; (2) violates the sham affidavit doctrine; and/or (3) is untimely under Rules of Civil Procedure 26 and 37, as it was produced more than nine months after the close of discovery. Quest offers no explanation for its violation of these rules and this Court's Scheduling Order.

Ultimately, however, none of the purported evidence can assist Quest in manufacturing triable issues of fact necessary to overcome Plaintiff's motion. For

---

[1] Given Quest's litigation posture, it will come as no surprise to this Court that it has refused to engage in a resolution dialogue with the certified Class since Plaintiffs last communicated a settlement proposal in November 2021.

[2] This marks the third time out of three summary judgment filings in this litigation in which Quest has sought to improperly supplement the record with sham affidavits, as it also did so in both its first and second Motions for Summary Judgment (Dkt. 95, Dkt. 233).

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1   when the Court properly considers the *admissible* record evidence, Plaintiffs' Motion

2   must be granted. *See* § 2738 *Affidavits in Support of or in Opposition to Summary*

3   *Judgment*, 10B Fed. Prac. & Proc. Civ. § 2738 (4th ed.) (stating that upon a Rule 56

4   motion "the judge should consider any material that would be admissible at trial").

5        Specifically, there is no *genuine* issue of material fact sufficient to defeat

6   summary judgment on the Class's affirmative case or on either of Quest's affirmative

7   defenses – mootness and undue burden. Rather, the record demonstrates Quest failed

8   to provide effective communication to certified Class members during the Class

9   Period and that phlebotomists were not generally available to assist blind customers.

10   (UF 65-66.) The record further demonstrates that Quest's three-finger swipe ("TFS")

11   "solution" is in reality riddled with problems at each step of the "complex, interactive"

12   communication chain that blind individuals must traverse, preventing Quest from ever

13   carrying its hefty burden to prove its mootness case. (UF 36, 41-42, 67-77, 81-85, 87,

14   89-91.) The record also demonstrates that the injunctive relief likely to be sought here

15   does not pose any undue burden to Quest, foreclosing the possibility that Quest can

16   create triable issues sufficient to defeat this Motion on its undue burden defense. (UF

17   105-106.)

18        Recognizing it cannot raise triable issues, Quest attempts to spin the United

19   States Architectural and Transportations Barriers Compliance Board's (the "Access

20   Board") and the Department of Justice's ("DOJ") recent announcement that they will

21   be proposing specific, minimum design standards for self-service kiosks in August

22   2022 into a newly proffered undue burden defense. Specifically, Quest now claims

23   that having to correct the issues for the Class would impose an undue burden if the

24   standards, which may or may not ever be adopted, later require more. Quest, however,

25   knows well that when the Access Board's proposed kiosk accessibility rules are

26   released next month, they will confirm what Plaintiffs, the DOJ (which took the

27   extraordinary step of supporting Plaintiffs' position in this litigation through its

28

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Statement of Interest (Dkt. 118)) and this Court have been saying from the beginning: that both during and after the Class Period, Quest has failed to meet its minimum legal duty to provide its legally blind customers with effective communication. Accordingly, and as explained in detail below, Quest has raised no triable issues of fact and Plaintiffs respectfully request this Court grant their Motion in its entirety.

## II.    STANDARD OF REVIEW ON SUMMARY JUDGMENT

To prevail on a summary judgment motion, the movant (Plaintiffs) must demonstrate that there are no *genuine* issues of material fact as to matters on which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Such a showing "must establish beyond controversy every essential element" of the movant's claim or affirmative defense. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (internal quotation marks omitted). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the non-moving party's case. *See Celotex*, 477 U.S. at 325. Upon such showing, the court may grant summary judgment "on all or part of the claim." Fed. R. Civ. P. 56(a)-(b).

To defeat a summary judgment motion, the non-moving party (Quest) may not merely rely on its pleadings or on conclusory statements. *See Celotex*, 477 U.S. at 324. Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co*., 701 F.2d 95, 97 (9th Cir. 1983). Rather, the non-moving party *must affirmatively present specific evidence* sufficient to create a genuine issue of material fact for trial. *Celotex Corp*., 477 U.S. at 324.

Quest's Opposition misstates the proper legal standard governing this Motion, incorrectly conflating the burden on summary judgment with the burden of establishing an affirmative defense. Dkt. 236 at 21, fn. 15 (setting forth incorrect legal standard on this Motion). Quest pled the affirmative defenses of mootness and undue

burden in its Answer. (Dkt. 47.) It is therefore *Quest's* burden during the litigation to produce evidence pursuant to Rule 26 to support those affirmative defenses. *Tinoqui-Chalola Council v. U.S. Dept. of Energy*, 232 F.3d 1300, 1303-04 (9th Cir. 2000). If Quest fails, after adequate time for discovery, to make a showing sufficient to establish the existence of an element of Quest's defense (as it unquestionably has here), Rule 56 mandates entry of summary judgment for Plaintiffs. *Celotex,* 477 U.S. at 323. It is not, as Quest would have it, Plaintiffs' burden to produce evidence negating Quest's defense (although Plaintiffs have certainly done so here). Rather, Plaintiffs are entitled to summary judgment under Ninth Circuit law on Quest's two affirmative defenses of mootness and undue burden by "simply point[ing] to the *absence of evidence* to support the nonmoving party's case." *In re Brazier Forest Prods., Inc.*, 921 F.2d 221, 223 (9th Cir. 1990) (emphasis added)*; see also Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). "The nonmoving party must then make a sufficient showing to establish the existence of all elements essential to its defense." *Farmers & Merchs. Bank v. Willemsen*, No. EDCV 13-0609-JGB (SPx), 2014 WL 12465445, at *5 (C.D. Cal. May 14, 2014) (citation omitted). "Summary judgment may be granted if the nonmoving party completely fails to offer evidence supporting its affirmative defenses." *Id.; Lanard Toys Ltd. v. Anker Play Prod., LLC,* No. CV 19-4350-RSWL-AFMX, 2020 WL 6873647, at *21 (C.D. Cal. Nov. 12, 2020).

Courts in this Circuit have explained what constitutes a "sufficient showing" in this context. Specifically, if the moving party satisfies its initial burden, "the opposing party may not rely on denials in the pleadings but *must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists*… In addition, the dispute must be genuine. The 'opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Bhan v. NME Hospitals*, 929 F.2d 1404, 1409 (9th Cir.1991) (emphasis added). In the context

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

8

1   of a mootness defense, defendants have prevailed on summary judgment by producing

2   evidence *during discovery* of photographs and declarations which fully document the

3   defendant's efforts to fully remediate the access issues at the single location. *See, e.g.,*

4   *Arroyo v. Sun Rise Property LLC,* 2020 WL 5260493 (C.D. Cal., May 15, 2020);

5   *Whitaker v. Alo, LLC,* 2020 WL 1972578 (C.D. Cal., Mar. 17, 2020).

6       For the reasons set forth in Plaintiffs' Objections to Evidence, filed

7   concurrently and fully incorporated here by reference, Quest fails to identify any such

8   evidence which might allow a reasonable trier of fact to grant judgment for Quest

9   based on either its mootness or undue burden defenses.

10      But this is only the first showing Quest must make here. In addition to meeting

11  this exacting "voluntary cessation" standard, Quest also needs to establish that its

12  unlawful conduct is not likely to be repeated in the future. *See Franco-Gonzales v.*

13  *Holder*, CV1002211DMGDTB, 2010 WL 11643590, at *4 (C.D. Cal. Oct. 18, 2010)

14  (J. Gee) ("Under the "voluntary cessation" exception to mootness, "the mere cessation

15  of illegal activity in response to pending litigation does not moot a case."); *Rosemere*

16  *Neighborhood Assoc. v. U.S. EPA*, 581 F.3d 1169, 1173 (9th Cir. 2009). Thus, a party

17  claiming that its voluntary compliance with the law moots a case "bears a formidable

18  burden of showing that it is absolutely clear the allegedly wrongful behavior could

19  not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env.*

20  *Services (TOC), Inc*., 528 U.S. 167, 189 (2000) (emphasis added); *see also Rosemere*,

21  581 F.3d at 1173. As explained below, Quest's conduct since the filing of this lawsuit

22  - including its decision to roll out multiple new features on the kiosk that are also

23  inaccessible - makes clear that it cannot make this showing.

24  **III.   ARGUMENT**

25      **A.   Quest Concedes Its Company-Wide Communication System Failed**

26          **To Provide Effective Communication**

27  This Court has already held that the kiosks at the center of this litigation failed

28

9

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1  to provide effective communication to certified Class members across Quest's PSC
2  network during the Class Period. (*See* Dkt. 190 at 8 (finding "[t]here is no real
3  question that the kiosks, as implemented during the class period, were not
4  independently accessible to blind customers."); *id.* at 13 ("[T]he record here is
5  uncontroverted that Quest's kiosks were identical—and similarly inaccessible—
6  across Quest's network of patient service centers."); *see also* Dkt. 144 at 10:26-27
7  (stating "Quest appears to concede that its kiosks, as originally developed, did not
8  provide 'effective communication' with blind individuals.").[3] This Court found that
9  Quest phlebotomists "are primarily responsible for collecting patient specimens, not
10 staffing the waiting room…" (Dkt. 190 at 1), and further that "Quest's waiting rooms
11 are generally unattended; the kiosk communicates to phlebotomists "in the back" that
12 a patient has arrived, and the phlebotomist comes out of "the back" to invite patients
13 into a draw room. …Quest's system was designed to make phlebotomists available
14 *only sometimes*." (Dkt. 144 at 13:7-9 (emphasis added); UF 8-9.)

15     For these reasons, this Court concluded it "need not rely on Plaintiffs' evidence
16 [in ruling on Quest's motion for summary judgment] to determine whether
17 phlebotomists were always available, however, because phlebotomist unavailability
18 appears to have been part of Quest's plan." (Dkt. 144 at 13:1-3.) Indeed, this Court
19 noted "[t]he major problem with Quest's argument is that using the original iteration
20 of the kiosks, phlebotomist assistance does not appear to have been readily or reliably
21 available." (Dkt. 144 at 12:23-25.)[4] Thus, the concern is "that the staff is servicing the
22 patients and cannot always be in front of the 'house' tending to folks that are
23 struggling with registration. You can't have both at the same time." (UF 12.)

24

25 [3] These findings confirm Quest's claims that Plaintiffs fail to prove a class-wide injury
26 are meritless. Opposition at 12-14.

27 [4] Quest's internal emails confirm this finding. (*See, e.g.,* UF12 "[t]here are no
28 phlebotomists sitting at front desks available to help register patients.")

Importantly, in opposition, Quest cannot point to any *admissible* evidence that phlebotomists are available to provide effective communication beyond the speculation of its executives. Indeed, the only actual phlebotomist with first-hand knowledge of Quest's training testified unequivocally that she was never trained to scan the waiting area for patients to provide effective communication. (UF 60.). Mindful of this fact, Quest seeks to recreate history– some nine months after the close of discovery – with sham affidavits which it hopes will manufacture the necessary "genuine" issue of material fact to defeat this Motion. Quest's violation of the rules must be rejected.

**B.    The Evidence Quest Cites Does Not Create A Trial Issue Of Fact On Its Affirmative Defenses of Mootness And Undue Burden**

Rather than defend the indefensible (*i.e.,* that its kiosks were accessible during the Class Period), Quest instead attempts to manufacture a genuine issue of fact where none exists. As stated above, this "new evidence" is either barred by the sham affidavit doctrine, lacks proper foundation and/or was belatedly disclosed in violation of the Federal Rules of Procedure and must be disregarded in its entirety.

**1.    Quest's sham affidavits cannot manufacture a genuine dispute of material fact**

As explained in detail in Plaintiffs' Objections to Evidence, each Quest declarant offered in opposition to summary judgment has directly contradicted his or her sworn testimony under oath at deposition. For example, Ms. Magana, the phlebotomist at the location Mr. Vargas visited, changed her deposition testimony that Quest never trained her to scan the waiting room to "after talking to my lawyer, I misunderstood the question and actually was trained to scan the waiting room." *See* Objection No. 76. Ms. Magana testified in deposition that she reviewed Quest's training materials the day before her deposition, yet had no recollection of ever being trained to scan the waiting room to assist patients. This alteration, many months after

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

the deposition was taken, and after the time for Ms. Magana to review and correct her testimony has expired, can only be viewed as a sham.

Moreover, much of the information contained in Quest's declarations and corresponding exhibits violates Federal Rule of Civil Procedure 26(e) and Rule 37. Specifically, Federal Rule of Civil Procedure 26(e) requires parties to supplement or correct disclosures and non-deposition discovery responses "in a timely manner" upon "learn[ing] that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Under Rule 37(c), a party that fails to comply with Rule 26(e) "*is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless*." Fed. R. Civ. P. 37(c)(1) (emphasis added). The non-compliant party has the burden to show that its failure to disclose was substantially justified or harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). While a party may bring a separate motion under Rule 37 against a party who engages in the improper discovery tactics, the party may also rely on Rule 37 in a reply brief in support of summary judgment and accompanying objections as the basis for a Court to exclude the improper evidence. *See, Carlson Produce, LLC v. Clapper,* 2021 WL 292031, at *5 (N.D. Cal. Jan. 28, 2021); see also, *Whelan v. Potter*, No. CIV S-09-3606 KJM-KJN, 2012 WL 3535869, at *7 (E.D. Cal. Aug. 15, 2012); *Gaines v. Cal. Dep't of Corr.*, No. 1:15-cv-00587-LJO-SAB (PC), 2019 WL 4243230, at *5–6 (E.D. Cal. Sept. 6, 2019); *Dolzhenico v. City of Los Angeles, Cal.*, No. CV 15–4581 AB (SSx), 2016 WL 10587935 (C.D. Cal. Oct. 28, 2016), report and recommendation adopted, 2017 WL 5643140 (C.D. Cal. Jan. 30, 2017).

Multiple portions of Quest's affidavits rely on documents that were not attached nor disclosed to Plaintiffs during discovery. For example, Ms. Reilly states

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

1   she has "checked recent training records" to substantiate her response yet does not

2   attach those purported records – and Quest has **never** produced training records of any

3   kind, despite their 42,000-page document production. Quest's Ex. 3 ¶ 9. This is a clear

4   violation of Rule 56.  *See Medina v. Multaler, Inc*., CV0600107MMMAJWX, 2007

5   WL 5124009, at *8 (C.D. Cal. Feb. 7, 2007) *citing School Dist. No. 1J, Multnomah

6   County, Or. v. ACandS, Inc*., 5 F.3d 1255, 1261 (9th Cir.1993) ("Rule 56(e) requires

7   that documents relied upon in an affidavit presented in a summary judgment motion

8   or opposition thereto be attached to the affidavit")

9        Here, as explained in detail in the Objection to Evidence, Quest's affidavits

10  should be disregarded under Rules 26 and 37 as untimely. In addition, Quest does not

11  meet its burden under Rule 37 to explain how the delay in production of these

12  affidavits and other materials was "substantially justified or harmless." *Deckers

13  Outdoor Corp*., 259 F.3d at 1107. Accordingly, the portions of the affidavits and

14  corresponding documents not timely produced in discovery should be disregarded and

15  cannot be the basis for any "genuine" issue of material fact.

16       **2.**    **Plaintiffs Meet Their Initial Burden To Demonstrate The**

17            **Lack Of Admissible Evidence To Raise A Genuine Issue Of**

18            **Material Fact On Mootness and Offered Affirmative Evidence**

19            **To Defeat Mootness**

20           **a.**    ***Plaintiffs' opening brief highlights Quest's lack of***

21                ***admissible evidence to demonstrate mootness***

22       As Plaintiffs' opening brief made clear, there is an absence of admissible record

23  evidence which would allow Quest to ultimately prove its mootness defense.  Opening

24  Brief at 9, 20-22 (explaining the absence of relevant, admissible evidence on

25  mootness). This distinguishes the instant dispute from every other case Quest cites in

26  its Opposition to support its mootness defense. (Opening Brief, Dkt. 206 at 17-19

27  (distinguishing *Kerr v. Heather Gardens Association*, No. 09-cv-00409-MSK-MJW,

28

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

2010 WL 3791484, at *2 (D. Colo. Sept. 22, 2010), *Poway v. Unified Sch. Dists. v. K.C. ex rel. Cheng*, No. 10CV897-GPC (DHB), 2014 WL 129086 at *7 (S.D. Cal. Jan. 14, 2014) and *Nix v. Advanced Urology Institute of Georgia, P.C.*, No. 1:18-cv-04656-SDG, 2020 WL 7352559, at *4-5 (N.D. Ga. Dec. 14, 2020)). Accordingly, Plaintiffs have met their initial burden on Quest's mootness case. *See Friends of the Earth, Inc.,* 528 U.S. at 170.

> **b.** ***Plaintiffs also presented affirmative evidence to defeat mootness***

Having met their initial burden on this Motion by pointing out the absence of admissible evidence that might allow Quest to meet its hefty burden, Plaintiffs also identify affirmative – *admissible* – evidence which makes clear that Quest cannot prevail in its mootness case. This admissible, affirmative evidence is drawn from multiple sources, including, *inter alia*:

- Mark Derry's field investigation of 24 Quest PSC locations, as well as his observations concerning Quest's multi-step, post-TFS kiosk-based communication system. Ex. 24 at PA0294-PA0311 [Derry dec.].

- The sworn deposition testimony of multiple Quest witnesses, including Magana, Reilly, Walsh, Yarrison, and Carr. UF 30, 68.

- The sworn deposition testimony of Quest's liability expert Steve Sawczyn. UF 31-35.

- This Court's prior findings. Dkt. 144.

- The sworn deposition testimony of Class Representative Vargas. UF 43-53. Each of these sources supply valuable admissible evidence that serves to fatally undermine Quest's mootness case.

First, the admissible record facts remain undisputed that TFS requires a legally blind patient to successfully traverse a gauntlet of "complex, interactive" steps – each presenting its own potential impediments which prevent legally blind customers from

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

receiving effective communication. (UF 36, 41, 42, 67-77, 81-85, 87, 89-91). In arriving at this "solution," Quest never consulted on the specifics of the kiosk-based fix with ACB or any other reputable national disability rights group. The focus groups Quest touts as having purportedly collaborated with on the TFS "enhancement" were never presented with an actual Quest kiosk to evaluate, according to the sworn deposition testimony of a senior Quest executive. Carr 342:8-22. While Quest disparages the Derry investigation as lacking statistical significance (which is entirely irrelevant to the purpose for which it is offered) (Opposition at 18-21), it never explains why it failed to conduct its own fact investigation to counter Derry's factual findings - nor how its executives can claim in sworn deposition testimony, without any foundational basis, that TFS has been implemented effectively throughout the 2,100 store PSC network *when they never visited the locations or conducted their own fact investigation*. Accordingly, Quest does not plausibly controvert Derry's findings of repeated failures in the multi-step TFS communication system. Indeed, Derry's findings stand unrebutted in the *admissible* factual record. Derry's findings demonstrate there is no possibility Quest has mooted Plaintiffs' "entire claim," nor that its unlawful behavior is unlikely to recur in the future. The design of the kiosk-based communication system is simply fraught with too many opportunities for communication breakdowns along the "complex, interactive" chain of communication to render effective communication consistently across the PSC network, as Derry's sampling of those communication breakdowns at each and every one of the 24 investigated PSC locations proves. UF 91.

Second, Quest's claim that Derry's investigation fails for lack of "statistical significance" is a classic strawman that seeks to distract this Court from its importance to this Motion. Opposition at 19. To be clear, Plaintiffs do not claim that Derry's report, on its own, proves class-wide liability to a level of statistical significance – nor do they need to show that it does. Rather, Derry's findings are offered to: (1)

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

demonstrate Quest's purported solution, TFS, is flawed in its very design because it requires a precarious, multi-step series of communications to be successfully traversed before a blind person finally receives the effective communication to which he or she is legally entitled, and (2) to demonstrate that Quest's self-serving statements about TFS's performance in support of its claim of mootness are plainly false.

For Quest to succeed on mootness, the Court must accept, in light of Derry's findings to the contrary and no admissible evidence to refute these findings, that Quest managed to make TFS work in every one of the remaining 2,000-plus PSCs in its national network (except the 24 locations Derry happened to visit.) *See Friends of the Earth*, 528 U.S. at 189 ("a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."). It must also accept that despite Quest's decision to add additional inaccessible features to the kiosk after this lawsuit was filed (and continuing right up to the present day), it can establish that its unlawful conduct is unlikely to recur in the future.  *See infra* at Section III(B)(2)(b). Plaintiffs submit these are exactly the propositions this Court would need to accept in order to deny this Motion, for the *admissible* record evidence demonstrates Quest fails to meet its high burden to identify *any* admissible evidence that might allow it to prove mootness –for the simple reason that there is no evidence in the record that might allow Quest to make either required showing.

Specifically, while Quest has repeatedly claimed under oath (without any actual proof) that the Company implemented TFS across its PSC network (*see* UF 30), the admissible record facts are undisputed that Quest has not effectively rolled out TFS across its network of over 2,100 PSCs. (*Id.*) Derry investigated 24 Quest PSC locations near to the homes of ACB members deposed in this action and observed that at each location TFS is riddled with glaring deficiencies. (UF 36.) In the face of this

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

16

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

affirmative factual showing by Plaintiffs, Quest offers only its sham and/or belated affidavits. Should the Court strike or disregard those sham affidavits, as Plaintiffs submit it should, Quest cannot establish that Plaintiffs' claims have been mooted. (UF 39.)[5]

In addition, none of Quest's affidavits or other materials address any of the critically important questions raised by the Derry investigation, including, *inter alia*: were there any PSC locations where TFS was not offered at all? Are all Quest kiosks outfitted with TFS functionality? How does Quest know that the swipes were performed by legally blind customers versus sighted Quest customers, or by people who were assisting legally blind customers? Has Quest taken steps to alert legally blind customers to the presence of the kiosk? Has Quest taken steps to ensure the audio loop that Derry found was not functioning at 14 of 24 investigated locations is now functioning there and at the rest of Quest's 2,100 locations? Has Quest taken steps to ensure that the volume is loud enough to be heard at the remaining 10 locations where the audio loop was featured (and at the rest of Quest's PSC network)? Has Quest taken steps to ensure that the content loop plays more frequently than the 30-minute interval Derry found at many locations?[6]  Has Quest taken steps to direct legally blind patients to the location of the kiosks within the PSCs, another shortcoming Derry identified? Is the "self-check for covid" function now made

---

[5] If the Court elects to credit Defendant's improper materials in denying this Motion, Plaintiffs respectfully request that the Court identify the legal basis for allowing such materials to be considered. *See Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011) (reviewing the district court's exclusion of evidence in a summary judgment motion for abuse of discretion) *citing Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

[6] The certified national Class again asks this Court to consider how many sighted patients would wait for 30 minutes before being directed how to even ***begin*** the check in process. UF 76.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

1   available to legally blind Quest customers all across the PSC network? Has Quest
2   taken steps to ensure all legally blind patients are informed that they have successfully
3   performed the TFS gesture and entered the queue, as Derry found was not the case at
4   many locations? Has Quest increased the volume of Quest TV at every PSC such that
5   all legally blind customers are aware of the kiosks' presence? Has Quest de-activated
6   the button which allows phlebotomists to turn off the chime that informs them a
7   patient has entered the waiting room? Is the "wait outside during covid" function now
8   offered to legally blind customers? Do legally blind customers now have the ability
9   to scan their insurance and ID cards?

10      Moreover, even if TFS worked perfectly throughout the PSC network (which
11  the evidence shows it does not), TFS does not address Plaintiffs' training claims.
12  Indeed, Quest has not presented any *admissible* evidence that it has mooted the
13  training claim, nor could it. UF 55-57, 61. The lack of any admissible evidence as to
14  these (and many other) still-unanswered questions forecloses any potential finding of
15  mootness.

16      Quest attempts to escape review of its decision to introduce new inaccessible
17  features to its kiosk since this lawsuit was filed by analogizing its kiosk-based
18  communication system to inapt architectural barrier cases such as *Doran v. 7-Eleven,*
19  *Inc*. and *Chapman v. Pier-One*, wherein courts found that new architectural barriers
20  for which defendants did not have prior notice cannot be part of plaintiffs' case
21  because of due process concerns. *See Doran v. 7-Eleven, Inc*., 524 F.3d 1034 (9th Cir.
22  2008); *Chapman v. Pier 1 Imports (U.S.) Inc*., 631 F.3d 939 (9th Cir. 2011); *see also*
23  Opposition at 16-18.[7] This is entirely beside the point. To be clear, this Motion does

---

[7] Accordingly, the decision to roll out new inaccessible features to the communication
system is relevant to the mootness analysis because it demonstrates beyond dispute
that Quest has not experienced any genuine change of heart which might aid its
mootness case.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

not rise or fall on a determination of whether the inaccessible features rolled out after the Class Period are considered part of Plaintiffs' case in chief. Rather, the introduction of new inaccessible features after the Class Period is highlighted because it is relevant to Quest's state of mind – particularly with regard to the showing it must make regarding whether its conduct is likely to recur in the future. *See Franco-Gonzales*, 2010 WL 11643590, at *4 (J. Gee); *see infra* at Section III(B)(2)(b) (addressing the lack of any genuine change of heart by Quest).[8]

In fact, Quest's actions since the introduction of TFS confirm it has not experienced any "genuine change of heart" – a showing that is necessary to the success of its affirmative mootness defense. *Sengupta v. City of Monrovia*, 2010 WL 11515299 (C.D. Cal. July 28, 2010). Specifically, Quest has continued to add additional features to the kiosks—wait by text, COVID symptom checker, insurance card scanning—yet has made no effort to make the features accessible to the legally blind. (UF 101-104.)[9] Had Quest experienced a "genuine change of heart," then it

---

[8] *Paulick v. Starwood Hotels & Resorts Worldwide, Inc.*, 2012 WL 2990760 (N.D. Cal. July 20, 2012), has no application here. First, *Paulick* is a barrier case, not an effective communication case. The barriers identified in the complaint there had been fixed. Plaintiff then identified entirely new barriers for which the defendant argued they did not have Rule 8 notice. The instant dispute is an effective communication case focused on a kiosk-based system that is designed to change features in real-time; it is fundamentally different from a straightforward barrier removal case. This is not a case of Plaintiffs originally taking issue with an inaccessible kiosk system, only to switch legal theories later to point to some other, as-yet-unidentified architectural barrier in Quest's PSCs. It remains about an inaccessible kiosk-based communication system. Further, Quest continues to advance its mootness argument here, the success of which turns, in part, on Quest demonstrating that is has met its legal obligation to provide effective communication via the kiosk to certified Class members. Evidence that Quest is failing in that regard (which it is) through the introduction of a plethora of new inaccessible communication features is therefore plainly relevant to the mootness defense on the question of "change of heart." *Sengupta*, 2010 WL 11515299, at *6.

[9] Quest's claim these features are "available online" is demonstrably false. Plaintiffs

19

certainly would have at least attempted to make these new features accessible. If there was a "genuine change of heart," then it would be reasonable to expect – more than three years into this litigation – that Quest would have implemented a functioning TFS system that provides consistent access for its legally blind customers to each kiosk's features at all its PSCs. If Quest had experienced a "genuine change of heart," then it would not have – nine months after the close of discovery – sought to improperly supplement the record with purportedly "newly remembered" information by company employees who: (1) never sought to correct their sworn deposition testimony through errata sheets during the 30-day period as required by the Federal Rules of Civil Procedure (Fed. R. Civ. P. 30(e)(2)); (2) agreed under oath they would seek clarification of any question they did not understand; and yet (3) claimed to not remember or not recall – hundreds of times - when questioned under oath about the very topics they now suddenly seek to offer testimony. *See* Miller Dec. at ¶¶ 5, 7, 9, 11, 16.  The unfortunate takeaway for certified Class members is Quest does not much care about their access to its services, probably because they do not comprise a large enough customer bloc to impact its bottom line. *See* Quest Ex. 1, Dec. of Carr ¶ 20; Ex. 4, Dec. of Yarrison ¶ 16. Accordingly, Quest cannot demonstrate any "genuine change of heart." *Sengupta*, 2010 WL 11515299, at *6 (rejecting mootness defense because evidence did not show a "genuine change of heart" by defendant).

   **c.   *Quest cannot identify any admissible evidence which might create a genuine issue of material fact on mootness***

To establish mootness in the face of: (1) Plaintiffs' affirmative evidence establishing TFS's shortcomings, and (2) Plaintiffs' showing of a lack of any admissible evidence which might create triable issues on the mootness defense, Quest

---

visited the Quest website on July 19, 2022, and the "wait outside" feature was not available. *See* Miller Dec. at ¶ 2

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

as the nonmoving party "must…make a ***sufficient showing*** to establish the existence of all elements essential to its defense." *Willemsen*, 2014 WL 12465445, at *5 (citation omitted) (emphasis added). The undisputed admissible record establishes that Quest cannot possibly carry its "heavy burden" to establish mootness across its network of PSCs because it cannot point to any admissible facts which might allow it to make this required showing. *Chafin v. Chafin*, 568 U.S. 165, 133 S.Ct. 1017, 1023 (2013); *see also Friends of the Earth, Inc.,* 528 U.S. at 170.[10]

Indeed, the communication barriers presented at each and every step of the TFS communication gauntlet, as explained in Plaintiffs' Opening Brief at 22-28, highlights the ill-considered design of Quest's selected "fix." (UF 36, 41, 42, 67-77, 81-85, 87, 89-91). These facts stand unrebutted in the admissible factual record despite Quest's clear burden to identify admissible evidence that can possibly allow the trier of fact to find in its favor ultimately. Opening Brief at 22-28 (setting forth failures at each step of TFS process).[11]

_____

[10] *Sengupta v. City of Monrovia*, 2010 WL 11515299 (C.D. Cal. July 28, 2010), while enunciating the change of heart requirement, does not assist Quest on either the questions of liability or mootness. That case involved a ***disputed fact*** of whether the City provided effective communication where it was disputed whether an interpreter was necessary, and thus whether the City had provided an appropriate aid or auxiliary service. The City argued it did effectively communicate, putting forward admissible evidence on the question of liability; Plaintiff argued it did not, also putting forward admissible evidence on the question of liability. *Id.* at *6. Here, the Court has already found that during the Class Period, Quest's "plan" was to keep phlebotomists in the back and unavailable to assist with check-in. Dkt. 144. Moreover, Quest does not dispute the kiosk was inaccessible to legally blind patients during the Class Period and, accordingly, that it failed to provide effective communication to certified Class members during the Class Period.

[11] *Juech v. Children's Hospital & Health Sys., Inc.,* 353 F.Supp.3d 772 (E.D. Wis. 2018), has no application to the fact it is cited for. Quest argues *Juech* precludes Plaintiff Vargas from relying on ACB members' experience as an example of what absent class members experienced. (Dkt. 236, 13:18-22.) But *Juech* was not a class action suit and does not speak to reliance on associational members to demonstrate

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Now, nine months after discovery closed in this matter, the materials Quest seeks to introduce[12] in support of its mootness defense are not only woefully untimely– they are wholly unpersuasive. First, the improper affidavits and other materials purportedly demonstrating TFS has been used 62,000 times at 2,168 kiosks in a recent six-month period were produced nine months after the close of discovery and must be disregarded as untimely. Second, the "data" does nothing at all to establish TFS is working effectively throughout the PSC network – and instead, highlights that Quest has wholly failed to identify *any* admissible evidence which might sufficiently answer *any* of the important questions the Derry investigation raised about TFS – much less "entirely" moot Plaintiffs' claim, as it must do. *Chafin,* 133 S.Ct. at 1023. Third, the deposition testimony of Taylor Carr is pure speculation and/or opinion which lacks foundation because Carr has no firsthand knowledge of how TFS is *actually functioning* in the PSCs – in contrast to Mr. Derry who personally visited 24 of Quest's PSCs and made findings that directly refute Carr's uninformed opinions as expressed in his speculative deposition testimony.  See Dec. of Mr. Miller

---

absent class members' experiences. Moreover, *Juech* analyzed whether the type of auxiliary aid or service was appropriate, a very different factual context than that of the instant dispute, where it is not in dispute that there was a complete absence of aids or auxiliary services during the Class Period.

[12] In further violation of the rules, Quest "anticipates timely identifying one or more trial witnesses who will directly address and rebut Derry's observations." Opposition at 19, fn. 13. Quest never explains why it has not identified these purported witnesses to date or how their disclosure now could possibly be "timely." Quest's discovery conduct in this Action has already been sanctioned once (Dkt. 101 (sanctioning Quest for filing meritless motion)) and its ongoing campaign to extend discovery indefinitely amounts to still more sanctionable misconduct. *Merch. v. Corizon Health, Inc.,* 993 F.3d 733, 736 (9th Cir. 2021) (affirming district court sanction under Rule 37 for repeated disclosure rule violations and stating that "[t]his case demonstrates that flouting generally applicable procedural rules—the rules of the game that all parties are entitled to rely upon and expect courts to enforce—has consequences.").

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

¶ 7.[13]

Furthermore, Quest's purported liability expert, Steven Sawczyn, cannot offer any firsthand testimony which might help Quest generate a genuine issue on mootness. In fact, a review of Sawczyn's testimony demonstrates that it is entitled to no weight at all. Sawczyn, Quest's effective communication expert, is a legally blind individual who visited a Quest PSC and was, by his own sworn admission, *unable to access the features of the kiosk*. Ex. 22 at PA0274:14-PA0276:3 [Sawczyn Dep.]. As such, Quest's liability expert is also, ironically, a member of the certified Class. He testified he does not know if TFS would be considered effective communication. Sawczyn Dep. at 29:13-19 ("It is my opinion that the three-finger swipe enables a person who is blind to independently check in. I'm not so sure on what is and would not necessarily be effective communication.") (emphasis added).

Moreover, despite being given an exact time to visit a hand-picked PSC, and it being closed to the public so as not to "disrupt regular business," no Quest employee was there to meet Mr. Sawczyn. Ex. 22 at PA0270:23-PA0272:25 [Sawczyn Dep.]. He spent thirty minutes trying to access the PSC but ultimately gave up. Ex. 22 at PA0268:4-PA0270:20 [Sawczyn Dep.]. When he was finally able to access the PSC, *he testified that he was only able to navigate the kiosk through a third-party*

---

[13]Quest previously claimed both (1) that it did not retain its patients' visual impairment data and (2) that use of TFS does not indicate a patient is legally blind. Dkt. 132-1 ("the use of TFS does not verify or even necessarily indicate that the TFS-user was blind.") (QA1368:17-1369:25.). In a 180-degree reversal, Quest now argues its purported swipe data is sufficient not only to establish an individual's legally blind status but also to moot Plaintiffs' entire claim. Quest is estopped from asserting this argument. *Bock v. Washington*, 33 F.4th 1139, 1145 (9th Cir. 2022) *quoting New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (internal quotation marks omitted) ("When 'a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.'").

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

*application, "Seeing AI", which describes what was being presented on the kiosk.* Sawczyn Dep. at 49:3-21. Accordingly, Quest's "expert" – far from advancing its mootness case – is helpful to Plaintiffs' case. In addition, Sawczyn, in discussing the kiosk-based communication system Quest selected, *admitted* "not all functions of the kiosk solution are directly accessible on the device." Dkt. 171-8. Sawczyn did not form an opinion on effective communication throughout Quest's network – nor could he – as he is unaware of whether Quest has produced any evidence that TFS has been rolled out across the PSC network. Ex. 22 at PA0273:3-20 [Sawczyn dep.]. He never conducted a field investigation of multiple Quest PSCs, as Derry did.

Quest is incorrect when it claims Plaintiffs bear the burden to prove TFS is not working across its PSC network; Plaintiffs only bear the *initial* burden to demonstrate there is no admissible record evidence which might allow Quest to meet its "heavy burden" to prove its affirmative mootness defense. *See Friends of the Earth, Inc.,* 528 U.S. at 170. Plaintiffs have plainly done so and, further, also cite affirmative evidence of TFS's systemic failures – evidence that stands unrebutted by any admissible evidence in the factual record. Ex. 24 at PA0294-PA0311 [Derry dec.]; UF 36-39; Dkt. 206 at 20-26. Because Quest cannot meet its burden to identify admissible record evidence which might allow it to moot Plaintiffs' "entire claim" such that it is impossible for the Court to grant Plaintiffs any relief, *Chafin,* 133 S.Ct. at 1023, summary judgment for Plaintiffs must be granted.

### 3. This Court's prior rulings refute Quest's claim of lack of common injury

Quest's claim that Plaintiffs fail to establish common injury (Dkt. 236 at 12-15) is contradicted by this Court's prior holdings and the admissible factual record. Specifically, the Court has already found Quest decided at a corporate level to deploy the kiosks to the entire PSC network (SUF 4), the kiosks were identical, and they were inaccessible (*See* Dkt. 190 at 13.) ("[T]he record here is uncontroverted that Quest's

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

kiosks were identical—and similarly inaccessible—across Quest's network of patient service centers.").[14] In response to Quest's most recent attempt to re-argue class certification and commonality, this Court stated:

> Well, let me just interrupt you for a moment, Mr. Raizman. I think that a policy can both, be a stated policy and a de facto policy. And so if there is no particular written policy that says you have to use the Kiosk, it can still be a de facto policy if someone walks into a waiting room at Quest and the only thing that is available for check-in is the kiosk.

June 16, 2022, Hearing Tr. at 6: 9-15.[15] In addition, Quest's own (albeit improper) materials concede that other important aspects of this litigation will be tried by common proof. (*See* Dkt. 236 ¶¶ 2, 6, 7, 8, 24; *see also* Plaintiffs' RJN at ¶ 2 ("Aila Case Study") ("The solution also needed to be scalable as new features were developed and seamlessly deployed across their locations.") For these reasons, Quest's argument that Plaintiffs have failed to establish a class-wide injury must be rejected yet again.

### 4.   Quest's improper attempt to create a triable issue on undue burden must be rejected

_____

[14] *Kirola v. City & Cty. Of San Francisco,* 860 F.3d 1164 (9th Cir. 2017) is, as this Court has already held, distinguishable as it is a Title II case and not a Title III case. (Dkt. 144, at fn.9.) Moreover, it is cited, like *Juech*, for the proposition that Plaintiff Vargas cannot rely on ACB members to establish absent class members' experiences. But *Kirola* analyzed whether there were consistent failings on a systemwide level. Quest does not dispute that the same kiosk was implemented in every PSC. *Kirola* does not help this effort, as it was not concerned with the evidence necessary to meet summary judgment against a mootness defense.

[15] Quest's repeated reference to the slightly-different experiences (Opposition at 9-11, 24-25) of ACB members glosses over the key fact relevant to this Motion: that it is undisputed that nine ACB members were not able to access the kiosk, that they waited for extended periods of time to be assisted and that they felt a loss of dignity and privacy in having to check in with the phlebotomist instead of the service Quest offers to its sighted customers, and that ***not one ACB member was able to access the kiosk*** without assistance from a third party, in many cases a total stranger. (UF 25, UF 26). Rather than defeat Plaintiffs' Motion, these ACB member experiences support it.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

Quest's Opposition seeks to manufacture a genuine issue on its undue burden affirmative defense despite the lack of any admissible record evidence which might lead a trier of fact to conclude it has met its burden. Opposition at 22-24. As previously stated, Plaintiffs carry their initial burden to identify admissible affirmative record evidence which demonstrates that providing an accessible kiosk would not pose any undue burden to Quest. *See* Opening Brief at 29-30 (setting forth lack of any evidence that rolling out accessible kiosks would pose any burden to Quest). Quest – mindful both of its "hefty" burden and that the admissible factual record is devoid of evidence upon which it might prove its undue burden defense – relies, again, upon improper affidavits produced more than nine months after the close of discovery – affidavits that are plainly at odds with those witnesses' sworn deposition testimony, as explained in Plaintiffs' Objections to Evidence.

As with its mootness defense, Quest is not permitted to improperly supplement the record in an effort to manufacture a genuine issue on undue burden by introducing affidavits which contradict the witnesses' prior sworn statements, particularly where, as here, each witness (1) failed to correct their testimony within 30 days on an errata sheet as required by the Federal Rules; and (2) unequivocally testified that he or she understood the questions they were being asked and would seek clarification of them if they did not (which no witness ever did). *Deckers Outdoor Corp.*, 259 F.3d at 1107. Quest's claim that this sworn witness testimony must be disregarded because it "relates to Quest's analysis at the time of the initial kiosk rollout" must also be rejected. None of Quest's witnesses sought to make the distinction between the burden posed to Quest at the time of kiosk rollout versus the burden such a rollout poses today. UF 105-106. In fact, Quest's witnesses were quite clear that rolling out an accessible kiosk would not pose any burden – no matter when that rollout took place.[16]

---

[16] Quest offers no response whatsoever to the fact that Quest's kiosk supplier—Lilitab—provided Quest with many options to make the kiosk accessible, and Quest

26

*Id*. Accordingly, this is a meaningless distinction Quest created solely for purposes of its litigation position which must be disregarded. Dkt. 236 at 22-24.[17]

Moreover, Quest's claim that accessible kiosks would pose an undue burden is undermined by the fact the Company has elected not to disclose this litigation as "material" in any of its filings with the SEC since this lawsuit was filed in September 2019. *See* Plaintiffs' RJN at ¶ 3. Quest cannot claim on one hand that this litigation and its consequences are "immaterial" to the company, and on the other, argue an injunction would pose an undue burden to it. Dkt. 236 at 22-24. Quest cannot manufacture a genuine issue on undue burden.

Finally, the Access Board's recent announcement that it and the DOJ will be proposing design standards for self-service kiosks does not offer Quest any viable defense on undue burden grounds. When the Access Board's proposed rules are made public next month, they will confirm what Plaintiffs have been saying from the outset: that Quest's kiosk-based communication system – both during the Class Period and since the introduction of TFS – failed (and currently fails) to provide the minimum accessibility features necessary to provide effective communication to legally blind

_____

ignored these proposals. (UF 93–96.) Or to the admissible record fact that Quest has undertaken the administrative burden of rolling out multiple new services on the kiosks yet has not even attempted to make one of those services accessible to blind customers. (Dkt. 144 at 4:3-4.) Nor does Quest have any response to the detailed facts provided by Plaintiffs' liability expert, Dr. Montgomery, who testified in detail that providing accessible kiosks would be inexpensive. *See* Dkt. 206, Opening Brief at 29, fn. 10.

[17] Quest's argument that Plaintiff Vargas's Unruh Act claim must fail because the phlebotomist who serviced him, Ms. Magana, now for the first time – a year after her deposition was taken – claims Mr. Vargas never complained about his experience should not be credited. Dkt. 236 at 24-25. There is no admissible record evidence to support the lawyer-generated argument that Mr. Vargas failed to complain. Even if Mr. Vargas had not complained (he did complain), this would not be fatal to his individual Unruh Act claim.

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

customers. And while these proposed rules will not immediately have the force of law (*see The Rulemaking Process*, at https://www.federalregister.gov/uploads/2011/01/the_rulemaking_process.pdf) (accessed on July 19, 2022)), at a minimum they will provide this Court with a helpful guidepost as it approaches the question of what injunctive relief is appropriate in this action and bring an end to any suggestion by Quest that its TFS function – even if functioning effectively on every kiosk in every Quest PSC (which it indisputably is not at present) – could possibly moot Plaintiffs' "entire" claim. *See Langer v. Kaimana LLC*, CV167452DMGAFMX, 2016 WL 7029151, at *2 (C.D. Cal. Dec. 1, 2016) (J. Gee) (finding that "Defendants have not satisfied their "formidable burden" of showing that the ADA violations at issue are not likely to recur again.")[18]

## IV.   CONCLUSION

For all the foregoing reasons, and as further set forth in the moving papers, Plaintiffs respectfully request the Court grant their motion for summary judgment in its entirety.

Dated: July 22, 2022                    Respectfully submitted,

By: *s/ Jonathan D. Miller*

Jonathan D. Miller (SBN 220848)
jonathan@nshmlaw.com
Alison M. Bernal (SBN 264629)
alison@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345

---

[18] Quest's suggestion (Dkt. 236 at 23) that the impending proposed rules assist Quest in meeting its burden on undue burden on this Motion is not supported by any persuasive or binding authority and must be rejected.

28

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Benjamin J. Sweet
(Admitted *Pro Hac Vice*)
ben@nshmlaw.com
NYE, STIRLING, HALE
& MILLER, LLP
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Telephone: (412) 857-5350

Matthew K. Handley
(Admitted *Pro Hac Vice*)
mhandley@hfajustice.com
HANDLEY FARAH &
ANDERSON PLLC
777 6th Street NW
Washington, DC 20001
Telephone: (202) 559-2411

*Attorneys for Plaintiffs Julian Vargas,
American Council of the Blind, and the
Certified Class*

NYE, STIRLING, HALE & MILLER
33 WEST MISSION STREET, SUITE 201
SANTA BARBARA, CALIFORNIA 93101

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT