UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN VARGAS and AMERICAN COUNCIL OF THE BLIND, individually on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTICS INCORPORATED; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: CV 19-8108-DMG (MRWx)<br><br>**FINAL PRETRIAL CONFERENCE ORDER** |

Following pretrial proceedings, pursuant to Fed. R. Civ. P. 16 and L. R. 16, IT IS ORDERED:

1. **PARTIES**

The parties are: Julian Vargas and American Council of the Blind ("ACB") and the certified nationwide class [Doc. ## 190, 228] ("Certified Class" and collectively, "Plaintiffs") and Quest Diagnostics Clinical Laboratories, Inc., Quest Diagnostics Holdings, Inc., and Quest Diagnostics Incorporated (collectively, "Defendants" or "Quest").

The Certified Class is defined as follows:

> All legally blind individuals who visited a Quest patient service center in the United States between January 1, 2018 through December 31, 2019 (the "Class Period") at which the e-check-in self-service kiosk was the primary method for check-in and who, due to their disability, could not use all the functions of the kiosks.

Each of these parties has appeared, and each Defendant has been served. All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issues are Plaintiffs' First Amended Complaint dated May 15, 2020 [Doc. # 41], and Defendants' Answer to Plaintiffs' First Amended Complaint dated June 5, 2020 [Doc. # 47].

**2.  JURISDICTION AND VENUE**

Federal jurisdiction and venue are invoked upon these grounds: Plaintiffs assert that Defendants violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Plaintiff Julian Vargas also asserts individual claims for violation of California's Unruh Civil Rights Act and Disabled Persons Act. A substantial part of Defendants' acts or omissions took place in this District, and Defendants do substantial business in this District. Subject matter jurisdiction is appropriate under 28 U.S.C. sections 1331 and 1367, and venue is proper under 28 U.S.C. section 1391. Defendants contend that this Court lacks subject matter jurisdiction over the ADA claim because: (a) that claim is moot and (b) because Plaintiffs and the members of the Certified Class lack standing as a result of both (i) a lack of concrete and particularized injury, and (ii) no imminent threat of future injury. The parties admit that venue is proper in this District.

**3.  TRIAL LENGTH**

The court trial shall conclude within four court days starting on November 1,

1  2022, except that Court will not be in session on November 4, 2022.  Trial hours
2  shall be from 9:30 a.m. to 4:30 p.m.  Each side shall be allotted 30 minutes for their
3  opening statement and six hours to present their case-in-chief (including direct and
4  cross-examination).

5  **4.    NON- JURY TRIAL**

6  The trial is to be a court trial.

7  No later than October 18, 2022, the parties shall lodge and serve by e-mail,
8  fax, or personal delivery the findings of fact and conclusions of law the party
9  expects the Court to make upon proof at the time of trial as required by L.R. 52.  No
10  later than October 25, 2022, the parties shall lodge and serve their mark up of their
11  opponenent's proposed findings of fact and conclusions of law.

12  **5.    ADMITTED FACTS**

13  The following facts are admitted and require no proof:

14  (a)    Relevant to this lawsuit, Quest Diagnostics is in the business of
15  providing diagnostic information services, which includes collecting blood and urine
16  specimens from patients that it then tests in accordance with physician orders.

17  (b)    Quest Diagnostics and its subsidiaries receive the specimens for testing
18  from hospitals and medical practices, but also collect specimens for testing through
19  patient service centers ("PSCs") located throughout the United States.

20  (c)    The portions of the PSCs that are open to the public (and relevant to
21  this lawsuit) are "places of public accommodation" within the meaning of 42 U.S.C.
22  § 12182(a).

23  (d)    In 2015, Quest began to explore ways to modify PSC check-in
24  practices.

25  (e)    In April 2016, Quest chose to install one or more electronic,
26  touchscreen tablets to allow patients to check in at PSCs.  The tablets, which were
27  Apple iPads, when placed in plastic casings (provided by Lilitab) and mounted on
28

posts, were known as "Kiosks."

(f) The first Kiosk that was deployed to the PSCs during the 2016-2019 time period contained no tactile markings and had no text-to-speech output.

(g) On September 18, 2019, Plaintiffs Julian Vargas and Anne West (who later dismissed her claims with prejudice) filed this action.

(h) On May 15, 2020, Plaintiffs filed a First Amended Complaint that added ACB as a named Plaintiff in this action.

(i) Julian Vargas lives in Van Nuys, California.

(j) Julian Vargas is legally blind.

6. **STIPULATED FACTS**

The following facts, though stipulated, shall be without prejudice to any evidentiary objection:

(a) Before the deployment of the Kiosks that are the subject of this lawsuit, patients at PSCs would indicate their arrival, or check in, by entering their names on a paper sign-in sheet maintained in the waiting room.

(b) Neither Mr. Vargas nor ACB is aware of any complaint under the ADA or analogous laws about the inaccessibility of this sign-in sheet process.

(c) In December 2018, ACB's Executive Director, Eric Bridges, sent letters about the Kiosks' accessibility to Quest Diagnostics on behalf of unidentified members of ACB. One letter has been marked as Exhibit 110 in this action.

(d) Quest responded to the letters from Mr. Bridges on January 2, 2019, and its then-Director of National Patient Services, Chris Grant, and an in-house Quest lawyer had two telephone discussions with ACB (January 25, and April 12, 2019) and exchanged multiple emails.

(e) By July 2019, ACB had retained counsel Matthew Handley, who continued to correspond with Quest's representatives.

(f) Quest considered several possible alternatives to modifying its check-in

practices at the PSCs before deciding to deploy the Kiosks.

## 7. CLAIMS AND DEFENSES

**Plaintiffs:**

    (a) **Plaintiffs plan to pursue the following claims against Defendants:**

        Claim 1: Defendants' use of the Kiosks during the Class Period violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, as to Plaintiffs Julian Vargas, ACB, and the Certified Class.

        Claim 2: Defendants violated California's Unruh Act, Cal. Civ. Code §§ 51, 52, as to Plaintiff Julian Vargas through their violation of the ADA as described in Claim 1.

    (b) **The elements required to establish Plaintiffs' claims are:**

        Claim 1: Americans With Disabilities Act

        (1) Plaintiffs are disabled within the meaning of the ADA;

        (2) Defendants are a private entity that owns, leases, or operates a place of public accommodation; and

        (3) Plaintiffs were denied accommodations during the Class Period by Defendants because of their disabilities.

See *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2011) (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007)).

        Claim 2: Unruh Civil Rights Act

        (1) Defendants denied full and equal accommodations to Vargas;

        (2) Vargas was harmed; and

        (3) Defendants' conduct was a substantial factor in causing Vargas's harm.

See CACI 3060 – Unruh Civil Rights Act – Essential Factual Elements.

    **(c)**     **In brief, the key evidence Plaintiffs rely on for each of their claims is:**

Claim 1: ADA

1. The testimony of Plaintiff Julian Vargas;
2. The testimony of Plaintiff ACB's current and former representatives, Clark Rachfal and Claire Stanley;
3. The testimony of ACB members, including Ralph Black, Regina Brink, Margie Donovan, Donna Grahmann, Chris Gray, Nona Haroyan, Mary Haroyan, Kathy Lyons, and Nicholas McNeill;
4. The testimony of Defendants' 30(b)(6) witnesses and individuals, including Christopher Grant, Taylor Carr, Max Ocampo, Jody Reilly, Tom Walsh, Marc Yarrison, and Prudencia Magana;
5. The testimony of Lilitab 30(b)(6) witness Adam Aronson;
6. The testimony of Plaintiffs' expert Rachael Montgomery;
7. Documents produced by Defendants, including Joint Trial Exhibits 1-28, 30-40, 52-58, 83-96, 112-140, and 151;
8. Documents produced by Plaintiffs, including Joint Trial Exhibits 51, 59, 62-71, 104-105, 107-111, and 141-145, 148-150, 200-210; and
9. Documents produced by Lilitab, including Joint Trial Exhibits 72-82, and 146-147.

Claim 2: Unruh Act

Because a violation of the ADA as to Vargas also constitutes a violation of California's Unruh Civil Rights Act as to Vargas, the evidence offered in support of Vargas's Unruh Act claim will be the same as that offered in support of Plaintiffs' ADA claim.

**Defendants:**

    **(a)**     **Defendants plan to pursue the following affirmative defenses:**

Affirmative Defense 1: Mootness

Defendants' implementation of the Three Finger Swipe ("TFS") has rendered Plaintiffs' ADA claim moot.

Affirmative Defense 2:  Equivalent Facilitation

The TFS is an equivalent service that permits Plaintiffs to access and use Defendants' services.

Affirmative Defense 3:  Fundamental Alteration

Making the modifications Plaintiffs request would result in a fundamental alteration of Defendants' services.

Affirmative Defense 4:  Undue Administrative Burden

Making the modifications Plaintiffs request would impose an undue administrative burden on Defendants.

Affirmative Defense 5:  *De Minimis* Violation

The short amounts of time that Plaintiffs had to wait for assistance are *de minimis* and do not constitute a denial of access.

Affirmative Defense 6:  Failure to Mitigate (Damages)

Vargas failed to mitigate his damages by failing to use TFS when he knew how to use it.

Affirmative Defense 7:  Third Party (by defendants Quest Diagnostics Holdings, Inc. ("QDH") and Quest Diagnostics Clinical Laboratories, Inc. ("QDCL") only)

QDCL owns or operates only a subset of PSCs, and QDH is a holding company that does not own or operate any PSCs.

**(b)** **The elements required to establish Defendants' affirmative defenses are:**

Affirmative Defense 1:  Mootness

(1) The barriers alleged by Plaintiffs have been remediated and no present live controversy remains.

*Oliver v. Ralph's Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011).

Affirmative Defense 2:  Equivalent Facilitation

7

  (1) Defendants provide a design, product, or technology as an alternative to one prescribed in the 2010 ADA Standards for Accessible Design; and

  (2) the alternative design, product, or technology results in substantially equivalent or greater accessibility and usability.

2010 ADA Standards for Accessible Design § 103.

  <u>Affirmative Defense 3:</u> Fundamental Alteration

  (1) Making the modifications requested by Plaintiffs would fundamentally alter the nature of Defendants' goods, services, facilities, privileges, advantages or accommodations.

42 U.S.C. § 12182(b)(2)(A)(ii)).

  <u>Affirmative Defense 4:</u> Undue Burden

  (1) Provision of the auxiliary aids and services necessary to provide access for Plaintiffs would result in an undue administrative burden, requiring significant difficulty.

42 U.S.C. § 12182(b)(2)(A)(iii), 28 C.F.R. § 36.104.

  <u>Affirmative Defense 5:</u> *De Minimis* Violation

  (1) The delays caused by Defendants' use of the Kiosks do not constitute a denial of access to accommodation.

*Anderson v. Ross Stores, Inc.*, 2000 WL 1585269 *10 (N.D. Cal. October 10, 2000) (45 to 60 minute delay in providing an accommodation at retail store did not constitute a denial of access to accommodation); *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839-840 (9th Cir. 2007) ("The ancient maxims of *de minimis non curat lex* and *lex non curat de minimi*s teach that the law cares not about trifles. This principle frequently has been followed by the Supreme Court. The mere delay during correction of the problem with the shower is too trifling of an injury to support constitutional standing.").

  <u>Affirmative Defense 6:</u> Failure to Mitigate (Damages)

(1) Vargas could have avoided his claimed damages by reasonable effort or expenditures.

Judicial Council of California Civil Jury Instructions (CACI) 3930; Cal. Civ. Code § 55.56(h).

Affirmative Defense 7:  Third Party

(1) QDH does not own, operate, lease, or lease to, any of the PSCs; and/or

(2) QDCL does not own, operate, lease, or lease to, some of the PSCs at issue in this action.

42 U.S.C. § 12182(a).

**(c)  In brief, the evidence that Defendants rely on for each affirmative defense is as follows:**

Affirmative Defense 1:  Mootness

1. Testimony of Taylor Carr, Marc Yarrison, and Jody Reilly;

2. Quest TV Audio Message (Ex. 183);

3. Testimony of Julian Vargas;

4. Testimony of ACB Member who has used TFS;

5. Spreadsheet (Ex. 177) showing usage of TFS at each PSC; Defendant Quest Diagnostics, Incorporated's Objections and Supplemental Responses to Plaintiff Julian Vargas's Amended Rule 30(b)(6) Deposition Notice dated May 21, 2021, Responses Nos. 27 and 38;

6. "Managing Every Patients' Needs" Training Documents regarding facilitating and assisting patients' use of TFS, including Ex. 47; and

7. Testimony of Dr. Rachael Bradley Montgomery and Steve Sawczyn.

Affirmative Defense 2:  Equivalent Facilitation

1. Testimony of Taylor Carr, Marc Yarrison, and Jody Reilly;

2. Quest TV Audio Message (Ex. 183);

3. Testimony of Julian Vargas;

4. Testimony of ACB Member who has used Three Finger Swipe;

5. Spreadsheet (Ex. 177) showing usage of TFS at each PSC;

6. Training Documents regarding facilitating and assisting patients' use of Three Finger Swipe, including Ex. 47; and

7. Testimony of Dr. Rachael Bradley Montgomery and Steve Sawczyn.

<u>Affirmative Defense 3:</u>  Fundamental Alteration

1. Testimony of Taylor Carr, Marc Yarrison, Jody Reilly, Tom Walsh, and Chris Grant;

2. Quest TV Audio Message (Ex. 183);

3. Quest Training Documents, policies and procedures; and

4. Testimony of Dr. Rachael Bradley Montgomery and Steve Sawczyn.

<u>Affirmative Defense 4:</u>  Undue Burden

1. Testimony of Taylor Carr, Marc Yarrison, Jody Reilly, Tom Walsh, and Chris Grant;

2. Quest TV Audio Message (Ex. 183);

3. Quest Training Documents, policies and procedures;

4. Testimony of Dr. Rachael Bradley Montgomery and Steve Sawczyn; and

5. Access Board announcements (Exs. 296-297) regarding regulation in the area of "self-service transaction machines."

<u>Affirmative Defense 5:</u>  *De Minimis* Violation

1. Testimony of Taylor Carr, Marc Yarrison, Jody Reilly, Tom Walsh, and Chris Grant;

2. Quest TV Audio Message (Ex. 183);

3. Quest Training Documents, policies and procedures;

4. Testimony of Claire Stanley and Clark Rachfal;

5. Testimony of Dr. Rachael Bradley Montgomery and Steve Sawczyn;

6. Testimony of Mark Derry;

7. Testimony of Julian Vargas and ACB members; and

8. Documentary evidence regarding the experiences of ACB members.

<u>Affirmative Defense 6:</u>  Failure to Mitigate (Damages)

(1) Testimony of Prudencia Magana; and

(2) Testimony of Julian Vargas.

<u>Affirmative Defense 7</u>:  Third Party

The collective evidence will show that QDH is a holding company, merely holding the stock or other ownership interests in various entities.  It neither owns, operates, nor leases any of the PSCs.  42 U.S.C. § 12182(a).

The evidence will also show that QDCL has ownership and/or operational interest in only a subset of the PSCs at issue in this action.  42 U.S.C. § 12182(a).

## 8. ISSUES REMAINING TO BE TRIED

In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried:

1) Whether Plaintiffs were denied the full and equal enjoyment of Defendants' services, facilities, privileges, advantages, or accommodations because of their disabilities during the Class Period;

2) Whether Defendants offered Plaintiffs effective communication within the meaning of the ADA;

3) Whether Defendants have mooted Plaintiffs' claims through the introduction of the TFS;

4) Whether offering Plaintiffs effective communication would impose an undue administrative burden upon Defendants;

5) Whether the TFS results in substantially equivalent or greater accessibility and usability for Plaintiffs;

6) Whether the modifications requested by Plaintiffs would fundamentally alter the nature of Defendants' goods, services, facilities, privileges, advantages or accommodations;

7) Whether the waiting time experienced by Vargas and members of the Class constitutes a denial of access;

8) Whether Vargas could have avoided his claimed damages by reasonable effort or expenditures;

9) Whether QDH owns, operates, leases, or leases to, any of the PSCs; and

10) Whether QDCL owns, operates, leases, or leases to, all of the PSCs at issue in this action.

**9. DISCOVERY**

All discovery is complete.

**10. DISCLOSURES**

All disclosures under Federal Rule of Civil Procedure 26(a)(3) have been made. The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:

Plaintiffs object to Exhibit Nos.: 41-50, 60, 97-103, 162-168, 170-199, 211-287, 290-292.

Defendants object to Exhibit Nos.: 1, 2, 4, 6-14, 16-28, 30, 32, 34-40, 53-56, 68, 72-96, 111-115, 117-137, 139-140, 144-150, 151-153, and 200-202.

**11. WITNESS LIST**

A joint witness list of the parties has been filed with the Court. Only witnesses identified in the lists will be permitted to testify (other than solely for impeachment). Each party intending to present evidence by way of deposition has marked such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

Plaintiffs: Donna Grahmann, Mary Haroyan, Nona Haroyan, Kathy Lyons, Max Ocampo, and Adam Aronson.

Defendants: Donna Grahmann, Mary Haroyan, Nona Haroyan, Clark Rachfal (on his own behalf and on behalf of ACB), Robin Rehder, and Claire Stanley.

**12. MOTIONS**

There are no pending law and motion matters or motions *in limine*.

Defendants reserve the right to pursue and/or renew any necessary *Daubert* objections following the conclusion of Plaintiffs' experts' testimony.

**13. BIFURCATION**

The trial will not be bifurcated.

**14. SUPERSEDING EFFECT OF ORDER**

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remain to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

DATED: October 17, 2022

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE